C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, a California corporation,<br><br>                    Plaintiffs,<br><br>            v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>                    Defendants. | Case No.: **'17 CV 1017 BEN JLB**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell, and California Rifle & Pistol Association, Incorporated, through their counsel, bring this action against Defendant Attorney General Xavier Becerra, in his official capacity, and make the following allegations.

## INTRODUCTION

1. Millions of law-abiding Americans own firearms equipped with magazines capable of holding more than ten rounds of ammunition.[1] There is nothing unusual or novel about this technology. Indeed, many of the nation's best-selling handguns and rifles come *standard* with magazines that can hold more than ten rounds, and firearms equipped with such magazines are safely possessed by law-abiding citizens in the vast majority of states. The reason for the popularity of these magazines is straightforward: In a confrontation with a violent attacker, having enough ammunition can be the difference between life and death.

2. Although magazines capable of holding more than ten rounds have existed and been in common use for more than a century, California banned their manufacture, sale, import, or transfer effective January 1, 2000. In the state's view, these standard-issue magazines are actually "large-capacity magazines" that threaten public safety.[2]  Last year, the state took the additional and extreme step of banning the mere *possession* of magazines over ten rounds. Under the revised law, California Penal Code section 32310 ("Section 32310"), owners of such magazines who want to keep the property they lawfully acquired and have used only for lawful purposes may no longer continue to do

---

[1]  A firearm "magazine" is a device that holds ammunition cartridges or shells, and (along with other parts of the firearm) it feeds the ammunition into the chamber for firing. Sporting Arms & Ammunition Mfrs.' Inst. (SAAMI), *Glossary Results–M* (2009), http://saami.org/glossary/display.cfm?letter=M.

[2]  Defined as "any ammunition feeding device with the capacity to accept more than 10 rounds," but not including a feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds, a .22 caliber tube ammunition feeding device, or a tubular magazine that is contained in a lever-action firearm. Cal. Penal Code § 16740.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

so.

3.    Section 32310 violates multiple constitutional provisions. First, it impermissibly burdens Plaintiffs' Second Amendment rights. The Second Amendment protects the right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes," *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008), including the ammunition and magazines necessary to make them effective, *see Jackson v. City and County of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015). Because the magazines California has prohibited are "in common use . . . for lawful purposes like self-defense," the prohibition "cannot stand." *Heller,* 554 U.S. at 624, 636.

4.    Section 32310 also violates the Takings Clause. By banning *possession*—in addition to sales and use—of magazines that were lawfully acquired and are presently lawfully possessed, Section 32310 constitutes a physical appropriation of property without just compensation that is *per se* unconstitutional. *See Horne v. Dep't of Agric.*, -- U.S. --, 135 S. Ct. 2419, 2427 (2015).

5.    Finally, Section 32310 violates the Due Process Clause. Banning magazines over ten rounds is no more likely to reduce criminal abuse of guns than banning high horsepower engines is likely to reduce criminal abuse of automobiles. To the contrary, the only thing the ban ensures is that a criminal unlawfully carrying a firearm with a magazine over ten rounds will have a (potentially devastating) advantage over his law-abiding victim. And Section 32310 raises particularly acute due process concerns because it criminalizes the continued possession of magazines that were lawful when acquired. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 541 (2005); *id.* at 548-49 (Kennedy, J., concurring).

6.    Desiring to acquire, possess, use, and/or transfer these constitutionally protected firearm magazines for lawful purposes including self-defense, but justifiably fearing prosecution if they do, Plaintiffs respectfully request that this Court: (1) declare that California Penal Code section 32310 infringes Plaintiffs' constitutional rights; and (2)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

permanently enjoin Defendants from enforcing section 32310 to the extent it prevents law-abiding Californians, like Plaintiffs, from acquiring, possessing, using, or transferring constitutionally protected arms.

