C. D. Michel - SBN 144258
Sean A. Brady - SBN 262007
Anna M. Barvir - SBN 268728
Matthew D. Cubeiro - SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, a California corporation,

Plaintiffs,

v.

XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10,

Defendants.

Case No: 17-cv-1017-BEN-JLB

**DECLARATION OF GARY KLECK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; EXHIBIT MMM**

Date:     June 13, 2017
Time:     10:00 a.m.
Dept:     5A
Judge:    Hon. Roger T. Benitez

1

DECLARATION OF GARY KLECK                                    17-cv-1017-BEN-JLB

## DECLARATION OF GARY KLECK

**My Qualifications**

1.    I am an emeritus Professor of Criminology and Criminal Justice at Florida State University. I received my doctorate in Sociology from the University of Illinois in 1979, where I received the University of Illinois Foundation Fellowship in Sociology. I was, at the time of my retirement in May, 2016, the David J. Bordua Professor of Criminology at Florida State University, where I served on the faculty from 1978 to 2016.  My research has focused on the impact of firearms and gun control on violence, and I have been called "the dominant social scientist in the field of guns and crime" (Vizzard, 2000, p. 183).

2.    I have published the most comprehensive reviews of evidence concerning guns and violence in the scholarly literature, which informs and serves as part of the basis of my opinions. I am the author of <u>Point Blank: Guns and Violence in America</u>, which won the 1993 Michael J. Hindelang Award of the American Society of Criminology, awarded to the book of the previous several years which "made the most outstanding contribution to criminology."  I also authored <u>Targeting Guns</u> (1997) and, with Don B. Kates, Jr., <u>The Great American Gun Debate</u> (1997) and <u>Armed</u> (2001) – books that likewise addressed the topic of guns and violence.

3.    I have also published scholarly research articles in virtually all of the leading professional journals in my field.  Specifically, my articles have been published in the <u>American Sociological Review</u>, <u>American Journal of Sociology</u>, <u>Social Forces</u>, <u>Social Problems</u>, <u>Criminology</u>, <u>Journal of Criminal Law and Criminology</u>, <u>Law & Society Review</u>, <u>Journal of Research in Crime and Delinquency</u>, <u>Journal of Quantitative Criminology</u>, <u>Law & Contemporary Problems</u>, <u>Law and Human Behavior</u>, <u>Law & Policy Quarterly</u>, <u>Violence and Victims</u>, <u>Journal of the American Medical Association</u>, and other scholarly journals.

4.    I have testified before Congress and state legislatures on gun control issues, and worked as a consultant to the National Research Council, National Academy of Sciences Panel on the Understanding and Prevention of Violence, as a member of the U.S. Sentencing Commission's Drugs-Violence Task Force, and as a member of the Institute of Medicine and National Research Council Committee on Priorities for a Public Health Research Agenda to Reduce the Threat of Firearm-Related Violence. I am a referee for over a dozen professional journals, and serve as a grants consultant to the National Science Foundation.

5.    Finally, I have taught doctoral students how to do research and evaluate the quality of research evidence, and have taught graduate courses on research design and causal inference, statistical techniques, and survey research methodology. My current curriculum vitae is attached as Exhibit MMM.

6.    I am being compensated for my work at the rate of $400 per hour.

**Opinions and Supporting Evidence**

7.    Criminals rarely fire large numbers of rounds in a given crime incident, so possession of magazines capable of holding more than ten rounds of ammunition (termed "large-capacity magazines" and thus referred to as "LCMs" hereafter) merely provides, in the typical violent gun crime, surplus rounds that are not fired and thus cannot injure additional victims.

8.    <u>Supporting Evidence</u>: A study of Jersey City, NJ, found that offenders did not even fire a single shot in over two-thirds of crimes in which the offender was armed with a handgun (Reedy and Koper 2003, p. 153).  Of all violent crimes in which handguns *were* fired, only 2.5-3.0% involved more that 10 rounds being fired by the offender (p. 154).  Even if we consider only incidents in which semi-automatic pistols *were* fired, only 3.6-4.2% of the incidents involved over 10 rounds being fired, which is in turn only 1.7-2.0% of *all* handgun violent crimes (whether the gun was fired or not).  The average number of rounds fired was 3.23-3.68 in semi-automatic pistol incidents in which the gun was fired, and 2.30-2.58 in

DECLARATION OF GARY KLECK                    17-cv-1017-BEN-JLB

revolver incidents in which the gun was fired.  Likewise, a study of gun homicides in Philadelphia found even fewer shots fired per incident than in the Jersey City study – only 2.7 shots per semi-automatic pistol killing in 1990 (McGonigal et al. 1993).

9.    The only kind of shootings in which large numbers of rounds are commonly fired are mass shootings, incidents that involve many victims.  Mass shootings fortunately are quite rare in absolute terms.  For the most recent year for which we have complete data, 2016, there were 37 known incidents with more than 6 persons shot (tabulated from Gun Violence Archive 2017).  Even in the extremely rare mass shootings in which large numbers of victims were shot, the shooters virtually never <u>needed</u> LCMs to injure or kill as many victims as they did, because they either (a) possessed multiple guns, (b) possessed multiple magazines that they were able to change out, or (c) had ample time and opportunity to reload their firearm(s) or magazine(s). Therefore, even the hypothetical potential for reducing harm or improving the public's safety by limiting magazine capacity to no more than 10 rounds can be fairly described as being limited to no more than a very small subset of already very rare events.

10.    One earlier study of mass shootings (more than six victims wounded or killed) that occurred in the United States over a ten year period (1984-1993 inclusive) found that offenders possessed multiple guns in thirteen of the fifteen incidents (about 87%), and in one of the two remaining cases (the Colin Ferguson case in New York in 1993) the offender reloaded at least once. Thus, the killers in mass shootings did not need LCMs to quickly fire large numbers of rounds or wound large numbers of victims – they either just switched loaded guns or reloaded their guns without interference from bystanders (Kleck 1997, pp. 124-126, 144).

11.    I have updated this analysis of mass shootings beyond my published analysis covering 1984-1993.  All shooting incidents involving more than six victims shot (fatally or non-fatally, not including the offenders) for the period 1994

4

through July 2013 inclusive that were known to have involved a LCM were examined based on news media accounts, and occasionally official reports. The analysis was confined to incidents involving more than six victims because the proposition that the use of LCMs affects the number of people killed or wounded is most likely to be supported in incidents with many victims. The cut-off of six victims was chosen because it would be virtually impossible to shoot more than six victims using a traditional 6-shot revolver without reloading.

12.   I supplemented my list of mass shootings with a list of mass shootings that involved use of LCMs compiled by the Violence Policy Center, an advocacy organization that favors strong gun control laws and specifically supports bans on LCMs. They gathered an arguably comprehensive set of shootings in which magazines of capacity 15 or more were used by the shooters (Violence Policy Center 2013). I used this list to supplement my list because VPC was well-motivated to locate every mass shooting involving the use of an LCM, as they clearly favored the notion that use of LCMs leads to a larger death toll in mass shootings (Violence Policy Center 2011). Thus, I sought to compile as comprehensive a list of LCM-involved mass shooting incidents as possible.

13.   The updated results covering 1994-2013 confirmed the conclusions of the 1984-1993 analysis – LCMs were not needed for mass shooters to kill or injure as many victims as they did (Kleck 2016). The killer in every single mass shooting known to have involved a LCM was either armed with multiple guns or had multiple magazines. There were a total of 23 mass shootings (i.e., incidents with more than 6 victims killed or wounded in a single incident) that were known to have involved LCMs in the U.S. in 1994-2013.  The shooter was known to have possessed multiple guns in 17 of these 23 mass shootings in which LCMs were used. The shooters in these 17 incidents therefore could continue firing simply by switching guns, even if they had not possessed an LCM. Further, the shooters were known to have possessed multiple magazines in *all* 23 incidents and could therefore

5

continue firing large numbers of rounds simply by switching magazines.  Thus, all the shooters in these incidents possessed either multiple guns or multiple magazines. *There was not a single mass shooting in which the offender used an LCM, and possessed just one gun and just one magazine in his immediate possession.*  Thus, even if LCMs had not been available, all of the shooters could have fired large numbers of rounds without significant interruption simply by firing multiple guns or using a single gun but changing smaller capacity magazines – an action that takes only 2-4 seconds.

14.    One circumstance in which use of an LCM might affect the number of casualties even if the shooter possessed multiple guns or multiple magazines is if there were bystanders willing to tackle the shooter during his attempt to change magazines or firearms. The use of an LCM prior to that time could affect the number of victims shot, since the killer could have fired more rounds before needing to reload or switch guns. There was at most only one LCM-involved mass shooting in this 20-year period in which intervenors tackled the shooter while he was reloading a semiautomatic gun – the incident in Tucson, AZ in which a man tried to kill Representative Gabrielle Gifford

15.    Even regarding this unique incident, key details are in dispute, making it unclear whether bystanders intervened while the shooter was reloading.  The shooter was indeed tackled by bystanders, but some eyewitness statements indicated that the shooter was not pausing in his shooting because he needed to reload, but rather because a spring in his magazine had broken (*New York Times* January 10, 2011, p. A1).  Since magazines of any size can malfunction, this sort of opportunity for bystander intervention would occur regardless of the capacity of magazines used by mass shooters.  There were no other mass shootings by shooters using LCMs known to me in this 20-year period in which the shooter was disrupted by bystanders while attempting to reload or switch guns.

