C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| VIRGINIA DUNCAN, et al., | Case No:  17-cv-1017-BEN-JLB |
|---|---|
| Plaintiffs, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
| Defendant. | Hearing Date:    April 30, 2018<br>Hearing Time:    10:30 a.m.<br>Judge:              Hon. Roger T. Benitez<br>Courtroom:      5A |

1

REQUEST FOR JUDICIAL NOTICE

17cv1017

**REQUEST FOR JUDICIAL NOTICE**

Under Federal Rule of Evidence 201, Plaintiffs Virginia Duncan, Patrick Lovette, David Marguglio, and California Rifle and Pistol Association, Incorporated, respectfully request that the Court take judicial notice of the following documents in support of Defendant's motion for summary judgment:

1.      **Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888**. A true and correct copy of this document is attached as **Exhibit 69**.  Exhibit 69 is a public record of the Michigan Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

2.      **Act of Apr. 22, 1927, ch. 1052, §§ 1, 4, 1927 R.I. Acts & Resolves 256, 256-57.** A true and correct copy of this document is attached as **Exhibit 70**.  Exhibit 70 is a public record of the Rhode Island Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

3.      **Act of Apr. 6, 1933, No. 166, sec. 1, §§ 12819-3, -4, 1933 Ohio Laws 189, 189.** A true and correct copy of this document is attached as **Exhibit 71**.  Exhibit 71 is a public record of the Ohio Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

4.      **Act of Dec. 22, 1972, No. 511, sec. 1, § 2923.11, 1972 Ohio Laws 1866, 1963.** A true and correct copy of this document is attached as **Exhibit 72**. Exhibit 72 is a public record of the Ohio Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

5.      **Act of July 16, 1959, No. 175, sec. 1, § 224, 1959 Mich. Pub. Acts. 249.** A true and correct copy of this document is attached as **Exhibit 73**. Exhibit 73 is a public record of the Michigan Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

6.      **Firearms Act, ch. 278, sec. 1, § 11-47-2, 1975 R.I. Pub. Laws 738, 738-39, 742**. A true and correct copy of this document is attached as **Exhibit 74**. Exhibit 74 is a public record of the Rhode Island Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government documents saved in a fully searchable, image-based format (https://home.heinonline.org/).

7.      **H.B. 234, 2013-2014 Leg., 130th Sess. § 2 (Ohio 2014).** A true and correct copy of this document is attached as **Exhibit 75**. Exhibit 75 is a public record of the Ohio Legislature that was accessed on or about March 5, 2018, from the Ohio General Assembly archives, a fully searchable database of Ohio Legislative information. (http://archives.legislature.state.oh.us/bills.cfm?ID=130_HB_234).

8.      **Excerpts of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110103(a)-(b), 108 Stat. 1796.** A true and correct copy of this document is attached as **Exhibit 76**. Exhibit 76 is a public record of the United States Congress that was accessed on or about March 5, 2018, from Congress.gov, the official website for U.S. federal legislative information (https://www.congress.gov/103/bills/hr3355/BILLS-103hr3355enr.pdf).

9.      **Act of May 30, 1990, ch. 32, §§ 2C:39-1(y), -3(j), 1990 N.J. Laws 217, 221, 235.** A true and correct copy of this document is attached as **Exhibit 77**. Exhibit 77 is a public record of the New Jersey Legislature that was accessed on or about March 5, 2018, from HeinOnline, an online database of legal history and government

documents saved in a fully searchable, image-based format
(https://home.heinonline.org/).

10. **Act of July 8, 1932, Pub. L. No. 72-275, §§ 1, 8, 47 Stat. 650.** A true and correct copy of this document is attached as **Exhibit 78**. Exhibit 78 is a public record that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

11. **Colo. Rev. Stat. §§ 18-12-301–302.** A true and correct copy of this document is attached as **Exhibit 79**. Exhibit 79 is a public record of the Colorado Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

12. **Conn. Gen. Stat. § 53-202w.** A true and correct copy of this document is attached as **Exhibit 80**. Exhibit 80 is a public record of the Connecticut Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

13. **D.C. Code § 7-2506.01(b).** A true and correct copy of this document is attached as **Exhibit 81**. Exhibit 81 is a public record of the Federal Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

14. **Haw. Rev. Stat. § 134-8(c).** A true and correct copy of this document is attached as **Exhibit 82**. Exhibit 82 is a public record of the Hawaii Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

15. **Md. Code, Crim. Law § 4-305(b).** A true and correct copy of this document is attached as **Exhibit 83**. Exhibit 83 is a public record of the Maryland Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

16. **Mass. Gen. Laws ch. 140, §§ 121, 131(a).** A true and correct copy of this document is attached as **Exhibit 84**. Exhibit 84 is a public record of the

Massachusetts Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

17. **N.J. Stat. § 2C:39-1y, -3j, -9h.** A true and correct copy of this document is attached as **Exhibit 85**. Exhibit 85 is a public record of the New Jersey Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

18. **N.Y. Penal Law §§ 265.00, 265.36.** A true and correct copy of this document is attached as **Exhibit 86**. Exhibit 86 is a public record of the New York Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

Judicial notice is proper because the documents for which this request is made are "capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "A trial court may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (taking judicial notice of agency report). A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).

"Legislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (discussing legislative history of California statute). Futher, "a federal court must take judicial notice of state statutes 'without plea or proof.'" *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).

/ / /

/ / /

Here, the accuracy of all the public records subject to Plaintiffs' Request for Judicial Notice, consisting of enacted legislation and legislative history, cannot reasonably be questioned. Judicial notice of these records is therefore appropriate.

Dated: March 5, 2018                              **MICHEL & ASSOCIATES, P.C.**


                                                  /s/ Anna M. Barvir
                                                  Anna M. Barvir
                                                  Email: abarvir@michellawyers.com
                                                  Attorneys for Plaintiffs

REQUEST FOR JUDICIAL NOTICE

1

# EXHIBITS

2

## TABLE OF CONTENTS

3

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| 69 | Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888 | 00009-16 |
| 70 | Act of Apr. 22, 1927, ch. 1052, §§ 1, 4, 1927 R.I. Acts & Resolves 256, 256-57 | 00017-19 |
| 71 | Act of Apr. 6, 1933, No. 166, sec. 1, §§ 12819-3, -4, 1933 Ohio Laws 189, 189 | 00020-21 |
| 72 | Act of Dec. 22, 1972, No. 511, sec. 1, § 2923.11, 1972 Ohio Laws 1866, 1963 | 00022-24 |
| 73 | Act of July 16, 1959, No. 175, sec. 1, § 224, 1959 Mich. Pub. Acts. 249 | 00025-27 |
| 74 | Firearms Act, ch. 278, sec. 1, § 11-47-2, 1975 R.I. Pub. Laws 738, 738-39, 742 | 00028-31 |
| 75 | H.B. 234, 2013-2014 Leg., 130th Sess. § 2 (Ohio 2014) | 00032-48 |
| 76 | Excerpts of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110103(a)-(b), 108 Stat. 1796 | 00049-76 |
| 77 | Act of May 30, 1990, ch. 32, §§ 2C:39-1(y), -3(j), 1990 N.J. Laws 217, 221, 235 | 00077-80 |
| 78 | Act of July 8, 1932, Pub. L. No. 72-275, §§ 1, 8, 47 Stat. 650 | 00081-86 |
| 79 | Colo. Rev. Stat. §§ 18-12-301–302 | 00087-89 |
| 80 | Conn. Gen. Stat. § 53-202w | 00090-93 |
| 81 | D.C. Code § 7-2506.01(b) | 00094-96 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE

17cv1017

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| 82 | Haw. Rev. Stat. § 134-8(c) | 00097-99 |
| 83 | Md. Code, Crim. Law § 4-305(b) | 00100-102 |
| 84 | Mass. Gen. Laws ch. 140, §§ 121, 131(a) | 00103-115 |
| 85 | N.J. Stat. § 2C:39-1y, -3j, -9h | 00116-124 |
| 86 | N.Y. Penal Law §§ 265.00, 265.36 | 00125-147 |

# EXHIBIT 69

Exhibit 69
00009

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4424   Page 10 of 147

other purpose. Such persons shall hold office during the term of their employment by the state highway department but the authority herein vested shall cease upon the termination of such employment. The persons so appointed shall by reason of such appointment be members of the department of public safety during the terms of such appointment but shall serve without pay as members thereof.

Approved June 2, 1927.

———

[No. 372.]

AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession of certain weapons and attachments; to prohibit the pawning of certain firearms; to prohibit the sale, offering for sale, or possession for the purpose of sale of written or printed matter containing any offer to sell or deliver certain firearms or devices within this state; to provide penalties for the violations of this act, and to repeal act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen.

*The People of the State of Michigan enact:*

SECTION 1. The word "pistol" as used in this act shall mean any firearm, loaded or unloaded, thirty inches or less in length. The word "purchaser" shall mean any person who receives a pistol from another by purchase, gift or loan. The word "seller" shall mean any person who sells, furnishes, loans or gives a pistol to another.  *Words defined.*

SEC. 2. No person shall purchase a pistol as defined in this act without first having obtained a license therefor as  *License before purchase.*

Exhibit 69
00010

prescribed herein. The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue licenses to purchase pistols to applicants residing within the respective territories herein mentioned. No such license shall be granted to any person except he be nineteen years of age or over, and has resided in this state six months or more, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. Applications for such licenses shall be signed by the applicant under oath upon forms provided by the commissioner of public safety. Licenses to purchase pistols shall be executed in duplicate upon forms provided by the commissioner of public safety and shall be signed by the licensing authority. One copy of such license shall be delivered to the applicant and the duplicate of such license shall be retained by such licensing authority as a permanent official record for a period of six years. Such license shall be void unless used within ten days after the date of its issue. Any person who shall sell to another any pistol as defined in this act without complying with the requirements of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail not more than ninety days, or both such fine and imprisonment in the discretion of the court. Such license shall be signed in ink by the holder thereof in the presence of the person selling, loaning or giving a pistol to such licensee and shall thereupon be taken up by such person, signed by him in ink and shall be delivered or sent by registered mail within forty-eight hours to the commissioner of public safety. The seller shall certify upon said license in the space provided therefor the name of the person to whom such pistol was delivered, the make, style, calibre and number of such pistol, and shall further certify that such purchaser signed his name on said license in the presence of the seller. The provisions of this section shall not apply to the purchase of pistols from wholesalers by dealers regularly engaged in the business of selling pistols at retail, nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

**Sec. 3.** It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand

*Margin notes:*
To whom granted.
Executed in duplicate.
Misdemeanor; penalty.
Unlawful to manufacture, etc., certain firearms, etc.
Penalty for violation.

Exhibit 69
00011

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4426   Page 12 of 147

dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. The provisions of this section shall not apply, however, to any person, firm or corporation manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof.

SEC. 4. Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over three inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Felony, what deemed.* *Penalty.*

SEC. 5. No person shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him. No person shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license therefor as herein provided. Any person violating the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Unlawful to carry, etc., dagger, etc.*

SEC. 6. The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issue licenses to carry pistols concealed on the person to applicants residing within the respective territories herein mentioned. The county clerk of each county shall be clerk of such licensing boards, which boards shall be known in law as "The Concealed Weapon Licensing Board." No such license to carry a pistol concealed on the person shall be granted to any person except he be nineteen years of age or over and has resided in this state six months or over, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has *Concealed weapon licensing board.* *To whom license granted.*

Exhibit 69
00012

other proper reasons, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. The prosecuting attorney shall be the chairman of the said board, which shall convene at least once in each calendar month and at such other times as they shall be called to convene by the chairman. Such licenses shall be issued only upon written application signed by the applicant and on his oath and upon forms provided by the commissioner of public safety. Such licenses shall issue only with the approval of a majority of said board and shall be executed in triplicate upon forms provided by the commissioner of public safety and shall be signed in the name of the concealed weapon licensing board by the county clerk and the seal of the circuit court affixed thereto. One copy of such license shall be delivered to the applicant, the duplicate of said license shall be retained by the county clerk as a permanent official record for a period of six years, and the triplicate of such license shall be forwarded to the commissioner of public safety who shall file and index licenses so received by him and keep the same as a permanent official record for a period of six years. Each license shall be issued for a definite period of not more than one year, to be stated in the license, and no renewal of such license shall be granted except upon the filing of a new application. Every license issued hereunder shall bear the imprint of the right thumb of the licensee, or, if that be not possible, of the left thumb or some other finger of such licensee. Such licensee shall carry such license upon his person at all times when he may be carrying a pistol concealed upon his person and shall display such license upon the request of any peace officer.

*Chairman of board.*

*Duration of license.*

SEC. 7. All licenses heretofore issued in this state permitting a person to carry a pistol concealed upon his person shall expire at midnight, December thirty-one, nineteen hundred twenty-seven.

*When license to expire.*

SEC. 8. The licensing board herein created by section six may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing.

*When license revoked.*

Exhibit 69
00013

SEC. 9. On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county. Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section. A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and filed and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police, as the case may be. The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five. Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

*Safety inspection of weapons.*

*Certificate issued.*

SEC. 10. No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail for not more than ninety days or by both such fine and imprisonment in the discretion of the court.

*Pistol not accepted in pawn.*

SEC. 11. No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol. Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same. Any person convicted under this section shall be punished by a fine not to exceed five hundred dollars or by imprisonment

*Alteration of pistol unlawful.*

Exhibit 69
00014

892 PUBLIC ACTS, 1927—No. 372.

in the state prison not to exceed two years or by both such fine and imprisonment in the discretion of the court.

**Exceptions to act.**

SEC. 12. The provisions of section two, three, five and nine shall not apply to any peace officer of the state or any subdivision thereof who is regularly employed and paid by the state or such subdivision, or to any member of the army, navy or marine corps of the United States, or of organizations authorized by law to purchase or receive weapons from the United States or from this state, nor to the national guard or other duly authorized military organizations when on duty or drill, nor to the members thereof in going to or returning from their customary places of assembly or practice, nor to a person licensed to carry a pistol concealed upon his person issued by another state, nor to the regular and ordinary transportation of pistols as merchandise, or to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

**When unlawfully possessed.**

SEC. 13. When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that any pistol or other weapon or device mentioned in this act is unlawfully possessed or carried by any person, such magistrate shall, if he be satisfied that there is reasonable cause to believe the matters in said complaint be true, issue his warrant directed to any peace officer, commanding him to search the person or place described in such complaint, and if such pistol, weapon or device be there found; to seize and hold the same as evidence of a violation of this act.

**Forfeited to state.**

SEC. 14. All pistols, weapons or devices carried or possessed contrary to this act are hereby declared forfeited to the state.

**Certain books, etc., unlawful to sell, etc.**

SEC. 15. It shall be unlawful to sell or deliver within this state, or to offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, magazine, newspaper or other form of written or printed matter offering to sell or deliver, or containing an offer to sell or deliver to any person within this state from any place without this state any pistol or any weapon or device mentioned in section three hereof. The provisions of this section shall not apply to sales of or offers to sell pistols at wholesale to persons regularly engaged in the business of selling such pistols at wholesale or retail, nor to sales or offers to sell such pistols made or authorized by the United States government or any department or agency thereof.

**Penalty for violation.**

SEC. 16. Any person violating the provisions of section fifteen of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one hundred dollars or by imprisonment in the county jail not to exceed ninety days, or by both such fine and imprisonment in the discretion of the court.

Exhibit 69
00015

Case 3:17-cv-01017-BEN-JLB  Document 50-2  Filed 03/05/18  PageID.4430  Page 16 of 147

Sec. 17.  Act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen, are hereby repealed: *Provided, however,* That any proceedings pending under any of said sections herein repealed shall not be affected hereby but shall be concluded in accordance with the law of such repealed section or sections. *(margin: Acts repealed. Proviso.)*

Sec. 18.  This act is declared to be severable, and should any section hereof be hereafter declared unconstitutional or otherwise invalid, the remainder of the act shall not be affected thereby. *(margin: Saving clause.)*

Approved June 2, 1927.

----

## [No. 373.]

AN ACT to amend section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen hundred fifteen, entitled "An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms of civil actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act," being section thirteen thousand two hundred fifty-three of the compiled laws of nineteen hundred fifteen, as amended by act number two hundred forty-three of the public acts of nineteen hundred seventeen, and to add a new section thereto to stand as section thirty-one.

*The People of the State of Michigan enact:*

Section 1.  Section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen *(margin: Section amended.)*

Exhibit 07
00016

# EXHIBIT 70

Exhibit 70
00017

256   JANUARY SESSION, 1927—CHAPTER 1052.

## CHAPTER 1052.

H 729 A
Approved
April 22, 1927.

AN ACT TO REGULATE THE POSSESSION OF FIREARMS.

*It is enacted by the General Assembly as follows:*

Certain words
and phrases,
how construed:

SECTION 1.   When used in this act the following words and phrases shall be construed as follows:

"Pistol."

"Pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall length less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only.

"Machine
gun."

"Machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading.

"Firearm."

"Firearm" shall include any machine gun or pistol.

"Person."

"Person" shall include firm, association or corporation.

"Licensing
authorities."

"Licensing authorities" shall mean the board of police commissioners of a city or town where such board has been instituted, the chief of police or superintendent of police of other cities and towns having a regular organized police force, and in towns where there is no chief of police or superintendent of police it shall mean the town clerk who may issue licenses upon the recommendation of the town sergeant;

"Crime of
violence."

"Crime of violence" shall mean and include any of the following crimes or an attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering.

"Sell."
"Purchase."
"Purchasing."

"Sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly."

Exhibit 70
00018

SEC. 2. If any person shall commit or attempt to commit a crime of violence when armed with or having available any firearm, he may in addition to the punishment provided for such crime of violence be punished as provided in this act. In the trial of a person for committing or attempting to commit a crime of violence the fact that he was armed with or had available a pistol without license to carry the same, or was armed with or had available a machine gun, shall be prima facie evidence of his intention to commit said crime of violence.

*Additional punishment under this act.*

*What to be prima facie evidence of intention to commit crime of violence.*

SEC. 3. No person who has been convicted in this state or elsewhere of a crime of violence shall purchase, own, carry or have in his possession or under his control any firearm.

*Who to be denied firearms.*

SEC. 4. No person shall, without a license therefor, issued as provided in section six hereof, carry a pistol in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this act.

*Carrying of pistol forbidden, except when.*

*Machine gun.*

SEC. 5. The provisions of section four shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force or other duly appointed law enforcement officers, nor to members of the army, navy or marine corps of the United States, or of the national guard, when on duty, or of organizations by law authorized to purchase or receive firearms from the United States or this state, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to duly authorized military organizations when on duty, nor to the members thereof when at or going to or from

*Sec. 4 not to apply to whom.*

Exhibit 70
00019

# EXHIBIT 71

Exhibit 71
00020

189

Passed March 30, 1933.

Approved April 6, 1933.

GEORGE WHITE,
*Governor.*

The sectional number herein is in conformity to the General Code.
JOHN W. BRICKER,
*Attorney General.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the 10th day of April, A. D. 1933.
GEORGE S. MYERS,
*Secretary of State.*

File No. 63.

(House Bill No. 166)

AN ACT

To supplement section 12819 of the General Code by the enactment of supplemental sections 12819-3, 12819-4, 12819-5, 12819-6 and 12819-7, relative to the sale and possession of machine guns.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That section 12819 of the General Code be supplemented by the enactment of sections 12819-3, 12819-4, 12819-5, 12819-6 and 12819-7, to read as follows:

**Definitions.**

Sec. 12819-3. For the purpose of this act, a machine gun, a light machine gun or a sub-machine gun shall be defined as any firearm which shoots automatically, or any firearm which shoots more than eighteen shots semi-automatically without reloading. Automatically as above used means that class of firearms which, while the trigger on the firearm is held back continues to fire successive shots. Semi-automatically means that class of firearm which discharges one shot only each time the trigger is pulled, no manual reloading operation being necessary between shots.

**Machine gun permit; application; bond of applicant; exceptions.**

Sec. 12819-4. No person shall own, possess, transport, have custody of or use a machine gun, light machine gun or sub-machine gun, unless he first procures a permit therefor from and at the discretion of the

Exhibit 71
00021

# EXHIBIT 72

Exhibit 72
00022

(Amended Substitute House Bill No. 511)

# AN ACT

To amend sections 1.05, 1.07, 119.061, 155.99,
165.13, 305.99, 317.22, 317.99, 319.60, 319.99,
507.07, 733.671, 901.121, 901.99, 905.59,
925.07, 941.05, 955.99, 959.99, 981.99,
1153.01, 1153.07, 1153.99, 1333.99, 1503.15,
1503.28, 1503.99, 1547.99, 1548.19, 1701.99,
1702.99, 1703.99, 1711.11, 1737.24, 1738.19,
2151.43, 2151.99, 2931.29, 2931.30, 2931.31,
2935.03, 2935.10, 2935.23, 2935.24, 2937.18,
2941.07, 2941.14, 2941.17, 2941.18, 2941.43,
2945.17, 2945.39, 2945.70, 2947.20, 2947.25,
2950.01, 2950.99, 2961.01, 2963.34, 2967.04,
2967.19, 2967.191, 2967.25, 3113.04, 3113.06,
3113.99, 3319.31, 3345.23, 3599.40, 3701.99,
3705.30, 3705.99, 3707.99, 3709.32, 3709.35,
3709.36, 3734.11, 3767.08, 3771.99, 3773.99,
3921.99, 3999.99, 4104.99, 4123.99, 4141.99,
4151.99, 4505.19, 4511.99, 4549.05, 4549.99,
4731.99, 4907.20, 5105.08, 5106.99, 5113.13,
5129.01, 5149.03, 5301.99, 5537.99, 5538.99,
5743.15, and 6115.99; to enact sections
101.81, 901.51, 1333.81, 1547.91, 1547.92,
1547.93, 1708.01, 1708.02, 1708.03, 1708.04,
1708.05, 1708.99, 2901.01, 2901.02,
2901.03, 2901.04, 2903.11, 2903.21, 2903.22,
2913.21, 2913.31, 2913.32, 2913.33, 2913.41,

1866

Exhibit 72
00023

**(D)** A CRIMINAL SYNDICATE RETAINS ITS CHARACTER AS SUCH EVEN THOUGH ONE OR MORE OF ITS MEMBERS DOES NOT KNOW THE IDENTITY OF ONE OR MORE OTHER MEMBERS, AND EVEN THOUGH ITS MEMBERSHIP CHANGES FROM TIME TO TIME.

Sec. 2923.11.   AS USED IN SECTIONS 2923.11 TO 2923.24 OF THE REVISED CODE:

**(A)** "DEADLY WEAPON" MEANS ANY INSTRUMENT, DEVICE, OR THING CAPABLE OF INFLICTING DEATH, AND DESIGNED OR SPECIALLY ADAPTED FOR USE AS A WEAPON, OR POSSESSED, CARRIED, OR USED AS A WEAPON.

**(B)** "FIREARM" MEANS ANY DEADLY WEAPON CAPABLE OF EXPELLING OR PROPELLING ONE OR MORE PROJECTILES BY THE ACTION OF AN EXPLOSIVE OR COMBUSTIBLE PROPELLANT. "FIREARM" INCLUDES AN UNLOADED FIREARM, AND ANY FIREARM WHICH IS INOPERABLE BUT WHICH CAN READILY BE RENDERED OPERABLE.

**(C)** "HANDGUN" MEANS ANY FIREARM DESIGNED TO BE FIRED WHILE BEING HELD IN ONE HAND.

**(D)** "SEMI-AUTOMATIC FIREARM" MEANS ANY FIREARM DESIGNED OR SPECIALLY ADAPTED TO FIRE A SINGLE CARTRIDGE AND AUTOMATICALLY CHAMBER A SUCCEEDING CARTRIDGE READY TO FIRE, WITH A SINGLE FUNCTION OF THE TRIGGER.

**(E)** "AUTOMATIC FIREARM" MEANS ANY FIREARM DESIGNED OR SPECIALLY ADAPTED TO FIRE A SUCCESSION OF CARTRIDGES WITH A SINGLE FUNCTION OF THE TRIGGER. "AUTOMATIC FIREARM" ALSO MEANS ANY SEMI-AUTOMATIC FIREARM DESIGNED OR SPECIALLY ADAPTED TO FIRE MORE THAN EIGHTEEN CARTRIDGES WITHOUT RELOADING, OTHER THAN A FIREARM CHAMBERING ONLY .22 CALIBER SHORT, LONG, OR LONG-RIFLE CARTRIDGES.

**(F)** "SAWED-OFF FIREARM" MEANS A SHOTGUN WITH A BARREL LESS THAN EIGHTEEN INCHES LONG, OR A RIFLE WITH A BARREL LESS THAN SIXTEEN INCHES LONG, OR A SHOTGUN OR RIFLE LESS THAN TWENTY-SIX INCHES LONG OVERALL.

**(G)** "ZIP-GUN" MEANS ANY OF THE FOLLOWING:

**(1)** ANY FIREARM OF CRUDE AND EXTEMPORIZED MANUFACTURE;

**(2)** ANY DEVICE, INCLUDING WITHOUT LIMITATION A STARTER'S PISTOL, NOT DESIGNED AS A FIREARM, BUT WHICH IS SPECIALLY ADAPTED FOR USE AS SUCH;

**(3)** ANY INDUSTRIAL TOOL, SIGNALLING DEVICE, OR SAFETY DEVICE, NOT DESIGNED AS A FIREARM, BUT

1963

Exhibit 72
00024

# EXHIBIT 73

Exhibit 73
00025

of election commissioners of the county shall cause to be printed ballot labels or slips containing the names of candidates for all offices to be voted for or questions to be voted upon, except when the city, village or township officials only are to be elected, at which time the city, village or township clerk shall provide such ballot labels for use upon such voting machines, and shall forward the same to the board of election commissioners of each city, village or township within the county where such voting machines are used at least 5 secular days before the day of election: Provided, That whenever local officers are to be elected at any such general election, it shall be the duty of the city, township or village clerk, respectively, to file with the board of election commissioners of the county, the titles of offices, the names of all candidates to be voted for, and all questions or propositions to be voted upon within such city, township or village, at that election: Provided further, That in counties now or hereafter having a population of 500,000 or more, according to the latest or each succeeding federal decennial census, whenever local officers are to be elected at any such general election, the last day upon which the respective clerks may receive nominating petitions for such local offices shall be the same as fixed by law for the receiving of nominating petitions for state or county offices.

Approved July 16, 1959.

---

### [No. 174.]

AN ACT to amend section 9 of chapter 84 of the Revised Statutes of 1846, entitled "Of divorce," as last amended by Act No. 227 of the Public Acts of 1958, being section 552.9 of the Compiled Laws of 1948.

*The People of the State of Michigan enact:*

**Section amended.**

Section 1. Section 9 of chapter 84 of the Revised Statutes of 1846, as last amended by Act No. 227 of the Public Acts of 1958, being section 552.9 of the Compiled Laws of 1948, is hereby amended to read as follows:

**552.9  Divorce; residence, place of marriage.   [M.S.A. 25.89]**

Sec. 9.  No decree of divorce shall be granted by any court in this state in any case unless:

(1)  The party applying therefor shall have resided in this state for 1 year immediately preceding the time of filing the bill of complaint therefor; or

(2)  The marriage which it is sought to dissolve was solemnized in this state, and the party applying for such divorce shall have resided in this state from the time of such marriage until the time of bringing such suit for divorce; and

(3)  The complainant or defendant, or both of them, shall have resided in the county in which the bill of complaint is filed for 10 days immediately preceding the filing of the bill of complaint therefor.

Approved July 16, 1959.

---

### [No. 175.]

AN ACT to amend section 224 of Act No. 328 of the Public Acts of 1931, entitled "An act to revise, consolidate, codify and add to the statutes relating to crimes; to define crimes and prescribe the penalties therefor; to provide for the competency of evidence at the trial of persons accused of crime; to provide immunity from prosecution for certain witnesses appearing at such trials; and to repeal certain acts and parts of acts inconsistent with or contravening any of the provisions of this act," being section 750.224 of the Compiled Laws of 1948.

Exhibit 73
00026

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4441   Page 27 of 147

*The People of the State of Michigan enact:*

**Section amended.**

Section 1.   Section 224 of Act No. 328 of the Public Acts of 1931, being section 750.224 of the Compiled Laws of 1948, is hereby amended to read as follows:

**750.224   Machine gun, silencer, bomb, blackjack, slung shot, billy, metallic knuckles, sand club, bludgeon, gas container, manufacture or sale.   [M.S.A. 28.421]**

Sec. 224.   Any person who shall manufacture, sell, offer for sale or possess any machine gun or firearm which shoots or is designed to shoot automatically more than 1 shot without manual reloading, by a single function of the trigger, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb, or bomb shell, blackjack, slung shot, billy, metallic knuckles, sand club, sand bag, or bludgeon or any gas ejecting device, weapon, cartridge, container or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years or by a fine of not more than $2,500.00.

**Persons to whom section applies.**

The provisions of this section shall not apply to any person manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof, or to any person duly licensed to manufacture, sell or possess any machine gun or gas ejecting device, weapon, cartridge, container or contrivance above mentioned.

Approved July 16, 1959.

———————

**[No. 176.]**

AN ACT to amend section 3 of Act No. 289 of the Public Acts of 1925, entitled as amended "An act to create a bureau of criminal identification, records and statistics within the department of public safety; to provide for a director thereof; to prescribe his duties; to require peace officers, persons in charge of certain institutions and others, to make reports respecting crimes and criminals to such bureau and to provide a penalty for violation of the provisions thereof," as last amended by Act No. 92 of the Public Acts of 1958, being section 28.243 of the Compiled Laws of 1948.

*The People of the State of Michigan enact:*

**Section amended.**

Section 1.   Section 3 of Act No. 289 of the Public Acts of 1925, as last amended by Act No. 92 of the Public Acts of 1958, being section 28.243 of the Compiled Laws of 1948, is hereby amended to read as follows:

**28.243   Fingerprints and description of persons arrested; return upon release or acquittal.   [M.S.A. 4.463]**

Sec. 3.   It is hereby made the duty of the sheriffs of the several counties of this state, chiefs of police of the cities, and village marshals, immediately upon the arrest of any person for a felony or of a misdemeanor not cognizable by a justice of the peace, to take his fingerprints, in duplicate, 1 set of fingerprints, according to the fingerprint system of identification established by the director of said bureau and on forms furnished by him, and 1 set of fingerprints according to the fingerprint system of identification established by the director of the federal bureau of investigation at Washington, D. C., on forms furnished by him, and forward the same, together with such other descriptions and information as

Exhibit 73
00027

# EXHIBIT 74

Exhibit 74
00028

738     JANUARY SESSION, 1975—CHAPTER 278.

CHAPTER 278.

75-H 6455 A
Approved
May 21, 1975.

**AN ACT Relating to Weapons.**

**It is enacted by the General Assembly as follows:**

Section 1. Sections 11-47-2, 11-47-6, 11-47-8, 11-47-9, 11-47-10, 11-47-11, 11-47-12, 11-47-13, 11-47-14, 11-47-15, 11-47-18, 11-47-19, 11-47-22, 11-47-24, 11-47-25, 11-47-30, 11-47-31, 11-47-35, 11-47-37, 11-47-38, 11-47-40, 11-47-42, 11-47-47, 11-47-49, 11-47-50 and 11-47-53 of the general laws in chapter 11-47 entitled "Weapons" are hereby amended to read as follows:

Definitions:

11-47-2. DEFINITION OF TERMS.—When used in sections 11-47-1 to 11-47-56, inclusive, the following words and phrases shall be construed as follows:

"Pistol."

"Pistol" shall include any pistol or revolver, and any shotgun, rifle or similar weapon with overall length less than twenty-six (26) inches, but shall not include any pistol or revolver designed for the use of blank cartridges only.

"Machine gun."

"Machine gun" ~~shall include any weapon which shoots automatically and any weapon other than twenty-two (22) caliber rim fire which shoots more than fourteen (14) shots semi-automatically without reloading.~~ means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which

Exhibit 74
00029

a machinegun can be assembled if such parts are in the possession or under the control of a person.

"Firearm" shall include any machine gun, pistol, rifle, air rifle, air pistol, "blank gun," "BB gun," so-called or other instrument from which steel or metal projectiles are propelled, **or which may readily be con-verted to expel a projectile**, except such instruments propelling such projectiles which instruments are designed or normally used for a primary purpose other than as a weapon. **The frame or receiver of any such weapon shall be construed as a firearm under the provisions of this section.**

"Firearm."

"Person" shall include individual, partnership, firm, association or corporation.

"Person."

"Licensing authorities" shall mean the board of police commissioners of a city or town where such board has been instituted, the chief of police or superintendent of police of other cities and towns having a regular organized police force, and in towns where there is no chief of police or superintendent of police it shall mean the town clerk who may issue licenses upon the recommendation of the town sergeant, and it shall also mean any other person or body duly authorized by the city or town charter or by state law.

"Licensing authorities."

"Crime of violence" shall mean and include any of the following crimes or an attempt to commit any of the same, viz.; murder, manslaughter, rape, mayhem, robbery, burglary, breaking and entering, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony.

"Crime of violence."

Exhibit 74
00030

Same.

ing house or place of business or on land possessed by him or as provided in sections 11-47-9 and 11-47-10;. **The provisions of the above section shall not apply to any person who is the holder of a valid license or permit issued by the licensing authority of another state, or territory of the United States, or political subdivision thereof, allowing him to carry a pistol or revolver in any vehicle or conveyance or on or about his person whether visible or concealed, provided said person is merely transporting said firearm through the state in a vehicle or other such conveyance without any intent on the part of said person to detain himself or remain within the state of Rhode Island.** ~~and no~~ **No** person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this chapter. Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one (1) nor more than five (5) years and except for a first conviction under this section shall not be afforded the provisions of suspension or deferment of sentence, nor a probation.

Possession of machine gun.

Penalty.

Possession of sawed-off shotgun or rifle.

(b) No person shall have in his possession or under his control any sawed-off shotgun **or sawed-off rifle** as defined in section 11-47-2. Any person convicted of violating this subsection shall be punished by imprisonment for up to ten (10) years or by a fine of up to five thousand dollars ($5,000), or both, and for any subsequent conviction.

Persons exempt from restrictions.

"11-47-9. PERSONS EXEMPT FROM RESTRICTIONS. — The provisions of section 11-47-8 shall not apply to sheriffs, deputy sheriffs, the superintendent

Exhibit 74
00031

# EXHIBIT 75

Exhibit 75
00032

**OHIO GENERAL ASSEMBLY ARCHIVES**
1997 - 2014

Return to Search Page

**HB 234**
As Enrolled

View PDF Format

(.pdf format)

View Publications Associated with this Bill

Bill Analyses

Synopsis of Committee Amendments

Conference Committee Synopsis

Fiscal Notes

Status Report of Legislation

Votes

Other Versions of Bill and Associated Reports

As Passed by Senate

As Reported by Senate Committee

As Passed by House

As Reported by House Committee

As Introduced

The online versions of legislation provided on this website are not official. Enrolled bills are the final version passed by the Ohio General Assembly and presented to the Governor for signature. The official version of acts signed by the Governor are available from the Secretary of State's Office in the Continental Plaza, 180 East Broad St., Columbus.

---

**(130th General Assembly)**
**(Amended Substitute House Bill Number 234)**

# AN ACT

To amend sections 109.69, 109.731, 311.41, 311.42, 2923.11, 2923.124, 2923.125, 2923.126, 2923.128, 2923.1213, 2923.13, 2923.17, 2929.14, and 2941.144, to enact sections 311.43 and 1533.04, and to repeal sections 2923.1210 and 2923.22 of the Revised Code to revise the law governing firearms.

**Be it enacted by the General Assembly of the State of Ohio:**

   **SECTION 1.** That sections 109.69, 109.731, 311.41, 311.42, 2923.11, 2923.124, 2923.125, 2923.126, 2923.128, 2923.1213, 2923.13, 2923.17, 2929.14, and 2941.144 be amended and sections 311.43 and 1533.04 of the Revised Code be enacted to read as follows:

   **Sec. 109.69.** (A)(1) The attorney general shall negotiate and enter into a reciprocity agreement with any other license-issuing state under which a concealed handgun license that is issued by the other state is recognized in this state, except as provided in division (B) of this section, if the attorney general determines that both of the following apply:

      (a) The eligibility requirements imposed by that license-issuing state for that license are substantially comparable to the eligibility requirements for a concealed handgun license issued under section 2923.125 of the Revised Code.

      (b) That license-issuing state recognizes a concealed handgun license issued under section 2923.125 of the Revised Code.

   (2) A reciprocity agreement entered into under division (A)(1) of this section also may provide for the recognition in this state of a concealed handgun license issued on a temporary or emergency basis by the other license-issuing state, if the eligibility requirements imposed by that license-issuing state for the temporary or emergency license are substantially comparable to the eligibility requirements for a concealed handgun license issued under section 2923.125 or 2923.1213 of the Revised Code and if that license-issuing state recognizes a concealed handgun license issued under section 2923.1213 of the Revised Code.

   (3) The attorney general shall not negotiate any agreement with any other license-issuing state under which a concealed handgun license issued by the other state is recognized in this state other than as provided in divisions (A)(1) and (2) of this section.

   (B)(1) If, on or after the effective date of this amendment, a person who is a resident of this state has a valid concealed handgun license that was issued by another license-issuing state that has entered into a reciprocity agreement with the attorney general under division (A)(1) of this section or the attorney general determines that the eligibility requirements imposed by that license-issuing state for that license are substantially comparable to the eligibility requirements for a concealed handgun license issued under section 2923.125 of the Revised Code, the license issued by the other license-issuing state shall be recognized in this state, shall be accepted and valid in this state, and grants the person the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code.

   (2) If, on or after the effective date of this amendment, a person who is a resident of this state has a valid concealed handgun license that was issued by another license-issuing state that has not entered into a reciprocity agreement with the attorney general under division (A)(1) of this section, the license issued by the other license-issuing state shall be recognized in this state, shall be accepted and valid in this state, and grants the person the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code for a period of six months after the person became a resident of this state. After that six-month period, if the person wishes to obtain a concealed handgun license, the person shall apply for a concealed handgun license pursuant to section 2923.125 of the Revised Code.

   (3) If, on or after the effective date of this amendment, a person who is not a resident of this state has a valid concealed handgun license that was issued by another license-issuing state, regardless of whether the other license-issuing state has entered into a reciprocity agreement with the attorney general under division (A)(1) of this section, and the person is temporarily in this state, during the time that the person is temporarily in this state the license issued by the other license-issuing state shall be recognized in this state, shall be accepted and valid in this state, and grants the person the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code.

   (C) The attorney general shall publish each determination described in division (B)(1) of this section that the attorney general makes in the same manner that written agreements entered into under division (A)(1) or (2) of this section are published.

   (D) As used in this section:

   (1) "Handgun," ~~and~~ "concealed handgun license," and "valid concealed handgun license" have the same meanings as in section 2923.11 of the Revised Code.

   (2) "License-issuing state" means a state other than this state that, pursuant to law, provides for the issuance of a license to carry a concealed handgun.

   **Sec. 109.731.** (A)(1) The ~~Ohio peace officer training commission~~ attorney general shall prescribe, and shall make available to sheriffs, ~~all of the following:~~

   ~~(1) An~~ an application form that is to be used under section 2923.125 of the Revised Code by a person who applies for a concealed handgun license and an application form that is to be used under section 2923.125 of the Revised Code by a person who applies for the renewal of a license of that nature, ~~both of which shall conform substantially to the form prescribed in section 2923.125 of the Revised Code;~~

   ~~(2) A~~ The attorney general shall design the form to enable applicants to provide the information that is required by law to be collected, and shall update the form as necessary. Burdens or restrictions to obtaining a concealed handgun license that are not expressly provided in law shall not be incorporated into the form. The attorney general shall post a printable version of the form on the web site of the attorney general and shall provide the address of the web site to any person who requests the form.

   (2) The Ohio peace officer training commission shall prescribe, and shall make available to sheriffs, all of the following:

      (a) A form for the concealed handgun license that is to be issued by sheriffs to persons who qualify for a concealed handgun license under section 2923.125 of the Revised Code and that conforms to the following requirements:

      ~~(a)~~(i) It has space for the licensee's full name, residence address, and date of birth and for a color photograph of the licensee.

      ~~(b)~~(ii) It has space for the date of issuance of the license, its expiration date, its county of issuance, the name of the sheriff who issues the license, and the unique combination of letters and numbers that identify the county of issuance and the license given to the licensee by the sheriff in accordance with division (A)~~(3)~~(2)(c) of this section.

      ~~(c)~~(iii) It has space for the signature of the licensee and the signature or a facsimile signature of the sheriff who issues the license.

      ~~(d)~~(iv) It does not require the licensee to include serial numbers of handguns, other identification related to handguns, or similar data that is not pertinent or relevant to obtaining the license and that could be used as a de facto means of registration of handguns owned by the licensee.

(3)(b) A series of three-letter county codes that identify each county in this state;

(4)(c) A procedure by which a sheriff shall give each concealed handgun license, replacement concealed handgun license, or renewal concealed handgun license and each concealed handgun license on a temporary emergency basis or replacement concealed handgun license on a temporary emergency basis that the sheriff issues under section 2923.125 or 2923.1213 of the Revised Code a unique combination of letters and numbers that identifies the county in which the license was issued and that uses the county code and a unique number for each license the sheriff of that county issues;

(5)(d) A form for a concealed handgun license on a temporary emergency basis that is to be issued by sheriffs to persons who qualify for such a license under section 2923.1213 of the Revised Code, which form shall conform to all the requirements set forth in divisions (A)(2)(a)(i) to (d)(iv) of this section and shall additionally conspicuously specify that the license is issued on a temporary emergency basis and the date of its issuance.

(B)(1) The Ohio peace officer training commission, in consultation with the attorney general, shall prepare a pamphlet that does all of the following, in everyday language:

(a) Explains the firearms laws of this state;

(b) Instructs the reader in dispute resolution and explains the laws of this state related to that matter;

(c) Provides information to the reader regarding all aspects of the use of deadly force with a firearm, including, but not limited to, the steps that should be taken before contemplating the use of, or using, deadly force with a firearm, possible alternatives to using deadly force with a firearm, and the law governing the use of deadly force with a firearm.

(2) The attorney general shall consult with and assist the commission in the preparation of the pamphlet described in division (B)(1) of this section, and, as necessary, shall recommend to the commission changes in the pamphlet to reflect changes in the law that are relevant to it. The attorney general shall publish the pamphlet on the web site of the attorney general and shall provide the address of the web site to any person who requests the pamphlet.

(C) The Ohio peace officer training commission shall maintain statistics with respect to the issuance, renewal, suspension, revocation, and denial of concealed handgun licenses under section 2923.125 of the Revised Code and the suspension of processing of applications for those licenses, and with respect to the issuance, suspension, revocation, and denial of concealed handgun licenses on a temporary emergency basis under section 2923.1213 of the Revised Code, as reported by the sheriffs pursuant to division (C) of section 2923.129 of the Revised Code. Not later than the first day of March in each year, the commission shall submit a statistical report to the governor, the president of the senate, and the speaker of the house of representatives indicating the number of concealed handgun licenses that were issued, renewed, suspended, revoked, and denied under section 2923.125 of the Revised Code in the previous calendar year, the number of applications for those licenses for which processing was suspended in accordance with division (D)(3) of that section in the previous calendar year, and the number of concealed handgun licenses on a temporary emergency basis that were issued, suspended, revoked, or denied under section 2923.1213 of the Revised Code in the previous calendar year. Nothing in the statistics or the statistical report shall identify, or enable the identification of, any individual who was issued or denied a license, for whom a license was renewed, whose license was suspended or revoked, or for whom application processing was suspended. The statistics and the statistical report are public records for the purpose of section 149.43 of the Revised Code.

(D) As used in this section, "concealed handgun license" and "handgun" have the same meanings as in section 2923.11 of the Revised Code.

**Sec. 311.41.** (A)(1) Upon receipt of an application for a concealed handgun license under division (C) of section 2923.125 of the Revised Code, an application to renew a concealed handgun license under division (F) of that section, or an application for a concealed handgun license on a temporary emergency basis under section 2923.1213 of the Revised Code, the sheriff shall conduct a criminal records check and an incompetency check of the applicant to determine whether the applicant fails to meet the criteria described in division (D)(1) of section 2923.125 of the Revised Code. As part of any such criminal records check, the sheriff shall contact the national instant criminal background check system to verify that the applicant is eligible lawfully to receive or possess a firearm in the United States. The sheriff shall conduct the criminal records check and the incompetency records check required by this division through use of an electronic fingerprint reading device or, if the sheriff does not possess and does not have ready access to the use of an electronic fingerprint reading device, by requesting the bureau of criminal identification and investigation to conduct the checks as described in this division.

In order to conduct the criminal records check and the incompetency records check, the sheriff shall obtain the fingerprints of at least four fingers of the applicant by using an electronic fingerprint reading device for the purpose of conducting the criminal records check and the incompetency records check or, if the sheriff does not possess and does not have ready access to the use of an electronic fingerprint reading device, shall obtain from the applicant a completed standard fingerprint impression sheet prescribed pursuant to division (C)(2) of section 109.572 of the Revised Code. The fingerprints so obtained, along with the applicant's social security number, shall be used to conduct the criminal records check and the incompetency records check. If the sheriff does not use an electronic fingerprint reading device to obtain the fingerprints and conduct the records checks, the sheriff shall submit the completed standard fingerprint impression sheet of the applicant, along with the applicant's social security number, to the superintendent of the bureau of criminal identification and investigation and shall request the bureau to conduct the criminal records check and the incompetency records check of the applicant and, if necessary, shall request the superintendent of the bureau to obtain information from the federal bureau of investigation as part of the criminal records check for the applicant. If it is not possible to use an electronic fingerprint reading device to conduct an incompetency records check, the sheriff shall submit the completed standard fingerprint impression sheet of the applicant, along with the applicant's social security number, to the superintendent of the bureau of criminal identification and investigation and shall request the bureau to conduct the incompetency records check. The sheriff shall not retain the applicant's fingerprints as part of the application.

(2) Except as otherwise provided in this division, if at any time the applicant decides not to continue with the application process, the sheriff immediately shall cease any investigation that is being conducted under division (A)(1) of this section. The sheriff shall not cease that investigation if, at the time of the applicant's decision not to continue with the application process, the sheriff had determined from any of the sheriff's investigations that the applicant then was engaged in activity of a criminal nature.

(B) If a criminal records check and an incompetency records check conducted under division (A) of this section do not indicate that the applicant fails to meet the criteria described in division (D)(1) of section 2923.125 of the Revised Code, except as otherwise provided in this division, the sheriff shall destroy or cause a designated employee to destroy all records other than the application for a concealed handgun license, the application to renew a concealed handgun license, or the affidavit submitted regarding an application for a concealed handgun license on a temporary emergency basis that were made in connection with the criminal records check and incompetency records check within twenty days after conducting the criminal records check and incompetency records check. If an applicant appeals a denial of an application as described in division (D)(2) of section 2923.125 of the Revised Code or challenges the results of a criminal records check pursuant to section 2923.127 of the Revised Code, records of fingerprints of the applicant shall not be destroyed during the pendency of the appeal or the challenge and review. When an applicant appeals a denial as described in that division, the twenty-day period described in this division commences regarding the fingerprints upon the determination of the appeal. When required as a result of a challenge and review performed pursuant to section 2923.127 of the Revised Code, the source the sheriff used in conducting the criminal records check shall destroy or the chief operating officer of the source shall cause an employee of the source designated by the chief to destroy all records other than the application for a concealed handgun license, the application to renew a concealed handgun license, or the affidavit submitted regarding an application for a concealed handgun license on a temporary emergency basis that were made in connection with the criminal records check within twenty days after completion of that challenge and review.

(C) If division (B) of this section applies to a particular criminal records check or incompetency records check, no sheriff, employee of a sheriff designated by the sheriff to destroy records under that division, source the sheriff used in conducting the criminal records check or incompetency records check, or employee of the source designated by the chief operating officer of the source to destroy records under that division shall fail to destroy or cause to be destroyed within the applicable twenty-day period specified in that division all records other than the application for a concealed handgun license, the application to renew a concealed handgun license, or the affidavit submitted regarding an application for a concealed handgun license on a temporary emergency basis made in connection with the particular criminal records check or incompetency records check.

(D) Whoever violates division (C) of this section is guilty of failure to destroy records, a misdemeanor of the second degree.

(E) As used in this section, "concealed:

(1) "Concealed handgun license" and "handgun" have the same meanings as in section 2923.11 of the Revised Code.

(2) "National instant criminal background check system" means the system established by the United States attorney general pursuant to section 103 of the "Brady Handgun Violence Prevention Act," Pub. L. No. 103-159.

**Sec. 311.42.** (A) Each county shall establish in the county treasury a sheriff's concealed handgun license issuance expense fund. The sheriff of that county shall deposit into that fund all fees paid by applicants for the issuance or renewal of a concealed handgun license or duplicate concealed handgun license under section 2923.125 of the Revised Code and all fees paid by the person seeking a concealed handgun license on a temporary emergency basis under section 2923.1213 of the Revised Code. The county shall distribute all fees deposited into the fund except forty dollars of each fee paid by an applicant under division (B) of section 2923.125 of the Revised Code, fifteen dollars of each fee paid under section 2923.1213 of the Revised Code, and thirty-five dollars of each fee paid under division (F) of section 2923.125 of the Revised Code to the attorney general to be used to pay the cost

of background checks performed by the bureau of criminal identification and investigation and the federal bureau of investigation and to cover administrative costs associated with issuing the license.

(B) The sheriff, with the approval of the board of county commissioners, may expend any county portion of the fees deposited into the sheriff's concealed handgun license issuance expense fund for any costs incurred by the sheriff in connection with performing any administrative functions related to the issuance of concealed handgun licenses under section 2923.125 or 2923.1213 of the Revised Code, including, but not limited to, personnel expenses and the ~~any costs of any handgun~~ associated with a firearm safety education program, or a firearm training or qualification program that the sheriff chooses to fund. ~~Additionally, the sheriff, with the approval of the board of county commissioners, may expend any county portion of the fees deposited into the sheriff's concealed handgun license issuance expense fund for costs of ammunition used in a course, class, or program administered by the sheriff for a concealed handgun license.~~

**Sec. 311.43.** (A) As used in this section:

(1) "Certification" means the participation and assent of the chief law enforcement officer necessary under federal law for the approval of an application to make or transfer a firearm.

(2) "Chief law enforcement officer" means any official of the bureau of alcohol, tobacco, firearms, and explosives, or any successor agency, identifies by regulation or otherwise as eligible to provide any required certification for the making or transfer of a firearm.

(3) "Concealed handgun license" has the same meaning as in section 2923.11 of the Revised Code.

(B) A resident of this state may submit to the sheriff of the county in which the resident resides or to the sheriff of any county adjacent to the county in which the resident resides any federal form that requires a law enforcement certification by a chief law enforcement officer.

(C) The sheriff shall accept and process the certification in the same manner as an application for a concealed handgun license is processed under section 2923.125 of the Revised Code, including the requirement for a background check, except as follows:

(1) If a resident of this state submits one or more federal forms, the sheriff shall charge the resident no more than the applicable fee described in division (B)(1)(a) of section 2923.125 of the Revised Code, without regard to how many federal forms are submitted at the same time.

(2) If a resident of this state submits one or more federal forms and currently has a concealed handgun license or the sheriff has previously approved a federal form for that resident, the sheriff shall charge the resident no more than the applicable fee described in division (F)(4) of section 2923.125 of the Revised Code, without regard to how many federal forms are submitted at the same time.

**Sec. 1533.04.** (A) A person who holds a valid hunting license issued under this chapter and who hunts game birds or wild quadrupeds may use a suppressor attached to a gun that is authorized to be used for hunting by section 1533.16 of the Revised Code while hunting, provided that the person is authorized to possess the suppressor under state and federal laws and has registered the suppressor in accordance with the "National Firearms Act," 68A Stat. 725 (1934), 26 U.S.C. 5841, et seq., as amended.

(B) As used in this section, "suppressor" means any device used for diminishing the sound of any shot, bullet, or projectile that is discharged from a gun that is authorized to be used for hunting by section 1533.16 of the Revised Code.

**Sec. 2923.11.** As used in sections 2923.11 to 2923.24 of the Revised Code:

(A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

(C) "Handgun" means any of the following:

(1) Any firearm that has a short stock and is designed to be held and fired by the use of a single hand;

(2) Any combination of parts from which a firearm of a type described in division (C)(1) of this section can be assembled.

(D) "Semi-automatic firearm" means any firearm designed or specially adapted to fire a single cartridge and automatically chamber a succeeding cartridge ready to fire, with a single function of the trigger.

(E) "Automatic firearm" means any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger. ~~"Automatic firearm" also means any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22-caliber short, long, or long-rifle cartridges.~~

(F) "Sawed-off firearm" means a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall.

(G) "Zip-gun" means any of the following:

(1) Any firearm of crude and extemporized manufacture;

(2) Any device, including without limitation a starter's pistol, that is not designed as a firearm, but that is specially adapted for use as a firearm;

(3) Any industrial tool, signalling device, or safety device, that is not designed as a firearm, but that as designed is capable of use as such, when possessed, carried, or used as a firearm.

(H) "Explosive device" means any device designed or specially adapted to cause physical harm to persons or property by means of an explosion, and consisting of an explosive substance or agency and a means to detonate it. "Explosive device" includes without limitation any bomb, any explosive demolition device, any blasting cap or detonator containing an explosive charge, and any pressure vessel that has been knowingly tampered with or arranged so as to explode.

(I) "Incendiary device" means any firebomb, and any device designed or specially adapted to cause physical harm to persons or property by means of fire, and consisting of an incendiary substance or agency and a means to ignite it.

(J) "Ballistic knife" means a knife with a detachable blade that is propelled by a spring-operated mechanism.

(K) "Dangerous ordnance" means any of the following, except as provided in division (L) of this section:

(1) Any automatic or sawed-off firearm, zip-gun, or ballistic knife;

(2) Any explosive device or incendiary device;

(3) Nitroglycerin, nitrocellulose, nitrostarch, PETN, cyclonite, TNT, picric acid, and other high explosives; amatol, tritonal, tetrytol, pentolite, pecretol, cyclotol, and other high explosive compositions; plastic explosives; dynamite, blasting gelatin, gelatin dynamite, sensitized ammonium nitrate, liquid-oxygen blasting explosives, blasting powder, and other blasting agents; and any other explosive substance having sufficient brisance or power to be particularly suitable for use as a military explosive, or for use in mining, quarrying, excavating, or demolitions;

(4) Any firearm, rocket launcher, mortar, artillery piece, grenade, mine, bomb, torpedo, or similar weapon, designed and manufactured for military purposes, and the ammunition for that weapon;

(5) Any firearm muffler or ~~silencer~~ suppressor;

(6) Any combination of parts that is intended by the owner for use in converting any firearm or other device into a dangerous ordnance.

(L) "Dangerous ordnance" does not include any of the following:

(1) Any firearm, including a military weapon and the ammunition for that weapon, and regardless of its actual age, that employs a percussion cap or other obsolete ignition system, or that is designed and safe for use only with black powder;

(2) Any pistol, rifle, or shotgun, designed or suitable for sporting purposes, including a military weapon as issued or as modified, and the ammunition for that weapon, unless the firearm is an automatic or sawed-off firearm;

(3) Any cannon or other artillery piece that, regardless of its actual age, is of a type in accepted use prior to 1887, has no mechanical, hydraulic, pneumatic, or other system for absorbing recoil and returning the tube into battery without displacing the carriage, and is designed and safe for use only with black powder;

(4) Black powder, priming quills, and percussion caps possessed and lawfully used to fire a cannon of a type defined in division (L)(3) of this section during displays, celebrations, organized matches or shoots, and target practice, and smokeless and black powder, primers, and percussion caps possessed and lawfully used as a propellant or ignition device in small-arms or small-arms ammunition;

(5) Dangerous ordnance that is inoperable or inert and cannot readily be rendered operable or activated, and that is kept as a trophy, souvenir, curio, or museum piece.

(6) Any device that is expressly excepted from the definition of a destructive device pursuant to the "Gun Control Act of 1968," 82 Stat. 1213, 18 U.S.C. 921(a)(4), as amended, and regulations issued under that act.

(M) "Explosive" means any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosion. "Explosive" includes all materials that have been classified as division 1.1, division 1.2, division 1.3, or division 1.4 explosives by the United States department of transportation in its regulations and includes, but is not limited to, dynamite, black powder, pellet powders, initiating explosives, blasting caps, electric blasting caps, safety fuses, fuse igniters, squibs, cordeau detonant fuses, instantaneous fuses, and igniter cords and igniters. "Explosive" does not include "fireworks," as defined in section 3743.01 of the Revised Code, or any substance or material otherwise meeting the definition of explosive set forth in this section that is manufactured, sold, possessed, transported, stored, or used in any activity described in section 3743.80 of the Revised Code, provided the activity is conducted in accordance with all applicable laws, rules, and regulations, including, but not limited to, the provisions of section 3743.80 of the Revised Code and the rules of the fire marshal adopted pursuant to section 3737.82 of the Revised Code.

(N)(1) "Concealed handgun license" or "license to carry a concealed handgun" means, subject to division (N)(2) of this section, a license or temporary emergency license to carry a concealed handgun issued under section 2923.125 or 2923.1213 of the Revised Code or a license to carry a concealed handgun issued by another state with which the attorney general has entered into a reciprocity agreement under section 109.69 of the Revised Code.

(2) A reference in any provision of the Revised Code to a concealed handgun license issued under section 2923.125 of the Revised Code or a license to carry a concealed handgun issued under section 2923.125 of the Revised Code means only a license of the type that is specified in that section. A reference in any provision of the Revised Code to a concealed handgun license issued under section 2923.1213 of the Revised Code, a license to carry a concealed handgun issued under section 2923.1213 of the Revised Code, or a license to carry a concealed handgun on a temporary emergency basis means only a license of the type that is specified in section 2923.1213 of the Revised Code. A reference in any provision of the Revised Code to a concealed handgun license issued by another state or a license to carry a concealed handgun issued by another state means only a license issued by another state with which the attorney general has entered into a reciprocity agreement under section 109.69 of the Revised Code.

(O) "Valid concealed handgun license" or "valid license to carry a concealed handgun" means a concealed handgun license that is currently valid, that is not under a suspension under division (A)(1) of section 2923.128 of the Revised Code, under section 2923.1213 of the Revised Code, or under a suspension provision of the state other than this state in which the license was issued, and that has not been revoked under division (B)(1) of section 2923.128 of the Revised Code, under section 2923.1213 of the Revised Code, or under a revocation provision of the state other than this state in which the license was issued.

(P) "Misdemeanor punishable by imprisonment for a term exceeding one year" does not include any of the following:

(1) Any federal or state offense pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices;

(2) Any misdemeanor offense punishable by a term of imprisonment of two years or less.

(Q) "Alien registration number" means the number issued by the United States citizenship and immigration services agency that is located on the alien's permanent resident card and may also be commonly referred to as the "USCIS number" or the "alien number."

**Sec. 2923.124.** As used in sections 2923.124 to 2923.1213 of the Revised Code:

(A) "Application form" means the application form prescribed pursuant to division (A)(1) of section 109.731 of the Revised Code and includes a copy of that form.

(B) "Competency certification" and "competency certificate" mean a document of the type described in division (B)(3) of section 2923.125 of the Revised Code.

(C) "Detention facility" has the same meaning as in section 2921.01 of the Revised Code.

(D) "Licensee" means a person to whom a concealed handgun license has been issued under section 2923.125 of the Revised Code and, except when the context clearly indicates otherwise, includes a person to whom a concealed handgun license on a temporary emergency basis has been issued under section 2923.1213 of the Revised Code and a person to whom a concealed handgun license has been issued by another state.

(E) "License fee" or "license renewal fee" means the fee for a concealed handgun license or the fee to renew that license that is prescribed pursuant to division (C) of section 109.731 of the Revised Code and that is to be paid by an applicant for a license of that type.

(F) "Peace officer" has the same meaning as in section 2935.01 of the Revised Code.

(G) "State correctional institution" has the same meaning as in section 2967.01 of the Revised Code.

(H) "Civil protection order" means a protection order issued, or consent agreement approved, under section 2903.214 or 3113.31 of the Revised Code.

(I) "Temporary protection order" means a protection order issued under section 2903.213 or 2919.26 of the Revised Code.

(J) "Protection order issued by a court of another state" has the same meaning as in section 2919.27 of the Revised Code.

(K) "Child day-care center," "type A family day-care home" and "type B family day-care home" have the same meanings as in section 5104.01 of the Revised Code.

(L) "Foreign air transportation," "interstate air transportation," and "intrastate air transportation" have the same meanings as in 49 U.S.C. 40102, as now or hereafter amended.

(M) "Commercial motor vehicle" has the same meaning as in division (A) of section 4506.25 of the Revised Code.

(N) "Motor carrier enforcement unit" has the same meaning as in section 2923.16 of the Revised Code.

**Sec. 2923.125.** (A) It is the intent of the general assembly that Ohio concealed handgun license law be compliant with the national instant criminal background check system, that the bureau of alcohol, tobacco, firearms and explosives is able to determine that Ohio law is compliant with the national instant criminal background check system, and that no person shall be eligible to receive a concealed handgun license permit under section 2923.125 or 2923.1213 of the Revised Code unless the person is eligible lawfully to receive or possess a firearm in the United States.

(A) This section applies with respect to the application for and issuance by this state of concealed handgun licenses other than concealed handgun licenses on a temporary emergency basis that are issued under section 2923.1213 of the Revised Code. Upon the request of a person who wishes to obtain a concealed handgun license with respect to which this section applies or to renew a concealed handgun license with respect to which this section applies, a sheriff, as provided in division (I) of this section, shall provide to the person free of charge an application form and the web site address at which a printable version of the application form that can be downloaded and the pamphlet described in division (B) of section 109.731 of the Revised Code may be found. A sheriff shall accept a completed application form and the fee, items, materials, and information specified in divisions (B)(1) to (5) of this section at the times and in the manners described in division (I) of this section.

(B) An applicant for a concealed handgun license with respect to which this section applies who is a resident of this state shall submit a completed application form and all of the following material and information described in divisions (B)(1) to (6) of this section to the sheriff of the county in which the applicant resides or to the sheriff of any county adjacent to the county in which the applicant resides. An applicant for a license who resides in another state shall submit a completed application form and all of the material and information described in divisions (B)(1) to (7) of this section to the sheriff of the county in which the applicant is employed or to the sheriff of any county adjacent to the county in which the applicant is employed:

130th General Assembly

Am. Sub. H. B. No. 234

(1)(a) A nonrefundable license fee as described in either of the following:

(i) For an applicant who has been a resident of this state for five or more years, a fee of sixty-seven dollars;

(ii) For an applicant who has been a resident of this state for less than five years or who is not a resident of this state, but who is employed in this state, a fee of sixty-seven dollars plus the actual cost of having a background check performed by the federal bureau of investigation.

(b) No sheriff shall require an applicant to pay for the cost of a background check performed by the bureau of criminal identification and investigation.

(c) A sheriff shall waive the payment of the license fee described in division (B)(1)(a) of this section in connection with an initial or renewal application for a license that is submitted by an applicant who is a retired peace officer, a retired person described in division (B)(1)(b) of section 109.77 of the Revised Code, or a retired federal law enforcement officer who, prior to retirement, was authorized under federal law to carry a firearm in the course of duty, unless the retired peace officer, person, or federal law enforcement officer retired as the result of a mental disability.

(d) The sheriff shall deposit all fees paid by an applicant under division (B)(1)(a) of this section into the sheriff's concealed handgun license issuance fund established pursuant to section 311.42 of the Revised Code. The county shall distribute the fees in accordance with section 311.42 of the Revised Code.

(2) A color photograph of the applicant that was taken within thirty days prior to the date of the application;

(3) One or more of the following competency certifications, each of which shall reflect that, regarding a certification described in division (B)(3) (a), (b), (c), (e), or (f) of this section, within the three years immediately preceding the application the applicant has performed that to which the competency certification relates and that, regarding a certification described in division (B)(3)(d) of this section, the applicant currently is an active or reserve member of the armed forces of the United States or within the six ten years immediately preceding the application the honorable discharge or retirement to which the competency certification relates occurred:

(a) An original or photocopy of a certificate of completion of a firearms safety, training, or requalification or firearms safety instructor course, class, or program that was offered by or under the auspices of the a national rifle association gun advocacy organization and that complies with the requirements set forth in division (G) of this section;

(b) An original or photocopy of a certificate of completion of a firearms safety, training, or requalification or firearms safety instructor course, class, or program that satisfies all of the following criteria:

(i) It was open to members of the general public.

(ii) It utilized qualified instructors who were certified by the a national rifle association gun advocacy organization, the executive director of the Ohio peace officer training commission pursuant to section 109.75 or 109.78 of the Revised Code, or a governmental official or entity of another state.

(iii) It was offered by or under the auspices of a law enforcement agency of this or another state or the United States, a public or private college, university, or other similar postsecondary educational institution located in this or another state, a firearms training school located in this or another state, or another type of public or private entity or organization located in this or another state.

(iv) It complies with the requirements set forth in division (G) of this section.

(c) An original or photocopy of a certificate of completion of a state, county, municipal, or department of natural resources peace officer training school that is approved by the executive director of the Ohio peace officer training commission pursuant to section 109.75 of the Revised Code and that complies with the requirements set forth in division (G) of this section, or the applicant has satisfactorily completed and been issued a certificate of completion of a basic firearms training program, a firearms requalification training program, or another basic training program described in section 109.78 or 109.801 of the Revised Code that complies with the requirements set forth in division (G) of this section;

(d) A document that evidences both of the following:

(i) That the applicant is an active or reserve member of the armed forces of the United States, has retired from or was honorably discharged from military service in the active or reserve armed forces of the United States, is a retired trooper of the state highway patrol, or is a retired peace officer or federal law enforcement officer described in division (B)(1) of this section or a retired person described in division (B)(1)(b) of section 109.77 of the Revised Code and division (B)(1) of this section;

(ii) That, through participation in the military service or through the former employment described in division (B)(3)(d)(I) of this section, the applicant acquired experience with handling handguns or other firearms, and the experience so acquired was equivalent to training that the applicant could have acquired in a course, class, or program described in division (B)(3)(a), (b), or (c) of this section.

(e) A certificate or another similar document that evidences satisfactory completion of a firearms training, safety, or requalification or firearms safety instructor course, class, or program that is not otherwise described in division (B)(3)(a), (b), (c), or (d) of this section, that was conducted by an instructor who was certified by an official or entity of the government of this or another state or the United States or by the a national rifle association gun advocacy organization, and that complies with the requirements set forth in division (G) of this section;

(f) An affidavit that attests to the applicant's satisfactory completion of a course, class, or program described in division (B)(3)(a), (b), (c), or (e) of this section and that is subscribed by the applicant's instructor or an authorized representative of the entity that offered the course, class, or program or under whose auspices the course, class, or program was offered;

(g) A document that evidences that the applicant has successfully completed the Ohio peace officer training program described in section 109.79 of the Revised Code.

(4) A certification by the applicant that the applicant has read the pamphlet prepared by the Ohio peace officer training commission pursuant to section 109.731 of the Revised Code that reviews firearms, dispute resolution, and use of deadly force matters.

(5) A set of fingerprints of the applicant provided as described in section 311.41 of the Revised Code through use of an electronic fingerprint reading device or, if the sheriff to whom the application is submitted does not possess and does not have ready access to the use of such a reading device, on a standard impression sheet prescribed pursuant to division (C)(2) of section 109.572 of the Revised Code.

(6) If the applicant is not a citizen or national of the United States, the name of the applicant's country of citizenship and the applicant's alien registration number issued by the United States citizenship and immigration services agency.

(7) If the applicant resides in another state, adequate proof of employment in Ohio.

(C) Upon receipt of the completed application form, supporting documentation, and, if not waived, license fee of an applicant under this section, a sheriff, in the manner specified in section 311.41 of the Revised Code, shall conduct or cause to be conducted the criminal records check and the incompetency records check described in section 311.41 of the Revised Code.

(D)(1) Except as provided in division (D)(3) or (4) of this section, within forty-five days after a sheriff's receipt of an applicant's completed application form for a concealed handgun license under this section, the supporting documentation, and, if not waived, the license fee, the sheriff shall make available through the law enforcement automated data system in accordance with division (H) of this section the information described in that division and, upon making the information available through the system, shall issue to the applicant a concealed handgun license that shall expire as described in division (D)(2)(a) of this section if all of the following apply:

(a) The applicant is legally living in the United States, has been a resident of this state for at least forty-five days, and has been a resident of the county in which the person seeks the license or a county adjacent to the county in which the person seeks the license for at least thirty days. For purposes of division (D)(1)(a) of this section+

(i) If, if a person is absent from the United States, from this state, or from a particular county in this state in compliance with military or naval orders as an active or reserve member of the armed forces of the United States and if prior to leaving this state in compliance with those orders the United States the person was legally living in the United States and was a resident of this state, the person, solely by reason of that absence, shall not be considered to have lost the person's status as living in the United States or the person's residence in this state or in the county in which the person was a resident prior to leaving this state in compliance with those orders, without regard to whether or not the person intends to return to this state or to that county, shall not be considered to have acquired a residence in any other state, and shall not be considered to have become a resident of any other state.

(ii) If a person is present in this state in compliance with military or naval orders as an active or reserve member of the armed forces of the United States for at least forty-five days, the person shall be considered to have been a resident of this state for that period of at least forty-five days, and, if a person is present in a county of this state in compliance with military or naval orders as an active or reserve member of the armed forces of the United States for at least thirty days, the person shall be considered to have been a resident of that county for that period of at least thirty days.

00037 Exhibit 75

(b) The applicant is at least twenty-one years of age.

(c) The applicant is not a fugitive from justice.

(d) The applicant is not under indictment for or otherwise charged with a felony; an offense under Chapter 2925., 3719., or 4729. of the Revised Code that involves the illegal possession, use, sale, administration, or distribution of or trafficking in a drug of abuse; a misdemeanor offense of violence; or a violation of section 2903.14 or 2923.1211 of the Revised Code.

(e) Except as otherwise provided in division (D)(4) or (5) of this section, the applicant has not been convicted of or pleaded guilty to a felony or an offense under Chapter 2925., 3719., or 4729. of the Revised Code that involves the illegal possession, use, sale, administration, or distribution of or trafficking in a drug of abuse; has not been adjudicated a delinquent child for committing an act that if committed by an adult would be a felony or would be an offense under Chapter 2925., 3719., or 4729. of the Revised Code that involves the illegal possession, use, sale, administration, or distribution of or trafficking in a drug of abuse; and has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing a violation of section 2903.13 of the Revised Code when the victim of the violation is a peace officer, regardless of whether the applicant was sentenced under division (C)(4) of that section; and has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing any other offense that is not previously described in this division that is a misdemeanor punishable by imprisonment for a term exceeding one year.

(f) Except as otherwise provided in division (D)(4) or (5) of this section, the applicant, within three years of the date of the application, has not been convicted of or pleaded guilty to a misdemeanor offense of violence other than a misdemeanor violation of section 2921.33 of the Revised Code or a violation of section 2903.13 of the Revised Code when the victim of the violation is a peace officer, or a misdemeanor violation of section 2923.1211 of the Revised Code; and has not been adjudicated a delinquent child for committing an act that if committed by an adult would be a misdemeanor offense of violence other than a misdemeanor violation of section 2921.33 of the Revised Code or a violation of section 2903.13 of the Revised Code when the victim of the violation is a peace officer or for committing an act that if committed by an adult would be a misdemeanor violation of section 2923.1211 of the Revised Code.

(g) Except as otherwise provided in division (D)(1)(e) of this section, the applicant, within five years of the date of the application, has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing two or more violations of section 2903.13 or 2903.14 of the Revised Code.

(h) Except as otherwise provided in division (D)(4) or (5) of this section, the applicant, within ten years of the date of the application, has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing a violation of section 2921.33 of the Revised Code.

(i) The applicant has not been adjudicated as a mental defective, has not been committed to any mental institution, is not under adjudication of mental incompetence, has not been found by a court to be a mentally ill person subject to hospitalization by court order, and is not an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

(j) The applicant is not currently subject to a civil protection order, a temporary protection order, or a protection order issued by a court of another state.

(k) The applicant certifies that the applicant desires a legal means to carry a concealed handgun for defense of the applicant or a member of the applicant's family while engaged in lawful activity.

(l) The applicant submits a competency certification of the type described in division (B)(3) of this section and submits a certification of the type described in division (B)(4) of this section regarding the applicant's reading of the pamphlet prepared by the Ohio peace officer training commission pursuant to section 109.731 of the Revised Code.

(m) The applicant currently is not subject to a suspension imposed under division (A)(2) of section 2923.128 of the Revised Code of a concealed handgun license that previously was issued to the applicant under this section or section 2923.1213 of the Revised Code or a similar suspension imposed by another state regarding a concealed handgun license issued by that state.

(n) If the applicant resides in another state, the applicant is employed in this state.

(o) The applicant certifies that the applicant is not an unlawful user of or addicted to any controlled substance as defined in 21 U.S.C. 802.

(p) If the applicant is not a United States citizen, the applicant is an alien and has not been admitted to the United States under a nonimmigrant visa, as defined in the "Immigration and Nationality Act," 8 U.S.C. 1101(a)(26).

(q) The applicant has not been discharged from the armed forces of the United States under dishonorable conditions.

(r) The applicant certifies that the applicant has not renounced the applicant's United States citizenship, if applicable.

(s) The applicant has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing a violation of section 2919.25 of the Revised Code or a similar violation in another state.

(2)(a) A concealed handgun license that a sheriff issues under division (D)(1) of this section shall expire five years after the date of issuance.

If a sheriff issues a license under this section, the sheriff shall place on the license a unique combination of letters and numbers identifying the license in accordance with the procedure prescribed by the Ohio peace officer training commission pursuant to section 109.731 of the Revised Code.

(b) If a sheriff denies an application under this section because the applicant does not satisfy the criteria described in division (D)(1) of this section, the sheriff shall specify the grounds for the denial in a written notice to the applicant. The applicant may appeal the denial pursuant to section 119.12 of the Revised Code in the county served by the sheriff who denied the application. If the denial was as a result of the criminal records check conducted pursuant to section 311.41 of the Revised Code and if, pursuant to section 2923.127 of the Revised Code, the applicant challenges the criminal records check results using the appropriate challenge and review procedure specified in that section, the time for filing the appeal pursuant to section 119.12 of the Revised Code and this division is tolled during the pendency of the request or the challenge and review. If

(c) If the court in an appeal under section 119.12 of the Revised Code and this division (D)(2)(b) of this section enters a judgment sustaining the sheriff's refusal to grant to the applicant a concealed handgun license, the applicant may file a new application beginning one year after the judgment is entered. If the court enters a judgment in favor of the applicant, that judgment shall not restrict the authority of a sheriff to suspend or revoke the license pursuant to section 2923.128 or 2923.1213 of the Revised Code or to refuse to renew the license for any proper cause that may occur after the date the judgment is entered. In the appeal, the court shall have full power to dispose of all costs.

(3) If the sheriff with whom an application for a concealed handgun license was filed under this section becomes aware that the applicant has been arrested for or otherwise charged with an offense that would disqualify the applicant from holding the license, the sheriff shall suspend the processing of the application until the disposition of the case arising from the arrest or charge.

(4) If the sheriff determines that the applicant is legally living in the United States and is a resident of the county in which the applicant seeks the license or of an adjacent county but does not yet meet the residency requirements described in division (D)(1)(a) of this section, the sheriff shall not deny the license because of the residency requirements but shall not issue the license until the applicant meets those residency requirements.

(5) If an applicant has been convicted of or pleaded guilty to an offense identified in division (D)(1)(e), (f), or (h) of this section or has been adjudicated a delinquent child for committing an act or violation identified in any of those divisions, and if a court has ordered the sealing or expungement of the records of that conviction, guilty plea, or adjudication pursuant to sections 2151.355 to 2151.358, sections 2953.31 to 2953.36, or section 2953.37 of the Revised Code or a court has granted the applicant relief pursuant to section 2923.14 of the Revised Code has been relieved under operation of law or legal process from the disability imposed pursuant to section 2923.13 of the Revised Code relative to that conviction, guilty plea, or adjudication, the sheriff with whom the application was submitted shall not consider the conviction, guilty plea, or adjudication in making a determination under division (D)(1) or (F) of this section or, in relation to an application for a concealed handgun license on a temporary emergency basis submitted under section 2923.1213 of the Revised Code, in making a determination under division (B)(2) of that section.

(5) If an applicant has been convicted of or pleaded guilty to a minor misdemeanor offense or has been adjudicated a delinquent child for committing an act or violation that is a minor misdemeanor offense, the sheriff with whom the application was submitted shall not consider the conviction, guilty plea, or adjudication in making a determination under division (D)(1) or (F) of this section or, in relation to an application for a concealed handgun license on a temporary basis submitted under section 2923.1213 of the Revised Code, in making a determination under division (B)(2) of that section.

(E) If a concealed handgun license issued under this section is lost or is destroyed, the licensee may obtain from the sheriff who issued that license a duplicate license upon the payment of a fee of fifteen dollars and the submission of an affidavit attesting to the loss or destruction of the license. The sheriff, in accordance with the procedures prescribed in section 109.731 of the Revised Code, shall place on the replacement license a combination of identifying numbers different from the combination on the license that is being replaced.

Exhibit 75
00038

(F)(1) A (a) Except as provided in division (F)(1)(b) of this section, a licensee who wishes to renew a concealed handgun license issued under this section shall do so not earlier than ninety days before the expiration date of the license or at any time after the expiration date of the license by filing with the sheriff of the county in which the applicant resides or with the sheriff of an adjacent county, or in the case of a applicant who resides in another state with the sheriff of the county that issued the applicant's previous concealed handgun license an application for renewal of the license obtained pursuant to division (D) of this section, a certification by the applicant that, subsequent to the issuance of the license, the applicant has reread the pamphlet prepared by the Ohio peace officer training commission pursuant to section 109.731 of the Revised Code that reviews firearms, dispute resolution, and use of deadly force matters, and a nonrefundable license renewal fee in an amount determined pursuant to division (F)(4) of this section unless the fee is waived.

(b) A person on active duty in the armed forces of the United States or in service with the peace corps, volunteers in service to America, or the foreign service of the United States is exempt from the license requirements of this section for the period of the person's active duty or service and for six months thereafter, provided the person was a licensee under this section at the time the person commenced the person's active duty or service or had obtained a license while on active duty or service. The spouse or a dependent of any such person on active duty or in service also is exempt from the license requirements of this section for the period of the person's active duty or service and for six months thereafter, provided the spouse or dependent was a licensee under this section at the time the person commenced the active duty or service or had obtained a license while the person was on active duty or service, and provided further that the person's active duty or service resulted in the spouse or dependent relocating outside of this state during the period of the active duty or service. This division does not prevent such a person or the person's spouse or dependent from making an application for the renewal of a concealed handgun license during the period of the person's active duty or service.

(2) A sheriff shall accept a completed renewal application, the license renewal fee, and the information specified in division (F)(1) of this section at the times and in the manners described in division (I) of this section. Upon receipt of a completed renewal application, of certification that the applicant has reread the pamphlet prepared by the Ohio peace officer training commission, and of a license renewal fee unless the fee is waived, a sheriff, in the manner specified in section 311.41 of the Revised Code shall conduct or cause to be conducted the criminal records check and the incompetency records check described in section 311.41 of the Revised Code. The sheriff shall renew the license if the sheriff determines that the applicant continues to satisfy the requirements described in division (D)(1) of this section, except that the applicant is not required to meet the requirements of division (D)(1)(l) of this section. A renewed license shall expire five years after the date of issuance. A renewed license is subject to division (E) of this section and sections 2923.126 and 2923.128 of the Revised Code. A sheriff shall comply with divisions (D)(2) to (4) and (3) of this section when the circumstances described in those divisions apply to a requested license renewal. If a sheriff denies the renewal of a concealed handgun license, the applicant may appeal the denial, or challenge the criminal record check results that were the basis of the denial if applicable, in the same manner as specified in division (D)(2)(b) of this section and in section 2923.127 of the Revised Code, regarding the denial of a license under this section.

(3) A renewal application submitted pursuant to division (F) of this section shall only require the licensee to list on the application form information and matters occurring since the date of the licensee's last application for a license pursuant to division (B) or (F) of this section. A sheriff conducting the criminal records check and the incompetency records check described in section 311.41 of the Revised Code shall conduct the check only from the date of the licensee's last application for a license pursuant to division (B) or (F) of this section through the date of the renewal application submitted pursuant to division (F) of this section.

(4) An applicant for a renewal concealed handgun license under this section shall submit to the sheriff of the county in which the applicant resides or to the sheriff of any county adjacent to the county in which the applicant resides, or in the case of an applicant who resides in another state to the sheriff of the county that issued the applicant's previous concealed handgun license, a nonrefundable license fee as described in either of the following:

(a) For an applicant who has been a resident of this state for five or more years, a fee of fifty dollars;

(b) For an applicant who has been a resident of this state for less than five years or who is not a resident of this state but who is employed in this state, a fee of fifty dollars plus the actual cost of having a background check performed by the federal bureau of investigation.

(5) The concealed handgun license of a licensee who is no longer a resident of this state or no longer employed in this state, as applicable, is valid until the date of expiration on the license, and the licensee is prohibited from renewing the concealed handgun license.

(G)(1) Each course, class, or program described in division (B)(3)(a), (b), (c), or (e) of this section shall provide to each person who takes the course, class, or program the web site address at which the pamphlet prepared by the Ohio peace officer training commission pursuant to section 109.731 of the Revised Code that reviews firearms, dispute resolution, and use of deadly force matters may be found. Each such course, class, or program described in one of those divisions shall include at least twelve eight hours of training in the safe handling and use of a firearm that shall include training, provided as described in division (G)(3) of this section, on all of the following:

(a) At least ten hours of training on the following matters:

(i) (b) The ability to name, explain, and demonstrate the rules for safe handling of a handgun and proper storage practices for handguns and ammunition;

(ii) (b) The ability to demonstrate and explain how to handle ammunition in a safe manner;

(iii) (c) The ability to demonstrate the knowledge, skills, and attitude necessary to shoot a handgun in a safe manner;

(iv) (d) Gun handling training-;

(b) At least (e) A minimum of two hours of in-person training that consists of range time and live-fire training.

(2) To satisfactorily complete the course, class, or program described in division (B)(3)(a), (b), (c), or (e) of this section, the applicant shall pass a competency examination that shall include both of the following:

(a) A written section, provided as described in division (G)(3) of this section, on the ability to name and explain the rules for the safe handling of a handgun and proper storage practices for handguns and ammunition;

(b) A An in-person physical demonstration of competence in the use of a handgun and in the rules for safe handling and storage of a handgun and a physical demonstration of the attitude necessary to shoot a handgun in a safe manner.

(3)(a) Except as otherwise provided in this division, the training specified in division (G)(1)(a) of this section shall be provided to the person receiving the training in person by an instructor. If the training specified in division (G)(1)(a) of this section is provided by a course, class, or program described in division (B)(3)(a) of this section, or it is provided by a course, class, or program described in division (B)(3)(b),(c), or (e) of this section and the instructor is a qualified instructor certified by a national gun advocacy organization, the training so specified, other than the training that requires the person receiving the training to demonstrate handling abilities, may be provided online or as a combination of in-person and online training, as long as the online training includes an interactive component that regularly engages the person.

(b) Except as otherwise provided in this division, the written section of the competency examination specified in division (G)(2)(a) of this section shall be administered to the person taking the competency examination in person by an instructor. If the training specified in division (G)(1)(a) of this section is provided to the person receiving the training by a course, class, or program described in division (B)(3)(a) of this section, or it is provided by a course, class, or program described in division (B)(3)(b),(c), or (e) of this section and the instructor is a qualified instructor certified by a national gun advocacy organization, the written section of the competency examination specified in division (G)(2)(a) of this section may be administered online, as long as the online training includes an interactive component that regularly engages the person.

(4) The competency certification described in division (B)(3)(a), (b), (c), or (e) of this section shall be dated and shall attest that the course, class, or program the applicant successfully completed met the requirements described in division (G)(1) of this section and that the applicant passed the competency examination described in division (G)(2) of this section.

(H) Upon deciding to issue a concealed handgun license, deciding to issue a replacement concealed handgun license, or deciding to renew a concealed handgun license pursuant to this section, and before actually issuing or renewing the license, the sheriff shall make available through the law enforcement automated data system all information contained on the license. If the license subsequently is suspended under division (A)(1) or (2) of section 2923.128 of the Revised Code, revoked pursuant to division (B)(1) of section 2923.128 of the Revised Code, or lost or destroyed, the sheriff also shall make available through the law enforcement automated data system a notation of that fact. The superintendent of the state highway patrol shall ensure that the law enforcement automated data system is so configured as to permit the transmission through the system of the information specified in this division.

(I) A sheriff shall accept a completed application form or renewal application, and the fee, items, materials, and information specified in divisions (B)(1) to (5) or division (F) of this section, whichever is applicable, and shall provide an application form or renewal application to any person during at least fifteen hours a week and shall provide the web site address at which a printable version of the application form that can be downloaded and the pamphlet described in division (B) of section 109.731 of the Revised Code may be found at any time, upon request. The sheriff shall post notice of the hours during which the sheriff is available to accept or provide the information described in this division.

**Sec. 2923.126.** (A) A concealed handgun license that is issued under section 2923.125 of the Revised Code shall expire five years after the date of issuance. A licensee who has been issued a license under that section shall be granted a grace period of thirty days after the licensee's license expires during which the licensee's license remains valid. Except as provided in divisions (B) and (C) of this section, a licensee who has been issued a concealed handgun license under section 2923.125 or 2923.1213 of the Revised Code may carry a concealed handgun anywhere in this state if the licensee also carries a valid license and valid identification when the licensee is in actual possession of a concealed handgun. The licensee shall give notice of any change in the licensee's residence address to the sheriff who issued the license within forty-five days after that change.

If a licensee is the driver or an occupant of a motor vehicle that is stopped as the result of a traffic stop or a stop for another law enforcement purpose and if the licensee is transporting or has a loaded handgun in the motor vehicle at that time, the licensee shall promptly inform any law enforcement officer who approaches the vehicle while stopped that the licensee has been issued a concealed handgun license and that the licensee currently possesses or has a loaded handgun; the licensee shall not knowingly disregard or fail to comply with lawful orders of a law enforcement officer given while the motor vehicle is stopped, knowingly fail to remain in the motor vehicle while stopped, or knowingly fail to keep the licensee's hands in plain sight after any law enforcement officer begins approaching the licensee while stopped and before the officer leaves, unless directed otherwise by a law enforcement officer; and the licensee shall not knowingly have contact with the loaded handgun by touching it with the licensee's hands or fingers, in any manner in violation of division (E) of section 2923.16 of the Revised Code, after any law enforcement officer begins approaching the licensee while stopped and before the officer leaves. Additionally, if a licensee is the driver or an occupant of a commercial motor vehicle that is stopped by an employee of the motor carrier enforcement unit for the purposes defined in section 5503.04 of the Revised Code and if the licensee is transporting or has a loaded handgun in the commercial motor vehicle at that time, the licensee shall promptly inform the employee of the unit who approaches the vehicle while stopped that the licensee has been issued a concealed handgun license and that the licensee currently possesses or has a loaded handgun.

If a licensee is stopped for a law enforcement purpose and if the licensee is carrying a concealed handgun at the time the officer approaches, the licensee shall promptly inform any law enforcement officer who approaches the licensee while stopped that the licensee has been issued a concealed handgun license and that the licensee currently is carrying a concealed handgun; the licensee shall not knowingly disregard or fail to comply with lawful orders of a law enforcement officer given while the licensee is stopped or knowingly fail to keep the licensee's hands in plain sight after any law enforcement officer begins approaching the licensee while stopped and before the officer leaves, unless directed otherwise by a law enforcement officer; and the licensee shall not knowingly remove, attempt to remove, grasp, or hold the loaded handgun or knowingly have contact with the loaded handgun by touching it with the licensee's hands or fingers, in any manner in violation of division (B) of section 2923.12 of the Revised Code, after any law enforcement officer begins approaching the licensee while stopped and before the officer leaves.

(B) A valid concealed handgun license does not authorize the licensee to carry a concealed handgun in any manner prohibited under division (B) of section 2923.12 of the Revised Code or in any manner prohibited under section 2923.16 of the Revised Code. A valid license does not authorize the licensee to carry a concealed handgun into any of the following places:

(1) A police station, sheriff's office, or state highway patrol station, premises controlled by the bureau of criminal identification and investigation, a state correctional institution, jail, workhouse, or other detention facility, an airport passenger terminal, or an institution that is maintained, operated, managed, and governed pursuant to division (A) of section 5119.14 of the Revised Code or division (A)(1) of section 5123.03 of the Revised Code;

(2) A school safety zone if the licensee's carrying the concealed handgun is in violation of section 2923.122 of the Revised Code;

(3) A courthouse or another building or structure in which a courtroom is located, in violation of section 2923.123 of the Revised Code;

(4) Any premises or open air arena for which a D permit has been issued under Chapter 4303. of the Revised Code if the licensee's carrying the concealed handgun is in violation of section 2923.121 of the Revised Code;

(5) Any premises owned or leased by any public or private college, university, or other institution of higher education, unless the handgun is in a locked motor vehicle or the licensee is in the immediate process of placing the handgun in a locked motor vehicle;

(6) Any church, synagogue, mosque, or other place of worship, unless the church, synagogue, mosque, or other place of worship posts or permits otherwise;

(7) A child day-care center, a type A family day-care home, a type B family day-care home, except that this division does not prohibit a licensee who resides in a type A family day-care home or a type B family day-care home from carrying a concealed handgun at any time in any part of the home that is not dedicated or used for day-care purposes, or from carrying a concealed handgun in a part of the home that is dedicated or used for day-care purposes at any time during which no children, other than children of that licensee, are in the home;

(8) An aircraft that is in, or intended for operation in, foreign air transportation, interstate air transportation, intrastate air transportation, or the transportation of mail by aircraft;

(9) Any building that is a government facility of this state or a political subdivision of this state and that is not a building that is used primarily as a shelter, restroom, parking facility for motor vehicles, or rest facility and is not a courthouse or other building or structure in which a courtroom is located that is subject to division (B)(3) of this section;

(10) A place in which federal law prohibits the carrying of handguns.

(C)(1) Nothing in this section shall negate or restrict a rule, policy, or practice of a private employer that is not a private college, university, or other institution of higher education concerning or prohibiting the presence of firearms on the private employer's premises or property, including motor vehicles owned by the private employer. Nothing in this section shall require a private employer of that nature to adopt a rule, policy, or practice concerning or prohibiting the presence of firearms on the private employer's premises or property, including motor vehicles owned by the private employer.

(2)(a) A private employer shall be immune from liability in a civil action for any injury, death, or loss to person or property that allegedly was caused by or related to a licensee bringing a handgun onto the premises or property of the private employer, including motor vehicles owned by the private employer, unless the private employer acted with malicious purpose. A private employer is immune from liability in a civil action for any injury, death, or loss to person or property that allegedly was caused by or related to the private employer's decision to permit a licensee to bring, or prohibit a licensee from bringing, a handgun onto the premises or property of the private employer. As used in this division, "private employer" includes a private college, university, or other institution of higher education.

(b) A political subdivision shall be immune from liability in a civil action, to the extent and in the manner provided in Chapter 2744. of the Revised Code, for any injury, death, or loss to person or property that allegedly was caused by or related to a licensee bringing a handgun onto any premises or property owned, leased, or otherwise under the control of the political subdivision. As used in this division, "political subdivision" has the same meaning as in section 2744.01 of the Revised Code.

(3)(a) Except as provided in division (C)(3)(b) of this section, the owner or person in control of private land or premises, and a private person or entity leasing land or premises owned by the state, the United States, or a political subdivision of the state or the United States, may post a sign in a conspicuous location on that land or on those premises prohibiting persons from carrying firearms or concealed firearms on or onto that land or those premises. Except as otherwise provided in this division, a person who knowingly violates a posted prohibition of that nature is guilty of criminal trespass in violation of division (A)(4) of section 2911.21 of the Revised Code and is guilty of a misdemeanor of the fourth degree. If a person knowingly violates a posted prohibition of that nature and the posted land or premises primarily was a parking lot or other parking facility, the person is not guilty of criminal trespass in violation of division (A)(4) of under section 2911.21 of the Revised Code or under any other criminal law of this state or criminal law, ordinance, or resolution of a political subdivision of this state, and instead is subject only to a civil cause of action for trespass based on the division.

(b) A landlord may not prohibit or restrict a tenant who is a licensee and who on or after September 9, 2008, enters into a rental agreement with the landlord for the use of residential premises, and the tenant's guest while the tenant is present, from lawfully carrying or possessing a handgun on those residential premises.

(c) As used in division (C)(3) of this section:

(i) "Residential premises" has the same meaning as in section 5321.01 of the Revised Code, except "residential premises" does not include a dwelling unit that is owned or operated by a college or university.

(ii) "Landlord," "tenant," and "rental agreement" have the same meanings as in section 5321.01 of the Revised Code.

(D) A person who holds a valid concealed handgun license issued by another state that is recognized by the attorney general pursuant to a reciprocity agreement entered into pursuant to section 109.69 of the Revised Code or a person who holds a valid concealed handgun license under the circumstances described in division (B) of section 109.69 of the Revised Code has the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code and is subject to the same restrictions that apply to a person who carries a license issued under that section.

(E) A peace officer has the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code. For purposes of reciprocity with other states, a peace officer shall be considered to be a licensee in this state.

Exhibit 75

(F)(1) A qualified retired peace officer who possesses a retired peace officer identification card issued pursuant to division (F)(2) of this section and a valid firearms requalification certification issued pursuant to division (F)(3) of this section has the same right to carry a concealed handgun in this state as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code and is subject to the same restrictions that apply to a person who carries a license issued under that section. For purposes of compliance with other states, a qualified retired peace officer who possesses a retired peace officer identification card issued pursuant to division (F)(2) of this section and a valid firearms requalification certification issued pursuant to division (F)(3) of this section shall be considered to be a licensee in this state.

(2)(a) Each public agency of this state or of a political subdivision of this state that is served by one or more peace officers shall issue a retired peace officer identification card to any person who retired from service as a peace officer with that agency, if the issuance is in accordance with the agency's policies and procedures and if the person, with respect to the person's service with that agency, satisfies all of the following:

(i) The person retired in good standing from service as a peace officer with the public agency, and the retirement was not for reasons of mental instability.

(ii) Before retiring from service as a peace officer with that agency, the person was authorized to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law and the person had statutory powers of arrest.

(iii) At the time of the person's retirement as a peace officer with that agency, the person was trained and qualified to carry firearms in the performance of the peace officer's duties.

(iv) Before retiring from service as a peace officer with that agency, the person was regularly employed as a peace officer for an aggregate of fifteen years or more, or, in the alternative, the person retired from service as a peace officer with that agency, after completing any applicable probationary period of that service, due to a service-connected disability, as determined by the agency.

(b) A retired peace officer identification card issued to a person under division (F)(2)(a) of this section shall identify the person by name, contain a photograph of the person, identify the public agency of this state or of the political subdivision of this state from which the person retired as a peace officer and that is issuing the identification card, and specify that the person retired in good standing from service as a peace officer with the issuing public agency and satisfies the criteria set forth in divisions (F)(2)(a)(i) to (iv) of this section. In addition to the required content specified in this division, a retired peace officer identification card issued to a person under division (F)(2)(a) of this section may include the firearms requalification certification described in division (F)(3) of this section, and if the identification card includes that certification, the identification card shall serve as the firearms requalification certification for the retired peace officer. If the issuing public agency issues credentials to active law enforcement officers who serve the agency, the agency may comply with division (F)(2)(a) of this section by issuing the same credentials to persons who retired from service as a peace officer with the agency and who satisfy the criteria set forth in divisions (F)(2)(a)(i) to (iv) of this section, provided that the credentials so issued to retired peace officers are stamped with the word "RETIRED."

(c) A public agency of this state or of a political subdivision of this state may charge persons who retired from service as a peace officer with the agency a reasonable fee for issuing to the person a retired peace officer identification card pursuant to division (F)(2)(a) of this section.

(3) If a person retired from service as a peace officer with a public agency of this state or of a political subdivision of this state and the person satisfies the criteria set forth in divisions (F)(2)(a)(i) to (iv) of this section, the public agency may provide the retired peace officer with the opportunity to attend a firearms requalification program that is approved for purposes of firearms requalification required under section 109.801 of the Revised Code. The retired peace officer may be required to pay the cost of the course.

If a retired peace officer who satisfies the criteria set forth in divisions (F)(2)(a)(i) to (iv) of this section attends a firearms requalification program that is approved for purposes of firearms requalification required under section 109.801 of the Revised Code, the retired peace officer's successful completion of the firearms requalification program requalifies the retired peace officer for purposes of division (F) of this section for five years from the date on which the program was successfully completed, and the requalification is valid during that five-year period. If a retired peace officer who satisfies the criteria set forth in divisions (F)(2)(a)(i) to (iv) of this section satisfactorily completes such a firearms requalification program, the retired peace officer shall be issued a firearms requalification certification that identifies the retired peace officer by name, identifies the entity that taught the program, specifies that the retired peace officer successfully completed the program, specifies the date on which the course was successfully completed, and specifies that the requalification is valid for five years from that date of successful completion. The firearms requalification certification for a retired peace officer may be included in the retired peace officer identification card issued to the retired peace officer under division (F)(2) of this section.

A retired peace officer who attends a firearms requalification program that is approved for purposes of firearms requalification required under section 109.801 of the Revised Code may be required to pay the cost of the program.

(G) As used in this section:

(1) "Qualified retired peace officer" means a person who satisfies all of the following:

(a) The person satisfies the criteria set forth in divisions (F)(2)(a)(i) to (v) of this section.

(b) The person is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance.

(c) The person is not prohibited by federal law from receiving firearms.

(2) "Retired peace officer identification card" means an identification card that is issued pursuant to division (F)(2) of this section to a person who is a retired peace officer.

(3) "Government facility of this state or a political subdivision of this state" means any of the following:

(a) A building or part of a building that is owned or leased by the government of this state or a political subdivision of this state and where employees of the government of this state or the political subdivision regularly are present for the purpose of performing their official duties as employees of the state or political subdivision;

(b) The office of a deputy registrar serving pursuant to Chapter 4503. of the Revised Code that is used to perform deputy registrar functions.

**Sec. 2923.128.** (A)(1)(a) If a licensee holding a valid concealed handgun license is arrested for or otherwise charged with an offense described in division (D)(1)(d) of section 2923.125 of the Revised Code or with a violation of section 2923.15 of the Revised Code or becomes subject to a temporary protection order or to a protection order issued by a court of another state that is substantially equivalent to a temporary protection order, the sheriff who issued the license shall suspend it and shall comply with division (A)(3) of this section upon becoming aware of the arrest, charge, or protection order. Upon suspending the license, the sheriff also shall comply with division (H) of section 2923.125 of the Revised Code.

(b) A suspension under division (A)(1)(a) of this section shall be considered as beginning on the date that the licensee is arrested for or otherwise charged with an offense described in that division or on the date the appropriate court issued the protection order described in that division, irrespective of when the sheriff notifies the licensee under division (A)(3) of this section. The suspension shall end on the date on which the charges are dismissed or the licensee is found not guilty of the offense described in division (A)(1)(a) of this section, or subject to division (B) of this section, on the date the appropriate court terminates the protection order described in that division. If the suspension so ends, the sheriff shall return the license or temporary emergency license to the licensee.

(2)(a) If a licensee holding a valid concealed handgun license is convicted of or pleads guilty to a misdemeanor violation of division (B)(1), (2), or (4) of section 2923.12 of the Revised Code or of division (E)(1), (2), (3), or (5) of section 2923.16 of the Revised Code, except as provided in division (A)(2)(c) of this section and subject to division (C) of this section, the sheriff who issued the license shall suspend it and shall comply with division (A)(3) of this section upon becoming aware of the conviction or guilty plea. Upon suspending the license, the sheriff also shall comply with division (H) of section 2923.125 of the Revised Code.

(b) A suspension under division (A)(2)(a) of this section shall be considered as beginning on the date that the licensee is convicted of or pleads guilty to the offense described in that division, irrespective of when the sheriff notifies the licensee under division (A)(3) of this section. If the suspension is imposed for a misdemeanor violation of division (B)(1) or (2) of section 2923.12 of the Revised Code or of division (E)(1), (2), or (3) of section 2923.16 of the Revised Code, it shall end on the date that is one year after the date that the licensee is convicted of or pleads guilty to that violation. If the suspension is imposed for a misdemeanor violation of division (B)(4) of section 2923.12 of the Revised Code or of division (E)(5) of section 2923.16 of the Revised Code, it shall end on the date that is two years after the date that the licensee is convicted of or pleads guilty to that violation. If the licensee's license was issued under section 2923.125 of the Revised Code and the license remains valid after the suspension ends as described in this division, when the suspension ends, the sheriff shall return the license to the licensee. If the licensee's license was issued under section 2923.125 of the Revised Code and the license expires before the suspension ends as described in this division, or if the licensee's license was issued under section 2923.1213 of the Revised Code, the licensee is not eligible to apply for a new license under section 2923.125 or 2923.1213 of the Revised Code or to renew the license under section 2923.125 of the Revised Code until after the suspension ends as described in this division.

(c) The license of a licensee who is convicted of or pleads guilty to a violation of division (B)(1) of section 2923.12 or division (E)(1) or (2) of section 2923.16 of the Revised Code shall not be suspended pursuant to division (A)(2)(a) of this section if, at the time of the stop of the licensee for a law

enforcement purpose, for a traffic stop, or for a purpose defined in section 5503.34 of the Revised Code that was the basis of the violation, any law enforcement officer involved with the stop or the employee of the motor carrier enforcement unit who made the stop had actual knowledge of the licensee's status as a licensee.

(3) Upon becoming aware of an arrest, charge, or protection order described in division (A)(1)(a) of this section with respect to a licensee who was issued a concealed handgun license, or a conviction of or plea of guilty to a misdemeanor offense described in division (A)(2)(a) of this section with respect to a licensee who was issued a concealed handgun license and with respect to which division (A)(2)(c) of this section does not apply, subject to division (C) of this section, the sheriff who issued the licensee's license shall notify the licensee, by certified mail, return receipt requested, at the licensee's last known residence address that the license has been suspended and that the licensee is required to surrender the license at the sheriff's office within ten days of the date on which the notice was mailed. If the suspension is pursuant to division (A)(2) of this section, the notice shall identify the date on which the suspension ends.

(B)(1) A sheriff who issues a concealed handgun license to a licensee shall revoke the license in accordance with division (B)(2) of this section upon becoming aware that the licensee satisfies any of the following:

(a) The licensee is under twenty-one years of age.

(b) Subject to division (C) of this section, at the time of the issuance of the license, the licensee did not satisfy the eligibility requirements of division (D)(1)(c), (d), (e), (f), (g), or (h) of section 2923.125 of the Revised Code.

(c) Subject to division (C) of this section, on or after the date on which the license was issued, the licensee is convicted of or pleads guilty to a violation of section 2923.15 of the Revised Code or an offense described in division (D)(1)(e), (f), (g), or (h) of section 2923.125 of the Revised Code.

(d) On or after the date on which the license was issued, the licensee becomes subject to a civil protection order or to a protection order issued by a court of another state that is substantially equivalent to a civil protection order.

(e) The licensee knowingly carries a concealed handgun into a place that the licensee knows is an unauthorized place specified in division (B) of section 2923.126 of the Revised Code.

(f) On or after the date on which the license was issued, the licensee is adjudicated as a mental defective or is committed to a mental institution.

(g) At the time of the issuance of the license, the licensee did not meet the residency requirements described in division (D)(1) of section 2923.125 of the Revised Code and currently does not meet the residency requirements described in that division.

(h) Regarding a license issued under section 2923.125 of the Revised Code, the competency certificate the licensee submitted was forged or otherwise was fraudulent.

(2) Upon becoming aware of any circumstance listed in division (B)(1) of this section that applies to a particular licensee who was issued a concealed handgun license, subject to division (C) of this section, the sheriff who issued the license to the licensee shall notify the licensee, by certified mail, return receipt requested, at the licensee's last known residence address that the license is subject to revocation and that the licensee may come to the sheriff's office and contest the sheriff's proposed revocation within fourteen days of the date on which the notice was mailed. After the fourteen-day period and after consideration of any information that the licensee provides during that period, if the sheriff determines on the basis of the information of which the sheriff is aware that the licensee is described in division (B)(1) of this section and no longer satisfies the requirements described in division (D)(1) of section 2923.125 of the Revised Code that are applicable to the licensee's type of license, the sheriff shall revoke the license, notify the licensee of that fact, and require the licensee to surrender the license. Upon revoking the license, the sheriff also shall comply with division (H) of section 2923.125 of the Revised Code.

(C) If a sheriff who issues a concealed handgun license to a licensee becomes aware that at the time of the issuance of the license the licensee had been convicted of or pleaded guilty to an offense identified in division (D)(1)(e), (f), or (h) of section 2923.125 of the Revised Code or had been adjudicated a delinquent child for committing an act or violation identified in any of those divisions or becomes aware that on or after the date on which the license was issued the licensee has been convicted of or pleaded guilty to an offense identified in division (A)(2)(a) or (B)(1)(c) of this section, the sheriff shall not consider that conviction, guilty plea, or adjudication as having occurred for purposes of divisions (A)(2), (A)(3), (B)(1), and (B)(2) of this section if a court has ordered the sealing or expungement of the records of that conviction, guilty plea, or adjudication pursuant to sections 2151.355 to 2151.358 or sections 2953.31 to 2953.36 of the Revised Code or ~~a court has granted the licensee relief pursuant to section 2923.14 of the Revised Code~~ has been relieved under operation of law or legal process from the disability imposed pursuant to section 2923.13 of the Revised Code relative to that conviction, guilty plea, or adjudication.

(D) As used in this section, "motor carrier enforcement unit" has the same meaning as in section 2923.16 of the Revised Code.

**Sec. 2923.1213.** (A) As used in this section:

(1) "Evidence of imminent danger" means any of the following:

(a) A statement sworn by the person seeking to carry a concealed handgun that is made under threat of perjury and that states that the person has reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed;

(b) A written document prepared by a governmental entity or public official describing the facts that give the person seeking to carry a concealed handgun reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed. Written documents of this nature include, but are not limited to, any temporary protection order, civil protection order, protection order issued by another state, or other court order, any court report, and any report filed with or made by a law enforcement agency or prosecutor.

(2) "Prosecutor" has the same meaning as in section 2935.01 of the Revised Code.

(B)(1) A person seeking a concealed handgun license on a temporary emergency basis shall submit to the sheriff of the county in which the person resides or, if the person usually resides in another state, to the sheriff of the county in which the person is temporarily staying, all of the following:

(a) Evidence of imminent danger to the person or a member of the person's family;

(b) A sworn affidavit that contains all of the information required to be on the license and attesting that the person is legally living in the United States; is at least twenty-one years of age; is not a fugitive from justice; is not under indictment for or otherwise charged with an offense identified in division (D)(1)(d) of section 2923.125 of the Revised Code; has not been convicted of or pleaded guilty to an offense, and has not been adjudicated a delinquent child for committing an act, identified in division (D)(1)(e) of that section; within three years of the date of the submission, has not been convicted of or pleaded guilty to an offense, and has not been adjudicated a delinquent child for committing an act, identified in division (D)(1)(f) of that section and to which division (B)(3) of this section does not apply; within five years of the date of the submission, has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing two or more violations identified in division (D)(1)(g) of that section; within ten years of the date of the submission, has not been convicted of, pleaded guilty to, or adjudicated a delinquent child for committing a violation identified in division (D)(1)(h) of that section and to which division (B)(3) of this section does not apply; has not been adjudicated as a mental defective, has not been committed to any mental institution, is not under adjudication of mental incompetence, has not been found by a court to be a mentally ill person subject to hospitalization by court order, and is not an involuntary patient other than one who is a patient only for purposes of observation, as described in division (D)(1)(i) of that section; is not currently subject to a civil protection order, a temporary protection order, or a protection order issued by a court of another state, as described in division (D)(1)(j) of that section; ~~and~~ is not currently subject to a suspension imposed under division (A)(2) of section 2923.128 of the Revised Code of a concealed handgun license that previously was issued to the person or a similar suspension imposed by another state regarding a concealed handgun license issued by that state; is not an unlawful user of or addicted to any controlled substance as defined in 21 U.S.C. 802; if applicable, is an alien and has not been admitted to the United States under a nonimmigrant visa, as defined in the "Immigration and Nationality Act," 8 U.S.C. 1101(a)(26); has not been discharged from the armed forces of the United States under dishonorable conditions; if applicable, has not renounced the applicant's United States citizenship; and has not been convicted of, pleaded guilty to, or been adjudicated a delinquent child for committing a violation identified in division (D)(1)(s) of section 2923.125 of the Revised Code;

(c) A nonrefundable temporary emergency license fee as described in either of the following:

(i) For an applicant who has been a resident of this state for five or more years, a fee of fifteen dollars plus the actual cost of having a background check performed by the bureau of criminal identification and investigation pursuant to section 311.41 of the Revised Code;

(ii) For an applicant who has been a resident of this state for less than five years or who is not a resident of this state, but is temporarily staying in this state, a fee of fifteen dollars plus the actual cost of having background checks performed by the federal bureau of investigation and the bureau of criminal identification and investigation pursuant to section 311.41 of the Revised Code.

(d) A set of fingerprints of the applicant provided as described in section 311.41 of the Revised Code through use of an electronic fingerprint reading device or, if the sheriff to whom the application is submitted does not possess and does not have ready access to the use of an electronic

fingerprint reading device, on a standard impression sheet prescribed pursuant to division (C)(2) of section 109.572 of the Revised Code. If the fingerprints are provided on a standard impression sheet, the person also shall provide the person's social security number to the sheriff.

(2) A sheriff shall accept the evidence of imminent danger, the sworn affidavit, the fee, and the set of fingerprints required under division (B)(1) of this section at the times and in the manners described in division (I) of this section. Upon receipt of the evidence of imminent danger, the sworn affidavit, the fee, and the set of fingerprints required under division (B)(1) of this section, the sheriff, in the manner specified in section 311.41 of the Revised Code, immediately shall conduct or cause to be conducted the criminal records check and the incompetency records check described in section 311.41 of the Revised Code. Immediately upon receipt of the results of the records checks, the sheriff shall review the information and shall determine whether the criteria set forth in divisions (D)(1)(a) to (j) and (m) to (s) of section 2923.125 of the Revised Code apply regarding the person. If the sheriff determines that all criteria set forth in divisions (D)(1)(a) to (j) and (m) to (s) of section 2923.125 of the Revised Code apply regarding the person, the sheriff shall immediately make available through the law enforcement automated data system all information that will be contained on the temporary emergency license for the person if one is issued, and the superintendent of the state highway patrol shall ensure that the system is so configured as to permit the transmission through the system of that information. Upon making that information available through the law enforcement automated data system, the sheriff shall immediately issue to the person a concealed handgun license on a temporary emergency basis.

If the sheriff denies the issuance of a license on a temporary emergency basis to the person, the sheriff shall specify the grounds for the denial in a written notice to the person. The person may appeal the denial, or challenge criminal records check results that were the basis of the denial if applicable, in the same manners specified in division (D)(2) of section 2923.125 and in section 2923.127 of the Revised Code, regarding the denial of an application for a concealed handgun license under that section.

The license on a temporary emergency basis issued under this division shall be in the form, and shall include all of the information, described in divisions (A)(2)(a) and (5)(d) of section 109.731 of the Revised Code, and also shall include a unique combination of identifying letters and numbers in accordance with division (A)(4)(2)(c) of that section.

The license on a temporary emergency basis issued under this division is valid for ninety days and may not be renewed. A person who has been issued a license on a temporary emergency basis under this division shall not be issued another license on a temporary emergency basis unless at least four years has expired since the issuance of the prior license on a temporary emergency basis.

(3) If a person seeking a concealed handgun license on a temporary emergency basis has been convicted of or pleaded guilty to an offense identified in division (D)(1)(e), (f), or (h) of section 2923.125 of the Revised Code or has been adjudicated a delinquent child for committing an act or violation identified in any of those divisions, and if a court has ordered the sealing or expungement of the records of that conviction, guilty plea, or adjudication pursuant to sections 2151.355 to 2151.358 or sections 2953.31 to 2953.36 of the Revised Code or a court has granted the applicant relief pursuant to section 2923.14 of the Revised Code has been relieved under operation of law or legal process from the disability imposed pursuant to section 2923.13 of the Revised Code relative to that conviction, guilty plea, or adjudication, the conviction, guilty plea, or adjudication shall not be relevant for purposes of the sworn affidavit described in division (B)(1)(b) of this section, and the person may complete, and swear to the truth of, the affidavit as if the conviction, guilty plea, or adjudication never had occurred.

(4) The sheriff shall waive the payment pursuant to division (B)(1)(c) of this section of the license fee in connection with an application that is submitted by an applicant who is a retired peace officer, a retired person described in division (B)(1)(b) of section 109.77 of the Revised Code, or a retired federal law enforcement officer who, prior to retirement, was authorized under federal law to carry a firearm in the course of duty, unless the retired peace officer, person, or federal law enforcement officer retired as the result of a mental disability.

The sheriff shall deposit all fees paid by an applicant under division (B)(1)(c) of this section into the sheriff's concealed handgun license issuance fund established pursuant to section 311.42 of the Revised Code.

(C) A person who holds a concealed handgun license on a temporary emergency basis has the same right to carry a concealed handgun as a person who was issued a concealed handgun license under section 2923.125 of the Revised Code, and any exceptions to the prohibitions contained in section 1547.69 and sections 2923.12 to 2923.16 of the Revised Code for a licensee under section 2923.125 of the Revised Code apply to a licensee under this section. The person is subject to the same restrictions, and to all other procedures, duties, and sanctions, that apply to a person who carries a license issued under section 2923.125 of the Revised Code, other than the license renewal procedures set forth in that section.

(D) A sheriff who issues a concealed handgun license on a temporary emergency basis under this section shall not require a person seeking to carry a concealed handgun in accordance with this section to submit a competency certificate as a prerequisite for issuing the license and shall comply with division (H) of section 2923.125 of the Revised Code in regards to the license. The sheriff shall suspend or revoke the license in accordance with section 2923.128 of the Revised Code. In addition to the suspension or revocation procedures set forth in section 2923.128 of the Revised Code, the sheriff may revoke the license upon receiving information, verifiable by public documents, that the person is not eligible to possess a firearm under either the laws of this state or of the United States or that the person committed perjury in obtaining the license; if the sheriff revokes a license under this additional authority, the sheriff shall notify the person, by certified mail, return receipt requested, at the person's last known residence address that the license has been revoked and that the person is required to surrender the license at the sheriff's office within ten days of the date on which the notice was mailed. Division (H) of section 2923.125 of the Revised Code applies regarding any suspension or revocation of a concealed handgun license on a temporary emergency basis.

(E) A sheriff who issues a concealed handgun license on a temporary emergency basis under this section shall retain, for the entire period during which the license is in effect, the evidence of imminent danger that the person submitted to the sheriff and that was the basis for the license, or a copy of that evidence, as appropriate.

(F) If a concealed handgun license on a temporary emergency basis issued under this section is lost or is destroyed, the licensee may obtain from the sheriff who issued that license a duplicate license upon the payment of a fee of fifteen dollars and the submission of an affidavit attesting to the loss or destruction of the license. The sheriff, in accordance with the procedures prescribed in section 109.731 of the Revised Code, shall place on the replacement license a combination of identifying numbers different from the combination on the license that is being replaced.

(G) The Ohio peace officer training commission attorney general shall prescribe, and shall make available to sheriffs, a standard form to be used under division (B) of this section by a person who applies for a concealed handgun license on a temporary emergency basis on the basis of imminent danger of a type described in division (A)(1)(a) of this section. The attorney general shall design the form to enable applicants to provide the information that is required by law to be collected, and shall update the form as necessary. Burdens or restrictions to obtaining a concealed handgun license that are not expressly prescribed in law shall not be incorporated into the form. The attorney general shall post a printable version of the form on the web site of the attorney general and shall provide the address of the web site to any person who requests the form.

(H) A sheriff who receives any fees paid by a person under this section shall deposit all fees so paid into the sheriff's concealed handgun license issuance expense fund established under section 311.42 of the Revised Code.

(I) A sheriff shall accept evidence of imminent danger, a sworn affidavit, the fee, and the set of fingerprints specified in division (B)(1) of this section at any time during normal business hours. In no case shall a sheriff require an appointment, or designate a specific period of time, for the submission or acceptance of evidence of imminent danger, a sworn affidavit, the fee, and the set of fingerprints specified in division (B)(1) of this section, or for the provision to any person of a standard form to be used for a person to apply for a concealed handgun license on a temporary emergency basis.

Sec. 2923.13. (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(1) The person is a fugitive from justice.

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.

(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the third degree.

(C) For the purposes of this section, "under operation of law or legal process" shall not itself include mere completion, termination, or expiration of a sentence imposed as a result of a criminal conviction.

Exhibit 75
00043

**Sec. 2923.17.** (A) No person shall knowingly acquire, have, carry, or use any dangerous ordnance.

(B) No person shall manufacture or process an explosive at any location in this state unless the person first has been issued a license, certificate of registration, or permit to do so from a fire official of a political subdivision of this state or from the office of the fire marshal.

(C) Division (A) of this section does not apply to:

(1) Officers, agents, or employees of this or any other state or the United States, members of the armed forces of the United States or the organized militia of this or any other state, and law enforcement officers, to the extent that any such person is authorized to acquire, have, carry, or use dangerous ordnance and is acting within the scope of the person's duties;

(2) Importers, manufacturers, dealers, and users of explosives, having a license or user permit issued and in effect pursuant to the "Organized Crime Control Act of 1970," 84 Stat. 952, 18 U.S.C. 843, and any amendments or additions thereto or reenactments thereof, with respect to explosives and explosive devices lawfully acquired, possessed, carried, or used under the laws of this state and applicable federal law;

(3) Importers, manufacturers, and dealers having a license to deal in destructive devices or their ammunition, issued and in effect pursuant to the "Gun Control Act of 1968," 82 Stat. 1213, 18 U.S.C. 923, and any amendments or additions thereto or reenactments thereof, with respect to dangerous ordnance lawfully acquired, possessed, carried, or used under the laws of this state and applicable federal law;

(4) Persons to whom surplus ordnance has been sold, loaned, or given by the secretary of the army pursuant to 70A Stat. 262 and 263, 10 U.S.C. 4684, 4685, and 4686, and any amendments or additions thereto or reenactments thereof, with respect to dangerous ordnance when lawfully possessed and used for the purposes specified in such section;

(5) Owners of dangerous ordnance registered in the national firearms registration and transfer record pursuant to the act of October 22, 1968, 82 Stat. 1229, 26 U.S.C. 5841, and any amendments or additions thereto or reenactments thereof, and regulations issued thereunder~;~

(6) Carriers, warehouses, and others engaged in the business of transporting or storing goods for hire, with respect to dangerous ordnance lawfully transported or stored in the usual course of their business and in compliance with the laws of this state and applicable federal law;

(7) The holders of a license or temporary permit issued and in effect pursuant to section 2923.18 of the Revised Code, with respect to dangerous ordnance lawfully acquired, possessed, carried, or used for the purposes and in the manner specified in such license or permit;

(8) <ins>Persons who own a dangerous ordnance that is a firearm muffler or suppressor attached to a gun that is authorized to be used for hunting by section 1533.16 of the Revised Code and who are authorized to use such a dangerous ordnance by section 1533.04 of the Revised Code.</ins>

(D) Whoever violates division (A) of this section is guilty of unlawful possession of dangerous ordnance, a felony of the fifth degree.

(E) Whoever violates division (B) of this section is guilty of illegally manufacturing or processing explosives, a felony of the second degree.

**Sec. 2929.14.** (A) Except as provided in division (B)(1), (B)(2), (B)(3), (B)(4), (B)(5), (B)(6), (B)(7), (B)(8), (E), (G), (H), or (J) of this section or in division (D)(6) of section 2919.25 of the Revised Code and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:

(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years.

(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years.

(3)(a) For a felony of the third degree that is a violation of section 2903.06, 2903.08, 2907.03, 2907.04, or 2907.05 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section 2911.01, 2911.02, 2911.11, or 2911.12 of the Revised Code, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.

(b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

(4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.

(5) For a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months.

(B)(1)(a) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:

(i) A prison term of six years if the specification is of the type described in section 2941.144 of the Revised Code that charges the offender with having a firearm that is an automatic firearm or that was equipped with a firearm muffler or ~silencer~ <ins>suppressor</ins> on or about the offender's person or under the offender's control while committing the felony;

(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense;

(iii) A prison term of one year if the specification is of the type described in section 2941.141 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the felony.

(b) If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

(c) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a violation of section 2923.161 of the Revised Code or to a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or pleads guilty to a specification of the type described in section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle other than a manufactured home, the court, after imposing a prison term on the offender for the violation of section 2923.161 of the Revised Code or for the other felony offense under division (A), (B)(2), or (B)(3) of this section, shall impose an additional prison term of five years upon the offender that shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. A court shall not impose more than one additional prison term on an offender under division (B)(1)(c) of this section for felonies committed as part of the same act or transaction. If a court imposes an additional prison term on an offender under division (B)(1)(c) of this section relative to an offense, the court also shall impose a prison term under division (B)(1)(a) of this section relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense.

(d) If an offender who is convicted of or pleads guilty to an offense of violence that is a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.1411 of the Revised Code that charges the offender with wearing or carrying body armor while committing the felony offense of violence, the court shall impose on the offender a prison term of two years. The prison term so imposed, subject to divisions (C) to (I) of section 2967.19 of the Revised Code, shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. A court shall not impose more than one prison term on an offender under division (B)(1)(d) of this section for felonies committed as part of the same act or transaction. If a court imposes an additional prison term under division (B)(1)(a) or (c) of this section, the court is not precluded from imposing an additional prison term under division (B)(1)(d) of this section.

(e) The court shall not impose any of the prison terms described in division (B)(1)(a) of this section or any of the additional prison terms described in division (B)(1)(c) of this section upon an offender for a violation of section 2923.12 or 2923.123 of the Revised Code. The court shall not impose any of the prison terms described in division (B)(1)(a) or (b) of this section upon an offender for a violation of section 2923.122 that involves a deadly weapon that is a firearm other than a dangerous ordnance, section 2923.16, or section 2923.121 of the Revised Code. The court shall not impose any of the prison terms described in division (B)(1)(a) of this section or any of the additional prison terms described in division (B)(1)(c) of this section upon an offender for a violation of section 2923.13 of the Revised Code unless all of the following apply:

(i) The offender previously has been convicted of aggravated murder, murder, or any felony of the first or second degree.

(ii) Less than five years have passed since the offender was released from prison or post-release control, whichever is later, for the prior offense.

(f) If an offender is convicted of or pleads guilty to a felony that includes, as an essential element, causing or attempting to cause the death of or physical harm to another and also is convicted of or pleads guilty to a specification of the type described in section 2941.1412 of the Revised Code that charges the offender with committing the offense by discharging a firearm at a peace officer as defined in section 2935.01 of the Revised Code or a corrections officer, as defined in section 2941.1412 of the Revised Code, the court, after imposing a prison term on the offender for the felony offense under division (A), (B)(2), or (B)(3) of this section, shall impose an additional prison term of seven years upon the offender that shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. If an offender is convicted of or pleads guilty to two or more felonies that include, as an essential element, causing or attempting to cause the death or physical harm to another and also is convicted of or pleads guilty to a specification of the type described under division (B)(1)(f) of this section in connection with two or more of the felonies of which the offender is convicted or to which the offender pleads guilty, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(f) of this section for each of two of the specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications. If a court imposes an additional prison term on an offender under division (B)(1)(f) of this section relative to an offense, the court shall not impose a prison term under division (B)(1)(a) or (c) of this section relative to the same offense.

(g) If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(2)(a) If division (B)(2)(b) of this section does not apply, the court may impose on an offender, in addition to the longest prison term authorized or required for the offense, an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

(I) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is aggravated murder and the court does not impose a sentence of death or life imprisonment without parole, murder, terrorism and the court does not impose a sentence of life imprisonment without parole, any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

(b) The court shall impose on an offender the longest prison term authorized or required for the offense and shall impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

(I) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offender within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code, including all offenses described in that division of which the offender is convicted or to which the offender pleads guilty in the current prosecution and all offenses described in that division of which the offender previously has been convicted or to which the offender previously pleaded guilty, whether prosecuted together or separately.

(iii) The offense or offenses of which the offender currently is convicted or to which the offender currently pleads guilty is aggravated murder and the court does not impose a sentence of death or life imprisonment without parole, murder, terrorism and the court does not impose a sentence of life imprisonment without parole, any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

(c) For purposes of division (B)(2)(b) of this section, two or more offenses committed at the same time or as part of the same act or event shall be considered one offense, and that one offense shall be the offense with the greatest penalty.

(d) A sentence imposed under division (B)(2)(a) or (b) of this section shall not be reduced pursuant to section 2929.20, section 2967.19, or section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. The offender shall serve an additional prison term imposed under this section consecutively to and prior to the prison term imposed for the underlying offense.

(e) When imposing a sentence pursuant to division (B)(2)(a) or (b) of this section, the court shall state its findings explaining the imposed sentence.

(3) Except when an offender commits a violation of section 2903.01 or 2907.02 of the Revised Code and the penalty imposed for the violation is life imprisonment or commits a violation of section 2903.02 of the Revised Code, if the offender commits a violation of section 2925.03 or 2925.11 of the Revised Code and that section classifies the offender as a major drug offender, if the offender commits a felony violation of section 2925.02, 2925.04, 2925.05, 2925.36, 3719.07, 3719.08, 3719.16, 3719.161, 4729.37, or 4729.61, division (C) or (D) of section 3719.172, division (C) of section 4729.51, or division (J) of section 4729.54 of the Revised Code that includes the sale, offer to sell, or possession of a schedule I or II controlled substance, with the exception of marihuana, and the court imposing sentence upon the offender finds that the offender is guilty of a specification of the type described in section 2941.1410 of the Revised Code charging that the offender is a major drug offender, if the court imposing sentence upon an offender for a felony finds that the offender is guilty of corrupt activity with the most serious offense in the pattern of corrupt activity being a felony of the first degree, or if the offender is guilty of an attempted violation of section 2907.02 of the Revised Code and, had the offender completed the violation of section 2907.02 of the Revised Code that was attempted, the offender would have been subject to a sentence of life imprisonment or life imprisonment without parole for the violation of section 2907.02 of the Revised Code, the court shall impose upon the offender for the felony violation a mandatory prison term of the maximum prison term prescribed for a felony of the first degree that, subject to divisions (C) to (I) of section 2967.19 of the Revised Code, cannot be reduced pursuant to section 2929.20, section 2967.19, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code.

(4) If the offender is being sentenced for a third or fourth degree felony OVI offense under division (G)(2) of section 2929.13 of the Revised Code, the sentencing court shall impose upon the offender a mandatory prison term in accordance with that division. In addition to the mandatory prison term, if the offender is being sentenced for a fourth degree felony OVI offense, the court, notwithstanding division (A)(4) of this section, may sentence the offender to a definite prison term of not less than six months and not more than thirty months, and if the offender is being sentenced for a third degree felony OVI offense, the sentencing court may sentence the offender to an additional prison term of any duration specified in division (A)(3) of this section. In either case, the additional prison term imposed shall be reduced by the sixty or one hundred twenty days imposed on the offender as the mandatory prison term. The total of the additional prison term imposed under division (B)(4) of this section plus the sixty or one hundred twenty days imposed as the mandatory prison term shall equal a definite term in the range of six months to thirty months for a fourth degree felony OVI offense and shall equal one of the authorized prison terms specified in division (A)(3) of this section for a third degree felony OVI offense. If the court imposes an additional prison term under division (B)(4) of this section, the offender shall serve the additional prison term after the offender has served the mandatory prison term required for the offense. In addition to the mandatory prison term or mandatory and additional prison term imposed as described in division (B)(4) of this section, the court also may sentence the offender to a community control sanction under section 2929.16 or 2929.17 of the Revised Code, but the offender shall serve all of the prison terms so imposed prior to serving the community control sanction.

If the offender is being sentenced for a fourth degree felony OVI offense under division (G)(1) of section 2929.13 of the Revised Code and the court imposes a mandatory term of local incarceration, the court may impose a prison term as described in division (A)(1) of that section.

(5) If an offender is convicted of or pleads guilty to a violation of division (A)(1) or (2) of section 2903.06 of the Revised Code and also is convicted of or pleads guilty to a specification of the type described in section 2941.1414 of the Revised Code that charges that the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, or an investigator of the bureau of criminal identification and investigation, as defined in section 2903.11 of the Revised Code, the court shall impose on the offender a prison term of five years. If a court imposes a prison term on an offender under division (B)(5) of this section, the prison term, subject to divisions (C) to (I) of section 2967.19 of the Revised Code, shall not be reduced pursuant

Exhibit 75

to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. A court shall not impose more than one prison term on an offender under division (B)(5) of this section for felonies committed as part of the same act.

(6) If an offender is convicted of or pleads guilty to a violation of division (A)(1) or (2) of section 2903.06 of the Revised Code and also is convicted of or pleads guilty to a specification of the type described in section 2941.1415 of the Revised Code that charges that the offender previously has been convicted of or pleaded guilty to three or more violations of division (A) or (B) of section 4511.19 of the Revised Code or an equivalent offense, as defined in section 2941.1415 of the Revised Code, or three or more violations of any combination of those divisions and offenses, the court shall impose on the offender a prison term of three years. If a court imposes a prison term on an offender under division (B)(6) of this section, the prison term, subject to divisions (C) to (I) of section 2967.19 of the Revised Code, shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. A court shall not impose more than one prison term on an offender under division (B)(6) of this section for felonies committed as part of the same act.

(7)(a) If an offender is convicted of or pleads guilty to a felony violation of section 2905.01, 2905.02, 2907.21, 2907.22, or 2923.32, division (A) (1) or (2) of section 2907.323, or division (B)(1), (2), (3), (4), or (5) of section 2919.22 of the Revised Code and also is convicted of or pleads guilty to a specification of the type described in section 2941.1422 of the Revised Code that charges that the offender knowingly committed the offense in furtherance of human trafficking, the court shall impose on the offender a mandatory prison term that is one of the following:

(i) If the offense is a felony of the first degree, a definite prison term of not less than five years and not greater than ten years;

(ii) If the offense is a felony of the second or third degree, a definite prison term of not less than three years and not greater than the maximum prison term allowed for the offense by division (A) of section 2929.14 of the Revised Code;

(iii) If the offense is a felony of the fourth or fifth degree, a definite prison term that is the maximum prison term allowed for the offense by division (A) of section 2929.14 of the Revised Code.

(b) Subject to divisions (C) to (I) of section 2967.19 of the Revised Code, the prison term imposed under division (B)(7)(a) of this section shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. of the Revised Code. A court shall not impose more than one prison term on an offender under division (B)(7)(a) of this section for felonies committed as part of the same act, scheme, or plan.

(8) If an offender is convicted of or pleads guilty to a felony violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code and also is convicted of or pleads guilty to a specification of the type described in section 2941.1423 of the Revised Code that charges that the victim of the violation was a woman whom the offender knew was pregnant at the time of the violation, notwithstanding the range of prison terms prescribed in division (A) of this section for felonies of the same degree as the violation, the court shall impose on the offender a mandatory prison term that is either a definite prison term of six months or one of the prison terms prescribed in section 2929.14 of the Revised Code for felonies of the same degree as the violation.

(C)(1)(a) Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

(b) If a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(d) of this section for wearing or carrying body armor while committing an offense of violence that is a felony, the offender shall serve the mandatory term so imposed consecutively to any other mandatory prison term imposed under that division or under division (B)(1)(a) or (c) of this section, consecutively to and prior to any prison term imposed for the underlying felony under division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

(c) If a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(f) of this section, the offender shall serve the mandatory prison term so imposed consecutively to and prior to any prison term imposed for the underlying felony under division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

(d) If a mandatory prison term is imposed upon an offender pursuant to division (B)(7) or (8) of this section, the offender shall serve the mandatory prison term so imposed consecutively to any other mandatory prison term imposed under that division or under any other provision of law and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

(2) If an offender who is an inmate in a jail, prison, or other residential detention facility violates section 2917.02, 2917.03, or 2921.35 of the Revised Code or division (A)(1) or (2) of section 2921.34 of the Revised Code, if an offender who is under detention at a detention facility commits a felony violation of section 2923.131 of the Revised Code, or if an offender who is an inmate in a jail, prison, or other residential detention facility or is under detention at a detention facility commits another felony while the offender is an escapee in violation of division (A)(1) or (2) of section 2921.34 of the Revised Code, any prison term imposed upon the offender for one of those violations shall be served by the offender consecutively to the prison term or term of imprisonment the offender was serving when the offender committed that offense and to any other prison term previously or subsequently imposed upon the offender.

(3) If a prison term is imposed for a violation of division (B) of section 2911.01 of the Revised Code, a violation of division (A) of section 2913.02 of the Revised Code in which the stolen property is a firearm or dangerous ordnance, or a felony violation of division (B) of section 2921.331 of the Revised Code, the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(5) If a mandatory prison term is imposed upon an offender pursuant to division (B)(5) or (6) of this section, the offender shall serve the mandatory prison term consecutively to and prior to any prison term imposed for the underlying violation of division (A)(1) or (2) of section 2903.06 of the Revised Code pursuant to division (A) of this section or section 2929.142 of the Revised Code. If a mandatory prison term is imposed upon an offender pursuant to division (B)(5) of this section, and if a mandatory prison term also is imposed upon the offender pursuant to division (B)(6) of this section in relation to the same violation, the offender shall serve the mandatory prison term imposed pursuant to division (B)(5) of this section consecutively to and prior to the mandatory prison term imposed pursuant to division (B)(6) of this section and consecutively to and prior to any prison term imposed for the underlying violation of division (A)(1) or (2) of section 2903.06 of the Revised Code pursuant to division (A) of this section or section 2929.142 of the Revised Code.

(6) When consecutive prison terms are imposed pursuant to division (C)(1), (2), (3), (4), or (5) or division (H)(1) or (2) of this section, the term to be served is the aggregate of all of the terms so imposed.

(D)(1) If a court imposes a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person, it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division. If a court imposes a sentence including a prison term of a type described in this division on or after July 11, 2006, the failure of a court to include a post-release control requirement in the sentence pursuant to this division does not negate, limit, or otherwise affect the mandatory period of post-release control that is required for the offender under division (B) of section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to include in the sentence pursuant to this division a statement regarding post-release control.

Exhibit 75
00046

(2) If a court imposes a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (D)(1) of this section, it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division, if the parole board determines that a period of post-release control is necessary. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to include in the sentence pursuant to this division a statement regarding post-release control.

(E) The court shall impose sentence upon the offender in accordance with section 2971.03 of the Revised Code, and Chapter 2971. of the Revised Code applies regarding the prison term or term of life imprisonment without parole imposed upon the offender and the service of that term of imprisonment if any of the following apply:

(1) A person is convicted of or pleads guilty to a violent sex offense or a designated homicide, assault, or kidnapping offense, and, in relation to that offense, the offender is adjudicated a sexually violent predator.

(2) A person is convicted of or pleads guilty to a violation of division (A)(1)(b) of section 2907.02 of the Revised Code committed on or after January 2, 2007, and either the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code, or division (B) of section 2907.02 of the Revised Code provides that the court shall not sentence the offender pursuant to section 2971.03 of the Revised Code.

(3) A person is convicted of or pleads guilty to attempted rape committed on or after January 2, 2007, and a specification of the type described in section 2941.1418, 2941.1419, or 2941.1420 of the Revised Code.

(4) A person is convicted of or pleads guilty to a violation of section 2905.01 of the Revised Code committed on or after January 1, 2008, and that section requires the court to sentence the offender pursuant to section 2971.03 of the Revised Code.

(5) A person is convicted of or pleads guilty to aggravated murder committed on or after January 1, 2008, and division (A)(2)(b)(ii) of section 2929.022, division (A)(1)(e), (C)(1)(a)(v), (C)(2)(a)(ii), (D)(2)(b), (D)(3)(a)(iv), or (E)(1)(d) of section 2929.03, or division (A) or (B) of section 2929.06 of the Revised Code requires the court to sentence the offender pursuant to division (B)(3) of section 2971.03 of the Revised Code.

(6) A person is convicted of or pleads guilty to murder committed on or after January 1, 2008, and division (B)(2) of section 2929.02 of the Revised Code requires the court to sentence the offender pursuant to section 2971.03 of the Revised Code.

(F) If a person who has been convicted of or pleaded guilty to a felony is sentenced to a prison term or term of imprisonment under this section, sections 2929.02 to 2929.06 of the Revised Code, section 2929.142 of the Revised Code, section 2971.03 of the Revised Code, or any other provision of law, section 5120.163 of the Revised Code applies regarding the person while the person is confined in a state correctional institution.

(G) If an offender who is convicted of or pleads guilty to a felony that is an offense of violence also is convicted of or pleads guilty to a specification of the type described in section 2941.142 of the Revised Code that charges the offender with having committed the felony while participating in a criminal gang, the court shall impose upon the offender an additional prison term of one, two, or three years.

(H)(1) If an offender who is convicted of or pleads guilty to aggravated murder, murder, or a felony of the first, second, or third degree that is an offense of violence also is convicted of or pleads guilty to a specification of the type described in section 2941.143 of the Revised Code that charges the offender with having committed the offense in a school safety zone or towards a person in a school safety zone, the court shall impose upon the offender an additional prison term of two years. The offender shall serve the additional two years consecutively to and prior to the prison term imposed for the underlying offense.

(2)(a) If an offender is convicted of or pleads guilty to a felony violation of section 2907.22, 2907.24, 2907.241, or 2907.25 of the Revised Code and to a specification of the type described in section 2941.1421 of the Revised Code and if the court imposes a prison term on the offender for the felony violation, the court may impose upon the offender an additional prison term as follows:

(i) Subject to division (H)(2)(a)(ii) of this section, an additional prison term of one, two, three, four, five, or six months;

(ii) If the offender previously has been convicted of or pleaded guilty to one or more felony or misdemeanor violations of section 2907.22, 2907.23, 2907.24, 2907.241, or 2907.25 of the Revised Code and also was convicted of or pleaded guilty to a specification of the type described in section 2941.1421 of the Revised Code regarding one or more of those violations, an additional prison term of one, two, three, four, five, six, seven, eight, nine, ten, eleven, or twelve months.

(b) In lieu of imposing an additional prison term under division (H)(2)(a) of this section, the court may directly impose on the offender a sanction that requires the offender to wear a real-time processing, continual tracking electronic monitoring device during the period of time specified by the court. The period of time specified by the court shall equal the duration of an additional prison term that the court could have imposed upon the offender under division (H)(2)(a) of this section. A sanction imposed under this division shall commence on the date specified by the court, provided that the sanction shall not commence until after the offender has served the prison term imposed for the felony violation of section 2907.22, 2907.24, 2907.241, or 2907.25 of the Revised Code and any residential sanction imposed for the violation under section 2929.16 of the Revised Code. A sanction imposed under this division shall be considered to be a community control sanction for purposes of section 2929.15 of the Revised Code, and all provisions of the Revised Code that pertain to community control sanctions shall apply to a sanction imposed under this division, except to the extent that they would by their nature be clearly inapplicable. The offender shall pay all costs associated with a sanction imposed under this division, including the cost of the use of the monitoring device.

(I) At the time of sentencing, the court may recommend the offender for placement in a program of shock incarceration under section 5120.031 of the Revised Code or for placement in an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program of shock incarceration or an intensive program prison of that nature, or make no recommendation on placement of the offender. In no case shall the department of rehabilitation and correction place the offender in a program or prison of that nature unless the department determines as specified in section 5120.031 or 5120.032 of the Revised Code, whichever is applicable, that the offender is eligible for the placement.

If the court disapproves placement of the offender in a program or prison of that nature, the department of rehabilitation and correction shall not place the offender in any program of shock incarceration or intensive program prison.

If the court recommends placement of the offender in a program of shock incarceration or in an intensive program prison, and if the offender is subsequently placed in the recommended program or prison, the department shall notify the court of the placement and shall include with the notice a brief description of the placement.

If the court recommends placement of the offender in a program of shock incarceration or in an intensive program prison and the department does not subsequently place the offender in the recommended program or prison, the department shall send a notice to the court indicating why the offender was not placed in the recommended program or prison.

If the court does not make a recommendation under this division with respect to an offender and if the department determines as specified in section 5120.031 or 5120.032 of the Revised Code, whichever is applicable, that the offender is eligible for placement in a program or prison of that nature, the department shall screen the offender and determine if there is an available program of shock incarceration or an intensive program prison for which the offender is suited. If there is an available program of shock incarceration or an intensive program prison for which the offender is suited, the department shall notify the court of the proposed placement of the offender as specified in section 5120.031 or 5120.032 of the Revised Code and shall include with the notice a brief description of the placement. The court shall have ten days from receipt of the notice to disapprove the placement.

(J) If a person is convicted of or pleads guilty to aggravated vehicular homicide in violation of division (A)(1) of section 2903.06 of the Revised Code and division (B)(2)(c) of that section applies, the person shall be sentenced pursuant to section 2929.142 of the Revised Code.

**Sec. 2941.144.** (A) Imposition of a six-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm that is an automatic firearm or that was equipped with a firearm muffler or ~~silencer~~ suppressor on or about the offender's person or under the offender's control while committing the offense. The specification shall be stated at the end of the body of the indictment, count, or information and shall be stated in substantially the following form:

"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm that is an automatic firearm or that was equipped with a firearm muffler or ~~silencer~~ suppressor on or about the offender's person or under the offender's control while committing the offense)."

(B) Imposition of a six-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded if a court imposes a three-year or one-year mandatory prison term on the offender under that division relative to the same felony.

(C) The specification described in division (A) of this section may be used in a delinquent child proceeding in the manner and for the purpose described in section 2152.17 of the Revised Code.

Exhibit 75
00047

(D) As used in this section, "firearm" and "automatic firearm" have the same meanings as in section 2923.11 of the Revised Code.

**SECTION 2.** That existing sections 109.69, 109.731, 311.41, 311.42, 2923.11, 2923.124, 2923.125, 2923.126, 2923.128, 2923.1213, 2923.13, 2923.17, 2929.14, and 2941.144 and sections 2923.1210 and 2923.22 of the Revised Code are hereby repealed.

Please send questions and comments to the Webmaster.
© 2018 Legislative Information Systems | Disclaimer

# EXHIBIT 76

Exhibit 76
00049

H. R. 3355

# One Hundred Third Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the twenty-fifth day of January, one thousand nine hundred and ninety-four*

## An Act

To control and prevent crime.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Violent Crime Control and
Law Enforcement Act of 1994".

**SEC. 2. TABLE OF CONTENTS.**

The following is the table of contents for this Act:

Sec. 1. Short title.
Sec. 2. Table of contents.

TITLE I—PUBLIC SAFETY AND POLICING

Sec. 10001. Short title.
Sec. 10002. Purposes.
Sec. 10003. Community policing; "Cops on the Beat".

TITLE II—PRISONS

Subtitle A—Violent Offender Incarceration and Truth in Sentencing Incentive
Grants

Sec. 20101. Grants for correctional facilities.
Sec. 20102. Truth in sentencing incentive grants.
Sec. 20103. Violent offender incarceration grants.
Sec. 20104. Matching requirement.
Sec. 20105. Rules and regulations.
Sec. 20106. Technical assistance and training.
Sec. 20107. Evaluation.
Sec. 20108. Definitions.
Sec. 20109. Authorization of appropriations.

Subtitle B—Punishment for Young Offenders

Sec. 20201. Certain punishment for young offenders.

Subtitle C—Alien Incarceration

Sec. 20301. Incarceration of undocumented criminal aliens.

Subtitle D—Miscellaneous Provisions

Sec. 20401. Prisoner's place of imprisonment.
Sec. 20402. Prison impact assessments.
Sec. 20403. Sentences to account for costs to the Government of imprisonment, re-
lease, and probation.
Sec. 20404. Application to prisoners to which prior law applies.
Sec. 20405. Crediting of "good time".
Sec. 20406. Task force on prison construction standardization and techniques.
Sec. 20407. Efficiency in law enforcement and corrections.
Sec. 20408. Amendments to the Department of Education Organization Act and the
National Literacy Act of 1991.
Sec. 20409. Appropriate remedies for prison overcrowding.
Sec. 20410. Congressional approval of any expansion at Lorton and congressional
hearings on future needs.

Exhibit 76
00050

H. R. 3355—201

# TITLE X—DRUNK DRIVING PROVISIONS

**SEC. 100001. SHORT TITLE.**

This title may be cited as the "Drunk Driving Child Protection Act of 1994".

**SEC. 100002. STATE LAWS APPLIED IN AREAS OF FEDERAL JURISDICTION.**

Section 13(b) of title 18, United States Code, is amended—
(1) by striking "For purposes" and inserting "(1) Subject to paragraph (2) and for purposes"; and
(2) by adding at the end the following new paragraph:
"(2)(A) In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State, territory, possession, or district, the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine of not more than $1,000, or both, if—
"(i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and
"(ii) the law of the State, territory, possession, or district in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).
"(B) For the purposes of subparagraph (A), the term 'minor' means a person less than 18 years of age.".

**SEC. 100003. DRIVING WHILE INTOXICATED PROSECUTION PROGRAM.**

Section 501(b) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3751) is amended—
(1) by striking "and" at the end of paragraph (20);
(2) by striking the period at the end of paragraph (21) and inserting "; and"; and
(3) by adding at the end the following new paragraph:
"(22) programs for the prosecution of driving while intoxicated charges and the enforcement of other laws relating to alcohol use and the operation of motor vehicles.".

# TITLE XI—FIREARMS

## Subtitle A—Assault Weapons

**SEC. 110101. SHORT TITLE.**

This subtitle may be cited as the "Public Safety and Recreational Firearms Use Protection Act".

**SEC. 110102. RESTRICTION ON MANUFACTURE, TRANSFER, AND POSSESSION OF CERTAIN SEMIAUTOMATIC ASSAULT WEAPONS.**

(a) RESTRICTION.—Section 922 of title 18, United States Code, is amended by adding at the end the following new subsection:
"(v)(1) It shall be unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon.

Exhibit 76

H. R. 3355—202

"(2) Paragraph (1) shall not apply to the possession or transfer of any semiautomatic assault weapon otherwise lawfully possessed under Federal law on the date of the enactment of this subsection.

"(3) Paragraph (1) shall not apply to—

"(A) any of the firearms, or replicas or duplicates of the firearms, specified in Appendix A to this section, as such firearms were manufactured on October 1, 1993;

"(B) any firearm that—

"(i) is manually operated by bolt, pump, lever, or slide action;

"(ii) has been rendered permanently inoperable; or

"(iii) is an antique firearm;

"(C) any semiautomatic rifle that cannot accept a detachable magazine that holds more than 5 rounds of ammunition; or

"(D) any semiautomatic shotgun that cannot hold more than 5 rounds of ammunition in a fixed or detachable magazine. The fact that a firearm is not listed in Appendix A shall not be construed to mean that paragraph (1) applies to such firearm. No firearm exempted by this subsection may be deleted from Appendix A so long as this subsection is in effect.

"(4) Paragraph (1) shall not apply to—

"(A) the manufacture for, transfer to, or possession by the United States or a department or agency of the United States or a State or a department, agency, or political subdivision of a State, or a transfer to or possession by a law enforcement officer employed by such an entity for purposes of law enforcement (whether on or off duty);

"(B) the transfer to a licensee under title I of the Atomic Energy Act of 1954 for purposes of establishing and maintaining an on-site physical protection system and security organization required by Federal law, or possession by an employee or contractor of such licensee on-site for such purposes or off-site for purposes of licensee-authorized training or transportation of nuclear materials;

"(C) the possession, by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving a firearm, of a semiautomatic assault weapon transferred to the individual by the agency upon such retirement; or

"(D) the manufacture, transfer, or possession of a semiautomatic assault weapon by a licensed manufacturer or licensed importer for the purposes of testing or experimentation authorized by the Secretary.".

(b) DEFINITION OF SEMIAUTOMATIC ASSAULT WEAPON.—Section 921(a) of title 18, United States Code, is amended by adding at the end the following new paragraph:

"(30) The term 'semiautomatic assault weapon' means—

"(A) any of the firearms, or copies or duplicates of the firearms in any caliber, known as—

"(i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all models);

"(ii) Action Arms Israeli Military Industries UZI and Galil;

"(iii) Beretta Ar70 (SC–70);

"(iv) Colt AR–15;

"(v) Fabrique National FN/FAL, FN/LAR, and FNC;

Exhibit 76

H. R. 3355—203

"(vi) SWD M–10, M–11, M–11/9, and M–12;
"(vii) Steyr AUG;
"(viii) INTRATEC TEC–9, TEC–DC9 and TEC–22; and
"(ix) revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12;
"(B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of—
"(i) a folding or telescoping stock;
"(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
"(iii) a bayonet mount;
"(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and
"(v) a grenade launcher;
"(C) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least 2 of—
"(i) an ammunition magazine that attaches to the pistol outside of the pistol grip;
"(ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;
"(iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
"(iv) a manufactured weight of 50 ounces or more when the pistol is unloaded; and
"(v) a semiautomatic version of an automatic firearm; and
"(D) a semiautomatic shotgun that has at least 2 of—
"(i) a folding or telescoping stock;
"(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
"(iii) a fixed magazine capacity in excess of 5 rounds; and
"(iv) an ability to accept a detachable magazine.".
(c) PENALTIES.—
(1) VIOLATION OF SECTION 922(V).—Section 924(a)(1)(B) of such title is amended by striking "or (q) of section 922" and inserting "(r), or (v) of section 922".
(2) USE OR POSSESSION DURING CRIME OF VIOLENCE OR DRUG TRAFFICKING CRIME.—Section 924(c)(1) of such title is amended in the first sentence by inserting ", or semiautomatic assault weapon," after "short-barreled shotgun,".
(d) IDENTIFICATION MARKINGS FOR SEMIAUTOMATIC ASSAULT WEAPONS.—Section 923(i) of such title is amended by adding at the end the following: "The serial number of any semiautomatic assault weapon manufactured after the date of the enactment of this sentence shall clearly show the date on which the weapon was manufactured.".

## SEC. 110103. BAN OF LARGE CAPACITY AMMUNITION FEEDING DEVICES.

(a) PROHIBITION.—Section 922 of title 18, United States Code, as amended by section 110102(a), is amended by adding at the end the following new subsection:

Exhibit 76
00053

H. R. 3355—204

"(w)(1) Except as provided in paragraph (2), it shall be unlawful for a person to transfer or possess a large capacity ammunition feeding device.

"(2) Paragraph (1) shall not apply to the possession or transfer of any large capacity ammunition feeding device otherwise lawfully possessed on or before the date of the enactment of this subsection.

"(3) This subsection shall not apply to—

"(A) the manufacture for, transfer to, or possession by the United States or a department or agency of the United States or a State or a department, agency, or political subdivision of a State, or a transfer to or possession by a law enforcement officer employed by such an entity for purposes of law enforcement (whether on or off duty);

"(B) the transfer to a licensee under title I of the Atomic Energy Act of 1954 for purposes of establishing and maintaining an on-site physical protection system and security organization required by Federal law, or possession by an employee or contractor of such licensee on-site for such purposes or off-site for purposes of licensee-authorized training or transportation of nuclear materials;

"(C) the possession, by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving ammunition, of a large capacity ammunition feeding device transferred to the individual by the agency upon such retirement; or

"(D) the manufacture, transfer, or possession of any large capacity ammunition feeding device by a licensed manufacturer or licensed importer for the purposes of testing or experimentation authorized by the Secretary.".

"(4) If a person charged with violating paragraph (1) asserts that paragraph (1) does not apply to such person because of paragraph (2) or (3), the Government shall have the burden of proof to show that such paragraph (1) applies to such person. The lack of a serial number as described in section 923(i) of title 18, United States Code, shall be a presumption that the large capacity ammunition feeding device is not subject to the prohibition of possession in paragraph (1).".

(b) DEFINITION OF LARGE CAPACITY AMMUNITION FEEDING DEVICE.—Section 921(a) of title 18, United States Code, as amended by section 110102(b), is amended by adding at the end the following new paragraph:

"(31) The term 'large capacity ammunition feeding device'—

"(A) means a magazine, belt, drum, feed strip, or similar device manufactured after the date of enactment of the Violent Crime Control and Law Enforcement Act of 1994 that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition; but

"(B) does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.".

(c) PENALTY.—Section 924(a)(1)(B) of title 18, United States Code, as amended by section 110102(c)(1), is amended by striking "or (v)" and inserting "(v), or (w)".

(d) IDENTIFICATION MARKINGS FOR LARGE CAPACITY AMMUNITION FEEDING DEVICES.—Section 923(i) of title 18, United States Code, as amended by section 110102(d) of this Act, is amended by adding at the end the following: "A large capacity ammunition

H. R. 3355—205

feeding device manufactured after the date of the enactment of this sentence shall be identified by a serial number that clearly shows that the device was manufactured or imported after the effective date of this subsection, and such other identification as the Secretary may by regulation prescribe.".

### SEC. 110104. STUDY BY ATTORNEY GENERAL.

(a) STUDY.—The Attorney General shall investigate and study the effect of this subtitle and the amendments made by this subtitle, and in particular shall determine their impact, if any, on violent and drug trafficking crime. The study shall be conducted over a period of 18 months, commencing 12 months after the date of enactment of this Act.

(b) REPORT.—Not later than 30 months after the date of enactment of this Act, the Attorney General shall prepare and submit to the Congress a report setting forth in detail the findings and determinations made in the study under subsection (a).

### SEC. 110105. EFFECTIVE DATE.

This subtitle and the amendments made by this subtitle—

(1) shall take effect on the date of the enactment of this Act; and

(2) are repealed effective as of the date that is 10 years after that date.

### SEC. 110106. APPENDIX A TO SECTION 922 OF TITLE 18.

Section 922 of title 18, United States Code, is amended by adding at the end the following appendix:

"APPENDIX A

#### Centerfire Rifles—Autoloaders

Browning BAR Mark II Safari Semi-Auto Rifle
Browning BAR Mark II Safari Magnum Rifle
Browning High-Power Rifle
Heckler & Koch Model 300 Rifle
Iver Johnson M–1 Carbine
Iver Johnson 50th Anniversary M–1 Carbine
Marlin Model 9 Camp Carbine
Marlin Model 45 Carbine
Remington Nylon 66 Auto-Loading Rifle
Remington Model 7400 Auto Rifle
Remington Model 7400 Rifle
Remington Model 7400 Special Purpose Auto Rifle
Ruger Mini-14 Autoloading Rifle (w/o folding stock)
Ruger Mini Thirty Rifle

#### Centerfire Rifles—Lever & Slide

Browning Model 81 BLR Lever-Action Rifle
Browning Model 81 Long Action BLR
Browning Model 1886 Lever-Action Carbine
Browning Model 1886 High Grade Carbine
Cimarron 1860 Henry Replica
Cimarron 1866 Winchester Replicas
Cimarron 1873 Short Rifle
Cimarron 1873 Sporting Rifle
Cimarron 1873 30″ Express Rifle
Dixie Engraved 1873 Rifle
E.M.F. 1866 Yellowboy Lever Actions
E.M.F. 1860 Henry Rifle
E.M.F. Model 73 Lever-Action Rifle
Marlin Model 336CS Lever-Action Carbine
Marlin Model 30AS Lever-Action Carbine
Marlin Model 444SS Lever-Action Sporter
Marlin Model 1894S Lever-Action Carbine

Exhibit 76

H. R. 3355—206

Marlin Model 1894CS Carbine
Marlin Model 1894CL Classic
Marlin Model 1895SS Lever-Action Rifle
Mitchell 1858 Henry Replica
Mitchell 1866 Winchester Replica
Mitchell 1873 Winchester Replica
Navy Arms Military Henry Rifle
Navy Arms Henry Trapper
Navy Arms Iron Frame Henry
Navy Arms Henry Carbine
Navy Arms 1866 Yellowboy Rifle
Navy Arms 1873 Winchester-Style Rifle
Navy Arms 1873 Sporting Rifle
Remington 7600 Slide Action
Remington Model 7600 Special Purpose Slide Action
Rossi M92 SRC Saddle-Ring Carbine
Rossi M92 SRS Short Carbine
Savage 99C Lever-Action Rifle
Uberti Henry Rifle
Uberti 1866 Sporting Rilfe
Uberti 1873 Sporting Rifle
Winchester Model 94 Side Eject Lever-Action Rifle
Winchester Model 94 Trapper Side Eject
Winchester Model 94 Big Bore Side Eject
Winchester Model 94 Ranger Side Eject Lever-Action Rifle
Winchester Model 94 Wrangler Side Eject

**Centerfire Rifles—Bolt Action**

Alpine Bolt-Action Rifle
A-Square Caesar Bolt-Action Rifle
A-Square Hannibal Bolt-Action Rifle
Anschutz 1700D Classic Rifles
Anschutz 1700D Custom Rifles
Anschutz 1700D Bavarian Bolt-Action Rifle
Anschutz 1733D Mannlicher Rifle
Barret Model 90 Bolt-Action Rifle
Beeman/HW 60J Bolt-Action Rifle
Blaser R84 Bolt-Action Rifle
BRNO 537 Sporter Bolt-Action Rifle
BRNO ZKB 527 Fox Bolt-Action Rifle
BRNO ZKK 600, 601, 602 Bolt-Action Rifles
Browning A-Bolt Rifle
Browning A-Bolt Stainless Stalker
Browning A-Bolt Left Hand
Browning A-Bolt Short Action
Browning Euro-Bolt Rifle
Browning A-Bolt Gold Medallion
Browning A-Bolt Micro Medallion
Century Centurion 14 Sporter
Century Enfield Sporter #4
Century Swedish Sporter #38
Century Mauser 98 Sporter
Cooper Model 38 Centerfire Sporter
Dakota 22 Sporter Bolt-Action Rifle
Dakota 76 Classic Bolt-Action Rifle
Dakota 76 Short Action Rifles
Dakota 76 Safari Bolt-Action Rifle
Dakota 416 Rigby African
E.A.A./Sabatti Rover 870 Bolt-Action Rifle
Auguste Francotte Bolt-Action Rifles
Carl Gustaf 2000 Bolt-Action Rifle
Heym Magnum Express Series Rifle
Howa Lightning Bolt-Action Rifle
Howa Realtree Camo Rifle
Interarms Mark X Viscount Bolt-Action Rifle
Interarms Mini-Mark X Rifle
Interarms Mark X Whitworth Bolt-Action Rifle
Interarms Whitworth Express Rifle
Iver Johnson Model 5100A1 Long-Range Rifle
KDF K15 American Bolt-Action Rifle
Krico Model 600 Bolt-Action Rifle

Exhibit 76
00056

H. R. 3355—207

Krico Model 700 Bolt-Action Rifles
Mauser Model 66 Bolt-Action Rifle
Mauser Model 99 Bolt-Action Rifle
McMillan Signature Classic Sporter
McMillan Signature Super Varminter
McMillan Signature Alaskan
McMillan Signature Titanium Mountain Rifle
McMillan Classic Stainless Sporter
McMillan Talon Safari Rifle
McMillan Talon Sporter Rifle
Midland 1500S Survivor Rifle
Navy Arms TU–33/40 Carbine
Parker-Hale Model 81 Classic Rifle
Parker-Hale Model 81 Classic African Rifle
Parker-Hale Model 1000 Rifle
Parker-Hale Model 1100M African Magnum
Parker-Hale Model 1100 Lightweight Rifle
Parker-Hale Model 1200 Super Rifle
Parker-Hale Model 1200 Super Clip Rifle
Parker-Hale Model 1300C Scout Rifle
Parker-Hale Model 2100 Midland Rifle
Parker-Hale Model 2700 Lightweight Rifle
Parker-Hale Model 2800 Midland Rifle
Remington Model Seven Bolt-Action Rifle
Remington Model Seven Youth Rifle
Remington Model Seven Custom KS
Remington Model Seven Custom MS Rifle
Remington 700 ADL Bolt-Action Rifle
Remington 700 BDL Bolt-Action Rifle
Remington 700 BDL Varmint Special
Remington 700 BDL European Bolt-Action Rifle
Remington 700 Varmint Synthetic Rifle
Remington 700 BDL SS Rifle
Remington 700 Stainless Synthetic Rifle
Remington 700 MTRSS Rifle
Remington 700 BDL Left Hand
Remington 700 Camo Synthetic Rifle
Remington 700 Safari
Remington 700 Mountain Rifle
Remington 700 Custom KS Mountain Rifle
Remington 700 Classic Rifle
Ruger M77 Mark II Rifle
Ruger M77 Mark II Magnum Rifle
Ruger M77RL Ultra Light
Ruger M77 Mark II All-Weather Stainless Rifle
Ruger M77 RSI International Carbine
Ruger M77 Mark II Express Rifle
Ruger M77VT Target Rifle
Sako Hunter Rifle
Sako Fiberclass Sporter
Sako Safari Grade Bolt Action
Sako Hunter Left-Hand Rifle
Sako Classic Bolt Action
Sako Hunter LS Rifle
Sako Deluxe Lightweight
Sako Super Deluxe Sporter
Sako Mannlicher-Style Carbine
Sako Varmint Heavy Barrel
Sako TRG–S Bolt-Action Rifle
Sauer 90 Bolt-Action Rifle
Savage 110G Bolt-Action Rifle
Savage 110CY Youth/Ladies Rifle
Savage 110WLE One of One Thousand Limited Edition Rifle
Savage 110GXP3 Bolt-Action Rifle
Savage 110F Bolt-Action Rifle
Savage 110FXP3 Bolt-Action Rifle
Savage 110GV Varmint Rifle
Savage 112FV Varmint Rifle
Savage Model 112FVS Varmint Rifle
Savage Model 112BV Heavy Barrel Varmint Rifle
Savage 116FSS Bolt-Action Rifle
Savage Model 116FSK Kodiak Rifle

Exhibit 76
00057

H. R. 3355—208

Savage 110FP Police Rifle
Steyr-Mannlicher Sporter Models SL, L, M, S, S/T
Steyr-Mannlicher Luxus Model L, M, S
Steyr-Mannlicher Model M Professional Rifle
Tikka Bolt-Action Rifle
Tikka Premium Grade Rifles
Tikka Varmint/Continental Rifle
Tikka Whitetail/Battue Rifle
Ultra Light Arms Model 20 Rifle
Ultra Light Arms Model 28, Model 40 Rifles
Voere VEC 91 Lightning Bolt-Action Rifle
Voere Model 2165 Bolt-Action Rifle
Voere Model 2155, 2150 Bolt-Action Rifles
Weatherby Mark V Deluxe Bolt-Action Rifle
Weatherby Lasermark V Rifle
Weatherby Mark V Crown Custom Rifles
Weatherby Mark V Sporter Rifle
Weatherby Mark V Safari Grade Custom Rifles
Weatherby Weathermark Rifle
Weatherby Weathermark Alaskan Rifle
Weatherby Classicmark No. 1 Rifle
Weatherby Weatherguard Alaskan Rifle
Weatherby Vanguard VGX Deluxe Rifle
Weatherby Vanguard Classic Rifle
Weatherby Vanguard Classic No. 1 Rifle
Weatherby Vanguard Weatherguard Rifle
Wichita Classic Rifle
Wichita Varmint Rifle
Winchester Model 70 Sporter
Winchester Model 70 Sporter WinTuff
Winchester Model 70 SM Sporter
Winchester Model 70 Stainless Rifle
Winchester Model 70 Varmint
Winchester Model 70 Synthetic Heavy Varmint Rifle
Winchester Model 70 DBM Rifle
Winchester Model 70 DBM–S Rifle
Winchester Model 70 Featherweight
Winchester Model 70 Featherweight WinTuff
Winchester Model 70 Featherweight Classic
Winchester Model 70 Lightweight Rifle
Winchester Ranger Rifle
Winchester Model 70 Super Express Magnum
Winchester Model 70 Super Grade
Winchester Model 70 Custom Sharpshooter
Winchester Model 70 Custom Sporting Sharpshooter Rifle

**Centerfire Rifles—Single Shot**

Armsport 1866 Sharps Rifle, Carbine
Brown Model One Single Shot Rifle
Browning Model 1885 Single Shot Rifle
Dakota Single Shot Rifle
Desert Industries G–90 Single Shot Rifle
Harrington & Richardson Ultra Varmint Rifle
Model 1885 High Wall Rifle
Navy Arms Rolling Block Buffalo Rifle
Navy Arms #2 Creedmoor Rifle
Navy Arms Sharps Cavalry Carbine
Navy Arms Sharps Plains Rifle
New England Firearms Handi-Rifle
Red Willow Armory Ballard No. 5 Pacific
Red Willow Armory Ballard No. 1.5 Hunting Rifle
Red Willow Armory Ballard No. 8 Union Hill Rifle
Red Willow Armory Ballard No. 4.5 Target Rifle
Remington-Style Rolling Block Carbine
Ruger No. 1B Single Shot
Ruger No. 1A Light Sporter
Ruger No. 1H Tropical Rifle
Ruger No. 1S Medium Sporter
Ruger No. 1 RSI International
Ruger No. 1V Special Varminter
C. Sharps Arms New Model 1874 Old Reliable

Exhibit 76

H. R. 3355—209

C. Sharps Arms New Model 1875 Rifle
C. Sharps Arms 1875 Classic Sharps
C. Sharps Arms New Model 1875 Target & Long Range
Shiloh Sharps 1874 Long Range Express
Shiloh Sharps 1874 Montana Roughrider
Shiloh Sharps 1874 Military Carbine
Shiloh Sharps 1874 Business Rifle
Shiloh Sharps 1874 Military Rifle
Sharps 1874 Old Reliable
Thompson/Center Contender Carbine
Thompson/Center Stainless Contender Carbine
Thompson/Center Contender Carbine Survival System
Thompson/Center Contender Carbine Youth Model
Thompson/Center TCR '87 Single Shot Rifle
Uberti Rolling Block Baby Carbine

**Drillings, Combination Guns, Double Rifles**

Beretta Express SSO O/U Double Rifles
Beretta Model 455 SxS Express Rifle
Chapuis RGExpress Double Rifle
Auguste Francotte Sidelock Double Rifles
Auguste Francotte Boxlock Double Rifle
Heym Model 55B O/U Double Rifle
Heym Model 55FW O/U Combo Gun
Heym Model 88b Side-by-Side Double Rifle
Kodiak Mk. IV Double Rifle
Kreighoff Teck O/U Combination Gun
Kreighoff Trumpf Drilling
Merkel Over/Under Combination Guns
Merkel Drillings
Merkel Model 160 Side-by-Side Double Rifles
Merkel Over/Under Double Rifles
Savage 24F O/U Combination Gun
Savage 24F–12T Turkey Gun
Springfield Inc. M6 Scout Rifle/Shotgun
Tikka Model 412s Combination Gun
Tikka Model 412S Double Fire
A. Zoli Rifle-Shotgun O/U Combo

**Rimfire Rifles—Autoloaders**

AMT Lightning 25/22 Rifle
AMT Lightning Small-Game Hunting Rifle II
AMT Magnum Hunter Auto Rifle
Anschutz 525 Deluxe Auto
Armscor Model 20P Auto Rifle
Browning Auto-22 Rifle
Browning Auto-22 Grade VI
Krico Model 260 Auto Rifle
Lakefield Arms Model 64B Auto Rifle
Marlin Model 60 Self-Loading Rifle
Marlin Model 60ss Self-Loading Rifle
Marlin Model 70 HC Auto
Marlin Model 990l Self-Loading Rifle
Marlin Model 70P Papoose
Marlin Model 922 Magnum Self-Loading Rifle
Marlin Model 995 Self-Loading Rifle
Norinco Model 22 ATD Rifle
Remington Model 522 Viper Autoloading Rifle
Remington 552BDL Speedmaster Rifle
Ruger 10/22 Autoloading Carbine (w/o folding stock)
Survival Arms AR–7 Explorer Rifle
Texas Remington Revolving Carbine
Voere Model 2115 Auto Rifle

**Rimfire Rifles—Lever & Slide Action**

Browning BL–22 Lever-Action Rifle
Marlin 39TDS Carbine
Marlin Model 39AS Golden Lever-Action Rifle
Remington 572BDL Fieldmaster Pump Rifle
Norinco EM–321 Pump Rifle
Rossi Model 62 SA Pump Rifle

Exhibit 76
00059

H. R. 3355—210

Rossi Model 62 SAC Carbine
Winchester Model 9422 Lever-Action Rifle
Winchester Model 9422 Magnum Lever-Action Rifle

**Rimfire Rifles—Bolt Actions & Single Shots**

Anschutz Achiever Bolt-Action Rifle
Anschutz 1416D/1516D Classic Rifles
Anschutz 1418D/1518D Mannlicher Rifles
Anschutz 1700D Classic Rifles
Anschutz 1700D Custom Rifles
Anschutz 1700 FWT Bolt-Action Rifle
Anschutz 1700D Graphite Custom Rifle
Anschutz 1700D Bavarian Bolt-Action Rifle
Armscor Model 14P Bolt-Action Rifle
Armscor Model 1500 Rifle
BRNO ZKM–452 Deluxe Bolt-Action Rifle
BRNO ZKM 452 Deluxe
Beeman/HW 60–J–ST Bolt-Action Rifle
Browning A-Bolt 22 Bolt-Action Rifle
Browning A-Bolt Gold Medallion
Cabanas Phaser Rifle
Cabanas Master Bolt-Action Rifle
Cabanas Espronceda IV Bolt-Action Rifle
Cabanas Leyre Bolt-Action Rifle
Chipmunk Single Shot Rifle
Cooper Arms Model 36S Sporter Rifle
Dakota 22 Sporter Bolt-Action Rifle
Krico Model 300 Bolt-Action Rifles
Lakefield Arms Mark II Bolt-Action Rifle
Lakefield Arms Mark I Bolt-Action Rifle
Magtech Model MT–22C Bolt-Action Rifle
Marlin Model 880 Bolt-Action Rifle
Marlin Model 881 Bolt-Action Rifle
Marlin Model 882 Bolt-Action Rifle
Marlin Model 883 Bolt-Action Rifle
Marlin Model 883SS Bolt-Action Rifle
Marlin Model 25MN Bolt-Action Rifle
Marlin Model 25N Bolt-Action Repeater
Marlin Model 15YN "Little Buckaroo"
Mauser Model 107 Bolt-Action Rifle
Mauser Model 201 Bolt-Action Rifle
Navy Arms TU–KKW Training Rifle
Navy Arms TU–33/40 Carbine
Navy Arms TU–KKW Sniper Trainer
Norinco JW–27 Bolt-Action Rifle
Norinco JW–15 Bolt-Action Rifle
Remington 541–T
Remington 40–XR Rimfire Custom Sporter
Remington 541–T HB Bolt-Action Rifle
Remington 581–S Sportsman Rifle
Ruger 77/22 Rimfire Bolt-Action Rifle
Ruger K77/22 Varmint Rifle
Ultra Light Arms Model 20 RF Bolt-Action Rifle
Winchester Model 52B Sporting Rifle

**Competition Rifles—Centerfire & Rimfire**

Anschutz 64–MS Left Silhouette
Anschutz 1808D RT Super Match 54 Target
Anschutz 1827B Biathlon Rifle
Anschutz 1903D Match Rifle
Anschutz 1803D Intermediate Match
Anschutz 1911 Match Rifle
Anschutz 54.18MS REP Deluxe Silhouette Rifle
Anschutz 1913 Super Match Rifle
Anschutz 1907 Match Rifle
Anschutz 1910 Super Match II
Anschutz 54.18MS Silhouette Rifle
Anschutz Super Match 54 Target Model 2013
Anschutz Super Match 54 Target Model 2007
Beeman/Feinwerkbau 2600 Target Rifle
Cooper Arms Model TRP–1 ISU Standard Rifle

Exhibit 76

00060

H. R. 3355—211

E.A.A./Weihrauch HW 60 Target Rifle
E.A.A./HW 660 Match Rifle
Finnish Lion Standard Target Rifle
Krico Model 360 S2 Biathlon Rifle
Krico Model 400 Match Rifle
Krico Model 360S Biathlon Rifle
Krico Model 500 Kricotronic Match Rifle
Krico Model 600 Sniper Rifle
Krico Model 600 Match Rifle
Lakefield Arms Model 90B Target Rifle
Lakefield Arms Model 91T Target Rifle
Lakefield Arms Model 92S Silhouette Rifle
Marlin Model 2000 Target Rifle
Mauser Model 86–SR Specialty Rifle
McMillan M–86 Sniper Rifle
McMillan Combo M–87/M–88 50-Caliber Rifle
McMillan 300 Phoenix Long Range Rifle
McMillan M–89 Sniper Rifle
McMillan National Match Rifle
McMillan Long Range Rifle
Parker-Hale M–87 Target Rifle
Parker-Hale M–85 Sniper Rifle
Remington 40–XB Rangemaster Target Centerfire
Remington 40–XR KS Rimfire Position Rifle
Remington 40–XBBR KS
Remington 40–XC KS National Match Course Rifle
Sako TRG–21 Bolt-Action Rifle
Steyr-Mannlicher Match SPG–UIT Rifle
Steyr-Mannlicher SSG P–I Rifle
Steyr-Mannlicher SSG P–III Rifle
Steyr-Mannlicher SSG P–IV Rifle
Tanner Standard UIT Rifle
Tanner 50 Meter Free Rifle
Tanner 300 Meter Free Rifle
Wichita Silhouette Rifle

**Shotguns—Autoloaders**

American Arms/Franchi Black Magic 48/AL
Benelli Super Black Eagle Shotgun
Benelli Super Black Eagle Slug Gun
Benelli M1 Super 90 Field Auto Shotgun
Benelli Montefeltro Super 90 20-Gauge Shotgun
Benelli Montefeltro Super 90 Shotgun
Benelli M1 Sporting Special Auto Shotgun
Benelli Black Eagle Competition Auto Shotgun
Beretta A–303 Auto Shotgun
Beretta 390 Field Auto Shotgun
Beretta 390 Super Trap, Super Skeet Shotguns
Beretta Vittoria Auto Shotgun
Beretta Model 1201F Auto Shotgun
Browning BSA 10 Auto Shotgun
Browning BSA 10 Stalker Auto Shotgun
Browning A–500R Auto Shotgun
Browning A–500G Auto Shotgun
Browning A–500G Sporting Clays
Browning Auto-5 Light 12 and 20
Browning Auto-5 Stalker
Browning Auto-5 Magnum 20
Browning Auto-5 Magnum 12
Churchill Turkey Automatic Shotgun
Cosmi Automatic Shotgun
Maverick Model 60 Auto Shotgun
Mossberg Model 5500 Shotgun
Mossberg Model 9200 Regal Semi-Auto Shotgun
Mossberg Model 9200 USST Auto Shotgun
Mossberg Model 9200 Camo Shotgun
Mossberg Model 6000 Auto Shotgun
Remington Model 1100 Shotgun
Remington 11–87 Premier Shotgun
Remington 11–87 Sporting Clays
Remington 11–87 Premier Skeet

Exhibit 76
00061

H. R. 3355—212

Remington 11–87 Premier Trap
Remington 11–87 Special Purpose Magnum
Remington 11–87 SPS–T Camo Auto Shotgun
Remington 11–87 Special Purpose Deer Gun
Remington 11–87 SPS–BG-Camo Deer/Turkey Shotgun
Remington 11–87 SPS-Deer Shotgun
Remington 11–87 Special Purpose Synthetic Camo
Remington SP–10 Magnum-Camo Auto Shotgun
Remington SP–10 Magnum Auto Shotgun
Remington SP–10 Magnum Turkey Combo
Remington 1100 LT–20 Auto
Remington 1100 Special Field
Remington 1100 20-Gauge Deer Gun
Remington 1100 LT–20 Tournament Skeet
Winchester Model 1400 Semi-Auto Shotgun

### Shotguns—Slide Actions

Browning Model 42 Pump Shotgun
Browning BPS Pump Shotgun
Browning BPS Stalker Pump Shotgun
Browning BPS Pigeon Grade Pump Shotgun
Browning BPS Pump Shotgun (Ladies and Youth Model)
Browning BPS Game Gun Turkey Special
Browning BPS Game Gun Deer Special
Ithaca Model 87 Supreme Pump Shotgun
Ithaca Model 87 Deerslayer Shotgun
Ithaca Deerslayer II Rifled Shotgun
Ithaca Model 87 Turkey Gun
Ithaca Model 87 Deluxe Pump Shotgun
Magtech Model 586–VR Pump Shotgun
Maverick Models 88, 91 Pump Shotguns
Mossberg Model 500 Sporting Pump
Mossberg Model 500 Camo Pump
Mossberg Model 500 Muzzleloader Combo
Mossberg Model 500 Trophy Slugster
Mossberg Turkey Model 500 Pump
Mossberg Model 500 Bantam Pump
Mossberg Field Grade Model 835 Pump Shotgun
Mossberg Model 835 Regal Ulti-Mag Pump
Remington 870 Wingmaster
Remington 870 Special Purpose Deer Gun
Remington 870 SPS–BG-Camo Deer/Turkey Shotgun
Remington 870 SPS-Deer Shotgun
Remington 870 Marine Magnum
Remington 870 TC Trap
Remington 870 Special Purpose Synthetic Camo
Remington 870 Wingmaster Small Gauges
Remington 870 Express Rifle Sighted Deer Gun
Remington 879 SPS Special Purpose Magnum
Remington 870 SPS–T Camo Pump Shotgun
Remington 870 Special Field
Remington 870 Express Turkey
Remington 870 High Grades
Remington 870 Express
Remington Model 870 Express Youth Gun
Winchester Model 12 Pump Shotgun
Winchester Model 42 High Grade Shotgun
Winchester Model 1300 Walnut Pump
Winchester Model 1300 Slug Hunter Deer Gun
Winchester Model 1300 Ranger Pump Gun Combo & Deer Gun
Winchester Model 1300 Turkey Gun
Winchester Model 1300 Ranger Pump Gun

### Shotguns—Over/Unders

American Arms/Franchi Falconet 2000 O/U
American Arms Silver I O/U
American Arms Silver II Shotgun
American Arms Silver Skeet O/U
American Arms/Franchi Sporting 2000 O/U
American Arms Silver Sporting O/U
American Arms Silver Trap O/U

Exhibit 76
00062

H. R. 3355—213

American Arms WS/OU 12, TS/OU 12 Shotguns
American Arms WT/OU 10 Shotgun
Armsport 2700 O/U Goose Gun
Armsport 2700 Series O/U
Armsport 2900 Tri-Barrel Shotgun
Baby Bretton Over/Under Shotgun
Beretta Model 686 Ultralight O/U
Beretta ASE 90 Competition O/U Shotgun
Beretta Over/Under Field Shotguns
Beretta Onyx Hunter Sport O/U Shotgun
Beretta Model SO5, SO6, SO9 Shotguns
Beretta Sporting Clay Shotguns
Beretta 687EL Sporting O/U
Beretta 682 Super Sporting O/U
Beretta Series 682 Competition Over/Unders
Browning Citori O/U Shotgun
Browning Superlight Citori Over/Under
Browning Lightning Sporting Clays
Browning Micro Citori Lightning
Browning Citori Plus Trap Combo
Browning Citori Plus Trap Gun
Browning Citori O/U Skeet Models
Browning Citori O/U Trap Models
Browning Special Sporting Clays
Browning Citori GTI Sporting Clays
Browning 325 Sporting Clays
Centurion Over/Under Shotgun
Chapuis Over/Under Shotgun
Connecticut Valley Classics Classic Sporter O/U
Connecticut Valley Classics Classic Field Waterfowler
Charles Daly Field Grade O/U
Charles Daly Lux Over/Under
E.A.A./Sabatti Sporting Clays Pro-Gold O/U
E.A.A/Sabatti Falcon-Mon Over/Under
Kassnar Grade I O/U Shotgun
Krieghoff K–80 Sporting Clays O/U
Krieghoff K–80 Skeet Shotgun
Krieghoff K–80 International Skeet
Krieghoff K–80 Four-Barrel Skeet Set
Krieghoff K–80/RT Shotguns
Krieghoff K–80 O/U Trap Shotgun
Laurona Silhouette 300 Sporting Clays
Laurona Silhouette 300 Trap
Laurona Super Model Over/Unders
Ljutic LM–6 Deluxe O/U Shotgun
Marocchi Conquista Over/Under Shotgun
Marocchi Avanza O/U Shotgun
Merkel Model 200E O/U Shotgun
Merkel Model 200E Skeet, Trap Over/Unders
Merkel Model 203E, 303E Over/Under Shotguns
Perazzi Mirage Special Sporting O/U
Perazzi Mirage Special Four-Gauge Skeet
Perazzi Sporting Classic O/U
Perazzi MX7 Over/Under Shotguns
Perazzi Mirage Special Skeet Over/Under
Perazzi MX8/MX8 Special Trap, Skeet
Perazzi MX8/20 Over/Under Shotgun
Perazzi MX9 Single Over/Under Shotguns
Perazzi MX12 Hunting Over/Under
Perazzi MX28, MX410 Game O/U Shotguns
Perazzi MX20 Hunting Over/Under
Piotti Boss Over/Under Shotgun
Remington Peerless Over/Under Shotgun
Ruger Red Label O/U Shotgun
Ruger Sporting Clays O/U Shotgun
San Marco 12-Ga. Wildflower Shotgun
San Marco Field Special O/U Shotgun
San Marco 10-Ga. O/U Shotgun
SKB Model 505 Deluxe Over/Under Shotgun
SKB Model 685 Over/Under Shotgun
SKB Model 885 Over/Under Trap, Skeet, Sporting Clays
Stoeger/IGA Condor I O/U Shotgun

Exhibit 76
00063

H. R. 3355—214

Stoeger/IGA ERA 2000 Over/Under Shotgun
Techni-Mec Model 610 Over/Under
Tikka Model 412S Field Grade Over/Under
Weatherby Athena Grade IV O/U Shotguns
Weatherby Athena Grade V Classic Field O/U
Weatherby Orion O/U Shotguns
Weatherby II, III Classic Field O/Us
Weatherby Orion II Classic Sporting Clays O/U
Weatherby Orion II Sporting Clays O/U
Winchester Model 1001 O/U Shotgun
Winchester Model 1001 Sporting Clays O/U
Pietro Zanoletti Model 2000 Field O/U

**Shotguns—Side by Sides**

American Arms Brittany Shotgun
American Arms Gentry Double Shotgun
American Arms Derby Side-by-Side
American Arms Grulla #2 Double Shotgun
American Arms WS/SS 10
American Arms TS/SS 10 Double Shotgun
American Arms TS/SS 12 Side-by-Side
Arrieta Sidelock Double Shotguns
Armsport 1050 Series Double Shotguns
Arizaga Model 31 Double Shotgun
AYA Boxlock Shotguns
AYA Sidelock Double Shotguns
Beretta Model 452 Sidelock Shotgun
Beretta Side-by-Side Field Shotguns
Crucelegui Hermanos Model 150 Double
Chapuis Side-by-Side Shotgun
E.A.A./Sabatti Saba-Mon Double Shotgun
Charles Daly Model Dss Double
Ferlib Model F VII Double Shotgun
Auguste Francotte Boxlock Shotgun
Auguste Francotte Sidelock Shotgun
Garbi Model 100 Double
Garbi Model 101 Side-by-Side
Garbi Model 103A, B Side-by-Side
Garbi Model 200 Side-by-Side
Bill Hanus Birdgun Doubles
Hatfield Uplander Shotgun
Merkel Model 8, 47E Side-by-Side Shotguns
Merkel Model 47LSC Sporting Clays Double
Merkel Model 47S, 147S Side-by-Sides
Parker Reproductions Side-by-Side
Piotti King No. 1 Side-by-Side
Piotti Lunik Side-by-Side
Piotti King Extra Side-by-Side
Piotti Piuma Side-by-Side
Precision Sports Model 600 Series Doubles
Rizzini Boxlock Side-by-Side
Rizzini Sidelock Side-by-Side
Stoeger/IGA Uplander Side-by-Side Shotgun
Ugartechea 10-Ga. Magnum Shotgun

**Shotguns—Bolt Actions & Single Shots**

Armsport Single Barrel Shotgun
Browning BT–99 Competition Trap Special
Browning BT–99 Plus Trap Gun
Browning BT–99 Plus Micro
Browning Recoilless Trap Shotgun
Browning Micro Recoilless Trap Shotgun
Desert Industries Big Twenty Shotgun
Harrington & Richardson Topper Model 098
Harrington & Richardson Topper Classic Youth Shotgun
Harrington & Richardson N.W.T.F. Turkey Mag
Harrington & Richardson Topper Deluxe Model 098
Krieghoff KS–5 Trap Gun
Krieghoff KS–5 Special
Krieghoff K–80 Single Barrel Trap Gun
Ljutic Mono Gun Single Barrel

Exhibit 76
00064

H. R. 3355—215

Ljutic LTX Super Deluxe Mono Gun
Ljutic Recoilless Space Gun Shotgun
Marlin Model 55 Goose Gun Bolt Action
New England Firearms Turkey and Goose Gun
New England Firearms N.W.T.F. Shotgun
New England Firearms Tracker Slug Gun
New England Firearms Standard Pardner
New England Firearms Survival Gun
Perazzi TM1 Special Single Trap
Remington 90–T Super Single Shotgun
Snake Charmer II Shotgun
Stoeger/IGA Reuna Single Barrel Shotgun
Thompson/Center TCR '87 Hunter Shotgun.".

# Subtitle B—Youth Handgun Safety

### SEC. 110201. PROHIBITION OF THE POSSESSION OF A HANDGUN OR AMMUNITION BY, OR THE PRIVATE TRANSFER OF A HANDGUN OR AMMUNITION TO, A JUVENILE.

(a) OFFENSE.—Section 922 of title 18, United States Code, as amended by section 110103(a), is amended by adding at the end the following new subsection:

"(x)(1) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—

"(A) a handgun; or

"(B) ammunition that is suitable for use only in a handgun.

"(2) It shall be unlawful for any person who is a juvenile to knowingly possess—

"(A) a handgun; or

"(B) ammunition that is suitable for use only in a handgun.

"(3) This subsection does not apply to—

"(A) a temporary transfer of a handgun or ammunition to a juvenile or to the possession or use of a handgun or ammunition by a juvenile if the handgun and ammunition are possessed and used by the juvenile—

"(i) in the course of employment, in the course of ranching or farming related to activities at the residence of the juvenile (or on property used for ranching or farming at which the juvenile, with the permission of the property owner or lessee, is performing activities related to the operation of the farm or ranch), target practice, hunting, or a course of instruction in the safe and lawful use of a handgun;

"(ii) with the prior written consent of the juvenile's parent or guardian who is not prohibited by Federal, State, or local law from possessing a firearm, except—

"(I) during transportation by the juvenile of an unloaded handgun in a locked container directly from the place of transfer to a place at which an activity described in clause (i) is to take place and transportation by the juvenile of that handgun, unloaded and in a locked container, directly from the place at which such an activity took place to the transferor; or

"(II) with respect to ranching or farming activities as described in clause (i), a juvenile may possess and use a handgun or ammunition with the prior written approval of the juvenile's parent or legal guardian and at the direction of an adult who is not prohibited

Exhibit 76
00065

H. R. 3355—216

by Federal, State or local law from possessing a fire-arm;

"(iii) the juvenile has the prior written consent in the juvenile's possession at all times when a handgun is in the possession of the juvenile; and

"(iv) in accordance with State and local law;

"(B) a juvenile who is a member of the Armed Forces of the United States or the National Guard who possesses or is armed with a handgun in the line of duty;

"(C) a transfer by inheritance of title (but not possession) of a handgun or ammunition to a juvenile; or

"(D) the possession of a handgun or ammunition by a juvenile taken in defense of the juvenile or other persons against an intruder into the residence of the juvenile or a residence in which the juvenile is an invited guest.

"(4) A handgun or ammunition, the possession of which is transferred to a juvenile in circumstances in which the transferor is not in violation of this subsection shall not be subject to permanent confiscation by the Government if its possession by the juvenile subsequently becomes unlawful because of the conduct of the juvenile, but shall be returned to the lawful owner when such handgun or ammunition is no longer required by the Government for the purposes of investigation or prosecution.

"(5) For purposes of this subsection, the term 'juvenile' means a person who is less than 18 years of age.

"(6)(A) In a prosecution of a violation of this subsection, the court shall require the presence of a juvenile defendant's parent or legal guardian at all proceedings.

"(B) The court may use the contempt power to enforce subparagraph (A).

"(C) The court may excuse attendance of a parent or legal guardian of a juvenile defendant at a proceeding in a prosecution of a violation of this subsection for good cause shown.".

(b) PENALTIES.—Section 924(a) of title 18, United States Code, is amended—

(1) in paragraph (1) by striking "paragraph (2) or (3) of"; and

(2) by adding at the end the following new paragraph:

"(5)(A)(i) A juvenile who violates section 922(x) shall be fined under this title, imprisoned not more than 1 year, or both, except that a juvenile described in clause (ii) shall be sentenced to probation on appropriate conditions and shall not be incarcerated unless the juvenile fails to comply with a condition of probation.

"(ii) A juvenile is described in this clause if—

"(I) the offense of which the juvenile is charged is possession of a handgun or ammunition in violation of section 922(x)(2); and

"(II) the juvenile has not been convicted in any court of an offense (including an offense under section 922(x) or a similar State law, but not including any other offense consisting of conduct that if engaged in by an adult would not constitute an offense) or adjudicated as a juvenile delinquent for conduct that if adult would constitute an offense.

"(B) A person other than a juvenile who knowingly violates section 922(x)—

"(i) shall be fined under this title, imprisoned not more than 1 year, or both; and

Exhibit 76
00066

H. R. 3355—217

"(ii) if the person sold, delivered, or otherwise transferred a handgun or ammunition to a juvenile knowing or having reasonable cause to know that the juvenile intended to carry or otherwise possess or discharge or otherwise use the handgun or ammunition in the commission of a crime of violence, shall be fined under this title, imprisoned not more than 10 years, or both.".

(c) TECHNICAL AMENDMENT OF JUVENILE DELINQUENCY PROVISIONS IN TITLE 18, UNITED STATES CODE.—

(1) SECTION 5031.—Section 5031 of title 18, United States Code, is amended by inserting "or a violation by such a person of section 922(x)" before the period at the end.

(2) SECTION 5032.—Section 5032 of title 18, United States Code, is amended—

(A) in the first undesignated paragraph by inserting "or (x)" after "922(p)"; and

(B) in the fourth undesignated paragraph by inserting "or section 922(x) of this title," before "criminal prosecution on the basis".

(d) TECHNICAL AMENDMENT OF THE JUVENILE JUSTICE AND DELINQUENCY PREVENTION ACT OF 1974.—Section 223(a)(12)(A) of the Juvenile Justice and Delinquency Prevention Act of 1974 (42 U.S.C. 5633(a)(12)(A)) is amended by striking "which do not constitute violations of valid court orders" and inserting "(other than an offense that constitutes a violation of a valid court order or a violation of section 922(x) of title 18, United States Code, or a similar State law)."

(e) MODEL LAW.—The Attorney General, acting through the Director of the National Institute for Juvenile Justice and Delinquency Prevention, shall—

(1) evaluate existing and proposed juvenile handgun legislation in each State;

(2) develop model juvenile handgun legislation that is constitutional and enforceable;

(3) prepare and disseminate to State authorities the findings made as the result of the evaluation; and

(4) report to Congress by December 31, 1995, findings and recommendations concerning the need or appropriateness of further action by the Federal Government.

## Subtitle C—Licensure

### SEC. 110301. FIREARMS LICENSURE AND REGISTRATION TO REQUIRE A PHOTOGRAPH AND FINGERPRINTS.

(a) FIREARMS LICENSURE.—Section 923(a) of title 18, United States Code, is amended in the second sentence by inserting "and shall include a photograph and fingerprints of the applicant" before the period.

(b) REGISTRATION.—Section 5802 of the Internal Revenue Code of 1986 is amended by inserting after the first sentence the following: "An individual required to register under this section shall include a photograph and fingerprints of the individual with the initial application.".

Exhibit 76
00067

### SEC. 110302. COMPLIANCE WITH STATE AND LOCAL LAW AS A CONDITION TO LICENSE.

Section 923(d)(1) of title 18, United States Code, is amended—

(1) by striking "and" at the end of subparagraph (D);

(2) by striking the period at the end of subparagraph (E) and inserting "; and"; and

(3) by adding at the end the following new subparagraph:

"(F) the applicant certifies that—

"(i) the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located;

"(ii)(I) within 30 days after the application is approved the business will comply with the requirements of State and local law applicable to the conduct of the business; and

"(II) the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met; and

"(iii) that the applicant has sent or delivered a form to be prescribed by the Secretary, to the chief law enforcement officer of the locality in which the premises are located, which indicates that the applicant intends to apply for a Federal firearms license.".

### SEC. 110303. ACTION ON FIREARMS LICENSE APPLICATION.

Section 923(d)(2) of title 18, United States Code, is amended by striking "forty-five-day" and inserting "60-day".

### SEC. 110304. INSPECTION OF FIREARMS LICENSEES' INVENTORY AND RECORDS.

Section 923(g)(1)(B)(ii) of title 18, United States Code, is amended to read as follows:

"(ii) for ensuring compliance with the record keeping requirements of this chapter—

"(I) not more than once during any 12-month period; or

"(II) at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee.".

### SEC. 110305. REPORTS OF THEFT OR LOSS OF FIREARMS.

Section 923(g) of title 18, United States Code, is amended by adding at the end the following new paragraph:

"(6) Each licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Secretary and to the appropriate local authorities.".

### SEC. 110306. RESPONSES TO REQUESTS FOR INFORMATION.

Section 923(g) of title 18, United States Code, as amended by section 110405, is amended by adding at the end the following new paragraph:

"(7) Each licensee shall respond immediately to, and in no event later than 24 hours after the receipt of, a request by the Secretary for information contained in the records required to be kept by this chapter as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation. The requested information

Exhibit 76
00068

H. R. 3355—219

shall be provided orally or in writing, as the Secretary may require. The Secretary shall implement a system whereby the licensee can positively identify and establish that an individual requesting information via telephone is employed by and authorized by the agency to request such information.".

**SEC. 110307. NOTIFICATION OF NAMES AND ADDRESSES OF FIREARMS LICENSEES.**

Section 923 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(1) The Secretary of the Treasury shall notify the chief law enforcement officer in the appropriate State and local jurisdictions of the names and addresses of all persons in the State to whom a firearms license is issued.".

# Subtitle D—Domestic Violence

**SEC. 110401. PROHIBITION AGAINST DISPOSAL OF FIREARMS TO, OR RECEIPT OF FIREARMS BY, PERSONS WHO HAVE COMMITTED DOMESTIC ABUSE.**

(a) INTIMATE PARTNER DEFINED.—Section 921(a) of title 18, United States Code, as amended by section 110103(b), is amended by inserting at the end the following new paragraph:

"(32) The term 'intimate partner' means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person.".

(b) PROHIBITION AGAINST DISPOSAL OF FIREARMS.—Section 922(d) of title 18, United States Code, is amended—

(1) by striking "or" at the end of paragraph (6);

(2) by striking the period at the end of paragraph (7) and inserting "; or"; and

(3) by inserting after paragraph (7) the following new paragraph:

"(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

"(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

"(B)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.".

(c) PROHIBITION AGAINST RECEIPT OF FIREARMS.—Section 922(g) of title 18, United States Code, is amended—

(1) by striking "or" at the end of paragraph (6);

(2) by inserting "or" at the end of paragraph (7); and

(3) by inserting after paragraph (7) the following:

Exhibit 76
00069

H. R. 3355—220

"(8) who is subject to a court order that—
"(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
"(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
"(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury,".

(d) STORAGE OF FIREARMS.—Section 926(a) of title 18, United States Code, is amended—
(1) by striking "and" at the end of paragraph (1);
(2) by striking the period at the end of paragraph (2) and inserting "; and"; and
(3) by inserting after paragraph (2) the following:
"(3) regulations providing for effective receipt and secure storage of firearms relinquished by or seized from persons described in subsection (d)(8) or (g)(8) of section 922.".

(e) RETURN OF FIREARMS.—Section 924(d)(1) of title 18, United States Code, is amended by striking "the seized" and inserting "or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished".

# Subtitle E—Gun Crime Penalties

## SEC. 110501. ENHANCED PENALTY FOR USE OF A SEMIAUTOMATIC FIREARM DURING A CRIME OF VIOLENCE OR A DRUG TRAFFICKING CRIME.

(a) AMENDMENT TO SENTENCING GUIDELINES.—Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to provide an appropriate enhancement of the punishment for a crime of violence (as defined in section 924(c)(3) of title 18, United States Code) or a drug trafficking crime (as defined in section 924(c)(2) of title 18, United States Code) if a semiautomatic firearm is involved.

(b) SEMIAUTOMATIC FIREARM.—In subsection (a), "semiautomatic firearm" means any repeating firearm that utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round and that requires a separate pull of the trigger to fire each cartridge.

## SEC. 110502. ENHANCED PENALTY FOR SECOND OFFENSE OF USING AN EXPLOSIVE TO COMMIT A FELONY.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall promulgate amendments to the sentencing guidelines to appropriately enhance penalties in a case in which a defendant convicted

Exhibit 76

00070

H. R. 3355—221

under section 844(h) of title 18, United States Code, has previously been convicted under that section.

### SEC. 110503. SMUGGLING FIREARMS IN AID OF DRUG TRAFFICKING.

Section 924 of title 18, United States Code, as amended by section 60013, is amended by adding at the end the following new subsection:

"(j) A person who, with intent to engage in or to promote conduct that—

"(1) is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.);

"(2) violates any law of a State relating to any controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802); or

"(3) constitutes a crime of violence (as defined in subsection (c)(3),

smuggles or knowingly brings into the United States a firearm, or attempts to do so, shall be imprisoned not more than 10 years, fined under this title, or both.".

### SEC. 110504. THEFT OF FIREARMS AND EXPLOSIVES.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110203(a), is amended by adding at the end the following new subsection:

"(k) A person who steals any firearm which is moving as, or is a part of, or which has moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.".

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(k) A person who steals any explosives materials which are moving as, or are a part of, or which have moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.".

### SEC. 110505. REVOCATION OF SUPERVISED RELEASE AFTER IMPRIS- ONMENT.

Section 3583 of title 18, United States Code, is amended—

(1) in subsection (d) by striking "possess illegal controlled substances" and inserting "unlawfully possess a controlled substance";

(2) in subsection (e)—

(A) by striking "person" each place such term appears in such subsection and inserting "defendant"; and

(B) by amending paragraph (3) to read as follows:

"(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in

Exhibit 76
00071

H. R. 3355—222

the term of supervised release is a class A felony, more than
3 years in prison if such offense is a class B felony, more
than 2 years in prison if such offense is a class C or D felony,
or more than one year in any other case; or"; and

      (3) by striking subsection (g) and inserting the following:
"(g) MANDATORY REVOCATION FOR POSSESSION OF CONTROLLED
SUBSTANCE OR FIREARM OR FOR REFUSAL TO COMPLY WITH DRUG
TESTING.—If the defendant—

      "(1) possesses a controlled substance in violation of the
condition set forth in subsection (d);

      "(2) possesses a firearm, as such term is defined in section
921 of this title, in violation of Federal law, or otherwise violates
a condition of supervised release prohibiting the defendant
from possessing a firearm; or

      "(3) refuses to comply with drug testing imposed as a
condition of supervised release;
the court shall revoke the term of supervised release and require
the defendant to serve a term of imprisonment not to exceed the
maximum term of imprisonment authorized under subsection (e)(3).

      "(h) SUPERVISED RELEASE FOLLOWING REVOCATION.—When a
term of supervised release is revoked and the defendant is required
to serve a term of imprisonment that is less than the maximum
term of imprisonment authorized under subsection (e)(3), the court
may include a requirement that the defendant be placed on a
term of supervised release after imprisonment. The length of such
a term of supervised release shall not exceed the term of supervised
release authorized by statute for the offense that resulted in the
original term of supervised release, less any term of imprisonment
that was imposed upon revocation of supervised release.

      "(i) DELAYED REVOCATION.—The power of the court to revoke
a term of supervised release for violation of a condition of supervised
release, and to order the defendant to serve a term of imprisonment
and, subject to the limitations in subsection (h), a further term
of supervised release, extends beyond the expiration of the term
of supervised release for any period reasonably necessary for the
adjudication of matters arising before its expiration if, before its
expiration, a warrant or summons has been issued on the basis
of an allegation of such a violation.".

### SEC. 110506. REVOCATION OF PROBATION.

      (a) IN GENERAL.—Section 3565(a) of title 18, United States
Code, is amended—

      (1) in paragraph (2) by striking "impose any other sentence
that was available under subchapter A at the time of the
initial sentencing" and inserting "resentence the defendant
under subchapter A"; and

      (2) by striking the last sentence.

      (b) MANDATORY REVOCATION.—Section 3565(b) of title 18,
United States Code, is amended to read as follows:

      "(b) MANDATORY REVOCATION FOR POSSESSION OF CONTROLLED
SUBSTANCE OR FIREARM OR REFUSAL TO COMPLY WITH DRUG TEST-
ING.—If the defendant—

      "(1) possesses a controlled substance in violation of the
condition set forth in section 3563(a)(3);

      "(2) possesses a firearm, as such term is defined in section
921 of this title, in violation of Federal law, or otherwise violates

Exhibit 76
00072

H. R. 3355—223

a condition of probation prohibiting the defendant from possessing a firearm; or

"(3) refuses to comply with drug testing, thereby violating the condition imposed by section 3563(a)(4),

the court shall revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment.".

**SEC. 110507. INCREASED PENALTY FOR KNOWINGLY MAKING FALSE, MATERIAL STATEMENT IN CONNECTION WITH THE ACQUISITION OF A FIREARM FROM A LICENSED DEALER.**

Section 924(a) of title 18, United States Code, is amended—

(1) in subsection (a)(1)(B) by striking "(a)(6),"; and

(2) in subsection (a)(2) by inserting "(a)(6)," after "subsections".

**SEC. 110508. POSSESSION OF EXPLOSIVES BY FELONS AND OTHERS.**

Section 842(i) of title 18, United States Code, is amended by inserting "or possess" after "to receive".

**SEC. 110509. SUMMARY DESTRUCTION OF EXPLOSIVES SUBJECT TO FORFEITURE.**

Section 844(c) of title 18, United States Code, is amended—

(1) by inserting "(1)" after "(c)"; and

(2) by adding at the end the following new paragraphs:

"(2) Notwithstanding paragraph (1), in the case of the seizure of any explosive materials for any offense for which the materials would be subject to forfeiture in which it would be impracticable or unsafe to remove the materials to a place of storage or would be unsafe to store them, the seizing officer may destroy the explosive materials forthwith. Any destruction under this paragraph shall be in the presence of at least 1 credible witness. The seizing officer shall make a report of the seizure and take samples as the Secretary may by regulation prescribe.

"(3) Within 60 days after any destruction made pursuant to paragraph (2), the owner of (including any person having an interest in) the property so destroyed may make application to the Secretary for reimbursement of the value of the property. If the claimant establishes to the satisfaction of the Secretary that—

"(A) the property has not been used or involved in a violation of law; or

"(B) any unlawful involvement or use of the property was without the claimant's knowledge, consent, or willful blindness, the Secretary shall make an allowance to the claimant not exceeding the value of the property destroyed.".

**SEC. 110510. ELIMINATION OF OUTMODED LANGUAGE RELATING TO PAROLE.**

(a) SECTION 924(e)(1) OF TITLE 18.—Section 924(e)(1) of title 18, United States Code, is amended by striking ", and such person shall not be eligible for parole with respect to the sentence imposed under this subsection".

(b) SECTION 924(c)(1) OF TITLE 18.—Section 924(c)(1) of title 18, United States Code, is amended by striking "No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed under this subsection.".

Exhibit 76
00073

H. R. 3355—224

### SEC. 110511. PROHIBITION AGAINST TRANSACTIONS INVOLVING STOLEN FIREARMS WHICH HAVE MOVED IN INTERSTATE OR FOREIGN COMMERCE.

Section 922(j) of title 18, United States Code, is amended to read as follows:

"(j) It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.".

### SEC. 110512. USING A FIREARM IN THE COMMISSION OF COUNTERFEITING OR FORGERY.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to provide an appropriate enhancement of the punishment for a defendant convicted of a felony under chapter 25 of title 18, United States Code, if the defendant used or carried a firearm (as defined in section 921(a)(3) of title 18, United States Code) during and in relation to the felony.

### SEC. 110513. ENHANCED PENALTIES FOR FIREARMS POSSESSION BY VIOLENT FELONS AND SERIOUS DRUG OFFENDERS.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to—

(1) appropriately enhance penalties in cases in which a defendant convicted under section 922(g) of title 18, United States Code, has 1 prior conviction by any court referred to in section 922(g)(1) of title 18 for a violent felony (as defined in section 924(e)(2)(B) of that title) or a serious drug offense (as defined in section 924(e)(2)(A) of that title); and

(2) appropriately enhance penalties in cases in which such a defendant has 2 prior convictions for a violent felony (as so defined) or a serious drug offense (as so defined).

### SEC. 110514. RECEIPT OF FIREARMS BY NONRESIDENT.

Section 922(a) of title 18, United States Code, is amended—

(1) by striking "and" at the end of paragraph (7);

(2) by striking the period at the end of paragraph (8) and inserting "; and"; and

(3) by adding at the end the following new paragraph:

"(9) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, who does not reside in any State to receive any firearms unless such receipt is for lawful sporting purposes.".

### SEC. 110515. THEFT OF FIREARMS OR EXPLOSIVES FROM LICENSEE.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110504(a), is amended by adding at the end the following new subsection:

"(l) A person who steals any firearm from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall be fined under this title, imprisoned not more than 10 years, or both.".

Exhibit 76
00074

H. R. 3355—225

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, as amended by section 110204(b), is amended by adding at the end the following new subsection:

"(l) A person who steals any explosive material from a licensed importer, licensed manufacturer, or licensed dealer, or from any permittee shall be fined under this title, imprisoned not more than 10 years, or both.".

### SEC. 110516. DISPOSING OF EXPLOSIVES TO PROHIBITED PERSONS.

Section 842(d) of title 18, United States Code, is amended by striking "licensee" and inserting "person".

### SEC. 110517. INCREASED PENALTY FOR INTERSTATE GUN TRAFFICKING.

Section 924 of title 18, United States Code, as amended by section 110515(a), is amended by adding at the end the following new subsection:

"(m) A person who, with the intent to engage in conduct that constitutes a violation of section 922(a)(1)(A), travels from any State or foreign country into any other State and acquires, or attempts to acquire, a firearm in such other State in furtherance of such purpose shall be imprisoned for not more than 10 years.".

### SEC. 110518. FIREARMS AND EXPLOSIVES CONSPIRACY.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110517(a), is amended by adding at the end the following new subsection:

"(n) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.".

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, as amended by section 110515(b), is amended by adding at the end the following new subsection:

"(m) A person who conspires to commit an offense under subsection (h) shall be imprisoned for any term of years not exceeding 20, fined under this title, or both.

### SEC. 110519. DEFINITION OF ARMOR PIERCING AMMUNITION.

Section 921(a)(17) of title 18, United States Code, is amended by revising subparagraph (B) and adding a new subparagraph (C) to read as follows:

"(B) The term 'armor piercing ammunition' means—

"(i) a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or

"(ii) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile.

"(C) The term 'armor piercing ammunition' does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the Secretary finds is primarily intended to be used for sporting purposes,

Exhibit 76
00075

H. R. 3355—226

or any other projectile or projectile core which the Secretary finds is intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device.".

# TITLE XII—TERRORISM

### SEC. 120001. EXTENSION OF THE STATUTE OF LIMITATION FOR CERTAIN TERRORISM OFFENSES.

(a) IN GENERAL.—Chapter 213 of title 18, United States Code, is amended by inserting after section 3285 the following new section:

### "§ 3286. Extension of statute of limitation for certain terrorism offenses

"Notwithstanding section 3282, no person shall be prosecuted, tried, or punished for any offense involving a violation of section 32 (aircraft destruction), section 36 (airport violence), section 112 (assaults upon diplomats), section 351 (crimes against Congressmen or Cabinet officers), section 1116 (crimes against diplomats), section 1203 (hostage taking), section 1361 (willful injury to government property), section 1751 (crimes against the President), section 2280 (maritime violence), section 2281 (maritime platform violence), section 2331 (terrorist acts abroad against United States nationals), section 2339 (use of weapons of mass destruction), or section 2340A (torture) of this title or section 46502, 46504, 46505, or 46506 of title 49, unless the indictment is found or the information is instituted within 8 years after the offense was committed.".

(b) APPLICATION OF AMENDMENT.—The amendment made by subsection (a) shall not apply to any offense committed more than 5 years prior to the date of enactment of this Act.

(c) TECHNICAL AMENDMENT.—The chapter analysis for chapter 213 of title 18, United States Code, is amended by inserting after the item relating to section 3285 the following new item:

"3286. Extension of statute of limitation for certain terrorism offenses.".

### SEC. 120002. JURISDICTION OVER CRIMES AGAINST UNITED STATES NATIONALS ON CERTAIN FOREIGN SHIPS.

Section 7 of title 18, United States Code (relating to the special maritime and territorial jurisdiction of the United States), is amended by inserting at the end thereof the following new paragraph:

"(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.".

### SEC. 120003. COUNTERFEITING UNITED STATES CURRENCY ABROAD.

(a) IN GENERAL.—Chapter 25 of title 18, United States Code, is amended by adding before section 471 the following new section:

### "§ 470. Counterfeit acts committed outside the United States

"A person who, outside the United States, engages in the act of—

"(1) making, dealing, or possessing any counterfeit obligation or other security of the United States; or

"(2) making, dealing, or possessing any plate, stone, or other thing, or any part thereof, used to counterfeit such obligation or security,

Exhibit 76
00076

# EXHIBIT 77

Exhibit 77
00077

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4492   Page 78 of 147

## CHAPTER 32

An Act concerning assault firearms, amending various parts of the statutory law and supplementing chapter 58 of Title 2C of the New Jersey Statutes.

Be it enacted *by the Senate and General Assembly of the State of New Jersey:*

1.  N.J.S.2C:39-1 is amended to read as follows:

**Definitions.**

2C:39-1. Definitions. The following definitions apply to this chapter and to chapter 58:

a.  "Antique firearm" means any firearm and "antique cannon" means a destructive device defined in paragraph (3) of subsection c. of this section, if the firearm or destructive device, as the case may be, is incapable of being fired or discharged, or which does not fire fixed ammunition, regardless of date of manufacture, or was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

b.  "Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

c.  "Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one-quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than 60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line-throwing, safety or similar purposes.

d.  "Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

Exhibit 77
00078

CHAPTER 32, LAWS OF 1990                 221

> MAC 10, MAC 11, MAC 11-9mm carbine type firearms
> PJK M-68 carbine type
> Plainfield Machine Company Carbine
> Ruger K-Mini-14/5F and Mini-14/5RF
> SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types
> SKS with detachable magazine type
> Spectre Auto carbine type
> Springfield Armory BM59 and SAR-48 type
> Sterling MK-6, MK-7 and SAR types
> Steyr A.U.G. semi-automatic firearms
> USAS 12 semi-automatic type shotgun
> Uzi type semi-automatic firearms
> Valmet M62, M71S, M76, or M78 type semi-automatic firearms
> Weaver Arm Nighthawk.

(2) Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

(3) A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

(4) A semi-automatic rifle with a fixed magazine capacity exceeding 15 rounds.

(5) A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

x.   "Semi-automatic" means a firearm which fires a single projectile for each single pull of the trigger and is self-reloading or automatically chambers a round, cartridge, or bullet.

y.   "Large capacity ammunition magazine" means a box, drum, tube or other container which is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm.

z.   "Pistol grip" means a well-defined handle, similar to that found on a handgun, that protrudes conspicuously beneath the action of the weapon, and which permits the shotgun to be held and fired with one hand.

2.   N.J.S.2C:39-5 is amended to read as follows:

**Unlawful possession of weapons.**

2C:39-5. Unlawful Possession of Weapons.

a.   Machine guns. Any person who knowingly has in his possession a machine gun or any instrument or device adaptable for

Exhibit 77
00079

tion to another licensed dealer, the Armed Forces of the United States or the National Guard, or to a law enforcement agency, provided that the seller maintains a record of any sale or disposition to a law enforcement agency. The record shall include the name of the purchasing agency, together with written authorization of the chief of police or highest ranking official of the agency, the name and rank of the purchasing law enforcement officer, if applicable, and the date, time and amount of ammunition sold or otherwise disposed. A copy of this record shall be forwarded by the seller to the Superintendent of the Division of State Police within 48 hours of the sale or disposition.

(4) Nothing in subsection a. of this section shall be construed to apply to antique cannons as exempted in subsection d. of N.J.S.2C:39-6.

h.  Stun guns. Any person who knowingly has in his possession any stun gun is guilty of a crime of the fourth degree.

i.  Nothing in subsection e. of this section shall be construed to prevent any guard in the employ of a private security company, who is licensed to carry a firearm, from the possession of a nightstick when in the actual performance of his official duties, provided that he has satisfactorily completed a training course approved by the Police Training Commission in the use of a nightstick.

j.  Any person who knowingly has in his possession a large capacity ammunition magazine is guilty of a crime of the fourth degree unless the person has registered an assault firearm pursuant to section 11 of P.L.1990, c.32 (C.2C:58-12) and the magazine is maintained and used in connection with participation in competitive shooting matches sanctioned by the Director of Civilian Marksmanship of the United States Department of the Army.

**C.2C:58-12 Registration of assault firearms.**

11. a. Within 90 days of the effective date of P.L.1990, c.32 (C.2C:58-12 et al.), the Attorney General shall promulgate a list by trade name of any assault firearm which the Attorney General determines is an assault firearm which is used for legitimate target-shooting purposes. This list shall include, but need not be limited to, the Colt AR-15 and any other assault firearm used in competitive shooting matches sanctioned by the Director of Civilian Marksmanship of the United States Department of the Army.

b.  The owner of an assault firearm purchased on or before May 1, 1990 which is on the list of assault firearms determined by the Attorney General to be legitimate for target-shooting purposes shall have one year from the effective date of P.L.1990,

Exhibit 77
00080

# EXHIBIT 78

Exhibit 78
00081

650          72d CONGRESS.  SESS. I.  CHS. 464, 465.  JULY 8, 1932.

States, for the purpose of having such communication delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to such addressee in the United States, and as a result thereof such communication is delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to the address to which it is directed in the United States, then such person shall be punished in the same manner and to the same extent as provided in section 1 of this Act: *Provided,* That any person violating this section may be prosecuted either in the district into which such letter or other communication was carried by the United States mail for delivery according to the direction thereon, or in which it was caused to be delivered by the United States mail to the person to whom it was addressed.

<span style="float:left">Punishment for.<br>*Proviso.*<br>Jurisdiction.</span>

Approved, July 8, 1932.

---

[CHAPTER 465.]

<span style="float:left">July 8, 1932.<br>[H. R. 8754.]<br>[Public, No. 275.]</span>

**AN ACT**

To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes.

<span style="float:left">Unauthorized use,<br>etc., of pistols and other<br>dangerous weapons in<br>District of Columbia.</span>

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

<span style="float:left">Definitions.</span>

**DEFINITIONS**

<span style="float:left">"Pistol."</span>

SECTION 1. " Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length.

<span style="float:left">"Sawed-off shot-<br>gun."</span>

" Sawed-off shotgun," as used in this Act, means any shotgun with a barrel less than twenty inches in length.

<span style="float:left">"Machine gun."</span>

" Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading.

<span style="float:left">"Person."</span>

" Person," as used in this Act, includes, individual, firm, association, or corporation.

<span style="float:left">"Sell" and "pur-<br>chase," etc.</span>

" Sell " and " purchase " and the various derivatives of such words, as used in this Act, shall be construed to include letting on hire, giving, lending, borrowing, and otherwise transferring.

<span style="float:left">"Crime of violence."</span>

" Crime of violence " as used in this Act, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary.

**COMMITTING CRIME WHEN ARMED**

<span style="float:left">Committing crime of<br>violence when armed.<br>Punishment for.</span>

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the

Exhibit 78
00082

72d CONGRESS.  SESS. I.  CH. 465.  JULY 8, 1932.            651

crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

### PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

Persons forbidden to possess certain firearms.

Sec. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

Convicted of a crime.

### CARRYING CONCEALED WEAPONS

Sec. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

Illegally carrying, etc., dangerous weapon.

### EXCEPTIONS

Exceptions.

Sec. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

Law enforcement officers.

Army, Navy, or Marine Corps.

National Guard, etc., on duty.

Other organizations.

Carrying to places of assembly, etc.

Manufacturer, etc.

### ISSUE OF LICENSES TO CARRY

Licenses.

Sec. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed.  The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license.  The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

Exhibit 78
00083

652          72d CONGRESS.  SESS. I.  CH. 465.  JULY 8, 1932.

### SELLING TO MINORS AND OTHERS

*Selling to minors or others.*

SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

### TRANSFERS REGULATED

*Time, etc., provisions.*

SEC. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law-enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded.  At the time of applying for the purchase of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence.  The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the other copy for six years.  No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.  This section shall not apply to sales at wholesale to licensed dealers.

*Register to be kept.*

*Limitation.*

*Wholesale trade.*

### DEALERS TO BE LICENSED

*Dealers to be licensed.*

SEC. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun, sawed-off shotgun, or blackjack without being licensed as hereinafter provided.  No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed-off shotgun, or blackjack.

### DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

*Conditions, etc., for issuing dealers' licenses.*
*Ante, p. 558.*

SEC. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

Exhibit 78
00084

3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity.  No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.

4. A true record shall be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners, of all pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale.

5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence.  One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years.

6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily be seen from the outside.  No license to sell at retail shall be granted to anyone except as provided in this section.

*Records.*

*Display, etc., forbidden.*

### FALSE INFORMATION FORBIDDEN

SEC. 11. No person, shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine gun, sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity.

*False information or evidence forbidden.*

### ALTERATION OF IDENTIFYING MARKS PROHIBITED

SEC. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol, machine gun, or sawed-off shotgun.  Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: *Provided, however,* That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work.

*Alteration, etc., of identification marks, prohibited.*

*Proviso.*
*Experimental work.*

### EXCEPTIONS

SEC. 13. This Act shall not apply to toy or antique pistols unsuitable for use as firearms.

*Toys, etc., excepted.*

Exhibit 78
00085

### POSSESSION OF CERTAIN DANGEROUS WEAPONS

Possession of certain dangerous weapons forbidden.

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: *Provided, however,* That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly appointed law-enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers and retail dealers licensed under section 10 of this Act.

*Proviso.* Exceptions.

### PENALTIES

Punishment for violations.

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

### CONSTITUTIONALITY

Invalidity of any provision not to affect remainder.

SEC. 16. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

### CERTAIN ACTS REPEALED

Vol. 31, p. 1328, repealed.

SEC. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856, and 857, and all other Acts or parts of Acts inconsistent herewith, are hereby repealed.

Approved, July 8, 1932.

---

[CHAPTER 466.]

### JOINT RESOLUTION

July 8, 1932.
[H. J. Res. 462.]
[Pub. Res., No. 35.]

Making an appropriation to provide transportation to their homes for veterans of the World War temporarily quartered in the District of Columbia.

World War veterans. Appropriation for, to provide transportation from District of Columbia to their homes.
*Post, p. 701.*

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That to enable the Administrator of Veterans' Affairs, upon the request of any honorably discharged veteran of the World War, temporarily quartered in the District of Columbia, who is desirous of returning to his home, to provide such veteran with railroad transportation thereto prior to July 15, 1932, together with travel subsistence at the rate of 75 cents per day, there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $100,000: *Provided,* That all amounts expended under this appropriation in behalf of any veteran shall constitute a loan without interest which, if not repaid to the United States, shall be deducted from any amounts payable to such veteran on his adjusted-service certificate.

*Proviso.* Credited as a loan.

Approved, July 8, 1932.

Exhibit 78
00086

# EXHIBIT 79

Exhibit 79
00087

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Colorado Revised Statutes Annotated
Title 18. Criminal Code (Refs & Annos)
Article 12. Offenses Relating to Firearms and Weapons (Refs & Annos)
Part 3. Large-Capacity Ammunition Magazines

C.R.S.A. § 18-12-301

§ 18-12-301. Definitions

Effective: July 1, 2013
Currentness

As used in this part 3, unless the context otherwise requires:

(1) "Bureau" means the Colorado bureau of investigation created and existing pursuant to section 24-33.5-401, C.R.S.

(2)(a) "Large-capacity magazine" means:

(I) A fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition;

(II) A fixed, tubular shotgun magazine that holds more than twenty-eight inches of shotgun shells, including any extension device that is attached to the magazine and holds additional shotgun shells; or

(III) A nontubular, detachable magazine, box, drum, feed strip, or similar device that is capable of accepting more than eight shotgun shells when combined with a fixed magazine.

(b) "Large-capacity magazine" does not mean:

(I) A feeding device that has been permanently altered so that it cannot accommodate more than fifteen rounds of ammunition;

(II) An attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition; or

(III) A tubular magazine that is contained in a lever-action firearm.

**Credits**
Added by Laws 2013, Ch. 48, § 1, eff. July 1, 2013.

Exhibit 79
00088

C. R. S. A. § 18-12-301, CO ST § 18-12-301
Current through Ch. 2 of the Second Regular Session of the 71st General Assembly (2018)

**End of Document**                           © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 79
00089

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    2

# EXHIBIT 80

Exhibit 80
00090

Connecticut General Statutes Annotated
   Title 53. Crimes (Refs & Annos)
      Chapter 943. Offenses Against Public Peace and Safety

C.G.S.A. § 53-202w

§ 53-202w. Large capacity magazines. Definitions. Sale, transfer or possession prohibited. Exceptions

Effective: June 18, 2013
Currentness

(a) As used in this section and section 53-202x:

(1) "Large capacity magazine" means any firearm magazine, belt, drum, feed strip or similar device that has the capacity of, or can be readily restored or converted to accept, more than ten rounds of ammunition, but does not include: (A) A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds of ammunition, (B) a .22 caliber tube ammunition feeding device, (C) a tubular magazine that is contained in a lever-action firearm, or (D) a magazine that is permanently inoperable;

(2) "Lawfully possesses", with respect to a large capacity magazine, means that a person has (A) actual and lawful possession of the large capacity magazine, (B) constructive possession of the large capacity magazine pursuant to a lawful purchase of a firearm that contains a large capacity magazine that was transacted prior to or on April 4, 2013, regardless of whether the firearm was delivered to the purchaser prior to or on April 4, 2013, which lawful purchase is evidenced by a writing sufficient to indicate that (i) a contract for sale was made between the parties prior to or on April 4, 2013, for the purchase of the firearm, or (ii) full or partial payment for the firearm was made by the purchaser to the seller of the firearm prior to or on April 4, 2013, or (C) actual possession under subparagraph (A) of this subdivision, or constructive possession under subparagraph (B) of this subdivision, as evidenced by a written statement made under penalty of false statement on such form as the Commissioner of Emergency Services and Public Protection prescribes; and

(3) "Licensed gun dealer" means a person who has a federal firearms license and a permit to sell firearms pursuant to section 29-28.

(b) Except as provided in this section, on and after April 5, 2013, any person who, within this state, distributes, imports into this state, keeps for sale, offers or exposes for sale, or purchases a large capacity magazine shall be guilty of a class D felony. On and after April 5, 2013, any person who, within this state, transfers a large capacity magazine, except as provided in subsection (f) of this section, shall be guilty of a class D felony.

(c) Except as provided in this section and section 53-202x: (1) Any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained prior to April 5, 2013, shall commit an infraction and be fined not more than ninety dollars for a first offense and shall be guilty of a class D felony for any subsequent offense, and (2) any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained on or after April 5, 2013, shall be guilty of a class D felony.

(d) A large capacity magazine may be possessed, purchased or imported by:

Exhibit 80
00091

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4506   Page 92 of 147

§ 53-202w. Large capacity magazines: Definitions. Sale, transfer..., CT ST § 53-202w

(1) The Department of Emergency Services and Public Protection, police departments, the Department of Correction, the Division of Criminal Justice, the Department of Motor Vehicles, the Department of Energy and Environmental Protection or the military or naval forces of this state or of the United States;

(2) A sworn and duly certified member of an organized police department, the Division of State Police within the Department of Emergency Services and Public Protection or the Department of Correction, a chief inspector or inspector in the Division of Criminal Justice, a salaried inspector of motor vehicles designated by the Commissioner of Motor Vehicles, a conservation officer or special conservation officer appointed by the Commissioner of Energy and Environmental Protection pursuant to section 26-5, or a constable who is certified by the Police Officer Standards and Training Council and appointed by the chief executive authority of a town, city or borough to perform criminal law enforcement duties, for use by such sworn member, inspector, officer or constable in the discharge of such sworn member's, inspector's, officer's or constable's official duties or when off duty;

(3) A member of the military or naval forces of this state or of the United States;

(4) A nuclear facility licensed by the United States Nuclear Regulatory Commission for the purpose of providing security services at such facility, or any contractor or subcontractor of such facility for the purpose of providing security services at such facility;

(5) Any person who is sworn and acts as a policeman on behalf of an armored car service pursuant to section 29-20 in the discharge of such person's official duties; or

(6) Any person, firm or corporation engaged in the business of manufacturing large capacity magazines in this state that manufactures, purchases, tests or transports large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state, or a federally-licensed firearm manufacturer engaged in the business of manufacturing firearms or large capacity magazines in this state that manufactures, purchases, tests or transports firearms or large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state.

(e) A large capacity magazine may be possessed by:

(1) A licensed gun dealer;

(2) A gunsmith who is in a licensed gun dealer's employ, who possesses such large capacity magazine for the purpose of servicing or repairing a lawfully possessed large capacity magazine;

(3) A person, firm, corporation or federally-licensed firearm manufacturer described in subdivision (6) of subsection (d) of this section that possesses a large capacity magazine that is lawfully possessed by another person for the purpose of servicing or repairing the large capacity magazine;

Exhibit 80
00092

(4) Any person who has declared possession of the magazine pursuant to section 53-202x; or

(5) Any person who is the executor or administrator of an estate that includes a large capacity magazine, or the trustee of a trust that includes a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to section 53-202x, which is disposed of as authorized by the Probate Court, if the disposition is otherwise permitted by this section and section 53-202x.

(f) Subsection (b) of this section shall not prohibit:

(1) The transfer of a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to section 53-202x, by bequest or intestate succession, or, upon the death of a testator or settlor: (A) To a trust, or (B) from a trust to a beneficiary;

(2) The transfer of a large capacity magazine to a police department or the Department of Emergency Services and Public Protection;

(3) The transfer of a large capacity magazine to a licensed gun dealer in accordance with section 53-202x; or

(4) The transfer of a large capacity magazine prior to October 1, 2013, from a licensed gun dealer, pawnbroker licensed under section 21-40, or consignment shop operator, as defined in section 21-39a, to any person who (A) possessed the large capacity magazine prior to or on April 4, 2013, (B) placed a firearm that such person legally possessed, with the large capacity magazine included or attached, in the possession of such dealer, pawnbroker or operator prior to or on April 4, 2013, pursuant to an agreement between such person and such dealer, pawnbroker or operator for the sale of the firearm to a third person, and (C) is eligible to possess the firearm on the date of such transfer.

(g) If the court finds that a violation of this section is not of a serious nature and that the person charged with such violation (1) will probably not offend in the future, (2) has not previously been convicted of a violation of this section, and (3) has not previously had a prosecution under this section suspended pursuant to this subsection, it may order suspension of prosecution in accordance with the provisions of subsection (h) of section 29-33.

**Credits**
(2013, P.A. 13-3, § 23, eff. April 4, 2013; 2013, P.A. 13-220, § 1, eff. June 18, 2013.)

Notes of Decisions (3)

C. G. S. A. § 53-202w, CT ST § 53-202w
The statutes and Constitution are current through the 2018 Supplement to the General Statutes of Connecticut, Revision of 1958.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 80
00093

---

# EXHIBIT 81

Exhibit 81
00094

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedPrior Version Held Unconstitutional as Applied by Herrington v. U.S., D.C., Nov. 04, 2010

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

West's District of Columbia Code Annotated 2001 Edition
  Division I. Government of District.
    Title 7. Human Health Care and Safety. (Refs & Annos)
      Subtitle J. Public Safety.
        Chapter 25. Firearms Control.
          Unit A. Firearms Control Regulations.
            Subchapter VI. Possession of Ammunition.

DC ST § 7-2506.01
Formerly cited as DC ST 1981 §6-2361

§ 7-2506.01. Persons permitted to possess ammunition.

Effective: April 27, 2013
Currentness

(a) No person shall possess ammunition in the District of Columbia unless:

(1) He is a licensed dealer pursuant to subchapter IV of this unit;

(2) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3) He is the holder of the valid registration certificate for a firearm pursuant to subchapter II of this chapter; except, that no such person shall possess one or more restricted pistol bullets; or

(4) He holds an ammunition collector's certificate on September 24, 1976; or

(5) He temporarily possesses ammunition while participating in a firearms training and safety class conducted by a firearms instructor.

(b) No person in the District shall possess, sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm. For the purposes of this subsection, the term "large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition. The term "large capacity ammunition feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

Exhibit 81
00095

**Credits**

(Sept. 24, 1976, D.C. Law 1-85, title VI, § 601, 23 DCR 2464; Mar. 16, 1978, D.C. Law 2-62, § 2, 24 DCR 5780; Aug. 2, 1983, D.C. Law 5-19, § 4, 30 DCR 3328; Mar. 31, 2009, D.C. Law 17-372, § 3(n), 56 DCR 1365; Sept. 26, 2012, D.C. Law 19-170, § 2(n), 59 DCR 5691; Apr. 27, 2013, D.C. Law 19-295, § 2(c), 60 DCR 2623.)


Notes of Decisions (51)


Copyright (c) 2012 By the District of Columbia. Content previously published in the District of Columbia Official Code, 2001 Edition is used with permission. Copyright (c) 2018 Thomson Reuters

DC CODE § 7-2506.01

Current through February 20, 2018

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 82

Exhibit 82
00097

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Hawai'i Revised Statutes Annotated
  Division 1. Government
    Title 10. Public Safety and Internal Security
      Chapter 134. Firearms, Ammunition and Dangerous Weapons
        Part I. General Regulations

HRS § 134-8

§ 134-8. Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties

Currentness

(a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

(b) Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

(c) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

(d) Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

**Credits**
Laws 1988, ch. 275, § 2; Laws 1989, ch. 261, § 6; Laws 1989, ch. 263, § 4; Laws 1992, ch. 286, §§ 3, 4.

Notes of Decisions (13)

H R S § 134-8, HI ST § 134-8
Current through Act 3 (End) of the 2017 1st Special Session, pending text revision by the revisor of statutes.

Exhibit 82
00098

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 82
00099

# EXHIBIT 83

Exhibit 83
00100

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedValidity Called into Doubt by Kolbe v. Hogan, 4th Cir.(Md.), Feb. 04, 2016

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

West's Annotated Code of Maryland
   Criminal Law (Refs & Annos)
     Title 4. Weapon Crimes
       Subtitle 3. Assault Weapons and Detachable Magazines (Refs & Annos)

MD Code, Criminal Law, § 4-305
Formerly cited as MD CODE Art. 27, §36H-5

§ 4-305. Detachable magazines--Prohibited

Effective: October 1, 2013
Currentness

**Scope**

(a) This section does not apply to:

(1) a .22 caliber rifle with a tubular magazine; or

(2) a law enforcement officer or a person who retired in good standing from service with a law enforcement agency of the United States, the State, or any law enforcement agency in the State.

**Prohibited**

(b) A person may not manufacture, sell, offer for sale, purchase, receive, or transfer a detachable magazine that has a capacity of more than 10 rounds of ammunition for a firearm.

**Credits**
Added by Acts 2002, c. 26, § 2, eff. Oct. 1, 2002. Amended by Acts 2013, c. 427, § 1, eff. Oct. 1, 2013.

**Formerly** Art. 27, § 36H-5.

**Editors' Notes**

**LEGISLATIVE NOTES**

Revisor's Note (Acts 2002, c. 26):

This section is new language derived without substantive change from former Art. 27, § 36H-5(b).

The former reference to "any type of" firearm is deleted as surplusage.

Exhibit 83
00101

Defined term: "Person" § 1-101

Notes of Decisions (8)

MD Code, Criminal Law, § 4-305, MD CRIM LAW § 4-305
Current through Chapters 1 to 4 from the 2018 Regular Session of the General Assembly

---

**End of Document**        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 83
00102

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   

# EXHIBIT 84

Exhibit 84
00103

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedPrior Version Held Unconstitutional by Com. v. Beal, Mass., May 24, 2016

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XX. Public Safety and Good Order (Ch. 133-148a)
      Chapter 140. Licenses (Refs & Annos)

M.G.L.A. 140 § 121

§ 121. Firearms sales; definitions; antique firearms; application of law; exceptions

Effective: February 1, 2018
Currentness

As used in sections 122 to 131Q, inclusive, the following words shall, unless the context clearly requires otherwise, have the following meanings:--

"Ammunition", cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun. The term "ammunition" shall also mean tear gas cartridges.

"Assault weapon", shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(30) as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as: (i) Avtomat Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta Ar70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M-11/9 and M-12; (vi) Steyr AUG; (vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12; provided, however, that the term assault weapon shall not include: (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to 18 U.S.C. section 922 as appearing in such appendix on September 13, 1994, as such weapons were manufactured on October 1, 1993; (ii) any weapon that is operated by manual bolt, pump, lever or slide action; (iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon; (iv) any weapon that was manufactured prior to the year 1899; (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon; (vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or (vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine.

<[ Definition of "Bump stock" inserted following definition of "Assault weapon" in first paragraph by 2017, 110, Sec. 18 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

"Bump stock", any device for a weapon that increases the rate of fire achievable with such weapon by using energy from the recoil of the weapon to generate a reciprocating action that facilitates repeated activation of the trigger.

"Conviction", a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed.

Exhibit 84
00104

"Deceptive weapon device", any device that is intended to convey the presence of a rifle, shotgun or firearm that is used in the commission of a violent crime, as defined in this section, and which presents an objective threat of immediate death or serious bodily harm to a person of reasonable and average sensibility.

"Firearm", a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk- through metal detectors.

"Gunsmith", any person who engages in the business of repairing, altering, cleaning, polishing, engraving, blueing or performing any mechanical operation on any firearm, rifle, shotgun or machine gun.

"Imitation firearm", any weapon which is designed, manufactured or altered in such a way as to render it incapable of discharging a shot or bullet.

"Large capacity feeding device", (i) a fixed or detachable magazine, box, drum, feed strip or similar device capable of accepting, or that can be readily converted to accept, more than ten rounds of ammunition or more than five shotgun shells; or (ii) a large capacity ammunition feeding device as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(31) as appearing in such section on September 13, 1994. The term "large capacity feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber ammunition.

"Large capacity weapon", any firearm, rifle or shotgun: (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or firearm and more than five shotgun shells in the case of a shotgun or firearm; or (iv) that is an assault weapon. The term "large capacity weapon" shall be a secondary designation and shall apply to a weapon in addition to its primary designation as a firearm, rifle or shotgun and shall not include: (i) any weapon that was manufactured in or prior to the year 1899; (ii) any weapon that operates by manual bolt, pump, lever or slide action; (iii) any weapon that is a single-shot weapon; (iv) any weapon that has been modified so as to render it permanently inoperable or otherwise rendered permanently unable to be designated a large capacity weapon; or (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable large capacity weapon.

"Length of barrel" or "barrel length", that portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized and shall include the chamber.

"Licensing authority", the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them.

<[ Definition of "Machine gun" in first paragraph effective until
February 1, 2018. For text effective February 1, 2018, see below.]>

"Machine gun", a weapon of any description, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a submachine gun.

Exhibit 84
00105

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4520   Page 106 of
147
§ 121. Firearms sales; definitions; antique firearms; application of..., MA ST 140 § 121

<[ Definition of "Machine gun" in first paragraph as amended by 2017, 110, Sec. 20 effective February 1,
2018 applicable as provided by 2017, 110, Sec. 53. For text effective until February 1, 2018, see above.]>

"Machine gun", a weapon of any description, by whatever name known, loaded or unloaded, from which a number
of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a
submachine gun; provided, however, that "machine gun" shall include bump stocks and trigger cranks.

"Purchase" and "sale" shall include exchange; the word "purchaser" shall include exchanger; and the verbs "sell" and
"purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense.

"Rifle", a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging
a shot or bullet for each pull of the trigger.

"Sawed-off shotgun", any weapon made from a shotgun, whether by alteration, modification or otherwise, if such
weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less
than 26 inches.

"Semiautomatic", capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and
chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.

"Shotgun", a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length
equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger.

<[ Definition of "Trigger crank" inserted following definition of "Shotgun" in first paragraph
by 2017, 110, Sec. 19 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

"Trigger crank", any device to be attached to a weapon that repeatedly activates the trigger of the weapon through the
use of a lever or other part that is turned in a circular motion; provided, however, that "trigger crank" shall not include
any weapon initially designed and manufactured to fire through the use of a crank or lever.

"Violent crime", shall mean any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile
delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such
term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or
a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of
explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another.

"Weapon", any rifle, shotgun or firearm.

Where the local licensing authority has the power to issue licenses or cards under this chapter, but no such licensing
authority exists, any resident or applicant may apply for such license or firearm identification card directly to the colonel
of state police and said colonel shall for this purpose be the licensing authority.

The provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to:

(A) any firearm, rifle or shotgun manufactured in or prior to the year 1899;

Exhibit 84
00106

(B) any replica of any firearm, rifle or shotgun described in clause (A) if such replica: (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; and

(C) manufacturers or wholesalers of firearms, rifles, shotguns or machine guns.

**Credits**
Amended by St.1934, c. 359, § 1; St.1957, c. 688, § 4; St.1959, c. 296, § 1; St.1960, c. 186; St.1968, c. 737, § 1; St.1969, c. 799, § 1; St.1971, c. 456, § 1; St.1973, c. 892, § 1; St.1983, c. 516, § 1; St.1984, c. 116, § 1; St.1989, c. 433; St.1990, c. 511, § 1; St.1996, c. 151, §§ 300, 301; St.1998, c. 180, § 8; St.1999, c. 1, § 1; St.2004, c. 150, §§ 1 to 3, eff. Sept. 13, 2004; St.2014, c. 284, §§ 19, eff. Jan. 1, 2015; St.2014, c. 284, §§ 20, 21, eff. Aug. 13, 2014; St.2017, c. 110, §§ 18 to 20, eff. Feb. 1, 2018.

Notes of Decisions (97)

M.G.L.A. 140 § 121, MA ST 140 § 121
Current through the 2017 1st Annual Session

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 84
00107

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4522   Page 108 of
147
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedPrior Version Held Unconstitutional by Fletcher v. Haas, D.Mass., Mar. 30, 2012

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

Massachusetts General Laws Annotated
    Part I. Administration of the Government (Ch. 1-182)
        Title XX. Public Safety and Good Order (Ch. 133-148a)
            Chapter 140. Licenses (Refs & Annos)

M.G.L.A. 140 § 131

§ 131. Licenses to carry firearms; Class A and B; conditions and restrictions

Effective: February 1, 2018 to December 31, 2020
Currentness

All licenses to carry firearms shall be designated Class A or Class B, and the issuance and possession of any such license shall be subject to the following conditions and restrictions:

(a) A Class A license shall entitle a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor, for all lawful purposes; provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it deems proper. A violation of a restriction imposed by the licensing authority under the provisions of this paragraph shall be cause for suspension or revocation and shall, unless otherwise provided, be punished by a fine of not less than $1,000 nor more than $10,000; provided, however, that the provisions of section 10 of chapter 269 shall not apply to such violation.

The colonel of state police may, after an investigation, grant a Class A license to a club or facility with an on-site shooting range or gallery, which club is incorporated under the laws of the commonwealth for the possession, storage and use of large capacity weapons, ammunition therefor and large capacity feeding devices for use with such weapons on the premises of such club; provided, however, that not less than one shareholder of such club shall be qualified and suitable to be issued such license; and provided further, that such large capacity weapons and ammunition feeding devices may be used under such Class A club license only by such members that possess a valid firearm identification card issued under section 129B or a valid Class A or Class B license to carry firearms, or by such other persons that the club permits while under the direct supervision of a certified firearms safety instructor or club member who, in the case of a large capacity firearm, possesses a valid Class A license to carry firearms or, in the case of a large capacity rifle or shotgun, possesses a valid Class A or Class B license to carry firearms. Such club shall not permit shooting at targets that depict human figures, human effigies, human silhouettes or any human images thereof, except by public safety personnel performing in line with their official duties.

No large capacity weapon or large capacity feeding device shall be removed from the premises except for the purposes of: (i) transferring such firearm or feeding device to a licensed dealer; (ii) transporting such firearm or feeding device to a licensed gunsmith for repair; (iii) target, trap or skeet shooting on the premises of another club incorporated under the laws of the commonwealth and for transporting thereto; (iv) attending an exhibition or educational project or event that is sponsored by, conducted under the supervision of or approved by a public law enforcement agency or a nationally or state recognized entity that promotes proficiency in or education about semiautomatic weapons and for transporting

Exhibit 84
00108

thereto and therefrom; (v) hunting in accordance with the provisions of chapter 131; or (vi) surrendering such firearm or feeding device under the provisions of section 129D. Any large capacity weapon or large capacity feeding device kept on the premises of a lawfully incorporated shooting club shall, when not in use, be secured in a locked container, and shall be unloaded during any lawful transport. The clerk or other corporate officer of such club shall annually file a report with the colonel of state police and the commissioner of the department of criminal justice information services listing all large capacity weapons and large capacity feeding devices owned or possessed under such license. The colonel of state police or his designee, shall have the right to inspect all firearms owned or possessed by such club upon request during regular business hours and said colonel may revoke or suspend a club license for a violation of any provision of this chapter or chapter 269 relative to the ownership, use or possession of large capacity weapons or large capacity feeding devices.

(b) A Class B license shall entitle a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) non-large capacity firearms and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of such firearm as the licensing authority deems proper; provided, however, that a Class B license shall not entitle the holder thereof to carry or possess a loaded firearm in a concealed manner in any public way or place; and provided further, that a Class B license shall not entitle the holder thereof to possess a large capacity firearm, except under a Class A club license issued under this section or under the direct supervision of a holder of a valid Class A license at an incorporated shooting club or licensed shooting range; and (ii) rifles and shotguns, including large capacity rifles and shotguns, and feeding devices and ammunition therefor, for all lawful purposes; provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as he deems proper. A violation of a restriction provided under this paragraph, or a restriction imposed by the licensing authority under the provisions of this paragraph, shall be cause for suspension or revocation and shall, unless otherwise provided, be punished by a fine of not less than $1,000 nor more than $10,000; provided, however, that the provisions of section 10 of chapter 269 shall not apply to such violation.

A Class B license shall not be a valid license for the purpose of complying with any provision under this chapter governing the purchase, sale, lease, rental or transfer of any weapon or ammunition feeding device if such weapon is a large capacity firearm or if such ammunition feeding device is a large capacity feeding device for use with a large capacity firearm, both as defined in section 121.

(c) Either a Class A or Class B license shall be valid for the purpose of owning, possessing, purchasing and transferring non-large capacity rifles and shotguns, and for purchasing and possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate, consistent with the entitlements conferred by a firearm identification card issued under section 129B.

(d) Any person residing or having a place of business within the jurisdiction of the licensing authority or any law enforcement officer employed by the licensing authority or any person residing in an area of exclusive federal jurisdiction located within a city or town may submit to the licensing authority or the colonel of state police, an application for a Class A license to carry firearms, or renewal of the same, which the licensing authority or the colonel may issue if it appears that the applicant is not a prohibited person, as set forth in this section, to be issued a license and has good reason to fear injury to the applicant or the applicant's property or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to the restrictions expressed or authorized under this section.

A prohibited person shall be a person who:

(i) has, in a court of the commonwealth, been convicted or adjudicated a youthful offender or delinquent child, both as defined in section 52 of chapter 119, for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment

Exhibit 84
00109

Case 3:17-cv-01017-BEN-JLB  Document 50-2  Filed 03/05/18  PageID.4524  Page 110 of
147
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

for more than 2 years ; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in section 1 of chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

(ii) has, in any other state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in said section 1 of said chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

(iii) is or has been (A) committed to a hospital or institution for mental illness, alcohol or substance abuse, except a commitment pursuant to sections 35 or 36C of chapter 123, unless after 5 years from the date of the confinement, the applicant submits with the application an affidavit of a licensed physician or clinical psychologist attesting that such physician or psychologist is familiar with the applicant's mental illness, alcohol or substance abuse and that in the physician's or psychologist's opinion, the applicant is not disabled by a mental illness, alcohol or substance abuse in a manner that shall prevent the applicant from possessing a firearm, rifle or shotgun; (B) committed by a court order to a hospital or institution for mental illness, unless the applicant was granted a petition for relief of the court order pursuant to said section 36C of said chapter 123 and submits a copy of the court order with the application; (C) subject to an order of the probate court appointing a guardian or conservator for a incapacitated person on the grounds that the applicant lacks the mental capacity to contract or manage the applicant's affairs, unless the applicant was granted a petition for relief of the order of the probate court pursuant to section 56C of chapter 215 and submits a copy of the order of the probate court with the application; or (D) found to be a person with an alcohol use disorder or substance use disorder or both and committed pursuant to said section 35 of said chapter 123, unless the applicant was granted a petition for relief of the court order pursuant to said section 35 and submits a copy of the court order with the application;

(iv) is younger than 21 years of age at the time of the application;

(v) is an alien who does not maintain lawful permanent residency;

(vi) is currently subject to: (A) an order for suspension or surrender issued pursuant to sections 3B or 3C of chapter 209A or a similar order issued by another jurisdiction; or (B) a permanent or temporary protection order issued pursuant to said chapter 209A or a similar order issued by another jurisdiction, including any order described in 18 U.S.C. 922(g)(8);

(vii) is currently the subject of an outstanding arrest warrant in any state or federal jurisdiction;

(viii) has been discharged from the armed forces of the United States under dishonorable conditions;

(ix) is a fugitive from justice; or

Exhibit 84

00110

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4525   Page 111 of 147

(x) having been a citizen of the United States, has renounced that citizenship.

The licensing authority may deny the application or renewal of a license to carry, or suspend or revoke a license issued under this section if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable to be issued or to continue to hold a license to carry. A determination of unsuitability shall be based on: (i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety. Upon denial of an application or renewal of a license based on a determination of unsuitability, the licensing authority shall notify the applicant in writing setting forth the specific reasons for the determination in accordance with paragraph (e). Upon revoking or suspending a license based on a determination of unsuitability, the licensing authority shall notify the holder of a license in writing setting forth the specific reasons for the determination in accordance with paragraph (f). The determination of unsuitability shall be subject to judicial review under said paragraph (f).

(e) Within seven days of the receipt of a completed application for a license to carry or possess firearms, or renewal of same, the licensing authority shall forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police, who shall within 30 days advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a license to carry or possess firearms. In searching for any disqualifying history of the applicant, the colonel shall utilize, or cause to be utilized, files maintained by the department of probation and statewide and nationwide criminal justice, warrant and protection order information systems and files including, but not limited to, the National Instant Criminal Background Check System. The colonel shall inquire of the commissioner of the department of mental health relative to whether the applicant is disqualified from being so licensed. If the information available to the colonel does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law, he shall certify such fact, in writing, to the licensing authority within said 30 day period.

The licensing authority may also make inquiries concerning the applicant to: (i) the commissioner of the department of criminal justice information services relative to any disqualifying condition and records of purchases, sales, rentals, leases and transfers of weapons or ammunition concerning the applicant; (ii) the commissioner of probation relative to any record contained within the department of probation or the statewide domestic violence record keeping system concerning the applicant; and (iii) the commissioner of the department of mental health relative to whether the applicant is a suitable person to possess firearms or is not a suitable person to possess firearms. The director or commissioner to whom the licensing authority makes such inquiry shall provide prompt and full cooperation for that purpose in any investigation of the applicant.

The licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing; provided, however, that no such license shall be issued unless the colonel has certified, in writing, that the information available to him does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law.

The licensing authority shall provide to the applicant a receipt indicating that it received the application. The receipt shall be provided to the applicant within 7 days by mail if the application was received by mail or immediately if the application was made in person; provided, however, that the receipt shall include the applicant's name and address; current license number and license expiration date, if any; the date the licensing authority received the application; the name, address and telephone number of the licensing authority; the agent of the licensing authority that received the application; the type of application; and whether the application is for a new license or a renewal of an existing license.

Exhibit 84
00111

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4526   Page 112 of
147
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

The licensing authority shall keep a copy of the receipt for not less than 1 year and shall furnish a copy to the applicant if requested by the applicant.

(f) A license issued under this section shall be revoked or suspended by the licensing authority, or his designee, upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed. A license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license. Any revocation or suspension of a license shall be in writing and shall state the reasons therefor. Upon revocation or suspension, the licensing authority shall take possession of such license and the person whose license is so revoked or suspended shall take all actions required under the provisions of section 129D. No appeal or post-judgment motion shall operate to stay such revocation or suspension. Notices of revocation and suspension shall be forwarded to the commissioner of the department of criminal justice information services and the commissioner of probation and shall be included in the criminal justice information system. A revoked or suspended license may be reinstated only upon the termination of all disqualifying conditions, if any.

Any applicant or holder aggrieved by a denial, revocation, suspension or restriction placed on a license, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receiving notice of the denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority shall respond to the applicant or, in the case of a restriction, any time after a restriction is placed on the license pursuant to this section, file a petition to obtain judicial review in the district court having jurisdiction in the city or town in which the applicant filed the application or in which the license was issued. If after a hearing a justice of the court finds that there was no reasonable ground for denying, suspending, revoking or restricting the license and that the petitioner is not prohibited by law from possessing a license, the justice may order a license to be issued or reinstated to the petitioner or may order the licensing authority to remove certain restrictions placed on the license.

(g) A license shall be in a standard form provided by the executive director of the criminal history systems board in a size and shape equivalent to that of a license to operate motor vehicles issued by the registry of motor vehicles pursuant to section 8 of chapter 90 and shall contain a license number which shall clearly indicate whether such number identifies a Class A or Class B license, the name, address, photograph, fingerprint, place and date of birth, height, weight, hair color, eye color and signature of the licensee. Such license shall be marked "License to Carry Firearms" and shall clearly indicate whether the license is Class A or Class B. The application for such license shall be made in a standard form provided by the executive director of the criminal history systems board, which form shall require the applicant to affirmatively state under the pains and penalties of perjury that such applicant is not disqualified on any of the grounds enumerated above from being issued such license.

(h) Any person who knowingly files an application containing false information shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a house of correction, or by both such fine and imprisonment.

(i) A license to carry or possess firearms shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue and shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue; provided, however, that, if the licensee applied for renewal before the license expired, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is approved or denied. If a licensee is on active duty with the armed forces of the United States on the expiration date of the license, the license shall remain valid until the licensee is released from active duty and for a period not less than 180 days following the release; provided, however, that, if the licensee applied for renewal prior to the end of that period, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is

Exhibit 84
00112

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4527   Page 113 of
147
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

approved or denied. An application for renewal of a Class B license filed before the license has expired shall not extend the license beyond the stated expiration date; provided, that the Class B license shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue. Any renewal thereof shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years but not more than 6 years from the effective date of such license. Any license issued to an applicant born on February 29 shall expire on March 1. The fee for the application shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited into the general fund of the commonwealth and not less than $50,000 of the funds deposited into the General Fund shall be allocated to the Firearm Licensing Review Board, established in section 130B, for its operations and that any funds not expended by said board for its operations shall revert back to the General Fund; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund. For active and retired law enforcement officials, or local, state, or federal government entities acting on their behalf, the fee for the application shall be set at $25, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $12.50 of the fee, and $12.50 of the fee shall be deposited into the general fund of the commonwealth. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit such portion of the license application fee into the Firearms Record Keeping Fund quarterly, not later than January 1, April 1, July 1 and October 1 of each year. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit quarterly such portion of the license application fee as is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year. For the purposes of section 10 of chapter 269, an expired license to carry firearms shall be deemed to be valid for a period not to exceed 90 days beyond the stated date of expiration, unless such license to carry firearms has been revoked.

Any person over the age of 70 and any law enforcement officer applying for a license to carry firearms through his employing agency shall be exempt from the requirement of paying a renewal fee for a Class A or Class B license to carry.

(j)(1) No license shall be required for the carrying or possession of a firearm known as a detonator and commonly used on vehicles as a signaling and marking device, when carried or possessed for such signaling or marking purposes.

(2) No license to carry shall be required for the possession of an unloaded large capacity rifle or shotgun or an unloaded feeding device therefor by a veteran's organization chartered by the Congress of the United States, chartered by the commonwealth or recognized as a nonprofit tax-exempt organization by the Internal Revenue Service, or by the members of any such organization when on official parade duty or during ceremonial occasions. For purposes of this subparagraph, an "unloaded large capacity rifle or shotgun" and an "unloaded feeding device therefor" shall include any large capacity rifle, shotgun or feeding device therefor loaded with a blank cartridge or blank cartridges, so-called, which contain no projectile within such blank or blanks or within the bore or chamber of such large capacity rifle or shotgun.

(k) Whoever knowingly issues a license in violation of this section shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a jail or house of correction, or by both such fine and imprisonment.

(l) The executive director of the criminal history systems board shall send electronically or by first class mail to the holder of each such license to carry firearms, a notice of the expiration of such license not less than 90 days prior to such expiration and shall enclose therein a form for the renewal of such license. The form for renewal shall include an affidavit in which the applicant shall verify that the applicant has not lost any firearms or had any firearms stolen from the applicant since the date of the applicant's last renewal or issuance. The taking of fingerprints shall not be required in issuing the renewal of a license if the renewal applicant's fingerprints are on file with the department of the state

Exhibit 84
00113

police. Any licensee shall notify, in writing, the licensing authority who issued said license, the chief of police into whose jurisdiction the licensee moves and the executive director of the criminal history systems board of any change of address. Such notification shall be made by certified mail within 30 days of its occurrence. Failure to so notify shall be cause for revocation or suspension of said license. The commissioner of criminal justice information services shall provide electronic notice of expiration only upon the request of a cardholder. A request for electronic notice of expiration shall be forwarded to the department on a form furnished by the commissioner. Any electronic address maintained by the department for the purpose of providing electronic notice of expiration shall be considered a firearms record and shall not be disclosed except as provided in section 10 of chapter 66.

(m) Notwithstanding the provisions of section 10 of chapter 269, any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, not including licenses that remain valid under paragraph (i) because the licensee applied for renewal before the license expired, but who shall not be disqualified from renewal upon application therefor pursuant to this section, shall be subject to a civil fine of not less than $100 nor more than $5,000 and the provisions of section 10 of chapter 269 shall not apply; provided, however, that the exemption from the provisions of said section 10 of said chapter 269 provided herein shall not apply if: (i) such license has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; (ii) revocation or suspension of such license is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) an application for renewal of such license has been denied. Any law enforcement officer who discovers a person to be in possession of a firearm, rifle or shotgun after such person's license has expired, meaning after 90 days beyond the stated expiration date on the license, has been revoked or suspended, solely for failure to give notice of a change of address, shall confiscate such firearm, rifle or shotgun and the expired or suspended license then in possession and such officer, shall forward such license to the licensing authority by whom it was issued as soon as practicable. The officer shall, at the time of confiscation, provide to the person whose firearm, rifle or shotgun has been confiscated, a written inventory and receipt for all firearms, rifles or shotguns confiscated and the officer and his employer shall exercise due care in the handling, holding and storage of these items. Any confiscated weapon shall be returned to the owner upon the renewal or reinstatement of such expired or suspended license within one year of such confiscation or may be otherwise disposed of in accordance with the provisions of section 129D. The provisions of this paragraph shall not apply if such person has a valid license to carry firearms issued under section 131F.

(n) Upon issuance of a license to carry or possess firearms under this section, the licensing authority shall forward a copy of such approved application and license to the executive director of the criminal history systems board, who shall inform the licensing authority forthwith of the existence of any disqualifying condition discovered or occurring subsequent to the issuance of a license under this section.

(*o*) No person shall be issued a license to carry or possess a machine gun in the commonwealth, except that a licensing authority or the colonel of state police may issue a machine gun license to:

(i) a firearm instructor certified by the municipal police training committee for the sole purpose of firearm instruction to police personnel;

(ii) a bona fide collector of firearms upon application or upon application for renewal of such license.

<[ Second sentence of paragraph (o) added by 2017, 110, Sec. 21 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

Exhibit 84

00114

Clauses (i) and (ii) of this paragraph shall not apply to bump stocks and trigger cranks.


(p) The executive director of the criminal history systems board shall promulgate regulations in accordance with chapter 30A to establish criteria for persons who shall be classified as bona fide collectors of firearms.


(q) Nothing in this section shall authorize the purchase, possession or transfer of any weapon, ammunition or feeding device that is, or in such manner that is, prohibited by state or federal law.


(r) The secretary of the executive office of public safety or his designee may promulgate regulations to carry out the purposes of this section.

**Credits**
Amended by St.1936, c. 302; St.1951, c. 201; St.1953, c. 319, § 20; St.1953, c. 454; St.1957, c. 688, § 15; St.1959, c. 296, § 6; St.1960, c. 293; St.1969, c. 799, § 11; St.1972, c. 415; St.1973, c. 138; St.1973, c. 892, § 7; St.1974, c. 312; St.1974, c. 649, § 1; St.1975, c. 4, § 1; St.1975, c. 113, § 1; St.1984, c. 420, § 2; St.1986, c. 481, § 2; St.1987, c. 465, § 33; St.1994, c. 24, § 3; St.1996, c. 151, §§ 325 to 329; St.1996, c. 200, § 28; St.1998, c. 180, § 41; St.1998, c. 358, §§ 6 to 9; St.2002, c. 196, § 22; St.2002, c. 513, § 2; St.2003, c. 26, § 429, eff. July 1, 2003; St.2003, c. 46, § 103, eff. July 31, 2003; St.2004, c. 150, §§ 10 to 16, eff. Sept. 13, 2004; St.2008, c. 224, eff. Oct. 29, 2008; St.2010, c. 256, § 97, eff. Nov. 4, 2010; St.2010, c. 466, § 3, eff. April 14, 2011; St.2011, c. 9, §§ 16, 17, eff. April 11, 2011; St.2014, c. 284, §§ 48, 50, 51, 53, 56, 57, eff. Jan. 1, 2015; St.2014, c. 284, § 55, eff. Aug. 13, 2014; St.2017, c. 110, § 21, eff. Feb. 1, 2018.


Notes of Decisions (174)

M.G.L.A. 140 § 131, MA ST 140 § 131
Current through the 2017 1st Annual Session

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 84
00115

8

# EXHIBIT 85

Exhibit 85
00116

New Jersey Statutes Annotated
   Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)
      Subtitle 2. Definition of Specific Offenses
         Part 5. Offenses Against Public Order, Health and Decency
            Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-1

2C:39-1. Definitions

Effective: December 23, 2002 to January 15, 2018

Definitions. The following definitions apply to this chapter and to chapter 58:

a. "Antique firearm" means any rifle or shotgun and "antique cannon" means a destructive device defined in paragraph (3) of subsection c. of this section, if the rifle, shotgun or destructive device, as the case may be, is incapable of being fired or discharged, or which does not fire fixed ammunition, regardless of date of manufacture, or was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

b. "Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

c. "Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one-quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than 60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line- throwing, safety or similar purposes.

d. "Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

e. "Explosive" means any chemical compound or mixture that is commonly used or is possessed for the purpose of producing an explosion and which contains any oxidizing and combustible materials or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion or by detonation of any part of the compound or mixture may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects. The term shall not include small arms ammunition, or explosives in the form prescribed by the official United States Pharmacopoeia.

Exhibit 85
00117

Sterling MK-6, MK-7 and SAR types

Steyr A.U.G. semi-automatic firearms

USAS 12 semi-automatic type shotgun

Uzi type semi-automatic firearms

Valmet M62, M71S, M76, or M78 type semi-automatic firearms

Weaver Arm Nighthawk.

(2) Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

(3) A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

(4) A semi-automatic rifle with a fixed magazine capacity exceeding 15 rounds.

(5) A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

x. "Semi-automatic" means a firearm which fires a single projectile for each single pull of the trigger and is self-reloading or automatically chambers a round, cartridge, or bullet.

y. "Large capacity ammunition magazine" means a box, drum, tube or other container which is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm.

z. "Pistol grip" means a well-defined handle, similar to that found on a handgun, that protrudes conspicuously beneath the action of the weapon, and which permits the shotgun to be held and fired with one hand.

aa. "Antique handgun" means a handgun manufactured before 1898, or a replica thereof, which is recognized as being historical in nature or of historical significance and either (1) utilizes a match, friction, flint, or percussion ignition, or which utilizes a pin-fire cartridge in which the pin is part of the cartridge or (2) does not fire fixed ammunition or for which cartridge ammunition is not commercially available.

bb. "Trigger lock" means a commercially available device approved by the Superintendent of State Police which is operated with a key or combination lock that prevents a firearm from being discharged while the device is attached to the firearm. It may include, but need not be limited to, devices that obstruct the barrel or cylinder of the firearm, as well as devices that immobilize the trigger.

Exhibit 85

00118

New Jersey Statutes Annotated
Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)
Subtitle 2. Definition of Specific Offenses
Part 5. Offenses Against Public Order, Health and Decency
Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-3

2C:39-3. Prohibited weapons and devices

Effective: September 3, 2003 to January 15, 2018

Prohibited Weapons and Devices.

**a. Destructive devices.** Any person who knowingly has in his possession any destructive device is guilty of a crime of the third degree.

**b. Sawed-off shotguns.** Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree.

**c. Silencers.** Any person who knowingly has in his possession any firearm silencer is guilty of a crime of the fourth degree.

**d. Defaced firearms.** Any person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

**e. Certain weapons.** Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree.

**f. Dum-dum or body armor penetrating bullets.** (1) Any person, other than a law enforcement officer or persons engaged in activities pursuant to subsection f. of N.J.S.2C:39-6, who knowingly has in his possession any hollow nose or dum-dum bullet, or (2) any person, other than a collector of firearms or ammunition as curios or relics as defined in Title 18, United States Code, section 921 (a) (13) and has in his possession a valid Collector of Curios and Relics License issued by the Bureau of Alcohol, Tobacco and Firearms, who knowingly has in his possession any body armor breaching or penetrating ammunition, which means: (a) ammunition primarily designed for use in a handgun, and (b) which is comprised of a bullet whose core or jacket, if the jacket is thicker than .025 of an inch, is made of tungsten carbide, or hard bronze, or other material which is harder than a rating of 72 or greater on the Rockwell B. Hardness Scale, and (c) is therefore capable of breaching or penetrating body armor, is guilty of a crime of the fourth degree. For purposes of this section, a collector may possess not more than three examples of each distinctive variation of the ammunition described above. A distinctive variation includes a different head stamp, composition, design, or color.

Exhibit 85
00119

**g. Exceptions.** (1) Nothing in subsection a., b., c. , d., e., f., j. or k. of this section shall apply to any member of the Armed Forces of the United States or the National Guard, or except as otherwise provided, to any law enforcement officer while actually on duty or traveling to or from an authorized place of duty, provided that his possession of the prohibited weapon or device has been duly authorized under the applicable laws, regulations or military or law enforcement orders. Nothing in subsection h. of this section shall apply to any law enforcement officer who is exempted from the provisions of that subsection by the Attorney General. Nothing in this section shall apply to the possession of any weapon or device by a law enforcement officer who has confiscated, seized or otherwise taken possession of said weapon or device as evidence of the commission of a crime or because he believed it to be possessed illegally by the person from whom it was taken, provided that said law enforcement officer promptly notifies his superiors of his possession of such prohibited weapon or device.

(2) a. Nothing in subsection f. (1) shall be construed to prevent a person from keeping such ammunition at his dwelling, premises or other land owned or possessed by him, or from carrying such ammunition from the place of purchase to said dwelling or land, nor shall subsection f. (1) be construed to prevent any licensed retail or wholesale firearms dealer from possessing such ammunition at its licensed premises, provided that the seller of any such ammunition shall maintain a record of the name, age and place of residence of any purchaser who is not a licensed dealer, together with the date of sale and quantity of ammunition sold.

b. Nothing in subsection f. (1) shall be construed to prevent a designated employee or designated licensed agent for a nuclear power plant under the license of the Nuclear Regulatory Commission from possessing hollow nose ammunition while in the actual performance of his official duties, if the federal licensee certifies that the designated employee or designated licensed agent is assigned to perform site protection, guard, armed response or armed escort duties and is appropriately trained and qualified, as prescribed by federal regulation, to perform those duties.

(3) Nothing in paragraph (2) of subsection f. or in subsection j. shall be construed to prevent any licensed retail or wholesale firearms dealer from possessing that ammunition or large capacity ammunition magazine at its licensed premises for sale or disposition to another licensed dealer, the Armed Forces of the United States or the National Guard, or to a law enforcement agency, provided that the seller maintains a record of any sale or disposition to a law enforcement agency. The record shall include the name of the purchasing agency, together with written authorization of the chief of police or highest ranking official of the agency, the name and rank of the purchasing law enforcement officer, if applicable, and the date, time and amount of ammunition sold or otherwise disposed. A copy of this record shall be forwarded by the seller to the Superintendent of the Division of State Police within 48 hours of the sale or disposition.

(4) Nothing in subsection a. of this section shall be construed to apply to antique cannons as exempted in subsection d. of N.J.S.2C:39-6.

(5) Nothing in subsection c. of this section shall be construed to apply to any person who is specifically identified in a special deer management permit issued by the Division of Fish and Wildlife to utilize a firearm silencer as part of an alternative deer control method implemented in accordance with a special deer management permit issued pursuant to section 4 of P.L.2000, c. 46 (C.23:4-42.6), while the person is in the actual performance of the permitted alternative deer control method and while going to and from the place where the permitted alternative deer control method is being utilized. This exception shall not, however, otherwise apply to any person to authorize the purchase or possession of a firearm silencer.

Exhibit 85

00120

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4535   Page 121 of
147
2C:39-3. Prohibited weapons and devices, NJ ST 2C:39-3

**h. Stun guns.** Any person who knowingly has in his possession any stun gun is guilty of a crime of the fourth degree.

i. Nothing in subsection e. of this section shall be construed to prevent any guard in the employ of a private security company, who is licensed to carry a firearm, from the possession of a nightstick when in the actual performance of his official duties, provided that he has satisfactorily completed a training course approved by the Police Training Commission in the use of a nightstick.

j. Any person who knowingly has in his possession a large capacity ammunition magazine is guilty of a crime of the fourth degree unless the person has registered an assault firearm pursuant to section 11 of P.L.1990, c. 32 (C.2C:58-12) and the magazine is maintained and used in connection with participation in competitive shooting matches sanctioned by the Director of Civilian Marksmanship of the United States Department of the Army.

**k. Handcuffs.** Any person who knowingly has in his possession handcuffs as defined in P.L.1991, c. 437 (C.2C:39-9.2), under circumstances not manifestly appropriate for such lawful uses as handcuffs may have, is guilty of a disorderly persons offense. A law enforcement officer shall confiscate handcuffs possessed in violation of the law.

**Credits**
L.1978, c. 95, § 2C:39-3, eff. Sept. 1, 1979. Amended by L.1979, c. 179, § 2, eff. Sept. 1, 1979; L.1983, c. 58, § 1, eff. Feb. 7, 1983; L.1983, c. 479, § 2, eff. Jan. 12, 1984; L.1985, c. 360, § 2, eff. Nov. 12, 1985; L.1987, c. 228, § 2, eff. July 30, 1987; L.1989, c. 11, § 1, eff. Feb. 1, 1989; L.1990, c. 32, § 10, eff. May 30, 1990; L.1991, c. 437, § 1, eff. Jan. 18, 1992; L.1999, c. 233, § 2, eff. Jan. 1, 2000; L.2000, c. 46, § 5, eff. June 30, 2000; L.2003, c. 168, § 1, eff. Sept. 3, 2003.

**Editors' Notes**

### SENATE LAW, PUBLIC SAFETY AND DEFENSE COMMITTEE STATEMENT

**Senate, No. 650--L.1989, c. 11**

Senate 650 permits a guard who is licensed to carry a firearm and is employed by a private security company to lawfully carry a nightstick when in the actual performance of his official duties, provided that he has satisfactorily completed a training course.

The bill requires that a training course, approved by the Police Training Commission, in the use of a nightstick must be completed before a private security guard licensed to carry a firearm is authorized to carry a nightstick while in the performance of his official duties.

This bill was pre-filed for introduction in the 1988 session pending technical review. As reported, the bill includes the changes required by technical review which has been performed.

N. J. S. A. 2C:39-3, NJ ST 2C:39-3
Current with 2017 laws and resolutions through L.2017, c. 323, 325-332, 334-372, 379-380 and J.R. No. 24

---

**End of Document**                                                     © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 85
00121

<table>
<tr><td>
New Jersey Statutes Annotated<br>
  Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)<br>
    Subtitle 2. Definition of Specific Offenses<br>
      Part 5. Offenses Against Public Order, Health and Decency<br>
        Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)
</td></tr>
</table>

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-9

2C:39-9. Manufacture, transport, disposition and defacement
of weapons and dangerous instruments and appliances

Effective: November 1, 2013 to January 15, 2018

Manufacture, Transport, Disposition and Defacement of Weapons and Dangerous Instruments and Appliances. a. Machine guns. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any machine gun without being registered or licensed to do so as provided in chapter 58 is guilty of a crime of the third degree.

b. Sawed-off shotguns. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any sawed-off shotgun is guilty of a crime of the third degree.

c. Firearm silencers. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any firearm silencer is guilty of a crime of the fourth degree.

d. Weapons. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any weapon, including gravity knives, switchblade knives, ballistic knives, daggers, dirks, stilettos, billies, blackjacks, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings, or, except as otherwise provided in subsection i. of this section, in the case of firearms if he is not licensed or registered to do so as provided in chapter 58, is guilty of a crime of the fourth degree. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any weapon or other device which projects, releases or emits tear gas or other substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air, which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel or the device is for the purpose of personal self-defense, is pocket-sized and contains not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting serious bodily injury, or other than to be used by any person permitted to possess such weapon or device under the provisions of subsection d. of N.J.S. 2C:39-5, which is intended for use by financial and other business institutions as part of an integrated security system, placed at fixed locations, for the protection of money and property, by the duly authorized personnel of those institutions, is guilty of a crime of the fourth degree.

e. Defaced firearms. Any person who defaces any firearm is guilty of a crime of the third degree. Any person who knowingly buys, receives, disposes of or conceals a defaced firearm, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

Exhibit 85
00122

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4537   Page 123 of
147
2C:39-9. Manufacture, transport, disposition and defacement of..., NJ ST 2C:39-9

f. (1) Any person who manufactures, causes to be manufactured, transports, ships, sells, or disposes of any bullet, which is primarily designed for use in a handgun, and which is comprised of a bullet whose core or jacket, if the jacket is thicker than .025 of an inch, is made of tungsten carbide, or hard bronze, or other material which is harder than a rating of 72 or greater on the Rockwell B. Hardness Scale, and is therefore capable of breaching or penetrating body armor and which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel, is guilty of a crime of the fourth degree.

(2) Nothing in this subsection shall be construed to prevent a licensed collector of ammunition as defined in paragraph (2) of subsection f. of N.J.S.2C:39-3 from transporting the bullets defined in paragraph (1) of this subsection from (a) any licensed retail or wholesale firearms dealer's place of business to the collector's dwelling, premises, or other land owned or possessed by him, or (b) to or from the collector's dwelling, premises or other land owned or possessed by him to any gun show for the purposes of display, sale, trade, or transfer between collectors, or (c) to or from the collector's dwelling, premises or other land owned or possessed by him to any rifle or pistol club organized in accordance with the rules prescribed by the National Board for the Promotion of Rifle Practice; provided that the club has filed a copy of its charter with the superintendent of the State Police and annually submits a list of its members to the superintendent, and provided further that the ammunition being transported shall be carried not loaded in any firearm and contained in a closed and fastened case, gun box, or locked in the trunk of the automobile in which it is being transported, and the course of travel shall include only such deviations as are reasonably necessary under the circumstances.

g. Assault firearms. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of an assault firearm without being registered or licensed to do so pursuant to N.J.S.2C:58-1 et seq. is guilty of a crime of the third degree.

h. Large capacity ammunition magazines. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of a large capacity ammunition magazine which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel is guilty of a crime of the fourth degree.

i. Transporting firearms into this State for an unlawful sale or transfer. Any person who knowingly transports, ships or otherwise brings into this State any firearm for the purpose of unlawfully selling, transferring, giving, assigning or otherwise disposing of that firearm to another individual is guilty of a crime of the second degree. Any motor vehicle used by a person to transport, ship, or otherwise bring a firearm into this State for unlawful sale or transfer shall be subject to forfeiture in accordance with the provisions of N.J.S.2C:64-1 et seq.; provided however, this forfeiture provision shall not apply to innocent owners, nor shall it affect the rights of a holder of a valid lien.

The temporary transfer of a firearm shall not constitute a violation of this subsection if [1] that firearm is transferred:

(1) while hunting or target shooting in accordance with the provisions of section 1 of P.L.1992, c. 74 (C.2C:58-3.1);

(2) for shooting competitions sponsored by a licensed dealer, law enforcement agency, legally recognized military organization, or a rifle or pistol club which has filed a copy of its charter with the superintendent in accordance with the provisions of section 1 of P.L.1992, c. 74 (C.2C:58-3.1); or

Exhibit 85
00123

(3) for participation in a training course conducted by a certified instructor in accordance with the provisions of section 1 of P.L.1997, c. 375 (C.2C:58-3.2).

The transfer of any firearm that uses air or carbon dioxide to expel a projectile; or the transfer of an antique firearm shall not constitute a violation of this subsection.

**Credits**

L.1978, c. 95, § 2C:39-9, eff. Sept. 1, 1979. Amended by L.1979, c. 179, § 7, eff. Sept. 1, 1979; L.1980, c. 108, § 1, eff. Sept. 11, 1980; L.1981, c. 480, § 2, eff. Jan. 12, 1982; L.1983, c. 58, § 2, eff. Feb. 7, 1983; L.1987, c. 228, § 3, eff. July 30, 1987; L.1990, c. 32, § 3, eff. May 30, 1990; L.1999, c. 233, § 3, eff. Jan. 1, 2000; L.2007, c. 298, § 1, eff. April 1, 2008; L.2013, c. 111, § 1, eff. Nov. 1, 2013.

Footnotes

1    So in original.
N. J. S. A. 2C:39-9, NJ ST 2C:39-9
Current with 2017 laws and resolutions through L.2017, c. 323, 325-332, 334-372, 379-380 and J.R. No. 24

---

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 85
00124

# EXHIBIT 86

Exhibit 86
00125

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedNegative Treatment Reconsidered by New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 2nd Cir.(Conn.), Oct. 19, 2015

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

> McKinney's Consolidated Laws of New York Annotated
>> Penal Law (Refs & Annos)
>>> Chapter 40. Of the Consolidated Laws (Refs & Annos)
>>>> Part Three. Specific Offenses
>>>>> Title P. Offenses Against Public Safety
>>>>>> Article 265. Firearms and Other Dangerous Weapons (Refs & Annos)

McKinney's Penal Law § 265.00

§ 265.00 Definitions

Effective: July 5, 2013
Currentness

As used in this article and in article four hundred, the following terms shall mean and include:

1. "Machine-gun" means a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

2. "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

3. "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm.

4. "Switchblade knife" means any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

5. "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

Exhibit 86
00126

5-a. "Pilum ballistic knife" means any knife which has a blade which can be projected from the handle by hand pressure applied to a button, lever, spring or other device in the handle of the knife.

5-b. "Metal knuckle knife" means a weapon that, when closed, cannot function as a set of plastic knuckles or metal knuckles, nor as a knife and when open, can function as both a set of plastic knuckles or metal knuckles as well as a knife.

5-c. "Automatic knife" includes a stiletto, a switchblade knife, a gravity knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife.

6. "Dispose of" means to dispose of, give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

7. "Deface" means to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

8. "Gunsmith" means any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any firearm, large capacity ammunition feeding device or machine-gun.

9. "Dealer in firearms" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any assault weapon, large capacity ammunition feeding device, pistol or revolver.

10. "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

11. "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

12. "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

13. "Cane Sword" means a cane or swagger stick having concealed within it a blade that may be used as a sword or stiletto.

Exhibit 86
00127

14. [See also subd. 14 below] "Chuka stick" means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks.

14. [See also subd. 14 above] "Antique firearm" means:

Any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade.

15. "Loaded firearm" means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.

15-a. "Electronic dart gun" means any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile.

15-b. "Kung Fu star" means a disc-like object with sharpened points on the circumference thereof and is designed for use primarily as a weapon to be thrown.

15-c. "Electronic stun gun" means any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person.

16. "Certified not suitable to possess a self-defense spray device, a rifle or shotgun" means that the director or physician in charge of any hospital or institution for mental illness, public or private, has certified to the superintendent of state police or to any organized police department of a county, city, town or village of this state, that a person who has been judicially adjudicated incompetent, or who has been confined to such institution for mental illness pursuant to judicial authority, is not suitable to possess a self-defense spray device, as defined in section 265.20 of this article, or a rifle or shotgun.

17. "Serious offense" means (a) any of the following offenses defined in the former penal law as in force and effect immediately prior to September first, nineteen hundred sixty-seven: illegally using, carrying or possessing a pistol or other dangerous weapon; making or possessing burglar's instruments; buying or receiving stolen property; unlawful entry of a building; aiding escape from prison; that kind of disorderly conduct defined in subdivisions six and eight of section seven hundred twenty-two of such former penal law; violations of sections four hundred eighty-three, four hundred eighty-three-b, four hundred eighty-four-h and article one hundred six of such former penal law; that kind of criminal sexual act or rape which was designated as a misdemeanor; violation of section seventeen hundred forty-seven-d and seventeen hundred forty-seven-e of such former penal law; any violation of any provision of article thirty-three of the public health law relating to narcotic drugs which was defined as a misdemeanor by section seventeen hundred fifty-one-a of such former penal law, and any violation of any provision of article thirty-three-A of the public health law relating to depressant and stimulant drugs which was defined as a misdemeanor by section seventeen hundred forty-seven-b of such former penal law.

Exhibit 86
00128

(b) [As amended by L.1999, c. 635, § 11. See, also, par. (b) below.] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the fourth degree; stalking in the third degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

(b) [As amended by L.1999, c. 635, § 15. See, also, par. (b) above.] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the third degree; stalking in the fourth degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

18. "Armor piercing ammunition" means any ammunition capable of being used in pistols or revolvers containing a projectile or projectile core, or a projectile or projectile core for use in such ammunition, that is constructed entirely (excluding the presence of traces of other substances) from one or a combination of any of the following: tungsten alloys, steel, iron, brass, bronze, beryllium copper, or uranium.

19. "Duly authorized instructor" means (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a not-for-profit corporation duly organized under the laws of this state; or (c) by a person duly qualified and designated by the department of environmental conservation under paragraph d of subdivision six of section 11-0713 of the environmental conservation law as its agent in the giving of instruction and the making of certifications of qualification in responsible hunting practices.

20. "Disguised gun" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive and is designed and intended to appear to be something other than a gun.

21. "Semiautomatic" means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.

22. "Assault weapon" means

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

(i) a folding or telescoping stock;

Exhibit 86
00129

(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;

(iii) a thumbhole stock;

(iv) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(v) a bayonet mount;

(vi) a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

(vii) a grenade launcher; or

(b) a semiautomatic shotgun that has at least one of the following characteristics:

(i) a folding or telescoping stock;

(ii) a thumbhole stock;

(iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(iv) a fixed magazine capacity in excess of seven rounds;

(v) an ability to accept a detachable magazine; or

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

(i) a folding or telescoping stock;

(ii) a thumbhole stock;

(iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(iv) capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

Exhibit 86
00130

(v) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

(vi) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

(vii) a manufactured weight of fifty ounces or more when the pistol is unloaded; or

(viii) a semiautomatic version of an automatic rifle, shotgun or firearm;

(d) a revolving cylinder shotgun;

(e) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in subparagraph (v) of paragraph (e) of subdivision twenty-two of section 265.00 of this chapter as added by chapter one hundred eighty-nine of the laws of two thousand and otherwise lawfully possessed pursuant to such chapter of the laws of two thousand prior to September fourteenth, nineteen hundred ninety-four;

(f) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in paragraph (a), (b) or (c) of this subdivision, possessed prior to the date of enactment of the chapter of the laws of two thousand thirteen which added this paragraph;

(g) provided, however, that such term does not include:

(i) any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in 18 U.S.C. 921(a)(16);

(ii) a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

(iii) a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine; or

(iv) a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to 18 U.S.C. 922 as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon;

(v) any weapon validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter. Such weapons shall be subject to the provisions of paragraph (h) of this subdivision;

(vi) any firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof that is validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter;

Exhibit 86
00131

(h) Any weapon defined in paragraph (e) or (f) of this subdivision and any large capacity ammunition feeding device that was legally possessed by an individual prior to the enactment of the chapter of the laws of two thousand thirteen which added this paragraph, may only be sold to, exchanged with or disposed of to a purchaser authorized to possess such weapons or to an individual or entity outside of the state provided that any such transfer to an individual or entity outside of the state must be reported to the entity wherein the weapon is registered within seventy-two hours of such transfer. An individual who transfers any such weapon or large capacity ammunition device to an individual inside New York state or without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor unless such large capacity ammunition feeding device, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, is transferred within one year of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph.

23. "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, that (a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition, or (b) [Suspended and not effective, pursuant to L.2013, c. 57, pt. FF, § 4, eff. March 29, 2013, deemed eff. Jan. 15, 2013.] contains more than seven rounds of ammunition, or (c) [Suspended and not effective, pursuant to L.2013, c. 57, pt. FF, § 4, eff. March 29, 2013, deemed eff. Jan. 15, 2013.] is obtained after the effective date of the chapter of the laws of two thousand thirteen which amended this subdivision and has a capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a feeding device that is a curio or relic. A feeding device that is a curio or relic is defined as a device that (i) was manufactured at least fifty years prior to the current date, (ii) is only capable of being used exclusively in a firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof, (iii) is possessed by an individual who is not prohibited by state or federal law from possessing a firearm and (iv) is registered with the division of state police pursuant to subdivision sixteen-a of section 400.00 of this chapter, except such feeding devices transferred into the state may be registered at any time, provided they are registered within thirty days of their transfer into the state. Notwithstanding paragraph (h) of subdivision twenty-two of this section, such feeding devices may be transferred provided that such transfer shall be subject to the provisions of section 400.03 of this chapter including the check required to be conducted pursuant to such section.

24. "Seller of ammunition" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling or keeping ammunition.

25. "Qualified retired New York or federal law enforcement officer" means an individual who is a retired police officer as police officer is defined in subdivision thirty-four of section 1.20 of the criminal procedure law, a retired peace officer as peace officer is defined in section 2.10 of the criminal procedure law or a retired federal law enforcement officer as federal law enforcement officer is defined in section 2.15 of the criminal procedure law, who: (a) separated from service in good standing from a public agency located in New York state in which such person served as either a police officer, peace officer or federal law enforcement officer; and (b) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest, pursuant to their official duties, under the criminal procedure law; and (c) (i) before such separation, served as either a police officer, peace officer or federal law enforcement officer for five years or more and at the time of separation, is such an officer; or (ii) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency at or before the time of separation; and (d)(i) has not been found by a qualified medical professional employed by such agency to be unqualified for reasons relating to mental health; or (ii) has not entered into an agreement with such agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified

Exhibit 86
00132

for reasons relating to mental health; and (e) is not otherwise prohibited by New York or federal law from possessing any firearm.

**Credits**

(L.1965, c. 1030. Amended L.1967, c. 791, § 46; L.1969, c. 123, § 1; L.1972, c. 588, § 1; L.1972, c. 605, § 1; L.1974, c. 179, § 1; L.1974, c. 462, § 1; L.1974, c. 986, §§ 1, 2; L.1974, c. 1041, § 1; L.1976, c. 217, § 1; L.1982, c. 492, § 1; L.1985, c. 61, § 1; L.1986, c. 328, § 2; L.1986, c. 646, § 1; L.1988, c. 264, § 1; L.1990, c. 264, § 1; L.1995, c. 219, § 2; L.1996, c. 354, § 2; L.1997, c. 446, § 2, eff. Aug. 25, 1997; L.1998, c. 378, § 1, eff. Nov. 1, 1998; L.1999, c. 210, § 1, eff. Nov. 1, 1999; L.1999, c. 635, §§ 11, 15, eff. Dec. 1, 1999; L.2000, c. 189, §§ 8 to 10, eff. Nov. 1, 2000; L.2003, c. 264, § 33, eff. Nov. 1, 2003; L.2007, c. 510, § 3, eff. Feb. 11, 2008; L.2008, c. 257, § 3, eff. Nov. 1, 2008; L.2010, c. 232, §§ 2, 3, eff. July 30, 2010; L.2013, c. 1, § 37, eff. Jan. 15, 2013; L.2013, c. 1, § 38; L.2013, c. 1, § 39, eff. March 16, 2013; L.2013, c. 98, § 1, eff. July 5, 2013.)

**Editors' Notes**

<strong>VALIDITY</strong>

<For validity of this section, see New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 990 F.Supp.2d 349, 351 (W.D.N.Y. Dec. 31, 2013) and N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242 (2d Cir. 2015), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016)>

<strong>PRACTICE COMMENTARIES</strong>

<em>by William C. Donnino</em>

<strong>History</strong>

<strong>Second Amendment</strong>

<strong>Definitions</strong>

<strong>Firearm and loaded firearm</strong>

<strong>Antique firearm</strong>

<strong>Assault weapon</strong>

<strong>Automatic knife</strong>

<strong>Billy</strong>

<strong>Chuka stick</strong>

<strong>Electronic dart gun</strong>

<strong>Electronic stun gun</strong>

<strong>Gravity knife</strong>

<strong>Kung Fu star</strong>

Exhibit 86
00133

**Large capacity ammunition feeding device**

**Penal Law § 265.00(22)(h)**

**Penal Law § 265.02(8)**

**Penal Law § 265.10**

**Penal Law § 265.11**

**Penal Law § 265.36 and § 265.37**

**Machine-gun**

**Metal knuckles**

**Metal knuckle knife**

**Pilum ballistic knife**

**Rifle or shotgun**

**History**

In 1963, as a result of years of study and the recommendations of the Joint Legislative Committee on Firearms and Ammunition, the provisions of the former Penal Law dealing with weapons were revised. L.1963, c. 136; former Penal Law §§ 1896-1904. That revision placed in one section the definitions of most of the substantive crimes [*see* former Penal Law § 1897, "Possession of weapons and dangerous instruments and appliances"].

In 1967, the current Penal Law took effect and carried forward, almost verbatim, the weapon provisions of the former Penal Law, placing the major provisions primarily in Penal Law former § 265.05. In 1974, the then-existing Penal Law § 265.05 was restructured by dividing the various crimes defined in that one section into five sections, currently Penal Law § 265.01 through Penal Law § 265.05, in a degree structure which was generally in accord with the structure of other Penal Law statutes. L.1974, c. 1041.

There were a substantial number of amendments thereafter, most of which added new crimes, and that history is set forth in the comments to the applicable amendment.

**Second Amendment**

The Second Amendment to the Federal Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." Thereafter, the Supreme Court applied the Second Amendment to the states. *McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010).

Exhibit 86
00134

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In *Heller*'s view, "the inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose." *Heller*, 554 U.S. at 628.

Thus, the protected weapons are those which were in "common use" at the time of the amendment for lawful purposes, such as self-defense and defense of one's home. *Id.* at 624-27. That reference to weapons in "common use" at the time of the amendment was not intended to necessarily exclude from the amendment's protection weapons presently in common use for lawful purposes, given the Court's holding that the amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. *See Caetano v. Massachusetts*, 577 U.S. ___, 136 S.Ct. 1027, 194 L.Ed.2d 99 (2016).

The amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short barreled shotguns" [*Id.* at 625], machineguns [*Id.* at 624] and a M-16 rifle. *Id.* at 627. Nor does the amendment support "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

With respect to regulatory laws, the Court expressly declined to provide an "exhaustive" list of "lawful regulatory measures," but the Court did explain that the Second Amendment does not interdict "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* 626-27 and n.26; *McDonald v. City of Chicago*, 561 U.S. at 786, *supra* (emphasizing the *Heller* limitations of the Second Amendment with respect the ability to carry any weapon in any manner for whatever purpose and with respect to regulatory measures).

Then, in *Caetano v. Massachusetts*, 577 U.S. ___, *supra,* the Court, in a per curiam opinion, rejected the three reasons that the Massachusetts court had given for upholding a state ban on the possession of stun guns and remanded the case for further consideration. The Supreme Court began by reiterating that *Heller* held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." Thus, the state court's first reason, that stun guns "were not in common use at the time of the Second Amendment's enactment" was inconsistent with that holding. Next, the state court had reasoned that stun guns meet the historical exception of prohibiting the carrying of dangerous and "unusual" weapons; but when the state equated "unusual" with the stun gun not in common use at the time of the amendment's enactment, the Supreme Court found that it did no more than reiterate its first erroneous reason. As for its third reason, that stun guns are not readily adaptable to use in the military, the Supreme Court stated that "*Heller* rejected the proposition 'that only those weapons useful in warfare are protected.' "

New York has a statute which parallels the Second Amendment. Civil Rights Law § 4 states: "A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed."

To date, that statute has not been interpreted to negate any of New York's statutory restrictions on the possession of firearms. *See Moore v. Gallup*, 267 A.D. 64, 45 N.Y.S.2d 63 (3d Dept. 1943), *affirmed without opinion* 293 N.Y. 846, 59 N.E.2d 439 (1944), *but remittitur amended* 294 N.Y. 699, 60 N.E.2d 847 (1945) to state that the Court had held that the New York statutes relating to a license to carry a concealed pistol were not repugnant to the provisions of the Fourteenth Amendment.

Since *Heller*, New York has continued to uphold its statutory scheme which prohibits the possession of a firearm without an appropriate license. In *People v. Hughes*, 22 N.Y.3d 44, 978 N.Y.S.2d 97, 1 N.E.3d 298 (2013), the Court of Appeals held that a conviction of "criminal possession of a weapon in the second degree"

Exhibit 86
00135

Case 3:17-cv-01017-BEN-JLB    Document 50-2    Filed 03/05/18    PageID.4550    Page 136 of 147

and "criminal possession of a weapon in the third degree," predicated on the defendant's having been previously convicted of a crime, did not violate the Second Amendment. *See also Schulz v. State of N. Y. Exec.*, 134 A.D.3d 52, 53, 19 N.Y.S.3d 92 (3d Dept. 2015), *appeal dismissed upon the ground that no substantial constitutional question is directly involved* 26 N.Y.3d 1139, 27 N.Y.S.3d 502, 47 N.E.3d 782 (2016); *People v. Perkins,* 62 A.D.3d 1160, 1161, 880 N.Y.S.2d 209 (3d Dept. 2009) ("Unlike the statute at issue in *Heller*, Penal Law article 265 does not effect a complete ban on handguns and is, therefore, not a 'severe restriction' improperly infringing upon defendant's Second Amendment rights. Moreover, in our view, New York's licensing requirement remains an acceptable means of regulating the possession of firearms ... and will not contravene *Heller* so long as it is not enforced in an arbitrary and capricious manner"); *People v. Ferguson*, 21 Misc.3d 1120(A), 873 N.Y.S.2d 513 (Criminal Court, Queens County, 2008) ("... *Heller*, is distinguishable from the case at bar for several reasons. Firstly, at the time of his arrest, defendant was not in his home, but was in an airport. Secondly, the requirement that handguns be licensed in the State of New York is not tantamount to a total ban and, therefore, is not a 'severe restriction' as was the case in *Heller*. Lastly, the Court identified certain presumptively lawful regulatory measures which would survive a constitutional challenge including the carrying of firearms in 'sensitive places.' Licensing is an acceptable regulatory measure and an airport falls within the scope of a 'sensitive place.' ").

In an extensive opinion, including a detailed recitation of the history of New York's regulation of firearms, the Second Circuit Court of Appeals held that the Second Amendment was not violated by New York's statutory requirement that a person who wants to "have and carry concealed [a hand gun], without regard to employment or place of possession" must show that "proper cause" exists for the issuance of a license to do so [Penal Law § 400.00(2)(f)]. *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012).

### Definitions

The definitions in Penal Law § 265.00 describe the various types of weapons which are regulated by this article, as well as certain terms utilized in the article regulating the licensing of firearms [Penal Law article 400]. Some of those definitions are discussed here; others are discussed in the sections dealing with the crimes in which they are used. The principal weapon regulated by this article is a firearm and thus it is discussed first, with the remaining terms thereafter in alphabetical order.

### Firearm and Loaded Firearm

By definition, a "firearm" is limited to: a pistol, revolver, the so-called "sawed-off" shotgun or rifle, and an "assault weapon" [Penal Law § 265.00(3)]. The vast array of other types of rifles and shotguns are not included within that definition and thus are not a subject of the statutes which utilize the term "firearm" to define a crime. A "rifle" and a "shotgun" are separately-defined terms [Penal Law § 265.00(11) & (12)] and there are statutes which define crimes which pertain separately and solely to them.

The statutory definition of "firearm" does not require that the firearm be loaded. A separate term and definition are provided for a "loaded firearm" [Penal Law § 265.00(15)]. In addition to the common understanding that a firearm is loaded when it contains ammunition, by the statutory definition, a firearm is loaded when there is simultaneous possession of the firearm and ammunition, irrespective of whether the ammunition is in the firearm.

The statutory definition of "firearm" also does not specify that the firearm need be operable. By contrast, the definition of "loaded firearm" does require ammunition "which may be used to discharge" the firearm [Penal Law § 265.00(15)], and the definition of a "machine gun," does require that the weapon, "loaded or unloaded," be one "from which a number of shots or bullets may be rapidly or automatically discharged from

Exhibit 86
00136

a magazine with one continuous pull of the trigger...." *Compare* Penal Law § 10.00(12), defining a "deadly weapon" to mean a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged...."; *People v. Shaffer*, 66 N.Y.2d 663, 495 N.Y.S.2d 965, 486 N.E.2d 823 (1985) (the "People failed to establish that the gun ... was a 'deadly weapon' ... that is, both operable and loaded with live ammunition").

However, inherent to the common understanding of what constitutes a firearm and key to its danger is its operability. Hence, to establish that the weapon in issue is a "firearm" the courts have required proof of its operability, that is, that it is capable of discharging ammunition. *See People v. Longshore*, 86 N.Y.2d 851, 852, 633 N.Y.S.2d 475, 657 N.E.2d 496 (1995) ("Although the statute is silent on the point, it is now accepted that to establish criminal possession of a handgun the People must prove that the weapon is operable," and *Longshore* applied that same requirement of operability to a rifle or shotgun).

A firearm that is found in a disassembled condition but is operable when assembled is an operable firearm without any further proof that the defendant was personally capable of rendering the disassembled firearm operable. *People v. Lugo*, 161 A.D.2d 122, 554 N.Y.S.2d 849 (1st Dept. 1990). *See also People v. Cavines*, 70 N.Y.2d 882, 883, 524 N.Y.S.2d 178, 518 N.E.2d 1170 (1987) ("... the fact that the gun malfunctioned [during the commission of a crime], standing alone, does not defeat the overwhelming inference that immediately prior to the pulling of the trigger, the gun was capable of discharging the ammunition, particularly in view of the uncontradicted evidence that when subsequently test-fired, the gun and the bullets were found to be operable").

In addition to the firearm being operable, the ammunition of a loaded firearm must be "live," that is, capable of being discharged by the firearm. Penal Law § 265.00(15). *See People v. Johnson,* 56 A.D.3d 1191, 867 N.Y.S.2d 319 (4th Dept. 2008); *People v. Daniels*, 77 A.D.2d 745, 430 N.Y.S.2d 881 (3d Dept. 1980); *People v. Thomas*, 70 A.D.2d 570, 417 N.Y.S.2d 66 (1st Dept. 1979).

A "firearm" that is not operable may be the subject of a charge of attempted criminal possession of a weapon. *People v. Saunders*, 85 N.Y.2d 339, 624 N.Y.S.2d 568, 648 N.E.2d 1331 (1995).

Neither "pistol" nor "revolver" is defined by statute. They both, however, refer to a handgun. *See* Random House Webster's Unabridged Dictionary (1999) definition of "handgun" ("any firearm that can be held and fired with one hand; a revolver or a pistol"); definition of "pistol" ("a short firearm intended to be held and fired with one hand") and definition of "revolver" ("a handgun having a revolving chambered cylinder for holding a number of cartridges, which may be discharged in succession without reloading").

"Sawed-off" shotgun or rifle was first defined solely as a firearm of a "size which may be concealed upon the person." That inherently imprecise definition proved inadequate. *See People v. Cortez*, 110 Misc.2d 652, 442 N.Y.S.2d 873 (Supreme Court, N.Y. County, 1981). The definition was amended in 1982 [c. 492] and that definition appeared to require that the shotgun or rifle have a barrel "and" an overall length of the specified measurement in order to be classified as a sawed-off shotgun or rifle, and that a weapon made from a shotgun or rifle would be so classified only if its overall length was less than that specified in the definition. *People v. Santiago*, 133 Misc.2d 161, 506 N.Y.S.2d 136 (Supreme Court, N.Y. County, 1986) was of the view that the Legislature intended that a shotgun or rifle, or a weapon made from either of them, should be classified as a "sawed-off" weapon depending upon the length of the barrel "or" overall length, and recommended clarifying legislation. *See also People v. Crivillaro*, 142 Misc.2d 527, 538 N.Y.S.2d 152 (Supreme Court, Bronx County, 1989). In 1988, the Legislature amended the definition to specify that a shotgun or rifle may be deemed a sawed-off weapon if the barrel length alone is less than the specified number of inches (18 for a shotgun, 16 for a rifle), and that any weapon made from a shotgun or rifle may be deemed a sawed-off weapon if the overall length is less than 26 inches [Penal Law § 265.00(3)(b), (c), and (d)]. L.1988, c. 264.

Exhibit 86
00137

An "assault weapon," which is separately defined in Penal Law § 265.00(22), was added to the definition of "firearm" in 2000 [c. 189]. By amending the definition of "firearm" to include an "assault weapon," the "assault weapon" became the subject of such crimes as: "criminal possession of a weapon" in the fourth degree [Penal Law § 265.01(1), (3)], third degree [Penal Law § 265.02(1), (3), (5)], and second degree [Penal Law § 265.03]; "criminal sale of a firearm" in the second degree [Penal Law § 265.12] and first degree [Penal Law § 265.13]; "criminal sale of a firearm" with the aid of a minor [Penal Law § 265.14] and to a minor [Penal Law § 265.16]; and a couple of crimes defined in Penal Law § 265.10(3) and (6).

In addition to including an "assault weapon" in the definitions of crimes that use the term "firearm," the legislation added some crimes which specifically name an "assault weapon." The first of the amended crimes was "criminal possession of a weapon in the third degree," a felony. It was amended to include a subdivision to prohibit the possession of an assault weapon [Penal Law § 265.02(7)], irrespective of whether it is loaded and irrespective of where the possession takes place. The second of the amended crimes was "manufacture, transport, disposition and defacement of weapons ..." [Penal Law § 265.10]. It was amended to forbid anyone to manufacture, transport, or dispose of any "assault weapon" [Penal Law § 265.10(1), (2) and (3) (first sentence)].

An "antique firearm," which is separately defined in Penal Law § 265.00(14), is expressly excluded from the definition of "firearm."

### Antique Firearm

As noted in the discussion of the definition of "firearm," an "antique firearm" is expressly excluded from the definition of "firearm" [Penal Law § 265.00(3)]. *See also* Penal Law § 265.00(22)(g)(i) exempting "antique firearm," as defined by Federal law, from the definition of "assault rifle." As a result of the exclusion of "antique firearm," as defined by the instant statute, from the definition of "firearm," any proscription related to an "antique firearm" requires a specific reference to that term. *See, e.g.* Penal Law § 265.01(4), making it a crime to possess an "antique firearm."

The term "antique firearm" is separately defined by New York law to mean any "unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade" [Penal Law § 265.00(14)]. It is critical to note that the definition requires that the defined weapon be "unloaded" in order for it to qualify as an "antique firearm"; a weapon which met the structural definition of an "antique firearm" but was loaded would constitute a "firearm" and be subject to the laws applicable thereto. *See People v. Wedgewood*, 106 A.D.2d 674, 483 N.Y.S.2d 440 (2d Dept. 1984); *People v. Mott*, 112 Misc.2d 833; 447 N.Y.S.2d 632 (Supreme Court, N.Y. County, 1982).

In adding the definition of "antique firearm" in 1974 [c. 986] and excluding it from the definition of "firearm," the Legislature intended that "hobbyists would be permitted to collect ... trade, buy and sell these antique firearms without being subject to the requirements of licensing." *People v. Mott,* 112 Misc.2d at 835, *supra*, quoting the Legislative Memorandum. In 2011, however, the Legislature changed its mind by amending the crime of "criminal possession of a firearm in the fourth degree" [Penal Law § 265.01(4)] to include as a crime, the possession of an "antique firearm." [L.2011 c. 357]. The Legislative Memorandum to the companion bill (Assembly 8456) stated that "[m]odern muzzle loading rifles are essentially a modern single shot rifle. They look and operate very much like a sporting rifle and allow accurate shots at distances up to 200 yards ... [and] can be reloaded in seconds...." There is authority to issue a license to have, possess, collect and carry "antique pistols," as that term is separately defined in Penal Law § 400.00(2)(g).

Exhibit 86
00138

## Assault Weapon

An "assault weapon" was added to the definition of "firearm" in 2000 [Penal Law § 265.00(3)] and at the same time, was separately defined [Penal Law § 265.00(22)]. L.2000, c. 189. In 2013, the NY SAFE Act amended and significantly revised the definition.

A principal difference between the former and present definition is that the former definition required the requisite firearm to have two military style features or characteristics, while the current definition requires only one. Thus, as the Governor explained: "Under the stricter definitions, semi-automatic pistols [see subdivision 22(c) and (f)] and rifles [see subdivision 22(a) and (f)] with detachable magazines and one military style feature will be considered assault weapons. Semi-automatic shotguns [see subdivision 22(b) and (f)] with one military style feature will also be considered assault weapons." Governor's Press Release, "Governor Cuomo Signs NY Safe Act in Rochester," January 16, 2013. Also included as an assault weapon is a "revolving cylinder shotgun" [subdivision 22(d)].

The definition contains eight paragraphs (a) to (h), several of which define different types of weapon which can be classified as an assault weapon; they are:

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the listed characteristics;

(b) a semiautomatic shotgun that has at least one of the listed characteristics;

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the listed characteristics;

(d) a revolving cylinder shotgun;

(e) semiautomatic rifle, shotgun or pistol defined in the former Penal Law § 265.00(22)(e)(v) of the L.2000, c. 189 which had been lawfully possessed, pursuant to laws of 2000, c. 189, prior to September fourteenth, nineteen hundred ninety-four.

The term "semiautomatic" is separately defined in subdivision 21 of the instant section which in lay terms includes any repeating rifle, shotgun or pistol which, although requiring a separate pull of the trigger to fire each round, has the capacity of being fired to extract the spent shell and automatically load a cartridge.

There is a grandfathering provision, paragraphs (f) and (g), exempting certain weapons from the definition.

Assault weapons defined in subdivision (22)(e) or (f), possessed before January 16, 2013, had to be registered by April 15, 2014 [Penal Law § 400.00(16-a)]; except a weapon defined in subdivision (22)(g)(vi) "transferred into the state may be registered at any time, provided such weapons are registered within thirty days of their transfer into the state." Once having registered, the registrant must "recertify" every five years thereafter or suffer revocation of the registration [Penal Law § 400.00(16-a)].

Owners of a grandfathered assault weapon or large capacity ammunition feeding device may only transfer same to a purchaser authorized to possess same or to an individual or entity outside of the state [subdivision 22(h)]. Governor's Press Release, supra. An individual who transfers a grandfathered weapon or large capacity ammunition device to an individual inside New York State or without complying with the other provisions of

Exhibit 86
00139

the statute [subdivision 22(h)], shall, except for a large capacity ammunition device transferred within one year of the effective date of the NY SAFE Act, be guilty of a class A misdemeanor [subdivision 22(h)].

### Automatic knife

In 2007, legislation was passed to support and promote the establishment of a "cutlery and knife museum" in the Hudson Valley. L.2007, c. 510. As a result, the museum and its employees would need an exemption from the crime of possession of certain knives. Thus, the term "automatic knife" was created and defined to include a "stiletto, a switchblade knife, a gravity knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife" [Penal Law § 265.00(5-c)], and an exemption from criminal liability was provided for the possession or ownership of automatic knives by a cutlery and knife museum, established pursuant to Education Law § 216-c, or by any employee of the museum when acting in furtherance of the business of the museum [Penal Law § 265.20(d)].

### Billy

There is no statutory definition of "billy." However, in *People v. Ocasio*, 28 N.Y.3d 178, 43 N.Y.S.3d 228, 65 N.E.3d 1263 (2016), the Court described a "billy" as "a cylindrical or rounded, rigid, club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes." The Court further explained that it matters not whether the "billy" is comprised of wood, metal, or other synthetic material, or that the billy is collapsible or extendible.

### Chuka stick

The "chuka stick" definition [Penal Law § 265.00(14)] was added by L.1974, c. 179. In urging the Governor to approve the legislation, the sponsor of the bill wrote: "The chuka stick is an instrument that may be purchased or easily assembled from two pieces of wood and a piece of thong, cord or chain. With a minimum amount of practice, this instrument may be effectively used as a garrote, bludgeon, thrusting or striking device. The chuka stick is designed primarily as a weapon and has no purpose other than to maim or, in some instances, kill." Letter of Assemblyman Richard C. Ross to the Counsel to the Governor, Governor's Bill Jacket for the L.1974, c. 179.

### Electronic dart gun

The "electronic dart gun" definition [Penal Law § 265.00(15-a)] was added in 1976. L.1976, c. 217. In urging the Governor to approve the legislation, the sponsor of the bill wrote: "There are a number of these devices being manufactured, the most popular of which is called a 'Taser Public Defender.' It is designed to look like a flashlight which can shoot two barbed darts a distance of 15 to 18 feet and deliver a 50,000 volt jolt of electricity effective through an inch of clothing. While the effect of the charge is to stun, knock out or paralyze a person and is temporary, it causes great pain and may well be lethal to a person in poor health." Letter of Senator John D. Caemmerer to the Counsel to the Governor, Governor's Bill Jacket for the L.1976, c. 217.

### Electronic stun gun

In 1990, the Legislature added the definition of an "electronic stun gun" [Penal Law § 265.00(15-c)]. L.1990, c. 264. That definition is like the definition of an "electronic dart gun." Penal Law § 265.00(15-a). A principal difference is that the "electronic dart gun" requires that the electrical shock be passed by means of a dart

Exhibit 86
00140

or projectile. The Governor, who recommended the legislation, indicated that the "availability and use" of a weapon "which passes a high voltage electrical shock to a person by means of direct contact or without resort to a projectile" poses the same threat as an electronic dart gun. 1990 Governor's Approval Memorandum 31. Accordingly, for both weapons, possession per se is a crime. Penal Law §§ 265.01(1); 265.02(1).

There is a difference of judicial opinion on whether, in a prosecution for possession of an "electronic stun gun," the People are required to prove that the defendant knew it was an "electronic stun gun." *Compare People v. Small*, 157 Misc.2d 673, 598 N.Y.S.2d 431 (Supreme Court, New York County, 1993)(knowledge required) *with People v. Voltaire*, 18 Misc.3d 408, 413 n.1, 852 N.Y.S.2d 649 (Criminal Court, Kings County, 2007) (disagreeing with *Small* in a case in which the court decided that the defendant need not know that the knife possessed was a gravity knife) *and People v. Parrilla*, 27 N.Y.3d 400, 33 N.Y.S.3d 842, 53 N.E.3d 719 (2016) (in a prosecution for possession of a "gravity knife," the People must prove that the defendant possessed a "knife," but not that he or she knew that it met the definition of a "gravity knife").

## Gravity knife

The definition of "gravity knife" [Penal Law § 265.00(5)] requires that the knife's blade lock in place automatically; thus, a "butterfly knife," which requires manual locking is not a gravity knife. *People v. Zuniga*, 303 A.D.2d 773, 759 N.Y.S.2d 86 (2d Dept. 2003). A local accusatory instrument which charges a defendant with possession of a gravity knife is jurisdictionally defective when it includes only a "conclusory statement that an object recovered from a defendant is a gravity knife," without any explanation of how the object meets the statutory definition. *People v. Dreyden*, 15 N.Y.3d 100, 104, 905 N.Y.S.2d 542, 931 N.E.2d 526, 528 (2010).

In a prosecution for possession of a "gravity knife," the People must prove that the defendant possessed a "knife," but not that he or she knew that it met the definition of a "gravity knife." *People v. Parrilla*, 27 N.Y.3d 400, 33 N.Y.S.3d 842, 53 N.E.3d 719 (2016). The Appellate Divisions have held that the People are required to prove that the "gravity knife" is operable [*People v. Smith*, 309 A.D.2d 608, 765 N.Y.S.2d 777 (1st Dept. 2003); *People v. Perez*, 123 A.D.2d 721, 506 N.Y.S.2d 961 (2d Dept. 1986)].

## Kung Fu star

In 1982, the possession of a "Kung Fu star" [Penal Law § 265.00(15-b)] with intent to use it unlawfully against another was made a crime. L.1982, c. 840. In 1985, the manufacturing and transporting of a Kung Fu star was made a crime [Penal Law § 265.10]. L.1985, c. 61. In 1988, in recognition that Kung Fu stars may not be manufactured and, in the words of the Legislative Memorandum, that they "serve no legitimate purpose other than as a weapon," the statute was again amended to make the per se possession of a Kung Fu star a crime [Penal Law § 265.01(2)]. L.1988, c. 220.

## Large capacity ammunition feeding device

The concept of a "large capacity ammunition feeding device" [Penal Law § 265.00(23)] (hereinafter "large feeding device") was introduced in 2000 [c. 189] and significantly amended in 2013 by the NY SAFE Act. [L.2013, c. 1, as amended by L.2013, c. 57]. Prior to the amendment, the definition excluded a large feeding device manufactured after September 30, 1994. That limitation was repealed; thus, those large feeding devices are included in the revised definition of a "large feeding device." According to the Legislative Memorandum, the reason for doing so was "because it was impossible to tell the difference between magazines manufactured before or after [September 30, 1994]."

Exhibit 86

00141

Under the revised definition, a large feeding device is one that "(a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a large feeding device that is a curio or relic."

The two alternate definitions initially enacted as subdivisions (b) and (c) were in a convoluted way repealed. The import of those alternate subdivisions was to have the definition of a device ultimately limited to one that had a capacity of seven rounds. But, after enactment, it was noted that the smallest manufactured device normally had a capacity of ten rounds. Kaplan and Hakim, "New York Governor Favors Easing Newly Passed Gun Law," New York Times, March 20, 2013 (http://www.nytimes.com/2013/03/21/nyregion/cuomo-seeks-to-ease-a-newly-passed-gun-restriction.html). Thus, before subdivisions (b) and (c) took effect, the NY SAFE Act was itself amended to declare that "the effective date of the amendments adding paragraphs (b) and (c) to such subdivision shall be suspended and not effective." L.2013, c. 57 § 4. There is no provision lifting the "suspension" and making the amendments effective on a future date. As a result, that unique Penal Law language of "suspended and not effective" would appear to have the practical effect of repealing each of those subdivisions and was probably utilized for whatever perceived advantage there was in being able to say the provisions were suspended, rather than repealed. The repeal of subdivision (c) did not, however, appear to affect the "provided, however" language recited above which existed in the law prior to the addition of subdivision (c) and had chronologically followed the repealed language of subdivision (c).

The crimes for which the definition of a large feeding device is utilized include Penal Law § 265.00(22)(h), § 265.10, § 265.11, § 265.02(8), § 265.36, and § 265.37. The import of those statutes is as follows:

### Penal Law § 265.00(22)(h)

A large feeding device that was legally possessed prior to the enactment date of the NY SAFE Act, January 15, 2013, may be transferred to a person authorized to possess same or to an individual or entity outside of New York, provided that such a transfer must be reported, within 72 hours, to the entity with whom the weapon is registered. A person who transfers a device to an individual inside New York state or without otherwise complying with the law's transfer requirements is guilty of a class A misdemeanor, unless the device, the possession of which is made illegal by the NY SAFE Act, was transferred before January 15, 2014 [Penal Law § 265.00(22)(h)].

### Penal Law § 265.02(8)

Prior to, and after, the NY SAFE Act, a provision of the statute defining "criminal possession of a weapon in the third degree," makes it a class D felony when a "person possesses a large capacity ammunition feeding device" [Penal Law § 265.02(8)]. The NY SAFE ACT, however, amended that subdivision to specify that "[f]or purposes of this subdivision," a large feeding device shall "not" include either of the following two feeding devices:

[i] a feeding device lawfully possessed by such person before January 15, 2013 (the effective date of chapter one of the laws of 2013 "which amended this subdivision"), "that has a capacity of, or that can be readily restored or converted to accept more than seven but less than eleven rounds of ammunition." Parenthetically, this exclusion from liability for this felony became covered by the generic definition of a large feeding device when that definition was amended to specify that a large feeding device is one that "has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." [L.2013, c. 57 § 4; Penal Law § 265.00(23)].

Exhibit 86
00142

[ii] a feeding device "that was manufactured before September [13, 1994], that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." The exclusion from liability for this felony is in recognition that prior to the NY SAFE Act, it was lawful to possess a feeding device manufactured before September 13, 1994. Notably, however, this exclusion from liability for this felony does not also require that the possessor lawfully possessed the feeding device prior to the effective date of the NY SAFE Act.

### Penal Law § 265.10

As part of the 2000 laws [c. 189], Penal Law § 265.10 ("manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances") was amended (1) to forbid the to manufacture, transport, or disposal of a "large capacity ammunition feeding device" [Penal Law § 265.10(1), (2) and (3) (first sentence)]; (2) to add a prohibition for the buying, receiving or disposing of a "large capacity ammunition feeding device" which has been defaced for a criminal purpose, which parallels the existing prohibition as it relates to a firearm [Penal Law § 265.10(3) (second sentence)]; and (3) to add a prohibition for "wilfully" defacing a "large capacity ammunition feeding device," which parallels the existing prohibition for wilfully defacing a firearm [Penal Law § 265.10(6)].

### Penal Law § 265.11

Also, as part of the 2000 laws [c. 189], Penal Law § 265.11 ("criminal sale of a firearm in the third degree") was amended to prohibit a person who is "not authorized" to possess a "firearm" from "unlawfully" selling or otherwise disposing of any firearm or "large capacity ammunition feeding device." By contrast, one of the amendments to the crime of "manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances" made it a crime to "dispose of" [defined in Penal Law § 265.00(6)] a "large capacity ammunition feeding device" [Penal Law § 265.10(3) (sentence one)], without also requiring that the actor not be authorized to possess a firearm. Thus, unless exempted by Penal Law § 265.20, a person who "disposes of" such device (and does so, for example, by a sale of the device) commits a crime, irrespective of whether that person is authorized or not authorized to possess a "firearm."

### Penal Law § 265.36 and § 265.37

The NY SAFE Act added two non-felony offenses, apparently intending to include liability for a feeding device subject to the exceptions to the felony, though arguably not completely fulfilling that intent.

The first added offense was "unlawful possession of a large capacity ammunition feeding device" [Penal Law § 265.36], a class A misdemeanor. The statute makes it "unlawful for a person to knowingly possess a large capacity ammunition feeding device manufactured before September [13, 1994] and if such person lawfully possessed such large capacity feeding device before [January 15, 2013], that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." Penal Law § 265.36.

A safeguard for those who once lawfully possessed such feeding device is a provision excluding from liability for this crime a person "who has a reasonable belief that such device ... may lawfully be possessed," and who, within 30 days of being notified by law enforcement or a licensing official that possession is unlawful, "surrenders or lawfully disposes of" the feeding device. Once so notified, there exists a reasonable, rebuttable presumption that the possessor knows that the feeding device cannot be lawfully possessed.

The second added offense was "unlawful possession of certain ammunition feeding devices" [Penal Law § 265.37]. This statute makes it "unlawful for a person to knowingly possess an ammunition feeding device where

Exhibit 86
00143

such device contains more than seven rounds of ammunition." L.2013, c. 57. *But see New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015) ("New York's seven-round load limit does not survive intermediate scrutiny in the absence of requisite record evidence and a substantial relationship between the statutory provision and important state safety interests"; accordingly, that provision is unconstitutional). However, there is an exemption from liability for Penal Law sections 265.01, 265.02, 265.03, 265.04, 265.05, 265.10, 265.11, 265.12, 265.13, 265.15 and 270.05 for the "possession and use" at certain specified "indoor or outdoor" firing ranges of a "magazine, belt, feed strip or similar device" that contains more than seven rounds of ammunition, albeit in a feeding device that does not have the capacity of more than ten rounds of ammunition [Penal Law § 265.20(7-f)].

Instead of placing the sentencing provisions applicable to this offense in the Penal Law articles dealing with sentences, the NY SAFE Act, unfortunately, as too many other statutes have done, further complicated the sentencing laws by setting forth the governing sentences for this offense in the statute defining the crime. If the large feeding device is "possessed within the home of the possessor," a first offense is a violation, "subject to" a fine of $250; "each subsequent offense" is a class B misdemeanor, "subject to" a fine of $250 and a term of imprisonment "up to three months." If the large feeding device is not possessed within the home of the possessor, a first offense is a class B misdemeanor, "subject to" a fine of $250 and a term of imprisonment "up to six months"; "each subsequent offense" is a class A misdemeanor. For the class A misdemeanor, no sentence is specified, and thus the normal sentence options will apply. For the specified sentences, it appears that the amount of the fine is the stated amount, there being no language indicating that the fine is "up to" the stated amount; on the other hand, the jail sentences utilize the "up to" language, making them discretionary within that range, which may therefore be from one day up to the stated period. What is mysterious about this type of specified sentences, which are placed outside the sentencing statutes, is whether they exclude any other option in the sentencing statutes which would normally be included in the stated classification.

### Machine-gun

A "machine-gun" is not included in the definition of a "firearm." Unlike the definition of a firearm, rifle or shotgun, the requirement of operability of a machine-gun appears subsumed in its definition, which requires that it be a weapon, "loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger...." [Penal Law § 265.00(1)]. *See People v. Woods*, 202 Misc. 562, 564, 114 N.Y.S.2d 611, 613 (N.Y. Magis. Ct. 1952) (purported machine gun was missing two parts and was thus not capable of firing more than one shot at a time and was therefore not a "machine gun").

To an extent, the definition is expanded in the definition of the crime of "criminal possession of a weapon in the third degree" which prohibits the possession of a machine-gun or any other weapon "simulating a machine-gun and which is adaptable for such use." Penal Law § 265.02(2). *See People v. Excell*, 254 A.D.2d 369, 680 N.Y.S.2d 259 (2d Dept. 1998) (the court rejected the claim that because a "Uzi cannot be easily converted into a machine gun," it was thus not adaptable for such use because there was no such statutory qualification).

### Metal knuckles

There is no statutory definition of "metal knuckles." However, in *People v. Aragon*, 28 N.Y.3d 125, 42 N.Y.S.3d 646, 65 N.E.3d 675 (2016), the Court described "metal knuckles" as a "metal object with multiple holes, through which an individual places his or her fingers so that a metal bar rests atop the individual's knuckles. That object is used as a weapon to cause increased pain when the person wearing it hits someone with a fist."

Exhibit 86<br>00144

### Metal knuckle knife

In 1995, the Legislature added to the list of defined weapons the "metal knuckle knife" [Penal Law § 265.00(5-b)], and then added that weapon to the list of items which constitute a deadly weapon [Penal Law § 10.00(12)], to the list of items the possession or manufacture of which is per se a crime [Penal Law §§ 265.01(1), 265.10(1)], and to the list of items whose presence in an automobile or in a stolen vehicle may give rise to a presumption of possession of that weapon by everyone in the automobile or stolen vehicle [Penal Law § 265.15]. L.1995, c. 219. A "metal knuckle knife" can function as both a set of metal knuckles (possession of which is also a per se crime) and a knife. In the words of the Legislative Memorandum, the "possession and manufacture of weapons such as the metal knuckle knife serve only one purpose, ... to maim or take human life. Police searches of shops in the City of New York have discovered this particular weapon. ... In order to protect society, these weapons must be included within the definition of 'deadly weapons' found in the Penal Law."

In 2008, the definition of "deadly weapon" in Penal Law § 10.00(12) and the instant definition of "metal knuckle knife" were each amended to include "plastic knuckles" because the Legislature determined that "plastic knuckles have just as much impact as the brass knuckles and are just as deadly." Legislative Memorandum. L.2008, c. 257. Also, a number of statutes which prohibit the possession, manufacture and transportation of various deadly weapons were amended to include a prohibition on the possession of "plastic knuckles" [Penal Law §§ 265.01(1); 265.10(1) and (2)].

### Pilum ballistic knife

The "pilum ballistic knife" definition [Penal Law § 265.00(5-a)] was added in 1986. L.1986, c. 328. One advertisement for the knife described it as approximately nine-and-one-half inches long, with a four-and-a-half inch blade. When a button inside the knife handle is pushed, a powerful spring inside the handle can eject the blade, propelling it to a distance of up to 30 feet with considerable force.

### Rifle or shotgun

A sawed-off rifle or shotgun, that is, one with a barrel or overall length less than that prescribed in the statute defining a "firearm" [Penal Law § 265.00(3)], and a rifle or shotgun which qualifies as an "assault weapon" are, for the purposes of this article, a "firearm" and therefore subject to the prohibitions related thereto.

Otherwise, a rifle and a shotgun, as those terms are defined [Penal Law § 265.00(11) and (12)], are not included in the definition of "firearm," and any prohibition related to either requires the specific use of the term "rifle" or "shotgun." *See, e.g.* Penal Law § 265.01(4). In addition to meeting the terms of the definition, a rifle or shotgun must also be operable, that is, capable of discharging ammunition. *People v. Longshore*, 86 N.Y.2d 851, 633 N.Y.S.2d 475, 657 N.E.2d 496 (1995).

Notes of Decisions (132)

McKinney's Penal Law § 265.00, NY PENAL § 265.00
Current through L.2018, chapter 1.

---

Case 3:17-cv-01017-BEN-JLB   Document 50-2   Filed 03/05/18   PageID.4560   Page 146 of
147

KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or PreemptedHeld Unconstitutional by New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, W.D.N.Y., Dec. 31, 2013

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

McKinney's Consolidated Laws of New York Annotated
   Penal Law (Refs & Annos)
     Chapter 40. Of the Consolidated Laws (Refs & Annos)
       Part Three. Specific Offenses
         Title P. Offenses Against Public Safety
           Article 265. Firearms and Other Dangerous Weapons (Refs & Annos)

McKinney's Penal Law § 265.36

§ 265.36 Unlawful possession of a large capacity ammunition feeding device

Effective: March 16, 2013
Currentness

It shall be unlawful for a person to knowingly possess a large capacity ammunition feeding device manufactured before September thirteenth, nineteen hundred ninety-four, and if such person lawfully possessed such large capacity feeding device before the effective date of the chapter of the laws of two thousand thirteen which added this section, that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition.

An individual who has a reasonable belief that such device is of such a character that it may lawfully be possessed and who surrenders or lawfully disposes of such device within thirty days of being notified by law enforcement or county licensing officials that such possession is unlawful shall not be guilty of this offense. It shall be a rebuttable presumption that such person knows that such large capacity ammunition feeding device may not be lawfully possessed if he or she has been contacted by law enforcement or county licensing officials and informed that such device may not be lawfully possessed.

Unlawful possession of a large capacity ammunition feeding device is a class A misdemeanor.

**Credits**
(Added L.2013, c. 1, § 46-a, eff. March 16, 2013.)

**Editors' Notes**

VALIDITY

<For validity of this section, see New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 990 F.Supp.2d 349, 351 (W.D.N.Y. Dec. 31, 2013) and N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242 (2d Cir. 2015), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016)>

PRACTICE COMMENTARIES

*by William C. Donnino*

Exhibit 86
00146

*See* Practice Commentary to Penal Law § 265.00 with respect to the definition of "large capacity ammunition feeding device."

Notes of Decisions (2)

McKinney's Penal Law § 265.36, NY PENAL § 265.36
Current through L.2018, chapter 1.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.