1   XAVIER BECERRA
    Attorney General of California
2   State Bar No. 118517
    MARK R. BECKINGTON
3   Supervising Deputy Attorney General
    State Bar No. 126009
4   ANTHONY P. O'BRIEN
    Deputy Attorney General
5   State Bar No. 232650
    JOHN D. ECHEVERRIA
6   Deputy Attorney General
    State Bar No. 268843
7    300 South Spring Street, Suite 1702
    Los Angeles, CA 90013
8   Telephone: (213) 269-6249
    Fax: (213) 897-5775
9   E-mail: John.Echeverria@doj.ca.gov
    *Attorneys for Defendant Attorney General*
10  *Xavier Becerra*

11              IN THE UNITED STATES DISTRICT COURT

12              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14

| | |
|---|---|
| 15 **VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC., a California corporation,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,**<br><br>Defendants. | 17-cv-1017-BEN-JLB<br><br>**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; DECLARATION OF JOHN D. ECHEVERRIA**<br><br>Date:         April 30, 2018<br>Time:         10:30 a.m.<br>Judge:        Hon. Roger T. Benitez<br>Courtroom:    5A<br>Action Filed: May 17, 2017 |

1

1           **REQUEST FOR JUDICIAL NOTICE**

2        Defendant Xavier Becerra, Attorney General of the State of California, sued in

3 his official capacity ("Defendant"), respectfully requests that this Court take

4 judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the documents

5 attached to the accompanying declaration of counsel. These documents are relevant

6 to show that large-capacity magazines have been subject to longstanding regulation.

7        Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be

8 one "not subject to reasonable dispute" because it is either (1) generally known

9 within the territorial jurisdiction of the trial court or (2) capable of accurate and

10 ready determination by resort to sources whose accuracy cannot readily be

11 questioned. Fed. R. Evid. 201(b). "[A] federal court must take judicial notice of

12 state statutes 'without plea or proof.'" *Getty Petroleum Mktg., Inc. v. Capital*

13 *Terminal Co.*, 391 F.3d 312, 323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S.

14 218, 223 (1885)). Similarly, "[m]unicipal ordinances are proper subjects for

15 judicial notice." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 493 F.3d

16 1031, 1039 n.2 (9th Cir. 2007). Additionally, the "[l]egislative history of a statute

17 is properly a subject of judicial notice." *See Anderson v. Holder*, 673 F.3d 1089,

18 1094 n.1 (9th Cir. 2012). Accordingly, Defendant respectfully requests that this

19 Court take judicial notice of the exhibits attached to the accompanying declaration

20 of counsel.

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28                                2

Dated:  April 9, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
ANTHONY P. O'BRIEN
Deputy Attorney General

/s/ John D. Echeverria

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendant Attorney
General Xavier Becerra*

Defendant's Request for Judicial Notice in Support of Defendant's Opposition to Plaintiffs'
Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Declaration of
John D. Echeverria (17-cv-1017-BEN-JLB)

# DECLARATION OF JOHN D. ECHEVERRIA

I, John D. Echeverria, declare:

1.  I am a Deputy Attorney General with the California Department of Justice and serve as counsel to Defendant in the above-captioned matter.

2.  Except as otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called upon as a witness I could testify competently as to those facts. I make this declaration in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.

3.  A true and correct copy of **Uniform Machine Gun Act, ch. 206, § 1, 1933 S.D. Sess. Laws 245** is attached as **Exhibit A.** This document is a public record of the State of South Dakota that was accessed on or about April 2, 2018, from HeinOnline (https://home.heinonline.org/).

4.  A true and correct copy of **Act of Mar. 7, 1934, ch. 96, § 1, 1934 Va. Acts 137** is attached as **Exhibit B.** This document is a public record of the Commonwealth of Virginia that was accessed on or about April 2, 2018, from HeinOnline (https://home.heinonline.org/).

5.  A true and correct copy of **Act of July 2, 1931, § 1, 1931 Ill. Laws 452** is attached as **Exhibit C.** This document is a public record of the State of Illinois that was accessed on or about April 2, 2018, from HeinOnline (https://home.heinonline.org/).

6.  A true and correct copy of **Act of July 7, 1932, no. 80, § 1, 1932 La. Acts 336** is attached as **Exhibit D.** This document is a public record of the State of Louisiana that was accessed on or about April 2, 2018, from HeinOnline (https://home.heinonline.org/).

7.  A true and correct copy of **Act of Mar. 2, 1934, no. 731, § 1, 1934 S.C. Acts 1288** is attached as **Exhibit E.** This document is a public record of the

4

Defendant's Request for Judicial Notice in Support of Defendant's Opposition to Plaintiffs'
Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Declaration of
John D. Echeverria (17-cv-1017-BEN-JLB)

1  State of South Carolina that was accessed on or about April 2, 2018, from
2  HeinOnline (https://home.heinonline.org/).
3      8.    A true and correct copy of **Rochester, N.Y., Muni. Code No. 47-5** is
4  attached as **Exhibit F**. This document is a public record of the City of Rochester,
5  New York that was accessed on April 6, 2018 from Ecode360, the website used by
6  the City of Rochester to host its municipal code
7  (https://www.ecode360.com/RO0104?needHash=true).
8      9.    A true and correct copy of **Chi., Ill. Muni. Code §§ 8-20-010, 8-20-**
9  **085** is attached as **Exhibit G**. This document is a public record of the City of
10 Chicago, Illinois that was accessed on April 6, 2018 from American Legal
11 Publishing Corporation, the website used by the City of Chicago to host its
12 municipal code (http://www.amlegal.com/codes/client/chicago_il/).
13     10.   A true and correct copy of **Sunnyvale, Cal. Muni. Code, § 9.44.050** is
14 attached as **Exhibit H**. This document is a public record of the City of Sunnyvale,
15 California that was accessed on April 6, 2018 from the City of Sunnyvale's public
16 website (https://qcode.us/codes/sunnyvale/).
17     11.   A true and correct copy of **L.A., Cal. Muni. Code §§ 46.30, 55.13** is
18 attached as **Exhibit I**. This document is a public record of the City of Los Angeles,
19 California that was accessed on April 6, 2018 from American Legal Publishing
20 Corporation, the website used by the City of Los Angeles to host its municipal code
21 (http://www.amlegal.com/codes/client/los-angeles_ca/).
22     12.   A true and correct copy of **S.F., Cal. Pol. Code Art. 9, § 619** is
23 attached as **Exhibit J**. This document is a public record of the City of San
24 Francisco, California that was accessed on April 6, 2018 from American Legal
25 Publishing Corporation, the website used by the City of San Francisco to host its
26 municipal code (http://www.amlegal.com/codes/client/san-francisco_ca/).
27 //
28

5

13.    A true and correct copy of **Oakland, Cal. Code of Ordinances, §
9.38.030-9.38.040 (Ord. No. 13352, § 1(D), 1-19-2016)** is attached as **Exhibit K.**
This document is a public record of the City of Oakland, California that was
accessed on April 6, 2018 from Municode Library, the website used by the City of
Oakland to host its municipal code (https://library.municode.com/ca/oakland).

14.    A true and correct copy of **Cook Cnty., Ill. Code of Ordinances, §
54.212 (Ord. No. 13-O-32, 7-17-2013)** is attached as **Exhibit L.**  This document is
a public record of Cook County, Illinois that was accessed on April 6, 2018 from
Municode Library, the website used by the Cook County, Illinois to host its
municipal code
(https://library.municode.com/il/cook_county/codes/code_of_ordinances).

15.    A true and correct copy of **Aurora, Ill. Code of Ordinances, § 29-49**
is attached as **Exhibit M.**  This document is a public record of the City of Aurora,
Illinois that was accessed on April 6, 2018 from Municode Library, the website
used by the City of Aurora, Illinois to host its municipal code
(https://library.municode.com/il/aurora/codes/code_of_ordinances).

16.    A true and correct copy of **Franklin Park, Ill. Code of Ordinances, §
3-13G-3** is attached as **Exhibit N.**  This document is a public record of the City of
Franklin Park, Illinois that was accessed on April 6, 2018 from Municode Library,
the website used by the City of Franklin Park, Illinois to host its municipal code
(https://library.municode.com/il/franklin_park/codes/code_of_ordinances).

17.    A true and correct copy of **Oak Park Ill. Muni. Code, § 27-2-1** is
attached as **Exhibit O.**  This document is a public record of the Village of Oak
Park, Illinois that was accessed on April 6, 2018 from Sterling Codifiers, the
website used by the Village of Oak Park to host its municipal code
(http://www.sterlingcodifiers.com/codebook/index.php?book_id=459).

//

6

Defendant's Request for Judicial Notice in Support of Defendant's Opposition to Plaintiffs'
Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Declaration of
John D. Echeverria (17-cv-1017-BEN-JLB)

18.   A true and correct copy of **Highland Park, Ill, Ordinances, § 136.005** is attached as **Exhibit P**. This document is a public record of the City of Highland Park, Illinois that was accessed on April 6, 2018 from Municode Library, the website used by the City of Highland Park to host its Code of Ordinances (https://library.municode.com/il/highland_park/codes/code_of_ordinances).

19.   A true and correct copy of **Vill. of Deerfield, Ill., Ordinances, § 15-90 (Ord. No. O-18-06)** is attached as **Exhibit Q**. This document is a public record of the Village of Deerfield, Illinois that was accessed on April 6, 2018, from the Village of Deerfield's public website (http://www.deerfield.il.us/DocumentCenter/View/1506).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 9, 2018, at Los Angeles, California.


_____/s/ John D. Echeverria_____
John D. Echeverria

7

# EXHIBITS
## TABLE OF CONTENTS

| Exhibit | Description | Pages |
|---|---|---|
| Exhibit A | Uniform Machine Gun Act, ch. 206, § 1, 1933 S.D. Sess. Laws 245 | 0001-0005 |
| Exhibit B | Act of Mar. 7, 1934, ch. 96, § 1, 1934 Va. Acts 137 | 0006-0011 |
| Exhibit C | Act of July 2, 1931, § 1, 1931 Ill. Laws 452 | 0012-0016 |
| Exhibit D | Act of July 7, 1932, no. 80, § 1, 1932 La. Acts 336 | 0017-0022 |
| Exhibit E | Act of Mar. 2, 1934, no. 731, § 1, 1934 S.C. Acts 1288 | 0023-0026 |
| Exhibit F | Rochester, N.Y., Muni. Code No. 47-5 | 0027-0033 |
| Exhibit G | Chi., Ill. Muni. Code §§ 8-20-010, 8-20-085 | 0034-0043 |
| Exhibit H | Sunnyvale, Cal. Muni. Code, § 9.44.050 | 0044-0046 |
| Exhibit I | L.A., Cal. Muni. Code §§ 46.30, 55.13 | 0047-0050 |
| Exhibit J | S.F., Cal. Pol. Code Art. 9, § 619 | 0051-0055 |
| Exhibit K | Oakland, Cal. Code of Ordinances, § 9.38.030-9.38.040 (Ord. No. 13352, § 1(D), 1-19-2016) | 0056-0057 |
| Exhibit L | Cook Cnty., Ill. Code of Ordinances, § 54.212 (Ord. No. 13-O-32, 7-17-2013) | 0058-0059 |
| Exhibit M | Aurora, Ill. Code of Ordinances, § 29-49 | 0060-0068 |
| Exhibit N | Franklin Park, Ill. Code of Ordinances, § 3-13G-3 | 0069-0071 |
| Exhibit O | Oak Park, Ill. Muni. Code, § 27-2-1 | 0072-0075 |
| Exhibit P | Highland Park, Ill, Ordinances, § 136.005 | 0076-0083 |
| Exhibit Q | Village of Deerfield, Lake and Cook Counties, IL, Ord. No. O-18-16 | 0084-0095 |

8

# Exhibit A

# THE LAWS

PASSED AT THE

## Twenty-Third Session

OF THE

## Legislature

OF THE

## State of South Dakota

Begun and held at Pierre, the Capital of Said State, the
Third Day of January, 1933, and Concluded
on March 3, 1933

## Official Edition

STATE PUBLISHING COMPANY
Pierre, South Dakota

Exhibit A
Page 0002

Case 3:17-cv-01017-BEN-JLB   Document 53-1   Filed 04/09/18   PageID.5593   Page 11 of 103

If the witness is summoned to attend and testify in the criminal prosecution in this state he shall be tendered the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and five dollars for each day that he is required to travel and attend as a witness. A witness who has appeared in accordance with the provisions of the summons shall not be required to remain within this state a longer period of time than the period mentioned in the certificate.

Section 3. EXEMPTION FROM ARREST AND SERVICE OF PROCESS. If a person comes into this state in obedience to a summons directing him to attend and testify in a criminal prosecution in this state he shall not while in this state pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons.

If a person passes through this state while going to another state in obedience to a summons to attend and testify in a criminal prosecution in that state or while returning therefrom, he shall not while so passing through this state be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons.

Section 4. UNIFORMITY OF INTERPRETATION. This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it.

Section 5. SHORT TITLE. This act may be cited as "Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases."

Section 6. REPEAL. Chapter 158 of the Session Laws of South Dakota of 1923 is hereby repealed.

Approved February 28, 1933.

---

## CHAPTER 206

### (S. B. 165)

#### ENACTING UNIFORM MACHINE GUN ACT

AN ACT Entitled, An Act Relating to Machine Guns, and to Make Uniform the Law with Reference Thereto.

*Be It Enacted by the Legislature of the State of South Dakota:*

Section 1. DEFINITIONS. "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device.

"Crime of Violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily

harm, robbery, burglary, housebreaking, breaking and entering, and larceny.

"Person" applies to and includes firm, partnership, association or corporation.

Section 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than twenty years.

Section 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than fifteen years.

Section 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose:

(a) When the machine gun is on premises not owned or rented for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) when the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) when empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Section 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

Section 6. EXCEPTIONS. Nothing contained in this act shall prohibit or interfere with

1. the manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose;

2. the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake;

3. the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or large caliber, for a purpose manifestly not aggressive or offensive.

Section 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of

Case 3:17-cv-01017-BEN-JLB   Document 53-1   Filed 04/09/18   PageID.5595   Page 13 of 103

the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of not more than five hundred dollars, or by imprisonment in the county jail, for not exceeding six months or by both such fine and imprisonment.

Section 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the Secretary of State, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

Section 9. Warrant to search an house or place and seize any machine gun adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the State's Attorney, shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the state or a political subdivision thereof.

Section 10. If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

Section 11. UNIFORMITY OF INTERPRETATION. This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Section 12. SHORT TITLE. This act may be cited as the Uniform Machine Gun Act.

Section 13. REPEAL. All acts or parts of acts which are in conflict with or inconsistent with the provisions of this act are hereby repealed.

Approved February 28, 1933.

# Exhibit B

# A C T S

OF THE

# GENERAL ASSEMBLY

OF THE

# Commonwealth of Virginia

Session Which Commenced at the State Capitol on
Wednesday, January 10, 1934

RICHMOND:
DIVISION OF PURCHASE AND PRINTING
1934

CHAP. 95.—An ACT to empower the councils of cities and towns to release the liability and liens for interest, penalties and accrued costs, or any part thereof, on unpaid taxes due such cities and towns for any year or years to and including 1933, provided such taxes are paid within one hundred and twenty days after this act is in force.                              [H B 48]

### Approved March 7, 1934

1. Be it enacted by the General Assembly of Virginia, That the councils of cities and towns are hereby empowered to release all persons, firms, associations and corporations from all liability, for interest, penalties and accrued costs on any taxes due such respective cities and towns for any year or years prior to and including the year nineteen hundred and thirty-three, that are unpaid at the time the ordinance relieving same goes into effect, provided such unpaid taxes are paid such cities or towns within one hundred and twenty days after the date this act shall be in force.

