1  XAVIER BECERRA
   Attorney General of California
   State Bar No. 118517
   MARK R. BECKINGTON
   Supervising Deputy Attorney General
   State Bar No. 126009
   ANTHONY P. O'BRIEN
   Deputy Attorney General
   State Bar No. 232650
   JOHN D. ECHEVERRIA
   Deputy Attorney General
   State Bar No. 268843
    300 South Spring Street, Suite 1702
    Los Angeles, CA  90013
    Telephone:  (213) 269-6249
    Fax:  (213) 897-5775
    E-mail:  John.Echeverria@doj.ca.gov
   *Attorneys for Defendant Attorney General
   Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC., a California corporation,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,**<br><br>Defendants. | 17-cv-1017-BEN-JLB<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**<br><br>Date:  April 30, 2018<br>Time:  10:30 a.m.<br>Judge:  Hon. Roger T. Benitez<br>Courtroom:  5A<br>Action Filed:  May 17, 2017 |

## INTRODUCTION

In their supplemental brief (Dkt. No. 63) ("Plaintiffs' Supplemental Brief" or "Pls.' Supp. Br."), Plaintiffs fail to demonstrate that they are entitled to judgment on their Second Amendment claim.[1] If anything, their brief confirms that summary judgment would be improper. Plaintiffs persist in asking this Court to invalidate Section 32310 categorically, and failing that, they again ask the Court to apply strict scrutiny to Section 32310. Plaintiffs' arguments defy the Ninth Circuit's holding in *Fyock v. Sunnyvale* that LCM bans do not severely burden the core Second Amendment right, warranting at most intermediate scrutiny. *Fyock v. Sunnyvale*, 779 F.3d 991, 998-99 (9th Cir. 2015). Section 32310 does not violate the Second Amendment because (i) LCMs are not protected by the Second Amendment, even though they may be commonly owned in many jurisdictions today, and (ii) even if LCMs are protected, Section 32310 is supported by substantial evidence, satisfying intermediate scrutiny. Accordingly, Plaintiffs' Motion must be denied.

## ARGUMENT

**I. LARGE-CAPACITY MAGAZINES ARE NOT PROTECTED UNDER THE SECOND AMENDMENT, EVEN IF THEY ARE IN COMMON USE FOR LAWFUL PURPOSES.**

Section 32310 does not violate the Second Amendment at the first step of the Court's Second Amendment analysis because LCMs fall outside the "scope of the Second Amendment as historically understood." *United States v. Chovan*, 735 F.3d 1127, 1134 (9th Cir. 2013) (quoting *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)). Magazines of heightened capacities, like LCMs, may be banned because they have been subject to longstanding regulation dating back to the 1920s, *see* Def.'s Supp. Br. at 3:22-6:11, including, notably, California's former ban on

---

[1] Capitalized terms used but not defined herein shall be given the same meaning ascribed to them in Defendant's Opposition and his Supplemental Brief in Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Dkt. No. 62) ("Defendant's Supplemental Brief" or "Def.'s Supp. Br.").

firearms "having a capacity of greater than ten cartridges," 1933 Cal. Stat. 1170, § 3 (codified at former Cal. Penal Code § 12200). Those firing-capacity regulations were enacted in response to the increasing use of firearms with heightened capacities in organized crime, *see* DX-25 (Spitzer Article) at 901, just as nine states and the District of Columbia have banned LCMs over the past several decades in response to their widespread use by mass murderers.[2] These firing-capacity regulations "demonstrate a history of longstanding regulation" that precludes LCMs from Second Amendment protection. *See Fyock*, 779 F.3d at 997.

