

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

VIRGINIA DUNCAN; et al.,

        Plaintiffs - Appellees,

  v.

XAVIER BECERRA, in his official
capacity as Attorney General of the
State of California,

        Defendant - Appellant.

No. 17-56081

D.C. No. 3:17-cv-01017-BEN-JLB
U.S. District Court for Southern
California, San Diego

**MANDATE**

---

The judgment of this Court, entered July 17, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

Costs are taxed against the appellant in the amount of $379.70.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Quy Le
Deputy Clerk
Ninth Circuit Rule 27-7

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 17 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VIRGINIA DUNCAN; et al., | No.    17-56081 |
| Plaintiffs-Appellees, | |
| v. | D.C. No. 3:17-cv-01017-BEN-JLB |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted May 14, 2018
San Francisco, California

Before:  WALLACE and N.R. SMITH, Circuit Judges, and BATTS,[**] District Judge.

The State of California ("California"), through its Attorney General, Xavier

Becerra, appeals the district court's grant of a preliminary injunction enjoining

---

[*]         This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]         The Honorable Deborah A. Batts, United States District Judge for the Southern District of New York, sitting by designation.

California from enforcing California Penal Code §§ 32310(c) & (d). "We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). We do not "determine the ultimate merits," but rather "determine only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand." *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.[1]

## I.

The district court did not abuse its discretion by granting a preliminary injunction on Second Amendment grounds. *Thalheimer*, 645 F.3d 1109 at 1115.

---

[1] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). California makes only a cursory argument that the latter three elements are unmet if we find the district court did not abuse its discretion regarding the first element. Because we find the district court did not abuse its discretion, we only address the first element of the preliminary injunction standard for each constitutional question. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. . . . [A] bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." (citation omitted)).

2

1. The district court did not abuse its discretion by concluding that magazines for a weapon likely fall within the scope of the Second Amendment. First, the district court identified the applicable law, citing *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) (per curiam), and *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014). Second, it did not exceed its permissible discretion by concluding, based on those cases, that (1) some part of the Second Amendment right likely includes the right to bear a weapon "that has some reasonable relationship to the preservation or efficiency of a well regulated militia," *Miller*, 307 U.S. at 178; *see also Heller*, 554 U.S. at 583, 627-28; *Caetano*, 136 S. Ct. at 1028; and (2) the ammunition for a weapon is similar to the magazine for a weapon, *Jackson* 746 F.3d at 967 ("'[T]he right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." (quoting *Ezell v. City of Chicago*, 61 F.3d 684, 704 (7th Cir. 2011))).

2. The district court did not abuse its discretion by applying the incorrect level of scrutiny. The district court applied both intermediate scrutiny and what it coined the "simple test" of *Heller*. The district court found Plaintiffs were likely to succeed under either analysis. Although the district court applied two different tests, there is no reversible error if one of those tests follows the applicable legal

3

principles and the district court ultimately reaches the same conclusion in both analyses.

Here, in its intermediate scrutiny analysis, the district court correctly applied the two-part test outlined in *Jackson*. The district court concluded that a ban on ammunition magazines is not a presumptively lawful regulation and that the prohibition did not have a "historical pedigree." Next, the district court concluded, citing *Fyock*, that section 32310 infringed on the core of the Second Amendment right, but, citing *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2016), *Fyock*, 779 F.3d at 999, *Jackson*, 746 F.3d at 965, 968, and *Chovan*, 735 F.3d at 1138, that intermediate scrutiny was the appropriate scrutiny level. The district court concluded that California had identified four "important" interests and reasoned that the proper question was "whether the dispossession and criminalization components of [section] 32310's ban on firearm magazines holding any more than 10 rounds is a reasonable fit for achieving these important goals."

