C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, et al., | Case No:  17-cv-1017-BEN-JLB |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY JUDGMENT PENDING APPEAL** |
| v. | |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
| Defendant. | |

**INTRODUCTION**

On March 29, 2019, the Court enjoined enforcement of Penal Code section 32310 as violative of both the Second Amendment and the Takings Clause of the United States Constitution. Since then, and relying on the Court's order, retailers across the country began lawfully selling magazines capable of holding more than ten rounds to California residents. Three days later, Defendant Becerra ("the State") filed an ex parte application requesting that the Court stay its judgment while the parties litigate the State's anticipated appeal.[1]

Federal Rule of Civil Procedure Rule 62 authorizes a Court to stay an injunction pending appeal where the moving party establishes that the factors typically applied to a preliminary injunction motion warrant a stay. The State has failed to meet its burden to establish that this extraordinary relief is warranted here. First, it has not—and cannot—establish that it will suffer any real, irreparable harm absent a stay. On the other hand, a stay will cause Plaintiffs and millions of California residents to endure even more violations of their constitutional rights. And third, staying the injunction now would subject countless California residents who have ordered magazines in the wake of the Court's ruling (but have not yet received them) to severe criminal penalties without notice.

The State's motion should be denied. If the Court is inclined to grant the Motion, however, the Court should tailor its order to protect those people who have ordered magazines since March 29th but have not yet received them.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 62(c) allows a district court to suspend, modify, restore, or grant an injunction during an appeal in limited circumstances. Fed.

---

[1] The State effectively asked the Court to lift the injunction on enforcement of section(a)'s ban on acquisition but did not oppose the reinstatement of the preliminary injunction enjoining enforcement of the possession ban (section 32310(c)-(d)). Plaintiffs agree that if the Court stays enforcement of its judgment, it should still reinstate the June 2017 preliminary injunction.

1   R. Civ. P. 62(c); *Natural Res. Def. Council, Inc. v. S.W. Marine, Inc.,* 242 F.3d 1163,

2   1166 (9th Cir. 2001). "A stay is not a matter of right, even if irreparable injury might

3   otherwise result," rather, a stay is "an exercise of judicial discretion" and the

4   "propriety of its issue is dependent upon the circumstances of the particular case."

5   *Nken v. Holder,* 556 U.S. 418, 433 (2009). "The party requesting a stay bears the

6   burden of showing that the circumstances justify an exercise of that discretion." *Id.* at

7   433-34.

8       In determining whether to issue a stay pending, courts consider four factors:

9   "(1) whether the stay applicant has made a strong showing that he is likely to succeed

10  on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

11  whether issuance of the stay will substantially injure the other parties interested in the

12  proceeding; and (4) where the public interest lies." *Id.* at 434. The first two factors

13  "are the most critical." *Id.* As for the first factor, the Ninth Circuit has characterized a

14  "strong showing" in various ways, including "reasonable probability," "fair prospect,"

15  "substantial case on the merits," and "serious legal questions . . . raised." *Leiva-Perez*

16  *v. Holder,* 640 F.3d 962, 967-68 (9th Cir. 2011). But when an applicant relies on

17  "serious legal questions," he must establish irreparable harm and that the balance of

18  harms tips *sharply* in his favor. *See id.* at 966; *Tribal Village of Akutan v. Hodel*, 859

19  F.2d 662, 663 (9th Cir. 1988).

20                          **ARGUMENT**

21  **I.   THE STATE HAS NOT SHOWN A STRONG LIKELIHOOD OF SUCCESS**

22      The State cannot establish that it is likely to succeed in its attempt to overturn

23  this Court's decision on Plaintiffs' Second Amendment claim. Simply put, the Court

24  correctly decided this case. The Court's 86-page order is one of the most thorough

25  analyses of the issue by any court to date. Indeed, upon reviewing a similar but less

26  rigorous analysis, a panel of the Ninth Circuit already confirmed that this Court did

27  not err in concluding that Plaintiffs, not the State, are likely to succeed on the merits

28  of their Second Amendment claim. *Duncan v. Becerra*, 742 Fed. Appx. 218 (9th Cir.

2018).

