1   ROB BONTA
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   ROBERT L. MEYERHOFF
    Deputy Attorney General
4   State Bar No. 298196
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013-1230
     Telephone:  (213) 269-6177
6    Fax:  (916) 731-2144
     E-mail:  Robert.Meyerhoff@doj.ca.gov
7   *Attorneys for Defendant Rob Bonta in his*
    *official capacity as Attorney General of the*
8   *State of California*

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  | **VIRGINIA DUNCAN, RICHARD** | 3:17-cv-01017-BEN-JLB |

14  **VIRGINIA DUNCAN, RICHARD
    LEWIS, PATRICK LOVETTE,**

15  **DAVID MARGUGLIO,
    CHRISTOPHER WADDELL, and**

16  **CALIFORNIA RIFLE & PISTOL
    ASSOCIATION, INC., a California**

17  **corporation,**

                              Plaintiffs,

18

        **v.**

19

20  **ROB BONTA, in his official capacity
    as Attorney General of the State of**

21  **California; and DOES 1-10,**

22                            Defendants.

3:17-cv-01017-BEN-JLB

**DEFENDANT'S MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR
RECONSIDERATION OF
BRIEFING SCHEDULE SET
FORTH IN ORDER SPREADING
THE MANDATE AND
CONTINUING THE
PRELIMINARY INJUNCTION**

Date:          November 9, 2022
Time:          10:30 a.m.
Courtroom:  5A
Judge:        Hon. Roger T. Benitez
Action Filed:  May 17, 2017

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................. 1

Procedural Background .................................................................................. 2

Legal Standard ............................................................................................. 4

Argument...................................................................................................... 4

    I.      Bruen Altered the Legal Standard for Analyzing Second
            Amendment Claims. ....................................................................... 4

    II.     The Court Should Reconsider its Order and Issue a New
            Briefing Schedule which Permits the Parties to Conduct Further
            Discovery to Compile a Comprehensive Record and Briefing
            Addressing Bruen's Text-and-History Standard. ................................ 9

    III.   Both Parties Should Be Given the Opportunity to Respond to
            New Evidence Submitted. ................................................................ 17

    IV.   The Court Should Reconsider its Order and Adopt an Ordinary
            Briefing Sequence which Permits Sufficient Time for Further
            Discovery. ...................................................................................... 18

Conclusion.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

CASES

*Brown v. Baden*
   815 F.2d 575 (9th Cir. 1987)............................................................... 10

*Duncan v. Bonta*
   142 S. Ct. 2895 (2022) ......................................................................... 3

*Duncan v. Bonta*
   No. 19-55376, 2022 WL 4393577 (9th Cir. Sept. 23, 2022) ..................... 4, 9, 17

*Buchannon v. Associated Credit Servs., Inc.*
   No. 3:20-CV-02245-BEN-LL, 2021 WL 5360971 (S.D. Cal. Nov.
   17, 2021) ............................................................................................. 18

*District of Columbia v. Heller*
   554 U.S. 570 (2008)..............................................................*passim*

*Duncan v. Becerra*
   366 F. Supp. 3d 1131 (S.D. Cal. 2019) ........................................... 10, 11, 13, 14

*Duncan v. Becerra*
   742 Fed. App'x 218 (9th Cir. 2018)...................................................... 3

*Duncan v. Becerra*
   970 F.3d 1133 (9th Cir. 2020)............................................................... 3

*Duncan v. Becerra*
   988 F.3d 1209 (9th Cir. 2021)............................................................... 3

*Duncan v. Bonta*
   19 F.4th 1087 (9th Cir. 2021) (en banc) ........................................... 12

*Jackson v. City & Cty. of San Francisco*
   746 F.3d 953 (9th Cir. 2014)................................................................ 5

*Leiva-Perez v.Holder*
   640 F.3d 962 (9th Cir. 2011)................................................................ 14

*McDonald v. City of Chicago*
   561 U.S. 742 (2010) (Scalia, J., concurring)................................ 5, 14

ii

1
2

<u>**TABLE OF AUTHORITIES**</u>
**(continued)**

<u>**Page**</u>

3
4

*New York State Rifle & Pistol Association v. Bruen*
    142 S. Ct. 2211 (2022) ................................................................*passim*

5
6

*Provenz v. Miller*
    102 F.3d 1478 (9th Cir. 1996) ................................................ 17

7
8

*School Dist. No. 1J. Multnomah County v. ACandS, Inc.*
    5 F.3d 1255 (9th Cir.1993) ...................................................... 4

9
10

*Silvester v. Harris*
    843 F.3d 816 (9th Cir. 2016) .................................................. 12

11

*United States ex rel. Lazar v. S.M.R.T., LLC*
    542 F. Supp. 3d 1078 (S.D. Cal. 2021) ................................ 17

12
13

*United States v. Miller*
    307 U.S. 174 (1939) .............................................................. 14

