C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>                    Defendant. | Case No:  17-cv-1017-BEN-JLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF BRIEFING SCHEDULE SET FORTH IN ORDER SPREADING THE MANDATE AND CONTINUING THE PRELIMINARY INJUNCTION**<br><br>Hearing Date:   November 9, 2022<br>Hearing Time:   10:30 a.m.<br>Courtroom:        5A<br>Judge:              Roger T. Benitez<br><br>Action Filed: May 17, 2017 |

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... ii

Introduction ...................................................................................................... 1

Background........................................................................................................ 2

Legal Standard................................................................................................... 6

Analysis ............................................................................................................. 6

I.      The *Bruen* Court *Confirmed* That Second Amendment Questions Are To Be Analyzed Under a History-and-Tradition Test, Not a Tripartite Binary Test That Resorts to Interest Balancing ........................................................................ 6

II.     The Court Should Reject the State's Request to Reopen Discovery and Unduly Delay the Final Resolution of Plaintiffs' Claims.................................. 10

        A.      Another Round of Fact and Expert Discovery Is Neither Necessary nor Appropriate........................................................................................ 10

        B.      The State's Motion Relies on Misstatements of the Law, the Record, and Plaintiffs' Position ......................................................................... 13

                1.      The State misrepresents the *Bruen* test—but even under its own fabricated test, the State is not entitled to new discovery. ............ 13

                2.      The State misrepresents the record, focusing on the means-end arguments, and largely ignoring the historical record already created......................................................................................... 16

                3.      The State misrepresents the position that Plaintiffs were likely to make in opposition to additional discovery to make its own position seem stronger than it is..................................................... 19

III.    If the Court Re-opens Discovery, It Should Limit the Scope of Such Discovery .................................................................................................... 22

IV.     Plaintiffs Do Not Oppose the State's Request to Reply to Any *New* Evidence Plaintiffs Submit in Their Court-ordered Brief................................ 22

Conclusion....................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. Hochul,*
   No. 22-cv-0986, 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y. Oct. 6,
   2022) ............................................................................................................ 9

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty Gen. of N.J.,*
   910 F.3d 106 (3d Cir. 2018) ........................................................... 4, 15

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Grewal,*
   2018 U.S. Dist. LEXIS 167698 (D. N.J. Sep. 28, 2018) .................. 15

*Caetano v. Massachusetts,*
   577 U.S. 411 (2016) ............................................................................ 15

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ..................................................................... *passim*

*Duncan v. Becerra,*
   265 F. Supp. 3d 1106 (S.D. Cal. 2017) ............................................... 3

*Duncan v. Becerra,*
   366 F. Supp. 3d 1131 (S.D. Cal. 2019) ....................................... *passim*

*Duncan v. Becerra,*
   742 F. App'x 218 (9th Cir. 2018) (unpublished) ............................... 3

*Duncan v. Becerra,*
   970 F.3d 1133 (9th Cir. 2020) ...................................................... *passim*

*Duncan v. Bonta,*
   2022 U.S. App. LEXIS 31051 ............................................................ 5

*Duncan v. Bonta,*
   2022 WL2347579 (U.S. June 30, 2022) ............................................. 5

*Duncan v. Bonta,*
   No. 19-55376, 2022 WL 4393577 (9th Cir. Sept. 23, 2022) ............ 21

*Exxon Shipping Co. v. Baker,*
   554 U.S. 471 (2008) .............................................................................. 6

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) .............................................................. 20

*Fyock v. City of Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ............................................. 15, 17, 20, 21

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
    788 F.3d 1318 (11th Cir. 2015) ......................................................... 20

*Greenwald v. Orb Communications & Marketing, Inc.*,
    2003 WL 660844 (S.D.N.Y. Feb. 27, 2003) ......................................... 6

*Heller v. District of Columbia*,
    670 F.3d 1244 (2011) ............................................................ 7, 15, 17

*Jackson v. City & Cty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ............................................................ 20

*Konigsberg v. State Bar of Cal.*,
    366 U.S. 36 (1961) ........................................................................... 8

*Liu v. State Farm Mut. Auto. Ins. Co.*,
    No. 18-1862, 2021 U.S. Dist. LEXIS 34789 (W.D. Wash. Feb. 24,
    2021) ................................................................................ 12, 22

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ................................................................ 7, 8, 20

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ............................................................ 11

*Mukhtar v. Cal. State Univ.*,
    299 F.3d 1053 (9th Cir. 2002) .................................................... 12, 22

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Beach*,
    354 F. Supp. 3d 143 (N.D.N.Y. 2018) .............................................. 11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ............................................................ *passim*

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ............................................................ 15

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ........................................................ 20

iii

TABLE OF AUTHORITIES

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996)................................................................ 23

*Sch. Dist. No. 1J v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir.1993)............................................................... 6, 22

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016)................................................................ 21

*United States v. Decastro*,
   682 F.3d 160 (2d Cir. 2012)................................................................. 20

*United States v. Miller*,
   307 U.S. 174 (1939) ..................................................................... 14, 19

*Wiese v. Becerra*,
   306 F. Supp. 3d 1190 (E.D. Cal. 2018).................................................. 15

*Wilson v. Cook Cty.*,
   937 F.3d 1028 (7th Cir. 2019)............................................................. 20

**Statutes**

Cal. Pen. Code § 16740 ........................................................................ 2

Cal. Pen. Code § 32310 ........................................................................ 2

**Other Authorities**

David B. Kopel, *The History of Firearm Magazines and Magazine
   Prohibitions*, 78 Alb. L. Rev. 849, 862-64 (2015)............................... 14

Robert J. Spitzer, *Gun Law History in the United States and Second
   Amendment Rights*, 80 L. & Contemp. Problems 55, 67 (2017) .............. 16

S.B. 1446, 2015-2016 Reg. Sess. (Cal. 2016)........................................... 2

U.S. Const., amend. II ............................................................... *passim*

U.S. Const., amend. XIV ................................................................ 2, 7, 13

**INTRODUCTION**

Under the text- and history-based test that now explicitly governs Second Amendment claims, the appropriate resolution of this case is clear: This Court should hold that California's ban on ammunition magazines over 10 rounds violates the Second Amendment. The Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen* ("*Bruen*"), 142 S. Ct. 2111, 2127 (2022), "demands a test rooted in the Second Amendment's text, as informed by history." Under that test, so long as the Second Amendment "presumptively protects" the conduct the government seeks to regulate, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