## JURISDICTION AND VENUE

7.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

8.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

9.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

### [Plaintiffs]

10.     Plaintiff Virginia Duncan is a resident of San Diego County, California, and a law-abiding citizen of the United States. Plaintiff Duncan does not currently own a magazine prohibited by Section 32310, but she seeks to acquire such a magazine to keep in her home for self-defense and other lawful purposes. But for California's restrictions on magazines over ten rounds and her reasonable fear of criminal prosecution for violating them, Plaintiff Duncan would immediately acquire and continuously possess a magazine over ten rounds within California for lawful purposes, including in-home self-defense.

11.     Plaintiff David Marguglio is a resident of San Diego County, California, and a

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

law-abiding citizen of the United States. Plaintiff Marguglio does not currently own a magazine prohibited by Section 32310, but he seeks to acquire such a magazine to keep in his home for self-defense and other lawful purposes. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Marguglio would immediately acquire and continuously possess a magazine over ten rounds within California for lawful purposes, including in-home self-defense.

12.    Plaintiff Christopher Waddell is a resident of San Diego County, California, and a law-abiding citizen of the United States. Plaintiff Waddell does not currently own a magazine prohibited by Section 32310, but he seeks to acquire such a magazine to keep in his home for self-defense and other lawful purposes. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Waddell would immediately acquire and continuously possess a magazine over ten rounds and a firearm capable of accepting such a magazine within California for lawful purposes, including in-home self-defense.

13.    Plaintiff Richard Lewis is a resident of San Diego County, California, a law-abiding citizen of the United States, and an honorably discharged 22-year veteran of the United States Marine Corps. Plaintiff Lewis currently owns magazines capable of holding more than 10 rounds, items that he has lawfully possessed for over 20 years. He is not exempt from California laws barring the acquisition, possession, and/or transfer of magazines over ten rounds. Plaintiff Lewis seeks to continue possessing his lawfully owned property, acquire additional magazines capable of holding more than 10 rounds, and devise or transfer his lawfully owned property to his offspring. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Lewis would continue to possess his lawfully owned magazines over ten rounds, immediately acquire additional such magazines, and devise or transfer them to his offspring.

14.    Plaintiff Patrick Lovette is a resident of San Diego County, California, a law-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

abiding citizen of the United States, and an honorably retired 22-year veteran of the United States Navy. He intends to relocate to Arizona in August 2017. Plaintiff Lovette currently owns magazines capable of holding more than 10 rounds, items that he has lawfully possessed for over 20 years. He is not exempt from California laws barring the acquisition, possession, and/or transfer of magazines over ten rounds. Plaintiff Lovette seeks to continue to possess his lawfully owned property, acquire additional magazines over 10 rounds, and devise or transfer his lawfully owned property to his offspring. Once he relocates to Arizona, Mr. Lovette also intends to visit California with his firearm and a magazine over ten rounds for self-defense. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Lovette would continue to possess his lawfully owned magazines over ten rounds, immediately acquire additional such magazines, travel between California and Arizona with those magazines, and devise or transfer them to his offspring.

15.     Each of the individual Plaintiffs identified above seeks to keep, acquire, possess, and/or transfer magazines capable of holding more than 10 rounds for lawful purposes, including in-home self-defense, as is their right under the Second Amendment to the United States Constitution. Each of the individual Plaintiffs identified above is eligible under the laws of the United States and of the State of California to receive and possess firearms.

16.     Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA"), is a nonprofit membership and donor-support organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) with its headquarters in the City of Fullerton, in Orange County, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the fundamental right to acquire and possess commonly owned firearm magazines.

17.     CRPA regularly provides guidance to California gun owners regarding their legal rights and responsibilities. In addition, CRPA is dedicated to promoting the shooting sports and providing education, training, and organized competition for adult

and junior shooters. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the public.

18.    In this suit, CRPA represents the interests of the tens of thousands of its members who reside in the state of California, including in San Diego County, and who are too numerous to conveniently bring this action individually. Specifically, CRPA represents the interests of those who are affected by California's restriction on magazines capable of holding more than 10 rounds. In addition to their standing as citizens and taxpayers, those members' interest includes their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution, and to continue to lawfully possess property that they lawfully obtained. But for California's restrictions on magazines over ten rounds and their reasonable fear of prosecution for violating them, CRPA members would seek to acquire, keep, possess and/or transfer such magazines for in-home self-defense and other lawful purposes.