DECLARATION OF GARY KLECK                    17-cv-1017-BEN-JLB

16.    It might be speculated that, if mass shooters were denied LCMs, and consequently had to reload more often, this would slow the shooter's average rate of fire and extend the time the killer was not shooting, allowing some prospective victims additional time to escape.  While this speculation has some *a priori* plausibility, it is nevertheless inconsistent with the rates of fire sustained in actual mass shootings.  A change of the box-type magazines used in semi-automatic pistols and rifles takes approximately 2-4 seconds generally, depending on the shooter's skill and stress level. Virtually all mass shooters, however, fire their guns at an average rate no faster than one round every 2 seconds, and usually fire at even slower rates.  That is, the time interval that shooters need to change magazines is usually shorter than the interval between shots fired by actual mass shooters even when they are not reloading (Kleck 2016).  Thus the need to switch magazines would almost never slow the rate of fire maintained by mass shooters, and would therefore almost never give victims additional time to escape during pauses in the shooting.

17.    Table 3 of Kleck (2016) summarizes data on all 25 known LCM-involved mass shootings in the U.S. during 1994-2013 for which news media accounts provided information on both the number of shots fired and the time span in which shots were fired, thereby allowing reasonable computation of rates of fire. Only 3 shooters of the 21 total took less than 2 seconds per shot fired, and only 6 took under 4 seconds.  Even with this handful of incidents with unusually rapid fire, however, the difference between (a) the 1.4 or 1.6 seconds average interval between shots observed in the two incidents with the fastest rates of fire, and (b) the 2-4 seconds that it takes to change a box-type magazine is not likely to even be perceptible to would-be intervenors.  That is, they would be unlikely to even be aware of the very slight slowing of the killer's rate of fire necessitated by his changing of magazines.  In sum, even if LCM bans forced some mass shooters to use smaller capacity magazines and therefore change magazines earlier and/or more

DECLARATION OF GARY KLECK                    17-cv-1017-BEN-JLB

often, it is unlikely that it would perceptibly reduce those offenders' rate of fire and thereby allow victims to take additional evasive actions that they otherwise would not have been able to take.

18.    In contrast, limits on magazine capacity are likely to sometimes impair the ability of citizens to engage in lawful self-defense, in those crime incidents necessitating that the victim fire many rounds in order to stop the aggressive actions of offenders.  In contrast to mass shooters, victims of crimes generally cannot plan for or anticipate crimes to occur at a specific time and place – these things are beyond their control.  Therefore, they ordinarily cannot plan, as mass shooters do, to routinely have many loaded guns and/or numerous magazines with them at the times and places in which particular crimes against them might occur. Victims who wish to defend themselves with firearms usually have to make do with a single available gun and its ammunition capacity.  Consequently, if their one gun or magazine's capacity was limited to 10 or fewer rounds, this means they could not fire more than 10 rounds at offenders attempting to harm them.  Further, persons who are law-abiding would be unlikely to simply violate the law and acquire banned LCMs, as criminals, by definition, freely do.

19.    Some defensive gun uses (DGUs) are likely to require large numbers of rounds being fired either because (a) the crime victim faces multiple offender adversaries who will not stop their aggression unless shot or fired upon, and/or because (b) the victim will, under the stressful conditions of a crime victimization, miss with most of his or her shots.

20.    Regarding the first point, the 2008 U.S. Department of Justice's National Crime Victimization survey, indicated that 17.4% of violent crimes in the United States involved two or more offenders, and that nearly 800,000 violent crimes occurred in 2008 in which the victim faced multiple offenders. Some of the victims in these 800,000 multiple-offender crimes would need to fire larger numbers of rounds to protect themselves because they would face multiple criminal

8

adversaries.  Regarding the second point, a reasonable estimate of the marksmanship of crime victims using guns for self-defense can be inferred from a review of the many detailed studies that have been done of shootings by police officers in which the officers were trying to shoot criminal adversaries. In many of these shootings, the officers fired large numbers of rounds.  Yet, in 63% of the incidents, the officers failed to hit even a single offender with even a single round (Geller and Scott 1993).

21.    Police officers have the experience, training, and temperament to handle stressful, dangerous situations, so marksmanship among civilians using guns for self-protection may be even lower than the 37% "hit rate" of police.  "Hit rate" here means the percent of incidents in which the police officer achieved at least one hit, not the percent of shots fired that hit the criminal.  Since some incidents involved multiple shots being fired, the fraction of shots that hit the criminal would necessarily be even lower that the fraction of incidents in which the shooter achieved at least one hit, i.e. under 37%.  There is no reliable empirical evidence that civilian marksmanship in such situations is better than that of police officers, civilians are likely to wound a criminal with less than 37% of their shots.  Thus, these data indicate that the typical crime victim would have to fire at least three rounds in order to successfully hit each offender they tried to shoot just once. Crime victims facing four offenders, for example, would therefore need, on average, at least 12 rounds or more to hit all four of them just once. A ban on magazines with more than 10 rounds would make it impossible to fire this many rounds using a single magazine.

22.    No one knows the number of DGUs by crime victims that involved use of LCMs or the firing of more than 10 rounds, but the number is almost certain to be larger than the number of <u>crimes</u> in which LCM use caused a larger number of victims to be injured or killed, for two reasons.  First, the number of criminal uses in which LCM use caused a larger number of victims to be injured or killed is, as

DECLARATION OF GARY KLECK                    17-cv-1017-BEN-JLB

1    previously noted, close to zero; at most, LCM use affected the casualty count in

2    only a single mass shooting in the twenty-year period from 1994 to 2013.

3    Therefore, even a tiny number of DGUs requiring an LCM for effective self-

4    defense would outnumber criminal uses in which LCM use affected the number of

5    victims killed or injured.  Second, the *total* number of DGUs by crime victims,

6    without regard to number of rounds fired or use of LCMs, is far larger (perhaps five

7    times larger) than the total number of crimes committed by offenders using guns

8    (Kleck and Gertz 1995), suggesting that LCM-involved defensive gun uses likewise

9    are likely to outnumber LCM-involved criminal uses.

10       23.    Regarding the second point, the most detailed survey of DGUs, based

11   on the largest sample of U.S. adults (n=4,977) ever used in such a survey, was

12   conducted in 1993.  The researchers found that 1.32% of U.S. adults (age 18+) had

13   used a gun defensively, either firing the gun at, or threatening, a criminal offender

14   in the preceding 12 months. Multiplying this times the size of the adult population

15   yielded an estimate of 2.55 million DGUs in the preceding year (Kleck and Gertz

16   1995). This estimate was consistent with estimates derived from many other,

17   smaller scale, surveys (Kleck 2001).  (Criticism of this estimate has been

18   uninformative due to an exclusive one-sided focus on errors tending to make the

19   estimate too large, while ignoring well-known factors discouraging the reporting of

20   crimes in general, and possession or use of guns in particular - see Kleck 2001).

21       24.    In that same year, there were no more than 554,000 crimes committed

22   in which offenders fired a gun or used it to threaten a victim (Kleck and Gertz 1995,

23   pp. 169-170), indicating there were about five times as many DGUs as there were

24   crimes in which offenders used guns.  At least 18 other national surveys have

25   likewise yielded estimates of the national total of DGUs that exceeded the NCVS

26   estimates of criminal uses of guns (Kleck 2001).

27       25.    If LCMs were banned, some law-abiding citizens, like many criminals,

28   could acquire multiple smaller capacity magazines as a substitute for banned larger

10

DECLARATION OF GARY KLECK                          17-cv-1017-BEN-JLB

capacity magazines.  This development would to some extent defeat the purpose of the magazine capacity limit. Some crime victims, however, will not be able to make effective use of multiple magazines.  Under the intense emotional stress of a crime victimization, when the victim's hands are likely to be shaking violently, it will often be impossible for victims to eject the expended magazine and insert a new one quickly enough to make effective use of the second magazine. Elderly or physically handicapped persons may even find it physically impossible for them to quickly change magazines.

26.    By definition, criminals obey laws at a lower rate than non-criminals, so violation of legal limits on magazine capacity are likely to occur at a higher rate among criminals than among non-criminals. That is, such a law will reduce possession of LCMs more among law-abiding citizens than among criminals, and thus more among non-criminal victims and prospective victims than among criminal offenders.