2. That nothing in this act contained shall empower any such council to release any liability for interest, penalties and accrued costs, or any part thereof, on such unpaid taxes as are not paid within the one hundred and twenty days aforesaid.

3. By reason of the necessity of immediately granting said councils power to grant taxpayers the above relief, an emergency is declared to exist, and this act shall be in force from its passage.

---

CHAP. 96.—An ACT to define the term "machine gun"; to declare the use and possession of a machine gun, for certain purposes, a crime and to prescribe the punishment therefor; to require manufacturers, dealers and other persons, with certain exemptions, in possession thereof, to register all machine guns with the Secretary of the Commonwealth; to keep records of and report transfers and sales to the said Secretary; to allow inspection of records and of machine guns by peace officers; to provide for seizures and search warrants; to prescribe rules of evidence and presumptions; to provide penalties, and to repeal all inconsistent acts.                              [S B 110]

### Approved March 7, 1934

1. Be it enacted by the General Assembly of Virginia, as follows: Section 1. Where used in this act:

(a) "Machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than seven shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device, and also applies to and includes weapons, loaded or unloaded, from which more than sixteen shots or bullets may be rapidly, automatically, semi-automatically or otherwise discharged without reloading.

(b) "Crime of violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault with intent to maim,

disable, disfigure or kill, robbery, burglary, housebreaking, breaking and entering, and larceny.

(c) "Person" applies to and includes firm, partnership, association or corporation.

Section 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by death or by imprisonment in the State penitentiary for a term of not less than twenty years.

Section 3. Unlawful possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State penitentiary for a term of not less than ten years.

Section 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose:

(a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) When in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) When the machine gun is of the kind described in section eight and has not been registered as in said section required; or

(d) When empty or loaded pistol shells of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Section 5. The presence of a machine gun in any room, boat, or vehicle shall be *prima facie* evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

Section 6. Nothing contained in this act shall prohibit or interfere with

First. The manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose. This act shall not apply to machine guns and automatic arms issued to the National Guard of Virginia by the United States or such arms used by the United States Army or Navy or in the hands of troops of the National Guards of other States or Territories of the United States passing through Virginia, or such arms as may be provided for the officers of the State Police or officers of penal institutions.

Second. The possession of a machine gun for scientific purposes, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake;

Third. The possession of a machine gun other than one adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber, for a purpose manifestly not aggressive or offensive.

Case 3:17-cv-01017-BEN-JLB  Document 53-1  Filed 04/09/18  PageID.5600  Page 18 of 103

Section 7. Every manufacturer or dealer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer or dealer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of not less than one hundred dollars nor more than one thousand dollars.

Section 8. Every machine gun now in this State adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber shall be registered in the office of the Secretary of the Commonwealth on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within twenty-four hours after its acquisition. Blanks for registration shall be prepared by the Secretary of the Commonwealth, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The Secretary of the Commonwealth shall immediately upon registration required in this section furnish the registrant with a certificate of registration, which shall be kept by the registrant and produced by him upon demand by any peace officer. Failure to keep or produce such certificate for inspection shall be a misdemeanor and punishable by a fine of not less than five nor more than one thousand dollars, and any peace officer may, without warrant, seize the machine gun and apply for its confiscation as provided in section nine of this act. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

Section 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber possessed in violation of this act may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the Commonwealth's attorney, a police officer or conservator of the peace, shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the State or a political subdivision thereof.

Section 10. If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given

effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

Section 11. This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Section 12. This act may be cited as the Uniform Machine Gun Act.

Section 13. All acts or parts of acts which are inconsistent with the provisions of this act are hereby repealed.

---

CHAP. 97.—An ACT to make effective the Constitutional provision to the effect that the General Assembly shall establish and maintain an efficient system of public free schools throughout the State, and to repeal all acts and parts of acts inconsistent with this act.                                   [S B 153]

Approved March 7, 1934

Whereas, section one hundred and twenty-nine of the Constitution of Virginia provides that "The General Assembly shall establish and maintain an efficient system of public free schools throughout the State," now, therefore,

1. Be it enacted by the General Assembly of Virginia, as follows:

Section 1. The school board of each and every school division in the State is hereby empowered and required to maintain the public free schools of such division for a period of at least eight months or one hundred and sixty teaching days in each school year. In order that each school division may have the funds necessary to enable the school board to maintain the elementary and high schools thereof for such minimum terms, it is hereby provided that when any county, city or town has legally complied with the existing laws with reference to local school levies, such school division or divisions shall be allotted out of the public school funds held in the treasury of the State for each group of twenty-five to forty pupils in average daily attendance, a sum equal to the amount to be derived by dividing said public school fund by the number of groups of twenty-five to forty pupils in average daily attendance in the State, depending upon the density of population, to be apportioned by the State Board of Education, as provided in section one hundred and thirty-five of the Constitution and in conformity with the provisions of the Code and of the Acts of the Assembly under such rules and regulations as may be set up by said State Board of Education.

Section 2. That in addition the counties and cities shall provide, from local school taxes, as provided in section one hundred and thirty-six of the Constitution of Virginia, for the supplementing of their instructional programs such amounts as will insure the services of properly prepared and effective teaching personnel, and to the degree that financial ability and community interest in education will permit; provided further, that the counties and cities shall provide, in keeping with the laws already existing, such funds as may be necessary for debt service, capital outlay, transportation, general operation and maintenance.

Exhibit B
Page 0011

# Exhibit C

Exhibit C
Page 0012

# LAWS

OF THE

# STATE OF ILLINOIS

ENACTED BY THE

## Fifty-seventh General Assembly

AT THE

## REGULAR BIENNIAL SESSION

BEGUN AND HELD AT THE CAPITOL, IN THE CITY OF
SPRINGFIELD, ON THE SEVENTH DAY OF JANUARY
A. D. 1931, AND ADJOURNED SINE DIE ON
THE THIRTIETH DAY OF JUNE, A. D. 1931



[Printed by authority of the State of Illinois]

Exhibit C
Page 0013

01

CRIMINAL CODE

owner or by destroying it or disposing of it according to the laws of the State of Illinois. Any officer of the law violating the provisions of this section is guilty of a misdemeanor and subject to a fine of not less than $100 nor more than $500, or imprisonment in the county jail for not less than one month nor more than six months, or both such fine and imprisonment.

APPROVED July 3, 1931.                    (Smith-Hurd, p. 1030)

------

## MACHINE GUNS.

§ 1.  Definitions.
§ 2.  Unlawful sale, possession, etc.— Exceptions.
§ 3.  Regulations for manufacturers and merchants.
§ 4.  Register to be kept.
§ 5.  Penalties.
§ 6.  Search warrants.
§ 7.  Committing crime when armed with machine gun—Penalty.

(SENATE BILL No. 18.   APPROVED JULY 2, 1931.)

AN ACT *to regulate the sale, possession and transportation of machine guns.*

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

SECTION 1. For purposes of this Act the term "machine gun" applies to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device.

The term "manufacturer" shall apply to and include all persons manufacturing machine guns; and

The term "merchant" shall apply to and include all persons dealing with machine guns as merchandise.

§ 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that

1. Sheriffs, constables, marshals, police officers and other duly appointed peace officers may purchase, possess, carry and transport machine guns.

2. The provisions of this Act shall not apply to the Army, Navy, or Marine Corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such Corps, National Guard and organizations while on duty, may possess, carry and transport machine guns.

3. Persons, organizations or institutions possessing war relics may purchase and possess machine guns which are relics of any war in which the United States was involved, may exhibit and carry such machine guns in the parades of any military organization, and may sell, offer to sell, loan or give such machine guns to other persons, organizations or institutions possessing war relics.

4. Guards or messengers employed by common carriers, banks and trust companies, and pay-roll guards or messengers may possess and carry machine guns while actually employed in and about the shipment,

Exhibit C
Page 0014

transportation or delivery, or in the guarding of any money, treasure, bullion, bonds or other thing of value, and their employers may purchase or receive machine guns and keep them in their possession when such guns are not being used by such guards or messengers.

5. Manufacturers and merchants may sell, keep or offer for sale, loan or give away, purchase, possess and transport, machine guns, in the same manner as other merchandise except as hereinafter provided, and common carriers may possess and transport unloaded machine guns, as other merchandise.

§ 3. No manufacturer or merchant shall permit any machine gun to pass from his possession to the possesion of any person other than

1. A manufacturer or a merchant.

2. A common carrier for shipment to a manufacturer or merchant.

3. A duly authorized agent of the government of the United States, or of this State, acting in his official capacity.

4. A person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of section 2 of this Act.

Manufacturers or merchants shall not deliver a machine gun to any of the persons authorized to purchase such gun under the provisions of exceptions 1 and 4 of section 2 hereof, unless such person presents a written permit to purchase and possess a machine gun, signed by the sheriff of the county wherein such manufacturer or merchant has his place of business or delivers such machine gun. The manufacturer or merchant shall retain such permit and keep it on file in his place of business. Each sheriff shall keep a record of all such permits issued by him.

§ 4. Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun.

Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business, for inspection by such officer.

§ 5. Any manufacturer or merchant who

1. Passes possession of a machine gun to any person not authorized to purchase and/or possess such gun under the provisions hereof; or

2. Passes possession of a machine gun to a person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of section 2 of this Act, without first receiving the written permit of a sheriff, as herein required; or

3. Fails to keep an accurate register, as provided in section 4; or

4. Fails, or is unable to produce or account for a sheriff's permit

Exhibit C
Page 0015

for each machine gun sold by him for which a permit is necessary under the provisions of section 3 hereof, upon conviction, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years.

Any other person who sells, keeps or offers for sale, loans or gives away, purchases, possesses, carries or transports any machine gun within this State, except as authorized by this Act, upon conviction, shall be imprisoned in the penitentiary for not less than one nor more than ten years.

Whoever, having been convicted of murder, robbery, burglary or assault with intent to commit a felony, thereafter violates any of the provisions of this Act, upon conviction, shall be imprisoned in the penitentiary for not less than three nor more than ten years.

§ 6. Warrants to search any house or place and seize any machine gun possessed in violation of this Act, may issue in the same manner and under the same restrictions as is provided by law in the case of personal property stolen, and the court upon application of the State's attorney shall have jurisdiction to order any machine gun so illegally possessed and seized, delivered to any officer, department or agency of the State or political subdivision of the State authorized by this Act to possess machine guns or to order the same sold to any person authorized to possess the same the proceeds to be covered into the treasury of the county in which the violation occurred.

§ 7. Any person committing or attempting to commit arson, assault, burglary, kidnapping, larceny, rioting, or robbery while armed with a machine gun shall be imprisoned in the penitentiary for his natural life, or for a term not less than five years.

APPROVED July 2, 1931.

---

### MOB VIOLENCE.

§ 1.  Amends sections 4 and 5, Act of
        1905.
    § 4.   Damage by violence—Pen-          § 5.   Heirs of victims may re-
           alty — Action   against                  cover from municipality.
           municipality.

(HOUSE BILL No. 974.  APPROVED JULY 3, 1931.)

AN ACT *to amend sections 4 and 5 of "An Act to suppress mob violence," approved May 16, 1905.*

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

SECTION 1.  Sections 4 and 5 of "An Act to suppress mob violence," approved May 16, 1905, are amended to read as follows:

§ 4. Any person or persons composing a mob under the provisions of this Act, who shall by violence inflict material damage to the property or serious injury to the person of any other person upon the pretense of exercising correctional powers over such person or persons, by violence and without authority of law, shall be deemed guilty of a felony, and shall suffer imprisonment in the penitentiary not exceeding five years; and any person so suffering material damage to property or injury to person by a mob shall have an action against the county,

Exhibit C
Page 0016

# Exhibit D

# A C T S

PASSED BY

# THE LEGISLATURE

OF THE

## STATE OF LOUISIANA

AT THE

## REGULAR SESSION

Begun and Held in the City of Baton
Rouge on the Ninth Day
of May, 1932.

———————

Constitutional Amendments Adopted at an Election
Held November 4, 1930, and a Special
Session of the Legislature Held
September 16, 1930.

———————

PUBLISHED BY AUTHORITY OF THE STATE.

———————

RAMIRES-JONES PRINTING CO.
BATON ROUGE, LA.
1 9 3 2

336

Section 2. That all laws or parts of laws in conflict with or inconsistent with the provision of this Act be and the same are hereby repealed.

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
Secretary of State.

---

ACT No. 79.

House Bill No. 753.                                    By Mr. Bauer.

AN ACT

Authorizing the Louisiana Highway Commission, with the approval of the Governor, to sell, at public or private sale, automobile, trucks, tractors, engineering implements, road machinery, and, all other equipment owned by the Commission and not actually in use for any public purpose, or when the use to which the same was devoted, or the use for which the same was acquired, has in fact been abandoned or discontinued, and repealing all laws in conflict herewith.

Louisiana Highway Commission authorized to dispose of automobiles, trucks, tractors, etc.

Section 1. Be it enacted by the Legislature of Louisiana, That the Louisiana Highway Commission, with the approval of the Governor, is hereby authorized to sell and dispose of, at public or private sale, for such price and on such terms as it may deem best any automobiles, trucks, tractors, engineering implements, road machinery and all other equipment of whatsoever nature or kind, owned by the Commission and not actually used for any public purpose, or when the use to which the same was devoted or the use for which the same was acquired, has in fact been abandoned or discontinued.

Section 2. That all laws or parts of laws in conflict herewith be and the same are hereby repealed.

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
Secretary of State.

---

ACT No. 80.

House Bill No. 424.                          By Mr. Gilmore,
                                                (By request).

AN ACT

To regulate the sale, possession and transportation of machine guns, and providing a penalty for a violation hereof; providing, further, that any one who has been

337

convicted of murder, robbery, burglary, or assault with intent to commit a felony, who violates any of the provisions of this Act, shall be guilty of a felony and punished as provided in this Act.

Section 1. Be it enacted by the Legislature of Louisiana, "That for the purpose of this Act the term "machine gun" applies to and include all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device. *Definitions.*

The term "manufacturer" shall apply to and include all persons manufacturing machine guns;

The term "merchant" shall apply to and include all persons dealing with machine guns as merchandise.

Section 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that: *Prohibiting the sale and possession of machine guns.*

1. Sheriffs, constables, marshals, police officers and other duly appointed peace officers may purchase, possess, carry and transport machine guns.

2. The provisions of this act shall not apply to the Army, Navy, or Marine Corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such Corps, National Guard and organizations while on duty, may possess, carry and transport machine guns.

3. Persons, organizations or institutions possessing war relics may purchase and possess machine guns, which are relics of any war in which the United States was involved, may exhibit and carry such machine guns in the parades of any military organization, and may sell, offer to sell, loan or give such machine guns to other persons, organizations or institutions possessing war relics.

4. Guards or messengers employed by common carriers, banks and trust companies, and pay-roll guards or messengers may possess and carry machine guns while actually employed in and about the shipment, transportation or delivery, or in the guarding of any money, treasure, bullion, bonds or other thing of value and their employers may purchase or receive machine guns and keep them in their possession when such guns are not being used by such guards or messengers.