LCMs also fall outside the historical scope of the Second Amendment because they are "unquestionably most useful in military service." *Kolbe v. Hogan*, 849 F.3d 114, 137 (4th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 469 (2017); *see also Worman v. Healey*, 293 F. Supp. 3d 251, 265-66 (D. Mass. 2018) (Young, J.). The record reflects that LCMs have a military pedigree, but, more importantly, the functional attributes of LCMs allow soldiers on the battlefield to sustain fire without reloading, "enable[ing] a shooter to hit 'multiple human targets very rapidly.'" *Kolbe*, 849 F.3d at 137 (citation omitted). In stark contrast to their military utility, LCMs have little to no use in self-defense. *See* Def.'s Supp. Br. at 7:17-8:5. The State has submitted ample evidence that LCMs are most useful in military service, including, among other evidence, reports of the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") indicating that LCMs are military accessories, *see* DX-12 (ATF, *Recommendation on the Importability of Certain Semiautomatic Rifles* (1989)); DX-13 (ATF, *Study on the Sporting Suitability of Modified Semiautomatic Assault Rifles* (1998)).[3] Plaintiffs characterize this

---

[2] In addition to California, Hawaii, Massachusetts, Maryland, New Jersey, New York, Connecticut, Colorado, and the District of Columbia, *see* Opp'n at 5 n.5, Vermont enacted an LCM ban on April 11, 2018, prohibiting magazines capable of holding more than 10 rounds of ammunition for a long gun or 15 rounds for a handgun, 13 V.S.A. § 4021. In addition, on June 13, 2018, New Jersey lowered its capacity limit from 15 to 10 rounds. N.J. Stat. Ann. § 2C:39-1(y).

[3] Plaintiffs suggest that "'large capacity magazines,' as *California law*

1 evidence as "meager," Pls.' Supp. Br. at 6:21, but they ignore all of the other
2 evidence showing that LCMs are uniquely dangerous under intermediate scrutiny,
3 which also demonstrates that LCMs are most useful in military service, *see* Def.'s
4 Supp. Br. at 16:8-18:11. Not all magazines may have the same military utility, as
5 excessively large magazines may not be reliable and very small magazines may not
6 provide sufficient firepower, but LCMs banned by Section 32310 are
7 "unquestionably most useful in military service." *Kolbe*, 849 F.3d at 137.

8 According to Plaintiffs, the Second Amendment extends to these military-
9 grade accessories because the Second Amendment was "designed, in part, to ensure
10 the existence of '[a] well regulated Militia.'" Pls.' Supp. Br. at 5:11-20 (citation
11 omitted). But the Supreme Court has made clear that the Second Amendment does
12 not protect military-grade weapons even if they would be useful in militia service.
13 *See District of Columbia v. Heller*, 554 U.S. 570, 624-25, 627 (2008) (discussing
14 *United States v. Miller*, 307 U.S. 174 (1939)); *see also* Def.'s Supp. Br. at 8:8-10:9.
15 Even though the Second Amendment was originally ratified to further a military
16 purpose, the prefatory clause is simply not relevant in determining what weapons
17 are protected by the Second Amendment today. *See Kolbe*, 849 F.3d at 131 ("The
18 fit is not measured today . . . ."); *see also* Def.'s Supp. Br. at 12:16-14:14.

19 Neither Supreme Court nor Ninth Circuit precedent forecloses the Fourth
20 Circuit's approach, *see* Pls.' Supp. Br. at 4:12-13, because it is derived from the

---

*defines them*," were not the subject of the ATF's report. Pls.' Supp. Br. at 6:28-7:2. Plaintiffs are correct that the 1989 ATF report references a capacity range of 20-30 rounds as an *example* of a "large-capacity magazine," *id.* at 6:23-28 (citing DX-12), but nothing in the report suggests that LCMs with lower capacities lack similar military utility. In fact, Congress relied on the 1989 ATF study in enacting the 10-round Federal Ban five years later. *See* DX-26 (H.R. Rep. No. 103-489 (1994)) at 939-40, 980 (discussing the 1989 ATF working group report on the importability of certain semiautomatic rifles and noting that "[h]igh-capability magazine[s] make it possible to fire a large number of rounds without re-loading"). After discussing the 1998 ATF study, the House report explained that, "[b]ecause of the greater enhanced lethality—numbers of rounds that can be fired quickly without reloading—[the Federal Ban] also contains a ban on ammunition magazines which hold more than 10 rounds." *Id.* at 940.