3. The district court did not abuse its discretion by concluding that sections 32310(c) and (d) did not survive intermediate scrutiny. The district court's review of the evidence included numerous judgment calls regarding the quality, type, and reliability of the evidence, as well as repeated credibility determinations. Ultimately, the district court concluded that section 32310 is "not likely to be a

reasonable fit." California articulates no actual error made by the district court, but, rather, multiple instances where it disagrees with the district court's conclusion or analysis regarding certain pieces of evidence. This is insufficient to establish that the district court's findings of fact and its application of the legal standard to those facts were "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). In reviewing the district court's grant of a preliminary injunction, we cannot "re-weigh the evidence and overturn the district court's

evidentiary determinations—in effect, to substitute our discretion for that of the district court." *Fyock*, 779 F.3d at 1000.[2]

## II.

The district court did not abuse its discretion by granting a preliminary injunction on Takings Clause grounds. *Thalheimer*, 645 F.3d at 1115. First, the district court, citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005), *Horne v. Department of Agriculture*, 135 S. Ct. 2419 (2015), *Loretta v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), *Murr v. Wisconsin*, 137 S. Ct. 1933 (2017), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992),

---

[2] The dissent *does* re-weigh the evidence. It concludes that "California's evidence . . . was more than sufficient to satisfy intermediate scrutiny" and that the "2013 Mayors Against Illegal Guns (MAIG) Survey . . . easily satisfies the requirement that the evidence upon which the state relies be 'reasonably believed to be relevant' and 'fairly support' the rationale for the challenged law." These conclusions mean the dissent *is* "substitut[ing] [its] discretion for that of the district court," which is impermissible under the applicable standard of review. *Fyock*, 779 F.3d at 1000-01.

Further, disagreeing with another district court regarding a similar record is not necessarily an abuse of discretion. Here, the district court made evidentiary conclusions regarding the record provided by California, specifically noting that it had provided "incomplete studies from unreliable sources upon which experts base speculative explanation and predictions." These conclusions are not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Hinkson*, 585 F.3d at 1251. As noted above, it is not our role to "re-weigh the evidence and overturn the district court's evidentiary determinations—in effect, to substitute our discretion for that of the district court." *Fyock*, 779 F.3d at 1000.

outlined the correct legal principles. Second, the district court did not exceed its

discretion by concluding (1) that the three options provided in section 32310(d)

(surrender, removal, or sale) fundamentally "deprive Plaintiffs not just of the *use*

of their property, but of *possession*, one of the most essential sticks in the bundle of

property rights"; and (2) that California could not use the police power to avoid

compensation, *Lucas*, 505 U.S. at 1020-29; *Loretto*, 458 U.S. at 426 (holding "a

permanent physical occupation authorized by the government is a taking without

regard to the public interest it may serve").[3]

---

[3] The dissent also "re-weigh[s] the evidence" and the district court's
conclusions on the Takings Clause question. *Fyock*, 779 F.3d at 1000. The district
court concluded that the three options available under section 32310(d) constituted
either a physical taking (surrender to the government for destruction) or a
regulatory taking (forced sale to a firearms dealer or removal out of state). The
dissent first takes issue with the district court's conclusion that storage out of state
could be financially prohibitive. It is not "illogical" or "implausible" to conclude
that forcing citizens to remove property out of state effectively dispossess the
property due to the financial burden of using it again. *Hinkson*, 585 F.3d at 1263.
Such removal, as the district court notes, also eliminates use of the Banned
Magazines in "self defense." *See Heller*, 554 U.S. at 592 ("[W]e find that [the text
of the Second Amendment] guarantee[s] the individual [a] right to possess and
carry weapons in case of confrontation."). Second, the dissent argues the district
court incorrectly weighed the regulatory takings factors in *Murr*. While the cost
($20 to $50) of the magazine may seem minimal, the district court also noted that
the "character of the governmental action," *Murr*, 137 S. Ct. at 1943, was such that
"California will deprive Plaintiffs not just of the *use* of their property, but of
*possession*," Similarly, this conclusion is not "illogical," "implausible," or
"without support in inferences that may be drawn from the facts in the record."
*Hinkson*, 585 F.3d at 1263.

**AFFIRMED.**

*Duncan v. Becerra*, No. 17-56081

FILED

JUL 17 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WALLACE, Circuit Judge, dissenting:

I respectfully dissent. For the reasons stated below, I conclude that the district court abused its discretion in preliminarily enjoining California Penal Code §§ 32310(c) & (d).