What's more, the Court's order relies on its faithful application of principles set forth in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and reinforced in *McDonald v. City of Chicago*, 561 U.S. 742 (2010). For instance, the Court rightly recognized that "[t]he right to keep and bear arms is a right enjoyed by law-abiding citizens to have arms that are not unusual" or those " 'in common use' 'for lawful purposes like self-defense.' " Order at 15:13-16 (quoting *Heller*, 554 U.S. at 654). And applying "the simple test of *Heller*," the Court ultimately held that section 32310 "directly infringes Second Amendment rights . . . by broadly prohibiting common magazines holding more than 10 rounds, because they are not unusual and are commonly used by responsible, law-abiding citizens for lawful purposes such as self-defense." *Id.* at 16:25-17:1.

As the Court's order also explains, the State's sweeping ban is unconstitutional under any level of heightened scrutiny that may be applied under *Heller*. *Id.* at 43:15-44:9; *id.* at 47:3-7. For it lacks the required fit with the State's asserted interests. "Instead, it is a categorical ban on acquisition and possession for all law-abiding, responsible, ordinary citizens" across the entire state. *Id.* at 43:16-17. Even under the most lenient application of intermediate scrutiny, the Court held, "a reasonable fit requires tailoring, and a broad prophylactic ban on acquisition or possession of all magazines holding more than 10 rounds for all ordinary, law-abiding, responsible citizens is not tailored at all." Order 76:18-26 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 682-82 (1994) (O'Connor, J., concurring in part and dissenting in part).

The State cannot credibly argue that it is likely to prevail on appeal where it would require the reviewing court to stray from binding Supreme Court precedent, even if other circuit courts have done so. *See* Mot. at 2:23-3:1 & n.2 (recounting circuits that have upheld similar capacity-based magazine bans). Those conflicting opinions notwithstanding, this Court faithfully carried out its duty, as must the Ninth Circuit, "to apply [the principles] announced by *Heller* to the challenged

4

OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY

1  provisions….” *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1285 (D.C.

2  Cir. 2011) (Kavanaugh, J., dissenting) (rejecting majority's decision to uphold blanket

3  ban on common semi-automatic rifles and magazines). The State has thus failed to

4  prove a likelihood of successfully overturning the Court's decision.

5        Alternatively, the State argues that a stay may be warranted because this case

6  raises a serious legal question that "has not been resolved in the Ninth Circuit." Mot.

7  at 8:16-9:2. "Serious questions are substantial, difficult and doubtful, as to make them

8  a fair ground for litigation and thus for more deliberative investigation." *Gilder v.*

9  *PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991). Surely, the legal questions at the

10  heart of this matter are "serious." *Silvester v. Harris*, No. 11-cv-2137, 2014 WL

11  661592, at *3 (Nov. 20, 2014) (recognizing that a case challenging California's 10-

12  day waiting period for gun purchases raised serious questions because "Second

13  Amendment law is evolving"). But this is true of *many* appeals, especially those

14  involving constitutional challenges, like this one. Thus, cases that raise important

15  questions rarely warrant a stay of injunctive relief *unless the moving party also*

16  *establishes that the remaining factors all counsel in favor of a stay*. In such cases, the

17  State must prove that it "will suffer irreparable harm" without the stay *and* that the

18  balance of the hardships "tips *sharply* in their favor." *Se. Alaska Conserv. Council v.*

19  *U.S. Army Corps of Eng'rs.,* 472 F.3d 1097, 1100 (9th Cir. 2006) (emphasis added).

20  As explained below, the State has failed to meet this burden.

21  **II.    THE STATE HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE HARM**

22        As the State recognizes, "[t]he factor of irreparable harms is a 'bedrock

23  requirement' for issuance of a stay." Mot. at 9:6-7 (quoting *Leiva-Perez*, 640 F.3d at

24  965). Indeed, because the State must rely on the "serious legal questions" this case

25  presents to satisfy the first factor for a stay, the State bears a heavy burden to show

26  that it "will suffer irreparable" harm if a stay does not issue. *Se. Alaska*, 472 F.3d at

27  1100. Here, the State argues that it is necessarily harmed because the Judgment

28  prevents it from enforcing " 'an enactment of its people or representatives.' " *Id.* at

9:7-9 (quoting *Coal. for Econ. Equity v. Wilson*, 122 F.3d 728, 729 (9th Cir. 1997)). It also argues that irreparable harm will befall the state if Californians have the opportunity to purchase magazines over ten rounds (which are safely possessed by millions of Americans) while this case is on appeal. *Id.* at 9:15-22. Neither of these purported harms justify a stay of the Court's judgment.