14

**STATUTES**

15

Cal. Penal Code § 32310(c) ........................................................... 2

16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Defendant Rob Bonta (the "Attorney General") moves for an order reconsidering and modifying the briefing schedule set forth in the Court's Order Spreading the Mandate and Continuing the Preliminary Injunction. Dkt. 111 (the "Order"). Under the Order, the Attorney General shall file "any additional briefing that is necessary to decide this case in light of Bruen within 45 days" while Plaintiffs shall file "any responsive briefing within 21 days thereafter." (*Id.*) The compressed briefing schedule contemplated by the Order does not allow sufficient time to develop the additional evidence called for under the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2211 (2022) (*Bruen*), and the Ninth Circuit's remand to this Court for further proceedings "consistent with" *Bruen*. Nor does it provide the Attorney General with an opportunity to reply to evidence submitted by Plaintiffs. As such, the Attorney General moves for reconsideration of the existing schedule and for entry of a new schedule that allows for further discovery (including expert discovery) and for an ordinary briefing sequence that allows the Attorney General to respond to evidence introduced by Plaintiffs in their response brief.

As explained herein, *Bruen* held that courts must apply a new standard "rooted in the Second Amendment's text, as informed by history," for evaluating Second Amendment challenges to firearms regulations. 142 S. Ct. at 2116–17. Under this new "text-and-history" standard, courts must determine whether "the Second Amendment's plain text" protects the conduct in which the plaintiff wishes to engage, and if it does, then decide whether the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Specifically, *Bruen* directs lower courts to follow "various evidentiary principles and default rules," including "the principle of party presentation," in resolving this text-and-tradition analysis. *Id.* at 2130 n.6. And it recognized that this historical analysis "can be

difficult," requiring courts to make "nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 2130 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 803-804 (2010) (Scalia, J., concurring)).

In the prior proceedings, the parties litigated this case—and this Court analyzed Plaintiffs' claims—under the now-defunct two-step approach. But neither the parties nor the Court specifically addressed whether the California's prohibition on large capacity magazines imposes a "comparable burden on the right of armed-self-defense" as historical restrictions on dangerous or unusual weapons and other potential historical analogues, or whether the modern and historical regulations are "comparably justified," as *Bruen* now requires. *Bruen*, 142 S. Ct. at 2133.

Good cause exists to grant the requested relief to modify the briefing schedule set forth in the Court's Order, as it effects a clear error and manifest injustice on the parties. First, the briefing schedule does not allow time to conduct the focused discovery necessary to supplement the existing legal and historical record in accordance with the *Bruen* standard. As the accompanying declaration from historian Dr. Zachary Schrag makes clear, the historical research and analysis required to answer the difficult historical questions posed by *Bruen* and applicable in this case is labor-intensive and time-consuming. Second, particularly given that the Attorney General may bear the burden of showing that the challenged regulations are consistent with the American historical tradition of firearm regulation, the briefing schedule should grant the Attorney General an opportunity to respond to evidence put forth by Plaintiff.

The Attorney General's Motion for Reconsideration of the briefing schedule set forth in the Order should be granted, and the Court should issue a new briefing schedule that allows (a) for sufficient time for further discovery, and (b) for an ordinary briefing sequence that does not permit Plaintiffs to submit new evidence which will go unanswered.

# PROCEDURAL BACKGROUND

On May 17, 2017, less than two months before California's ban on possession of LCMs was to go into effect, *see* Cal. Penal Code § 32310(c), Plaintiffs filed suit against the Attorney General.  Dkt. No. 1 (Compl.).  The complaint asserted that section 32310, in its entirety, violates the Second Amendment and that the possession ban codified at section 32310(c) and (d) also violates the Takings Clause and the Due Process Clause.  *Id*. at ¶¶ 64-76.

Plaintiffs filed a motion for a preliminary injunction to enjoin enforcement of the newly enacted ban on LCM possession.  Dkt. 6.  On June 29, 2017, the district court issued a preliminary injunction, enjoining enforcement of section 32310(c) and (d).  Dkt. 28.  A divided Ninth Circuit panel affirmed the preliminary injunction in an unpublished memorandum.  *Duncan v. Becerra*, 742 Fed. App'x 218, 221-22 (9th Cir. 2018).

On March 5, 2018, while the interlocutory appeal was pending, Plaintiffs filed a motion for summary judgment on all claims.  Dkt. 50.  The Attorney General opposed the motion.  Dkt. 53.  After full briefing and oral argument, on March 29, 2019, this Court issued an order granting Plaintiffs' motion for summary judgment, and entered judgment in favor of Plaintiffs.  Dkt. 87.  The Attorney General timely appealed that order and judgment on April 4, 2019.  Dkt. 96.