There is no question that the firearm magazines that the Second Amendment "presumptively protects" the firearm magazines the State has banned. They satisfy the test that *Bruen* reaffirmed governs which "arms" are protected—that is, "they are indisputably in 'common use' for self-defense today." *Id.* at 2143 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)). It is equally beyond dispute that they are commonly owned by law-abiding citizens for lawful purposes; indeed, they constitute half of all magazines in the United States. The state thus bears the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

As both the district court and every member of the Ninth Circuit that took the time to survey the comprehensive historical record has recognized, the State cannot come remotely close to doing so. There is no history or tradition in our nation of magazine-capacity limits. Restrictions on firing capacity were nonexistent until well into the twentieth century, and even then, they were rare and "short lived." *Id.* at 2155; *see Duncan v. Becerra* ("*Duncan IV*"), 970 F.3d 1133, 1150 & n.10 (9th Cir. 2020). The lack of any "distinctly similar historical regulation," *Bruen*, 142 S. Ct. at 2131, is all the more conspicuous because firearms able to fire more than ten rounds without

reloading are nothing new. They pre-date the founding and have been ubiquitous since *at least* the ratification of the Fourteenth Amendment. The potential for their misuse is thus a "general societal problem that has persisted since the 18th century." *Id.* Yet for two centuries, even as the firing capacity of firearms available to the public regularly increased to meet consumer demand, there was no meaningful record of governments addressing that problem by restricting how many rounds a common arm possessed by a law-abiding citizen could fire without reloading.

No amount of delay to conduct irrelevant fact and expert discovery will change this historical record. The Court should thus deny the State's request for additional time to conduct discovery, affirm its September 26, 2022, Order directing the parties to submit briefing at once, and finally resolve—once and for all—Plaintiffs' important Second Amendment claims.

## BACKGROUND

Since 2000, California has been one of the very few states to prohibit the manufacture, importation, sale, and transfer of any "large-capacity magazine," which California broadly defines as "any ammunition feeding device with the capacity to accept more than 10 rounds," with some exceptions not relevant here. Cal. Penal Code §§ 32310, 16740. While California did not initially try to confiscate such magazines from those who had already lawfully obtained them, in July 2016, the California Legislature eliminated event this modest nod in the direction of reliance interests and the Taking Clause. *See* S.B. 1446, 2015-2016 Reg. Sess. (Cal. 2016). The legislation required those in possession of lawfully acquired (and until then lawfully possessed) magazines to surrender, permanently alter, or otherwise dispossess themselves of their magazines.

A few months later, in November 2016, the voters approved Proposition 63, a ballot initiative that took a similar approach. *See* Cal. Penal Code § 32310. Proposition 63 requires any Californian in possession of a magazine over ten rounds to surrender it to law enforcement for destruction, permanently alter it, remove it from

2

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

the state, or sell it to a licensed firearms dealer. *Id.* § 32310(a), (d). Failure to dispossess oneself of a lawfully acquired magazine is punishable by up to a year in prison, as well as a fine. *Id.* § 32310(c).

Plaintiffs sued to enjoin enforcement of California's magazine restrictions. Compl. (May 17, 2017) (ECF No. 1). They alleged, as is relevant here, that the ban violates their rights under the Second Amendment. *Id.* ¶¶ 64-69. While Plaintiffs challenged the ban as a whole, they immediately sought a narrow preliminary injunction limited to enjoining enforcement of the new possession ban. Pls.' Mot. Prelim. Inj. 1 (May 26, 2017) (ECF No. 6). This Court, recognizing that the ban "criminaliz[es] the mere possession of these magazines that are commonly held by law-abiding citizens for defense of self[ and] home," held that Plaintiffs were likely to prevail under *both Heller*'s "text, history, and tradition" approach and the now-defunct two-step test that this Ninth Circuit then employed. *Duncan v. Becerra* ("*Duncan I*"), 265 F. Supp. 3d 1106, 1118, 1139 (S.D. Cal. 2017). The state took an interlocutory appeal, and a divided panel of this Circuit affirmed. *Duncan v. Becerra* ("*Duncan II*"), 742 F. App'x 218, 222 (9th Cir. 2018) (unpublished).

While the preliminary injunction order was on appeal, the parties engaged in substantial discovery efforts. Plaintiffs assembled a thorough summary judgment record establishing, among other things, that (1) ammunition magazines are "arms" within the scope of the Second Amendment, (2) the historical and present-day ubiquity of the magazines that California seeks to ban and confiscate, and (3) the lack of a longstanding historical tradition of laws in the United States restricting firearm capacity. After reviewing the parties' historical and factual record, this Court granted Plaintiffs' motion for summary judgment. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1186 (S.D. Cal. 2019) ("*Duncan III*").

This Court first found that magazines over 10 rounds are unquestionably common, as roughly 115 million of them are owned by Americans for all manner of lawful purposes. *See id.* at 1143-45. The Court then thoroughly considered—and

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

thoroughly rejected—the State's argument that there is a longstanding historical tradition of regulating firing or magazine capacity. *See id.* at 1149-53. To the contrary, the Court explained, "[h]istory shows ... restrictions on the possession of firearm magazines of any size have no historical pedigree." *Id.* at 1149. Indeed, "the earliest firing-capacity regulation appeared in the 1920s and 1930s," and "[e]ach was repealed." *Id.* at 1150, 1153. Even today, magazine capacity remains "unregulated in four-fifths of the states." *Id.* at 1149.

A divided panel of the Ninth Circuit affirmed. *Duncan v. Becerra*, 970 F.3d, 1133 (9th Cir. 2020) ("*Duncan IV*"), *reversed en banc, Duncan v. Bonta* ("*Duncan V*"), 19 F.4th 1087 (9th Cir. 2021), *vacated and remanded*, 2018 U.S. App. LEXIS 31051 (9th Cir. Sept. 23, 2022). The panel first concluded that "[t]he record ... amply shows" that the prohibited magazines are the "antithesis of unusual," as "nearly half of all magazines in the United States today hold more an ten rounds of ammunition," and such magazines are "overwhelmingly owned and used for lawful purposes." *Id.* at 1146-47. After conducting a "long march through the history of firearms," the panel likewise found no evidence that magazine capacity restrictions have any historical pedigree. *Id.* at 1148-49. While "firearms capable of holding more than ten rounds of ammunition have been available in the United States for well over two centuries," restrictions on such magazines have been rare, recent, and short-lived. *Id.* at 1149-50. Indeed, the panel held, "[o]nly during Prohibition did a handful of state legislatures enact capacity restrictions," and "'most of those laws were invalidated by the 1970s.'" *Id.* (quoting *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty Gen. of N.J.* ("*ANJRPC I*"), 910 F.3d 106, 117 n.18 (3d Cir. 2018)).