**[Defendants]**

19.    Defendant Xavier Becerra is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Becerra is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Becerra also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers. Defendant Becerra's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California, including restrictions on certain magazines classified as "large-capacity magazines." He is sued in his official capacity.

20.    The true names or capacities—whether individual, corporate, associate, or otherwise—of the Defendants named herein as Does 1-10, are presently unknown to Plaintiffs, and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

21. Defendants Becerra and Does 1-10 are responsible for formulating, executing, and administering California's restrictions on magazines capable of holding more than 10 rounds at issue in this lawsuit, and they are in fact presently enforcing them.

22. Defendants enforce California restrictions on magazines capable of holding more than 10 rounds against Plaintiffs and other California citizens under color of state law within the meaning of 42 U.S.C. § 1983.

**GENERAL ALLEGATIONS**

**[Right to Keep and Bear Arms]**

23. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

24. The United States Supreme Court has concluded that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and . . . individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 628). The Court has held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" is unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

25. The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens for lawful purposes" today. *See, e.g.*, *id.* at 624-25; *see also Caetano v. Massachusetts*, -- U.S. --, 136 S. Ct. 1027, 1027-28 (2016). The Second Amendment's protection also includes the ammunition and magazines necessary to meaningfully keep and bear arms for self-defense. *See Jackson*, 746 F.3d at 967-68; *Fyock*, 779 F.3d at 998. As such, the Second Amendment protects magazines and the firearms equipped with them that are in common use for lawful purposes.

26. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state and local governments. *McDonald*, 561 U.S. at 750.

8

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**[Takings Clause]**

27.     The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies against the states through the Fourteenth Amendment. *See Lingle*, 544 U.S. at 536.

28.     The Takings Clause protects against two kinds of governmental takings: "a restriction on the *use* of property," which is known as a "regulatory taking," and a direct "physical *appropriation*" of "an interest in property." *Horne*, 135 S. Ct. at 2425, 2427.

29.     "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). That rule applies to takings of both real and personal property. *See Horne*, 135 S. Ct. at 2427.

30.     A regulation that "goes too far"—for example, by depriving a property owner of economically beneficial use or otherwise "interfer[ing] with legitimate property interests"—also requires just compensation. *Lingle*, 544 U.S. at 537-39.

**[Due Process Clause]**

31.     The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

32.     "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases). Thus, a statute that deprives an individual of life, liberty, or property without furthering "any legitimate governmental objective" violates the Due Process Clause. *Lingle*, 544 U.S. at 542.

33.     Legislation that changes the law retroactively—making conduct that was legal when undertaken illegal—is especially likely to run afoul of the Due Process Clause. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976); *E. Enterprs. v. Apfel*, 524

U.S. 498, 547-550 (1998) (Kennedy, J., concurring in part and dissenting in part). "If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity." *E. Enterprs.*, 524 U.S. at 548-49.

34.    A law that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause. *See Lingle*, 544 U.S. at 541-42; *id.* at 548-49 (Kennedy, J., concurring).

### [The Restricted Items and Their Uses]

35.    A firearm magazine is a device that stores ammunition, and it is a critical part of delivering a loaded cartridge to the firing chamber of a rifle, pistol, or shotgun for discharge of a projectile (bullet or shot).

36.    Magazines can be either fixed to ("integral") or detachable from a firearm. Removal of fixed magazines requires disassembly of the firearm. Once a fixed magazine is removed from a firearm, the firearm lacks a structure to store ammunition, rendering the firearm unable to accept ammunition for firing, unless manually loaded into the chamber one round at a time after each discharge.