27.    Points (23)-(26) in combination logically lead to the conclusion that a law limiting the maximum capacity of magazines to no more than 10 rounds will reduce (a) DGUs by victims who needed to fire large numbers of rounds to effectively defend themselves and were able to successfully do so more than it will reduce (b) criminal attacks in which offender use of LCMs caused larger numbers of victims to be killed or injured.

28.    Victim DGU is generally effective (Tark and Kleck 2004).  That is, it makes it less likely the victim will be injured or lose property.  Consequently, a law that obstructs DGU by crime victims impairs their capacity for effective self-protection and increases the likelihood of the victims suffering injury or property loss.

29.    Analyses of data generated by the U.S. Census Bureau's National Crime Victimization Survey (NCVS) have consistently indicated that crime victims who use guns for self-protection are less likely to be injured or lose property than

DECLARATION OF GARY KLECK                          17-cv-1017-BEN-JLB

victims who do not (Kleck 1988; Kleck and DeLone 1993; Southwick 2000; Kleck 2001, Chapter 7; Tark and Kleck 2004). More specifically, DGU is more effective in preventing serious injury than any other victim self-protection strategy, among the 16 strategies covered in the NCVS (Tark and Kleck 2004, pp. 891-894).

30.    Opinions 28 through 29 in combination logically lead to the conclusion that a law limiting magazine capacity to no more than ten rounds will do more harm than good, because it will reduce (a) the harm-*preventing* effects of victim DGU more than it will reduce (b) the extremely rare harm-*causing* effects of offender use of LCMs.

31.    This conclusion not only follows logically from opinions 28 through 29, but is also supported by actual experience with the federal ban on LCMs (defined as holding over 10 rounds) that was in effect nationwide from 1994 to 2004.  A U.S. Department of Justice-funded evaluation found that there was "no discernible reduction in the lethality or injuriousness of gun violence during the post-ban years" (Koper 2013, p. 165; see also Koper 2004, p. 96).  Although the author of the evaluation argued that the federal ban would eventually have benefits if it were allowed to persist long enough, this claim was basically speculative, not based on any actual observed changes in violence, at least none that he cited to.

32.    In sum, the best available evidence indicates that California's ban on LCMs is more likely, on net, to harm the safety of its citizens than to improve it.

**References**

Geller, William A. and Michael S. Scott. 1993. <u>Deadly Force: What We Know</u> Washington, D.C.: Police Executive Research Forum.

Gun Violence Archive. 2017.  Compilation of mass shootings, available online at http://www.gunviolencearchive.org/.

Kleck, Gary. 1997. <u>Targeting Guns: Firearms and their Control.</u> NY: Aldine de Gruyter.

/ / /

12

Kleck, Gary. 2001a. "The frequency of defensive gun use: evidence and disinformation." Chapter 6 in Armed, by Gary Kleck and Don B. Kates. NY: Prometheus Books.

Kleck, Gary. 2001b. "The nature and effectiveness of owning, carrying, and using guns for self-protection." Chapter 7 in Armed, by Gary Kleck and Don B. Kates. NY: Prometheus Books.

Kleck, Gary. 2016.  "Large-capacity magazines and the casualty counts in mass shootings: the plausibility of linkages." Justice Research and Policy 17:28-47.

Kleck, Gary, and Miriam DeLone. 1993. "Victim resistance and offender weapon effects in robbery." Journal of Quantitative Criminology 9(1):55-81.

Kleck, Gary, and Marc Gertz. 1995. "Armed resistance to crime: the .prevalence and nature of self- defense with a gun." Journal of Criminal Law and Criminology 86:150-187.

Koper, Christopher. 2004. An Updated Assessment of the Federal Assault Weapons Ban. Report to the National Institute of Justice. Philadelphia: Jerry Lee Center of Criminology. Available at https://www.ncjrs.gov/pdffiles1/nij/grants/204431.pdf.

Koper, Christopher. 2013. "America's experience with the federal assault weapons ban, 1994-2004." Pp. 157-171 in Reducing Gun Violence in America, edited by Daniel W. Webster and Jon S. Vernick. Baltimore: Johns Hopkins University Press

McGonigal, M.D., Cole, J., Schwab, C.W., Kauder, D.R., Rotondo, M.F., and Angood, P.B. 1993. "Urban firearm deaths: a five-year perspective." The Journal of Trauma 35:532-537.

Reedy, D. C., and C. S. Koper. 2003. "Impact of handgun types on gun assault outcomes." Injury Prevention 9:151-155.

Southwick, Lawrence. 2000. "Self-defense with guns: The consequences." Journal of Criminal Justice 28:351-370.

Tark, Jongyeon, and Gary Kleck. 2004. "Resisting crime: the effects of victim action on the outcomes of crimes." Criminology 42:851-908.

U.S. Bureau of Justice Statistics, 2013. Data from the 2008 National Crime Victimization Survey, on the BJS website at http://bjs.gov/content/pub/pdf/cvus08.pdf, Table 37.

U.S. Federal Bureau of Investigation. 2013. Crime in the United States, 2012 (Uniform Crime Reports). Available online at http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/1tabledatadecoverviewpdf/table_1_crime_in_the_united_states_by_volume_and_rate_per_100000_inhabitants_1993-2012.xls.

Violence Policy Center 2011. "High-capacity ammunition magazines: the common thread that runs through mass shootings."  Press release dated January 11, 2011, available online at http://www.vpc.org/press/1101az2.htm.

13

Violence Policy Center. 2013.  <u>Mass Shootings in the United States Involving High-Capacity Ammunition Magazines</u>.  Washington, D.C.: Violence Policy Center.  Available online at http://www.vpc.org/fact_sht/VPCshootinglist.pdf.

Vizzard, William J.  <u>Shots in the Dark: The Policy, Politics, and Symbolism of Gun Control</u>.  NY: Rowman & Littlefield.

     I declare under penalty of perjury that the foregoing is true and correct.

Executed within the United States on May 26, 2017.

_____

Gary Kleck

DECLARATION OF GARY KLECK                    17-cv-1017-BEN-JLB

# EXHIBIT MMM

CURRICULUM VITAE

GARY KLECK

(Updated December 2, 2016)

PERSONAL

Place of Birth:        Lombard, Illinois

Date of Birth:         March 2, 1951

Address:               College of Criminology and Criminal Justice

                       The Florida State University
                       314B Eppes Hall
                       112 S. Copeland Street
                       Tallahassee, FL 32306-1273

Telephone Number:      Home: (850) 894-1628

e-mail Address:        gkleck@fsu.edu

CURRENT POSITION

David J. Bordua Emeritus Professor of Criminology, Florida State University

COURTESY APPOINTMENT

Professor, College of Law, Florida State University

PROFESSIONAL MEMBERSHIPS

American Society of Criminology

Academy of Criminal Justice Sciences

EDUCATION

A.B.        1973 - University of Illinois, with High Honors and with Distinction

            in Sociology

A.M.        1975 - University of Illinois at Urbana, in Sociology

Ph.D.       1979 - University of Illinois at Urbana, in Sociology

ACADEMIC HONORS

National Merit Scholar, 1969

Freshman James Scholar, University of Illinois, 1969

Graduated from University of Illinois with High Honors and with Distinction in

Sociology, 1973

University of Illinois Foundation Fellowship in Sociology, 1975-76

1993 Winner of the Michael J. Hindelang Award of the American Society of

Criminology, for the book that made "the most outstanding contribution to

criminology" (for Point Blank: Guns and Violence in America).

Awarded Named Professorship, Florida State University, 2012.

Nominated for University Teaching Award, Florida State University, 2014.


TEACHING POSITIONS

| | |
|---|---|
| May 2016 to present | Emeritus Professor, College of Criminology and Criminal Justice, Florida State University |
| Fall, 1991 to May 2016 | Professor, College of Criminology and Criminal Justice, Florida State University |
| Fall, 1984 to Spring, 1991 | Associate Professor, School of Criminology, Florida State University. |
| Fall, 1979 to Spring, 1984 | Assistant Professor, School of  Criminology, Florida State University. |
| Fall, 1978 to Spring, 1979 | Instructor, School of Criminology, Florida State University. |

COURSES TAUGHT

Criminology, Applied Statistics, Regression, Introduction to Research Methods, Law
Enforcement, Research Methods in Criminology, Guns and Violence, Violence Theory
Seminar, Crime Control, Assessing Evidence, Survey Research, Research Design and
Causal Inference.

DISSERTATION

Homicide, Capital Punishment, and Gun Ownership:  An Aggregate Analysis of U.S.
Homicide Trends from 1947 to 1976.  Department of Sociology, University of
Illinois, Urbana.  1979.

PUBLICATIONS (sole author unless otherwise noted)

 BOOKS

1991,   Point Blank: Guns and Violence in America.  Hawthorne, N.Y.: Aldine de
2005   Gruyter.  Winner of the 1993 Michael J. Hindelang award of the American
        Society of Criminology.  Republished in 2005 in paperback by Transaction
        Publishers.