338

5. Manufacturers and merchants may sell, keep or offer for sale, loan or give away, purchase, possess and transport, machine guns, in the same manner as other merchandise except as hereinafter provided, and common carriers may possess and transport unloaded machine guns, as other merchandise.

In possession of manufacturers and merchants.

Section 3. No manufacturer or merchant shall permit any machine gun to pass from his possession to the possession of any person other than:

1. A manufacturer or a merchant.

2. A common carrier for shipment to a manufacturer or merchant.

3. A duly .authorized agent of the government of the United States, or of this State, acting in his official capacity.

4. A person authorized to purchase a machine gun under the provisions of exceptions 1.and 4 of Section 2 of this Act.

Manufacturers or merchants shall not deliver a machine gun to any of the persons authorized to purchase such gun under the provisions of exceptions 1 and 4 of Section 2 hereof, unless such person presents a written permit to purchase and possess a machine gun, signed by the sheriff of the parish wherein such manufacturer or merchant has his place of business or delivers such machine gun. The manufacturer or merchant shall retain such permit and keep it on file in his place of business. Each sheriff shall keep a record of all such permits issued by him

Register to be kept by manufacturer and merchant.

Section 4. Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun.

Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business, for inspection by such officers.

Penalty for violation by manufacturer.

Section 5. Any manufacturer who:

1. Passes possession of a machine gun to any person not authorized to purchase or possess such gun under the provisions hereof; or

339

2. Passes possession of a machine gun to a person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of Section 2 of this Act, without first receiving the written permit of a sheriff, as herein required; or

3. Fails to keep an accurate register, as provided in Section 4; or

4. Fails, or is unable to produce or account for a sheriff's permit for each machine gun sold by him for which a permit is necessary under the provisions of Section 3 hereof, shall be guilty of a felony, and upon conviction shall be punished by imprisonment in the State penitentiary at hard labor for not less than one nor more than five years.

Any person who sells, keeps or offers for sale, loans or gives away, purchases, possesses, carries or transports any machine gun within this State, except as authorized by this Act, shall be guilty of a felony, and upon conviction shall be imprisoned in the State Penitentiary, at hard labor, for not less than one nor more than ten years.

Section 6. Whoever, having been convicted of murder, robbery, burglary or assault with intent to commit a felony, thereafter violates any of the provisions of this Act, shall be guilty of a felony, and upon conviction shall be imprisoned in the State Penitentiary, at hard labor, for not less than three nor more than ten years. *Penalty for committing felony.*

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
    Secretary of State.

---

## ACT No. 81.

House Bill No. 67.                          By Mr. Stich.

### AN ACT

To provide for the payment to any Judge of the Civil District Court for the Parish of Orleans of two-thirds pay, when he shall retire from active service as a member of said Court as authorized by the provisions of Section 8 of Article VII of the Constitution of 1921, and to require the City of New Orleans to budget and appropriate such sums as may be necessary to comply with the provisions of this Act.

Section 1. Be it enacted by the Legislature of Louisiana, That whenever any Judge of the Civil District Court for the Parish of Orleans shall retire from active service as a member of said Court, as authorized by the provisions of Section 8 of Article VII of the Constitution of 1921, said *Pay for retired Judges of Civil District Court for the Parish of Orleans.*

# Exhibit E

# Acts and Joint Resolutions

OF THE

# GENERAL ASSEMBLY

OF THE

# State of South Carolina

## PASSED AT THE REGULAR SESSION OF 1934

———

PRINTED BY ORDER OF THE GENERAL ASSEMBLY AND DESIGNED TO
FORM A PART OF THE THIRTY-EIGHTH VOLUME OF THE
STATUTES AT LARGE, COMMENCING WITH THE ACTS
OF THE REGULAR SESSION OF 1933

———

PRINTED UNDER THE DIRECTION OF THE
JOINT COMMITTEE ON PRINTING
GENERAL ASSEMBLY OF SOUTH CAROLINA

Exhibit E
Page 0024

(801)                    **No. 731.**

## AN ACT Regulating the Use and Possession of Machine Guns

**Section 1.   "Machine Gun" Defined.**——Be it enacted by the General Assembly of the State of South Carolina: For the purpose of this Act the word "machine gun" applies to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device.

§ 2.   **Transportation of Machine Gun.**——It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or from any railroad company, or express company, or other common carrier, or any officer, agent, or employe of any of them, or any other person acting in their behalf knowingly to ship or to transport from one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm as described hereinabove or commonly known as a machine gun.

§ 3.   **Storing, Keeping, and/or Possessing Machine Gun.**——It shall be unlawful for any person to store, keep possess, or have in possession, or permit another to store, keep possess, or have in possession except as hereinafter provided, any firearm of the type defined above or commonly known as a machine gun.

§ 4.   **Selling, Renting or Giving away Machine Gun.**——It shall be unlawful for any person to sell, rent, or give away, or be interested directly or indirectly, in the sale, renting or giving away, or otherwise disposing of any firearm of the type above described or commonly known as a machine gun.

§ 5.   **Exceptions——Register Machine Guns.**——The provisions of this Act shall not apply to the army, navy, or marine corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such corps. National Guard and organizations while on duty or at drill, may possess, carry and transport machine guns, and, *Provided, further,* That any peace officer of the State, counties or political sub-division thereof, State Constable, member of the Highway patrol, railway policemen, warden, superintendents, headkeeper or deputy of any

State prison, penitentiary, workhouse, county jail, city jail, or other institution for the detention of persons convicted or accused of crime, or held as witnesses in criminal cases, or persons on duty in the postal service of the United States, or common carrier while transporting direct to any police department, military or naval organization, or person authorized by law to possess or use a machine gun, may possess machine guns when required in the performance of their duties, nor shall the provisions of this Act be construed to apply to machine guns kept for display as relics and which are rendered harmless and not usable. Within thirty days after the passage of this Act every person permitted by this Act to possess a machine gun or immediately after any person is elected to or appointed to any office or position which entitles such person to possess a machine gun, shall file in the office of the Secretary of State on a blank to be supplied by the Secretary of State on application therefor, an application to be properly sworn to, which shall be approved by the Sheriff of the county in which the applicant resides or has its principal place of business, which shall include the applicant's name, residence and business address, description including sex, race, age, weight, height, color of eyes, color of hair, whether or not ever charged or convicted of any crime, municipal, State or otherwise, and where, if so charged, and when same was disposed of. The applicant shall also give the description including the serial number and make of the machine gun which he possesses or desires to possess. Thereupon, the Secretary of State shall file such application in his office, registering such applicant together with the information required in the application in a book or index to be kept for that purpose, and assign to him a number, and issue to him a card which shall bear the signature of the applicant, and which he shall keep with him while he has such machine gun in his possession. Such registration shall be made on the date application is received and filed with the Secretary of State, and shall expire on December 31, of the year in which said license is issued.

§ 6.  **Penalty.**—Any person violating any of the provisions of this Act shall be guilty of a felony, and, on conviction thereof, shall be sentenced to pay a fine not exceeding One Thousand Dollars, and undergo imprisonment by separate or solitary confinement at labor not exceeding twenty (20) years.

§ 7.  This Act shall go into effect immediately upon its approval by the Governor.

Approved the 2nd day of March, 1934.

# Exhibit F

# Chapter 47. Dangerous Articles

## § 47-5. Firearms, shotguns, rifles and other dangerous weapons.

[Amended 9-11-1951; 1-11-1955; 5-10-1960; 1-27-1970 by Ord. No. 70-36; 5-28-1974 by Ord. No. 74-180; 5-27-1986 by Ord. No. 86-163; 3-16-1993 by Ord. No. 93-62]

A.  Purpose and intent. The Council finds that violent crime is a serious problem in the City and firearms and other dangerous weapons are frequently used in the commission of crimes, particularly homicides and assaults. The possession of such weapons also often leads to accidental deaths and injuries. The possession and use of assault weapons and ammunition feeding devices for criminal purposes is increasing and poses a serious danger to public safety. The use of weapons by persons under the influence of drugs and/or alcohol can readily lead to serious injury or death. The possession of weapons in public facilities and places also poses a serious danger to public safety. The possession of toy or imitation weapons which substantially duplicate actual weapons poses a danger to the person possessing the weapon and to others. In order to promote and protect the health, safety and welfare of the public, the Council finds it necessary to place restrictions upon the possession and use of such weapons. The restrictions imposed by this section are intended to be in addition to restrictions found in state law and are not intended to conflict with state law provisions.

B.  As used in this section, the following terms shall have the meanings indicated:

**AIR GUN**
Any pistol, revolver, rifle or shotgun which fires projectiles by means of a spring or compressed air or other gas, instead of an explosive.
[Amended 12-15-2009 by Ord. No. 2009-410[2]]

**AMMUNITION**
Explosives suitable to be fired from a firearm, machine gun, pistol, revolver, rifle, shotgun, assault weapon or other dangerous weapon.

**AMMUNITION FEEDING DEVICE**
Magazines, belts, feedstrips, drums or clips capable of being attached to or utilized with any center-fire rifle, shotgun or pistol which employs the force of the expanding gases from a discharging cartridge to chamber a fresh round after each single pull of the trigger which, in the case of a rifle or shotgun holds in excess of five cartridges, or in the case of a pistol holds in excess of 17 cartridges.

**ASSAULT WEAPON**

(1)  Any center-fire rifle or shotgun which employs the force of the expanding gases from a discharging cartridge to chamber a fresh round after each single pull of the trigger, and which is loaded or capable of being loaded with a combination of more than six cartridges in the ammunition feeding device and chamber combined. For the purposes of this section, a weapon is capable of being loaded if it is possessed by one who, at the same time, possesses:

(a)  In the case of a rifle, a fixed or detachable ammunition feeding device which is attached to or utilized with or capable of being attached to or utilized with such rifle and which has a

Exhibit F
Page 0028
1/6/2018, 2:50 PM

capacity of more than five cartridges; or

    (b)  In the case of a shotgun, an ammunition feeding device which is attached to or utilized with or capable of being attached to or utilized with such shotgun and which has a capacity of more than five cartridges.

(2)  A center-fire rifle or shotgun which employs the force of expanding gases from a discharging cartridge to chamber a fresh round after each single pull of the trigger, and which has:

    (a)  A flash suppressor attached to the weapon reducing muzzle flash;

    (b)  A grenade launcher;

    (c)  A sighting device making a target visible at night;

    (d)  A barrel jacket surrounding all or a portion of the barrel to dissipate heat therefrom; or

    (e)  A multi-burst trigger activator.

(3)  Any stockless pistol grip shotgun.

(4)  The following weapons manufactured prior to the effective date of this section. [NOTE: This section was found unconstitutional by the Honorable Charles J. Siragusa, Supreme Court Justice, Monroe County, in Citizens for a Safer Community v. City of Rochester, Index No. 93-08421.]

(5)  For purposes of this section, the term "assault weapon" shall not include any of the following:

    (a)  Any weapon which has been modified to render it permanently inoperable or permanently make it a device no longer defined as an "assault weapon";

    (b)  Weapons that do not use cartridges or shells;

    (c)  Manually operated bolt-action weapons, lever-action weapons, slide-action weapons or single-shot weapons;

    (d)  Multiple-barrel weapons, revolving-cylinder weapons except shotguns, weapons that use exclusively a rotary Mannlicher-style magazine; or

    (e)  Any antique firearm as defined in § 265.00 of the New York State Penal Law or any curio or relic as defined under United States law which is possessed by a licensed collector in accordance with United States Law.

**DISPOSE OF**
To dispose of, give away, give, lease, loan, keep for sale, offer, offer for sale, sell, transfer or otherwise dispose of.

**DRUG**
Any substance listed in § 3306 of the Public Health Law of the State of New York.

**DWELLING**
As defined in Chapter 120 of the Municipal Code, Zoning Code.
[Amended 11-19-2002 by Ord. No. 2002-354]

**FIREARM**
Any pistol or revolver; or a shotgun having one or more barrels less than 18 inches in length or any weapon made from a shotgun (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than 26 inches; or a rifle having one or more barrels less than 16 inches in length or any weapon made from a rifle (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than 26 inches. For purposes of this definition, the length of the barrel on a shotgun or rifle shall be determined by measuring the

Exhibit F
Page 0029
4/6/2018, 2:50 PM

distance between the muzzle and the face of the bolt, breech or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Such definition, except as otherwise indicated, shall include both loaded and unloaded firearms, except that it shall not include any antique firearm as defined in federal or New York State law or any curio or relic as defined under United States law which is possessed by a licensed collector in accordance with United States law.

**PARK**

As defined in § 79-1 of the Municipal Code.

**POSSESS**

Have physical possession or otherwise to exercise dominion or control over. The presence in an automobile of any firearm, rifle or shotgun which is openly visible is presumptive evidence of its possession by all persons occupying such automobile at the time such firearm, rifle or shotgun is found, except if such firearm, rifle or shotgun is found in a vehicle for hire.

**PUBLIC FACILITY**

Any building or facility owned, leased, operated or controlled by or on behalf of any government, municipality or public authority or corporation within the boundaries of the City, except buildings or facilities used for educational purposes.

**PUBLIC PLACE**

Any street, including the sidewalk portion thereof, park, playground, recreation area, cemetery or lot owned, leased, operated or controlled by or on behalf of any government, municipality or public authority or corporation within the boundaries of the City, which is generally accessible to the public, except grounds used for educational purposes.

**RIFLE**

A weapon designed or redesigned, made or remade and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

**SHOTGUN**

A weapon designed or redesigned, made or remade and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

[2]   *Editor's Note: This ordinance provided an effective date of 1-11-2010.*

C.   No person shall possess a loaded or unloaded firearm, rifle, shotgun or air gun, or a dagger, dangerous knife, dirk, razor or stiletto, in a public place or public facility in the City. This prohibition shall not apply to:

(1)   A police officer or peace officer authorized to possess the same;

(2)   A government employee or licensed security guard authorized or required by employment or office to possess the same while acting within the scope of such employment;

(3)   A person in the military service of the State of New York or the United States when duly authorized to possess the same;

(4)   A person transporting a rifle or shotgun in a motor vehicle in the City in accordance with the provisions of § 11-0931, Subdivision 2, of the New York State Environmental Conservation Law, or otherwise transporting an unloaded rifle, shotgun or air gun in the City, provided that the same is completely enclosed or contained in a nontransparent carrying case and either:

(a)   Said carrying case is locked; or

Exhibit F
Page 0030
4/6/2018, 2:50 PM

(b)  A locking device is attached to the weapon and locked in a manner so as to prevent the weapon from being fired;

(5)  An authorized person who, for the purpose of shooting practice, possesses a weapon at an established target range in a public place other than a park or public facility;

(6)  A person voluntarily surrendering the same in accordance with the provisions of § 265.20 of the Penal Law; or

(7)  Possession of a firearm by a person licensed to carry a firearm pursuant to § 400.00 of the Penal Law or possession or transportation by a gunsmith or dealer in firearms in accordance with a license issued by the State of New York or the United States, except that this subsection shall not apply in a park or a public facility other than a parking garage.

D.  No person shall store a firearm, rifle, shotgun or air gun in a dwelling in the City unless said firearm, rifle, shotgun or air gun is completely enclosed or contained in a nontransparent locked carrying case or in a locked gun rack, cabinet, closet or safe, or a locking device is attached to the weapon and locked in a manner so as to prevent the weapon from being fired. This requirement shall not apply to a rifle, shotgun or licensed firearm carried on the body of the owner or within such close proximity of the owner that the owner can retrieve it as quickly and easily as if it were carried on the owner's body.