text and reasoning of *Heller* itself. Plaintiffs rely on *Caetano v. Massachusetts*, __ U.S. __, 136 S. Ct. 1027 (2016) (per curiam), in arguing that the Supreme Court "contemplates that at least some military arms come within the scope of the right," Pls.' Supp. Br. at 4:25-5:7. *Caetano* reaffirmed that the Second Amendment protects weapons commonly owned for self-defense, noting that "*Heller* rejected the proposition 'that only those weapons useful in warfare are protected.'" *Caetano*, 136 S. Ct. at 1028. Plaintiffs seize on the word "only" to claim that the Second Amendment also protects military-grade weapons. Pls.' Supp. Br. at 4:25-5:6. But the *Heller* majority used the word "only" because it was rejecting the dissenting justices' view that the Second Amendment "protects *only* the right to possess and carry a firearm in connection with militia service." *Heller*, 554 U.S. at 577 (emphasis added). The Court did not hold that the Second Amendment extends to military weapons. *See Friedman v. City of Highland Park, Ill.*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be *obviously* valid." (citing *Heller*, 554 U.S. at 624) (emphasis added)).

Plaintiffs also claim that the Fourth Circuit's approach "conflicts with Ninth Circuit precedent." Pls.' Reply to Opp'n to Mot. for Summ. J. ("Pls.' Reply") at 2:18-19. It does not. In *Fyock*, the court held that the district court did not abuse its discretion in "inferring *from the evidence of record* that, at a minimum, magazines are in common use." *Fyock*, 779 F.3d at 998 (emphasis added); *see also id.* at 999 (agreeing with the district court that the LCM ban "*may* implicate the core of the Second Amendment" (emphasis added)). The court did not consider the argument that LCMs are not protected due to their military utility.

Plaintiffs argue that LCMs are protected under the Second Amendment merely because they are purportedly in "common use." Pls.' Supp. Br. at 4:4-6:17. This so-called "common use" test is based on dissenting and concurring judicial opinions that have not been adopted by the Supreme Court or any circuit court. *See* Pls.' Supp. Br. at 5:7-9 (citing *Kolbe*, 849 F.3d at 157 (Traxler, J., dissenting)); *id.*

4

at 8:9-13 (citing *Friedman v. City of Highland Park*, 136 S. Ct. 447, 449 (2015) (Thomas & Scalia, JJ., dissenting from denial of certiorari)). The "common use" test is not the law. *See Kolbe*, 849 F.3d at 141-42 (noting that "the *Heller* majority said nothing to confirm that it was sponsoring the popularity test"); *Worman*, 293 F. Supp. 3d at 266 ("[P]resent day popularity is not constitutionally material."). And for good reason. The "common use" test advanced by Plaintiffs is circular and would lead to unreasonable results.

In *Kolbe*, the Fourth Circuit observed that, under the "common use" test, short-barreled shotguns and machineguns—weapons that are clearly outside the scope of the Second Amendment—"could be sufficiently popular to find safe haven in the Second Amendment" if statutes prohibiting their possession had not been enacted. *Kolbe*, 849 F.3d at 141. And if "a state-of-the-art and extraordinarily lethal new weapon" were invented, under the "common use" test, "[t]hat new weapon would need only be flooded on the market prior to any governmental prohibition in order to ensure it constitutional protection." *Id.* "There is no basis for believing that the Framers intended such circular reasoning." *Heller*, 554 U.S. at 720-21 (Breyer, J., dissenting). The Second Amendment is not a one-way ratchet, expanding its scope as more people acquire certain weapons while, at the same time, restricting the ability of governments to regulate those weapons. Even if LCMs have been in "common use" since the expiration of the Federal Ban, they have been subject to longstanding regulation and are most useful in military service. Accordingly, LCMs fall outside the scope of the Second Amendment, and Section 32310 is constitutional at the first step of the Court's Second Amendment analysis.