## I.

In this case, we apply intermediate scrutiny because the challenged law "does not implicate a core Second Amendment right, or . . . place a substantial burden on the Second Amendment right." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014). Under this standard, a challenged law will survive constitutional scrutiny so long as the state establishes a "reasonable fit" between the law and an important government interest. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). "When reviewing the reasonable fit between the government's stated objective and the regulation at issue, the court may consider 'the legislative history of the enactment as well as studies in the record or cited in pertinent case law.'" *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (quoting *Jackson*, 746 F.3d at 966). California may establish a reasonable fit with "any evidence 'reasonably believed to be relevant' to substantiate its important interests." *Id*.

1

The majority concludes the district court did not abuse its discretion in concluding California's large-capacity magazine (LCM) possession ban did not survive intermediate scrutiny on the ground that the district court's conclusion was based on "numerous judgment calls regarding the quality, type, and reliability of the evidence." The problem, however, is that the district court's "judgment calls" presupposed a much too high evidentiary burden for the state. Under intermediate scrutiny, the question is not whether the state's evidence satisfies the district court's subjective standard of empiricism, but rather whether the state relies on evidence "reasonably believed to be relevant" to substantiate its important interests. *Fyock*, 779 F.3d at 1000. So long as the state's evidence "fairly supports" its conclusion that a ban on possession of LCMs would reduce the lethality of gun violence and promote public safety, the ban survives intermediate scrutiny. *Jackson*, 746 F.3d at 969.

California's evidence—which included statistical studies, expert testimony, and surveys of mass shootings showing that the use of LCMs increases the lethality of gun violence—was more than sufficient to satisfy intermediate scrutiny. For example, the September 2013 Mayors Against Illegal Guns (MAIG) Survey, which the district court writes off as inconclusive and irrelevant, easily satisfies the requirement that the evidence upon which the state relies be "reasonably believed to be relevant" and "fairly support" the rationale for the challenged law. The

MAIG survey shows that assault weapons or LCMs were used in at least 15 percent of the mass shootings reported, and that in those incidents 151 percent more people were shot, and 63 percent more people died, as compared to other mass shootings surveyed. Even if the MAIG survey also shows that most mass shooting incidents did not involve LCMs, California could draw a "reasonable inference" based on the data that prohibiting possession of LCMs would reduce the lethality of gun violence. *Jackson*, 746 F.3d at 966. Other evidence cited by the state similarly supports the conclusion that mass shootings involving LCMs result in a higher number of shots fired, a higher number of injuries, and a higher number of fatalities than other mass shootings. The district court's characterization of this evidence as insufficient was based either on clearly erroneous findings of fact or an application of intermediate scrutiny that lacked support in inferences that could be drawn from facts in the record. In either case, it was an abuse of discretion.

It is significant that California, in seeking to establish a reasonable fit between §§ 32310(c) & (d) and its interest in reducing the lethality of mass shootings, relied on much of the same evidence presented by the City of Sunnyvale in *Fyock*, a case in which we affirmed the district court's conclusion that Sunnyvale's LCM possession ban was likely to survive intermediate scrutiny. The district court attempts to distinguish the two cases, stressing that an "important difference" between this case and *Fyock* is that the court in *Fyock* "had a

sufficiently convincing evidentiary record of a reasonable fit," which "is not the case here." But the evidentiary record in *Fyock* included much of the same evidence the district court here found insufficient—including the aforementioned September 2013 MAIG survey, and expert declarations by Lucy Allen and John Donohue, which the district court dismissed as "defective" and "biased." The district court did not explain why the evidentiary record in *Fyock* was "sufficiently convincing," while a substantially similar evidentiary record here was insufficient. Given the overlap between the records, and the district court's failure to identify any material differences, the district court's contention that the record here is less credible, less reliable, and less relevant than the record in *Fyock* is difficult to accept.

The majority argues in a footnote that in concluding the district court abused its discretion I have impermissibly re-weighed the evidence. That is not so. Our obligation to refrain from re-weighing evidence is meant to ensure we do not overturn a district court's ruling simply because we would have placed more weight on certain pieces of evidence than others. This obligation to refrain presumes the district court has applied the correct legal standard. Here, by contrast, my argument is that the district court did not evaluate the evidence consistent with the applicable legal standard. This is conceptually distinct from the question whether one piece of evidence should have been given more weight vis-à-vis

another piece of evidence. Here, the district court was required under intermediate scrutiny to credit evidence "reasonably believed to be relevant" to advancing the state's important interests. *Fyock*, 779 F.3d at 1000. Instead, the district court rejected this standard for a subjective standard of undefined empirical robustness, which it found the state did not satisfy. This it cannot do.