First, a party "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted). Even so, the State relies on a passage from *Coalition for Economic Equity v. Wilson*, which in turn relied on a chambers order from former Justice Rehnquist, to argue that the government necessarily suffers irreparable injury anytime its laws are enjoined. Mot. at 9:7-11 (quoting *Coal. for Econ. Equity*, 122 F.3d at 719). But the "the Supreme Court has never adopted Justice Rehnquist's opinion that this form of harm is an irreparable injury" sufficient to justify a stay. *Silvester*, 2014 WL 661592, at *3 (citing *Latta v. Otter,* __ F.3d __, 2014 U.S.App. LEXIS 19828, *19 n.1 (9th Cir. 2014)).[2] As a result, the Ninth Circuit has held that "to the extent a state suffers an abstract form of harm whenever one of its acts is enjoined, that harm is not dispositive because such a rule would eviscerate the balancing of competing claims of injury." *Id.* (discussing *Indep. Living Ctr.*, 572 F.3d 644). To that end, that "abstract harm" can be "outweighed by other factors." *Id.* (discussing *Latta*, 2014 U.S.App. LEXIS 19828).

The State also claims that it will be irreparably harmed if Californians continue purchasing the now-legal magazines because, the State imagines, it will lead to

---

[2] The Ninth Circuit has also held that the cited language from *Coalition for Economic Equity* is "dicta." *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly,* 572 F.3d 644, 658 (9th Cir. 2009).

6

OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY

1   increased fatalities and injuries in mass shootings. Mot. at 9:12-22. To begin with, the

2   State's own arguments undercut its claim. For the State's motion rests on an assurance

3   that magazines over ten rounds will flood into California, irreparably harming the

4   State and its residents by their presence. *Id.* But the State more recently complained

5   that there is no evidence that anyone has purchased these magazines. *Compare id.*,

6   *with* Reply. To the extent the State sincerely believes that Californians have not been

7   ordering magazines over ten rounds, it would seem there is no need for the injunction

8   at all.

9        More important, however, the Court has already rejected the State's claim that

10   the presence of magazines over ten rounds poses a particular danger or that section

11   32310 served any interest in promoting public safety. *See* Order at 46:22-51:21. In

12   fact, the Court held that magazines over ten rounds may be particularly useful for

13   defense of self and others—*serving* public safety, *not* endangering it. *See id.* at 3:3-

14   6:4. As the Court held, "it is reasonable to infer, based on the State's own evidence,

15   that a right to possess magazines that hold more than 10 rounds may promote self-

16   defense—especially in the home—as well as being ordinarily useful for a citizen's

17   militia use." *Id.* at 46:22-28. What's more, the Court recognized the State's evidence

18   did not show that section 32310 has any positive effect on public safety. The Court

19   held that

20
21        the [Attorney General]'s evidence demonstrates that mass shootings in
        California are rare, and its criminalization of large capacity magazine
22        acquisition and possession has had no effect on reducing the number of
        shots a perpetrator can fire. The only effect of § 32310 is to make
23        criminals of California's 39 million law-abiding citizens who want to
        have ready for their self-defense a firearm with more than 10 rounds.

24   *Id.* at 51:17-21; *see also id.* at 47:4-18 (explaining that mass shootings are tragic, but

25   rare, events that are often committed *without* magazines over ten rounds); *id.* at 50:17-

26   51:2 (discussing the *three* California mass shootings where a "large capacity

27   magazine" was used and remarking that "California's large capacity magazine

28   prohibition did not prevent these mass shootings").

OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY

17cv1017

1  But even if the Court had not already rejected the State's claim that it will be

2  harmed if its residents purchase magazines that millions of law-abiding Americans

3  already possess, this type of speculative harm does not constitute irreparable injury.

4  *See, e.g.*, *Pac. Merchant Shipping Ass'n v. Cackette*, 2007 WL 2914961 (E.D. Cal.

5  2007) (holding that the defendant's claim that enjoined regulations would prevent 31

6  deaths and 830 asthma attacks is "nebulous at best" and insufficient to establish

7  irreparable harm). Indeed, the harm that the State relies on here is not "probable," as it

8  must be to justify a stay. *See Leiva-Perez*, 640 F.3d at 968.