On August 14, 2020, a three-judge panel of the Ninth Circuit affirmed the Court's order and judgment.  *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020).  However, the Ninth Circuit *en banc* reversed this Court's order and judgment and remanded with instructions to enter judgment in the Attorney General's favor.  *Duncan v. Becerra*, 988 F.3d 1209, 1210 (9th Cir. 2021).  Plaintiffs filed a petition for writ of certiorari, and on June 30, 2022, the Supreme Court granted the petition, vacated the Ninth Circuit's judgment, and remanded the case to the Ninth Circuit for "further consideration in light of" *Bruen*.  *Duncan v. Bonta*, 142 S. Ct. 2895 (2022).

3

After remand from the Supreme Court, the Ninth Circuit directed the parties to "file supplemental briefs on the effect of *Bruen* on this appeal, including whether the en banc panel should remand this case to the district court for further proceedings in the first instance." 9th Cir. Dkt. 202 (August 2, 2022). After considering briefs from the parties and amicus, the Ninth Circuit adopted the course urged by the Attorney General and remanded the case to this Court for further proceedings consistent with *Bruen*. *Duncan v. Bonta*, No. 19-55376, 2022 WL 4393577 (9th Cir. Sept. 23, 2022). Thereafter, on September 26, 2022, this Court entered the Order, spreading the mandate and continuing the injunction in place. Dkt. 111. In that Order, the Court provided that the Attorney General "shall file any additional briefing that is necessary to decide this case in light of *Bruen* within 45 days of this Order," that Plaintiffs "shall file any responsive briefing within 21 days thereafter," and that the Court will then "decide the case on the briefs and the prior record or schedule additional hearings." *Id*. at 2.

## LEGAL STANDARD

A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993); *Est. of Nunez v. Cnty. of San Diego*, 381 F. Supp. 3d 1251, 1254 (S.D. Cal. 2019) (stating that a motion for reconsideration can be granted where "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law").

## ARGUMENT

### I.  *BRUEN* ALTERED THE LEGAL STANDARD FOR ANALYZING SECOND AMENDMENT CLAIMS.

In *Bruen*, the Supreme Court addressed the constitutionality of New York's requirement that individuals show "proper cause" as a condition of securing a

4

license to carry a firearm in public.  142 S. Ct. at 2123.  Before turning to the
merits, the Court announced a new methodology for analyzing Second Amendment
claims.  It recognized that lower courts had "coalesced around a 'two-step'
framework for analyzing Second Amendment challenges that combines history with
means-end scrutiny."  *Id.* at 2125.  At the first step of that approach, the
government could "justify its regulation by 'establish[ing] that the challenged law
regulates activity falling outside the scope of the [Second Amendment] right as
originally understood.'"  *Id.* at 2126 (citation omitted).  If that inquiry showed that
the regulation did not burden conduct protected by the Second Amendment, lower
courts would uphold the regulation without further analysis.  *Id.*  Otherwise, courts
would proceed to the second step, asking "how close[ly] the law c[ame] to the core
of the Second Amendment right and the severity of the law's burden on that right,"
and applying intermediate scrutiny unless the law severely burdened the "'core'
Second Amendment right" of self-defense in the home, in which case strict scrutiny
applied.  *Id.*; *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir.
2014) (same).

    *Bruen* declined to adopt the two-step approach.  *See* 142 S. Ct. at 2126.  The
Court explained that its earlier decisions in *District of Columbia v. Heller*, 554 U.S.
570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "do not
support applying means-end scrutiny in the Second Amendment context."  *Id.* at
2126–27.  It then announced a new standard for analyzing Second Amendment
claims that is "centered on constitutional text and history."  *Id.* at 2128–29.  Under
this text-and-history approach,

> When the Second Amendment's plain text covers an individual's
> conduct, the Constitution presumptively protects that conduct.  The
> government must then justify its regulation by demonstrating that it
> is consistent with the Nation's historical tradition of firearm
> regulation.

*Id.* at 2129–30.

Applying that test to the case before it, the Court held that New York's "proper cause" permit requirement was inconsistent with the Second Amendment's text and history, and therefore unconstitutional. *Id.* at 2134–56. The Supreme Court had "little difficulty" concluding that the "plain text" of the Second Amendment protected the course of conduct that the *Bruen* plaintiffs wished to engaged in—"carry[ing] handguns publicly for self-defense"—reasoning that the term "'bear' naturally encompasses public carry." *Id.* at 2134.[1] The Court explained that because "self-defense is 'the *central component*' of the [Second Amendment] right itself," and because "[m]any Americans hazard greater danger outside the home than in it," it would make "little sense" to confine that right to the home. *Id.* at 2135. Because the plain text of the Second Amendment covered the *Bruen* plaintiffs' proposed course of conduct, the burden then shifted to the government to show that the prohibition was consistent with an accepted tradition of firearm regulation. *Id.* at 2135. After conducting a lengthy survey of "the Anglo-American history of public carry," the Court held that New York had failed to justify its proper-cause requirement. *Id.* at 2156.