The Ninth Circuit then took the case en banc, and a divided en banc panel reversed. *See Duncan V*, 19 F.4th 1087. The en banc majority first expressly refused to embrace the text, history, and tradition approach that *Bruen* now mandates, declaring that "[u]nless and until the Supreme Court tells us ... that, for a decade or more, we all have fundamentally misunderstood the basic framework for assessing

4

Second Amendment challenges, we reaffirm our two-step approach." *Id.* at 1101. Employing that (now-abrogated) approach, the majority began by "assuming, without deciding, that California's law" both "implicates the Second Amendment" and implicates the "core" of the Second Amendment right, which obviated the need to engage in "an extensive historical inquiry." *Id.* at 1103. Giving "deference" to the State's "reasonable ... judgment" "that large-capacity magazines significantly increase the devastating harm caused by mass shootings and that removing those magazines from circulation will likely reduce deaths and serious injuries," *id.* at 1111, the en banc panel then concluded that the ban satisfies intermediate scrutiny, *id.*

Judge Bumatay authored a dissent, joined by Judges Ikuta and R. Nelson, in which he engaged in the "extensive analysis of the text, tradition, and history of the Second Amendment" that the majority foreswore. *Id.* at 1140 (Bumatay, J., dissenting). Exhaustively surveying the historical record, he found the core inquiry "not a close question": "Firearms and magazines capable of firing more than ten rounds have existed since before the Founding of the nation. They enjoyed widespread use throughout the nineteenth and twentieth centuries. They number in the millions in the country today," and there are "no longstanding prohibitions against them." *Id.* at 1140-42. Judge Bumatay thus concluded that California cannot prohibit them. *Id.*

Plaintiffs petitioned for a writ of certiorari. The Supreme Court held the petition pending resolution of *Bruen*, and shortly after it issued its decision in that case, the Court granted the petition, vacated the en banc decision, and remanded "for further consideration." *See Duncan v. Bonta*, 2022 WL 2347579, at *1 (U.S. June 30, 2022). On remand to the Ninth Circuit, the en banc panel ordered the parties "to file supplemental briefs on the effect of *Bruen* on th[e] appeal, including whether the en banc panel should remand this case to the district court." Order (Aug. 2, 2022) (9th Cir. Dkt. No. 202). After the parties' filed their supplemental briefs, the Ninth Circuit remanded the case to this Court for further proceedings. *Duncan v. Bonta*, 2022 U.S. App. LEXIS 31051.

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

On September 26, 2022, this Court issued an order spreading the mandate, reinstating the preliminary injunction while this case proceeds, and setting a schedule for supplemental briefing in light of *Bruen*. Order (Sept. 26, 2022) (ECF No. 111). Weeks later, the State filed a motion for reconsideration, requesting that the Court abandon its briefing schedule and re-open discovery to give the State time to engage in fact and expert discovery it opted not to engage in when this case was first before this Court. Def.'s Mot. for Reconsid. (Oct. 12, 2022) (ECF No. 112).

Plaintiffs oppose that request.

## LEGAL STANDARD

A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). Reconsideration is not intended to be an opportunity to relitigate previously decided matters, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), and courts should grant motions for such relief sparingly, *Greenwald v. Orb Communications & Marketing, Inc.*, 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003). The State has failed to show that any of the standards for reconsideration of the Court's September 26, 2022, Order have been met. There have been no changes in the law. The State has presented no new evidence. And the Court's order does not present a clear error or manifest injustice. The Court should thus deny the State's motion.

## ANALYSIS

**I.    THE *BRUEN* COURT *CONFIRMED* THAT SECOND AMENDMENT QUESTIONS ARE TO BE ANALYZED UNDER A HISTORY-AND-TRADITION TEST, NOT A TRIPARTITE BINARY TEST THAT RESORTS TO INTEREST BALANCING**

In 2008, the Supreme Court held that the Second Amendment protects an individual right to keep and bear arms. *Heller*, 554 U.S. 570. *Heller* described the right to self-defense as the "central component" of the Second Amendment right. *Id.* at 628. Two years later, the Supreme Court confirmed that said right is fundamental

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

and then, through the Fourteenth Amendment, incorporated it to protect against state and local infringement. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

Critically, *Heller* and *McDonald* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *Heller*, 554 U.S. at 595; *McDonald*, 561 U.S. at 799; *see also Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1271 (2011) (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny."). Indeed, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791, and afterward. 554 U.S. at 606-19. Based on that assessment, the Court held that a D.C. statute prohibiting possession of handguns, the most common type of firearm in the nation, lacked a revolutionary era analogue, did not fit the historical understanding of the scope of the right, and therefore violated the core Second Amendment right. *Id.* at 629.

This year, the Supreme Court *reaffirmed* the validity of the historical understanding approach. *Bruen*, 142 S. Ct. 2134-35. The Court expressly rejected the once-popular "two-step" test for analyzing Second Amendment claims, under which courts (1) determine whether a challenged government action restricts conduct within the scope of the Second Amendment, as informed by text, history, and tradition, then (2) apply a means-end balancing test, like intermediate scrutiny, depending on how close the restricted conduct comes to the "core" right and the severity of the challenged law's burden. *Id.* at 2126. Indeed, the Court declared that, ***"[d]espite the popularity of this two-step approach, it is one step too many***." *Id.* at 2127 (double emphasis added). The Constitution instead "demands a test rooted in the Second Amendment's text, as informed by history." *Id.* As the Court explained, "reliance on history to inform the meaning of constitutional text ... is ... more legitimate, and more administrable, than asking judges to 'make difficult empirical judgments' about 'the

costs and benefits of firearms restrictions." *Id.* at 2130 (quoting *McDonald*, 561 U.S. at 790-91 (plurality opinion)).