37.    On the other hand, detachable magazines are designed to be routinely removed from and reinserted into a firearm.[3] Removal generally requires a shooter to use a finger on the shooter's dominant hand to press a button or push a lever that releases the magazine from the cavity into which it is inserted to feed ammunition into the firearm's chamber for firing. Once a detachable magazine is removed, the firearm is unable to

---

[3] "Detachable magazine" means, in relevant part, "any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required." Cal. Code Regs. tit. 11, § 5469(a). They generally consist of four parts—a follower, a spring, the magazine-body, and a floor plate—but can vary between three and five parts. *See* Ex. A (image of a disassembled detachable magazine in five parts).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

accept ammunition for firing, unless manually loaded into the chamber one round at a time after each discharge.[4]

38.     Originally, firearms only had "fixed" magazines.[5] The modern detachable magazine was given form in 1879 with the introduction of the Remington-Lee bolt-action rifle, and detachable magazines have been in common use ever since. Frank M. Sellers, *Sharps Firearms* (1978).

39.     Detachable magazines offer several advantages beyond ease of reloading the firearm. Most important to self-defense, including in the home, detachable magazines allow for quick loading. This is especially beneficial if the gun is stored in an unloaded condition.

40.     The detachable magazine is also useful if the firearm "jams." A "jam" is the failure of an expended cartridge case to eject or the failure of a loaded cartridge to enter the chamber properly. The proper procedure for clearing a "jam" usually involves first removing the magazine. If the magazine is fixed, clearing the "jam" can be more difficult (and dangerous) because the next round in the magazine is trying to feed into the chamber and the user does not have the option, as there would be with a detachable magazine, of removing the magazine from below to stop that pressure.

41.     Even outside a "jam" situation, detachable magazines offer safety advantages. Many fixed magazines require that the cartridges be cycled through the loading process for unloading. That creates many more opportunities for an accidental discharge— opportunities that are exacerbated when unloading must occur in a vehicle, in darkness,

---

[4]  This may not even be an option for some firearm models, e.g., ones with magazine disconnect safety.

[5]  Examples are the Lewis & Clark's Girandoni rifle (20-round capacity) and the Henry lever action rifle used in America's civil war (15-round capacity). Silvio Calabi, Steve Helsley & Roger Sanger, *The Gun Book for Boys* (2012).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

or in a crowded location.[6]

42.    Detachable magazines are a convenient and safe way to store and transport ammunition. And if mud or dirt gets into the magazine, it is often much easier to clean or replace a detachable magazine.

43.    Finally, pre-loaded detachable magazines allow shooters to conveniently share ammunition while practicing—if they have similar firearms—or to safely reload while waiting one's turn to shoot, since the magazine is outside of the firearm while reloading takes place.

44.    Firearm users have had the choice of magazine types and capacity for over 130 years. What they select is based on their respective need. For generations, Americans have overwhelmingly chosen detachable magazines.

45.    While California does not prohibit all detachable magazines—allowing for those with a capacity of ten rounds or less—it does prohibit the sizes of magazines that are most popular among the American public. Indeed, detachable magazines capable of holding more than ten rounds come standard with countless handgun and rifle models throughout the country. And law-abiding Americans own such magazines by the tens of millions.

46.    Detachable magazines capable of holding more than ten rounds are so common that only seven states and the District of Columbia place any restrictions on them. Not only are all those restrictions of recent vintage, they differ as to what capacity is acceptable and for what types of firearms magazine-capacity should be restricted.[7]

---

[6] For instance, the Evans rifle with its 34-round integral capacity would involve cycling the action 34 times to completely unload it.