            Reviewed in Contemporary Sociology, American Journal of Sociology,
            Social Forces, Journal of Criminal Law and Criminology, The Criminologist,
            The Public Interest, Criminal Law Forum, Social

Science Review, Criminal Justice Abstracts, Crime, Criminal Justice and
Law Enforcement, Newsletter of Public Policy Currents, Commonweal,
Choice, and others.

1997    Targeting Guns: Firearms and their Control. Hawthorne, N.Y.: Aldine de Gruyter.

1997    The Great American Gun Debate: Essays on Firearms and Violence (with Don B.
Kates, Jr.).  San Francisco: Pacific Research Institute for Public Policy.

2001    (with Don B. Kates) Armed: New Perspectives on Gun Control.  N.Y.:
Prometheus Books.
Selected to Choice: Current Reviews for Academic Libraries' 39th annual
"Outstanding Academic Title List," awarded for "excellence in scholarship and
presentation, the significance of their contribution to their field, and their value as
an important treatment of their topic."  Awarded to less than one percent of
books.

2017    (with Brion Sever) Punishment and Crime.  NY: Routledge.   In press.

RESEARCH MONOGRAPH

1979    Bordua, David J., Alan J. Lizotte, and Gary Kleck. Patterns of Firearms
Ownership, Use and Regulation in Illinois.  A Report to the Illinois Law Enforce
ment Commission, Springfield, Illinois.

ARTICLES IN PEER-REVIEWED JOURNALS

1979   "Capital punishment, gun ownership, and homicide." <u>American Journal of</u>
       <u>Sociology</u> 84(4):882-910.

1981   "Racial discrimination in criminal sentencing: A critical evaluation of the
       evidence with additional evidence on the death penalty." <u>American Sociological</u>
       <u>Review</u> 46(6):783-804.

1982   "On the use of self-report data to determine the class distribution of criminal
       behavior." <u>American Sociological Review</u> 47(3):427-33.

1983   (with David Bordua) "The factual foundation for certain key assumptions of gun
       control." <u>Law and Policy Quarterly</u> 5(3):271-298.

1985    "Life support for ailing hypotheses:  modes of summarizing the evidence on
       racial discrimination in criminal sentencing." <u>Law and Human Behavior</u>
       9(3):271-285.

1986    "Evidence that 'Saturday Night Specials' not very important for crime."
        <u>Sociology and Social Research</u> 70(4):303-307.

1987    "American's foreign wars and the legitimation of domestic violence."
       <u>Sociological Inquiry</u> 57(3):237-250.

1988   "Crime control through the private use of armed force." <u>Social Problems</u> 35(1):1-21.

1988   "Miscounting suicides." <u>Suicide and Life-Threatening Behavior</u> 18(3):219-236.

1990    (with Susan Sayles) "Rape and resistance." <u>Social Problems</u> 37(2):149-162.

1991   (with Karen McElrath) "The effects of weaponry on human violence." <u>Social</u>

Forces 69(3):669-92.

1993    (with Miriam DeLone) "Victim resistance and offender weapon effects in robbery."  Journal of Quantitative Criminology 9(1):55-82.

1993    (with E. Britt Patterson)  "The impact of gun control and gun ownership levels on violence rates."  Journal of Quantitative Criminology 9(3):249-287.

1993    "Bad data and the 'Evil Empire': interpreting poll data on gun control."  Violence and Victims 8(4):367-376.

1995    "Guns and violence: an interpretive review of the field."  Social Pathology 1(1):12-47.

1995    "Using speculation to meet evidence."  Journal of Quantitative Criminology 11(4):411-424.

1995    (with Marc Gertz) "Armed resistance to crime: the prevalence and nature of self-defense with a gun." Journal of Criminal Law & Criminology 86(1):150-187.

1996    "Crime, culture conflict and sources of support for gun control: a multi-level application of the General Social Surveys."  American Behavioral Scientist 39(4):387-404.

1996    (with Chester Britt III and David J. Bordua) "A reassessment of the D.C. gun law: some cautionary notes on the use of interrupted time series designs for policy impact assessment." Law & Society Review 30(2):361-380.

1996    (with Chester Britt III and David J. Bordua) "Avoidance and misunderstanding." Law & Society Review 30(2):393-397.

1997    (with Marc Gertz) "The illegitimacy of one-sided speculation: getting the
         defensive gun use estimate down." Journal of Criminal Law and Criminology
         87(4):1446-1461.

1997     (with Tomislav Kovandzic and Marc Gertz) "Defensive gun use: vengeful
         vigilante imagery vs. reality: results from the National Self-Defense Survey."
         Journal of Criminal Justice 26(3):251-258.

1998    (with Marc Gertz) "Carrying guns for protection: results from the National Self-
         Defense Survey." Journal of Research in Crime and Delinquency 35(2):193-224.

1998    "What are the risks and benefits of keeping a gun in the home?" Journal of the
         American Medical Association 280(5):473-475.

1998    (with Charles Crawford and Ted Chiricos) "Race, racial threat, and sentencing of
         habitual offenders." Criminology 36(3):481-511.

1999    (with Michael Hogan) "A national case-control study of homicide offending and
         gun ownership." Social Problems 46(2):275-293.

1999    "BATF gun trace data and the role of organized gun trafficking in supplying guns
         to criminals." St. Louis University Public Law Review 18(1):23-45.

2001    "Can owning a gun really triple the owner's chances of being murdered?"
         Homicide Studies 5:64-77.

2002    (with Theodore Chiricos) "Unemployment and property crime: a target-specific
         assessment of  opportunity and motivation as mediating factors."
         Criminology 40(3):649-680.

2004    "Measures of gun ownership levels for macro-level crime and violence research."
        Journal of Research in Crime and Delinquency 41(1):3-36.

2004    (with Jongyeon Tark) "Resisting crime: the effects of victim action on the
        outcomes of crimes." Criminology 42(4):861-909.

2005    (with Brion Sever, Spencer Li, and Marc Gertz) "The missing link in general
        deterrence research." Criminology 43(3):623-660.

2006    (with Jongyeon Tark and Jon J. Bellows) "What methods are most frequently
        used in research in criminology and criminal justice?" Journal of Criminal Justice
        34(2):147-152.

2007    "Are police officers more likely to kill African-American suspects?"
        Psychological Reports 100(1):31-34.

2007    (with Shun-Yung Wang and Jongyeon Tark) "Article productivity among the
        faculty of criminology and criminal justice doctoral programs, 2000-2005."
        Journal of Criminal Justice Education 18(3):385-405.

2008    (with Jongyeon Tark, Laura Bedard, and Dominique Roe-Sepowitz) "Crime
        victimization and divorce." International Review of Victimology 15(1):1-17.

2009    "The worst possible case for gun control: mass shootings in schools."
        American Behavioral Scientist 52(10):1447-1464.

2009    (with Shun-Yung Wang) "The myth of big-time gun trafficking and the
        overinterpretation of gun tracing data." UCLA Law Review 56(5):1233-1294.

2009    (with Tomislav Kovandzic)  "City-level characteristics and individual handgun
        ownership: effects of collective security and homicide." Journal of Contemporary

Criminal Justice 25(1):45-66.

2009   (with Marc Gertz and Jason Bratton)  "Why do people support gun control?"
       Journal of Criminal Justice 37(5):496-504.

2011   (with James C. Barnes)  "Article productivity among the faculty of criminology
       and criminal justice doctoral programs, 2005-2009." Journal of Criminal Justice
       Education 22(1):43-66.

2011   (with Tomislav Kovandzic, Mark Saber, and Will Hauser).  "The effect of
       perceived risk and victimization on plans to purchase a gun for self-protection."
       Journal of  Criminal Justice 39(4):312-319.

2013   (with Will Hauser)  "Guns and fear: a one-way street?" Crime and Delinquency
       59:271-291.

2013   "Gun control after Heller and McDonald: what cannot be done and what ought to
       be done." Fordham Urban Law Journal 39(5):1383-1420.

2013   (with J. C. Barnes)  "Deterrence and macro-level perceptions of punishment
       risks: is there a "collective wisdom?" Crime and Delinquency 59(7):1006-1035.

2013   (with Tomislav Kovandzic and Mark Schaffer) "Estimating the causal effect of
       gun prevalence on homicide rates: A local average treatment effect
       approach." Journal of Quantitative Criminology 28(4):477-541.

2014   (with Jongyeon Tark) "Resisting rape: the effects of victim self-protection on
       rape completion and injury." Violence Against Women 23(3): 270-292.

2014   (with J. C. Barnes) "Do more police generate more crime deterrence?"
       Crime and Delinquency 60(5):716-738.

2015    "The impact of gun ownership rates on crime rates:  a methodological review of the evidence." Journal of  Criminal Justice 43(1):40-48.

2016    (with Tom Kovandzic and Jon Bellows)  "Does gun control reduce violent crime?  Criminal Justice Review 41:488-513.

2016    "Objective risks and individual perceptions of those risks."  Criminology & Public Policy 15:767-775.