E.  No person shall dispose of any firearm, rifle, shotgun, air gun or ammunition in the City. This prohibition shall not apply to:

(1)  A gunsmith or dealer in firearms duly licensed by the State of New York or the United States;

(2)  A person disposing of the same to a gunsmith or dealer in firearms duly licensed by the State of New York or the United States;

(3)  A person voluntarily surrendering the same in accordance with the provisions of § 265.20 of the Penal Law;

(4)  A person disposing of a licensed firearm in accordance with law;

(5)  Disposition by intestate or testamentary bequest; or

(6)  A person disposing of a rifle, shotgun, air gun or ammunition to a family member.

F.  No person shall possess an assault weapon or an ammunition feeding device in the City. This prohibition shall not apply to:

(1)  A police officer or peace officer authorized to possess the same;

(2)  A person in the military service of the State of New York or the United States when duly authorized to possess the same;

(3)  A person voluntarily surrendering the same in accordance with the provisions of § 265.20 of the Penal Law; or

(4)  A gunsmith or dealer in firearms duly licensed by the State of New York or the United States for weapons to be used by police officers or persons in the military service or for delivery outside of the City.

G.  No person shall dispose of an assault weapon or ammunition feeding device in the City. This prohibition shall not apply to:

(1)  A person voluntarily surrendering the same in accordance with the provisions of § 265.20 of the Penal Law; or

(2)  A gunsmith or dealer in firearms duly licensed by the State of New York or the United States for weapons to be used by police officers or persons in the military service or for delivery outside of the City.

Exhibit F
Page 003    4/6/2018, 2:50 PM

H.  No person shall carry a firearm, shotgun, rifle or air gun in the City while such person has $1/10$ of 1% or more by weight of alcohol in the person's blood as shown by chemical analysis of the person's blood, breath, urine or saliva.

I.  No person shall carry a firearm, shotgun, rifle or air gun in the City while in an intoxicated condition.

J.  No person shall carry a firearm, shotgun, rifle or air gun in the City while the person's ability to safely carry such weapon is impaired by the use of a drug.

K.  Any person who carries a firearm, shotgun, rifle or air gun in this City shall be deemed to have given consent to a breath test and a chemical test of the person's breath, blood, urine or saliva for the purpose of determining the alcoholic or drug content of the person's blood, provided that any test is administered at the direction of a police officer having reasonable grounds therefor. A chemical test must be administered within two hours after such person has been placed under arrest for a violation of this section or any other law or ordinance involving the use or possession of a firearm, rifle, shotgun or air gun, or within two hours after a breath test indicates that alcohol has been consumed by such person. Upon the trial of any action arising out of an arrest for a violation of Subsection H, I or J of this section, the court shall admit evidence of the amount of alcohol or drugs in the blood of the person carrying the firearm, shotgun, rifle or air gun as shown by a test administered pursuant to this section. Evidence of a refusal to submit to a chemical test shall be admissible in any trial, proceeding or hearing based upon a violation of such subsections, but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and the person persisted in such refusal.

L.  [NOTE: Some provisions of this section were found unconstitutional by the Honorable Charles J. Siragusa, Supreme Court Justice, Monroe County, in Citizens for a Safer Community v. City of Rochester, Index No. 93-08421.]

M.  Discharge of weapons; permits.

(1)  No person shall discharge an air gun, shotgun, rifle, assault weapon, machine gun, submachine gun or a firearm of any kind or description in the City, except police officers, peace officers, members of the military and persons holding permits as in this subsection provided.

(2)  The Chief of Police is hereby authorized to grant permits for the discharge of shotguns at clay pigeons at any particular location or for the discharge of weapons at target ranges subject to such restrictions and conditions as the Chief may deem necessary. Any person holding such a permit shall obey all the restrictions and conditions contained herein.

N.  The owner of a firearm, shotgun, rifle, assault weapon, machine gun or submachine gun, which becomes lost or stolen, shall report the loss or theft to the Rochester Police Department within 24 hours after the loss or theft is discovered or reasonably should be discovered. The owner of such a weapon shall store the weapon in a safe and secure manner as required in Subsection D of this section and shall check such weapon at least once each week, or immediately upon returning to the City if the owner is absent from the City for more than one week. Failure to perform such a check shall not be a defense to a prosecution for a violation of this subsection.
[Added 9-15-1998 by Ord. No. 98-345[3]]
[3]     Editor's Note: This ordinance also relettered former Subsections N and O as Subsections O and P.

O.  Notwithstanding the penalties contained in § 47-8, a violation of any provision of this section shall be punishable by a fine not to exceed $1,000 or by imprisonment not to exceed 180 days, or by both such fine and imprisonment.

P.  The provisions of this section are severable, and if any of its provisions shall be held unconstitutional or invalid, the decision of the court shall not affect or impair any of the remaining provisions of the same. It is hereby declared to be the intention of the Council that this section would have been adopted had such unconstitutional or invalid provision not been included herein. If any term or provision of this section shall be declared unconstitutional, invalid or ineffective in whole, or in part, by a court of competent jurisdiction, then to the extent that it is not constitutional, invalid or ineffective, such term or provision shall be in force and effect, nor shall such determination be deemed to invalidate the remaining terms or

Exhibit F
Page 0032   4/6/2018, 2:50 PM

provisions thereof.

[1]    *Editor's Note: For additional provisions relating to firearms, see Ch. 43, Cemeteries, § 43-11, and Ch. 79, Parks, § 79-5.*

Exhibit F
Page 0033

4/6/2018, 2:50 PM

# Exhibit G

Print

Municipal Code of Chicago

## 8-20-010 Definitions.

For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however:

(1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means any of the following, regardless of the caliber of ammunition accepted:

(a) (1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:

(A) a folding, telescoping or detachable stock;

(B) a handgun grip;

(C) a forward grip;

(D) a threaded barrel;

(E) a grenade, flare or rocket launcher; or

(F) a barrel shroud.

(2) A semiautomatic rifle that has a fixed magazine with the capacity to accept more than 10 rounds, except for an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

(3) A semiautomatic version of an automatic rifle.

(4) Any part, combination of parts, component, device, attachment, or accessory that is designed or functions to accelerate the rate of fire of a semiautomatic rifle but not convert the semiautomatic rifle into a machine gun.

(5) A semiautomatic shotgun that has one or more of the following:

(A) a folding, telescoping or detachable stock;

(B) a handgun grip;

(C) a fixed magazine with the capacity to accept more than 5 rounds;

Exhibit G
Page 0035

(D)  a forward grip; or

(E)  a grenade, flare or rocket launcher.

(6)  A semiautomatic handgun that has the ability to accept a detachable magazine and has one or more of the following:

(A)  the capacity to accept a detachable magazine at some location outside of the handgun grip;

(B)  a threaded barrel;

(C)  a barrel shroud; or

(D)  a second handgun grip.

(7)  A semiautomatic version of an automatic handgun.

(8)  A semiautomatic handgun with a fixed magazine that has the capacity to accept more than 15 rounds.

(9)  A machine gun.

(10)  All of the following rifles, including any copies or duplicates thereof with the capability of any such weapon:

(A)  All AK types, including the following:

(i)  AK, AK47, AK47S, AK-74, AKM, AKS, ARM, MAK90, MISR, NHM90. NHM91, Rock River Arms LAR-47, SA85, SA93, Vector Arms AK-47, VEPR, WASR-10, and WUM

(ii)  IZHMASH Saiga AK

(iii)  MAADI AK47 and ARM

(iv)  Norinco 56S, 56S2, 84S, and 86S

(v)  Poly Technologies AK47 and AKS.

(B)  All AR types, including the following:

(i)  AR-10

(ii)  AR-15

(iii)  Armalite M15 22LR Carbine

(iv)  Armalite M15-T

(v)  Barrett REC7

(vi)  Beretta AR-70

(vii)  Bushmaster ACR

(viii)  Bushmaster Carbon 15

(ix)  Bushmaster MOE series

(x)  Bushmaster XM15

(xi)  Colt Match Target Rifles

(xii)  DoubleStar AR rifles

(xiii)  DPMS Tactical Rifles

(xiv)  Heckler & Koch MR556

(xv)  Olympic Arms

(xvi)  Remington R-15 rifles

(xvii)  Rock River Arms LAR-15

(xviii)  Sig Sauer SIG516 rifles

(xix)  Smith & Wesson M&P15 rifles

(xx)  Stag Arms AR rifles

(xxi)  Sturm, Ruger & Co. SR556 rifles.

(C)  Barrett M107A1.

(D)  Barrett M82A1.

(E)  Beretta CX4 Storm.

(F)  Calico Liberty Series.

(G)  CETME Sporter.

(H)\  Daewoo K-1. K-2, Max 1, Max 2, AR 100. and AR 110PC.

(I)  Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000.

(J)  Feather Industries AT-9.

(K)  Galil Model AR and Model ARM.

(L)  Hi-Point Carbine.

(M)  HK-91, HK-93, HK-94, HK-PSG-1, and HK USC.

(N)  Kel-Tec Sub-2000, SU-16, and RFB.

(O)  SIG AMT, SIG PE-57, Sig Sauer SG 550, and Sig Sauer SG 551.

(P)  Springfield Armory SAR-48.

(Q)  Steyr AUG.

(R)  Sturm, Ruger Mini-14 Tactical Rife M-14/20CF.

(S)  All Thompson rifles, including the following:

Exhibit G
Page 0037

4/6/2018, 3:18 PM

https://library.municipal.com/releases/system/content.aspx

(i)   Thompson M1SB

(ii)   Thompson T1100D

(iii)   Thompson T150D

(iv)   Thompson T1B

(v)   Thompson T1B100D

(vi)   Thompson T1B50D

(vii)   Thompson T1BSB

(viii)   Thompson T1-C

(ix)   Thompson T1D

(x)   Thompson T1SB

(xi)   Thompson T5

(xii)   Thompson T5100D

(xiii)   Thompson TM1

(xiv)   Thompson TM1C.

(T)   UMAREX UZI Rifle.

(U)   UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine.

(V)   Valmet M62S, M71S, and M78.

(W)   Vector Arms UZI Type.

(X)   Weaver Arms Nighthawk.

(Y)   Wilkinson Arms Linda Carbine.

(11)   All of the following handguns, including any copies or duplicates thereof with the capability of any such weapon:

(A)   All AK-47 types, including the following:

(i)   Centurion 39 AK handgun

(ii)   Draco AK-47 handgun

(iii)   HCR AK-47 handgun

(iv)   IO, Inc. Hellpup AK-47 handgun

(v)   Krinkov handgun

(vi)   Mini Draco AK-47 handgun

(vii)   Yugo Krebs Krink handgun.

Exhibit G
Page 0038

(B)  All AR-15 types, including the following:

  (i)  American Spirit AR-15 handgun

  (ii)  Bushmaster Carbon 15 handgun

  (iii)  DoubleStar Corporation AR handgun

  (iv)  DPMS AR-15 handgun

  (v)  Olympic Arms AR-15 handgun

  (vi)  Rock River Arms LAR 15 handgun.

(C)  Calico Liberty handguns.

(D)  PSA SA58 PKP FAL handgun.

(E)  Encom MP-9 and MP-45.

(F)  Heckler & Koch model SP-89 handgun.

(G)  Intratec AB-10, TEC-22 Scorpion, TEC-9, and TEC-DC9.

(H)  Kel-Tec PLR 16 handgun.

(I)  The following MAC types:

  (i)  MAC-10

  (ii)  MAC-11

  (iii)  Masterpiece Arms MPA A930 Mini Pistol, MPA460 Pistol. MPA Tactical Pistol, and MPA Mini Tactical Pistol

  (iv)  Military Armament Corp. Ingram M-11

  (v)  Velocity Arms VMAC.

(J)  Sig Sauer P556 handgun.

(K)  Sites Spectre.

(L)  All Thompson types, including the following:

  (i)  Thompson TA510D

  (ii)  Thompson TA5.

(M)  All UZI types, including Micro-UZI.

(12)  All of the following shotguns, including any copies or duplicates thereof with the capability of any such weapon:

(A)  Franchi LAW-12 and SPAS 12.

(B)  All IZHMASH Saiga 12 types, including the following:

  (i)  IZHMASH Saiga 12

Exhibit G
Page 0039

4/6/2018, 3:18 PM

      (ii)  IZHMASH Saiga 12S

      (iii)  IZHMASH Saiga 12S EXP-01

      (iv)  IZHMASH Saiga 12K

      (v)  IZHMASH Saiga 12K-030

      (vi)  IZHMASH Saiga 12K-040 Taktika.

    (C)  Streetsweeper.

    (D)  Striker 12.

    (13)  All belt-fed semiautomatic firearms, including TNW M2HB.

    (14)  Any combination of parts from which a firearm described in subparagraphs (1) through (13) can be assembled.

    (15)  The frame or receiver of a rifle or shotgun described in subparagraph (1), (2), (5), (9), (10), (12), (13), or (18).

    (16)  A sawed-off shotgun.

    (17)  A short-barrel rifle.

    (18)  A .50 caliber rifle.

  (b)  An "assault weapon" shall not include any firearm that:

    (1)  is manually operated by bolt, pump, lever, or slide action:

    (2)  has been rendered permanently inoperable. "Permanently inoperable" means a firearm which is incapable of discharging a projectile by means of an explosive and incapable of being restored to a firing condition; or

    (3)  is an antique firearm.

  (c)  For purposes of this definition of "assault weapon" the following terms apply:

    (1)  "barrel shroud" means a shroud that is attached to, or partially or completely encircles, the barrel of a firearm so that the shroud protects the user of the firearm from heat generated by the barrel. The term does not include (i) a slide that partially or completely encloses the barrel; or (ii) an extension of the stock along the bottom of the barrel which does not completely or substantially encircle the barrel.

    (2)  "detachable magazine" means an ammunition feeding device that can be removed from a firearm without disassembly of the firearm action.

    (3)  "fixed magazine" means an ammunition feeding device that is permanently fixed to the firearm in such a manner that it cannot be removed without disassembly of the firearm.

    (4)  "folding, telescoping, or detachable stock" means a stock that folds, telescopes, detaches or otherwise operates to reduce the length, size, or any other dimension, or otherwise to enhance the concealability, of a firearm.

    (5)  "forward grip" means a grip located forward of the trigger that functions as a handgun grip.

Exhibit G

(6)  "rocket" means any simple or complex tubelike device containing combustibles that on being ignited liberate gases whose action propels the device through the air and has a propellant charge of not more than 4 ounces.

(7)  "grenade, flare or rocket launcher" means an attachment for use on a firearm that is designed to propel a grenade, flare, rocket, or other similar device.

(8)  "handgun grip" means a grip, a thumbhole stock, or any other part, feature or characteristic that can function as a grip.

(9)  "threaded barrel" means a feature or characteristic that is designed to allow for the attachment of a device such as a firearm silencer or a flash suppressor.

(10)  "belt-fed semiautomatic firearm" means any repeating firearm that:

(i)  utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round;

(ii)  requires a separate pull of the trigger to fire each cartridge; and

(iii)  has the capacity to accept a belt ammunition feeding device.

(11)  ".50 caliber rifle" means a centerfire rifle capable of firing a .50 caliber cartridge. The term does not include any antique firearm, any shotgun including a shotgun that has a rifle barrel, or any muzzle-loader which uses black powder for hunting or historical re-enactments.