## II. THE STATE'S EVIDENCE SATISFIES INTERMEDIATE SCRUTINY.

### A. Intermediate Scrutiny, Not Strict Scrutiny, Applies to Section 32310.

Even if the Court were to assume that LCMs are entitled to some degree of Second Amendment protection, intermediate scrutiny applies to LCM bans like

Section 32310 at the second step of the Second Amendment analysis because "the prohibition of . . . large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves." *Fyock*, 779 F.3d at 999 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*")).[4] Once again, however, Plaintiffs urge the Court to hold Section 32310 categorically invalid, as the *Heller* Court did with respect to the District of Columbia's outright ban on handguns. Pls.' Supp. Br. at 8:1-10:13; Pls.' Reply at 4:13-17; Pls.' Mem. at 12:10-20. Such an approach is warranted only when a law "amounts to a destruction of the Second Amendment right." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). It has not been applied in any cases other than *Heller* and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010), and it was expressly rejected in *Fyock*, 779 F.3d at 999 (determining that the LCM ban "is simply not as sweeping as the complete handgun ban at issue in *Heller* and does not warrant a finding that it cannot survive constitutional scrutiny of any level"). Just because *Heller* and *McDonald* invalidated bans on all handguns—"the quintessential self-defense weapon," *Heller*, 554 U.S. at 629—does not mean that all firearm restrictions, particularly bans on a subset of firearm magazines, are also categorically invalid.

Alternatively, Plaintiffs urge the Court to apply strict scrutiny to Section 32310.[5] Pls.' Supp. Br. at 11:12-13:14 (citing *Kolbe*, 849 F.3d at 161 (Traxler, J., dissenting)); Pls.' Mem. at 12 n.5. Plaintiffs claim that strict scrutiny should apply simply because the Second Amendment was recognized in *McDonald*

---

[4] After an extended argument that intermediate scrutiny should not apply to Section 32310, *see* Pls.' Supp. Br. at 8:1-13:14, Plaintiffs eventually concede that they "do, however, recognize that the Ninth Circuit's decision in *Fyock* may require application of intermediate scrutiny," *id.* at 13:12-13.

[5] Plaintiffs argument that strict scrutiny should apply merely because the Second Amendment is a fundamental right under *McDonald*, *see* Pls.' Supp. Br. at 11:20-27, would short-circuit the Ninth Circuit's two-step framework, which requires the Court to select the appropriate level of scrutiny based on "(1) how close the law comes to the court of the Second Amendment right, and (2) the severity of the law's burden on the right." *Chovan*, 735 F.3d at 1127.

as a fundamental right. *Id.* at 11:20-27. Applying strict scrutiny to all laws that implicate the Second Amendment, however, would short-circuit the Ninth Circuit's framework for selecting the appropriate level of scrutiny, based on "(1) how close the law comes to the court of the Second Amendment right, and (2) the severity of the law's burden on the right." *Chovan*, 735 F.3d at 1127. Strict scrutiny may apply only when the challenged law "implicates the core of the Second Amendment right and *severely burdens* that right." *Silvester*, 843 F.3d at 821 (emphasis added). The Ninth Circuit has determined that intermediate scrutiny, and not strict scrutiny, applies to LCM bans like Section 32310, *see Fyock*, 779 F.3d at 999, consistent with every circuit court that has selected a level of scrutiny in evaluating LCM bans, *see N.Y.S. Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 263-64 (2d Cir. 2015) ("*NYSRPA*"); *Heller II*, 670 F.3d at 1260-64; *Kolbe*, 849 F.3d at 130-41.