In sum, I conclude the district court abused its discretion in concluding that California had not established a "reasonable fit" between §§ 32310(c) & (d) and the state's important interests. On the record before the district court, California's LCM possession ban likely survives intermediate scrutiny. Therefore, Plaintiffs were unlikely to succeed on the merits of their Second Amendment challenge and were not entitled to a preliminary injunction.

## II.

The district court also concluded that Plaintiffs were likely to succeed on the merits of their claim under the Takings Clause on the ground that §§ 32310(c) & (d) was both a physical appropriation of property and a regulatory taking. In my view, the district court's application of relevant takings doctrine was without support in inferences that could be drawn from facts in the record, and therefore constituted an abuse of discretion.

The district court is correct that a physical appropriation of personal property gives rise to a *per se* taking. *Horne v. Department of Agriculture*, 135 S. Ct. 2419,

2427 (2015). But here, LCM owners can comply with § 32310 without the state physically appropriating their magazines. Under § 32310(d)(1), an LCM owner may "[r]emove the large-capacity magazine from the state," retaining ownership of the LCM, as well as rights to possess and use the magazines out of state. The district court hypothesized that LCM owners may find removal to be more costly than it is worth, but such speculation, while theoretically relevant to the regulatory takings inquiry, does not turn the compulsory removal of LCMs from the state into a "physical appropriation" by the state. *See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323 (2002) (explaining that it is "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa") (footnote omitted). Given that Plaintiffs do not specify whether they intend to surrender or sell their LCMs, as opposed to remove them from the state and retain ownership, the availability of the removal option means Plaintiffs are unlikely to succeed on their claim that the LCM possession ban is unconstitutional as a physical taking. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (explaining that to succeed on a facial challenge, plaintiffs must show either that "no set of circumstances exists under which the challenged law would be valid," or that the law lacks any "plainly legitimate sweep"); *cf. Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("In

6

determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

Nor was the district court within its discretion to conclude that § 32310 likely constituted a regulatory taking. Under the relevant *Penn Central* balancing test, a regulatory taking may be found based on "a complex of factors," including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Here, the district court speculated that because the typical retail cost of an LCM is "between $20 and $50," LCM owners may find "the associated costs of removal and storage and retrieval" to be too high to justify retaining their magazines. In my view, this speculation is insufficient to conclude that plaintiffs are likely to succeed on the merits of their regulatory takings claim. Even accepting the district court's finding on the "typical retail cost" of an LCM, there are no facts in the record from which to draw an inference regarding the overall economic impact of §§ 32310(c) & (d) on Plaintiffs, particularly as it relates to Plaintiffs' "distinct investment-backed expectations" for their LCMs. Without this foundation, the district court could not plausibly draw the inference that requiring the removal of LCMs from

7

California was "functionally equivalent" to a direct appropriation and thus constituted a regulatory taking. *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 539 (2005).

III.

"Abuse-of-discretion review is highly deferential to the district court." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). In this case, however, I do not consider it a close call to conclude the district court abused its discretion in finding Plaintiffs were likely to succeed on the merits of their constitutional challenges to California's LCM ban. As to Plaintiffs' Second Amendment challenge, the district court clearly misapplied intermediate scrutiny by refusing to credit relevant evidence that fairly supports the state's rationale for its LCM ban. As to Plaintiffs' Takings Clause challenge, the district court offered only speculation on the economic impact of the challenged law and did not assess Plaintiffs' distinct investment-backed expectations for their LCMs. Therefore, I would conclude the district court exceeded the broad range of permissible conclusions it could have drawn from the record. The proper course is to reverse the district court's order granting the preliminary injunction and remand for further proceedings. Accordingly, I dissent.

As a final note, I realize the end result of the district court's rulings are temporary. The district court is to be commended for following our constant

8

admonition not to delay trial preparation awaiting an interim ruling on the preliminary injunction. *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 673 (9th Cir. 1988). The district court has properly proceeded with deliberate speed towards a trial, which will allow it to decide this case with a full and complete record and a new review. Thus, although I would reverse the district court's order and remand for further proceedings, I credit the district court for ensuring the case did not stall awaiting disposition of this appeal.