9  Finally, the State expresses passing concern for those people who purchase

10 magazines over ten rounds while the State's appeal is winding its way through the

11 courts. Mot. at 9:27-28 n.7. Should the State succeed on appeal, the law will require

12 these individuals divest themselves of their newly acquired magazines. Sure, those

13 people will lose the value of their purchases. But this is *not* irreparable harm for

14 purposes of staying this Court's judgment. Even if California residents who acquire

15 magazines relying on the Court's order are concerned that they might some day have

16 to turn them in, that is a potential future harm to magazine purchasers, *not the State*.

17 Because a specific showing of irreparable injury to the applicant is a threshold

18 requirement for every stay application, defendants' complete failure to show

19 irreparable harm to the state means that "a stay may not issue, regardless of the

20 petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

21
22 **III.   THE STATE HAS NOT SHOWN THAT THE BALANCE OF HARMS TIPS IN ITS FAVOR**

23 The State cannot establish that the balance of harms tips sharply its favor. The

24 State has failed to establish that it will suffer any irreparable harm absent a stay. And

25 any abstract and speculative harms it might suffer do not outweigh the constitutional

26 and practical harms that will befall Plaintiffs if the Court stays enforcement of its

27 judgment.

28 First, each day judgement is delayed is another day Plaintiffs are denied the

8

exercise of their right to choose common magazines for the fundamentally important purpose of self-defense. Denial of a fundamental right is irreparable injury—even if for a moment. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"). This ongoing constitutional harm is no less severe simply because, as the State argues, the exercise of that right has already been prohibited for two decades. Mot. 9:26-10:3. In fact, it perhaps makes the continued denial of the right *worse*.

Second, a stay would impose real consequences for countless Californians who have (and will continue to) order the now-legal magazines. *See* Barvir Decl., ¶ 7-8, Exs. 1 -2; Wylie Decl., ¶ 4. If section 32310(a) is suddenly reinstated, untold numbers of law-abiding Californians who have ordered magazines over ten rounds since March 29th, but have not yet received them, would be subjected to severe criminal penalties. *See* Cal. Penal Code § 32310(a); *see also id.* § 1170(h). This risk remains even if the Court does not stay enforcement until some future date. For there is no telling how long a shipment might take to arrive. Unless the Court can protect those individuals, a stay would subject them not only to the ongoing denial of their constitutional rights, it would place them at undue risk of criminal prosecution.

Because the State cannot identify any concrete irreparable harm and given that a stay would allow the State to resume violating the fundamental rights of millions of Californians, the balance of equities does not tip sharply in the State's favor—in fact, it doesn't tip in its favor at all. The State's motion should be denied.

## IV.   THE STATE CANNOT SHOW THAT THE PUBLIC INTEREST WILL BE SERVED BY A STAY

By enjoining an unconstitutional statute, the Court's order protects the rights of some 39 million law-abiding Americans. Staying this order, and thus suspending the free exercise of constitutional rights, does not serve the public interest. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (holding that enforcing an

9

unconstitutional law conflicts with public interest); *see also Levine v. Fair Political Practices Comm'n*, 222 F. Supp. 2d 1182, 1191 (E.D. Cal. 2002). This is particularly true here, given that the State has identified only speculative harms that this Court has already thoroughly considered and rejected.

## CONCLUSION

For these reasons, the Court should deny the State's motion for a stay in its entirety. If, however, the Court is inclined to grant the State's request for a stay of the judgment pending appeal, or if the Court believes that the Ninth Circuit might do so, the Court should exercise its discretion to craft its order in a way that will completely safeguard those people who have sold, shipped, or purchased magazines over ten rounds in the wake of the Court's March 29 order.

Dated: April 3, 2019                              **MICHEL & ASSOCIATES, P.C.**

                                                  s/ *Anna M. Barvir*
                                                  Anna M. Barvir
                                                  Email: abarvir@michellawyers.com
                                                  Attorneys for Plaintiffs

10

OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY

17cv1017

## CERTIFICATE OF SERVICE

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Duncan, et al. v. Becerra*
Case No.: 17-cv-1017-BEN-JLB

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION TO STAY JUDGMENT PENDING APPEAL**

on the following parties by electronically filing the foregoing on April 3, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

John D. Echeverria
Deputy Attorney General
john.echeverria@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

Anthony P. O'Brien
Deputy Attorney General
anthony.obrien@doj.ca.gov
1300 I Street, Suite 125
Sacramento, CA 95814

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 3, 2019, at Long Beach, CA.

s/ *Laura Palmerin*
Laura Palmerin