While *Bruen* announced a new standard for analyzing Second Amendment claims, it also made clear that governments may continue to adopt reasonable gun safety regulations. The Court recognized that the Second Amendment is not a "regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133. Nor does it protect a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). Indeed, as

---

[1] No party in *Bruen* disputed that the "ordinary, law-abiding, adult citizens" who were plaintiffs in the case were "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134. And no party disputed that the handguns that the plaintiffs sought to carry in public were in "common use" for self-defense and thus qualified as protected "Arms." *Id.* (citing *Heller*, 554 U.S. at 627, *and Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016)).

6

Justice Alito explained, *Bruen*'s majority opinion did not "decide anything about the kinds of weapons that people may possess." *Id*. at 2157 (Alito, J., concurring).

Moreover, Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Like the majority opinion, Justice Kavanaugh's opinion indicates that States may require individuals who wish to carry a firearm in public to secure a license to do so, and they may require license applicants "to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162. Justice Kavanaugh also reiterated the majority's view that the Second Amendment is not a "regulatory straightjacket," *id.* (quoting *Bruen*, 142 S. Ct. at 2133), and *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations," *id.* at 2162 (quoting *Heller*, 554 U.S. at 636). In particular, Justice Kavanaugh emphasized that that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws "forbidding the carrying of firearms in sensitive places," laws "imposing conditions and qualifications on the commercial sale of arms," and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626–27, 627 n.26).

Beyond these general observations, *Bruen* also provided more specific guidance about how lower courts should scrutinize Second Amendment claims under its new approach. As a threshold issue, *Bruen* directs courts to assess whether the "Second Amendment's plain text covers an individual's conduct," *Bruen*, 142 S. Ct. at 2126—*i.e.*, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms" for lawful purposes, U.S. Const. amend. II. The Constitution "presumptively protects that conduct." *Id*. at 2126; *see*

1  *also id.* at 2129–2130 ("When the Second Amendment's plain text covers an

2  individual's conduct, the Constitution presumptively protects that conduct."); *id.* at

3  2134 (examining whether the "plain text of the Second Amendment" protected the

4  *Bruen* plaintiffs' course of conduct); *id.* at 2135 (similar).

5      If a challenged restriction regulates conduct protected by the "plain text" of

6  the Second Amendment, *Bruen* then directs the government to justify its regulation

7  by showing that the law is "consistent with this Nation's historical tradition of

8  firearm regulation." *Bruen*, 142 S. Ct. at 2126.  And while the Court recognized

9  that the historical analysis conducted at step-one of the two-step approach that

10 lower courts had adopted for analyzing Second Amendment claims was "broadly

11 consistent with *Heller*," *id.* at 2127, it clarified how that analysis should proceed in

12 important respects.  In some cases, the Court explained, this historical inquiry will

13 be "fairly straightforward," such as when a challenged law addresses a "general

14 societal problem that has persisted since the 18th century." *Id.* at 2131.  But in

15 others—particularly those where the challenged laws address "unprecedented

16 societal concerns or dramatic technological changes"—the Court recognized that

17 this historical analysis requires a "more nuanced approach." *Id.* at 2132.

18      To justify regulations of that sort, *Bruen* held that governments are not

19 required to identify a "historical *twin*," and need only identify a "well-established

20 and representative historical *analogue*." 142 S. Ct. at 2133.  Thus, a modern-day

21 regulation need not be a "dead ringer for historical precursors" to pass

22 constitutional muster. *Id.*  Instead, in evaluating whether a "historical regulation is

23 a proper analogue for a distinctly modern firearm regulation," *Bruen* directs courts

24 to determine whether the two regulations are "'relevantly similar.'" *Id.*  The Court

25 identified "two metrics" by which regulations must be "relevantly similar under the

26 Second Amendment":  "how and why the regulations burden a law-abiding

27 citizen's right to armed self-defense." *Id.* at 2133.  The Court explained that those

28 dimensions are especially important because "'individual self-defense is "the

8

*central component*" of the Second Amendment right.'" *Id.* (quoting *McDonald*, 561 U.S. at 767, *and Heller*, 554 U.S. at 599).[2] After *Bruen*, a modern regulation that restricts conduct protected by the plain text of the Second Amendment is constitutional if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.*

**II. THE COURT SHOULD RECONSIDER ITS ORDER AND ISSUE A NEW BRIEFING SCHEDULE WHICH PERMITS THE PARTIES TO CONDUCT FURTHER DISCOVERY TO COMPILE A COMPREHENSIVE RECORD AND BRIEFING ADDRESSING *BRUEN*'S TEXT-AND-HISTORY STANDARD.**

This Court should grant the Motion for Reconsideration and issue a new briefing schedule that will allow for additional discovery (including expert discovery) directed at *Bruen*'s text-and-history standard and thus is "consistent with" that decision. In this case, the Ninth Circuit rejected Plaintiffs' entreaties to affirm this Court's order and judgment and instead remanded for proceedings "consistent with" *Bruen*. *See Duncan v. Bonta*, No. 19-55376, 2022 WL 4393577, at *1 (9th Cir. Sept. 23, 2022). A condensed briefing schedule and sequence with no time for discovery does not comport with the Ninth Circuit's decision, which clearly contemplates that the parties will be given a reasonable opportunity to develop evidence and arguments responding to the new *Bruen test*. *See Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993) ("[A] litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue."); *Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985) ("Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment.").