Thus, when faced with a Second Amendment challenge, courts must begin by asking whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If it does, "the Constitution presumptively protects that conduct," *id.* at 2130, and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127. To meet that burden, the government must "identify a well-established and representative historical analogue" to the regulation it seeks to defend. *Id.* at 2133. In other words, the state must establish that (1) the magazine ban shares common features with historically analogous regulations from the eighteenth to the mid-nineteenth centuries; (2) those analogous regulations were prevalent, not historical outliers; and (3) the modem regulation and the historical analogues are relevantly similar—that is, similar in both "how" they operated and "why." *Id.* "Only" if the government can meet that heavy burden "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126, 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Under this test, California cannot come close to meeting its burden of proving that its magazine ban is part of the Nation's historical tradition. If there were any comparable laws in existence in the nineteenth century or before, surely the State would have cited them in even *one* of the many earlier opportunities it had to do so. It did not because it could not. Indeed, as both this Court and every member of the Ninth Circuit to study the historical record on appeal has concluded, history and tradition establish the complete *absence* of "a well-established and representative historical analogue." *See Duncan III*, 366 F. Supp. 3d at 1149-53; *Duncan IV*, 970 F.3d at 1147-51; *Duncan V*, 19 F.4th at 1148-59 (Bumatay, J., dissenting).

This is likely why the State resorts to disfiguring the *Bruen* test beyond

recognition, summarizing it as follows: "A modern regulation that restricts conduct protected by the plain text of the Second Amendment is constitutional if it 'impose[s] a comparable burden on the right of armed self defense" as its historical predecessors, and the modern and historical laws are 'comparably justified.'" Mot. at 9 (citing *Bruen*, 142 U.S. at 2133). But whether there is a comparable burden on the right of armed self-defense becomes relevant only after the State has shown that a "well established and representative" historical analogue *even exists*. Indeed, the State's proposed test omits the inconvenient word "analogue" entirely. Because there are no comparable restrictions on firearm capacity in the nineteenth century or earlier, the State is noticeably telegraphing that it intends to argue that *in*comparable regulations imposed a "comparable burden" and are thus permissible.[1] The State should not waste this Court's time with such frivolity.

The Supreme Court held that the relevant inquiries into whether a representative law is a valid analogue center on "*how and why* the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133 (emphasis added). While *Bruen* may not demand a "historical twin" that is a "dead ringer for historical precursors," it does require a precursor "analogous enough to pass constitutional muster." *Id.* And as a district court in New York recently explained, "generally, a historical statute cannot earn the title 'analogue' if it is clearly more distinguishable than it is similar to the thing to which it is compared." *Antonyuk v. Hochul*, No. 22-cv-0986, 2022 U.S. Dist. LEXIS 182965, at *20 (N.D.N.Y. Oct. 6, 2022). In short, dissimilar historical laws cannot meet the *Bruen* standard even if they impose

---

[1] This is not the only place the State muddles the *Bruen* test. Early on, the State argues that "neither the parties nor the Court specifically addressed whether the California's prohibition on large capacity magazines imposes a 'comparable burden on the right of armed self-defense' as historical restrictions on dangerous or unusual weapons and other potential historical analogues, or whether the modern and historical regulations are 'comparably justified,' as *Bruen* now requires." Mot. at 2 (citing *Bruen*, 142 U.S. at 2133). As discussed below, this argument does not support re-opening discovery and further delaying the final vindication of Plaintiffs' rights. Part II.B.1., *infra*.

comparable burdens.

Moreover, if the State could just jump right to looking at whether there is a comparable burden and justification, then that would just be the rejected interest-balancing approach by another name. The Supreme Court did not expressly reject the interest-balancing approach only to re-adopt it later in the same case. "The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. (Citation.) It is this balance—struck by the traditions of the American people—that demands our unqualified deference." *Bruen*, 142 U.S. at 2131 (quoting *Heller*, 554 U.S. at 635).

The State seems to want to rid itself of the responsibility of having to establish similar eighteenth or nineteenth century laws altogether, but it cannot do so. The sooner the States realizes this, the sooner it will also accept that there is no need for protracted new discovery or other excuses to delay this matter. If acceptable analogues exist, the State should cite them. *Bruen* may not impose a "regulatory straightjacket," but it also forbids the "regulatory blank check" the State is apparently requesting. *Id.* at 2133.

## II.   THE COURT SHOULD REJECT THE STATE'S REQUEST TO REOPEN DISCOVERY AND UNDULY DELAY THE FINAL RESOLUTION OF PLAINTIFFS' CLAIMS

### A.   Another Round of Fact and Expert Discovery Is Neither Necessary nor Appropriate

The State requests three more months of fact and expert discovery (over four months from this Court's order) to build its historical record and, ostensibly, test Plaintiffs', through written discovery and competing expert reports, rebuttal reports, and depositions. Mot. 18-19. The Court should decline the State's invitation to delay final adjudication of Plaintiffs' constitutional claims on these grounds because additional fact and expert discovery is unnecessary to the historical questions before this Court on remand.

Indeed, the only "facts" relevant to resolution of this case are "legislative facts"

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

about the history of magazines over ten rounds and their regulation in this country. Attorneys can develop that record through briefing, argument, and presentation of documentary evidence—without the need for expert or other evidence adduced through traditional discovery methods. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ("Only adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law.") In fact, that is precisely the sort of historical record the State developed and relied on when this case was first before this Court on summary judgment. The State did not then insist on any discovery (expert or otherwise) about the historical analogues it presented to this Court; it merely presented argument about and evidence of those laws, as every lawyer is trained to do. *See, e.g.*, Def.'s Opp'n to Pls.' Mot. Summ. J. at 4-8, 12 (April 9, 2018) (ECF No. 53); Decl. of John D. Echeverria Supp. Def.'s Opp'n to Pls.' Mot Summ. J., Ex. 25 (ECF No. 53-10); Def.'s Suppl. Br. Opp'n to Pls.' Mot. Summ. J. 9-13 (June 11, 2018) (ECF No. 62).

Even if the State must rely on historical analogues to defend its modern magazine ban under *Bruen*, expert discovery is unnecessary to this Court's understanding of the historical record. Indeed, "[w]hen confronting … present-day firearm regulations, th[e] historical inquiry that courts must conduct will often involve reasoning by analogy—*a commonplace task for any lawyer or judge*." *Bruen*, 142 S. Ct. at 2132 (double emphasis added). This might explain why the *Bruen* Court could declare New York's may-issue carry regime unconstitutional even on a bare-bones record without resort to expert testimony and found it unnecessary to remand the case to develop an evidentiary record.