[7] Colorado (Colo. Rev. Stat. Ann. § 18-12-302) (15-round capacity maximum); Connecticut (Conn. Gen. Stat. Ann. § 53-202w) (10-round capacity maximum); District of Columbia (D.C. Code Ann. § 7-2506.01) (10-round capacity maximum); Hawaii (Haw. Rev. Stat. Ann. § 134-8(c)) (10-round capacity maximum for handguns only); Maryland (Md. Code Ann., Crim. Law § 4-305(b)) (10-round capacity maximum); Massachusetts (Mass. Gen. Laws Ann. ch. 140, § 131M) (10-round capacity maximum);

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

47.     There is little dispute that magazines having a capacity over 10 rounds are popular for self-defense purposes. The grip of a handgun is sized to the common human hand. If enough space exists inside the grip for detachable magazines capable of holding more than 10 rounds—as is true for most commonly sold handguns and rifles—it makes sense, from a self-defense perspective, to take advantage of that space by accommodating as much ammunition as possible. Each available round is an additional opportunity to end a threat. That is precisely why millions of Americans choose magazines over ten rounds for self-defense, including in the home.

### [California's Ban on Magazines Over Ten Rounds]

48.     In 1999, the California legislature enacted Senate Bill 23 ("SB 23"), making it a crime, beginning January 1, 2000, to manufacture, import, sell, or transfer any "large-capacity magazine" in the state of California. S. B. 23, 1999-2000 Reg. Sess. (Cal. 1999) (codified at Cal. Penal Code § 32310 [formerly Cal. Penal Code § 12020(a)(2)]).[8] SB 23 defined "large-capacity magazine" as "any ammunition feeding device with the capacity to accept more than 10 rounds," but not including feeding devices that have been permanently altered to accommodate no more than 10 rounds or any .22 caliber tube ammunition feeding device. Cal. Penal Code § 16740 (formerly Cal. Penal Code § 12020(c)(25)).

49.     As originally enacted, California's restriction did not include "possession" as one of the prohibited activities relating to magazines over ten rounds. This meant that individuals who lawfully possessed such magazines prior to the enactment of SB 23 did not have to dispose of them.

_____

New Jersey (N.J. Stat. Ann. § 2C:39-9(h)); (10-round capacity maximum); and New York (N.Y. Penal Law § 265.02(8)) (10-round capacity maximum).

[8]     In 2010, California enacted Senate Bill 1080 ("SB 1080"), which reorganized the Penal Code sections relating to firearms "without substantive change." S. B. 1080, 2009-2010 Reg. Sess. (Cal. 2010). Penal Code section 12020(a)(2) thus became Penal Code section 32310.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

50.     In July 2016, however, the California legislature passed and the Governor signed Senate Bill 1446 ("SB 1446"), amending Section 32310 to also prohibit the mere possession of magazines capable of holding more than 10 rounds. S. B. 1446, 2015-2016 Reg. Sess. (Cal. 2016). On November 8, 2016, California voters approved Proposition 63, which made effectively the same amendment as SB 1446 did to Section 32310, prohibiting (again) the possession of magazines capable of holding more than 10 rounds.[9]

51.     Under either version of the recently amended Section 32310, any person in lawful possession of a magazine capable of holding more than ten rounds has until July 1, 2017, to: (1) remove it from the state; (2) sell it to a licensed firearms dealer; or (3) surrender it to law enforcement.

52.     Penalties for violating Section 32310 range from an infraction punishable by a fine of up to $100 to a felony punishable by a fine and/or imprisonment.

53.     California law identifies several exceptions to the ammunition magazine restrictions, including but not limited to possession by military and possession by law enforcement while acting "in the course and scope of their duties." *See* Cal. Penal Code §§ 32400-32450. None of the listed exceptions to Section 32310's magazine ban applies to the acquisition, making, and possession of magazines capable of holding more than ten rounds by law-abiding citizens, including Plaintiffs, for self-defense.