2016    (with Dylan Jackson)  "Adult unemployment and serious property crime: A national case-control study." Journal of Quantitative Criminology 32:489-513.

2016    "The effect of large-capacity magazines on the casualty count of mass shootings." Justice Research and Policy 17:28-47.

2016    (with Will Hauser)  "Confidence in the police and fear of crime: do police force size and productivity matter?"  American Journal of Criminal Justice.  Published online 2-12-16.

2016    (with Bethany Mims)  "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2010-2014."  Journal of Criminal Justice Education.  Published online 3-11-16.

2016    (with Dylan Jackson)  "Does crime cause punitiveness?"  Crime & Delinquency. Published online 3-27-16.

## OTHER PUBLISHED ARTICLES

1985    "Policy lessons from recent gun control research." Law and Contemporary Problems 49(1):35-62.

1992    "Assault weapons aren't the problem." <u>New York Times</u> September 1, 1992, p.
        A15.  Invited Op-Ed page article.

1993    "The incidence of violence among young people." <u>The Public Perspective</u> 4:3-6.
         Invited article.

1994    "Guns and self-protection." <u>Journal of the Medical Association of Georgia</u> 83:42.
        Invited editorial.

1998    "Using speculation to meet evidence: reply to Alba and Messner." <u>Journal on
        Firearms and Public Policy</u> 9:13-49.

1998    "Has the gun deterrence hypothesis been discredited?" <u>Journal on Firearms and
        Public Policy</u> 10:65-75.

1999    "There are no lessons to be learned from Littleton." <u>Criminal Justice Ethics</u> 18(1):2,
        61-63.  Invited commentary.

1999    "Risks and benefits of gun ownership - reply." <u>Journal of the American Medical
        Association</u> 282(2):136-136.

1999    "The misfire that wounded Colt's." <u>New York Times</u> October 23, 1999.  Invited
        Op-Ed page article.

1999    "Degrading scientific standards to get the defensive gun use estimate down."
        <u>Journal on Firearms and Public Policy</u> 11:77-137.

2000    "Guns aren't ready to be smart." <u>New York Times</u> March 11, 2000.  Invited Op-Ed
        page article.

2000    (with Chester Britt III and David J. Bordua) "The emperor has no clothes: Using

interrupted time series designs to evaluate social policy impact." <u>Journal on Firearms and Public Policy</u> 12:197-247.

2001  "School lesson: armed self-defense works." <u>Wall Street Journal</u> March 27, 2001. Invited opinion article.

2001   "Impossible policy evaluations and impossible conclusions: a comment on Koper and Roth." <u>Journal of Quantitative Criminology</u> 17(1):75-80.

2001  "Absolutist politics in a moderate package: prohibitionist intentions of the gun control movement." <u>Journal on Firearms and Public Policy</u> 13:1-43.

2002  "Research agenda on guns, violence, and gun control." <u>Journal on Firearms and Public Policy</u> 14:51-72.

2006  "Off target." <u>New York Sun</u> January 5, 2006.  Invited opinion article.

2009  "How not to study the effect of gun levels on violence rates." <u>Journal on Firearms and Public Policy</u> 21:65-93.

2011  "Mass killings aren't the real gun problem --- how to tailor gun-control measures to common crimes, not aberrant catastrophes." <u>Wall Street Journal</u>, January 15, 2011.  Invited opinion article.

2011  "The myth of big-time gun trafficking." <u>Wall Street Journal</u> May 21, 2011. Invited opinion article.

2015  "Defensive gun ownership is not a myth: why my critics still have it wrong." <u>Politico Magazine</u>, February 17, 2015.  Online at Politico.Com.

2016  Kleck, Gary.  "The impact on crime of state laws allowing concealed weapon carrying among 18-20 Year-olds."  To appear in the <u>Journal on Firearms and Public Policy</u>.

BOOK CHAPTERS

1984   (with David Bordua)  "The assumptions of gun control."  Pp. 23-48 in

Don B. Kates, Jr. (ed.) Firearms and Violence: Issues of Regulation. Cambridge,

Mass.: Ballinger.

(Also appeared in Federal Regulation of Firearms, report prepared by the

Congressional Research Service, Library of Congress, for the Committee on

the Judiciary, United States Senate, 1982).

1984   "The relationship between gun ownership levels and rates of violence in the U.S."

Pp. 99-135 in Kates, above.

1984   "Handgun-only gun control: a policy disaster in the making."  Pp. 167-199 in

Kates, above.

1996   "Racial discrimination in criminal sentencing."  Pp. 339-344 in Crime and

Society, Volume III – Readings: Criminal Justice, edited by George Bridges, Robert

D. Crutchfield, and Joseph G. Weis.  Thousand Oaks, Calif.: Pine

Forge Press.

1996   "Gun buy-back programs: nothing succeeds like failure."  Pp. 29-53 in

Under Fire: Gun Buy-Backs, Exchanges and Amnesty Programs, edited by Martha R.

Plotkin.  Washington, D.C.: Police Executive Research Forum.

2000   "Firearms and crime."  Pp. 230-234 in the Encyclopedia of Criminology and

Deviant Behavior, edited by Clifton D. Bryant.  Philadelphia: Taylor

& Francis, Inc.

2001    (with Leroy Gould and Marc Gertz) "Crime as social interaction."  Pp. 101-114 in

        <u>What is Crime?: Controversy over the Nature of Crime and What to Do About It</u>,

        edited by Stuart Henry and Mark M. Lanier.  Lanham, Md.: Rowman and Littlefield.

2003    "Constricted rationality and the limits of general deterrence."  Chapter 13 in

        <u>Punishment and Social Control: Enlarged Second Edition</u>, edited by Thomas G.

        Blomberg.  New York: Aldine de Gruyter.

2004    "The great American gun debate: what research has to say."  Pp. 470-487 in <u>The</u>

        <u>Criminal Justice System: Politics and Policies</u>, 9th edition, edited by George F. Cole,

        Marc Gertz, and Amy Bunger.  Belmont, CA: Wadsworth-Thomson.

2008    "Gun control." Article in <u>The Encyclopedia of Social Problems</u>, edited by

        Vincent N. Parrillo. Thousand Oaks, CA: Sage.

2009    "Guns and crime." Invited chapter.  Pp. 85-92 in <u>21st Century Criminology: A</u>

        <u>Reference Handbook</u>, edited by J. Mitchell Miller. Thousand Oaks, CA: Sage.

2012     Kovandzic, Tomislav, Mark E. Schaffer, and Gary Kleck. "Gun prevalence,

        homicide rates and causality: A GMM approach to endogeneity bias."  Chapter 6, pp.

        76-92 in <u>The Sage Handbook of Criminological Research Methods</u>, edited

        by David Gadd, Susanne Karstedt, and  Steven F. Messner.  Thousand Oaks, CA:

        Sage.

2012    (with Kelly Roberts) "What survey modes are most effective in eliciting

        self-reports of criminal or delinquent behavior?"  Pp. 415-439 in <u>Handbook of</u>

        <u>Survey Methodology</u>, edited by Lior Gideon.  NY: Springer.

2013   "An overview of gun control policy in the United States."  Pp. 562-579 in The

Criminal Justice System, 10th edition, Edited by George F. Cole and Marc G.

Gertz. Wadsworth.

2014   "Deterrence: actual vs. perceived risk of punishment.  Article in Encyclopedia of

Criminology and Criminal Justice. Berlin: Springer Verlag.

BOOK REVIEWS

1978   Review of Murder in Space City: A Cultural Analysis of Houston Homicide

Patterns, by Henry Lundsgaarde.  Contemporary Sociology 7:291-293.

1984   Review of Under the Gun, by James Wright et al. Contemporary Sociology

13:294-296.

1984   Review of Social Control, ed. by Jack Gibbs.  Social Forces 63: 579-581.

1985    Review of Armed and Considered Dangerous, by James Wright and Peter Rossi,

Social Forces 66:1139-1140.

1988   Review of The Citizen's Guide to Gun Control, by Franklin Zimring and Gordon

Hawkins, Contemporary Sociology 17:363-364.

1989   Review of Sociological Justice, by Donald Black, Contemporary Sociology

19:261-3.

1991   Review of Equal Justice and the Death Penalty, by David C. Baldus, George G.

Woodworth, and Charles A. Pulaski, Jr.  Contemporary Sociology 20:598-9.

1999    Review of Crime is Not the Problem, by Franklin E. Zimring and Gordon

Hawkins.  American Journal of Sociology 104(5):1543-1544.

2001   Review of <u>Gun Violence: the Real Costs</u>, by Philip J. Cook and Jens Ludwig. <u>Criminal Law Bulletin</u> 37(5):544-547.

2010   Review of  <u>Homicide and Gun Control: The Brady Handgun Violence Prevention Act and Homicide Rates</u>, by J. D. Monroe. <u>Criminal Justice Review</u> 35(1):118-120.