(12)  ".50 caliber cartridge" means a fixed cartridge in .50 BMG caliber, either by designation or actual measurement, that is capable of being fired from a centerfire rifle. ".50 caliber cartridge" does not include any memorabilia or display item that is filled with a permanent inert substance or that is otherwise permanently altered in a manner that prevents ready modification for use as live ammunition or shotgun ammunition with a caliber measurement that is equal to or greater than .50 caliber.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas.  Provided, that such term shall not include:

(1)  any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;

(2)  any device used exclusively for line- throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(3)  any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

Exhibit G
Page 0041
4/6/2018, 3:18 PM

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"High capacity magazine" means a magazine, belt, drum, feed strip, or similar device, including any such device joined or coupled with another in any manner, that has an overall capacity of more than 15 rounds of ammunition. A "high capacity magazine" does not include an attached tubular device to accept, and capable of operating only with, .22 caliber rimfire ammunition.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Licensed shooting range facility" means a shooting range facility that is duly licensed pursuant to Chapter 4-151.

"Licensee of a licensed shooting range facility" or "licensee" means any person issued a shooting range facility license under Chapter 4-151.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Sawed-off shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Manager", "Employee", "Range Master", "CCL", "Shooting range patron" and "Shooting range facility" have the meaning ascribed to those terms in Section 4-151-010.

(Added Coun. J. 7-2-10, p. 96234, § 4; Amend Coun. J. 7-6-11, p. 3073, § 4; Amend Coun. J. 1-17-13, p. 45370, § 4; Amend Coun. J. 7-17-13, p. 57262, § 1; Amend Coun. J. 9-11-13, p. 59869, § 3)

**8-20-085  High capacity magazines and certain tubular magazine extensions – Sale and possession prohibited – Exceptions.**

(a)  It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or tubular magazine extension for a shotgun. This section shall not apply to

Exhibit G
Page 0042

corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess a high capacity magazine or tubular magazine extension for a shotgun, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or tubular magazine extension for a shotgun to people authorized to possess them under this section.

(b)  Any high capacity magazine or tubular magazine extension for a shotgun carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

(Added Coun. J. 7-2-10, p. 96234, § 4; Amend Coun. J. 7-17-13, p. 57262, § 1)

Exhibit G
Page 0043

# Exhibit H

**Sunnyvale Municipal Code**

<u>U</u>p    <u>P</u>revious    <u>N</u>ext    <u>M</u>ain         <u>S</u>earch    <u>P</u>rint    No F<u>r</u>ames

Title 9. PUBLIC PEACE, SAFETY OR WELFARE
  Chapter 9.44. FIREARMS

### 9.44.050. Possession of large-capacity ammunition magazines prohibited.

(a)   No person may possess a large-capacity magazine in the city of Sunnyvale whether assembled or disassembled. For purposes of this section, "large-capacity magazine" means any detachable ammunition feeding device with the capacity to accept more than ten (10) rounds, but shall not be construed to include any of the following:

(1)   A feeding device that has been permanently altered so that it cannot accommodate more than ten (10) rounds; or

(2)   A .22 caliber tubular ammunition feeding device; or

(3)   A tubular magazine that is contained in a lever-action firearm.

(b)   Any person who, prior to the effective date of this section, was legally in possession of a large-capacity magazine shall have ninety (90) days from such effective date to do either of the following without being subject to prosecution:

(1)   Remove the large-capacity magazine from the city of Sunnyvale; or

(2)   Surrender the large-capacity magazine to the Sunnyvale Department of Public Safety for destruction; or

(3)   Lawfully sell or transfer the large-capacity magazine in accordance with Penal Code Section 12020.

(c)   This section shall not apply to the following:

(1)   Any federal, state, county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties;

(2)   Any government officer, agent, or employee, member of the armed forces of the United States, or peace officer, to the extent that such person is otherwise authorized to possess a large-capacity magazine and does so while acting within the course and scope of his or her duties;

(3)   A forensic laboratory or any authorized agent or employee thereof in the course and scope of his or her duties;

(4)   Any entity that operates an armored vehicle business pursuant to the laws of the state, and an authorized employee of such entity, while in the course and scope of his or her employment for purposes that pertain to the entity's armored vehicle business;

(5)   Any person who has been issued a license or permit by the California Department of Justice pursuant to Penal Code Sections 18900, 26500-26915, 31000, 32315, 32650, 32700-32720, or 33300, when the posses-

sion of a large-capacity magazine is in accordance with that license or permit;

(6)   A licensed gunsmith for purposes of maintenance, repair or modification of the large-capacity magazine;

(7)       Any person who finds a large-capacity magazine, if the person is not prohibited from possessing firearms or ammunition pursuant to federal or state law, and the per- son possesses the large-capacity magazine no longer than is reasonably necessary to deliver or transport the same to a law enforcement agency;

(8)   Any person lawfully in possession of a firearm that the person obtained prior to January 1, 2000, if no magazine that holds fewer than 10 rounds of ammunition is compatible with the firearm and the person possesses the large-capacity magazine solely for use with that firearm.

(9)   Any retired peace officer holding a valid, current Carry Concealed Weapons (CCW) permit issued pursuant to California Penal Code. (Ord. 3027-13 § 1).

Exhibit H
Page 0045

View the mobile version.

Exhibit H
Page 0046

# Exhibit I

Exhibit I
Page 0047

Print

Los Angeles Municipal Code

## SEC. 46.30. LARGE-CAPACITY MAGAZINES – POSSESSION PROHIBITED.

(a)  **Definitions.**

(1)  "**LARGE-CAPACITY MAGAZINE**" means any detachable ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:

(i)  A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.

(ii)  A .22 caliber tube ammunition feeding device.

(iii)  A tubular magazine that is contained in a lever-action firearm.

(b)  **Prohibition on Possession of Large-Capacity Magazines.**

(1)  It is unlawful for any person to possess any large-capacity magazine, except as otherwise authorized by law, whether assembled or disassembled.

(2)  Any person who, prior to the effective date of this article, was legally in possession of a large-capacity magazine shall have 60 days from such effective date to do any of the following without being subject to prosecution:

(i)  Remove the large-capacity magazine from the City of Los Angeles;

(ii)  Surrender the large-capacity magazine to the Los Angeles Police Department for destruction;

(iii)  Sell or transfer the large-capacity magazine lawfully in accordance with Section 32410 of the California Penal Code.

(c)  **Exemptions.** The provisions of Subsection (b) shall not apply to the following:

(1)  Any government officer, agent, or employee, member of the armed forces of the United States, or peace officer, to the extent that such person is otherwise authorized by his or her respective federal, state, county, or city law enforcement or military agency to possess a large-capacity magazine for use in accordance with the law enforcement policy of the agency; **(Amended by Ord. No. 184,007, Eff. 1/26/16.)**

(2)  A person licensed pursuant to Sections 26700 to 26915 of the California Penal Code;

(3)  A gunsmith for the purpose of maintenance, repair or modification of the large-capacity magazine;

Exhibit I
Page 0048

(4)   Any entity that operates an armored vehicle business pursuant to the laws of the state, and an authorized employee of such entity, while in the course and scope of his or her employment for purposes that pertain to the entity's armored vehicle business;

(5)   Any person, corporation or other entity that manufactures the large-capacity magazine for a person mentioned in Subdivision (1), or for export pursuant to applicable federal regulations;

(6)   Any person using the large-capacity magazine solely as a prop for a motion picture, television or video production;

(7)   Any holder of a special weapons permit issued pursuant to California Penal Code Sections 18900, 31000, 32650, 32700-32720, or 33300;

(8)   Any person issued a permit pursuant to California Penal Code Section 32315 by the Department of Justice upon a showing of good cause for the possession, transportation or sale of large-capacity magazines between a person licensed pursuant to Sections 26700 to 26915 of the California Penal Code, and an out-of-state client, when those activities are in accordance with the terms and conditions of the permit;

(9)   Any federal, state or local historical society, museum or institutional collection which is open to the public, provided that the large-capacity magazine is properly housed, secured from unauthorized handling and unloaded;

(10)   Any person who finds the large-capacity magazine, if the person is not prohibited from possessing firearms or ammunition pursuant to federal or state law, and the person possesses the large-capacity magazine no longer than is necessary to deliver or transport the same to a law enforcement agency for that agency's disposition according to the law;

(11)   A forensic laboratory or any authorized agent or employee thereof in the course and scope of his or her authorized activities;

(12)   Any person in the business of selling or transferring large-capacity magazines in accordance with California Penal Code Section 32310 who is in possession of a large-capacity magazine solely for the purpose of doing so; or

(13)   Any person lawfully in possession of a firearm that the person obtained prior to January 1, 2000 if no magazine that holds 10 or less rounds of ammunition is compatible with that firearm and the person possesses the large-capacity magazine solely for use with that firearm.

(14)   Any qualified retired peace officer, as defined by Section 926C of Title 18 of the United States Code, who has a valid Carry Concealed Weapons endorsement, license or permit. (**Added by Ord. No. 184,007, Eff. 1/26/16.**)

(15)   Any qualified reserve peace officer, as defined by California Penal Code Section 830.6, to the extent that such person is otherwise authorized by his or her respective state, county, or city law enforcement agency to possess a large-capacity magazine for use in accordance with the law enforcement policy of the agency. (**Added by Ord. No. 184,007, Eff. 1/26/16.**)

Exhibit I
Page 0049

(d)  **Penalty.** Violation of this section shall constitute a misdemeanor.

(e)  This Section shall expire on July 1, 2017, unless the City Council acts by ordinance to amend this Section to extend its effective period.  **(Added by Ord. No. 184,767, Eff. 4/4/17.)**

(f)  **Severability.** If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable.  **(Renumbered by Ord. No. 184,767, Eff. 4/4/17.)**


### SEC. 55.13.  SALE OF AMMUNITION CLIPS AND SIMILAR DEVICES.
**(Amended by Ord. No. 172,002, Eff. 6/5/98.)**

(a)  No person shall sell or otherwise transfer to any other person a clip, magazine, belt, drum, feed strip or similar device which has a capacity of, or which can be readily restored or converted to accept, more than ten rounds of ammunition.

(b)  The provisions of this section shall not apply to:

1.  the sale or transfer of such devices to any person described in Section 12302 or 12322 of the Penal Code of the State of California, or

2.  the sale or transfer of ownership of such a device by a wholesale gun dealer to another wholesale gun dealer or by a wholesale gun dealer to a retail gun dealer, or

3.  any entity or establishment engaged in the business of motion picture, television, video, theatrical, or re-enactment production, provided the clip, magazine, belt, drum, feed strip or similar device is used solely as a prop in the course of motion picture, television, video, theater, or re-enactment production by an authorized participant therein or by an authorized agent or employee of the entity or establishment, and only if the entity or establishment properly secures such clip, magazine, belt, drum, feed strip or similar device from unauthorized use, or

4.  any federal, state or local historical society, museum or institutional collection which is open to the public provided any such clip, magazine, belt, drum, feed strip or similar device is properly housed, secured from unauthorized handling and is unloaded.

Exhibit I
Page 0050

# Exhibit J

San Francisco Police Code

# SEC. 619. PROHIBITION AGAINST POSSESSION OF LARGE CAPACITY MAGAZINES.

(a)  **Findings.**

(1)  In 2007, 3,231 people died from firearm-related injuries in California, and 4,491 other people were treated for non-fatal gunshot wounds.

(2)  The ability of an automatic or semiautomatic firearm to fire multiple bullets without reloading is directly related to the capacity of the firearm's feeding device or "magazine." Inside the magazine, a spring forces the cartridges into position to be fed into the chamber by operation of the firearm's action.

(3)  Magazines with a capacity of more than 10 rounds of ammunition are generally considered to be "large capacity" magazines, although the statutory definitions vary. In some cases, large capacity magazines can hold up to 100 rounds of ammunition. Other types of firearms, in contrast, are generally capable of holding far less ammunition: for example, revolvers typically hold six rounds of ammunition in a rotating cylinder.

(4)  Although detachable large capacity magazines are typically associated with machine guns or semiautomatic assault weapons, such devices are available for any semiautomatic firearm that accepts a detachable magazine, including semiautomatic handguns.

(5)  The ability of large capacity magazines to hold numerous rounds of ammunition significantly increases the lethality of the automatic and semiautomatic firearms using them.

(6)  Large capacity magazines were used in a number of recent high-profile shootings, including:

The shooting on the campus of Virginia Tech on April 16, 2007, where 32 people were killed and many others wounded,

The shooting in a gym in Pittsburgh on August 4, 2009, where three people were killed and nine others injured.

The shooting on November 5, 2009 at Fort Hood, Texas, where 13 people were killed and 34 more were wounded.

The shooting on January 8, 2011, at Tucson, Arizona, where 6 people were killed and 13 people were injured, including a member of the United States House of Representatives, and

The shootings on December 14, 2012, at Newtown, Connecticut, where 27 people (not including the shooter) were killed.

(7)  Large capacity magazines have also been used against San Francisco police officers, including a recent incident at India Basin Shoreline Park, where undercover police officers were targeted with semiautomatic pistols containing 30-round magazines. Prohibiting large capacity magazines serves police safety by requiring perpetrators to pause to reload their firearms more frequently, giving police officers greater opportunity to apprehend them.

(8) Large capacity magazine bans reduce the capacity, and thus the potential lethality, of any firearm that can accept a large capacity magazine.

(9) Large capacity magazines are not necessary for individuals to vindicate their right to self-defense. Only in an extraordinarily rare circumstance would a person using a firearm in self-defense ever be required to use a large capacity magazine to defend himself or herself effectively. This is particularly true in an urban center like San Francisco, where law enforcement can and does respond quickly to threats and incidents. Conversely, the dangers of large capacity magazines are heightened in dense urban areas like San Francisco.

(10) In 1994, in recognition of the dangers posed by these devices, Congress adopted a law prohibiting the transfer and possession of large capacity magazines as part of the federal assault weapon ban. That law was filled with loopholes, however.

(11) The federal law was enacted with a sunset clause, providing for its expiration after ten years. Despite overwhelming public support for the law, Congress allowed the federal ban to expire on September 13, 2004.

(12) Research commissioned by the U.S. Department of Justice to analyze the effect of the 1994 federal ban on assault weapons and large capacity magazines found that attacks with semiautomatics including assault weapons and other semiautomatics equipped with large capacity magazines result in more shots fired, more persons hit, and more wounds inflicted per victim than do attacks with other firearms.

(13) Since January 1, 2000, California Penal Code §§ 32310 *et seq.*, have, with limited exceptions, prohibited the manufacture, importation into the state, keeping for sale, offering or exposing for sale, giving, or lending of large capacity magazines. California law does not, however, prohibit the possession of these magazines, and this gap in the law threatens public safety.

(b) **Definition.** "Large capacity magazine" means any detachable ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:

(1) A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds;

(2) A .22 caliber tube ammunition feeding device; or

(3) A tubular magazine that is contained in a lever-action firearm.

(c) **Prohibition on Possession of Large Capacity Magazines.**

(1) No person, corporation, or other entity in the City may possess a large capacity magazine, whether assembled or disassembled.

(2) Any person who, prior to the effective date of this chapter, was legally in possession of a large capacity magazine shall have 90 days from such effective date to do any of the following without being subject to prosecution:

(A) Remove the large capacity magazine from the City;

(B) Surrender the large capacity magazine to the Police Department for destruction; or

(C) Sell or transfer the large capacity magazine lawfully in accordance with Penal Code § 12020.