By merely limiting magazine capacity to 10 rounds, Section 32310 regulates, at most, the manner in which individuals may exercise their Second Amendment rights. It does not impose a "flat ban on [any] core Second Amendment conduct," Pls.' Supp. Br. at 11:14, nor does it "forc[e] Plaintiffs to remove [LCMs] from their homes," *id.* at 12:12-13. Such mischaracterizations are belied by the facts; Section 32310 does not limit the number of California-compliant magazines that may be owned for lawful purposes, and it permits owners of grandfathered LCMs to *keep possession of them* if they are permanently modified to hold no more than 10 rounds. *See* Cal. Penal Code § 16740(a); *Fyock*, 779 F.3d at 999 (noting that the LCM ban "does not restrict the possession of magazines in general such that it would render any lawfully possessed firearms inoperable, nor does it restrict the number of magazines that an individual may possess"). Section 32310 is subject at most to intermediate scrutiny. *Fyock*, 779 F.3d at 999.

**B. Section 32310 Satisfies Intermediate Scrutiny.**

As discussed extensively in Defendant's Opposition and Supplemental Brief, Section 32310 satisfies intermediate scrutiny because it is substantially related to

7

important government interests, including the prevention and mitigation of public mass shootings and gun violence against law enforcement. LCMs are exceedingly dangerous because they enable a shooter to sustain fire without reloading, reducing the pauses in mass shootings while maximizing their lethality. LCMs have been used predominantly in public mass shootings, including nine out of the ten deadliest public mass shootings from 1982 to October 2017, *see* DX-1 (Allen Report) at 28-31, and nine out of the ten deadliest intentional acts of violence in the past decade, *see* DX-3 (Klarevas Report) at 109, 111.[6] Section 32310 is aimed at reducing the prevalence of LCMs in such incidents by reducing the number of LCMs in the state, which Plaintiffs admit is a "conceptually logical" rationale. Pls.' Supp. Br. at 16:11-12; *see also id.* at 19:25-27. Plaintiffs argue that this rationale is "out of step with the way we treat fundamental rights," but it is entirely in line with the Ninth Circuit's approach to LCM bans. *See* Section II.A, *supra*. Section 32310 exhibits a reasonable fit to the State's important interests, because those interests "would be achieved less effectively absent the regulation." *Fyock*, 779 F.3d at 1000 (quotation omitted).

Plaintiffs incorrectly claim that the challenged law should be "closely drawn" to the State's important objectives. *See* Pls.' Supp. Br. at 13:26-14:3 (citing *McCutcheon v. FEC*, __ U.S. __, 134 S. Ct. 1434, 1456-57 (2014)).[7] Intermediate scrutiny in the Second Amendment context requires only a *reasonable* fit. And in

---

[6] In yet another recent incident, on June 17, 2018, a gang-related shooting involving an LCM occurred at an arts festival in Trenton, New Jersey, resulting in 22 injuries. *See* Luis Ferré-Sadurní and Mihir Zaveri, *Mass Shooting at New Jersey Arts Festival Leaves 22 Injured and 1 Dead*, N.Y. Times, June 17, 2018 (noting that law enforcement recovered from the scene "a handgun with an 'extended capacity magazine'"), *available at* https://www.nytimes.com/2018/06/17/nyregion/trenton-mass-shooting.html.

[7] In *McCutcheon*, the Supreme Court invalidated certain political contribution limits under the "closely drawn test" due to the "*substantial mismatch* between the Government's stated objective and the means selected to achieve it." *McCutcheon*, 134 S. Ct. at 1446 (emphasis added). Even if that test applied in the Second Amendment context, there is no "substantial mismatch" between Section 32310 and the State's important government interests.