While Plaintiffs may contend that there is no need for additional discovery, the parties litigated this case—and this Court analyzed Plaintiffs' claims—under the

---

[2] *See also Heller*, 554 U.S. at 628 ("[T]he inherent right of self-defense has been central to the Second Amendment right.").

9

now-defunct two-step approach, not the new standard set forth by the Supreme Court in *Bruen*.  "In the scheme of the federal judicial system, the district court is required to follow and implement our decisions just as we are oath–and duty-bound to follow the decisions and mandates of the United States Supreme Court."  *See Brown v. Baden*, 815 F.2d 575, 576 (9th Cir. 1987).  Here, Plaintiffs' claims must now be evaluated in accordance with *Bruen*, not the now-defunct two-step test.  To do so, the parties must be allowed a full and fair opportunity to address the new emphasis on historical analogues and the analogical methodology prescribed in *Bruen*.

For example, in the prior proceedings before this Court, consistent with the then-prevailing two-step framework, the parties developed the record on and briefed the issue of the burden that California's LCM restrictions imposed on Plaintiffs' ability to defend themselves, and whether those restrictions satisfied the relevant standard of scrutiny.[3]  In finding that those restrictions did not withstand intermediate scrutiny, the Court focused its analysis whether California's restrictions on LCMs were a "reasonable fit" with the State's important governmental interest.  *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1160 (S.D. Cal. 2019).  More specifically, the Court's intermediate-scrutiny analysis considered the evidence put forward by the State showing the relationship between LCMs and mass shootings, *id*. at 1161-62, the four important State interests identified in support of the restrictions, *id*. at 1161 & 1169-70, whether California's restrictions on LCMs are "narrowly tailored," *id*. at 1170-71, and the reports of numerous

---

[3] *See* Pls.' Notice of Mot. for Summary Judgment, Dkt. 50, at 2 ("[T]he state of California cannot establish the required "reasonable fit" between its flat ban on such magazines and its interests in public safety."); Pls.' M&PA ISO Mot. for Summary Judgment, Dkt. 50-1, at 12.("Because the magazine ban burdens conduct protected by the Second Amendment, it must satisfy some form of heightened scrutiny."); Def.'s Opp. to Mot. for Summary Judgment, Dkt. 53, at 13 ("[B]ecause Section 32310 advances the important government interests in promoting public safety and protecting civilians and law enforcement from gun violence and mass shootings, it is constitutional.").

experts who opined on the relationship between restrictions on LCMs (and other restrictions) and incidents of gun violence and gun violence outcomes, *id*. at 1173-1177.  But under *Bruen* the test should be "centered on constitutional text and history."  *Id.* at 2128–29.  Thus, post-*Bruen*, the parties and the Court will need to address the historical tradition of regulating weapons in order to inform the interpretation of the Second Amendment's scope as it applies to California's restrictions on LCMs.  Evidence in the existing record and the Court's prior analysis can be considered to the extent they are relevant to the new *Bruen* standard, but additional work will be required to align the record and analysis to the text-and-history standard.

Accordingly, the parties need to develop evidence and present argument under this new test.  In particular, Plaintiffs' claims must be tested through the submission of evidence about whether California's restrictions on LCMs are "consistent with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2130.  Here, California has strong arguments as to why its restrictions on LCMs are constitutional under that test:  *Bruen* repeats *Heller*'s assurance that States may regulate access to "dangerous and unusual weapons" consistent with the Second Amendment, *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627); *see also id.* at 2162 (Kavanaugh, J., concurring) (same).  And further discovery will allow the Attorney General to develop a record on how California's restrictions on LCMs impose a "comparable burden on the right of armed self-defense" as historical restrictions and that the modern and historical regulations are "comparably justified."  *Id.* at 2133.