In *Bruen*, neither party engaged in any factual development (let alone expert discovery) in the district court because circuit precedent foreclosed the plaintiffs' Second Amendment claims, and the district court ruled against the plaintiffs on the pleadings alone. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143 (N.D.N.Y. 2018). The *Bruen* majority rejected the dissent's argument that it could

11

not "answer the question presented without giving respondents the opportunity to develop an evidentiary record fleshing out how New York's law is administered in practice, how much discretion licensing officers in New York possess, or whether the proper cause standard differs across counties." 142 S. Ct. at 2135 n.8. The majority instead held that, "in light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the government "may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense. That conclusion does not depend upon any of the factual questions raised by the dissent." *Id*. Nor did it apparently depend on a battle of conflicting expert opinions about "the Nation's history of firearm regulation." *See id.*

Here too, application of the *Bruen* test requires no expert analysis or development of adjudicative facts normally disclosed in discovery. Rather, this case turns on legal issues that can and should be resolved by this Court on evidence presented by the parties and debated in their briefing and at argument. The primary and secondary sources necessary to the historical inquiry under *Bruen* are publicly available; they are not materials in one party's possession that are inaccessible to the other party except through discovery. And expert opinion on the relevant legal questions is impermissible. For it is the sole province of the Court to interpret the laws and pass on their constitutionality. *See, e.g.*, *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."); *Liu v. State Farm Mut. Auto. Ins. Co.*, No. 18-1862, 2021 U.S. Dist. LEXIS 34789, at *9 (W.D. Wash. Feb. 24, 2021) ("It is black-letter law that an expert cannot opine on a legal conclusion or instruct the jury on the applicable law. To do so would usurp the court's role.").

For these reasons, the Court need not re-open discovery and delay final resolution of Plaintiffs' constitutional claims.

/ / /

/ / /

12

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

## B. The State's Motion Relies on Misstatements of the Law, the Record, and Plaintiffs' Position

### 1. The State misrepresents the *Bruen* test—but even under its own fabricated test, the State is not entitled to new discovery.

In arguing that the Court should re-open discovery so that the State may create a record that reflects the *Bruen* test, the State first resorts to misrepresenting the test and the evidence required to meet it. Mot. 2, 9. The State writes:

> [N]either the parties nor the Court specifically addressed whether the California's prohibition on large capacity magazines imposes a "comparable burden on the right of armed self-defense" *as historical restrictions on dangerous or unusual weapons* and other potential historical analogues, or whether the modern and historical regulations are "comparably justified," as *Bruen* now requires.

Mot. at 2 (citing *Bruen*, 142 U.S. at 2133) (emphasis added); *see also id.* at 9 ("A modern regulation that restricts conduct protected by the plain text of the Second Amendment is constitutional if it 'impose[s] a comparable burden on the right of armed self defense" as its historical predecessors, and the modern and historical laws are 'comparably justified.'"). Even if the State's restatement of *Bruen*'s central holding were correct—it is not—the argument does not support the State's request to re-open discovery.

As discussed above, the straightforward *Bruen* test requires the State to identify a well-represented historical analogue that regulates conduct protected by the Second Amendment in comparably similar ways (i.e., "how" the modern law regulates) and for comparably similar reasons (i.e., "why" the modern law regulates). Part I, p.9, *supra* (quoting *Bruen*, 142 S. Ct. at 2133). It does not allow the State to rely on dissimilar historical laws simply because they impose a comparably significant burden. This is especially true when the law does not address an "unprecedented societal concern[] or dramatic technological change[]," *Bruen*, 142 S. Ct. at 2132, but restricts conduct that was well-known to those who considered and ratified the Second and Fourteenth Amendments.

As the record shows, arms that could fire more than 10 rounds without

13

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

reloading would by no means have been "unforeseen inventions to the Founders." *Duncan IV*, 970 F.3d at 1147. To the contrary, they predate the founding by more than a century. *See id.* They were neither novelties nor confined to the military, and they were marketed to and bought by civilians from the start. Indeed, they "had been well established in the mainstream of American gun ownership" "long before" a handful of capacity restrictions started to pop up in the late twentieth century. *See* David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 Alb. L. Rev. 849, 862-64 (2015).[2] Yet despite this long historical tradition of law-abiding citizens possessing these firearms for lawful purposes, there is no similar tradition of government regulation—let alone confiscation. To the contrary, the historical tradition of advancement in firearms technology reflects a steady trend toward increasing the firing capacity of the most popular and common arms, with no corresponding trend of government restrictions placing a cap on firing capacity.[3]

When this case was first before this Court on summary judgment, the State, "[f]aced with a dearth of magazine capacity restrictions older than 1990," shifted the inquiry from historical restrictions on the size of detachable magazines to broader historical restrictions on "firing-capacity" dating to just the Prohibition Era. *Duncan III*, 366 F. Supp. 3d at 1150. Losing *that* historical debate, the State now tries to shift the inquiry once more—this time to even broader historical restrictions on "dangerous or unusual weapons." Mot. 2. The Court should end the State's seemingly endless moving of the goalposts and reject its request to re-open discovery so that it may

---

[2] Despite the clear record already established here, the State claims, without support, that "the firearm technology regulated by California's restrictions on LCMs" is an "*undoubtedly* modern advance." Mot. 13-14 (emphasis added); *but see, e.g., Duncan III*, 366 F. Supp. 3d at 1149-53; *Duncan V*, 19 F.4th at 1140 (Bumatay, J., dissenting).

[3] This Court did, however, identify a historical tradition of placing a "floor" on firearm firing capacity. *Duncan III*, 366 F. Supp. 3d at 1150 (citing *United States v. Miller*, 307 U.S. 174, 180-83 (1939) ("These early American citizen militia laws suggest that, contrary to the idea of a firing-capacity upper limit on the number of rounds a citizens was permitted to keep with one's arms, there was an obligation that citizens would have at least 20 rounds available for immediate use.").

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

conduct a boundless search for irrelevant historical gun control laws restricting "dangerous or unusual" weapons.

First, the phrase is "dangerous *and* unusual," not "dangerous *or* unusual." *Bruen*, 142 U.S. at 2128. As this Court once explained: "The Second Amendment does not exist to protect the right to bear down pillows and foam baseball bats. ***It protects guns and every gun is dangerous.*** 'If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous.' … '[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Duncan III*, 366 F. Supp. 3d at 1146 (quoting *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1031 (2016) (Alito, J. and Thomas, J., concurring)) (double emphasis added).