**[Violation of Plaintiffs' Right to Keep and Bear Arms]**

54.     Section 32310 prohibits magazines that come standard with or are commonly used in firearms that are "typically possessed by law-abiding citizens for lawful

---

   [9]  While laws passed by way of voter initiative generally supersede those made via legislation, Cal. Const. art. 2, § 10(c), Proposition 63 provides that its provisions may be amended "by a vote of 55 percent of the members of each house of the Legislature and signed by the Governor so long as such amendments are consistent with and further [its] intent . . .." SB 1446 was passed by such a majority, but before the people voted to adopt Proposition 63. It is thus unclear which controls. This is largely irrelevant because both versions amended Section 32310 (albeit in different subdivisions), however, to prohibit the possession of magazines capable of holding more than 10 rounds. Whichever version controls, Plaintiffs seek an injunction of Section 32310 for the same reasons.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

purposes," *Heller*, 554 U.S. at 624-25, throughout the United States. Indeed, millions of firearms—including the most popular models—that come stock from the factory with magazines over ten rounds have been sold in the United States. People also buy such magazines aftermarket by the millions. Notwithstanding California's description of the prohibited magazines as being "large capacity," magazines with capacities of more than ten rounds are, instead, *standard*-capacity for many common firearms that are lawfully possessed in the clear majority of states.

55.     Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or transferring these commonly owned magazines implicates and violates their Second Amendment rights. A total ban on standard-issue, commonly possessed magazines is not remotely tailored to increasing public safety. To the contrary, limiting magazine capacity to ten rounds decreases public safety.

**[Violation of the Plaintiffs' Rights Under the Takings Clause]**

56.     Section 32310 makes it a crime for individuals to continue to possess magazines that they lawfully acquired and presently lawfully possess.

57.     By forcing individuals who would otherwise keep their lawfully acquired property to instead physically surrender that property without government compensation, Section 32310 effects a per se unconstitutional taking. *See Horne*, 135 S. Ct. at 2427.

58.     In the alternative, to the extent that Section 32310 does not constitute a physical taking, it is an unconstitutional regulatory taking.

**[Violation of Plaintiffs' Right to Due Process]**

59.     Under the Due Process Clause, the government may deprive individuals of their property only when doing so furthers a "legitimate governmental objective." *Lingle*, 544 U.S. at 542. The due process concerns are heightened when a law applies retroactively to change the consequences of conduct that was lawful at the time. *See E. Enterps.*, 524 U.S. at 547-550 (Kennedy, J., concurring in part and dissenting in part).

60.     By making it a crime for individuals to continue to possess property that they lawfully acquired, Section 32310 deprives individuals of protected property interests

without due process of law. For prohibiting law-abiding adults from possessing lawfully acquired and commonly owned magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way. *Lingle*, 544 U.S. at 542.

## DECLARATORY JUDGMENT ALLEGATIONS

61.     There is an actual and present controversy between the parties. Plaintiffs contend that Section 32310 infringes on Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution, by generally prohibiting commonly possessed ammunition feeding devices that it deems "large-capacity magazines." Plaintiffs also contend that Section 32310 violates the Takings Clause by requiring owners who lawfully purchased "large-capacity magazines" to surrender physical possession of their property to the government rather than keeping it in their possession. And Plaintiffs contend that Section 32310 violates the Due Process Clause by banning lawfully acquired magazines based on a feature (capacity to accept more than 10 rounds) that has no relation to enhancing public safety or any other valid governmental objective. Defendants deny these contentions. Plaintiffs desire a judicial declaration that the California Penal Code section 32310 violates Plaintiffs' constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights.

## INJUNCTIVE RELIEF ALLEGATIONS

62.     Plaintiffs are presently and continuously injured by Defendants' enforcement of California Penal Code section 32310 insofar as that provision violates Plaintiffs' rights under the Second Amendment, the Takings Clause, and the Due Process Clause by precluding the acquisition, possession, and use of firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.

63.     If not enjoined by this Court, Defendants will continue to enforce Section 32310 in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to California's ongoing enforcement of Section 32310.

### FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
(U.S. Const., amends. II and XIV)

64.    Paragraphs 1-63 are realleged and incorporated by reference.

65.    Section 32310's definition of "large-capacity magazine" includes many firearm magazines that come standard with or are common for firearms "typically possessed by law-abiding citizens for lawful purposes" nationwide. Section 32310, therefore, generally prohibits Californians, including Plaintiffs, from acquiring, keeping, possessing, and/or transferring magazines protected by the Second Amendment, subject to significant criminal penalties, including imprisonment.