LETTERS PUBLISHED IN SCHOLARLY JOURNALS

1987   "Accidental firearm fatalities."  <u>American Journal of Public Health</u> 77:513.

1992   "Suicide in the home in relation to gun ownership." <u>The New England Journal of Medicine</u> 327:1878.

1993   "Gun ownership and crime." <u>Canadian Medical Association Journal</u> 149:1773-1774.

1999   "Risks and benefits of gun ownership." <u>Journal of the American Medical Association</u> 282:136.

2000   (with Thomas Marvell) "Impact of the Brady Act on homicide and suicide rates." <u>Journal of the American Medical Association</u> 284:2718-2719.

2001   "Violence, drugs, guns (and Switzerland)." <u>Scientific American</u> 284(2):12.

2002   "Doubts about undercounts of gun accident deaths." <u>Injury Prevention Online</u> (September 19, 2002). Published online at <u>http://ip.bmjjournals.com/cgi/eletters</u> /8/3/252.

2005   "Firearms, violence, and self-protection." <u>Science</u> 309:1674. September 9, 2005.

UNPUBLISHED REPORT

1987   <u>Violence, Fear, and Guns at Florida State University: A Report to the President's Committee on Student Safety and Welfare</u>. Reports results of campus crime

victimization survey and review of campus police statistics on gun violence (32 pages).

RESEARCH FUNDING

1994   "The Impact of Drug Enforcement on Urban Drug Use Levels and Crime Rates." $9,500 awarded by the U.S. Sentencing Commission.

1997   "Testing a Fundamental Assumption of Deterrence-Based Crime Control Policy." $80,590 awarded by the Charles E. Culpeper Foundation to study the link between actual and perceived punishment levels.

PRESENTED PAPERS

1976   "Firearms, homicide, and the death penalty:  a simultaneous equations analysis." Presented at the annual meetings of the Illinois Sociological Association, Chicago.

1979   "The assumptions of gun control."  Presented at the Annual Meetings of the American Sociological Association, New York City.

1980   "Handgun-only gun control:  A policy disaster in the making."  Presented at the Annual Meetings of the American Society of Criminology, Washington, D.C.

1981   "Life support for ailing hypotheses:  Modes of summarizing the evidence on racial discrimination."  Presented at the Annual Meetings of the American Society of Criminology, Toronto.

1984   "Policy lessons from recent gun control research."  Presented at the Duke University Law School Conference on Gun Control.

1985   "Policy lessons from recent gun control research." Presented at the Annual Meetings of the American Society of Criminology, San Diego.

1986   "Miscounting suicides."  Presented at the Annual Meetings of the American Sociological Association, Chicago.

1987   (with Theodore G. Chiricos, Michael Hays, and Laura Myers) "Unemployment and crime: a comparison of motivation and opportunity effects."  Annual meetings of the American Society of Criminology, Montreal.

1988   "Suicide, guns and gun control."  Presented at the Annual Meetings of the Popular Culture Association, New Orleans.

1988    (with Susan Sayles)  "Rape and resistance."     Presented at the Annual Meetings of the American Society of Criminology, Chicago, Ill.

1989   (with Karen McElrath)  "The impact of weaponry on human violence."  Presented at the Annual Meetings of the American Sociological Association, San Francisco.

1989   (with Britt Patterson)  "The impact of gun control and gun ownership levels on city violence rates."  Presented at the Annual Meetings of the American Society of Criminology, Reno.

1990   "Guns and violence: a summary of the field."  Presented at the Annual Meetings of the American Political Science Association, Washington, D.C.

1991   "Interrupted time series designs: time for a re-evaluation."  Presented at the Annual Meetings of the American Society of Criminology, New Orleans.

1993   (with Chester Britt III and David J. Bordua) "The emperor has no clothes: Using interrupted time series designs to evaluate social policy impact." Presented at the Annual Meetings of the American Society of Criminology, Phoenix.

1992   "Crime, culture conflict and support for gun laws: a multi-level application of the
General Social Surveys."  Presented at the Annual Meetings of the
American Society of Criminology, Phoenix.

1994   (with Marc Gertz) "Armed resistance to crime: the prevalence and nature of self-
defense with a gun."  Presented at the Annual Meetings of the American Society of
Criminology, Miami.

1995   (with Tom Jordan) "The impact of drug enforcement and penalty levels on urban
drug use levels and crime rates."  Presented at the Annual Meetings of
the American Society of Criminology, Boston.

1996   (with Michael Hogan) "A national case-control study of homicide offending and gun
ownership." Presented at the Annual Meetings of the American Society of
Criminology, Chicago.

1997   "Evaluating the Brady Act and increasing the utility of BATF tracing data."
Presented at the annual meetings of the Homicide Research Working Group,
Shepherdstown, West Virginia.

1997   "Crime, collective security, and gun ownership: a multi-level application of the
General Social Surveys."  Presented at the Annual Meetings of the American Society
of Criminology, San Diego.

1998   (with Brion Sever and Marc Gertz) "Testing a fundamental assumption of deterrence-
based crime control policy."  Presented at the Annual Meetings of the American
Society of Criminology, Washington, D.C.

1998    "Measuring macro-level gun ownership levels." Presented at the Annual Meetings of the American Society of Criminology, Washington, D.C.

1999    "Can owning a gun really triple the owner's chances of being murdered?"  Presented at the Annual Meetings of the American Society of Criminology, Toronto.

2000    "Absolutist politics in a moderate package: prohibitionist intentions of the gun control movement."  Presented at the Annual Meetings of the American Society of Criminology, San Francisco.

2001    (with Tomislav V. Kovandzic) "The impact of gun laws and gun levels on crime rates."  Presented at the Annual Meetings of the American Society of Criminology, Atlanta.

2001    "Measures of gun ownership levels for macro-level violence research."  Presented at the Annual Meetings of the American Society of Criminology, Atlanta.

2001    "The effects of gun ownership levels and gun control laws on urban crime rates."  Presented at the Annual Meetings of the American Society of Criminology, Chicago.

2003    (with Tomislav V. Kovandzic) "The effect of gun levels on violence rates depends on who has them." Presented at the Annual Meetings of the American Society of Criminology, Denver.

2003    (with KyuBeom Choi) "Filling in the gap in the causal link of deterrence."  Presented at the Annual Meetings of the American Society of Criminology, Denver.

2004    (with Tomislav Kovandzic) "Do violent crime rates and police strength levels in the community influence whether individuals own guns?"  Presented at the Annual

Meetings of the American Society of Criminology, Nashville.

2004  (with Jongyeon Tark) "Resisting crime: the effects of victim action on the outcomes of crime."  Presented at the Annual Meetings of the American Society of Criminology, Nashville.

2005  (with Jongyeon Tark) "The impact of self-protection on rape completion and injury." Presented at the Annual Meetings of the American Society of Criminology, Nashville.

2004  (with Kyubeom Choi) "The perceptual gap phenomenon and deterrence as psychological coercion." Presented at the Annual Meetings of the American Society of Criminology, Nashville.

2005  (with Jongyeon Tark) "Who resists crime?" Presented at the Annual Meetings of the American Society of Criminology, Toronto.

2005  (with Jongyeon Tark and Laura Bedard) "Crime and marriage."  Presented at the Annual Meetings of the American Society of Criminology, Toronto.

2006  (with Shun-Yang Kevin Wang)"Organized gun trafficking, 'crime guns,' and crime rates."  Presented at the Annual Meetings of the American Society of Criminology, Los Angeles.

2006  "Are police officers more likely to kill black suspects?"  Presented at the Annual Meetings of the American Society of Criminology, Los Angeles.

2007  (with Shun-Yang Kevin Wang) "The myth of big-time gun trafficking. "Presented at the Annual Meetings of the American Society of Criminology, Atlanta.

2007  (with Marc Gertz and Jason Bratton)  "Why do people support gun control?" Presented at the Annual Meetings of the American Society of Criminology, Atlanta.

2008   (with J.C. Barnes)  "Deterrence and macro-level perceptions of punishment risks: Is there a "collective wisdom?"  Presented at the Annual Meetings of the American Society of Criminology,  St. Louis.

2009   "The myth of big-time gun trafficking."  Presented at UCLA Law Review Symposium, "The Second Amendment and the Right to Bear Arms After DC v. Heller."  January 23, 2009, Los Angeles.

2009   (with Shun-Yung Wang) "Employment and crime and delinquency of working youth: A longitudinal study of youth employment."  Presented at the Annual Meetings of the American Society of Criminology, November 6, 2009, Philadelphia, PA.

2009   (with J. C. Barnes)  "Do more police generate more deterrence?"  Presented at the Annual Meetings of the American Society of Criminology, November 4, 2009, Philadelphia, PA.

2010   (with J. C. Barnes) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2005-2009."  Presented at the annual Meetings of the American Society of Criminology, November 18, 2010, San Francisco, CA.

2010   (with Will Hauser) "Fear of crime and gun ownership."  Presented at the annual Meetings of the American Society of Criminology, November 18, 2010, San Francisco, CA.