(d) **Exceptions.** Subsection (c) shall not apply to the following:

(1)   Any government officer, agent, or employee, member of the armed forces of the United States, or peace officer, to the extent that such person is otherwise authorized to possess a large capacity magazine in connection with his or her official duties;

(2)   A person licensed pursuant to Penal Code §§ 26700 to 26915, inclusive;

(3)   A gunsmith for the purposes of maintenance, repair or modification of the large capacity magazine;

(4)   Any entity that operates an armored vehicle business pursuant to the laws of the state, and an authorized employee of such entity, while in the course and scope of his or her employment for purposes that pertain to the entity's armored vehicle business;

(5)   Any person, corporation or other entity that manufactures the large capacity magazine for a person mentioned in subsection (a) or for export pursuant to applicable federal regulations;

(6)   Any person using the large capacity magazine solely as a prop for a motion picture, television, or video production, or entertainment event;

(7)   Any holder of a special weapons permit issued pursuant to Penal Code § 33300, 32650, 32700, 31000, or 18900;

(8)   Any person issued a permit pursuant to Penal Code § 32315 by the California Department of Justice upon a showing of good cause for the possession, transportation, or sale of large capacity magazines between a person licensed pursuant to Penal Code §§ 26700 to 26915 and an out-of-state client, when those activities are in accordance with the terms and conditions of that permit;

(9)   Any federal, state or local historical society, museum, or institutional collection which is open to the public, provided that the large capacity magazine is properly housed secured from unauthorized handling, and unloaded;

(10)   Any person who finds the large capacity magazine, if the person is not prohibited from possessing firearms or ammunition pursuant to federal or state law, and the person possesses the large capacity magazine no longer than is necessary to deliver or transport the same to a law enforcement agency for that agency's disposition according to law;

(11)   A forensic laboratory or any authorized agent or employee thereof in the course and scope of his or her authorized activities; ·

(12)   Any person in the business of selling or transferring large capacity magazines in accordance with Penal Code § 12020, who is in possession of a large capacity magazine solely for the purpose of doing so; or

(13)   Any person lawfully in possession of a firearm that the person obtained prior to January 1, 2000 if no magazine that holds 10 or less rounds of ammunition is compatible with that firearm and the person possesses the large capacity magazine solely for use with that firearm.

(e)   **Penalty.** Any person violating this chapter is guilty of a misdemeanor.

(f)   **Severability.** If any subsection, sentence, clause, phrase, or word of this Section be for any reason declared unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or the effectiveness of the remaining portions of this Section or any part

Case 3:17-cv-01017-BEN-JLB   Document 53-1   Filed 04/09/18   PageID.5645   Page 63 of 103

thereof. The Board of Supervisors hereby declares that it would have adopted this Section notwithstanding the unconstitutionality, invalidity, or ineffectiveness of any one or more of its subsections, sentences, clauses, phrases, or words.

(g) **No Duplication of State Law.** In the event that the State of California enacts legislation prohibiting possession of large capacity magazines, this Section 618[1] shall have no force or effect to the extent that it duplicates any such state law.

(Added by Ord. 249-13 , File No. 130585, App. 11/8/2013, Eff. 12/8/2013)

**CODIFICATION NOTE**

1.  So in Ord. 249-13 .

# Exhibit K

9.38.030 - Definitions.

"Large-capacity magazine" means any detachable ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include any of the following:

1. A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds;

2. A .22 caliber tube ammunition feeding device;

3. A tubular magazine that is contained in a lever-action firearm.

(Ord. No. 13352, § 1(C), 1-19-2016)

9.38.040 - Possession of large-capacity magazines prohibited.

A. It is unlawful for any person to possess any large-capacity magazine, except as otherwise authorized by law, whether assembled or disassembled.

B. Any person who, prior to the effective date of this article, was legally in possession of a large-capacity magazine shall have ninety (90) days from such effective date to do any of the following without being subject to prosecution:

1. Remove the large-capacity magazine from the City of Oakland;

2. Surrender the large-capacity magazine to the Oakland Police Department for destruction;

3. Sell or transfer the large-capacity magazine lawfully in accordance with Section 32410 of the California Penal Code.

(Ord. No. 13352, § 1(D), 1-19-2016)

Exhibit K
4/6/2018, 3:41 PM

# Exhibit L

Exhibit L
Page 0058

Sec. 54-212. - Assault weapons, and large-capacity magazines; sale prohibited; exceptions.

(a)   It shall be unlawful for any person to manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire, carry or possess any assault weapon or large capacity magazine in Cook County. This subsection shall not apply to:

(1)   The sale or transfer to, or possession by any officer, agent, or employee of Cook County or any other municipality or state or of the United States, members of the armed forces of the United States; or the organized militia of this or any other state; or peace officers to the extent that any such person named in this subsection is otherwise authorized to acquire or possess an assault weapon and/or large capacity magazine and does so while acting within the scope of his or her duties;

(2)   Transportation of assault weapons or large capacity magazine if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person.

(b)   Any assault weapon or large capacity magazine possessed, carried, sold or transferred in violation of Subsection (a) of this section is hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 54-213.

(c)   Any person including persons who are a qualified retired law enforcement officer as defined in 18 U.S.C. § 926C who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or large capacity magazine prohibited by this division shall have 60 days from the effective date of the ordinance to do any of the following without being subject to prosecution hereunder:

(1)   To legally remove the assault weapon or large capacity magazine from within the limits of the County of Cook; or

(2)   To modify the assault weapon or large capacity magazine either to render it permanently inoperable; or

(3)   To surrender the assault weapon or large capacity magazine to the Sheriff or his designee for disposal as provided below.

(Ord. No. 13-O-32, 7-17-2013.)

Exhibit L
Page 0059 4/6/2018, 3:46 PM

# Exhibit M

Sec. 29-49. - Transfer or possession of assault ammunition or assault weapons.

(a) No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity ammunition feeding device.

(b) This section shall not apply to:

(1) Any law enforcement officer of this or any other municipality or state of the United States, members of the armed forces of the United States, or the organized militia of this or any other state to the extent that any such person is otherwise authorized to possess an assault weapon or large capacity ammunition feeding device and is acting within the scope of his or her duties;

(2) Persons licensed as private security contractors, private detectives, private alarm contractors or employed by an agency certified by the department of professional regulation if their duties include the carrying of a weapon under the provisions of the Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004 (225 ILCS 447/1) et seq.). while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment, provided that such commuting is accomplished within one (1) hour from departure from home or place of employment, as the case may be. Persons exempted under this paragraph shall be required to have completed a course of study in firearms handling and training approved and supervised by the department of professional regulation as prescribed by section 35-40 of the Private Detective. Private Alarm, Private Security, and Locksmith Act of 2004 (225 ILCS 447/35-40) prior to becoming eligible for this exemption. The department of professional regulation provides suitable documentation demonstrating the successful completion of the prescribed firearms training in the form of a firearm authorization card. Such firearm authorization card shall be carried at all times when such persons are in possession of a weapon, and further, persons exempted under this paragraph shall be in possession of only the weapon(s) specifically authorized and specified on the firearm authorization card.

(3) The transportation of assault weapons or large capacity ammunition feeding devices to persons exempt from this section, as set forth above, by federally licensed manufacturers and dealers, if the weapons or devices are broken down in a nonfunctioning state and not immediately accessible during transportation; or

(4) The government of the United States or the government of any municipality, county, or state.

(5)

Exhibit M

Any person who, while in their home and in an act of self-defense, uses either an assault weapon owned by a person mentioned in paragraph (1) above or such a weapon for which a certificate of ownership has been issued but for which they are not the certificate holder.

    (6)    Any assault weapon or large capacity ammunition feeding device possessed, sold or transferred in violation of subsection (a) above is hereby declared to be contraband and shall be seized and appropriately disposed of by the police department.

    (7)    Any person found in violation of this section shall be guilty of a Misdemeanor IV.

        (8)    Any person who, prior to the effective date of this section, was legally in possession of an assault weapon or large capacity ammunition feeding device prohibited by this section, shall have ninety (90) days from the effective date of this section to do any of the following without being subject to prosecution hereunder:

    a.    Remove the assault weapon or large capacity ammunition feeding device from within the limits of the city;

    b.    Modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon;

    c.    Surrender the assault weapon or large capacity ammunition feeding device to the police chief or his designee for appropriate disposal; or

    d.    Obtain a certificate of ownership from the Aurora Police Department in accordance with subsection (g) below.

(c)—(e)    Reserved.

    (f)    This section shall not apply to:

    (1)    An antique firearm as defined below;

    (2)    Any semiautomatic rifle with a fixed stock that cannot accept a detachable magazine or clip that holds more than eight (8) rounds of ammunition;

    (3)    Any semiautomatic shotgun that cannot hold mo re than five (5) rounds of ammunition in a fixed or detachable magazine;

    (4)    Any firearm that can only be operated manually by bolt, pump, lever or slide action.

    (5)    Any magazine, belt, drum, feed strip or similar device originally manufactured to accept more than fifteen (15) rounds of ammunition but which has been fitted with a permanent block so as to hold no more than fifteen (15) rounds of ammunition.

(g) (1)    Persons who, prior to the effective date of this section, lawfully possess assault

Exhibit M
Page 0062

weapons as defined herein may, within ninety (90) days of the effective date of this section, apply to the Aurora Police Department for a certificate of ownership for said assault weapons.

    a. No certificate of ownership shall, however, be granted for the following weapons:

Avtomat Kalashnikov AK-47 type (including all models of the Norinco, Mitchell and Poly Tech)

Beretta AR-70

Franchi SPAS-12 and LAW-12

MAC-11 carbine type

Street Sweeper and Striker 12 revolving cylinder shotguns

USAS-12

Uzi carbine and mini-carbine

Any assault weapon with a folding or telescoping stock which is not designed to be fired from the shoulder

Any pistol which meets the definition of an assault weapon except as set forth in paragraph b. below

    b. A certificate of ownership may be granted for any pistol originally manufactured to accept, in the pistol grip, a magazine designed to contain 16-17 rounds of ammunition but which does not extend below the pistol grip and does not otherwise meet the definition of an assault weapon.

(2) The Aurora Police Department shall issue a certificate of ownership for each applicable weapon owned by the applicant if the applicant has a currently valid State of Illinois Firearm Owners Identification card. Said certificate shall not be transferable, except upon the death of the certificate holder and then only to his heir or legatee.

(3) The Aurora Police Department shall not issue a certificate of ownership, and shall revoke any existing certificate of ownership, if the applicant or certificate holder is prohibited, under state or federal law, from possessing the assault weapon for which the certificate of ownership has been applied or issued.

(4) All assault weapons for which a certificate of ownership has been issued shall be

kept unloaded and stored in a locked environment when being transported or kept within the City of Aurora.

        (5)   The City of Aurora shall not enact any ordinance imposing greater regulations upon assault weapons for which a certificate of ownership has been issued.

    (h)   For the purpose of this section:

        (1)   Antique firearm means:

            a.   Any firearm, including any firearm with a matchlock, flintlock, percussion cap or similar type of ignition system, manufactured in or before 1898; and

         b.   Any replica of any firearm described in subparagraph (a) if the replica:

            1.   Is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or

            2.   Uses rimfire or conventional centerfire fixed ammunition which is not readily available in the ordinary channels of commercial trade.

        (2)   Assault weapon means:

            a.   Any of the firearms (or types, replicas, or duplicates in any caliber of the firearms regardless of manufacturer) known as:

A.A. Arms AP-9

Algimec Agmi

Armalite AR-180

Australian Automatic Arms SAP Pistol

Australian Automatic Arms SAR

Auto-Ordnance Thompson type

Avtomat Kalashnikov AK-47 type (including all models of the Norinco, Mitchell, and Poly Tech)

Barrett Light-Fifty model 82A1

Beretta AR-70 (SC-70)

Beretta BM-59

Bushmaster Auto Rifle and Auto Pistol

Calico models M-900, M-950 and 100-P

Chartered Industries of Singapore SR-88

Claridge High Tech

Colt AR-15 and Sporter

Daewoo K-1, K-2, Max-1 and Max-2

Encom MK-IV, MP-9 and MP-45

Fabrique Nationale FN/FAL, FN/LAR or FN/FNC

FAMAS MAS 223

Feather AT-9 and Mini-AT

Federal XC-900 and XC-450

Franchi SPAS-12 and LAW-12

Galil AR and ARM

Heckler & Koch HK-91, HK-93, HK-94, PSG-1, SP-89

Holmes Mp-83

Intratec TEC-9, TEC-DC-9, TEC-22 and Scorpion

Iver Johnson Enforce Model 3000

Iver Johnson PM30 Paratrooper

M14S type

MAC 10, M-10, MAC-11 and MAC-11 Carbine type

Ruger Mini-14/5F (folding stock only) and Mini-14/5RF

Scarab Skorpion

SIG 57 AMT, SIG 550SP, SIG 551SP, SIG PE-57 types and 500 series

Spectre Auto Carbine and Auto Pistol

Springfield Armory BM59, SAR-48 and G-3

Sterling MK-6 and MK-7 and SAR types

Steyr AUG

Street Sweeper and Striker 12 revolving cylinder shotguns

SWD M-10, M-11, M-11/9, M-12

Valmet M63, M71S, M76 or M78

USAS-12

UZI Carbine, Mini-Carbine and Pistol

Weaver Arms Nighthawk

Wilkinson "Linda" Pistol

    b.  Any semiautomatic rifle that has a fixed magazine that can hold more than eight (8) rounds or an ability to accept a detachable magazine and has at least two (2) of the following:

        1.  A folding or telescoping stock;

                2.  A pistol grip that protrudes beneath the action of the weapon and which is separate and apart from the stock;

        3.  A bayonet mount;

                4.  A flash suppressor;

                    5.  A barrel with a threaded muzzle;

        6.  A grenade launcher.

            c.  Any semiautomatic pistol that has an ability to accept a detachable magazine and has at least two (2) of the following:

    1.  An ammunition magazine that attaches to the pistol outside of the pistol grip;

    2.  A barrel having a threaded muzzle;

        3.  A shroud that is attached to, or partially or

Exhibit M

Page 0066

completely encircles, the barrel and which
permits the shooter to hold the firearm with
the nontrigger hand without being burned;

    4. A manufactured weight of fifty (50) ounces or more when the pistol is unloaded;

    5. A semiautomatic version of an automatic firearm

        d. Any semiautomatic shotgun that has either a fixed magazine with a capacity in excess of five (5) rounds or an ability to accept a detachable magazine and, in addition, has at least one (1) of the following:

    1. A folding or telescoping stock;

        2. A pistol grip that protrudes beneath the action of the firearm and which is separate and apart from the stock;

(3) Firearm means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however:

    a. Any pneumatic gun, spring gun, paint ball gun or BB gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than seven hundred (700) feet per second or breakable paint balls containing washable marking colors;

    b. Any device used exclusively for signaling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission; or

    c. Any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition.

(4) Large capacity ammunition feeding device means:

    a. Any magazine, belt, drum, feed strip or similar device that has a capacity of, or can be readily restored or converted to accept, more than fifteen (15) rounds of ammunition; or

    b. Any combination of parts from which a device described in the above clause can be assembled;

The term does not include an attached tubular device designed to accept and capable of operating with only .22 caliber rimfire ammunition.

(5)  Pistol means any firearm designed to be fired by the use of a single hand, as well as any combination of parts from which a pistol can be assembled.

(6)  Rifle means a firearm designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

(7)  Semiautomatic means a firearm that utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge.