establishing that fit, the State may rely upon "any evidence 'reasonably believed to be relevant.'" *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 969 (9th Cir. 2014) (citation omitted), including the opinions of legislators, law enforcement officials, and social science experts. *Compare* DX-4 (Koper Report) at 125:23-126:3 (describing Section 32310's "potential"), *with NYSRPA*, 804 F.3d at 263-64 (crediting Christopher Koper's opinion that the LCM ban has "the greatest 'potential to prevent and limit shootings in the state over the long-run'"). Plaintiffs claim that, "based on the empirical evidence available, the state *cannot* state, to a reasonable degree of probability, that section 32310 will significantly reduce" gun violence or achieve its goals. Pls.' Supp. Br. at 22:2-10. That is not the State's burden under intermediate scrutiny. Nor is the State required to demonstrate that past LCM restrictions have had a "*statistically significant*" effect on gun violence. *See, e.g.*, *id.* at 21:17. Any gaps in the underlying data relied upon by the State's experts would not invalidate their opinions, *Jackson*, 746 F.3d at 969 (intermediate scrutiny can be satisfied even if the regulation is based on purportedly "bad science and erroneous assumptions"), and the State is free to regulate dangerous firearm accessories based on the evidence available at the time.

Plaintiffs also contend that the 10-round limitation is "an arbitrary number." Pls.' Supp. Br. at 22:28-23:2. It is not. The vast majority of LCM bans impose a 10-round capacity limit, including the former Federal Ban, and 10-round magazines are commonly available for use in most, if not all, semiautomatic firearms. *See NYSRPA*, 804 F.3d at 264 (noting that the state imposed a 7-round *load* limit because, unlike the 10-round *capacity* limit, "seven-round magazines are difficult to obtain commercially"); *see also* Graham Decl. ¶ 23 (discussing the availability of California-compliant magazines). In fact, the former firing-capacity regulation enacted by California in 1933 imposed a 10-round limit. 1933 Cal. Stat. 1170, § 3 (codified at former Penal Code § 12200). Plaintiffs contend that the State's evidence must explain "why it has selected 'ten' as the number at which detachable

9

magazines become too dangerous." Pls.' Supp. Br. at 22:14-16. But intermediate scrutiny does not require such precision. *See Silvester*, 843 F.3d at 819, 829 (upholding the State's 10-day waiting period as a "reasonable safety precaution" based on evidence that "a cooling-off period [may] deter violence resulting from impulsive purchases of firearms"). In setting magazine-capacity limitations, states may disagree on where to draw the lines, but they "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Jackson*, 746 F.3d at 969-70. In enacting Section 32310, the Legislature and the People "dr[ew] reasonable inferences based on substantial evidence," *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) (plurality), and the Court should "afford substantial deference to the[ir] predictive judgments." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997).[8]

In sum, the evidence amply demonstrates that Section 32310 is constitutional under intermediate scrutiny.

## CONCLUSION

For these reasons, and those discussed in Defendant's prior submissions to the Court, the Court should deny Plaintiffs' Motion because Section 32310 does not violate the Second Amendment.

---

[8] Plaintiffs cite *Obergefell v. Hodges*, __ U.S. __, 135 S. Ct. 2584 (2015), in arguing that the State is not entitled to deference. Pls.' Supp. Br. at 17:3-13. But that case, which invalidated prohibitions on same-sex marriage under the Fourteenth Amendment, *id.* at 2604-05, is entirely inapposite. A claimed right to LCM possession under the Second Amendment is not analogous to marriage equality under the Fourteenth Amendment.

Dated: June 21, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
ANTHONY P. O'BRIEN
Deputy Attorney General

/s/ John D. Echeverria

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendant Attorney General Xavier Becerra*

# CERTIFICATE OF SERVICE

| Case Name: | **Duncan, Virginia et al v. Xavier Becerra** | Case No. | **17-cv-1017-BEN-JLB** |
|---|---|---|---|

I hereby certify that on <u>June 21, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 21, 2018</u>, at Los Angeles, California.

| Colby Luong | /s/ Colby Luong |
|---|---|
| Declarant | Signature |

SA2017107272
62871707.docx