To be sure, *Bruen* recognizes that the historical analysis conducted at step one of the former two-step approach was "broadly consistent with *Heller*."  142 S. Ct. at 2127.  In support of the first prong of the two-step analysis in the prior proceedings before this Court, the Attorney General identified one subset of historical firearms regulations restricting firing capacity.  In his opposition to

11

1   Plaintiffs' Motion for Summary Judgment, the Attorney General noted that such

2   restrictions date back to the 1920s and had been in place in the District of Columbia

3   and eight other jurisdictions.  *See* Def.'s Opp. to Plts.' Mot. for Summary

4   Judgment, Dkt. 53, at 12–13.  By regulating firearm ownership based on their

5   capacity for enhanced firepower, these laws provided a historical analogue for

6   California's restrictions on LCMs.  *Id.*

7       *Bruen* has now clarified how the historical inquiry must proceed, and the

8   analysis it requires differs from analysis of "longstanding" laws employed by courts

9   before *Bruen* in important respects.  Among other things, neither the parties nor this

10  Court employed the reasoning-by-analogy method—with its emphasis on

11  comparable burdens and comparable justifications—that *Bruen* requires.  *See* 142

12  S. Ct. at 2133 (noting that these questions "are *central* considerations when

13  engaging in an analogical inquiry" (quotation marks omitted)).

14      In addition, the Attorney General's historical argument was consistent with

15  guidance from the Ninth Circuit that laws from the early twentieth century could be

16  considered "longstanding" and therefore presumptively constitutional under *Heller*.

17  *See, e.g.*, *Silvester v. Harris*, 843 F.3d 816, 831 (9th Cir. 2016) (Thomas, C.J.,

18  concurring) (concluding that a law that dated to 1923 was a longstanding

19  regulation).  Indeed, under the prior two-step framework, the analogies of modern

20  LCM restrictions to the early 19th century firing-capacity laws in the prior

21  proceedings before this Court had "significant merit."  *Duncan v. Bonta*, 19 F.4th

22  1087, 1102 (9th Cir. 2021) (en banc) (observing that there is "significant merit" to

23  California's argument that its large-capacity magazine restrictions are longstanding

24  because of a tradition of imposing firing-capacity restrictions that dates back

25  "nearly a century"), *vacated and remanded*, 142 S. Ct. 2895 (2022).  But *Bruen* has

26  since suggested that when determining whether a law is historically justified, the

27

28

Defendant's Memorandum of Points and Authorities in Support of Motion for Reconsideration
(3:17-cv-01017-BEN-JLB)

focus should be on gun regulations predating the 20th century.[4]  *See* 142 S. Ct. at 2137.  Accordingly, the question of whether California's restrictions on LCMs have any "historical pedigree" cannot be answered without considering this time period. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1155 (S.D. Cal. 2019).

Just as *Bruen* also left open other questions that are best resolved by this Court, if necessary, after further briefing and argument.  The Court did not decide "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791.  *Bruen*, 142 S. Ct. at 2138.  More broadly, the Court "d[id] not resolve" the "manner and circumstances in which postratification practice may bear on the original meaning of the Constitution." *Id.* at 2162-2163 (Barrett, J., concurring).

In resolving these and other historical questions, *Bruen* directs lower courts to follow "various evidentiary principles and default rules," including "the principle of party presentation." *Id.* at 2130 n.6 (majority opinion).  And as *Bruen* recognizes, this historical analysis "can be difficult," and sometimes requires judges to "resolv[e] threshold questions" and "mak[e] nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 2130 (quoting *McDonald*, 561 U.S. at 803–04 (Scalia, J., concurring)).[5]  That is especially true in cases like this one, which implicates "unprecedented societal concerns [and] dramatic technological changes." *Id.* at 2132; *see also id.* (recognizing that these cases "require a more nuanced approach").  The firearm technology regulated by

---

[4] Although the Court did not consider evidence from the 20th century in *Bruen* because it "contradict[ed] earlier evidence," *Bruen*, 142 S. Ct. at 2153 n.28, such evidence may be relevant if it is consistent with evidence pre-dating the 20th century.

[5] *See also Bruen*, 142 S. Ct. at 2134 ("[W]e acknowledge that 'applying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins.'" (quoting *Heller v. District of Columbia*, 670 U.S. 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting))).

13

California's restrictions on LCMs and the problem of mass shootings that they seek to mitigate are undoubtedly modern advances and pose modern problems. The parties should have the opportunity to develop a record and arguments consistent with *Bruen*, and to provide this Court with a full and complete record that will prove most helpful in conducting the analysis *Bruen* requires.