Second, the State seems to assume that magazines over ten rounds could even qualify as "dangerous and unusual" weapons. If the State were correct, then maybe it would have an argument that historical restrictions on such weapons might be analogous to the State's magazine ban. But this Court has already soundly rejected the premise. *Id.* at 1143-45 (citing *Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015); *ANJRPC I*, 910 F.3d at 116; *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255-57 (2d Cir. 2015); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011); *Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1195 n.3 (E.D. Cal. 2018); *Ass'n of N.J. Rifle & Pistol Clubs v. Grewal*, 2018 U.S. Dist. LEXIS 167698, at *32-33 (D. N.J. Sep. 28, 2018). Indeed, the magazines at issue are far from unusual: "The state bans magazines that can carry over ten rounds—a firearm component with a long historical lineage commonly used by Americans for lawful purposes, like self-defense. *Duncan V*, 19 F.4th at 1140 (Bumatay, J., dissenting). Re-opening discovery so the State may conduct a search for a "well-established and representative" history of laws banning "dangerous and unusual" weapons is not necessary (or appropriate) because such laws would not be "relevantly similar," *Bruen*, 142 S. Ct. at 2133, to the State's modern ban on magazines in common use for lawful purposes, including self-defense.

15

Third, the State has already submitted evidence about the historical genesis of laws restricting "dangerous or unusual weapons" in the United States. That evidence—from a peer-reviewed article making the argument that gun regulation in the United States is historically supported—admits that the bulk of laws regulating firearms as "dangerous and unusual" did not make their appearance on the American landscape until the early 1900s.[4] As *Bruen* tells us, such laws are not from the relevant period, and they "do[] not does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." 142 S. Ct. at 2137, n.28.

While the Spitzer article attempts to link these twentieth-century inventions to earlier restrictions on concealed carry of pistols or knives and rigging firearms to discharge without a finger on the trigger, *see Spitzer*, *supra*, n.4, at 67, deciding whether such laws are "relevantly similar" is the sort of reasoning by analogy that the *Bruen* Court called "a commonplace task for any lawyer or judge." 142 S Ct. at 2132. Expert reports and protracted discovery are unnecessary and impermissible.

### 2. The State misrepresents the record, focusing on the means-end arguments, and largely ignoring the historical record already created.

The State next moves to misrepresenting the history of this case and the record the parties painstakingly built when it was first before this Court on summary judgment. Mot. 10. It is true that "the parties developed the record on and briefed the issue of the burden that California's LCM restrictions imposed on Plaintiffs' ability to defend themselves, and whether those restrictions satisfied the relevant standard of scrutiny." Mot. 10. But that is far from the whole record the parties created. To the contrary, the parties presented argument and evidence of the existence of—or lack

---

[4] Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Problems 55, 67 (2017), *available at* https://lcp.law.duke.edu/article/gun-law-history-in-the-united-states-and-second-amendment-rights-spitzer-vol80-iss2/ (attached as Exhibit 25 to the Declaration of John. D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Adjudication (April 9, 2018) (ECF No. 53-10)).

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

of—historical antecedents for the State's magazine ban in making their cases.

Indeed, both parties *had* to develop that record because, as has been established, analysis of history and tradition has been essential to the Second Amendment analysis since *Heller* came down nearly 15 years ago. *Bruen*, 142 S. Ct. at 2134 ("Having made the constitutional standard endorsed in *Heller more explicit*, we now apply that standard to New York's proper-cause requirement.") (emphasis added); *id.* at 2127 ("Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history."); *Heller II*, 670 F.3d at 1271 (Kavanaugh, J., dissenting). And even the Ninth Circuit's now-defunct multi-step test treated "longstanding prohibitions" as "outside the scope of the Second Amendment," requiring evidence of the historical prevalence and regulation of the banned magazines. *Fyock*, 779 F.3d at 996-97; *cf id.* at 997 (faulting parties for failing to "provide evidence regarding the historical prevalence and regulation of large-capacity magazines").

Plaintiffs thus presented the Court with detailed historical compilations about the development of firearms and magazines with a higher firing capacity, as well as the dearth of laws restricting firing or magazine capacity. *See, e.g.*, Pls.' Mem. Supp. Mot. Summ. J. at 3-5, 10-12 (Mar. 5, 2018) (ECF No. 50-1) (discussing Kopel, *supra*, p.14); Decl. of Anna M. Barvir, Exs. 12-57 (Mar. 5, 2018 (ECF No. 50-8); Pls.' Req. Jud. Ntc. Supp. Mot. Summ. J., Exs. 69-86 (Mar. 5, 2018) (ECF No. 50-2); Pls.' Reply Supp. Mot. Summ. J. at 3 (April 23, 2018) (ECF No. 57). The State, meanwhile, tried (in vain) to prove that such restrictions have an adequate historical pedigree. *See, e.g.*, Def.'s Opp'n to Pls.' Mot. Summ. J. 4-8, 12 (April 9, 2018) (ECF No. 53); Decl. of John D. Echeverria Supp. Def.'s Opp'n to Pls.' Mot Summ. J., Ex. 25 (ECF No. 53-10); Def.'s Suppl. Br. Opp'n to Pls.' Mot. Summ. J. 9-13 (June 11, 2018) (ECF No. 62). Thus, the district court, the panel, and the en banc dissent were already able to conduct the historical inquiry that *Bruen* reaffirms, and after a "long

1   march through the history," *Duncan IV*, 970 F.3d at 1149, each concluded that

2   "restrictions on the possession of firearm magazines of any size have no historical

3   pedigree" at all. *Duncan III*, 366 F. Supp. 3d at 1149; *see also, e.g.*, *Duncan IV*, 970

4   F.3d at 114 7-51; *Duncan V*, 19 F.4th at 1140-42, 1148-59 (Bumatay, J., dissenting).

5           But the State misrepresents this Court's very decision on that point. The State

6   claims that this Court "focused its analysis [on] whether California's restrictions on

7   [magazines over ten rounds] were a 'reasonable fit' with the State's important

8   governmental interest." Mot. 10. It omits that the Court's intermediate scrutiny /

9   "reasonable fit" analysis was simply an *alternative* analysis this Court engaged in to

10  meet its duty to apply the test then required in the Ninth Circuit.[5] And it ignores this

11  Court's five-page analysis of the relevant history and tradition, presumably because

12  the analysis led the Court to hold that "California's prohibition on detachable

13  ammunition magazines larger than 10 rounds is a type of prohibition that has not been

14  historically accommodated by the Second Amendment." *Id.* at 1149.