66.    These restrictions on magazines that are commonly possessed throughout the United States by law-abiding, responsible adults for lawful purposes infringe on the right of the People of California, including Plaintiffs, to keep and bear protected arms as guaranteed by the Second Amendment of the United States Constitution, and as made applicable to California by the Fourteenth Amendment.

67.    In violation of the Second Amendment, Section 32310 prohibits law-abiding, responsible adults, including Plaintiffs, who would otherwise do so, from acquiring, keeping, possessing, and/or transferring magazines capable of holding more than ten rounds that are in common use by law-abiding citizens for lawful purposes throughout the United States.

68.    Section 32310's prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith, but also affects lawful and constitutionally protected conduct such as hunting, recreational shooting, and competitive marksmanship participation.

69.    Defendants cannot satisfy their burden of justifying Section 32310's restrictions

17

on the Second Amendment right of the People, including Plaintiffs, to acquire, keep, possess, transfer, and use magazines that are in common use by law-abiding adults throughout the United States for the core right of defense of self and home and other lawful purposes.

**SECOND CLAIM FOR RELIEF**
**Takings Clause**
(U.S. Const. amends. V, XIV)

70.     Paragraphs 1-69 are realleged and incorporated by reference.

71.     Section 32310 makes it a crime for individuals to continue to possess magazines that they lawfully acquired and presently lawfully possess.

72.     By forcing individuals who would otherwise keep their lawfully acquired property to instead physically surrender that property without government compensation, Section 32310 effects a per se unconstitutional taking. *See Horne*, 135 S. Ct. at 2427.

73.     In the alternative, to the extent that Section 32310 does not constitute a physical taking, it is an unconstitutional regulatory taking.

**THIRD CLAIM FOR RELIEF**
**Due Process Clause**
(U.S. Const. amend. XIV)

74.     Paragraphs 1-73 are realleged and incorporated by reference.

75.     Under the Due Process Clause, the government may deprive individuals of their property only when doing so furthers a "legitimate governmental objective." *Lingle*, 544 U.S. at 542. The due process concerns are heightened when a law applies retroactively to change the consequences of conduct that was lawful at the time. *See E. Enterprs.*, 524 U.S. at 547-550 (Kennedy, J., concurring in part and dissenting in part).

76.     By making it a crime for individuals to continue to possess property that they lawfully acquired, Section 32310 deprives individuals of protected property interests without due process of law, as prohibiting law-abiding adults from possessing lawfully acquired and commonly owned magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way. *Lingle*, 544 U.S. at 542.

**PRAYER FOR RELIEF**

Plaintiffs pray that the Court:

1.      Enter a declaratory judgment under 28 U.S.C. § 2201 that California Penal Code section 32310 is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use, or possess firearm magazines that are in common use by the American public for lawful purposes, because such unlawfully infringes on the right of the People to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution, unconstitutionally takes property without compensation in violation of the Takings Clause, and arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause.

2.      Issue an injunction enjoining Defendants and their officers, agents, and employees from enforcing California Penal Code section 32310 in its entirety, or, alternatively, to the extent such can be segregated from the rest of the statute, any provision of section 32310 that prohibits the acquiring, using, or possessing of firearm magazines that are in common use by the American public for lawful purposes;

3.      Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

4.      Grant any such other and further relief as the Court may deem proper.

Dated: May 17, 2017                    MICHEL & ASSOCIATES, P.C.


                                       /s/C.D. Michel
                                       C.D. Michel
                                       *Counsel for Plaintiffs*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT A

**SAFETY CAUTION:**
**With the GLOCK pistol field stripped, the trigger should not be manually reset to its forward position and pulled, as damage to the trigger safety could result.**

**SAFETY CAUTION:**
**With the GLOCK pistol field stripped, do not manually pull the firing pin to the rear of the slide and allow it to snap forward, as doing so can damage the firing pin and the firing pin safety.**

# MAGAZINE DISASSEMBLY

Magazines do not normally need to be disassembled for cleaning each time your GLOCK pistol is cleaned. Disassembling and cleaning magazines at less frequent intervals (perhaps every 3-4 months) is normally sufficient, unless the magazines have been exposed to dirt or other adverse conditions or inspection indicates the need for cleaning.