2010   "Errors in survey estimates of defensive gun use frequency: results from national Internet survey experiments."  Presented at the annual Meetings

of the American Society of Criminology, November 19, 2010, San Francisco, CA.

2010   (with Mark Faber and Tomislav Kovandzic)  "Perceived risk, criminal

victimization, and prospective gun ownership."  Presented at the annual Meetings

of the American Society of Criminology, November 19, 2010, San Francisco, CA.

2011   (with Shun-young Wang) "The impact of job quality and career commitment on

delinquency: conditional or universal?"  Presented at the annual Meetings

of the American Society of Criminology, November 17, 2011.

2011   (with Moonki Hong) "The short-term deterrent effect of executions on homicides

in the United States, 1984-1998."  Presented at the annual Meetings

of the American Society of Criminology, November 16, 2011.

2011   (with Kelly Roberts)  "Which survey modes are most effective in getting people

to admit illegal behaviors?"  Presented at the annual Meetings of the American

Society of Criminology, November 17, 2011.

2011   (with Will Hauser)  "Pick on someone your own size: do health, fitness, and size

influence victim selection?" Presented at the annual Meetings

of the American Society of Criminology, November 18, 2011.

2011   (with Tomislav Kovandzic) "Is the macro-level crime/punishment association

spurious?"  Presented at the annual Meetings of the American Society of

Criminology, November 18, 2011.

2012   (with Dylan Jackson) "Adult unemployment and serious property crime: a

national case-control study."  Presented at the annual Meetings of the American

Society of Criminology, November 15, 2012.

2013   (with Will Hauser) "Confidence in the Police and Fear of Crime: Do Police Force Size and Productivity Matter?"  Presented at the annual Meetings of the American Society of Criminology, November 22, 2013.

2013.  (with Dylan Jackson) "Adult unemployment and serious property crime: a national case-control study."  Presented at the annual Meetings of the American Society of Criminology, November 22, 2013.

2014   (with Dylan Jackson) "Does Crime Cause Punitiveness?"  Presented at the annual Meetings of the American Society of Criminology, November 20, 2014.

2015   "The effect of large capacity magazines on the casualty counts in mass shootings."  Presented at the annual Meetings of the American Society of Criminology, November 18, 2015.

2015   (with Bethany Mims) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2010-2014."  Presented at the annual Meetings of the American Society of Criminology, November 20, 2015.

CHAIR

1983   Chair, session on Race and Crime.  Annual meetings of the American Society of Criminology, Denver.

1989   Co-chair (with Merry Morash), roundtable session on problems in analyzing the National Crime Surveys.  Annual meetings of the American Society of Criminology, Reno.

1993   Chair, session on Interrupted Time Series Designs. Annual meetings of the American Society of Criminology, New Orleans.

1993   Chair, session on Guns, Gun Control, and Violence. Annual meetings of the American Society of Criminology, Phoenix.

1994   Chair, session on International Drug Enforcement. Annual meetings of the American Society of Criminology, Boston.

1999   Chair, Author-Meets-Critics session, More Guns, Less Crime.  Annual meetings of the American Society of Criminology, Toronto.

2000   Chair, session on Defensive Weapon and Gun Use.  Annual Meetings of the American Society of Criminology, San Francisco.

2002   Chair, session on the Causes of Gun Crime. Annual meetings of the American Society of Criminology, Chicago.

2004   Chair, session on Protecting the Victim.  Annual meetings of the American Society of Criminology, Nashville.

DISCUSSANT

1981   Session on Gun Control Legislation, Annual Meetings of the American Society of Criminology, Washington, D.C.

1984   Session on Criminal Sentencing, Annual Meetings of the American Society of Criminology, Cincinnati.

1986   Session on Sentencing, Annual Meetings of the American Society of Criminology, Atlanta.

1988   Session on Gun Ownership and Self-protection, Annual Meetings of the Popular Culture Association, Montreal.

1991   Session on Gun Control, Annual Meetings of the American Statistical

Association, Atlanta, Ga.

1995   Session on International Drug Enforcement, Annual Meetings of the American

Society of Criminology, Boston.

2000   Session on Defensive Weapon and Gun Use, Annual Meetings of the American

Society of Criminology, San Francisco.

2004   Author-Meets-Critic session on Guns, Violence, and Identity Among African-

American and Latino Youth, by Deanna Wilkinson.  Annual meetings of the

American Society of Criminology, Nashville.

2007   Session on Deterrence and Perceptions, University of Maryland 2007 Crime &

Population Dynamics Summer Workshop, Aspen Wye River Center, Queenstown

MD, June 4, 2007.

2009   Session on Guns and Crime, at the DeVoe Moore Center Symposium On

The Economics of Crime, March 26-28, 2009.

2012   Panel discussion of news media coverage of high profile crimes

Held at the Florida Supreme Court On September 24-25, 2012, sponsored by the

Florida Bar Association as part of their 2012 Reporters' Workshop.

PROFESSIONAL SERVICE

Editorial consultant -

American Sociological Review

American Journal of Sociology

Social Forces

Social Problems

Law and Society Review

Journal of Research in Crime and Delinquency

Social Science Research

Criminology

Journal of Quantitative Criminology

Justice Quarterly

Journal of Criminal Justice

Violence and Victims

Violence Against Women

Journal of the American Medical Association

New England Journal of Medicine

American Journal of Public Health

Journal of Homicide Studies

Grants consultant, National Science Foundation, Sociology Program.

Member, Gene LeCarte Student Paper Committee, American Society of Criminology, 1990.

Area Chair, Methods Area, American Society of Criminology, annual meetings in Miami, November, 1994.

Division Chair, Guns Division, American Society of Criminology, annual meetings in Washington, D.C., November, 1998.

Dissertation evaluator, University of Capetown, Union of South Africa, 1998.

Division Chair, Guns Division, American Society of Criminology, annual meetings in Washington, D.C., November, 1999.

Member of Academy of Criminal Justice Sciences selection committee for Editor of <u>Justice</u>

<u>Quarterly</u>, 2007.

Outside reviewer of Dr. J. Pete Blair for promotion to Full Professor in the School of

Criminal Justice at Texas State University, San Marcos, 2014.


UNIVERSITY SERVICE

Member, Master's Comprehensive Examination Committee, School of Criminology, 1979-

1982.

Faculty Advisor, Lambda Alpha Epsilon (FSU chapter of American Criminal Justice

Association), 1980-1988.

Faculty Senate Member, 1984-1992.

Carried out campus crime survey for President's Committee on Student Safety and Welfare,

1986.

Member, Strategic Planning and Budgeting Review Committee for Institute for Science and

Public Affairs, and Departments of Physics and Economics, 1986.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of

Criminology, Summer, 1986.

Member, Committee on Ph.D. Comprehensive Examination in Research Methods, School of

Criminology, Summer, 1986 to present.

Chair, Committee on Graduate Assistantships, School of Criminology, Spring, 1987.

Chair, Ad Hoc Committee on Computers, School of Criminology, Fall, 1987.

Member, Recruitment Committee, School of Criminology, Spring, 1988; Spring, 1989; and 1989-90 academic year.

Member, Faculty Senate Committee on Computer-Related Curriculum, Spring, 1988 to Fall, 1989.

Chair, Ad Hoc Committee on Merit Salary Distribution, School of Criminology, Spring, 1988.

Chair, Ad Hoc Committee on Enrollment Strains, Spring, 1989.

Member, Graduate Handbook Committee, School of Criminology, Spring, 1990.

Member, Internal Advisement Committee, School of Criminology Spring, 1990.

University Commencement Marshall, 1990 to 1993.

Member, School of Criminology and Criminal Justice Teaching Incentive Program award committee.

Chair, Faculty Recruitment Committee, School of Criminology and Criminal Justice, 1994-1995.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of Criminology and Criminal Justice, 1994-1995.

Member, University Computer and Information Resources Committee, 1995-1998.

Member, University Fellowship Committee, 1995 to present.

Member, University Library Committee, 1996 to 1999.

Chair, Electronic Access Subcommittee, University Library Committee, 1998 to 1999.

Member, Ad Hoc Committee on Merit Salary Increase Allocation, School of Criminology and Criminal Justice, 1998-1999.

Member, Academic Committee, School of Criminology and Criminal Justice, 2000- .

Member, Recruiting Committee, School of Criminology and Criminal Justice, 2000-
2001.

Member, Promotion and Tenure Committee, School of Criminology and Criminal Justice,
2000-.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of
Criminology and Criminal Justice, 2000-2002.

Chair, Promotion and Tenure Committee, School of Criminology and Criminal Justice,
2001-2002.

Faculty Adviser, School of Criminology and Criminal Justice Graduate Student
Association, 2001-present.

Member, ad hoc committee on survey research, School of Criminology and Criminal
Justice, 2002.

Coordinator of Parts 2 and 4 of the School of Criminology and Criminal Justice Unit
Review, 2002.