(8)  Shotgun means a firearm designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth or rifled bore either a number of ball shot or a single projectile for each single pull of the trigger.

(Ord. No. O94-47, § 1, 5-17-94; Ord. No. O09-79, § 2, 9-22-09)

# Exhibit N

3-13G-3. - Assault weapons and assault ammunition prohibited.

(a) *Definitions* . As used in this section, the following terms shall have the following meanings:

*Assault ammunition:* A detachable magazine capacity of which is more than sixteen (16) rounds center fire.

*Assault weapon:* Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically, more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended, for use in converting a weapon into a machine gun, any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

(b) *Assault weapons or ammunition; sale prohibited; exceptions.*

(1) No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess, manufacture or distribute any assault weapon or assault ammunition within the corporate limits of the village. This subsection shall not apply to:

a. The sale, distribution or the possession for sale and distribution by any firearms dealer licensed pursuant to this article of an assault weapon or assault ammunition to any officer, agent or employee of the village or any other municipality, county, body politic or state or of the United States, members of the armed forces of the United States; or the organized militia of this or any other state, and peace officers to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties;

b. The possession for sale and distribution or the sale to, or the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault ammunition is sold, acquired or possessed for use with a weapon that the person has been authorized to carry under section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983.

c. Transportation of assault weapons if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person.

(2) Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (b)(1) of this section is hereby declared to be contraband and

Exhibit N
Page 0070   4/6/2018, 3:56 PM

shall be seized and disposed of in accordance with as provided in subsection (c) of this section.

    (3)    Any person found in violation of this section shall be fined not less than two hundred fifty dollars ($250.00) and not more than five hundred dollars ($500.00), or both.

    (4)    Any person who, prior to the effective date of the ordinance codified in this article, was legally in possession of an assault weapon or assault ammunition prohibited by this section, shall have fourteen (14) days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:

        a.    To remove the assault weapon or ammunition from within the limits of the village; or

        b.    To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or

        c.    To surrender the assault weapon or ammunition to the chief of police of the village or said chief's designee for disposal as provided below.

    (c)    *Destruction of weapons confiscated.* Whenever any firearm or ammunition is surrendered or confiscated pursuant to the terms of this article, the chief of police shall ascertain whether such firearm or ammunition is needed as evidence in any matter.

If such firearm or ammunition is not required for evidence, it shall be destroyed at the direction of the chief of police. A record of the date and method of destruction and inventory of the firearm or ammunition so destroyed shall be maintained.

(Ord. 9495 VC 9, § 1)

Exhibit N
Page 0071    4/6/2018, 3:56 PM

# Exhibit O

# Article 2
# POSSESSION AND CARRYING OF WEAPONS

**27-2-1: UNLAWFUL TO POSSESS OR CARRY; EXCEPTIONS:**

Exhibit O

It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any assault weapon or assault ammunition feeding device, and it shall be unlawful for any person to carry any rifle, shotgun, firearm, or assault weapon or assault ammunition feeding device in any vehicle or permit same to be carried in any vehicle to which such person is the title owner of record or about his/her person, except that a person may carry any rifle, shotgun or firearm when on his/her land or in his/her abode or fixed place of business; provided that this section shall not apply to:

A. Peace officers or any person summoned by any such officers to assist in making arrests or preserving the peace while he/she is actually engaged in assisting such officer;

B. Wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense; provided, however, that this exemption shall apply to the carrying of a weapon only while one is engaged in the performance of his/her official duty or while commuting between his/her home and place of employment;

C. Members of the armed services or reserve forces of the United States or the Illinois national guard or organized militia; provided, however, that this exemption shall apply to the carrying of a weapon only while one is engaged in the performance of his/her official duty;

D. Special agents employed by a railroad or a public utility to perform police functions, watchmen, security guards and "special police" appointed under section 19-2-2 of this code; provided, however, that this exemption shall apply to the carrying of a weapon only while one is actually engaged in the performance of the duties of his/her employment or while commuting between his/her home and place of employment; and provided further that said security guards are in full compliance with appropriate provisions of subsection (a)(4) of section 24-2 of the Illinois criminal code and other applicable laws and that said "special police" are in full compliance with sections 19-2-1 through 19-2-4 of this code and other applicable laws;

E. Agents and investigators of the Illinois crime investigating commission authorized by the commission to carry weapons; provided, however, that this exemption shall apply to the carrying of a weapon only while one is on duty in the course of any investigation for the commissioner;

F. Manufacture, transportation or sale of weapons to persons authorized under law to possess such;

G. Duly authorized military or civil organizations while parading, with the special permission of the

Exhibit O
Page 0074

Governor;

H. Licensed hunters or fishermen while commuting to or from established game areas; provided, however, that this exemption shall not apply to the possession or carrying of "firearms" as defined in section 27-1-1 of this chapter;

I. Transportation of weapons broken down in a nonfunctioning state or unloaded with neither the weapon nor any ammunition readily or directly accessible from the passenger compartment of the transporting vehicle; provided, that in the case of a vehicle without a compartment separate from the driver's compartment, the firearm or ammunition shall be contained in a locked container other than the glove compartment or console; provided, however, that the transportation of assault weapons must not originate or terminate within the Village to qualify as an exception to this section;

J. Antique firearms;

K. Licensed firearm collectors;

L. Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public, utilizing only blank ammunition in the discharge of weapons only during rehearsals, classes or performances; provided further that said organization maintains possession and control over these weapons in a safe place with a designated member of the organization when the weapons are not in use.

Any weapon carried pursuant to the exemptions of subsections 27-2-1F through I of this section shall be carried unloaded, and anyone possessing a firearm pursuant to exemptions of subsections 27-2-1J and L of this section shall not possess or carry any ammunition therefor. (Ord. 2010-O-47, 7-19-10)

Exhibit O
Page 0075

# Exhibit P

Chapter 136 - ASSAULT WEAPONS

Sec. 136.001. - Definitions.

Whenever the following words and phrases are used, they shall, for purposes of this Chapter, have the meanings ascribed to them in this Section 136.001, except when the context otherwise indicates.

*Ammunition* means any self-contained cartridge, shot, bullet or projectile by whatever name known, which is designed to be used, or adaptable to use, in a Firearm and shot or discharged therefrom.

*Antique Firearm* means:

(1) Any Firearm (including any Firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

(2) Any replica of any Firearm described in Paragraph (1) of this definition, but only if such replica;

  (a) Is not designed or redesigned for using rimfire or conventional centerfire Ammunition; or

  (b) Uses rimfire or conventional centerfire fixed Ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels or commercial trade.

*Assault Weapon* means:

(1) A semiautomatic rifle that has the capacity to accept a Large Capacity Magazine detachable or otherwise and one or more of the following:

  (a) Only a pistol grip without a stock attached;

    (b) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

  (c) A folding, telescoping or thumbhole stock;

    (d) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the Firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

  (e) A Muzzle Brake or Muzzle Compensator;

    (2) A semiautomatic pistol or any semi-automatic rifle that has a

Exhibit P
Page 0077
4/6/2018, 2:57 PM

fixed magazine, that has the capacity to accept more than ten rounds of Ammunition;

    (3) A semiautomatic pistol that has the capacity to accept a Detachable Magazine and has one or more of the following:

        (a) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

        (b) A folding, telescoping or thumbhole stock;

        (c) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the Firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

        (d) A Muzzle Brake or Muzzle Compensator; or

        (e) The capacity to accept a Detachable Magazine at some location outside of the pistol grip;

    (4) A semiautomatic shotgun that has one or more of the following:

        (a) Only a pistol grip without a stock attached;

        (b) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

        (c) A folding, telescoping or thumbhole stock;

        (d) A fixed magazine capacity in excess of five rounds; or

        (e) An ability to accept a Detachable Magazine;

    (5) Any shotgun with a revolving cylinder;

    (6) Conversion kit, part or combination of parts, from which an Assault Weapon can be assembled if those parts are in the possession or under the control of the same person;

    (7) Shall include, but not be limited to, the Assault Weapons models identified as follows:

        (a) The following rifles or copies or duplicates thereof:

            (i) AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR;

            (ii) AR-10;

            (iii) AR-15, Bushmaster XM15, Armalite M15, or

Olympic Arms PCR;

    (iv)  AR70;

        (v)  Calico Liberty;

            (vi)  Dragunov SVD Sniper Rifle or Dragunov SVU;

    (vii)  Fabrique National FN/FAL, FN/LAR, or FNC;

        (viii)  Hi-Point Carbine;

            (ix)  HK-91, HK-93, HK-94, or HK-PSG-1;

    (x)  Kel-Tec Sub Rifle;

        (xi)  Saiga;

            (xii)  SAR-8, SAR-4800;

    (xiii)  SKS with Detachable Magazine;

        (xiv)  SLG 95;

            (xv)  SLR 95 or 96;

    (xvi)  Steyr AUG;

        (xvii)  Sturm, Ruger Mini-14;

            (xviii)  Tavor;

    (xix)  Thompson 1927, Thompson M1, or Thompson 1927 Commando; or

    (xx)  Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz).

    (b)  The following pistols or copies or duplicates thereof:

    (i)  Calico M-110;

        (ii)  MAC-10, MAC-11, or MPA3;

            (iii)  Olympic Arms OA;

Exhibit P
Page 0079  4/6/2018, 2:57 PM

(iv)  TEC-9, TEC-DC9, TEC-22 Scorpion, or AB-10; or.

(v)  Uzi.

(c)  The following shotguns or copies or duplicates thereof:

(i)  Armscor 30 BG;

(ii)  SPAS 12 or LAW 12;

(iii)  Striker 12; or

(iv)  Streetsweeper.

"Assault Weapon" does not include any Firearm that has been made permanently inoperable, or weapons designed for Olympic target shooting events.

*Curios or Relics* has the meaning set forth in 27 C.F.R. § 478.11, as may be amended.

*Detachable Magazine* means any Ammunition feeding device, the function of which is to deliver one or more Ammunition cartridges into the firing chamber, which can be removed from the Firearm without the use of any tool, including a bullet or Ammunition cartridge.

*Firearm* means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas, excluding however:

(1)  Any pneumatic gun, spring gun or B-B gun which expels a single globular projectile not exceeding .18 inches in diameter;

(2)  Any device used exclusively for signaling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;

(3)  Any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial Ammunition; and

(4)  Model rockets used to propel a model vehicle in a vertical direction.

*Large Capacity Magazine* means any Ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include the following:

(1)  A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds.

(2)  A 22 caliber tube Ammunition feeding device.

(3)  A tubular magazine that is contained in a lever-action Firearm.

Exhibit P
Page 0080   4/6/2018, 2:57 PM

*Muzzle Brake* means a device attached to the muzzle of a weapon that utilizes escaping gas to reduce recoil.

*Muzzle Compensator* means a device attached to the muzzle of a weapon that utilizes escaping gas to control muzzle movement.

Sec. 136.005. - Possession and Sale Prohibited.

No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any Assault Weapon or Large Capacity Magazine, unless expressly exempted in Section 136.006 of this Chapter.

Sec. 136.006. - Exemptions.

The prohibitions set forth in Section 136.005 of this Chapter shall not apply to:

    (A)   The sale or transfer to, or possession by any officer, agent, or employee of the City or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state; or peace officers, but only to the extent that any such person named in this Section 136.006(A) is otherwise authorized to acquire or possess an Assault Weapon and/or Large Capacity Magazine and does so while acting within the scope of his or her duties;

    (B)   Any qualified retired law enforcement officer, as that term is defined in 18 U.S.C. § 926C(c), but only to the extent that the Assault Weapon and/or Large Capacity Magazine is safely stored or displayed by the officer in compliance with Section 136.010 of this Chapter;

    (C)   Transportation of Assault Weapons or Large Capacity Magazine if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person;

    (D)   Antique Firearms, but only to the extent that the Antique Firearm is safely stored or displayed in compliance with Section 136.010 of this Chapter; or

    (E)   Curios or Relics, but only to the extent that both: (a) the owner of the Curio or relic has obtained a federal license for collectors of Curios or Relics; and (b) the Curio or relic is safely stored or displayed in compliance with Section 136.010 of this Chapter.

Sec. 136.010. - Safe Storage or Display of Weapons and Magazines.

Any Assault Weapon or Large Capacity Magazine that is exempt from the requirements of Section

Exhibit P
Page 0081 4/6/2018, 2:57 PM

136.005 of this Chapter, and that must be safely stored or displayed pursuant to Section 136.006 of this Chapter, must be secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon or magazine inoperable by any person other than the owner or other lawfully authorized user. Specifically, and without limitation of the foregoing, any Assault Weapon or Large Capacity Magazine that may be kept within the City pursuant to this Chapter must be secured from access by minors. For purposes of this Section 136.010, such weapon or magazine shall not be deemed stored or kept when being carried by or under the control of the owner or other lawfully authorized user.

Sec. 136.015. - Possession or Sale in Violation of Chapter.

Any Assault Weapon or Large Capacity Magazine possessed, sold or transferred in violation of Section 136.005 of this Chapter is hereby declared to be contraband and shall be seized and destroyed of in accordance with the provisions of Section 136.025 of this Chapter.

Sec. 136.020. - Disposition of Weapons and Magazines.

Any person who, prior to the effective date of this Chapter, was legally in possession of an Assault Weapon or Large Capacity Magazine prohibited by this Chapter shall have 60 days from the effective date of this Chapter to do any of the following without being subject to prosecution hereunder:

> (A) Remove the Assault Weapon or Large Capacity Magazine from within the limits of the City;
>
> (B) Modify the Assault Weapon or Large Capacity Magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an Assault Weapon or Large Capacity Magazine;
>
> (C) Surrender the Assault Weapon or Large Capacity Magazine to the Chief of Police or his or her designee for disposal as provided in Section 136.025 of this Chapter; or
>
> (D) Take the steps necessary to cause the Assault Weapon or Large Capacity Magazine to fall within one of the exemptions set forth in Section 136.006 of this Chapter.

Sec. 136.025. - Destruction of Weapons and Magazines.

The Chief of Police shall cause to be destroyed each Assault Weapon or Large Capacity Magazine surrendered or confiscated pursuant to this Chapter; provided, however, that no Assault Weapon or Large Capacity Magazine shall be destroyed until such time as the Chief of Police determines that the Assault Weapon or Large Capacity Magazine is not needed as evidence in any matter. The Chief of Police shall cause to be kept a record of the date and method of destruction of each Assault Weapon or Large

Exhibit P
Page 0082

4/6/2018, 2:57 PM

Capacity Magazine destroyed pursuant to this Chapter.

Sec. 136.999. - Penalty.

The violation of any provision of this Chapter is a misdemeanor, punishable by not more than six months imprisonment or a fine of not less than $500.00 and not more than $1,000.00, or both.

# Exhibit Q

**VILLAGE OF DEERFIELD**
**LAKE AND COOK COUNTIES, ILLINOIS**

---

**ORDINANCE NO.          O-18-06**

**AN ORDINANCE AMENDING CHAPTER 15 (MORALS AND CONDUCT),
ARTICLE 11 (ASSAULT WEAPONS), SECTION 15-87 (SAFE STORAGE OF
ASSAULT WEAPONS) AND SECTION 15-88 (TRANSPORTATION OF ASSAULT
WEAPONS) OF THE MUNICIPAL CODE OF THE VILLAGE OF DEERFIELD
TO REGULATE THE POSSESSION, MANUFACTURE AND SALE OF ASSAULT
WEAPONS IN THE VILLAGE OF DEERFIELD**

---

PASSED AND APPROVED BY THE
PRESIDENT AND BOARD OF TRUSTEES
OF THE VILLAGE OF DEERFIELD, LAKE
AND COOK COUNTIES, ILLINOIS, this

    2nd    day of       April    , 2018.