Plaintiffs may contend here that expert discovery is unnecessary because the Court can summarily rule in favor of Plaintiffs under the *Heller* common-use analysis set forth in the Court's original ruling. *Duncan v. Becerra*, 366 F. Supp. 3d at 1142-49. But this Court's application of "the *Heller* test" was based on a view that *Heller* and *United States v. Miller*, 307 U.S. 174 (1939), "categorically" extended Second Amendment protection to "arms from home with which militia members would report for duty." *Duncan*, 366 F. Supp. 3d 1131, 1148 (citing *Miller*, 307 U.S. at 178). That is not the same as the text-and-history standard required by *Bruen*. *Bruen* suggests that this view is no longer correct, as it repeatedly confirms that self-defense (and not militia service) is the "central component" of the right protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2133 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)); *see also id.* at 2125 (noting that *Heller* and *McDonald* "held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense"); *id.* at 2128 (same).[6]

As explained above, *Bruen* calls for a new and searching historical analysis that will raise "serious legal questions," *Leiva-Perez v.Holder*, 640 F.3d 962, 966–67 (9th Cir. 2011), about whether California's restrictions on LCMs are "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and

---

[6] Despite citing *United States v. Miller*, *see Bruen*, 142 S. Ct. at 2128, the Supreme Court did not discuss *Miller*'s reference to arms that have "some reasonable relationship to the preservation or efficiency of a well regulated militia," *Miller*, 307 U.S. at 178. Nor did the Court premise the right to public carry on any need to bear arms for militia service.

14

1   unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627);

2   *see also id.* at 2162 (Kavanaugh, J., concurring) (same). The weighty Second

3   Amendment issues raised by Plaintiffs should be resolved based on a "historical

4   record compiled by the parties," *id.* at 2130, n.6, which will require expert

5   discovery to prepare. Plaintiffs' claims are thus ill-suited for resolution based

6   solely on the Court's truncated briefing schedule which provides the Attorney

7   General scant opportunity to engage in the discovery necessary to compile that

8   record.

9        Preparing a record that will discern these historical traditions will involve

10  original historical research—an "unpredictable, labor-intensive, and time-

11  consuming" process, albeit a necessary one. Decl. of Zachary Schrag ("Schrag

12  Decl.") ¶ 7.[7] To identify possible historical analogues to challenged regulations,

13  one must first devise the scope of the research project, clarifying what specific

14  questions the research is intended to answer, and what time periods, geographic

15  areas, and subject matters the research will encompass. *Id.* ¶¶ 9–11. A researcher

16  must also identify appropriate primary and secondary source materials to consult.

17  *Id.* ¶ 13–17. As *Bruen* recognizes, the types of source material that will elucidate

18  whether a historical statute imposes a comparable burden on Second Amendment

19  rights or has a comparable justification might not be limited to the plain text of

20  historical statutes. They may also include legal and non-legal source materials

21  establishing the existence of a societal problem involving arms, whether that

22  problem has historically been addressed by non-legal means, or whether there have

23  been disputes over the lawfulness of an arms regulation. *See Bruen*, 141 S. Ct. at

24  2131, 2133. Such sources might include court records, newspaper articles, books,

25  ───────────────

26  [7] The Attorney General respectfully submits the accompanying declaration of
    Zachary Schrag, PhD historian, history professor at George Mason University, and
    author of *The Princeton Guide to Historical Research* (Princeton University Press,
27  2021), to explain the complexities of sound historical research. The Attorney
    General incorporates by reference herein the points made in the accompanying
28  Schrag Declaration.

1   and manuscripts, in addition to statutory and legislative materials.  Schrag Decl.

2   ¶ 15.

3        The accessibility of these sources can vary greatly, especially for archival

4   materials dating back to the 18th and 19th centuries.  *Id.* ¶ 20–21.  Even if the

5   source materials from these time periods have been digitized, a thorough search

6   spanning all U.S. jurisdictions would still require parallel searches across numerous

7   databases and archives.  *Id.* ¶ 19.  Further, developing effective search criteria

8   requires special expertise to account for linguistic developments since the 18th and

9   19th centuries; using modern language "can yield profoundly misleading results."

10   *Id.* ¶¶ 18–21.

11        Review and interpretation of source materials also requires historical

12   expertise, if such work is to be done correctly.  Although attorneys and judges are

13   accustomed to performing textual analysis of laws, historical scholars are better

14   situated to interpret 18th- and 19th-century statutes within their broader historical

15   context, referencing what events or circumstances contributed to a law's enactment

16   or the law's enforcement history.  *See id.* ¶ 31.  Accordingly, a complete and

17   accurate supplemental record must include expert testimony.

18        This analysis should not be rushed.  Although the Attorney General cannot

19   provide a precise estimate of how much time would be needed to conduct a

20   thorough identification and review of source materials, at a general level, a

21   historian conducting original research on primary-source materials would fairly

22   expect to conduct many hours of work to yield several sentences of written

23   historical analysis.  *Id.* ¶ 35.  As a practical matter, most qualified historians would

24   be unable to devote themselves to this endeavor full-time on account of other

25   research, teaching, and professional obligations.  *Id.* ¶ 36.