15          In short, the parties already created a comprehensive record about the historical

16  precedents for California's magazine ban, and the Court already ruled on them.

17  Ultimately, the State asks this Court to reopen discovery for a second chance to

18  conduct discovery it already knew was necessary to its case. Even if the State is

19  correct that the expert opinions of historians are necessary (or even permissible) to

20  analyze the historical bases for its magazine ban, it had every opportunity to conduct

21  that discovery during the many months the parties originally spent building their

22  cases. That it chose not to do so is not a sufficient justification for this Court to

23  reconsider its post-*Bruen* order foreclosing another round of discovery and ordering

24

25  _____

26      [5] *See Duncan III*, 366 F. Supp. 3d at 1155 ("Beyond the simple *Heller* test, …,

27  the Ninth Circuit uses what might be called a tripartite binary test with a sliding scale
    and a reasonable fit. In other words, there are three different two-part tests, after
    which the sliding scale of scrutiny is selected. Most courts select intermediate scrutiny

28  in the end. Intermediate scrutiny, in turn, looks for a 'reasonable fit.' ... It is the wrong
    standard. But the statute fails anyhow.")

18

the parties to submit briefing at once.

### 3.   The State misrepresents the position that Plaintiffs were likely to make in opposition to additional discovery to make its own position seem stronger than it is.

The State next sets up a strawman argument, predicting that Plaintiffs will oppose its motion "because the Court can summarily rule in favor Plaintiffs under the *Heller* common-use analysis set forth in the Court's original ruling." Mot. 14. The State then knocks down its strawman, observing that a categorical common-use test "is not the same as the text-and-history standard required by *Bruen*." *Id.* But the State knew Plaintiffs would not be arguing that the record compiled to satisfy the common-use test would be enough to satisfy the history-based analysis required under *Bruen*. It has seen Plaintiffs' supplemental brief before the Ninth Circuit after all. There, as here, Plaintiffs argued that further factual development was unnecessary because the historical record already developed more than amply supports this Court's holding that the State's magazine ban lacks any historical pedigree. Pls.-Appellees' Suppl. Br. at 22-24 (Aug. 2, 2022) (9th Cir. Dkt. No. 207).

What's more, the State suggests the Court's common-use analysis is no longer relevant because it "was based on a view that *Heller* and *United States v. Miller*, 307 U.S. 174 (1939), 'categorically' extended Second Amendment protection to 'arms from home with which militia members would report for duty," *id.* (quoting *Duncan III*, 366 F. Supp. 3d at 1148). There are at least two things wrong with the State's claim. Most critically, this Court's "simple *Heller* test" was not based on the use of arms for militia purposes but expressly and repeatedly frames the test in terms of whether the arms at issue are "'in common use' 'for lawful purposes ***like self-defense***." *Duncan III*, 366 F. Supp. 3d at 1142-49 (double emphasis added). Indeed, the Court's "simple *Heller* test" analysis refers to self-defense no fewer than 25 times. *Id.* It frames the test in those terms. *Id.* at 1142-43. It analyzes the commonality of magazines over ten rounds in those terms. *Id.* at 1143-45. And it frames its "conclusion under the *Heller* test" in those terms. *Id.* at 1147-49. The Court only

19

mentions their use by militia members in passing as *further* support for its holding that the banned magazines are entitled to Second Amendment protection. *Id.* at 1148-49.

That said, *Bruen* does not cast doubt on this Court's view that Second Amendment protection *extends* to arms used in militia service. True, *Bruen* "repeatedly **confirms** that self-defense is the 'central component' of the right" the Second Amendment protects. Mot. 14 (quoting *Bruen*, 142 S. Ct. at 2133 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)); *id.* at 2125 (also referencing *Heller* and *McDonald*); *id.* at 2128 (same)) (double emphasis added). But, as the State's own argument and citation confirm, this was equally true before *Bruen* came down. *Id.* In the words of this very Court:

> At the *core* of the Second Amendment is a citizen's right to have in his and her home for *self-defense* common firearms. *Heller*, 554 U.S. at 629. "[O]ur central holding in *Heller* [is] that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, *most notably for self-defense within the home*." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

*Duncan III*, 366 F. Supp. 3d at 1136 (emphasis added). Indeed, one thing the courts could agree on, even before *Bruen*, was that the "core" of the Second Amendment protected right was "self-defense."[6] But referring to the "central component" or the "core" of the right does not suggest that the arms used in "militia service" are altogether without Second Amendment protection. That would be an odd reading of the Second Amendment indeed.

In addressing Plaintiffs' actual position—that additional fact and expert discovery is not appropriate because the record already provides ample evidence of

---

[6] *See, e.g.*, *Wilson v. Cook Cty.*, 937 F.3d 1028, 1032 (7th Cir. 2019) (discussing the core right of self-defense); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1323 (11th Cir. 2015) (same); *Peterson v. Martinez*, 707 F.3d 1197,1218-19 (10th Cir. 2013) (same); *United States v. Decastro*, 682 F.3d 160, 166 (2d Cir. 2012) (same); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (same); *see also Fyock*, 779 F.3d at 998 (recognizing that protection extends to magazines); *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014) (recognizing that protection extends to ammunition).

the relevant history and tradition—the State had only this to say:

> [T]he Ninth Circuit already passed upon this argument when, after considering Plaintiffs' supplemental brief and the arguments raised therein, it rejected Plaintiffs' request to affirm the judgment without remand (*id.* at 21, 24). *See Duncan v. Bonta*, No. 19-55376, 2022 WL 4393577, at *1-2 (9th Cir. Sept. 23, 2022). Indeed, the Attorney General's supplemental brief sought vacatur and remand precisely to "allow the parties to compile the kind of historical record that *Bruen* now requires." Def.-Appellant's Supp. Brief in Response to the Court's August 2, 2022, Order (August 23, 2022), 9th Cir. Dkt. 203, at 2. Had the Court of Appeals believed that the existing factual record and conclusions of law would be sufficient to address the new questions raised by *Bruen*, there would have been no reason to vacate the judgment and remand the matter in the first place.