When it is necessary to disassemble magazines for cleaning, proceed as follows:

**SAFETY CAUTION:**
**The magazine spring, follower, and inner floorplate are under spring tension, and can cause eye or other injury if not controlled during removal. Wear protective safety glasses to reduce the risk of eye injuries. Be sure to maintain downward pressure on the magazine spring, with your thumb, while disassembling.**

For all magazines with the standard magazine floorplate and magazine insert, insert punch fully into the opening in the floorplate (Fig. 13). Push the magazine insert down into the magazine tube, and with the punch still in place, pull the floor plate forward with the punch while holding firmly on the sides of the magazine near its base. Remove the floor plate (Fig. 10), the magazine insert, the magazine spring and the follower.



FIGURE 10

FIGURE 11



FIGURE 12

**WARNING:** THE MAGAZINE SPRING IS UNDER COMPRESSION. BE SURE TO MAINTAIN DOWNWARD PRESSURE ON MAGAZINE SPRING WITH YOUR THUMB WHILE DISASSEMBLING. FAILURE TO DO SO COULD RESULT IN INJURY.

For older magazines without the magazine, insert, press inward with thumb and first finger as you push the magazine floor plate forward or use a hard surface (Fig. 11). As soon as the floor plate starts to move, reposition hand so thumb retains magazine spring. Remove the floor plate, magazine spring and follower.

45

For GLOCK magazines with a retaining pin visible in the center hole:

The retaining pin is part of a reinforcement plate. To remove the floorplate the reinforcement plate is disengaged by pushing it into the magazine tube. This is accomplished by pushing the retaining pin in with a punch (Figure 13). Then follow the procedures outlined above.



**FIGURE 13**

## CLEANING THE FIELD STRIPPED PISTOL

**BARREL.** Once field stripped, the barrel and chamber are easily cleaned from the chamber end using a bore brush and solvent. Standard firearm solvents can be used on the pistol. The inside of both the chamber and barrel should be wiped completely dry using clean patches once they have been thoroughly cleaned.

**SLIDE.** The slide rail cuts should be cleaned of dirt and debris by using a clean patch on the end of a toothbrush-type cleaning tool. Note that the copper colored lubricant found on portions of the slide of brand new GLOCK pistols should not be removed, as it will help to provide long-term lubrication of the slide. The breech face and the area under the extractor claw should be held muzzle down and cleaned with a toothbrush-type cleaning tool, and should both be absolutely dry and free of any dirt or debris after cleaning. All other exposed areas of the slide should be checked for cleanliness, and wiped or brushed clean as required.

**FRAME.** The frame should be checked for cleanliness. Exposed parts in the frame may be wiped with a clean, soft cloth that has been slightly dampened with a quality firearm cleaning solvent. All solvent should then be wiped from the parts so that they are clean and dry.

**MAGAZINE.** When necessary, the disassembled magazines can be brushed out with a dry brush, and the magazine springs and followers wiped off with a soft, clean cloth. If solvent or lubricant are used, they must be completely dried from the magazine parts prior to reassembly to prevent contamination of ammunition and possible failures to fire.



**FIGURE 14**

## LUBRICATING THE FIELD STRIPPED PISTOL

To properly lubricate your GLOCK pistol after it has been thoroughly cleaned and dried, use a clean patch that has been slightly dampened with quality gun oil. Wipe the outside of barrel, including the barrel hood and lugs, the inside top of the slide forward of the ejection port where the barrel hood rubs against the slide and the opening that the barrel slides through in front of the slide. One drop of oil should be spread along the entire length of each slide rail cut. Most importantly, a drop of oil is needed (Figure 14) where the rear end of the trigger bar touches the connector at the right rear corner of the frame.