Chair, Academic Committee, School of Criminology and Criminal Justice, 2002-2003.

Director, Honors Programs, School of Criminology and Criminal Justice, 2002-present.

Member, University Promotion and Tenure Committee, Fall, 2003 to present.

Member of University Graduate Policy Committee, Fall 2003 to .

Director of Graduate Studies, School (later College) of Criminology and Criminal Justice,
April 2004 to May 2011.

Chair, Promotion and Tenure Committee, College of Criminology and Criminal Justice,

2005-2006

Served as major professor on Area Paper by Christopher Rosbough, completed in 2012.

Served as member of dissertation committee of Kristen Lavin, dissertation completed in

2012.

Served as member of dissertation committee of Elizabeth Stupi, dissertation completed in

2013.

Served as outside member on two dissertation committees in 2014-2015: Brian Meehan

in the Department of Economics and Adam Weinstein in the English Department.

Both dissertations were completed.

Served as major professor on Area Paper on legalization of marijuana for Pedro Juan

Matos Silva, Spring 2015.  Paper completed.

Served as major professor for doctoral student Moonki Hong, who finished his dissertation. .


PUBLIC SERVICE

Television, radio, newspaper, magazine, and Internet interviews concerning gun control,

racial bias in sentencing, crime statistics, and the death penalty.  Interviews and other

kinds of news media contacts include Newsweek, Time, U.S. News and World Report,

New York Times, Washington Post, Chicago Tribune, Los Angeles Times, USA Today,

Boston Globe, Wall Street Journal, Kansas City Star, Philadelphia Inquirer, Philadelphia

News, Atlanta Constitution, Atlanta Journal, Arizona Republican, San

Antonio Express-News, Dallas Morning News, Miami Herald, Tampa Tribune,

Jacksonville Times-Union, Womens' Day, Harper's Bazaar, Playboy, CBS-TV (60

Minutes; Street Stories) ABC-TV (World News Tonight; Nightline), NBC-TV (Nightly

News), Cable News Network, Canadian Broadcasting Company, National Public Radio,

Huffington Post, PolitiFact.com, and many others.

Resource person, Subcommittee on Crime and Justice, (Florida House) Speaker's Advisory

Committee on the Future,  February 6-7, 1986, Florida State Capitol.

Testimony before the U.S. Congress, House Select Committee on Children, Youth and

Families, June 15, 1989.

Discussant, National Research Council/National Academy of Sciences Symposium on the

Understanding and Control of Violent Behavior, April 1-4, 1990, Destin, Florida.

Colloquium on manipulation of statistics relevant to public policy, Statistics Department,

Florida State University, October, 1992.

Speech to faculty, students, and alumni at Silver Anniversary of Northeastern University

College of  Criminal Justice, May 15, 1993.

Speech to faculty and students at Department of Sociology, University of New Mexico,

October, 1993.

Speech on the impact of gun control laws, annual meetings of the Justice Research and

Statistics Association, October, 1993, Albuquerque, New Mexico.

Testimony before the Hawaii House Judiciary Committee, Honolulu, Hawaii, March 12,

1994.

Briefing of the National Executive Institute, FBI Academy, Quantico, Virginia, March 18,

1994.

Delivered the annual Nettler Lecture at the University of Alberta, Edmonton, Canada,

March 21, 1994.

Member, Drugs-Violence Task Force, U.S. Sentencing Commission, 1994-1996.

Testimony before the Pennsylvania Senate Select Committee to Investigate the Use of
Automatic and Semiautomatic Firearms, Pittsburgh, Pennsylvania, August 16, 1994.

Delivered lectures in the annual Provost's Lecture Series, Bloomsburg University,
Bloomsburg, Pa., September 19, 1994.

Briefing of the National Executive Institute, FBI Academy,    Quantico, Virginia, June 29,
1995.

Speech to personnel in research branches of crime-related State of Florida agencies,
Research and Statistics Conference, sponsored by the Office of the State Courts
Administrator, October 19, 1995.

Speech to the Third Annual Legislative Workshop, sponsored by the James Madison
Institute and the Foundation for Florida's Future, February 5, 1998.

Speech at the Florida Department of Law Enforcement on the state's criminal justice
research agenda, December, 1998.

Briefing on news media coverage of guns and violence issues, to the Criminal Justice
Journalists organization, at the American Society of Criminology annual meetings in
Washington, D.C., November 12, 1998.

Briefing on gun control strategies to the Rand Corporation conference on "Effective
Strategies for Reducing Gun Violence,"  Santa Monica, Calif., January 21, 2000.

Speech on deterrence to the faculty of the Florida State University School of Law, February
10, 2000.

Invited address on links between guns and violence to the National Research Council

Committee on Improving Research Information and Data on Firearms, November 15-

16, 2001, Irvine, California.

Invited address on research on guns and self-defense to the National Research Council

Committee on Improving Research Information and Data on Firearms, January 16-

17, 2002, Washington, D.C.

Invited address on gun control, Northern Illinois University, April 19, 2002.

Invited address to the faculty of the School of Public Health, University of Alabama,

Birmingham, 2004.

Invited address to the faculty of the School of Public Health, University of Pennsylvania,

March 5, 2004.

Member of Justice Quarterly Editor Selection Committee, Academy of Criminal Justice

Sciences, Spring 2007

Testified before the Gubernatorial Task Force for University Campus Safety, Tallahassee,

Florida, May 3, 2007.

Gave public address, "Guns & Violence: Good Guys vs. Bad Guys," Western Carolina

University, Cullowhee, North Carolina, March 5, 2012.

Invited panelist, Fordham Law School Symposium, "Gun Control and the Second

Amendment,"   New York City, March 9, 2012.

Invited panelist, community forum on "Students, Safety & the Second Amendment,"

sponsored by the Tallahassee Democrat.

Invited address at University of West Florida, Department of Justice Studies, titled "Guns,

Self-Defense, and the Public Interest," April 12, 2013.

Member, National Research Council Committee on Priorities for a Public Health

Research Agenda to Reduce the Threat of Firearm-related Violence, May 2013.

Invited address at Davidson College, Davidson, NC, April 18, 2014.  Invited by the

Department of Philosophy.

OTHER ITEMS

Listed in:

Marquis Who's Who

Marquis Who's Who in the South and Southwest

Who's Who of Emerging Leaders in America

Contemporary Authors

Directory of American Scholars

Writer's Directory

Participant in First National Workshop on the National Crime Survey, College Park,

Maryland, July, 1987, co-sponsored by the Bureau of Justice Statistics and the

American Statistical Association.

Participant in Second National Workshop on the National Crime Survey, Washington, D.C.,

July, 1988.

Participant, Seton Hall Law School Conference on Gun Control, March 3, 1989.

Debater in Intelligence Squared program, on the proposition "Guns Reduce

Crime." Rockefeller University, New York City, October 28, 2008.  Podcast distributed

through National Public Radio.  Further details are available at

http://www.intelligencesquaredus.org/Event.aspx?Event=36.

Subject of cover story, "America Armed," in <u>Florida State University Research in</u>

<u>Review</u>, Winter/Spring 2009.

Grants reviewer, Social Sciences and Humanities Research Council of Canada, 2010.

Named one of "25 Top Criminal Justice Professors" in the U.S. by Forensics Colleges

website (http://www.forensicscolleges.com/), 2014.


## Expert Testimony in Past Five Years

Cook et al. v. Hickenlooper.  U.S. Court for the District of Colorado. Deposed and testified
March, April 2013.

Heller et al. v. District of Columbia (remand of *Heller II*). Deposed 7-2-13. Heller et al. v.
District of Columbia.  Deposed 7-2-13.

Wilson v. Cook County.  Circuit of Cook County, Illinois County Department, Chancery
Division.  Deposed 9-16-13.

Kolbe v. O'Malley. U.S. District Court for the District of Maryland.  Deposed 1-2-14.

Barbra Schlifer Commemorative Clinic v. HMQ Canada.  "Cross-examined" (Canadian term
for deposed) 2-24-14.


Dr. Arie S. Friedman and the Illinois State Rifle Association v. City of Highland Park.  Deposed

May or June 2014.

Tracy Rifle and Pistol v. Kamala D. Harris.  U.S. District Court, Eastern District of California.

Deposed 11-2-16.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, a California corporation,<br><br>              Plaintiffs,<br><br>          v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>              Defendant. | Case No:  17-cv-1017-BEN-JLB<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 E. Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

     I have cause service of the following documents, described as:

**DECLARATION OF GARY KLECK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; EXHIBIT MMM**

on all parties by placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at Long Beach, CA, on May 26, 2017.

Ms. Alexandra Robert Gordon
Mr. Anthony P. O'Brien
California Department of Justice
1300 I Street, Suite 125
Sacramento, CA 95814

     I declare under penalty of perjury that the foregoing is true and correct. Executed on May 26, 2017, at Long Beach, CA.

Laura Palmerin

PROOF OF SERVICE

17-cv-1017-BEN-JLB