**Published in pamphlet form
by authority of the President
and Board of Trustees of the
Village of Deerfield, Lake and
Cook Counties, Illinois, this
 2nd  day of    April   , 2018.**

**VILLAGE OF DEERFIELD**
**LAKE AND COOK COUNTIES, ILLINOIS**

ORDINANCE NO.   O-18-06

**AN ORDINANCE AMENDING CHAPTER 15 (MORALS AND CONDUCT), ARTICLE 11 (ASSAULT WEAPONS), SECTION 15-87 (SAFE STORAGE OF ASSAULT WEAPONS) AND SECTION 15-88 (TRANSPORTATION OF ASSAULT WEAPONS) OF THE MUNICIPAL CODE OF THE VILLAGE OF DEERFIELD TO REGULATE THE POSSESSION, MANUFACTURE AND SALE OF ASSAULT WEAPONS IN THE VILLAGE OF DEERFIELD**

WHEREAS, Chapter 15 (Morals and Conduct), Article 11 (Assault Weapons), Section 15-87 (Safe Storage of Assault Weapons; Exceptions) and Section 15-88 (Transportation of Assault Weapons; Exceptions) of the Municipal Code of the Village of Deerfield, as enacted by Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), regulate the possession, storage and transportation of assault weapons in the Village of Deerfield; and

WHEREAS, the Firearm Concealed Carry Act, 430 ILCS 65/13.1(c), as amended by Public Act 98-63, § 150 (eff. July 9, 2013), provides that the Village of Deerfield, as a home rule unit of local government under the provisions of Article VII, Section 6 of the Illinois Constitution of 1970, may amend Village of Deerfield Ordinance No. 0-13-24, which was enacted on, before or within ten (10) days after the effective date of Public Act 98-63, § 150, pursuant to the Village's home rule exercise of any power and performance of any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; and

WHEREAS, the corporate authorities of the Village of Deerfield find that, since the enactment of Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), assault weapons have been increasingly used in an alarming number of notorious mass shooting incidents at public

-1-

schools, public venues, places of worship and places of public accommodation including, but not limited to, the recent mass shooting incidents in Parkland, Florida (Margery Stoneman Douglas High School; 17 people killed), Sutherland Springs, Texas (First Baptist Church; 26 people killed), Las Vegas, Nevada (Music Festival; 58 people killed), and Orlando, Florida (Pulse Nightclub; 49 people killed); and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that assault weapons are dangerous and unusual weapons which are commonly associated with military or antipersonnel use, capable of a rapid rate of fire, have the capacity to fire a large number of rounds due to large capacity fixed magazines or the ability to use detachable magazines, present unique dangers to law enforcement, and are easily customizable to become even more dangerous weapons of mass casualties and destruction; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that amending Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013) to prohibit the possession, manufacture and sale of assault weapons in the Village of Deerfield may increase the public's sense of safety at the public schools, public venues, places of worship and places of public accommodation located in the Village of Deerfield; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that amending Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013) to prohibit the possession, manufacture and sale of assault weapons in the Village of Deerfield may increase the public's sense of safety by deterring and preventing a mass shooting incident in the Village of Deerfield, notwithstanding potential objections regarding the availability of alternative weaponry or the enforceability of such a ban; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that amending Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013) to prohibit the possession, manufacture

-2-

and sale of assault weapons in the Village of Deerfield may increase the public's sense of safety by effecting a cultural change which communicates the normative value that assault weapons should have no role or purpose in civil society in the Village of Deerfield; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that, since the enactment of Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), the possession, manufacture and sale of assault weapons in the Village of Deerfield is not reasonably necessary to protect an individual's right of self-defense or the preservation or efficiency of a well-regulated militia; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that, since the enactment of Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), courts throughout our State and Nation have uniformly upheld the constitutionality of local ordinances and legislation prohibiting the possession, manufacture and sale of assault weapons including, but not limited to, an ordinance enacted by the City of Highland Park, Illinois; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that, since the enactment of Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), State and Federal authorities have failed to regulate the possession, manufacture and sale of assault weapons in the best interests for the protection of the public health, safety, morals and welfare of the Village of Deerfield; and

**WHEREAS,** the corporate authorities of the Village of Deerfield request that State and Federal authorities enact Statewide or Nationwide regulations to prohibit the possession, manufacture or sale of assault weapons; and

**WHEREAS,** the corporate authorities of the Village of Deerfield find that amending Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013) to prohibit the possession, manufacture

Exhibit Q
Page 0088

and sale of assault weapons in the Village of Deerfield is in the Village's best interests for the protection of the public health, safety, morals and welfare of the Village of Deerfield;

NOW, THEREFORE, BE IT ORDAINED BY THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF DEERFIELD, LAKE AND COOK COUNTIES, ILLINOIS, in the exercise of its home rule powers, as follows:

**SECTION 1:** The recitals to this Ordinance are incorporated into and made a part of this Ordinance as if fully set forth herein.

**SECTION 2:** Chapter 15 (Morals and Conduct), Article 11 (Assault Weapons), Section 15-86 (Definitions), Section 15-87 (Safe Storage of Assault Weapons; Exceptions) and Section 15-88 (Transportation of Assault Weapons; Exceptions) of the Municipal Code of the Village of Deerfield, as enacted by Village of Deerfield Ordinance No. 0-13-24 (July 1, 2013), shall be amended to read as follows (additions are indicated by <u>underlining</u> and deletions are indicated by ~~strikeout~~ markings):

**Article 11. Assault Weapons.**

**Sec. 15-86. Definitions.**

The following words, terms and phrases, when used in this Article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Assault weapon* means:

(1)    A semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and one or more of the following:

(A)    Only a pistol grip without a stock attached;
(B)    Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;
(C)    A folding, telescoping or thumbhole stock;
(D)    A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

-4-

(E)     A muzzle brake or muzzle compensator.

(2)     A semiautomatic rifle that has a fixed magazine that has the capacity to accept more than ten rounds of ammunition.

(3)     A semiautomatic pistol that has the capacity to accept a detachable magazine and has one or more of the following:

    (A)     Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

    (B)     A folding, telescoping or thumbhole stock;

    (C)     A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

    (D)     The capacity to accept a detachable magazine at some location outside of the pistol grip.

(4)     A semiautomatic shotgun that has one or more of the following:

    (A)     Only a pistol grip without a stock attached;

    (B)     Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

    (C)     A folding, telescoping or thumbhole stock;

    (D)     A fixed magazine capacity in excess of five rounds; or

    (E)     An ability to accept a detachable magazine.

(5)     Any shotgun with a revolving cylinder.

(6)     Conversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person.

(7)     Shall include, but not be limited to, the assault weapons models identified as follows:

    (A)     The following rifles or copies or duplicates thereof:

        (i)     AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR;

        (ii)     AR-10;

        (iii)     AR-15, Bushmaster XM15, Armalite M15, or Olympic Arms PCR;

        (iv)     AR70;

        (v)     Calico Liberty;

        (vi)     Dragunov SVD Sniper Rifle or Dragunov SVU;

        (viii)     Fabrique National FN/FAL, FN/LAR, or FNC;

        (viii)     Hi-Point Carbine;

        (ix)     HK-91, HK-93, HK-94, or HK-PSG-1;

        (x)     Kel-Tec Sub Rifle;

Exhibit Q
Page 0090

(xi)   Saiga;
(xii)   SAR-8, SAR-4800;
(xiii)  SKS with detachable magazine;
(xiv)  SLG 95;
(xv)   SLR 95 or 96;
(xvi)  Steyr AUG;
(xvii) Sturm, Ruger Mini-14;
(xviii) Tavor;
(xix)  Thompson 1927, Thompson M1, or Thompson 1927 Commando; or
(xx)   Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz).

(B)   The following pistols or copies or duplicates thereof, when not designed to be held and fired by the use of a single hand:

(i)    Calico M-110;
(ii)   MAC-10, MAC-11, or MPA3;
(iii)  Olympic Arms OA;
(iv)   TEC-9, TEC-DC9, TEC-22 Scorpion, or AB-10; or
(v)    Uzi.

(C)   The following shotguns or copies or duplicates thereof:
(i)    Armscor 30 BG;
(ii)   SPAS 12 or LAW 12;
(iii)  Striker 12; or
(iv)   Streetsweeper.

"Assault weapon" does not include any firearm that has been made permanently inoperable, or satisfies the definition of "antique ~~firearm~~ handgun," stated in this ~~section~~ Code, or weapons designed for Olympic target shooting events.

*Detachable magazine* means any ammunition feeding device, the function of which is to deliver one or more ammunition cartridges into the firing chamber, which can be removed from the firearm without the use of any tool, including a bullet or ammunition cartridge.

*Large capacity magazine* means any ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include the following:

(1)   A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds.
(2)   A 22 caliber tube ammunition feeding device.
(3)   A tubular magazine that is contained in a lever-action firearm.

*Muzzle brake* means a device attached to the muzzle of a weapon that utilizes escaping gas to reduce recoil.

-6-

*Muzzle compensator* means a device attached to the muzzle of a weapon that utilizes escaping gas to control muzzle movement.

**Sec. 15-87.    Safe Storage of Assault Weapons; Exceptions.**

(a) ~~Safe Storage.~~ It shall be unlawful to possess, bear, manufacture, sell, transfer, transport, store or keep any assault weapon in the Village, ~~unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user. For purposes of this section, such weapon shall not be deemed stored or kept when being carried by or under the control of the owner or other lawfully authorized user.~~

(b) ~~Self-defense exception. No person shall be punished for a violation of this section if an assault weapon is used in a lawful act of self-defense or in defense of another.~~

~~(c)~~ The provisions of this section, excluding those pertaining to the manufacture and sale of any assault weapon in the Village, do not apply to (i) any law enforcement officer, agent or employee of any municipality of the State of Illinois (ii) any law enforcement officer, agent or employee of the State of Illinois, of the United States, or of any other state (iii) any member of the military or other service of any state or the United States, including national guard and reserves, if the persons described are authorized by a competent authority to so carry an assault weapon loaded on a public way and such person is acting within the scope of his duties or training, or (iv) any qualified retired law enforcement officer, as that term is defined in 18 U.S.C. § 926C(c); however, any such assault weapon subject to the aforesaid exceptions under this section shall be safely stored and secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user, or broken down in a nonfunctioning state and not immediately accessible to any person, or unloaded and enclosed in a case, firearm carrying box, shipping box or other container by a person who has been issued a currently valid Firearm Owner's Identification Card, except as may otherwise be lawfully provided by the rules, regulations, general orders, ordinances or laws regulating the conduct of any such law enforcement officer, service member or qualified retired law enforcement officer.

**Section 15-88.  Transportation of Assault Weapons; Exceptions.**

(a) It is unlawful and a violation of this section for any person to carry, keep, bear, transport or possess an assault weapon in the Village, ~~except when on his land or in his own abode, legal dwelling or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission~~, except that this section does not apply to or affect transportation of assault weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; ~~or~~ and
(ii) are not immediately accessible to any person; or

Exhibit Q
Page 0092

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card~~,; or~~

(b)  The provisions of this section do not apply to (i) any law enforcement officer, agent or employee of any municipality of the State of Illinois (ii) any law enforcement officer, agent or employee of the State of Illinois, of the United States, or of any other state (iii) any member of the military or other service of any state or the United States, including national guard and reserves officer, agent or employee of any municipality of the commonwealth, if the persons described are authorized by a competent authority to so carry an assault weapon loaded on a public way and such person is acting within the scope of his duties or training, or (iv) any qualified retired law enforcement officer, as that term is defined in 18 U.S.C. § 926C(c); however, any such assault weapon subject to the aforesaid exceptions under this section shall be safely transported in a locked container or equipped with a tamper-resistant mechanical lock or other safety device properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user, or broken down in a nonfunctioning state and not immediately accessible to any person, or unloaded and enclosed in a case, firearm carrying box, shipping box or other container by a person who has been issued a currently valid Firearm Owner's Identification Card, except as may otherwise be lawfully provided by the rules, regulations, general orders, ordinances or laws regulating the conduct of any such law enforcement officer, service member or qualified retired law enforcement officer.

**Section 15-89. Penalty.**

Any person who is found to have violated this Article shall be fined not less than $250 and not more than $1,000 for each offense, and a separate offense shall be deemed committed on each day during or on which a violation occurs or continues. Every person convicted of any violation under this Article shall, in addition to any penalty provided in this Code, forfeit to the Village any assault weapon.

**Section 15-90. Disposition of Assault Weapon and Large Capacity Magazine.**

Any person who, prior to the effective date of Ordinance No. ____, was legally in possession of an Assault Weapon or Large Capacity Magazine prohibited by this Article, shall have 60 days from the effective date of Ordinance No. ____, to do any of the following without being subject to prosecution hereunder:

(a) Remove, sell or transfer the Assault Weapon or Large Capacity Magazine from within the limits of the Village;

(b) Modify the Assault Weapon or Large Capacity Magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an Assault Weapon or Large Capacity Magazine; or

(c) Surrender the Assault Weapon or Large Capacity Magazine to the Chief of Police or his or her designee for disposal as provided in Section 15-91 of this Article.

-8-

**Section 15-91. Destruction of Assault Weapons and Large Capacity Magazines.**

The Chief of Police or his or her designee shall have the power to confiscate any assault weapon of any person charged with a violation under this Article. The Chief of Police shall cause to be destroyed each Assault Weapon or Large Capacity Magazine surrendered or confiscated pursuant to this Article; provided, however, that no Assault Weapon or Large Capacity Magazine shall be destroyed until such time as the Chief of Police determines that the Assault Weapon or Large Capacity Magazine is not needed as evidence in any matter. The Chief of Police shall cause to be kept a record of the date and method of destruction of each Assault Weapon or Large Capacity Magazine destroyed pursuant to this Article.

**SECTION 3:** The Village Manager, or his designee, is authorized and directed to submit to the Illinois Department of State Police a copy of this Ordinance, 30 days after its adoption, and any such other measures as may be necessary to effect the requirements of 430 ILCS 65/13.3.

**SECTION 4:** If any section, paragraph, clause or provision of this Ordinance shall be held invalid, the invalidity of such section, paragraph, clause or provision shall not affect any of the other provisions of this Ordinance.

**SECTION 5:** This Ordinance, and each of its terms, shall be the effective legislative act of a home rule municipality without regard to whether such Ordinance should: (a) contain terms contrary to the provisions of current or subsequent non-preemptive state law; or, (b) legislate in a manner or regarding a matter not delegated to municipalities by state law. It is the intent of the corporate authorities of the Village of Deerfield that to the extent that the terms of this Ordinance should be inconsistent with any non-preemptive state law, this Ordinance shall supersede state law in that regard within its jurisdiction.

**SECTION 6:** This Ordinance shall be in full force and effect upon its passage and approval and shall subsequently be published in pamphlet form as provided by law.

PASSED this 2nd day of _____ April ___, 2018.

AYES: Benton, Jester, Oppenheim, Seiden, Shapiro, Struthers

NAYS: None

-9-

Exhibit Q
Page 0094

ABSENT: None

ABSTAIN: None

APPROVED this ___2nd___ day of _____April_____, 2018.

_____

Village President Pro Tem

ATTEST:

_____

Village Clerk

-10-