26        Plaintiffs may contend that further expert discovery is unnecessary in light of

27   the limited, post-1920 historical evidence already received by this Court.  *See* Pls.-

28   Appellees' Supplemental Brief (August 2, 2022), 9th Cir. Dkt. 207, at 22.  But the

16

Ninth Circuit already passed upon this argument when, after considering Plaintiffs' supplemental brief and the arguments raised therein, it rejected Plaintiffs' request to affirm the judgment without remand (*id.* at 21, 24).  *See Duncan v. Bonta*, No. 19-55376, 2022 WL 4393577, at *1-2 (9th Cir. Sept. 23, 2022).  Indeed, the Attorney General's supplemental brief sought vacatur and remand precisely to "allow the parties to compile the kind of historical record that *Bruen* now requires."  Def.-Appellant's Supp. Brief in Response to the Court's August 2, 2022, Order (August 23, 2022), 9th Cir. Dkt. 203, at 2.  Had the Court of Appeals believed that the existing factual record and conclusions of law would be sufficient to address the new questions raised by *Bruen*, there would have been no reason to vacate the judgment and remand the matter in the first place.

To be clear, the Attorney General does not seek to re-start this case from scratch or inject needless delay.  Substantial material adduced on summary judgment remains relevant under the new *Bruen* standard.  But further expert discovery would directly address the historical questions raised by *Bruen*.  The parties would be free to rely on the existing record from the prior proceedings to support their claims and defenses, to the extent that evidence remains relevant.  In this way, the matter can be resolved expeditiously after a reasonable period of focused discovery.

## III.  BOTH PARTIES SHOULD BE GIVEN THE OPPORTUNITY TO RESPOND TO NEW EVIDENCE SUBMITTED.

The Motion for Reconsideration should also be granted because the Order does not allow the Attorney General the opportunity to respond to evidence Plaintiffs may submit in their response brief.  On a dispositive motion, a district court "should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); *see also United States ex rel. Lazar v. S.M.R.T., LLC*, 542 F. Supp. 3d 1078, 1082 (S.D. Cal. 2021) (noting that a court generally "must give the nonmoving party an

17

opportunity to respond" to new evidence in the context of dispositive motions, in that case a motion for summary judgment); *Buchannon v. Associated Credit Servs., Inc.*, No. 3:20-CV-02245-BEN-LL, 2021 WL 5360971, at *12 (S.D. Cal. Nov. 17, 2021) (stating that where new evidence is presented, in that case on reply, "the district court should decline consideration of the new evidence unless it provides the non-moving party an opportunity to respond to such evidence").  In this case, the schedule set out in the Court's Order does not provide the Attorney General with an opportunity to respond to any evidence offered by Plaintiffs.  An ordinary briefing schedule which permits both parties to respond to new evidence (*i.e.*, Plaintiffs in their response brief, and the Attorney General in a reply) should be adopted instead.

## IV.   THE COURT SHOULD RECONSIDER ITS ORDER AND ADOPT AN ORDINARY BRIEFING SEQUENCE WHICH PERMITS SUFFICIENT TIME FOR FURTHER DISCOVERY.

As explained above (*see supra*, Sections II), the Court should reconsider its Order and order a new schedule which permits sufficient time to engage in discovery and which allows the Attorney General to respond to any evidence Plaintiffs may submit in their supplemental brief.  As such, the Attorney General respectfully proposes the following schedule:

- December 9, 2022 – Last day to designate expert witnesses and serve opening expert reports.
- January 6, 2023 – Last day to designate rebuttal expert witnesses and serve rebuttal expert reports.
- February 3, 2023 – Completion of fact and expert discovery.
- March 3, 2023 – Last day for the Attorney General to file supplemental brief.
- March 17, 2023 – Last day for Plaintiffs to file response to the Attorney General's supplemental brief.

1    • March 24, 2023 – Last day for the Attorney General to file reply in support
2        of his supplemental brief.

3                                **CONCLUSION**

4        For the foregoing reasons, the Attorney General respectfully moves the Court
5    for a new order providing the parties sufficient time to conduct discovery to support
6    the text-and-history analysis prescribed by *Bruen*, and adopting an ordinary briefing
7    sequence which provides the opportunity for the Attorney General to respond to
8    new evidence from Plaintiffs.

9

10   Dated:  October 12, 2022                    Respectfully submitted,

11                                              ROB BONTA
                                                Attorney General of California
12                                              MARK R. BECKINGTON
                                                Supervising Deputy Attorney General
13

14

15                                              /s/ Robert L. Meyerhoff
                                                ROBERT L. MEYERHOFF
16                                              Deputy Attorney General
17                                              *Attorneys for Defendant Rob Bonta in*
                                                *his official capacity as Attorney*
18                                              *General of the State of California*

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case Name:  **Duncan, et al. v. Bonta**          No.   **3:17-cv-01017-BEN-JLB**

I hereby certify that on <u>October 12, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION OF BRIEFING SCHEDULE SET FORTH IN ORDER SPREADING THE MANDATE AND CONTINUING THE PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 12, 2022</u>, at Los Angeles, California.

Robert Leslie Meyerhoff
Declarant

*Robert M*
Signature