Mot. 17.[7] But the Ninth Circuit summarily remanded this case in a one-sentence order, providing no guidance as to what "further proceedings" were necessary under *Bruen*. It certainly did not suggest that this Court is bound to re-open discovery to allow the State to engage in expert discovery it should have known was necessary to its case even before *Bruen* came down. The State did not even request as much in its supplemental brief to the Ninth Circuit. *See* Suppl. Br. for the Att'y Gen. at 7-14 (Aug. 23, 2022) (9th Cir. Dkt. No. 203).

This Court ordered the parties to "file any additional briefing that is necessary to decide this case in light of *Bruen*." Order (Sept. 26, 2022) (ECF No. 111).

---

[7] Elsewhere, the State claims that its earlier "historical argument was consistent with guidance from the Ninth Circuit that laws from the early twentieth century could be considered "longstanding" and therefore presumptively constitutional under *Heller*." Mot. 12 (citing, *e.g.*, *Silvester v. Harris*, 843 F.3d 816, 831 (9th Cir. 2016) (Thomas, C.J., concurring). But the State recognized that"*Bruen* has since suggested that when determining whether a law is historically justified, the focus should be on gun regulations predating the 20th century." *Id.* (citing *Bruen*, 142 S. Ct. at 2137).

Essentially, the State argues that it limited its historical record on summary judgment to Prohibition Era firing-capacity restrictions because Ninth Circuit precedent allowed it to rely on such laws to prove a "longstanding" history of similar prohibitions. *Id.* The argument is unavailing. *Fyock* did not *require* that the State to so limit its historical analysis. And *Heller* engaged in an analysis of history and tradition that went all the way back to the ratification of the Second Amendment. 554 U.S. at 606-19. If relevant laws pre-dated the 1900s, it is hard to see why the State would have omitted them when trying to prove its modern magazine ban was part of a "longstanding" tradition of similar restrictions.

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

Ostensibly, this would not prevent the parties from supplementing the relevant historical record to comport with their understanding of *Bruen*. That is enough to comply with the Ninth Circuit's order remanding this case; it certainly is not "clearly erroneous" or "manifestly unjust." *See Sch. Dist. No. 1J*, 5 F.3d at 1263.

## III.   IF THE COURT RE-OPENS DISCOVERY, IT SHOULD LIMIT THE SCOPE OF SUCH DISCOVERY

If the Court finds that it would be "manifestly unjust" to deny the State an opportunity to conduct further discovery, it should still decline the State's request to conduct unbounded fact and expert discovery over a period of several months. The State should not be permitted to engage in a fishing expedition for marginally relevant historical gun control laws to justify its modern magazine ban. Plaintiffs instead ask the Court to order that the State first identify some "relevantly similar" historical analogues and show that expert testimony would help the Court interpret those identifiable analogues in light of their historical context. Expert opinion should not merely identify those laws or purport to tell the Court what they mean. *See, e.g.*, *Mukhtar*, 299 F.3d at 1065 n.10 ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."); *Liu*, No. 18-1862, 2021 U.S. Dist. LEXIS 34789, at *9 ("It is black-letter law that an expert cannot opine on a legal conclusion or instruct the jury on the applicable law. To do so would usurp the court's role."). Even if such expert testimony were appropriate, it is not needed here. This Court is perfectly qualified to interpret the laws the parties present.

## IV.   PLAINTIFFS DO NOT OPPOSE THE STATE'S REQUEST TO REPLY TO ANY *NEW* EVIDENCE PLAINTIFFS SUBMIT IN THEIR COURT-ORDERED BRIEF

The Court's September 26, 2022, Order, which gives each party another brief to supplement the already robust summary judgment record here, is neither "clearly erroneous" nor "manifestly unjust." *See Sch. Dist. No. 1J*, 5 F.3d at 1263. Reconsideration is thus neither justified nor required. *Id.* Plaintiffs are the moving party on the motion for summary judgment being supplemented, after all. And the

moving party generally gets the "final word." When the moving party's reply raises new evidence, however, the non-moving party should be given an opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Plaintiffs agree that fairness to all parties generally requires this much. But instead of waiting to see Plaintiffs' brief and any evidence filed in support, *then* moving for leave to file a sur-reply as is the normal course, the State's motion presupposes that Plaintiffs will present new evidence the State is not already aware of and prematurely demands an opportunity to reply. That said, Plaintiffs do not oppose allowing the State to respond to any *new* evidence Plaintiffs may introduce in their court-ordered brief.

## CONCLUSION

For the reasons above, the State does not meet the standard for reconsideration. It is neither "clearly erroneous" nor "manifestly unjust" for the Court to decide not to reopen discovery to give the State a "second bite at the apple" to conduct discovery it should have known—*and in fact did know*—would have been relevant to its defense of the challenged magazine ban. The State *chose* not to engage in that discovery, and it should have to live with that decision.

The Court should thus deny the State's Motion for Reconsideration of the Briefing Schedule Set Forth in Order Spreading the Mandate and Continuing the Preliminary Injunction. If the Court does re-open the window discovery, however, Plaintiffs ask that the Court limit the scope of such discovery to that which is necessary to assist the Court in interpreting identifiable historical analogues.

Dated: October 24, 2022                    **MICHEL & ASSOCIATES, P.C.**


                                           *s/ Anna M. Barvir*
                                           Anna M. Barvir
                                           Email: abarvir@michellawyers.com
                                           Attorneys for Plaintiffs

OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

## <u>CERTIFICATE OF SERVICE</u>
### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Duncan, et al. v. Becerra*
Case No.: 17-cv-1017-BEN-JLB

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF BRIEFING SCHEDULE SET FORTH IN ORDER SPREADING THE MANDATE AND CONTINUING THE PRELIMINARY INJUNCTION**

on the following parties by electronically filing the foregoing on October 24, 2022, with the Clerk of the District Court using its ECF System, which electronically notifies them.

John D. Echeverria
Deputy Attorney General
john.echeverria@doj.ca.gov
Robert L. Meyerhoff
robert.meyerhoff@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

Anthony P. O'Brien
Deputy Attorney General
anthony.obrien@doj.ca.gov
1300 I Street, Suite 125
Sacramento, CA 95814

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 24, 2022, at Long Beach, California.

s/ Laura Palmerin
Laura Palmerin