C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, et al., | Case No: 17-cv-1017-BEN-JLB |
| Plaintiffs, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF** |
| v. | |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
| Defendant. | |

# REQUEST FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201, Plaintiffs Virginia Duncan, Patrick Lovette, David Marguglio, and California Rifle and Pistol Association, Incorporated, respectfully request that the Court take judicial notice of the following documents in support of Plaintiffs' motion for summary judgment:

1.     **Excerpts of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110103(a)-(b), 108 Stat. 1796.** A true and correct copy of this document is attached as **Exhibit 11**. Exhibit 11 is a public record of the United States Congress that was accessed on or about March 5, 2018, from Congress.gov, the official website for U.S. federal legislative information (https://www.congress.gov/103/bills/hr3355/BILLS-103hr3355enr.pdf).

2.     **Colo. Rev. Stat. §§ 18-12-301–302.** A true and correct copy of this document is attached as **Exhibit 12**. Exhibit 12 is a public record of the Colorado Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

3.     **Conn. Gen. Stat. § 53-202w.** A true and correct copy of this document is attached as **Exhibit 13**. Exhibit 13 is a public record of the Connecticut Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

4.     **D.C. Code § 7-2506.01(b).** A true and correct copy of this document is attached as **Exhibit 14**. Exhibit 14 is a public record of the Federal Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

5.     **Haw. Rev. Stat. § 134-8(c).** A true and correct copy of this document is attached as **Exhibit 15**. Exhibit 15 is a public record of the Hawaii Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

6.      **Md. Code, Crim. Law § 4-305(b).** A true and correct copy of this document is attached as **Exhibit 16**. Exhibit 16 is a public record of the Maryland Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

7.      **Mass. Gen. Laws ch. 140, §§ 121, 131(a).** A true and correct copy of this document is attached as **Exhibit 17**. Exhibit 17 is a public record of the Massachusetts Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

8.      **N.J. Stat. § 2C:39-1y, -3j, -9h.** A true and correct copy of this document is attached as **Exhibit 18**. Exhibit 18 is a public record of the New Jersey Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

9.      **N.Y. Penal Law §§ 265.00, 265.36.** A true and correct copy of this document is attached as **Exhibit 19**. Exhibit 19 is a public record of the New York Legislature that was accessed on or about March 5, 2018, from Westlaw, a fully searchable online legal database.

10.     **Vt. Stat. Ann. tit. 13, § 402.** A true and correct copy of this document is attached as **Exhibit 20**. Exhibit 20 is a public record of the Vermont Legislature that was accessed on or about November 30, 2022, from Lexis, a fully searchable online legal database.

11.     **Del. Code Ann. tit. 11, § 1469(a).** A true and correct copy of this document is attached as **Exhibit 21**. Exhibit 21 is a public record of the Delaware Legislature that was accessed on or about November 30, 2022, from Lexis, a fully searchable online legal database.

12.     **2022 Oregon Ballot Measure 114, Sec. 11.** A true and correct copy of this document is attached as **Exhibit 22**. Exhibit 22 is a public record of the Oregon Secretary of State that was accessed on or about November 30, 2022, from

3

17cv1017

https://sos.oregon.gov/admin/Documents/irr/2022/017text.pdf, the official website of the Oregon Secretary of State.

Under the Federal Rules of Evidence, at any stage of the proceedings, the Court may take judicial notice of any fact "that is not subject to reasonable dispute because it ... is generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. Rules Evid. 201(b), (d). A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).

Judicial notice is proper because the documents for which this request is made are "capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, "[l]egislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). And "a federal court must take judicial notice of state statutes 'without plea or proof.'" *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).

Here, the accuracy of all the public records subject to Plaintiffs' Request for Judicial Notice, consisting of enacted state and federal legislation and legislative history, cannot reasonably be questioned. The Court should thus judicial notice of these records.

Dated: December 1, 2022                          **MICHEL & ASSOCIATES, P.C.**


*s/ Anna M. Barvir*
Anna M. Barvir
Email: abarvir@michellawyers.com
Attorneys for Plaintiffs

REQUEST FOR JUDICIAL NOTICE

# EXHIBITS

## TABLE OF CONTENTS

| Exhibit | Description | Page |
|---|---|---|
| 11 | Excerpts of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110103(a)-(b), 108 Stat. 1796 | 000001 |
| 12 | Colo. Rev. Stat. §§ 18-12-301–302 | 000029 |
| 13 | Conn. Gen. Stat. § 53-202w | 000032 |
| 14 | D.C. Code § 7-2506.01(b) | 000036 |
| 15 | Haw. Rev. Stat. § 134-8(c) | 000039 |
| 16 | Md. Code, Crim. Law § 4-305(b) | 000042 |
| 17 | Mass. Gen. Laws ch. 140, §§ 121, 131(a) | 000045 |
| 18 | N.J. Stat. § 2C:39-1y, -3j, -9h | 000058 |
| 19 | N.Y. Penal Law §§ 265.00, 265.36 | 000067 |
| 20 | Vt. Stat. Ann. tit. 13, § 402 | 000090 |
| 21 | Del. Code Ann. tit. 11, § 1469(a) | 000095 |
| 22 | 2022 Oregon Ballot Measure 114, Sec. 11 | 000100 |

# EXHIBIT 11

H. R. 3355

# One Hundred Third Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the twenty-fifth day of January, one thousand nine hundred and ninety-four*

## An Act

To control and prevent crime.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Violent Crime Control and Law Enforcement Act of 1994".

**SEC. 2. TABLE OF CONTENTS.**

The following is the table of contents for this Act:

Sec. 1. Short title.
Sec. 2. Table of contents.

TITLE I—PUBLIC SAFETY AND POLICING

Sec. 10001. Short title.
Sec. 10002. Purposes.
Sec. 10003. Community policing; "Cops on the Beat".

TITLE II—PRISONS

Subtitle A—Violent Offender Incarceration and Truth in Sentencing Incentive Grants

Sec. 20101. Grants for correctional facilities.
Sec. 20102. Truth in sentencing incentive grants.
Sec. 20103. Violent offender incarceration grants.
Sec. 20104. Matching requirement.
Sec. 20105. Rules and regulations.
Sec. 20106. Technical assistance and training.
Sec. 20107. Evaluation.
Sec. 20108. Definitions.
Sec. 20109. Authorization of appropriations.

Subtitle B—Punishment for Young Offenders

Sec. 20201. Certain punishment for young offenders.

Subtitle C—Alien Incarceration

Sec. 20301. Incarceration of undocumented criminal aliens.

Subtitle D—Miscellaneous Provisions

Sec. 20401. Prisoner's place of imprisonment.
Sec. 20402. Prison impact assessments.
Sec. 20403. Sentences to account for costs to the Government of imprisonment, re-
        lease, and probation.
Sec. 20404. Application to prisoners to which prior law applies.
Sec. 20405. Crediting of "good time".
Sec. 20406. Task force on prison construction standardization and techniques.
Sec. 20407. Efficiency in law enforcement and corrections.
Sec. 20408. Amendments to the Department of Education Organization Act and the
        National Literacy Act of 1991.
Sec. 20409. Appropriate remedies for prison overcrowding.
Sec. 20410. Congressional approval of any expansion at Lorton and congressional
        hearings on future needs.

**000002**

H. R. 3355—201

# TITLE X—DRUNK DRIVING PROVISIONS

**SEC. 100001. SHORT TITLE.**

This title may be cited as the "Drunk Driving Child Protection Act of 1994".

**SEC. 100002. STATE LAWS APPLIED IN AREAS OF FEDERAL JURISDICTION.**

Section 13(b) of title 18, United States Code, is amended—
(1) by striking "For purposes" and inserting "(1) Subject to paragraph (2) and for purposes"; and
(2) by adding at the end the following new paragraph:
"(2)(A) In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State, territory, possession, or district, the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine of not more than $1,000, or both, if—
"(i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and
"(ii) the law of the State, territory, possession, or district in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).
"(B) For the purposes of subparagraph (A), the term 'minor' means a person less than 18 years of age.".

**SEC. 100003. DRIVING WHILE INTOXICATED PROSECUTION PROGRAM.**

Section 501(b) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3751) is amended—
(1) by striking "and" at the end of paragraph (20);
(2) by striking the period at the end of paragraph (21) and inserting "; and"; and
(3) by adding at the end the following new paragraph:
"(22) programs for the prosecution of driving while intoxicated charges and the enforcement of other laws relating to alcohol use and the operation of motor vehicles.".

# TITLE XI—FIREARMS

## Subtitle A—Assault Weapons

**SEC. 110101. SHORT TITLE.**

This subtitle may be cited as the "Public Safety and Recreational Firearms Use Protection Act".

**SEC. 110102. RESTRICTION ON MANUFACTURE, TRANSFER, AND POSSESSION OF CERTAIN SEMIAUTOMATIC ASSAULT WEAPONS.**

(a) RESTRICTION.—Section 922 of title 18, United States Code, is amended by adding at the end the following new subsection:
"(v)(1) It shall be unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon.

000003

H. R. 3355—202

"(2) Paragraph (1) shall not apply to the possession or transfer of any semiautomatic assault weapon otherwise lawfully possessed under Federal law on the date of the enactment of this subsection.

"(3) Paragraph (1) shall not apply to—

"(A) any of the firearms, or replicas or duplicates of the firearms, specified in Appendix A to this section, as such firearms were manufactured on October 1, 1993;

"(B) any firearm that—

"(i) is manually operated by bolt, pump, lever, or slide action;

"(ii) has been rendered permanently inoperable; or

"(iii) is an antique firearm;

"(C) any semiautomatic rifle that cannot accept a detachable magazine that holds more than 5 rounds of ammunition; or

"(D) any semiautomatic shotgun that cannot hold more than 5 rounds of ammunition in a fixed or detachable magazine.

The fact that a firearm is not listed in Appendix A shall not be construed to mean that paragraph (1) applies to such firearm. No firearm exempted by this subsection may be deleted from Appendix A so long as this subsection is in effect.

"(4) Paragraph (1) shall not apply to—

"(A) the manufacture for, transfer to, or possession by the United States or a department or agency of the United States or a State or a department, agency, or political subdivision of a State, or a transfer to or possession by a law enforcement officer employed by such an entity for purposes of law enforcement (whether on or off duty);

"(B) the transfer to a licensee under title I of the Atomic Energy Act of 1954 for purposes of establishing and maintaining an on-site physical protection system and security organization required by Federal law, or possession by an employee or contractor of such licensee on-site for such purposes or off-site for purposes of licensee-authorized training or transportation of nuclear materials;

"(C) the possession, by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving a firearm, of a semiautomatic assault weapon transferred to the individual by the agency upon such retirement; or

"(D) the manufacture, transfer, or possession of a semiautomatic assault weapon by a licensed manufacturer or licensed importer for the purposes of testing or experimentation authorized by the Secretary.".

(b) DEFINITION OF SEMIAUTOMATIC ASSAULT WEAPON.—Section 921(a) of title 18, United States Code, is amended by adding at the end the following new paragraph:

"(30) The term 'semiautomatic assault weapon' means—

"(A) any of the firearms, or copies or duplicates of the firearms in any caliber, known as—

"(i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all models);

"(ii) Action Arms Israeli Military Industries UZI and Galil;

"(iii) Beretta Ar70 (SC–70);

"(iv) Colt AR–15;

"(v) Fabrique National FN/FAL, FN/LAR, and FNC;

H. R. 3355—203

"(vi) SWD M–10, M–11, M–11/9, and M–12;
"(vii) Steyr AUG;
"(viii) INTRATEC TEC–9, TEC–DC9 and TEC–22; and
"(ix) revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12;
"(B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of—
"(i) a folding or telescoping stock;
"(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
"(iii) a bayonet mount;
"(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and
"(v) a grenade launcher;
"(C) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least 2 of—
"(i) an ammunition magazine that attaches to the pistol outside of the pistol grip;
"(ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;
"(iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
"(iv) a manufactured weight of 50 ounces or more when the pistol is unloaded; and
"(v) a semiautomatic version of an automatic firearm; and
"(D) a semiautomatic shotgun that has at least 2 of—
"(i) a folding or telescoping stock;
"(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
"(iii) a fixed magazine capacity in excess of 5 rounds; and
"(iv) an ability to accept a detachable magazine.".
(c) PENALTIES.—
(1) VIOLATION OF SECTION 922(V).—Section 924(a)(1)(B) of such title is amended by striking "or (q) of section 922" and inserting "(r), or (v) of section 922".
(2) USE OR POSSESSION DURING CRIME OF VIOLENCE OR DRUG TRAFFICKING CRIME.—Section 924(c)(1) of such title is amended in the first sentence by inserting ", or semiautomatic assault weapon," after "short-barreled shotgun,".
(d) IDENTIFICATION MARKINGS FOR SEMIAUTOMATIC ASSAULT WEAPONS.—Section 923(i) of such title is amended by adding at the end the following: "The serial number of any semiautomatic assault weapon manufactured after the date of the enactment of this sentence shall clearly show the date on which the weapon was manufactured.".

SEC. 110103. BAN OF LARGE CAPACITY AMMUNITION FEEDING DEVICES.

(a) PROHIBITION.—Section 922 of title 18, United States Code, as amended by section 110102(a), is amended by adding at the end the following new subsection:

H. R. 3355—204

"(w)(1) Except as provided in paragraph (2), it shall be unlawful for a person to transfer or possess a large capacity ammunition feeding device.

"(2) Paragraph (1) shall not apply to the possession or transfer of any large capacity ammunition feeding device otherwise lawfully possessed on or before the date of the enactment of this subsection.

"(3) This subsection shall not apply to—

"(A) the manufacture for, transfer to, or possession by the United States or a department or agency of the United States or a State or a department, agency, or political subdivision of a State, or a transfer to or possession by a law enforcement officer employed by such an entity for purposes of law enforcement (whether on or off duty);

"(B) the transfer to a licensee under title I of the Atomic Energy Act of 1954 for purposes of establishing and maintaining an on-site physical protection system and security organization required by Federal law, or possession by an employee or contractor of such licensee on-site for such purposes or off-site for purposes of licensee-authorized training or transportation of nuclear materials;

"(C) the possession, by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving ammunition, of a large capacity ammunition feeding device transferred to the individual by the agency upon such retirement; or

"(D) the manufacture, transfer, or possession of any large capacity ammunition feeding device by a licensed manufacturer or licensed importer for the purposes of testing or experimentation authorized by the Secretary.".

"(4) If a person charged with violating paragraph (1) asserts that paragraph (1) does not apply to such person because of paragraph (2) or (3), the Government shall have the burden of proof to show that such paragraph (1) applies to such person. The lack of a serial number as described in section 923(i) of title 18, United States Code, shall be a presumption that the large capacity ammunition feeding device is not subject to the prohibition of possession in paragraph (1).".

(b) DEFINITION OF LARGE CAPACITY AMMUNITION FEEDING DEVICE.—Section 921(a) of title 18, United States Code, as amended by section 110102(b), is amended by adding at the end the following new paragraph:

"(31) The term 'large capacity ammunition feeding device'—

"(A) means a magazine, belt, drum, feed strip, or similar device manufactured after the date of enactment of the Violent Crime Control and Law Enforcement Act of 1994 that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition; but

"(B) does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.".

(c) PENALTY.—Section 924(a)(1)(B) of title 18, United States Code, as amended by section 110102(c)(1), is amended by striking "or (v)" and inserting "(v), or (w)".

(d) IDENTIFICATION MARKINGS FOR LARGE CAPACITY AMMUNITION FEEDING DEVICES.—Section 923(i) of title 18, United States Code, as amended by section 110102(d) of this Act, is amended by adding at the end the following: "A large capacity ammunition

H. R. 3355—205

feeding device manufactured after the date of the enactment of this sentence shall be identified by a serial number that clearly shows that the device was manufactured or imported after the effective date of this subsection, and such other identification as the Secretary may by regulation prescribe.".

**SEC. 110104. STUDY BY ATTORNEY GENERAL.**

(a) STUDY.—The Attorney General shall investigate and study the effect of this subtitle and the amendments made by this subtitle, and in particular shall determine their impact, if any, on violent and drug trafficking crime. The study shall be conducted over a period of 18 months, commencing 12 months after the date of enactment of this Act.

(b) REPORT.—Not later than 30 months after the date of enactment of this Act, the Attorney General shall prepare and submit to the Congress a report setting forth in detail the findings and determinations made in the study under subsection (a).

**SEC. 110105. EFFECTIVE DATE.**

This subtitle and the amendments made by this subtitle—
(1) shall take effect on the date of the enactment of this Act; and
(2) are repealed effective as of the date that is 10 years after that date.

**SEC. 110106. APPENDIX A TO SECTION 922 OF TITLE 18.**

Section 922 of title 18, United States Code, is amended by adding at the end the following appendix:

"**APPENDIX A**

**Centerfire Rifles—Autoloaders**

Browning BAR Mark II Safari Semi-Auto Rifle
Browning BAR Mark II Safari Magnum Rifle
Browning High-Power Rifle
Heckler & Koch Model 300 Rifle
Iver Johnson M–1 Carbine
Iver Johnson 50th Anniversary M–1 Carbine
Marlin Model 9 Camp Carbine
Marlin Model 45 Carbine
Remington Nylon 66 Auto-Loading Rifle
Remington Model 7400 Auto Rifle
Remington Model 7400 Rifle
Remington Model 7400 Special Purpose Auto Rifle
Ruger Mini-14 Autoloading Rifle (w/o folding stock)
Ruger Mini Thirty Rifle

**Centerfire Rifles—Lever & Slide**

Browning Model 81 BLR Lever-Action Rifle
Browning Model 81 Long Action BLR
Browning Model 1886 Lever-Action Carbine
Browning Model 1886 High Grade Carbine
Cimarron 1860 Henry Replica
Cimarron 1866 Winchester Replicas
Cimarron 1873 Short Rifle
Cimarron 1873 Sporting Rifle
Cimarron 1873 30″ Express Rifle
Dixie Engraved 1873 Rifle
E.M.F. 1866 Yellowboy Lever Actions
E.M.F. 1860 Henry Rifle
E.M.F. Model 73 Lever-Action Rifle
Marlin Model 336CS Lever-Action Carbine
Marlin Model 30AS Lever-Action Carbine
Marlin Model 444SS Lever-Action Sporter
Marlin Model 1894S Lever-Action Carbine

H. R. 3355—206

Marlin Model 1894CS Carbine
Marlin Model 1894CL Classic
Marlin Model 1895SS Lever-Action Rifle
Mitchell 1858 Henry Replica
Mitchell 1866 Winchester Replica
Mitchell 1873 Winchester Replica
Navy Arms Military Henry Rifle
Navy Arms Henry Trapper
Navy Arms Iron Frame Henry
Navy Arms Henry Carbine
Navy Arms 1866 Yellowboy Rifle
Navy Arms 1873 Winchester-Style Rifle
Navy Arms 1873 Sporting Rifle
Remington 7600 Slide Action
Remington Model 7600 Special Purpose Slide Action
Rossi M92 SRC Saddle-Ring Carbine
Rossi M92 SRS Short Carbine
Savage 99C Lever-Action Rifle
Uberti Henry Rifle
Uberti 1866 Sporting Rilfe
Uberti 1873 Sporting Rifle
Winchester Model 94 Side Eject Lever-Action Rifle
Winchester Model 94 Trapper Side Eject
Winchester Model 94 Big Bore Side Eject
Winchester Model 94 Ranger Side Eject Lever-Action Rifle
Winchester Model 94 Wrangler Side Eject

**Centerfire Rifles—Bolt Action**

Alpine Bolt-Action Rifle
A-Square Caesar Bolt-Action Rifle
A-Square Hannibal Bolt-Action Rifle
Anschutz 1700D Classic Rifles
Anschutz 1700D Custom Rifles
Anschutz 1700D Bavarian Bolt-Action Rifle
Anschutz 1733D Mannlicher Rifle
Barret Model 90 Bolt-Action Rifle
Beeman/HW 60J Bolt-Action Rifle
Blaser R84 Sporter Bolt-Action Rifle
BRNO 537 Sporter Bolt-Action Rifle
BRNO ZKB 527 Fox Bolt-Action Rifle
BRNO ZKK 600, 601, 602 Bolt-Action Rifles
Browning A-Bolt Rifle
Browning A-Bolt Stainless Stalker
Browning A-Bolt Left Hand
Browning A-Bolt Short Action
Browning Euro-Bolt Rifle
Browning A-Bolt Gold Medallion
Browning A-Bolt Micro Medallion
Century Centurion 14 Sporter
Century Enfield Sporter #4
Century Swedish Sporter #38
Century Mauser 98 Sporter
Cooper Model 38 Centerfire Sporter
Dakota 22 Sporter Bolt-Action Rifle
Dakota 76 Classic Bolt-Action Rifle
Dakota 76 Short Action Rifles
Dakota 76 Safari Bolt-Action Rifle
Dakota 416 Rigby African
E.A.A./Sabatti Rover 870 Bolt-Action Rifle
Auguste Francotte Bolt-Action Rifles
Carl Gustaf 2000 Bolt-Action Rifle
Heym Magnum Express Series Rifle
Howa Lightning Bolt-Action Rifle
Howa Realtree Camo Rifle
Interarms Mark X Viscount Bolt-Action Rifle
Interarms Mini-Mark X Rifle
Interarms Mark X Whitworth Bolt-Action Rifle
Interarms Whitworth Express Rifle
Iver Johnson Model 5100A1 Long-Range Rifle
KDF K15 American Bolt-Action Rifle
Krico Model 600 Bolt-Action Rifle

Krico Model 700 Bolt-Action Rifles
Mauser Model 66 Bolt-Action Rifle
Mauser Model 99 Bolt-Action Rifle
McMillan Signature Classic Sporter
McMillan Signature Super Varminter
McMillan Signature Alaskan
McMillan Signature Titanium Mountain Rifle
McMillan Classic Stainless Sporter
McMillan Talon Safari Rifle
McMillan Talon Sporter Rifle
Midland 1500S Survivor Rifle
Navy Arms TU–33/40 Carbine
Parker-Hale Model 81 Classic Rifle
Parker-Hale Model 81 Classic African Rifle
Parker-Hale Model 1000 Rifle
Parker-Hale Model 1100M African Magnum
Parker-Hale Model 1100 Lightweight Rifle
Parker-Hale Model 1200 Super Rifle
Parker-Hale Model 1200 Super Clip Rifle
Parker-Hale Model 1300C Scout Rifle
Parker-Hale Model 2100 Midland Rifle
Parker-Hale Model 2700 Lightweight Rifle
Parker-Hale Model 2800 Midland Rifle
Remington Model Seven Bolt-Action Rifle
Remington Model Seven Youth Rifle
Remington Model Seven Custom KS
Remington Model Seven Custom MS Rifle
Remington 700 ADL Bolt-Action Rifle
Remington 700 BDL Bolt-Action Rifle
Remington 700 BDL Varmint Special
Remington 700 BDL European Bolt-Action Rifle
Remington 700 Varmint Synthetic Rifle
Remington 700 BDL SS Rifle
Remington 700 Stainless Synthetic Rifle
Remington 700 MTRSS Rifle
Remington 700 BDL Left Hand
Remington 700 Camo Synthetic Rifle
Remington 700 Safari
Remington 700 Mountain Rifle
Remington 700 Custom KS Mountain Rifle
Remington 700 Classic Rifle
Ruger M77 Mark II Rifle
Ruger M77 Mark II Magnum Rifle
Ruger M77RL Ultra Light
Ruger M77 Mark II All-Weather Stainless Rifle
Ruger M77 RSI International Carbine
Ruger M77 Mark II Express Rifle
Ruger M77VT Target Rifle
Sako Hunter Rifle
Sako Fiberclass Sporter
Sako Safari Grade Bolt Action
Sako Hunter Left-Hand Rifle
Sako Classic Bolt Action
Sako Hunter LS Rifle
Sako Deluxe Lightweight
Sako Super Deluxe Sporter
Sako Mannlicher-Style Carbine
Sako Varmint Heavy Barrel
Sako TRG–S Bolt-Action Rifle
Sauer 90 Bolt-Action Rifle
Savage 110G Bolt-Action Rifle
Savage 110CY Youth/Ladies Rifle
Savage 110WLE One of One Thousand Limited Edition Rifle
Savage 110GXP3 Bolt-Action Rifle
Savage 110F Bolt-Action Rifle
Savage 110FXP3 Bolt-Action Rifle
Savage 110GV Varmint Rifle
Savage 112FV Varmint Rifle
Savage Model 112FVS Varmint Rifle
Savage Model 112BV Heavy Barrel Varmint Rifle
Savage 116FSS Bolt-Action Rifle
Savage Model 116FSK Kodiak Rifle

H. R. 3355—208

Savage 110FP Police Rifle
Steyr-Mannlicher Sporter Models SL, L, M, S, S/T
Steyr-Mannlicher Luxus Model L, M, S
Steyr-Mannlicher Model M Professional Rifle
Tikka Bolt-Action Rifle
Tikka Premium Grade Rifles
Tikka Varmint/Continental Rifle
Tikka Whitetail/Battue Rifle
Ultra Light Arms Model 20 Rifle
Ultra Light Arms Model 28, Model 40 Rifles
Voere VEC 91 Lightning Bolt-Action Rifle
Voere Model 2165 Bolt-Action Rifle
Voere Model 2155, 2150 Bolt-Action Rifles
Weatherby Mark V Deluxe Bolt-Action Rifle
Weatherby Lasermark V Rifle
Weatherby Mark V Crown Custom Rifles
Weatherby Mark V Sporter Rifle
Weatherby Mark V Safari Grade Custom Rifles
Weatherby Weathermark Rifle
Weatherby Weathermark Alaskan Rifle
Weatherby Classicmark No. 1 Rifle
Weatherby Weatherguard Alaskan Rifle
Weatherby Vanguard VGX Deluxe Rifle
Weatherby Vanguard Classic Rifle
Weatherby Vanguard Classic No. 1 Rifle
Weatherby Vanguard Weatherguard Rifle
Wichita Classic Rifle
Wichita Varmint Rifle
Winchester Model 70 Sporter
Winchester Model 70 Sporter WinTuff
Winchester Model 70 SM Sporter
Winchester Model 70 Stainless Rifle
Winchester Model 70 Varmint
Winchester Model 70 Synthetic Heavy Varmint Rifle
Winchester Model 70 DBM Rifle
Winchester Model 70 DBM–S Rifle
Winchester Model 70 Featherweight
Winchester Model 70 Featherweight WinTuff
Winchester Model 70 Featherweight Classic
Winchester Model 70 Lightweight Rifle
Winchester Ranger Rifle
Winchester Model 70 Super Express Magnum
Winchester Model 70 Super Grade
Winchester Model 70 Custom Sharpshooter
Winchester Model 70 Custom Sporting Sharpshooter Rifle

### Centerfire Rifles—Single Shot

Armsport 1866 Sharps Rifle, Carbine
Brown Model One Single Shot Rifle
Browning Model 1885 Single Shot Rifle
Dakota Single Shot Rifle
Desert Industries G–90 Single Shot Rifle
Harrington & Richardson Ultra Varmint Rifle
Model 1885 High Wall Rifle
Navy Arms Rolling Block Buffalo Rifle
Navy Arms #2 Creedmoor Rifle
Navy Arms Sharps Cavalry Carbine
Navy Arms Sharps Plains Rifle
New England Firearms Handi-Rifle
Red Willow Armory Ballard No. 5 Pacific
Red Willow Armory Ballard No. 1.5 Hunting Rifle
Red Willow Armory Ballard No. 8 Union Hill Rifle
Red Willow Armory Ballard No. 4.5 Target Rifle
Remington-Style Rolling Block Carbine
Ruger No. 1B Single Shot
Ruger No. 1A Light Sporter
Ruger No. 1H Tropical Rifle
Ruger No. 1S Medium Sporter
Ruger No. 1 RSI International
Ruger No. 1V Special Varminter
C. Sharps Arms New Model 1874 Old Reliable

000010

H. R. 3355—209

C. Sharps Arms New Model 1875 Rifle
C. Sharps Arms 1875 Classic Sharps
C. Sharps Arms New Model 1875 Target & Long Range
Shiloh Sharps 1874 Long Range Express
Shiloh Sharps 1874 Montana Roughrider
Shiloh Sharps 1874 Military Carbine
Shiloh Sharps 1874 Business Rifle
Shiloh Sharps 1874 Military Rifle
Sharps 1874 Old Reliable
Thompson/Center Contender Carbine
Thompson/Center Stainless Contender Carbine
Thompson/Center Contender Carbine Survival System
Thompson/Center Contender Carbine Youth Model
Thompson/Center TCR '87 Single Shot Rifle
Uberti Rolling Block Baby Carbine

### Drillings, Combination Guns, Double Rifles

Beretta Express SSO O/U Double Rifles
Beretta Model 455 SxS Express Rifle
Chapuis RGExpress Double Rifle
Auguste Francotte Sidelock Double Rifles
Auguste Francotte Boxlock Double Rifle
Heym Model 55B O/U Double Rifle
Heym Model 55FW O/U Combo Gun
Heym Model 88b Side-by-Side Double Rifle
Kodiak Mk. IV Double Rifle
Kreighoff Teck O/U Combination Gun
Kreighoff Trumpf Drilling
Merkel Over/Under Combination Guns
Merkel Drillings
Merkel Model 160 Side-by-Side Double Rifles
Merkel Over/Under Double Rifles
Savage 24F O/U Combination Gun
Savage 24F–12T Turkey Gun
Springfield Inc. M6 Scout Rifle/Shotgun
Tikka Model 412s Combination Gun
Tikka Model 412S Double Fire
A. Zoli Rifle-Shotgun O/U Combo

### Rimfire Rifles—Autoloaders

AMT Lightning 25/22 Rifle
AMT Lightning Small-Game Hunting Rifle II
AMT Magnum Hunter Auto Rifle
Anschutz 525 Deluxe Auto
Armscor Model 20P Auto Rifle
Browning Auto-22 Rifle
Browning Auto-22 Grade VI
Krico Model 260 Auto Rifle
Lakefield Arms Model 64B Auto Rifle
Marlin Model 60 Self-Loading Rifle
Marlin Model 60ss Self-Loading Rifle
Marlin Model 70 HC Auto
Marlin Model 990l Self-Loading Rifle
Marlin Model 70P Papoose
Marlin Model 922 Magnum Self-Loading Rifle
Marlin Model 995 Self-Loading Rifle
Norinco Model 22 ATD Rifle
Remington Model 522 Viper Autoloading Rifle
Remington 552BDL Speedmaster Rifle
Ruger 10/22 Autoloading Carbine (w/o folding stock)
Survival Arms AR–7 Explorer Rifle
Texas Remington Revolving Carbine
Voere Model 2115 Auto Rifle

### Rimfire Rifles—Lever & Slide Action

Browning BL–22 Lever-Action Rifle
Marlin 39TDS Carbine
Marlin Model 39AS Golden Lever-Action Rifle
Remington 572BDL Fieldmaster Pump Rifle
Norinco EM–321 Pump Rifle
Rossi Model 62 SA Pump Rifle

H. R. 3355—210

Rossi Model 62 SAC Carbine
Winchester Model 9422 Lever-Action Rifle
Winchester Model 9422 Magnum Lever-Action Rifle

### Rimfire Rifles—Bolt Actions & Single Shots

Anschutz Achiever Bolt-Action Rifle
Anschutz 1416D/1516D Classic Rifles
Anschutz 1418D/1518D Mannlicher Rifles
Anschutz 1700D Classic Rifles
Anschutz 1700D Custom Rifles
Anschutz 1700 FWT Bolt-Action Rifle
Anschutz 1700D Graphite Custom Rifle
Anschutz 1700D Bavarian Bolt-Action Rifle
Armscor Model 14P Bolt-Action Rifle
Armscor Model 1500 Rifle
BRNO ZKM–452 Deluxe Bolt-Action Rifle
BRNO ZKM 452 Deluxe
Beeman/HW 60–J–ST Bolt-Action Rifle
Browning A-Bolt 22 Bolt-Action Rifle
Browning A-Bolt Gold Medallion
Cabanas Phaser Rifle
Cabanas Master Bolt-Action Rifle
Cabanas Espronceda IV Bolt-Action Rifle
Cabanas Leyre Bolt-Action Rifle
Chipmunk Single Shot Rifle
Cooper Arms Model 36S Sporter Rifle
Dakota 22 Sporter Bolt-Action Rifle
Krico Model 300 Bolt-Action Rifles
Lakefield Arms Mark II Bolt-Action Rifle
Lakefield Arms Mark I Bolt-Action Rifle
Magtech Model MT–22C Bolt-Action Rifle
Marlin Model 880 Bolt-Action Rifle
Marlin Model 881 Bolt-Action Rifle
Marlin Model 882 Bolt-Action Rifle
Marlin Model 883 Bolt-Action Rifle
Marlin Model 883SS Bolt-Action Rifle
Marlin Model 25MN Bolt-Action Rifle
Marlin Model 25N Bolt-Action Repeater
Marlin Model 15YN "Little Buckaroo"
Mauser Model 107 Bolt-Action Rifle
Mauser Model 201 Bolt-Action Rifle
Navy Arms TU–KKW Training Rifle
Navy Arms TU–33/40 Carbine
Navy Arms TU–KKW Sniper Trainer
Norinco JW–27 Bolt-Action Rifle
Norinco JW–15 Bolt-Action Rifle
Remington 541–T
Remington 40–XR Rimfire Custom Sporter
Remington 541–T HB Bolt-Action Rifle
Remington 581–S Sportsman Rifle
Ruger 77/22 Rimfire Bolt-Action Rifle
Ruger K77/22 Varmint Rifle
Ultra Light Arms Model 20 RF Bolt-Action Rifle
Winchester Model 52B Sporting Rifle

### Competition Rifles—Centerfire & Rimfire

Anschutz 64–MS Left Silhouette
Anschutz 1808D RT Super Match 54 Target
Anschutz 1827B Biathlon Rifle
Anschutz 1903D Match Rifle
Anschutz 1803D Intermediate Match
Anschutz 1911 Match Rifle
Anschutz 54.18MS REP Deluxe Silhouette Rifle
Anschutz 1913 Super Match Rifle
Anschutz 1907 Match Rifle
Anschutz 1910 Super Match II
Anschutz 54.18MS Silhouette Rifle
Anschutz Super Match 54 Target Model 2013
Anschutz Super Match 54 Target Model 2007
Beeman/Feinwerkbau 2600 Target Rifle
Cooper Arms Model TRP–1 ISU Standard Rifle

H. R. 3355—211

E.A.A./Weihrauch HW 60 Target Rifle
E.A.A./HW 660 Match Rifle
Finnish Lion Standard Target Rifle
Krico Model 360 S2 Biathlon Rifle
Krico Model 400 Match Rifle
Krico Model 360S Biathlon Rifle
Krico Model 500 Kricotronic Match Rifle
Krico Model 600 Sniper Rifle
Krico Model 600 Match Rifle
Lakefield Arms Model 90B Target Rifle
Lakefield Arms Model 91T Target Rifle
Lakefield Arms Model 92S Silhouette Rifle
Marlin Model 2000 Target Rifle
Mauser Model 86–SR Specialty Rifle
McMillan M–86 Sniper Rifle
McMillan Combo M–87/M–88 50-Caliber Rifle
McMillan 300 Phoenix Long Range Rifle
McMillan M–89 Sniper Rifle
McMillan National Match Rifle
McMillan Long Range Rifle
Parker-Hale M–87 Target Rifle
Parker-Hale M–85 Sniper Rifle
Remington 40–XB Rangemaster Target Centerfire
Remington 40–XR KS Rimfire Position Rifle
Remington 40–XBBR KS
Remington 40–XC KS National Match Course Rifle
Sako TRG–21 Bolt-Action Rifle
Steyr-Mannlicher Match SPG–UIT Rifle
Steyr-Mannlicher SSG P–I Rifle
Steyr-Mannlicher SSG P–III Rifle
Steyr-Mannlicher SSG P–IV Rifle
Tanner Standard UIT Rifle
Tanner 50 Meter Free Rifle
Tanner 300 Meter Free Rifle
Wichita Silhouette Rifle

### Shotguns—Autoloaders

American Arms/Franchi Black Magic 48/AL
Benelli Super Black Eagle Shotgun
Benelli Super Black Eagle Slug Gun
Benelli M1 Super 90 Field Auto Shotgun
Benelli Montefeltro Super 90 20-Gauge Shotgun
Benelli Montefeltro Super 90 Shotgun
Benelli M1 Sporting Special Auto Shotgun
Benelli Black Eagle Competition Auto Shotgun
Beretta A–303 Auto Shotgun
Beretta 390 Field Auto Shotgun
Beretta 390 Super Trap, Super Skeet Shotguns
Beretta Vittoria Auto Shotgun
Beretta Model 1201F Auto Shotgun
Browning BSA 10 Auto Shotgun
Browning BSA 10 Stalker Auto Shotgun
Browning A–500R Auto Shotgun
Browning A–500G Auto Shotgun
Browning A–500G Sporting Clays
Browning Auto-5 Light 12 and 20
Browning Auto-5 Stalker
Browning Auto-5 Magnum 20
Browning Auto-5 Magnum 12
Churchill Turkey Automatic Shotgun
Cosmi Automatic Shotgun
Maverick Model 60 Auto Shotgun
Mossberg Model 5500 Shotgun
Mossberg Model 9200 Regal Semi-Auto Shotgun
Mossberg Model 9200 USST Auto Shotgun
Mossberg Model 9200 Camo Shotgun
Mossberg Model 6000 Auto Shotgun
Remington Model 1100 Shotgun
Remington 11–87 Premier Shotgun
Remington 11–87 Sporting Clays
Remington 11–87 Premier Skeet

H. R. 3355—212

Remington 11–87 Premier Trap
Remington 11–87 Special Purpose Magnum
Remington 11–87 SPS–T Camo Auto Shotgun
Remington 11–87 Special Purpose Deer Gun
Remington 11–87 SPS–BG-Camo Deer/Turkey Shotgun
Remington 11–87 SPS-Deer Shotgun
Remington 11–87 Special Purpose Synthetic Camo
Remington SP–10 Magnum-Camo Auto Shotgun
Remington SP–10 Magnum Auto Shotgun
Remington SP–10 Magnum Turkey Combo
Remington 1100 LT–20 Auto
Remington 1100 Special Field
Remington 1100 20-Gauge Deer Gun
Remington 1100 LT–20 Tournament Skeet
Winchester Model 1400 Semi-Auto Shotgun

**Shotguns—Slide Actions**

Browning Model 42 Pump Shotgun
Browning BPS Pump Shotgun
Browning BPS Stalker Pump Shotgun
Browning BPS Pigeon Grade Pump Shotgun
Browning BPS Pump Shotgun (Ladies and Youth Model)
Browning BPS Game Gun Turkey Special
Browning BPS Game Gun Deer Special
Ithaca Model 87 Supreme Pump Shotgun
Ithaca Model 87 Deerslayer Shotgun
Ithaca Deerslayer II Rifled Shotgun
Ithaca Model 87 Turkey Gun
Ithaca Model 87 Deluxe Pump Shotgun
Magtech Model 586–VR Pump Shotgun
Maverick Models 88, 91 Pump Shotguns
Mossberg Model 500 Sporting Pump
Mossberg Model 500 Camo Pump
Mossberg Model 500 Muzzleloader Combo
Mossberg Model 500 Trophy Slugster
Mossberg Turkey Model 500 Pump
Mossberg Model 500 Bantam Pump
Mossberg Field Grade Model 835 Pump Shotgun
Mossberg Model 835 Regal Ulti-Mag Pump
Remington 870 Wingmaster
Remington 870 Special Purpose Deer Gun
Remington 870 SPS–BG-Camo Deer/Turkey Shotgun
Remington 870 SPS-Deer Shotgun
Remington 870 Marine Magnum
Remington 870 TC Trap
Remington 870 Special Purpose Synthetic Camo
Remington 870 Wingmaster Small Gauges
Remington 870 Express Rifle Sighted Deer Gun
Remington 879 SPS Special Purpose Magnum
Remington 870 SPS–T Camo Pump Shotgun
Remington 870 Special Field
Remington 870 Express Turkey
Remington 870 High Grades
Remington 870 Express
Remington Model 870 Express Youth Gun
Winchester Model 12 Pump Shotgun
Winchester Model 42 High Grade Shotgun
Winchester Model 1300 Walnut Pump
Winchester Model 1300 Slug Hunter Deer Gun
Winchester Model 1300 Ranger Pump Gun Combo & Deer Gun
Winchester Model 1300 Turkey Gun
Winchester Model 1300 Ranger Pump Gun

**Shotguns—Over/Unders**

American Arms/Franchi Falconet 2000 O/U
American Arms Silver I O/U
American Arms Silver II Shotgun
American Arms Silver Skeet O/U
American Arms/Franchi Sporting 2000 O/U
American Arms Silver Sporting O/U
American Arms Silver Trap O/U

H. R. 3355—213

American Arms WS/OU 12, TS/OU 12 Shotguns
American Arms WT/OU 10 Shotgun
Armsport 2700 O/U Goose Gun
Armsport 2700 Series O/U
Armsport 2900 Tri-Barrel Shotgun
Baby Bretton Over/Under Shotgun
Beretta Model 686 Ultralight O/U
Beretta ASE 90 Competition O/U Shotgun
Beretta Over/Under Field Shotguns
Beretta Onyx Hunter Sport O/U Shotgun
Beretta Model SO5, SO6, SO9 Shotguns
Beretta Sporting Clay Shotguns
Beretta 687EL Sporting O/U
Beretta 682 Super Sporting O/U
Beretta Series 682 Competition Over/Unders
Browning Citori O/U Shotgun
Browning Superlight Citori Over/Under
Browning Lightning Sporting Clays
Browning Micro Citori Lightning
Browning Citori Plus Trap Combo
Browning Citori Plus Trap Gun
Browning Citori O/U Skeet Models
Browning Citori O/U Trap Models
Browning Special Sporting Clays
Browning Citori GTI Sporting Clays
Browning 325 Sporting Clays
Centurion Over/Under Shotgun
Chapuis Over/Under Shotgun
Connecticut Valley Classics Classic Sporter O/U
Connecticut Valley Classics Classic Field Waterfowler
Charles Daly Field Grade O/U
Charles Daly Lux Over/Under
E.A.A./Sabatti Sporting Clays Pro-Gold O/U
E.A.A/Sabatti Falcon-Mon Over/Under
Kassnar Grade I O/U Shotgun
Krieghoff K–80 Sporting Clays O/U
Krieghoff K–80 Skeet Shotgun
Krieghoff K–80 International Skeet
Krieghoff K–80 Four-Barrel Skeet Set
Krieghoff K–80/RT Shotguns
Krieghoff K–80 O/U Trap Shotgun
Laurona Silhouette 300 Sporting Clays
Laurona Silhouette 300 Trap
Laurona Super Model Over/Unders
Ljutic LM–6 Deluxe O/U Shotgun
Marocchi Conquista Over/Under Shotgun
Marocchi Avanza O/U Shotgun
Merkel Model 200E O/U Shotgun
Merkel Model 200E Skeet, Trap Over/Unders
Merkel Model 203E, 303E Over/Under Shotguns
Perazzi Mirage Special Sporting O/U
Perazzi Mirage Special Four-Gauge Skeet
Perazzi Sporting Classic O/U
Perazzi MX7 Over/Under Shotguns
Perazzi Mirage Special Skeet Over/Under
Perazzi MX8/MX8 Special Trap, Skeet
Perazzi MX8/20 Over/Under Shotgun
Perazzi MX9 Single Over/Under Shotguns
Perazzi MX12 Hunting Over/Under
Perazzi MX28, MX410 Game O/U Shotguns
Perazzi MX20 Hunting Over/Under
Piotti Boss Over/Under Shotgun
Remington Peerless Over/Under Shotgun
Ruger Red Label O/U Shotgun
Ruger Sporting Clays O/U Shotgun
San Marco 12-Ga. Wildflower Shotgun
San Marco Field Special O/U Shotgun
San Marco 10-Ga. O/U Shotgun
SKB Model 505 Deluxe Over/Under Shotgun
SKB Model 685 Over/Under Shotgun
SKB Model 885 Over/Under Trap, Skeet, Sporting Clays
Stoeger/IGA Condor I O/U Shotgun

H. R. 3355—214

Stoeger/IGA ERA 2000 Over/Under Shotgun
Techni-Mec Model 610 Over/Under
Tikka Model 412S Field Grade Over/Under
Weatherby Athena Grade IV O/U Shotguns
Weatherby Athena Grade V Classic Field O/U
Weatherby Orion O/U Shotguns
Weatherby II, III Classic Field O/Us
Weatherby Orion II Classic Sporting Clays O/U
Weatherby Orion II Sporting Clays O/U
Winchester Model 1001 O/U Shotgun
Winchester Model 1001 Sporting Clays O/U
Pietro Zanoletti Model 2000 Field O/U

**Shotguns—Side by Sides**

American Arms Brittany Shotgun
American Arms Gentry Double Shotgun
American Arms Derby Side-by-Side
American Arms Grulla #2 Double Shotgun
American Arms WS/SS 10
American Arms TS/SS 10 Double Shotgun
American Arms TS/SS 12 Side-by-Side
Arrieta Sidelock Double Shotguns
Armsport 1050 Series Double Shotguns
Arizaga Model 31 Double Shotgun
AYA Boxlock Shotguns
AYA Sidelock Double Shotguns
Beretta Model 452 Sidelock Shotgun
Beretta Side-by-Side Field Shotguns
Crucelegui Hermanos Model 150 Double
Chapuis Side-by-Side Shotgun
E.A.A./Sabatti Saba-Mon Double Shotgun
Charles Daly Model Dss Double
Ferlib Model F VII Double Shotgun
Auguste Francotte Boxlock Shotgun
Auguste Francotte Sidelock Shotgun
Garbi Model 100 Double
Garbi Model 101 Side-by-Side
Garbi Model 103A, B Side-by-Side
Garbi Model 200 Side-by-Side
Bill Hanus Birdgun Doubles
Hatfield Uplander Shotgun
Merkel Model 8, 47E Side-by-Side Shotguns
Merkel Model 47LSC Sporting Clays Double
Merkel Model 47S, 147S Side-by-Sides
Parker Reproductions Side-by-Side
Piotti King No. 1 Side-by-Side
Piotti Lunik Side-by-Side
Piotti King Extra Side-by-Side
Piotti Piuma Side-by-Side
Precision Sports Model 600 Series Doubles
Rizzini Boxlock Side-by-Side
Rizzini Sidelock Side-by-Side
Stoeger/IGA Uplander Side-by-Side Shotgun
Ugartechea 10-Ga. Magnum Shotgun

**Shotguns—Bolt Actions & Single Shots**

Armsport Single Barrel Shotgun
Browning BT–99 Competition Trap Special
Browning BT–99 Plus Trap Gun
Browning BT–99 Plus Micro
Browning Recoilless Trap Shotgun
Browning Micro Recoilless Trap Shotgun
Desert Industries Big Twenty Shotgun
Harrington & Richardson Topper Model 098
Harrington & Richardson Topper Classic Youth Shotgun
Harrington & Richardson N.W.T.F. Turkey Mag
Harrington & Richardson Topper Deluxe Model 098
Krieghoff KS–5 Trap Gun
Krieghoff KS–5 Special
Krieghoff K–80 Single Barrel Trap Gun
Ljutic Mono Gun Single Barrel

**000016**

H. R. 3355—215

Ljutic LTX Super Deluxe Mono Gun
Ljutic Recoiless Space Gun Shotgun
Marlin Model 55 Goose Gun Bolt Action
New England Firearms Turkey and Goose Gun
New England Firearms N.W.T.F. Shotgun
New England Firearms Tracker Slug Gun
New England Firearms Standard Pardner
New England Firearms Survival Gun
Perazzi TM1 Special Single Trap
Remington 90–T Super Single Shotgun
Snake Charmer II Shotgun
Stoeger/IGA Reuna Single Barrel Shotgun
Thompson/Center TCR '87 Hunter Shotgun.".

# Subtitle B—Youth Handgun Safety

### SEC. 110201. PROHIBITION OF THE POSSESSION OF A HANDGUN OR AMMUNITION BY, OR THE PRIVATE TRANSFER OF A HANDGUN OR AMMUNITION TO, A JUVENILE.

(a) OFFENSE.—Section 922 of title 18, United States Code, as amended by section 110103(a), is amended by adding at the end the following new subsection:

"(x)(1) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—

"(A) a handgun; or

"(B) ammunition that is suitable for use only in a handgun.

"(2) It shall be unlawful for any person who is a juvenile to knowingly possess—

"(A) a handgun; or

"(B) ammunition that is suitable for use only in a handgun.

"(3) This subsection does not apply to—

"(A) a temporary transfer of a handgun or ammunition to a juvenile or to the possession or use of a handgun or ammunition by a juvenile if the handgun and ammunition are possessed and used by the juvenile—

"(i) in the course of employment, in the course of ranching or farming related to activities at the residence of the juvenile (or on property used for ranching or farming at which the juvenile, with the permission of the property owner or lessee, is performing activities related to the operation of the farm or ranch), target practice, hunting, or a course of instruction in the safe and lawful use of a handgun;

"(ii) with the prior written consent of the juvenile's parent or guardian who is not prohibited by Federal, State, or local law from possessing a firearm, except—

"(I) during transportation by the juvenile of an unloaded handgun in a locked container directly from the place of transfer to a place at which an activity described in clause (i) is to take place and transportation by the juvenile of that handgun, unloaded and in a locked container, directly from the place at which such an activity took place to the transferor; or

"(II) with respect to ranching or farming activities as described in clause (i), a juvenile may possess and use a handgun or ammunition with the prior written approval of the juvenile's parent or legal guardian and at the direction of an adult who is not prohibited

000017

by Federal, State or local law from possessing a firearm;

"(iii) the juvenile has the prior written consent in the juvenile's possession at all times when a handgun is in the possession of the juvenile; and

"(iv) in accordance with State and local law;

"(B) a juvenile who is a member of the Armed Forces of the United States or the National Guard who possesses or is armed with a handgun in the line of duty;

"(C) a transfer by inheritance of title (but not possession) of a handgun or ammunition to a juvenile; or

"(D) the possession of a handgun or ammunition by a juvenile taken in defense of the juvenile or other persons against an intruder into the residence of the juvenile or a residence in which the juvenile is an invited guest.

"(4) A handgun or ammunition, the possession of which is transferred to a juvenile in circumstances in which the transferor is not in violation of this subsection shall not be subject to permanent confiscation by the Government if its possession by the juvenile subsequently becomes unlawful because of the conduct of the juvenile, but shall be returned to the lawful owner when such handgun or ammunition is no longer required by the Government for the purposes of investigation or prosecution.

"(5) For purposes of this subsection, the term 'juvenile' means a person who is less than 18 years of age.

"(6)(A) In a prosecution of a violation of this subsection, the court shall require the presence of a juvenile defendant's parent or legal guardian at all proceedings.

"(B) The court may use the contempt power to enforce subparagraph (A).

"(C) The court may excuse attendance of a parent or legal guardian of a juvenile defendant at a proceeding in a prosecution of a violation of this subsection for good cause shown.".

(b) PENALTIES.—Section 924(a) of title 18, United States Code, is amended—

(1) in paragraph (1) by striking "paragraph (2) or (3) of"; and

(2) by adding at the end the following new paragraph:

"(5)(A)(i) A juvenile who violates section 922(x) shall be fined under this title, imprisoned not more than 1 year, or both, except that a juvenile described in clause (ii) shall be sentenced to probation on appropriate conditions and shall not be incarcerated unless the juvenile fails to comply with a condition of probation.

"(ii) A juvenile is described in this clause if—

"(I) the offense of which the juvenile is charged is possession of a handgun or ammunition in violation of section 922(x)(2); and

"(II) the juvenile has not been convicted in any court of an offense (including an offense under section 922(x) or a similar State law, but not including any other offense consisting of conduct that if engaged in by an adult would not constitute an offense) or adjudicated as a juvenile delinquent for conduct that if engaged in by an adult would constitute an offense.

"(B) A person other than a juvenile who knowingly violates section 922(x)—

"(i) shall be fined under this title, imprisoned not more than 1 year, or both; and

H. R. 3355—217

"(ii) if the person sold, delivered, or otherwise transferred a handgun or ammunition to a juvenile knowing or having reasonable cause to know that the juvenile intended to carry or otherwise possess or discharge or otherwise use the handgun or ammunition in the commission of a crime of violence, shall be fined under this title, imprisoned not more than 10 years, or both.".

(c) TECHNICAL AMENDMENT OF JUVENILE DELINQUENCY PROVISIONS IN TITLE 18, UNITED STATES CODE.—

(1) SECTION 5031.—Section 5031 of title 18, United States Code, is amended by inserting "or a violation by such a person of section 922(x)" before the period at the end.

(2) SECTION 5032.—Section 5032 of title 18, United States Code, is amended—

(A) in the first undesignated paragraph by inserting "or (x)" after "922(p)"; and

(B) in the fourth undesignated paragraph by inserting "or section 922(x) of this title," before "criminal prosecution on the basis".

(d) TECHNICAL AMENDMENT OF THE JUVENILE JUSTICE AND DELINQUENCY PREVENTION ACT OF 1974.—Section 223(a)(12)(A) of the Juvenile Justice and Delinquency Prevention Act of 1974 (42 U.S.C. 5633(a)(12)(A)) is amended by striking "which do not constitute violations of valid court orders" and inserting "(other than an offense that constitutes a violation of a valid court order or a violation of section 922(x) of title 18, United States Code, or a similar State law)."

(e) MODEL LAW.—The Attorney General, acting through the Director of the National Institute for Juvenile Justice and Delinquency Prevention, shall—

(1) evaluate existing and proposed juvenile handgun legislation in each State;

(2) develop model juvenile handgun legislation that is constitutional and enforceable;

(3) prepare and disseminate to State authorities the findings made as the result of the evaluation; and

(4) report to Congress by December 31, 1995, findings and recommendations concerning the need or appropriateness of further action by the Federal Government.

## Subtitle C—Licensure

### SEC. 110301. FIREARMS LICENSURE AND REGISTRATION TO REQUIRE A PHOTOGRAPH AND FINGERPRINTS.

(a) FIREARMS LICENSURE.—Section 923(a) of title 18, United States Code, is amended in the second sentence by inserting "and shall include a photograph and fingerprints of the applicant" before the period.

(b) REGISTRATION.—Section 5802 of the Internal Revenue Code of 1986 is amended by inserting after the first sentence the following: "An individual required to register under this section shall include a photograph and fingerprints of the individual with the initial application.".

H. R. 3355—218

### SEC. 110302. COMPLIANCE WITH STATE AND LOCAL LAW AS A CONDITION TO LICENSE.

Section 923(d)(1) of title 18, United States Code, is amended—

(1) by striking "and" at the end of subparagraph (D);

(2) by striking the period at the end of subparagraph (E) and inserting "; and"; and

(3) by adding at the end the following new subparagraph:

"(F) the applicant certifies that—

"(i) the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located;

"(ii)(I) within 30 days after the application is approved the business will comply with the requirements of State and local law applicable to the conduct of the business; and

"(II) the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met; and

"(iii) that the applicant has sent or delivered a form to be prescribed by the Secretary, to the chief law enforcement officer of the locality in which the premises are located, which indicates that the applicant intends to apply for a Federal firearms license.".

### SEC. 110303. ACTION ON FIREARMS LICENSE APPLICATION.

Section 923(d)(2) of title 18, United States Code, is amended by striking "forty-five-day" and inserting "60-day".

### SEC. 110304. INSPECTION OF FIREARMS LICENSEES' INVENTORY AND RECORDS.

Section 923(g)(1)(B)(ii) of title 18, United States Code, is amended to read as follows:

"(ii) for ensuring compliance with the record keeping requirements of this chapter—

"(I) not more than once during any 12-month period; or

"(II) at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee.".

### SEC. 110305. REPORTS OF THEFT OR LOSS OF FIREARMS.

Section 923(g) of title 18, United States Code, is amended by adding at the end the following new paragraph:

"(6) Each licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Secretary and to the appropriate local authorities.".

### SEC. 110306. RESPONSES TO REQUESTS FOR INFORMATION.

Section 923(g) of title 18, United States Code, as amended by section 110405, is amended by adding at the end the following new paragraph:

"(7) Each licensee shall respond immediately to, and in no event later than 24 hours after the receipt of, a request by the Secretary for information contained in the records required to be kept by this chapter as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation. The requested information

H. R. 3355—219

shall be provided orally or in writing, as the Secretary may require. The Secretary shall implement a system whereby the licensee can positively identify and establish that an individual requesting information via telephone is employed by and authorized by the agency to request such information.".

**SEC. 110307. NOTIFICATION OF NAMES AND ADDRESSES OF FIREARMS LICENSEES.**

Section 923 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(1) The Secretary of the Treasury shall notify the chief law enforcement officer in the appropriate State and local jurisdictions of the names and addresses of all persons in the State to whom a firearms license is issued.".

# Subtitle D—Domestic Violence

**SEC. 110401. PROHIBITION AGAINST DISPOSAL OF FIREARMS TO, OR RECEIPT OF FIREARMS BY, PERSONS WHO HAVE COMMITTED DOMESTIC ABUSE.**

(a) INTIMATE PARTNER DEFINED.—Section 921(a) of title 18, United States Code, as amended by section 110103(b), is amended by inserting at the end the following new paragraph:

"(32) The term 'intimate partner' means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person.".

(b) PROHIBITION AGAINST DISPOSAL OF FIREARMS.—Section 922(d) of title 18, United States Code, is amended—

(1) by striking "or" at the end of paragraph (6);

(2) by striking the period at the end of paragraph (7) and inserting "; or"; and

(3) by inserting after paragraph (7) the following new paragraph:

"(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

"(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

"(B)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.".

(c) PROHIBITION AGAINST RECEIPT OF FIREARMS.—Section 922(g) of title 18, United States Code, is amended—

(1) by striking "or" at the end of paragraph (6);

(2) by inserting "or" at the end of paragraph (7); and

(3) by inserting after paragraph (7) the following:

H. R. 3355—220

"(8) who is subject to a court order that—
"(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
"(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
"(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury,".

(d) STORAGE OF FIREARMS.—Section 926(a) of title 18, United States Code, is amended—
(1) by striking "and" at the end of paragraph (1);
(2) by striking the period at the end of paragraph (2) and inserting "; and"; and
(3) by inserting after paragraph (2) the following:
"(3) regulations providing for effective receipt and secure storage of firearms relinquished by or seized from persons described in subsection (d)(8) or (g)(8) of section 922.".

(e) RETURN OF FIREARMS.—Section 924(d)(1) of title 18, United States Code, is amended by striking "the seized" and inserting "or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished".

# Subtitle E—Gun Crime Penalties

### SEC. 110501. ENHANCED PENALTY FOR USE OF A SEMIAUTOMATIC FIREARM DURING A CRIME OF VIOLENCE OR A DRUG TRAFFICKING CRIME.

(a) AMENDMENT TO SENTENCING GUIDELINES.—Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to provide an appropriate enhancement of the punishment for a crime of violence (as defined in section 924(c)(3) of title 18, United States Code) or a drug trafficking crime (as defined in section 924(c)(2) of title 18, United States Code) if a semiautomatic firearm is involved.

(b) SEMIAUTOMATIC FIREARM.—In subsection (a), "semiautomatic firearm" means any repeating firearm that utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round and that requires a separate pull of the trigger to fire each cartridge.

### SEC. 110502. ENHANCED PENALTY FOR SECOND OFFENSE OF USING AN EXPLOSIVE TO COMMIT A FELONY.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall promulgate amendments to the sentencing guidelines to appropriately enhance penalties in a case in which a defendant convicted

H. R. 3355—221

under section 844(h) of title 18, United States Code, has previously been convicted under that section.

### SEC. 110503. SMUGGLING FIREARMS IN AID OF DRUG TRAFFICKING.

Section 924 of title 18, United States Code, as amended by section 60013, is amended by adding at the end the following new subsection:

"(j) A person who, with intent to engage in or to promote conduct that—

"(1) is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.);

"(2) violates any law of a State relating to any controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802); or

"(3) constitutes a crime of violence (as defined in subsection (c)(3),

smuggles or knowingly brings into the United States a firearm, or attempts to do so, shall be imprisoned not more than 10 years, fined under this title, or both.".

### SEC. 110504. THEFT OF FIREARMS AND EXPLOSIVES.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110203(a), is amended by adding at the end the following new subsection:

"(k) A person who steals any firearm which is moving as, or is a part of, or which has moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.".

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(k) A person who steals any explosives materials which are moving as, or are a part of, or which have moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.".

### SEC. 110505. REVOCATION OF SUPERVISED RELEASE AFTER IMPRISONMENT.

Section 3583 of title 18, United States Code, is amended—

(1) in subsection (d) by striking "possess illegal controlled substances" and inserting "unlawfully possess a controlled substance";

(2) in subsection (e)—

(A) by striking "person" each place such term appears in such subsection and inserting "defendant"; and

(B) by amending paragraph (3) to read as follows:

"(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in

H. R. 3355—222

the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or"; and

(3) by striking subsection (g) and inserting the following:

"(g) MANDATORY REVOCATION FOR POSSESSION OF CONTROLLED SUBSTANCE OR FIREARM OR FOR REFUSAL TO COMPLY WITH DRUG TESTING.—If the defendant—

"(1) possesses a controlled substance in violation of the condition set forth in subsection (d);

"(2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm; or

"(3) refuses to comply with drug testing imposed as a condition of supervised release;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

"(h) SUPERVISED RELEASE FOLLOWING REVOCATION.—When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

"(i) DELAYED REVOCATION.—The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.".

**SEC. 110506. REVOCATION OF PROBATION.**

(a) IN GENERAL.—Section 3565(a) of title 18, United States Code, is amended—

(1) in paragraph (2) by striking "impose any other sentence that was available under subchapter A at the time of the initial sentencing" and inserting "resentence the defendant under subchapter A"; and

(2) by striking the last sentence.

(b) MANDATORY REVOCATION.—Section 3565(b) of title 18, United States Code, is amended to read as follows:

"(b) MANDATORY REVOCATION FOR POSSESSION OF CONTROLLED SUBSTANCE OR FIREARM OR REFUSAL TO COMPLY WITH DRUG TESTING.—If the defendant—

"(1) possesses a controlled substance in violation of the condition set forth in section 3563(a)(3);

"(2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates

H. R. 3355—223

a condition of probation prohibiting the defendant from possessing a firearm; or
"(3) refuses to comply with drug testing, thereby violating the condition imposed by section 3563(a)(4),
the court shall revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment.".

**SEC. 110507. INCREASED PENALTY FOR KNOWINGLY MAKING FALSE, MATERIAL STATEMENT IN CONNECTION WITH THE ACQUISITION OF A FIREARM FROM A LICENSED DEALER.**

Section 924(a) of title 18, United States Code, is amended—
(1) in subsection (a)(1)(B) by striking "(a)(6),"; and
(2) in subsection (a)(2) by inserting "(a)(6)," after "subsections".

**SEC. 110508. POSSESSION OF EXPLOSIVES BY FELONS AND OTHERS.**

Section 842(i) of title 18, United States Code, is amended by inserting "or possess" after "to receive".

**SEC. 110509. SUMMARY DESTRUCTION OF EXPLOSIVES SUBJECT TO FORFEITURE.**

Section 844(c) of title 18, United States Code, is amended—
(1) by inserting "(1)" after "(c)"; and
(2) by adding at the end the following new paragraphs:
"(2) Notwithstanding paragraph (1), in the case of the seizure of any explosive materials for any offense for which the materials would be subject to forfeiture in which it would be impracticable or unsafe to remove the materials to a place of storage or would be unsafe to store them, the seizing officer may destroy the explosive materials forthwith. Any destruction under this paragraph shall be in the presence of at least 1 credible witness. The seizing officer shall make a report of the seizure and take samples as the Secretary may by regulation prescribe.
"(3) Within 60 days after any destruction made pursuant to paragraph (2), the owner of (including any person having an interest in) the property so destroyed may make application to the Secretary for reimbursement of the value of the property. If the claimant establishes to the satisfaction of the Secretary that—
"(A) the property has not been used or involved in a violation of law; or
"(B) any unlawful involvement or use of the property was without the claimant's knowledge, consent, or willful blindness, the Secretary shall make an allowance to the claimant not exceeding the value of the property destroyed.".

**SEC. 110510. ELIMINATION OF OUTMODED LANGUAGE RELATING TO PAROLE.**

(a) SECTION 924(e)(1) OF TITLE 18.—Section 924(e)(1) of title 18, United States Code, is amended by striking ", and such person shall not be eligible for parole with respect to the sentence imposed under this subsection".
(b) SECTION 924(c)(1) OF TITLE 18.—Section 924(c)(1) of title 18, United States Code, is amended by striking "No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed under this subsection.".

H. R. 3355—224

### SEC. 110511. PROHIBITION AGAINST TRANSACTIONS INVOLVING STOLEN FIREARMS WHICH HAVE MOVED IN INTERSTATE OR FOREIGN COMMERCE.

Section 922(j) of title 18, United States Code, is amended to read as follows:

"(j) It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.".

### SEC. 110512. USING A FIREARM IN THE COMMISSION OF COUNTERFEITING OR FORGERY.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to provide an appropriate enhancement of the punishment for a defendant convicted of a felony under chapter 25 of title 18, United States Code, if the defendant used or carried a firearm (as defined in section 921(a)(3) of title 18, United States Code) during and in relation to the felony.

### SEC. 110513. ENHANCED PENALTIES FOR FIREARMS POSSESSION BY VIOLENT FELONS AND SERIOUS DRUG OFFENDERS.

Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall amend its sentencing guidelines to—

(1) appropriately enhance penalties in cases in which a defendant convicted under section 922(g) of title 18, United States Code, has 1 prior conviction by any court referred to in section 922(g)(1) of title 18 for a violent felony (as defined in section 924(e)(2)(B) of that title) or a serious drug offense (as defined in section 924(e)(2)(A) of that title); and

(2) appropriately enhance penalties in cases in which such a defendant has 2 prior convictions for a violent felony (as so defined) or a serious drug offense (as so defined).

### SEC. 110514. RECEIPT OF FIREARMS BY NONRESIDENT.

Section 922(a) of title 18, United States Code, is amended—

(1) by striking "and" at the end of paragraph (7);

(2) by striking the period at the end of paragraph (8) and inserting "; and"; and

(3) by adding at the end the following new paragraph:

"(9) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, who does not reside in any State to receive any firearms unless such receipt is for lawful sporting purposes.".

### SEC. 110515. THEFT OF FIREARMS OR EXPLOSIVES FROM LICENSEE.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110504(a), is amended by adding at the end the following new subsection:

"(l) A person who steals any firearm from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall be fined under this title, imprisoned not more than 10 years, or both.".

000026

H. R. 3355—225

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, as amended by section 110204(b), is amended by adding at the end the following new subsection:

"(l) A person who steals any explosive material from a licensed importer, licensed manufacturer, or licensed dealer, or from any permittee under this title, imprisoned not more than 10 years, or both.".

### SEC. 110516. DISPOSING OF EXPLOSIVES TO PROHIBITED PERSONS.

Section 842(d) of title 18, United States Code, is amended by striking "licensee" and inserting "person".

### SEC. 110517. INCREASED PENALTY FOR INTERSTATE GUN TRAFFICKING.

Section 924 of title 18, United States Code, as amended by section 110515(a), is amended by adding at the end the following new subsection:

"(m) A person who, with the intent to engage in conduct that constitutes a violation of section 922(a)(1)(A), travels from any State or foreign country into any other State and acquires, or attempts to acquire, a firearm in such other State in furtherance of such purpose shall be imprisoned for not more than 10 years.".

### SEC. 110518. FIREARMS AND EXPLOSIVES CONSPIRACY.

(a) FIREARMS.—Section 924 of title 18, United States Code, as amended by section 110517(a), is amended by adding at the end the following new subsection:

"(n) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.".

(b) EXPLOSIVES.—Section 844 of title 18, United States Code, as amended by section 110515(b), is amended by adding at the end the following new subsection:

"(m) A person who conspires to commit an offense under subsection (h) shall be imprisoned for any term of years not exceeding 20, fined under this title, or both.

### SEC. 110519. DEFINITION OF ARMOR PIERCING AMMUNITION.

Section 921(a)(17) of title 18, United States Code, is amended by revising subparagraph (B) and adding a new subparagraph (C) to read as follows:

"(B) The term 'armor piercing ammunition' means—

"(i) a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or

"(ii) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile.

"(C) The term 'armor piercing ammunition' does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the Secretary finds is primarily intended to be used for sporting purposes,

H. R. 3355—226

or any other projectile or projectile core which the Secretary finds is intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device.".

# TITLE XII—TERRORISM

### SEC. 120001. EXTENSION OF THE STATUTE OF LIMITATION FOR CERTAIN TERRORISM OFFENSES.

(a) IN GENERAL.—Chapter 213 of title 18, United States Code, is amended by inserting after section 3285 the following new section:

### "§ 3286. Extension of statute of limitation for certain terrorism offenses

"Notwithstanding section 3282, no person shall be prosecuted, tried, or punished for any offense involving a violation of section 32 (aircraft destruction), section 36 (airport violence), section 112 (assaults upon diplomats), section 351 (crimes against Congressmen or Cabinet officers), section 1116 (crimes against diplomats), section 1203 (hostage taking), section 1361 (willful injury to government property), section 1751 (crimes against the President), section 2280 (maritime violence), section 2281 (maritime platform violence), section 2331 (terrorist acts abroad against United States nationals), section 2339 (use of weapons of mass destruction), or section 2340A (torture) of this title or section 46502, 46504, 46505, or 46506 of title 49, unless the indictment is found or the information is instituted within 8 years after the offense was committed.".

(b) APPLICATION OF AMENDMENT.—The amendment made by subsection (a) shall not apply to any offense committed more than 5 years prior to the date of enactment of this Act.

(c) TECHNICAL AMENDMENT.—The chapter analysis for chapter 213 of title 18, United States Code, is amended by inserting after the item relating to section 3285 the following new item:

"3286. Extension of statute of limitation for certain terrorism offenses.".

### SEC. 120002. JURISDICTION OVER CRIMES AGAINST UNITED STATES NATIONALS ON CERTAIN FOREIGN SHIPS.

Section 7 of title 18, United States Code (relating to the special maritime and territorial jurisdiction of the United States), is amended by inserting at the end thereof the following new paragraph:

"(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.".

### SEC. 120003. COUNTERFEITING UNITED STATES CURRENCY ABROAD.

(a) IN GENERAL.—Chapter 25 of title 18, United States Code, is amended by adding before section 471 the following new section:

### "§ 470. Counterfeit acts committed outside the United States

"A person who, outside the United States, engages in the act of—

"(1) making, dealing, or possessing any counterfeit obligation or other security of the United States; or

"(2) making, dealing, or possessing any plate, stone, or other thing, or any part thereof, used to counterfeit such obligation or security,

# EXHIBIT 12

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

West's Colorado Revised Statutes Annotated
  Title 18. Criminal Code (Refs & Annos)
    Article 12. Offenses Relating to Firearms and Weapons (Refs & Annos)
      Part 3. Large-Capacity Ammunition Magazines

C.R.S.A. § 18-12-301

§ 18-12-301. Definitions

Effective: July 1, 2013
Currentness

As used in this part 3, unless the context otherwise requires:

(1) "Bureau" means the Colorado bureau of investigation created and existing pursuant to section 24-33.5-401, C.R.S.

(2)(a) "Large-capacity magazine" means:

(I) A fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition;

(II) A fixed, tubular shotgun magazine that holds more than twenty-eight inches of shotgun shells, including any extension device that is attached to the magazine and holds additional shotgun shells; or

(III) A nontubular, detachable magazine, box, drum, feed strip, or similar device that is capable of accepting more than eight shotgun shells when combined with a fixed magazine.

(b) "Large-capacity magazine" does not mean:

(I) A feeding device that has been permanently altered so that it cannot accommodate more than fifteen rounds of ammunition;

(II) An attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition; or

(III) A tubular magazine that is contained in a lever-action firearm.

**Credits**
Added by Laws 2013, Ch. 48, § 1, eff. July 1, 2013.

000030

C. R. S. A. § 18-12-301, CO ST § 18-12-301

Current through Ch. 2 of the Second Regular Session of the 71st General Assembly (2018)

**End of Document**                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 13

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17752   Page 38 of 118

§ 53-202w. Large capacity magazines. Definitions. Sale, transfer..., CT ST § 53-202w

---

| Connecticut General Statutes Annotated |
| Title 53. Crimes (Refs & Annos) |
| Chapter 943. Offenses Against Public Peace and Safety |

C.G.S.A. § 53-202w

§ 53-202w. Large capacity magazines. Definitions. Sale, transfer or possession prohibited. Exceptions

Effective: June 18, 2013
Currentness

(a) As used in this section and section 53-202x:

(1) "Large capacity magazine" means any firearm magazine, belt, drum, feed strip or similar device that has the capacity of, or can be readily restored or converted to accept, more than ten rounds of ammunition, but does not include: (A) A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds of ammunition, (B) a .22 caliber tube ammunition feeding device, (C) a tubular magazine that is contained in a lever-action firearm, or (D) a magazine that is permanently inoperable;

(2) "Lawfully possesses", with respect to a large capacity magazine, means that a person has (A) actual and lawful possession of the large capacity magazine, (B) constructive possession of the large capacity magazine pursuant to a lawful purchase of a firearm that contains a large capacity magazine that was transacted prior to or on April 4, 2013, regardless of whether the firearm was delivered to the purchaser prior to or on April 4, 2013, which lawful purchase is evidenced by a writing sufficient to indicate that (i) a contract for sale was made between the parties prior to or on April 4, 2013, for the purchase of the firearm, or (ii) full or partial payment for the firearm was made by the purchaser to the seller of the firearm prior to or on April 4, 2013, or (C) actual possession under subparagraph (A) of this subdivision, or constructive possession under subparagraph (B) of this subdivision, as evidenced by a written statement made under penalty of false statement on such form as the Commissioner of Emergency Services and Public Protection prescribes; and

(3) "Licensed gun dealer" means a person who has a federal firearms license and a permit to sell firearms pursuant to section 29-28.

(b) Except as provided in this section, on and after April 5, 2013, any person who, within this state, distributes, imports into this state, keeps for sale, offers or exposes for sale, or purchases a large capacity magazine shall be guilty of a class D felony. On and after April 5, 2013, any person who, within this state, transfers a large capacity magazine, except as provided in subsection (f) of this section, shall be guilty of a class D felony.

(c) Except as provided in this section and section 53-202x: (1) Any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained prior to April 5, 2013, shall commit an infraction and be fined not more than ninety dollars for a first offense and shall be guilty of a class D felony for any subsequent offense, and (2) any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained on or after April 5, 2013, shall be guilty of a class D felony.

(d) A large capacity magazine may be possessed, purchased or imported by:

---

000033

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17753   Page 39 of 118

§ 53-202w. Large capacity magazines. Definitions. Sale, transfer..., CT ST § 53-202w

(1) The Department of Emergency Services and Public Protection, police departments, the Department of Correction, the Division of Criminal Justice, the Department of Motor Vehicles, the Department of Energy and Environmental Protection or the military or naval forces of this state or of the United States;

(2) A sworn and duly certified member of an organized police department, the Division of State Police within the Department of Emergency Services and Public Protection or the Department of Correction, a chief inspector or inspector in the Division of Criminal Justice, a salaried inspector of motor vehicles designated by the Commissioner of Motor Vehicles, a conservation officer or special conservation officer appointed by the Commissioner of Energy and Environmental Protection pursuant to section 26-5, or a constable who is certified by the Police Officer Standards and Training Council and appointed by the chief executive authority of a town, city or borough to perform criminal law enforcement duties, for use by such sworn member, inspector, officer or constable in the discharge of such sworn member's, inspector's, officer's or constable's official duties or when off duty;

(3) A member of the military or naval forces of this state or of the United States;

(4) A nuclear facility licensed by the United States Nuclear Regulatory Commission for the purpose of providing security services at such facility, or any contractor or subcontractor of such facility for the purpose of providing security services at such facility;

(5) Any person who is sworn and acts as a policeman on behalf of an armored car service pursuant to section 29-20 in the discharge of such person's official duties; or

(6) Any person, firm or corporation engaged in the business of manufacturing large capacity magazines in this state that manufactures, purchases, tests or transports large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state, or a federally-licensed firearm manufacturer engaged in the business of manufacturing firearms or large capacity magazines in this state that manufactures, purchases, tests or transports firearms or large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state.

(e) A large capacity magazine may be possessed by:

(1) A licensed gun dealer;

(2) A gunsmith who is in a licensed gun dealer's employ, who possesses such large capacity magazine for the purpose of servicing or repairing a lawfully possessed large capacity magazine;

(3) A person, firm, corporation or federally-licensed firearm manufacturer described in subdivision (6) of subsection (d) of this section that possesses a large capacity magazine that is lawfully possessed by another person for the purpose of servicing or repairing the large capacity magazine;

000034

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17754   Page 40 of
118
§ 53-202w. Large capacity magazines. Definitions. Sale, transfer..., CT ST § 53-202w

(4) Any person who has declared possession of the magazine pursuant to section 53-202x; or

(5) Any person who is the executor or administrator of an estate that includes a large capacity magazine, or the trustee of a trust that includes a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to section 53-202x, which is disposed of as authorized by the Probate Court, if the disposition is otherwise permitted by this section and section 53-202x.

(f) Subsection (b) of this section shall not prohibit:

(1) The transfer of a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to section 53-202x, by bequest or intestate succession, or, upon the death of a testator or settlor: (A) To a trust, or (B) from a trust to a beneficiary;

(2) The transfer of a large capacity magazine to a police department or the Department of Emergency Services and Public Protection;

(3) The transfer of a large capacity magazine to a licensed gun dealer in accordance with section 53-202x; or

(4) The transfer of a large capacity magazine prior to October 1, 2013, from a licensed gun dealer, pawnbroker licensed under section 21-40, or consignment shop operator, as defined in section 21-39a, to any person who (A) possessed the large capacity magazine prior to or on April 4, 2013, (B) placed a firearm that such person legally possessed, with the large capacity magazine included or attached, in the possession of such dealer, pawnbroker or operator prior to or on April 4, 2013, pursuant to an agreement between such person and such dealer, pawnbroker or operator for the sale of the firearm to a third person, and (C) is eligible to possess the firearm on the date of such transfer.

(g) If the court finds that a violation of this section is not of a serious nature and that the person charged with such violation (1) will probably not offend in the future, (2) has not previously been convicted of a violation of this section, and (3) has not previously had a prosecution under this section suspended pursuant to this subsection, it may order suspension of prosecution in accordance with the provisions of subsection (h) of section 29-33.

**Credits**
(2013, P.A. 13-3, § 23, eff. April 4, 2013; 2013, P.A. 13-220, § 1, eff. June 18, 2013.)

Notes of Decisions (3)

C. G. S. A. § 53-202w, CT ST § 53-202w
The statutes and Constitution are current through the 2018 Supplement to the General Statutes of Connecticut, Revision of 1958.

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 14

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedPrior Version Held Unconstitutional as Applied by Herrington v. U.S., D.C., Nov. 04, 2010

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

**West's District of Columbia Code Annotated 2001 Edition**
    Division I. Government of District.
       Title 7. Human Health Care and Safety. (Refs & Annos)
          Subtitle J. Public Safety.
             Chapter 25. Firearms Control.
                Unit A. Firearms Control Regulations.
                    Subchapter VI. Possession of Ammunition.

DC ST § 7-2506.01

Formerly cited as DC ST 1981 §6-2361

§ 7-2506.01. Persons permitted to possess ammunition.

Effective: April 27, 2013
Currentness

(a) No person shall possess ammunition in the District of Columbia unless:

(1) He is a licensed dealer pursuant to subchapter IV of this unit;

(2) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3) He is the holder of the valid registration certificate for a firearm pursuant to subchapter II of this chapter; except, that no such person shall possess one or more restricted pistol bullets; or

(4) He holds an ammunition collector's certificate on September 24, 1976; or

(5) He temporarily possesses ammunition while participating in a firearms training and safety class conducted by a firearms instructor.

(b) No person in the District shall possess, sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm. For the purposes of this subsection, the term "large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition. The term "large capacity ammunition feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

**Credits**

(Sept. 24, 1976, D.C. Law 1-85, title VI, § 601, 23 DCR 2464; Mar. 16, 1978, D.C. Law 2-62, § 2, 24 DCR 5780; Aug. 2, 1983, D.C. Law 5-19, § 4, 30 DCR 3328; Mar. 31, 2009, D.C. Law 17-372, § 3(n), 56 DCR 1365; Sept. 26, 2012, D.C. Law 19-170, § 2(n), 59 DCR 5691; Apr. 27, 2013, D.C. Law 19-295, § 2(c), 60 DCR 2623.)

Notes of Decisions (51)

Copyright (c) 2012 By the District of Columbia. Content previously published in the District of Columbia Official Code, 2001 Edition is used with permission. Copyright (c) 2018 Thomson Reuters
DC CODE § 7-2506.01
Current through February 20, 2018

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 15

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Hawai'i Revised Statutes Annotated
  Division 1. Government
    Title 10. Public Safety and Internal Security
      Chapter 134. Firearms, Ammunition and Dangerous Weapons
        Part I. General Regulations

HRS § 134-8

§ 134-8. Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties

Currentness

(a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

(b) Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

(c) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

(d) Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

**Credits**
Laws 1988, ch. 275, § 2; Laws 1989, ch. 261, § 6; Laws 1989, ch. 263, § 4; Laws 1992, ch. 286, §§ 3, 4.

Notes of Decisions (13)

H R S § 134-8, HI ST § 134-8
Current through Act 3 (End) of the 2017 1st Special Session, pending text revision by the revisor of statutes.

**End of Document**                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 16

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedValidity Called into Doubt by Kolbe v. Hogan, 4th Cir.(Md.), Feb. 04, 2016

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

West's Annotated Code of Maryland
Criminal Law (Refs & Annos)
Title 4. Weapon Crimes
Subtitle 3. Assault Weapons and Detachable Magazines (Refs & Annos)

MD Code, Criminal Law, § 4-305

Formerly cited as MD CODE Art. 27, §36H-5

§ 4-305. Detachable magazines--Prohibited

Effective: October 1, 2013
Currentness

**Scope**

(a) This section does not apply to:

(1) a .22 caliber rifle with a tubular magazine; or

(2) a law enforcement officer or a person who retired in good standing from service with a law enforcement agency of the United States, the State, or any law enforcement agency in the State.

**Prohibited**

(b) A person may not manufacture, sell, offer for sale, purchase, receive, or transfer a detachable magazine that has a capacity of more than 10 rounds of ammunition for a firearm.

**Credits**

Added by Acts 2002, c. 26, § 2, eff. Oct. 1, 2002. Amended by Acts 2013, c. 427, § 1, eff. Oct. 1, 2013.

**Formerly** Art. 27, § 36H-5.

**Editors' Notes**

**LEGISLATIVE NOTES**

Revisor's Note (Acts 2002, c. 26):

This section is new language derived without substantive change from former Art. 27, § 36H-5(b).

The former reference to "any type of" firearm is deleted as surplusage.

Defined term: "Person" § 1-101

Notes of Decisions (8)

MD Code, Criminal Law, § 4-305, MD CRIM LAW § 4-305
Current through Chapters 1 to 4 from the 2018 Regular Session of the General Assembly

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 17

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17765   Page 51 of
118
§ 121. Firearms sales; definitions; antique firearms; application of..., MA ST 140 § 121

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedPrior Version Held Unconstitutional by Com. v. Beal, Mass., May 24, 2016

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XX. Public Safety and Good Order (Ch. 133-148a)
      Chapter 140. Licenses (Refs & Annos)

M.G.L.A. 140 § 121

§ 121. Firearms sales; definitions; antique firearms; application of law; exceptions

Effective: February 1, 2018
Currentness

As used in sections 122 to 131Q, inclusive, the following words shall, unless the context clearly requires otherwise, have the following meanings:--

"Ammunition", cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun. The term "ammunition" shall also mean tear gas cartridges.

"Assault weapon", shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(30) as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as: (i) Avtomat Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta Ar70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M-11/9 and M-12; (vi) Steyr AUG; (vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12; provided, however, that the term assault weapon shall not include: (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to 18 U.S.C. section 922 as appearing in such appendix on September 13, 1994, as such weapons were manufactured on October 1, 1993; (ii) any weapon that is operated by manual bolt, pump, lever or slide action; (iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon; (iv) any weapon that was manufactured prior to the year 1899; (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon; (vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or (vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine.

<[ Definition of "Bump stock" inserted following definition of "Assault weapon" in first paragraph
by 2017, 110, Sec. 18 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

"Bump stock", any device for a weapon that increases the rate of fire achievable with such weapon by using energy from the recoil of the weapon to generate a reciprocating action that facilitates repeated activation of the trigger.

"Conviction", a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed.

000046

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17766   Page 52 of
118
§ 121. Firearms sales; definitions; antique firearms; application of..., MA ST 140 § 121

"Deceptive weapon device", any device that is intended to convey the presence of a rifle, shotgun or firearm that is used in the commission of a violent crime, as defined in this section, and which presents an objective threat of immediate death or serious bodily harm to a person of reasonable and average sensibility.

"Firearm", a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk- through metal detectors.

"Gunsmith", any person who engages in the business of repairing, altering, cleaning, polishing, engraving, blueing or performing any mechanical operation on any firearm, rifle, shotgun or machine gun.

"Imitation firearm", any weapon which is designed, manufactured or altered in such a way as to render it incapable of discharging a shot or bullet.

"Large capacity feeding device", (i) a fixed or detachable magazine, box, drum, feed strip or similar device capable of accepting, or that can be readily converted to accept, more than ten rounds of ammunition or more than five shotgun shells; or (ii) a large capacity ammunition feeding device as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(31) as appearing in such section on September 13, 1994. The term "large capacity feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber ammunition.

"Large capacity weapon", any firearm, rifle or shotgun: (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or firearm and more than five shotgun shells in the case of a shotgun or firearm; or (iv) that is an assault weapon. The term "large capacity weapon" shall be a secondary designation and shall apply to a weapon in addition to its primary designation as a firearm, rifle or shotgun and shall not include: (i) any weapon that was manufactured in or prior to the year 1899; (ii) any weapon that operates by manual bolt, pump, lever or slide action; (iii) any weapon that is a single-shot weapon; (iv) any weapon that has been modified so as to render it permanently inoperable or otherwise rendered permanently unable to be designated a large capacity weapon; or (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable large capacity weapon.

"Length of barrel" or "barrel length", that portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized and shall include the chamber.

"Licensing authority", the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them.

<[ Definition of "Machine gun" in first paragraph effective until
February 1, 2018. For text effective February 1, 2018, see below.]>

"Machine gun", a weapon of any description, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a submachine gun.

<[ Definition of "Machine gun" in first paragraph as amended by 2017, 110, Sec. 20 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53. For text effective until February 1, 2018, see above.]>

"Machine gun", a weapon of any description, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a submachine gun; provided, however, that "machine gun" shall include bump stocks and trigger cranks.

"Purchase" and "sale" shall include exchange; the word "purchaser" shall include exchanger; and the verbs "sell" and "purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense.

"Rifle", a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger.

"Sawed-off shotgun", any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less than 26 inches.

"Semiautomatic", capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.

"Shotgun", a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger.

<[ Definition of "Trigger crank" inserted following definition of "Shotgun" in first paragraph by 2017, 110, Sec. 19 effective February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

"Trigger crank", any device to be attached to a weapon that repeatedly activates the trigger of the weapon through the use of a lever or other part that is turned in a circular motion; provided, however, that "trigger crank" shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

"Violent crime", shall mean any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another.

"Weapon", any rifle, shotgun or firearm.

Where the local licensing authority has the power to issue licenses or cards under this chapter, but no such licensing authority exists, any resident or applicant may apply for such license or firearm identification card directly to the colonel of state police and said colonel shall for this purpose be the licensing authority.

The provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to:

(A) any firearm, rifle or shotgun manufactured in or prior to the year 1899;

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

000048

(B) any replica of any firearm, rifle or shotgun described in clause (A) if such replica: (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; and

(C) manufacturers or wholesalers of firearms, rifles, shotguns or machine guns.

**Credits**

Amended by St.1934, c. 359, § 1; St.1957, c. 688, § 4; St.1959, c. 296, § 1; St.1960, c. 186; St.1968, c. 737, § 1; St.1969, c. 799, § 1; St.1971, c. 456, § 1; St.1973, c. 892, § 1; St.1983, c. 516, § 1; St.1984, c. 116, § 1; St.1989, c. 433; St.1990, c. 511, § 1; St.1996, c. 151, §§ 300, 301; St.1998, c. 180, § 8; St.1999, c. 1, § 1; St.2004, c. 150, §§ 1 to 3, eff. Sept. 13, 2004; St.2014, c. 284, §§ 19, eff. Jan. 1, 2015; St.2014, c. 284, §§ 20, 21, eff. Aug. 13, 2014; St.2017, c. 110, §§ 18 to 20, eff. Feb. 1, 2018.

Notes of Decisions (97)

M.G.L.A. 140 § 121, MA ST 140 § 121
Current through the 2017 1st Annual Session

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

000049

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedPrior Version Held Unconstitutional by Fletcher v. Haas, D.Mass., Mar. 30, 2012

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XX. Public Safety and Good Order (Ch. 133-148a)
      Chapter 140. Licenses (Refs & Annos)

M.G.L.A. 140 § 131

§ 131. Licenses to carry firearms; Class A and B; conditions and restrictions

Effective: February 1, 2018 to December 31, 2020
Currentness

All licenses to carry firearms shall be designated Class A or Class B, and the issuance and possession of any such license shall be subject to the following conditions and restrictions:

(a) A Class A license shall entitle a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor, for all lawful purposes; provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it deems proper. A violation of a restriction imposed by the licensing authority under the provisions of this paragraph shall be cause for suspension or revocation and shall, unless otherwise provided, be punished by a fine of not less than $1,000 nor more than $10,000; provided, however, that the provisions of section 10 of chapter 269 shall not apply to such violation.

The colonel of state police may, after an investigation, grant a Class A license to a club or facility with an on-site shooting range or gallery, which club is incorporated under the laws of the commonwealth for the possession, storage and use of large capacity weapons, ammunition therefor and large capacity feeding devices for use with such weapons on the premises of such club; provided, however, that not less than one shareholder of such club shall be qualified and suitable to be issued such license; and provided further, that such large capacity weapons and ammunition feeding devices may be used under such Class A club license only by such members that possess a valid firearm identification card issued under section 129B or a valid Class A or Class B license to carry firearms, or by such other persons that the club permits while under the direct supervision of a certified firearms safety instructor or club member who, in the case of a large capacity firearm, possesses a valid Class A license to carry firearms or, in the case of a large capacity rifle or shotgun, possesses a valid Class A or Class B license to carry firearms. Such club shall not permit shooting at targets that depict human figures, human effigies, human silhouettes or any human images thereof, except by public safety personnel performing in line with their official duties.

No large capacity weapon or large capacity feeding device shall be removed from the premises except for the purposes of: (i) transferring such firearm or feeding device to a licensed dealer; (ii) transporting such firearm or feeding device to a licensed gunsmith for repair; (iii) target, trap or skeet shooting on the premises of another club incorporated under the laws of the commonwealth and for transporting thereto; (iv) attending an exhibition or educational project or event that is sponsored by, conducted under the supervision of or approved by a public law enforcement agency or a nationally or state recognized entity that promotes proficiency in ~~~~~~~~~~ about semiautomatic weapons and for transporting

thereto and therefrom; (v) hunting in accordance with the provisions of chapter 131; or (vi) surrendering such firearm or feeding device under the provisions of section 129D. Any large capacity weapon or large capacity feeding device kept on the premises of a lawfully incorporated shooting club shall, when not in use, be secured in a locked container, and shall be unloaded during any lawful transport. The clerk or other corporate officer of such club shall annually file a report with the colonel of state police and the commissioner of the department of criminal justice information services listing all large capacity weapons and large capacity feeding devices owned or possessed under such license. The colonel of state police or his designee, shall have the right to inspect all firearms owned or possessed by such club upon request during regular business hours and said colonel may revoke or suspend a club license for a violation of any provision of this chapter or chapter 269 relative to the ownership, use or possession of large capacity weapons or large capacity feeding devices.

(b) A Class B license shall entitle a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) non-large capacity firearms and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of such firearm as the licensing authority deems proper; provided, however, that a Class B license shall not entitle the holder thereof to carry or possess a loaded firearm in a concealed manner in any public way or place; and provided further, that a Class B license shall not entitle the holder thereof to possess a large capacity firearm, except under a Class A club license issued under this section or under the direct supervision of a holder of a valid Class A license at an incorporated shooting club or licensed shooting range; and (ii) rifles and shotguns, including large capacity rifles and shotguns, and feeding devices and ammunition therefor, for all lawful purposes; provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as he deems proper. A violation of a restriction provided under this paragraph, or a restriction imposed by the licensing authority under the provisions of this paragraph, shall be cause for suspension or revocation and shall, unless otherwise provided, be punished by a fine of not less than $1,000 nor more than $10,000; provided, however, that the provisions of section 10 of chapter 269 shall not apply to such violation.

A Class B license shall not be a valid license for the purpose of complying with any provision under this chapter governing the purchase, sale, lease, rental or transfer of any weapon or ammunition feeding device if such weapon is a large capacity firearm or if such ammunition feeding device is a large capacity feeding device for use with a large capacity firearm, both as defined in section 121.

(c) Either a Class A or Class B license shall be valid for the purpose of owning, possessing, purchasing and transferring non-large capacity rifles and shotguns, and for purchasing and possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate, consistent with the entitlements conferred by a firearm identification card issued under section 129B.

(d) Any person residing or having a place of business within the jurisdiction of the licensing authority or any law enforcement officer employed by the licensing authority or any person residing in an area of exclusive federal jurisdiction located within a city or town may submit to the licensing authority or the colonel of state police, an application for a Class A license to carry firearms, or renewal of the same, which the licensing authority or the colonel may issue if it appears that the applicant is not a prohibited person, as set forth in this section, to be issued a license and has good reason to fear injury to the applicant or the applicant's property or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to the restrictions expressed or authorized under this section.

A prohibited person shall be a person who:

(i) has, in a court of the commonwealth, been convicted or adjudicated a youthful offender or delinquent child, both as defined in section 52 of chapter 119, for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment

000051

for more than 2 years ; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in section 1 of chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

(ii) has, in any other state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in said section 1 of said chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

(iii) is or has been (A) committed to a hospital or institution for mental illness, alcohol or substance abuse, except a commitment pursuant to sections 35 or 36C of chapter 123, unless after 5 years from the date of the confinement, the applicant submits with the application an affidavit of a licensed physician or clinical psychologist attesting that such physician or psychologist is familiar with the applicant's mental illness, alcohol or substance abuse and that in the physician's or psychologist's opinion, the applicant is not disabled by a mental illness, alcohol or substance abuse in a manner that shall prevent the applicant from possessing a firearm, rifle or shotgun; (B) committed by a court order to a hospital or institution for mental illness, unless the applicant was granted a petition for relief of the court order pursuant to said section 36C of said chapter 123 and submits a copy of the court order with the application; (C) subject to an order of the probate court appointing a guardian or conservator for a incapacitated person on the grounds that the applicant lacks the mental capacity to contract or manage the applicant's affairs, unless the applicant was granted a petition for relief of the order of the probate court pursuant to section 56C of chapter 215 and submits a copy of the order of the probate court with the application; or (D) found to be a person with an alcohol use disorder or substance use disorder or both and committed pursuant to said section 35 of said chapter 123, unless the applicant was granted a petition for relief of the court order pursuant to said section 35 and submits a copy of the court order with the application;

(iv) is younger than 21 years of age at the time of the application;

(v) is an alien who does not maintain lawful permanent residency;

(vi) is currently subject to: (A) an order for suspension or surrender issued pursuant to sections 3B or 3C of chapter 209A or a similar order issued by another jurisdiction; or (B) a permanent or temporary protection order issued pursuant to said chapter 209A or a similar order issued by another jurisdiction, including any order described in 18 U.S.C. 922(g)(8);

(vii) is currently the subject of an outstanding arrest warrant in any state or federal jurisdiction;

(viii) has been discharged from the armed forces of the United States under dishonorable conditions;

(ix) is a fugitive from justice; or

000052

(x) having been a citizen of the United States, has renounced that citizenship.

The licensing authority may deny the application or renewal of a license to carry, or suspend or revoke a license issued under this section if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable to be issued or to continue to hold a license to carry. A determination of unsuitability shall be based on: (i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety. Upon denial of an application or renewal of a license based on a determination of unsuitability, the licensing authority shall notify the applicant in writing setting forth the specific reasons for the determination in accordance with paragraph (e). Upon revoking or suspending a license based on a determination of unsuitability, the licensing authority shall notify the holder of a license in writing setting forth the specific reasons for the determination in accordance with paragraph (f). The determination of unsuitability shall be subject to judicial review under said paragraph (f).

(e) Within seven days of the receipt of a completed application for a license to carry or possess firearms, or renewal of same, the licensing authority shall forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police, who shall within 30 days advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a license to carry or possess firearms. In searching for any disqualifying history of the applicant, the colonel shall utilize, or cause to be utilized, files maintained by the department of probation and statewide and nationwide criminal justice, warrant and protection order information systems and files including, but not limited to, the National Instant Criminal Background Check System. The colonel shall inquire of the commissioner of the department of mental health relative to whether the applicant is disqualified from being so licensed. If the information available to the colonel does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law, he shall certify such fact, in writing, to the licensing authority within said 30 day period.

The licensing authority may also make inquiries concerning the applicant to: (i) the commissioner of the department of criminal justice information services relative to any disqualifying condition and records of purchases, sales, rentals, leases and transfers of weapons or ammunition concerning the applicant; (ii) the commissioner of probation relative to any record contained within the department of probation or the statewide domestic violence record keeping system concerning the applicant; and (iii) the commissioner of the department of mental health relative to whether the applicant is a suitable person to possess firearms or is not a suitable person to possess firearms. The director or commissioner to whom the licensing authority makes such inquiry shall provide prompt and full cooperation for that purpose in any investigation of the applicant.

The licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing; provided, however, that no such license shall be issued unless the colonel has certified, in writing, that the information available to him does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law.

The licensing authority shall provide to the applicant a receipt indicating that it received the application. The receipt shall be provided to the applicant within 7 days by mail if the application was received by mail or immediately if the application was made in person; provided, however, that the receipt shall include the applicant's name and address; current license number and license expiration date, if any; the date the licensing authority received the application; the name, address and telephone number of the licensing authority; the agent of the licensing authority that received the application; the type of application; and whether the application is for a new license or a renewal of an existing license.

000053

Case 3:17-cv-01017-BEN-JLB  Document 132-9  Filed 12/01/22  PageID.17773  Page 59 of
118
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

The licensing authority shall keep a copy of the receipt for not less than 1 year and shall furnish a copy to the applicant if requested by the applicant.

(f) A license issued under this section shall be revoked or suspended by the licensing authority, or his designee, upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed. A license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license. Any revocation or suspension of a license shall be in writing and shall state the reasons therefor. Upon revocation or suspension, the licensing authority shall take possession of such license and the person whose license is so revoked or suspended shall take all actions required under the provisions of section 129D. No appeal or post-judgment motion shall operate to stay such revocation or suspension. Notices of revocation and suspension shall be forwarded to the commissioner of the department of criminal justice information services and the commissioner of probation and shall be included in the criminal justice information system. A revoked or suspended license may be reinstated only upon the termination of all disqualifying conditions, if any.

Any applicant or holder aggrieved by a denial, revocation, suspension or restriction placed on a license, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receiving notice of the denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority shall respond to the applicant or, in the case of a restriction, any time after a restriction is placed on the license pursuant to this section, file a petition to obtain judicial review in the district court having jurisdiction in the city or town in which the applicant filed the application or in which the license was issued. If after a hearing a justice of the court finds that there was no reasonable ground for denying, suspending, revoking or restricting the license and that the petitioner is not prohibited by law from possessing a license, the justice may order a license to be issued or reinstated to the petitioner or may order the licensing authority to remove certain restrictions placed on the license.

(g) A license shall be in a standard form provided by the executive director of the criminal history systems board in a size and shape equivalent to that of a license to operate motor vehicles issued by the registry of motor vehicles pursuant to section 8 of chapter 90 and shall contain a license number which shall clearly indicate whether such number identifies a Class A or Class B license, the name, address, photograph, fingerprint, place and date of birth, height, weight, hair color, eye color and signature of the licensee. Such license shall be marked "License to Carry Firearms" and shall clearly indicate whether the license is Class A or Class B. The application for such license shall be made in a standard form provided by the executive director of the criminal history systems board, which form shall require the applicant to affirmatively state under the pains and penalties of perjury that such applicant is not disqualified on any of the grounds enumerated above from being issued such license.

(h) Any person who knowingly files an application containing false information shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a house of correction, or by both such fine and imprisonment.

(i) A license to carry or possess firearms shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue and shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue; provided, however, that, if the licensee applied for renewal before the license expired, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is approved or denied. If a licensee is on active duty with the armed forces of the United States on the expiration date of the license, the license shall remain valid until the licensee is released from active duty and for a period not less than 180 days following the release; provided, however, that, if the licensee applied for renewal prior to the end of that period, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is

000054

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17774   Page 60 of
118
§ 131. Licenses to carry firearms; Class A and B; conditions..., MA ST 140 § 131

approved or denied. An application for renewal of a Class B license filed before the license has expired shall not extend the license beyond the stated expiration date; provided, that the Class B license shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue. Any renewal thereof shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years but not more than 6 years from the effective date of such license. Any license issued to an applicant born on February 29 shall expire on March 1. The fee for the application shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited into the general fund of the commonwealth and not less than $50,000 of the funds deposited into the General Fund shall be allocated to the Firearm Licensing Review Board, established in section 130B, for its operations and that any funds not expended by said board for its operations shall revert back to the General Fund; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund. For active and retired law enforcement officials, or local, state, or federal government entities acting on their behalf, the fee for the application shall be set at $25, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $12.50 of the fee, and $12.50 of the fee shall be deposited into the general fund of the commonwealth. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit such portion of the license application fee into the Firearms Record Keeping Fund quarterly, not later than January 1, April 1, July 1 and October 1 of each year. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit quarterly such portion of the license application fee as is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year. For the purposes of section 10 of chapter 269, an expired license to carry firearms shall be deemed to be valid for a period not to exceed 90 days beyond the stated date of expiration, unless such license to carry firearms has been revoked.

Any person over the age of 70 and any law enforcement officer applying for a license to carry firearms through his employing agency shall be exempt from the requirement of paying a renewal fee for a Class A or Class B license to carry.

(j)(1) No license shall be required for the carrying or possession of a firearm known as a detonator and commonly used on vehicles as a signaling and marking device, when carried or possessed for such signaling or marking purposes.

(2) No license to carry shall be required for the possession of an unloaded large capacity rifle or shotgun or an unloaded feeding device therefor by a veteran's organization chartered by the Congress of the United States, chartered by the commonwealth or recognized as a nonprofit tax-exempt organization by the Internal Revenue Service, or by the members of any such organization when on official parade duty or during ceremonial occasions. For purposes of this subparagraph, an "unloaded large capacity rifle or shotgun" and an "unloaded feeding device therefor" shall include any large capacity rifle, shotgun or feeding device therefor loaded with a blank cartridge or blank cartridges, so-called, which contain no projectile within such blank or blanks or within the bore or chamber of such large capacity rifle or shotgun.

(k) Whoever knowingly issues a license in violation of this section shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a jail or house of correction, or by both such fine and imprisonment.

(l) The executive director of the criminal history systems board shall send electronically or by first class mail to the holder of each such license to carry firearms, a notice of the expiration of such license not less than 90 days prior to such expiration and shall enclose therein a form for the renewal of such license. The form for renewal shall include an affidavit in which the applicant shall verify that the applicant has not lost any firearms or had any firearms stolen from the applicant since the date of the applicant's last renewal or issuance. The taking of fingerprints shall not be required in issuing the renewal of a license if the renewal applicant's fingerprints are on file with the department of the state

000055

police. Any licensee shall notify, in writing, the licensing authority who issued said license, the chief of police into whose jurisdiction the licensee moves and the executive director of the criminal history systems board of any change of address. Such notification shall be made by certified mail within 30 days of its occurrence. Failure to so notify shall be cause for revocation or suspension of said license. The commissioner of criminal justice information services shall provide electronic notice of expiration only upon the request of a cardholder. A request for electronic notice of expiration shall be forwarded to the department on a form furnished by the commissioner. Any electronic address maintained by the department for the purpose of providing electronic notice of expiration shall be considered a firearms record and shall not be disclosed except as provided in section 10 of chapter 66.

(m) Notwithstanding the provisions of section 10 of chapter 269, any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, not including licenses that remain valid under paragraph (i) because the licensee applied for renewal before the license expired, but who shall not be disqualified from renewal upon application therefor pursuant to this section, shall be subject to a civil fine of not less than $100 nor more than $5,000 and the provisions of section 10 of chapter 269 shall not apply; provided, however, that the exemption from the provisions of said section 10 of said chapter 269 provided herein shall not apply if: (i) such license has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; (ii) revocation or suspension of such license is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) an application for renewal of such license has been denied. Any law enforcement officer who discovers a person to be in possession of a firearm, rifle or shotgun after such person's license has expired, meaning after 90 days beyond the stated expiration date on the license, has been revoked or suspended, solely for failure to give notice of a change of address, shall confiscate such firearm, rifle or shotgun and the expired or suspended license then in possession and such officer, shall forward such license to the licensing authority by whom it was issued as soon as practicable. The officer shall, at the time of confiscation, provide to the person whose firearm, rifle or shotgun has been confiscated, a written inventory and receipt for all firearms, rifles or shotguns confiscated and the officer and his employer shall exercise due care in the handling, holding and storage of these items. Any confiscated weapon shall be returned to the owner upon the renewal or reinstatement of such expired or suspended license within one year of such confiscation or may be otherwise disposed of in accordance with the provisions of section 129D. The provisions of this paragraph shall not apply if such person has a valid license to carry firearms issued under section 131F.

(n) Upon issuance of a license to carry or possess firearms under this section, the licensing authority shall forward a copy of such approved application and license to the executive director of the criminal history systems board, who shall inform the licensing authority forthwith of the existence of any disqualifying condition discovered or occurring subsequent to the issuance of a license under this section.

(o) No person shall be issued a license to carry or possess a machine gun in the commonwealth, except that a licensing authority or the colonel of state police may issue a machine gun license to:

(i) a firearm instructor certified by the municipal police training committee for the sole purpose of firearm instruction to police personnel;

(ii) a bona fide collector of firearms upon application or upon application for renewal of such license.

<[ Second sentence of paragraph (o) added by 2017, 110, Sec. 21 effective
February 1, 2018 applicable as provided by 2017, 110, Sec. 53.]>

000056

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17776   Page 62 of
§ 131. Licenses to carry firearms; Class A and B; conditions...   MA ST 140 § 131
118

Clauses (i) and (ii) of this paragraph shall not apply to bump stocks and trigger cranks.

(p) The executive director of the criminal history systems board shall promulgate regulations in accordance with chapter 30A to establish criteria for persons who shall be classified as bona fide collectors of firearms.

(q) Nothing in this section shall authorize the purchase, possession or transfer of any weapon, ammunition or feeding device that is, or in such manner that is, prohibited by state or federal law.

(r) The secretary of the executive office of public safety or his designee may promulgate regulations to carry out the purposes of this section.

**Credits**
Amended by St.1936, c. 302; St.1951, c. 201; St.1953, c. 319, § 20; St.1953, c. 454; St.1957, c. 688, § 15; St.1959, c. 296, § 6; St.1960, c. 293; St.1969, c. 799, § 11; St.1972, c. 415; St.1973, c. 138; St.1973, c. 892, § 7; St.1974, c. 312; St.1974, c. 649, § 1; St.1975, c. 4, § 1; St.1975, c. 113, § 1; St.1984, c. 420, § 2; St.1986, c. 481, § 2; St.1987, c. 465, § 33; St.1994, c. 24, § 3; St.1996, c. 151, §§ 325 to 329; St.1996, c. 200, § 28; St.1998, c. 180, § 41; St.1998, c. 358, §§ 6 to 9; St.2002, c. 196, § 22; St.2002, c. 513, § 2; St.2003, c. 26, § 429, eff. July 1, 2003; St.2003, c. 46, § 103, eff. July 31, 2003; St.2004, c. 150, §§ 10 to 16, eff. Sept. 13, 2004; St.2008, c. 224, eff. Oct. 29, 2008; St.2010, c. 256, § 97, eff. Nov. 4, 2010; St.2010, c. 466, § 3, eff. April 14, 2011; St.2011, c. 9, §§ 16, 17, eff. April 11, 2011; St.2014, c. 284, §§ 48, 50, 51, 53, 56, 57, eff. Jan. 1, 2015; St.2014, c. 284, § 55, eff. Aug. 13, 2014; St.2017, c. 110, § 21, eff. Feb. 1, 2018.

Notes of Decisions (174)

M.G.L.A. 140 § 131, MA ST 140 § 131
Current through the 2017 1st Annual Session

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 18

New Jersey Statutes Annotated
  Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)
    Subtitle 2. Definition of Specific Offenses
      Part 5. Offenses Against Public Order, Health and Decency
        Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-1

2C:39-1. Definitions

Effective: December 23, 2002 to January 15, 2018

Definitions. The following definitions apply to this chapter and to chapter 58:

a. "Antique firearm" means any rifle or shotgun and "antique cannon" means a destructive device defined in paragraph (3) of subsection c. of this section, if the rifle, shotgun or destructive device, as the case may be, is incapable of being fired or discharged, or which does not fire fixed ammunition, regardless of date of manufacture, or was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

b. "Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

c. "Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one-quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than 60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line- throwing, safety or similar purposes.

d. "Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

e. "Explosive" means any chemical compound or mixture that is commonly used or is possessed for the purpose of producing an explosion and which contains any oxidizing and combustible materials or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion or by detonation of any part of the compound or mixture may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects. The term shall not include small arms ammunition, or explosives in the form prescribed by the official United States Pharmacopoeia.

000059

Sterling MK-6, MK-7 and SAR types

Steyr A.U.G. semi-automatic firearms

USAS 12 semi-automatic type shotgun

Uzi type semi-automatic firearms

Valmet M62, M71S, M76, or M78 type semi-automatic firearms

Weaver Arm Nighthawk.

(2) Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

(3) A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

(4) A semi-automatic rifle with a fixed magazine capacity exceeding 15 rounds.

(5) A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

x. "Semi-automatic" means a firearm which fires a single projectile for each single pull of the trigger and is self-reloading or automatically chambers a round, cartridge, or bullet.

y. "Large capacity ammunition magazine" means a box, drum, tube or other container which is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm.

z. "Pistol grip" means a well-defined handle, similar to that found on a handgun, that protrudes conspicuously beneath the action of the weapon, and which permits the shotgun to be held and fired with one hand.

aa. "Antique handgun" means a handgun manufactured before 1898, or a replica thereof, which is recognized as being historical in nature or of historical significance and either (1) utilizes a match, friction, flint, or percussion ignition, or which utilizes a pin-fire cartridge in which the pin is part of the cartridge or (2) does not fire fixed ammunition or for which cartridge ammunition is not commercially available.

bb. "Trigger lock" means a commercially available device approved by the Superintendent of State Police which is operated with a key or combination lock that prevents a firearm from being discharged while the device is attached to the firearm. It may include, but need not be limited to, devices that obstruct the barrel or cylinder of the firearm, as well as devices that immobilize the trigger.

000060

New Jersey Statutes Annotated
  Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)
    Subtitle 2. Definition of Specific Offenses
      Part 5. Offenses Against Public Order, Health and Decency
        Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-3

2C:39-3. Prohibited weapons and devices

Effective: September 3, 2003 to January 15, 2018

Prohibited Weapons and Devices.

**a. Destructive devices.** Any person who knowingly has in his possession any destructive device is guilty of a crime of the third degree.

**b. Sawed-off shotguns.** Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree.

**c. Silencers.** Any person who knowingly has in his possession any firearm silencer is guilty of a crime of the fourth degree.

**d. Defaced firearms.** Any person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

**e. Certain weapons.** Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree.

**f. Dum-dum or body armor penetrating bullets.** (1) Any person, other than a law enforcement officer or persons engaged in activities pursuant to subsection f. of N.J.S.2C:39-6, who knowingly has in his possession any hollow nose or dum-dum bullet, or (2) any person, other than a collector of firearms or ammunition as curios or relics as defined in Title 18, United States Code, section 921 (a) (13) and has in his possession a valid Collector of Curios and Relics License issued by the Bureau of Alcohol, Tobacco and Firearms, who knowingly has in his possession any body armor breaching or penetrating ammunition, which means: (a) ammunition primarily designed for use in a handgun, and (b) which is comprised of a bullet whose core or jacket, if the jacket is thicker than .025 of an inch, is made of tungsten carbide, or hard bronze, or other material which is harder than a rating of 72 or greater on the Rockwell B. Hardness Scale, and (c) is therefore capable of breaching or penetrating body armor, is guilty of a crime of the fourth degree. For purposes of this section, a collector may possess not more than three examples of each distinctive variation of the ammunition described above. A distinctive variation includes a different head stamp, composition, design, or color.

000061

**g. Exceptions.** (1) Nothing in subsection a., b., c. , d., e., f., j. or k. of this section shall apply to any member of the Armed Forces of the United States or the National Guard, or except as otherwise provided, to any law enforcement officer while actually on duty or traveling to or from an authorized place of duty, provided that his possession of the prohibited weapon or device has been duly authorized under the applicable laws, regulations or military or law enforcement orders. Nothing in subsection h. of this section shall apply to any law enforcement officer who is exempted from the provisions of that subsection by the Attorney General. Nothing in this section shall apply to the possession of any weapon or device by a law enforcement officer who has confiscated, seized or otherwise taken possession of said weapon or device as evidence of the commission of a crime or because he believed it to be possessed illegally by the person from whom it was taken, provided that said law enforcement officer promptly notifies his superiors of his possession of such prohibited weapon or device.

(2) a. Nothing in subsection f. (1) shall be construed to prevent a person from keeping such ammunition at his dwelling, premises or other land owned or possessed by him, or from carrying such ammunition from the place of purchase to said dwelling or land, nor shall subsection f. (1) be construed to prevent any licensed retail or wholesale firearms dealer from possessing such ammunition at its licensed premises, provided that the seller of any such ammunition shall maintain a record of the name, age and place of residence of any purchaser who is not a licensed dealer, together with the date of sale and quantity of ammunition sold.

b. Nothing in subsection f. (1) shall be construed to prevent a designated employee or designated licensed agent for a nuclear power plant under the license of the Nuclear Regulatory Commission from possessing hollow nose ammunition while in the actual performance of his official duties, if the federal licensee certifies that the designated employee or designated licensed agent is assigned to perform site protection, guard, armed response or armed escort duties and is appropriately trained and qualified, as prescribed by federal regulation, to perform those duties.

(3) Nothing in paragraph (2) of subsection f. or in subsection j. shall be construed to prevent any licensed retail or wholesale firearms dealer from possessing that ammunition or large capacity ammunition magazine at its licensed premises for sale or disposition to another licensed dealer, the Armed Forces of the United States or the National Guard, or to a law enforcement agency, provided that the seller maintains a record of any sale or disposition to a law enforcement agency. The record shall include the name of the purchasing agency, together with written authorization of the chief of police or highest ranking official of the agency, the name and rank of the purchasing law enforcement officer, if applicable, and the date, time and amount of ammunition sold or otherwise disposed. A copy of this record shall be forwarded by the seller to the Superintendent of the Division of State Police within 48 hours of the sale or disposition.

(4) Nothing in subsection a. of this section shall be construed to apply to antique cannons as exempted in subsection d. of N.J.S.2C:39-6.

(5) Nothing in subsection c. of this section shall be construed to apply to any person who is specifically identified in a special deer management permit issued by the Division of Fish and Wildlife to utilize a firearm silencer as part of an alternative deer control method implemented in accordance with a special deer management permit issued pursuant to section 4 of P.L.2000, c. 46 (C.23:4-42.6), while the person is in the actual performance of the permitted alternative deer control method and while going to and from the place where the permitted alternative deer control method is being utilized. This exception shall not, however, otherwise apply to any person to authorize the purchase or possession of a firearm silencer.

000062

**h. Stun guns.** Any person who knowingly has in his possession any stun gun is guilty of a crime of the fourth degree.

i. Nothing in subsection e. of this section shall be construed to prevent any guard in the employ of a private security company, who is licensed to carry a firearm, from the possession of a nightstick when in the actual performance of his official duties, provided that he has satisfactorily completed a training course approved by the Police Training Commission in the use of a nightstick.

j. Any person who knowingly has in his possession a large capacity ammunition magazine is guilty of a crime of the fourth degree unless the person has registered an assault firearm pursuant to section 11 of P.L.1990, c. 32 (C.2C:58-12) and the magazine is maintained and used in connection with participation in competitive shooting matches sanctioned by the Director of Civilian Marksmanship of the United States Department of the Army.

**k. Handcuffs.** Any person who knowingly has in his possession handcuffs as defined in P.L.1991, c. 437 (C.2C:39-9.2), under circumstances not manifestly appropriate for such lawful uses as handcuffs may have, is guilty of a disorderly persons offense. A law enforcement officer shall confiscate handcuffs possessed in violation of the law.

### Credits

L.1978, c. 95, § 2C:39-3, eff. Sept. 1, 1979. Amended by L.1979, c. 179, § 2, eff. Sept. 1, 1979; L.1983, c. 58, § 1, eff. Feb. 7, 1983; L.1983, c. 479, § 2, eff. Jan. 12, 1984; L.1985, c. 360, § 2, eff. Nov. 12, 1985; L.1987, c. 228, § 2, eff. July 30, 1987; L.1989, c. 11, § 1, eff. Feb. 1, 1989; L.1990, c. 32, § 10, eff. May 30, 1990; L.1991, c. 437, § 1, eff. Jan. 18, 1992; L.1999, c. 233, § 2, eff. Jan. 1, 2000; L.2000, c. 46, § 5, eff. June 30, 2000; L.2003, c. 168, § 1, eff. Sept. 3, 2003.

### Editors' Notes

### SENATE LAW, PUBLIC SAFETY AND DEFENSE COMMITTEE STATEMENT

**Senate, No. 650--L.1989, c. 11**

Senate 650 permits a guard who is licensed to carry a firearm and is employed by a private security company to lawfully carry a nightstick when in the actual performance of his official duties, provided that he has satisfactorily completed a training course.

The bill requires that a training course, approved by the Police Training Commission, in the use of a nightstick must be completed before a private security guard licensed to carry a firearm is authorized to carry a nightstick while in the performance of his official duties.

This bill was pre-filed for introduction in the 1988 session pending technical review. As reported, the bill includes the changes required by technical review which has been performed.

N. J. S. A. 2C:39-3, NJ ST 2C:39-3
Current with 2017 laws and resolutions through L.2017, c. 323, 325-332, 334-372, 379-380 and J.R. No. 24

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17783   Page 69 of
2C:39-9. Manufacture, transport, disposition and defacement af..., NJ ST 2C:39-9
118

New Jersey Statutes Annotated
  Title 2c. The New Jersey Code of Criminal Justice (Refs & Annos)
    Subtitle 2. Definition of Specific Offenses
      Part 5. Offenses Against Public Order, Health and Decency
        Chapter 39. Firearms, Other Dangerous Weapons and Instruments of Crime (Refs & Annos)

This section has been updated. Click here for the updated version.

N.J.S.A. 2C:39-9

2C:39-9. Manufacture, transport, disposition and defacement
of weapons and dangerous instruments and appliances

Effective: November 1, 2013 to January 15, 2018

Manufacture, Transport, Disposition and Defacement of Weapons and Dangerous Instruments and Appliances. a. Machine guns. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any machine gun without being registered or licensed to do so as provided in chapter 58 is guilty of a crime of the third degree.

b. Sawed-off shotguns. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any sawed-off shotgun is guilty of a crime of the third degree.

c. Firearm silencers. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any firearm silencer is guilty of a crime of the fourth degree.

d. Weapons. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any weapon, including gravity knives, switchblade knives, ballistic knives, daggers, dirks, stilettos, billies, blackjacks, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings, or, except as otherwise provided in subsection i. of this section, in the case of firearms if he is not licensed or registered to do so as provided in chapter 58, is guilty of a crime of the fourth degree. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any weapon or other device which projects, releases or emits tear gas or other substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air, which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel or the device is for the purpose of personal self-defense, is pocket-sized and contains not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting serious bodily injury, or other than to be used by any person permitted to possess such weapon or device under the provisions of subsection d. of N.J.S. 2C:39-5, which is intended for use by financial and other business institutions as part of an integrated security system, placed at fixed locations, for the protection of money and property, by the duly authorized personnel of those institutions, is guilty of a crime of the fourth degree.

e. Defaced firearms. Any person who defaces any firearm is guilty of a crime of the third degree. Any person who knowingly buys, receives, disposes of or conceals a defaced firearm, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

000064

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17784   Page 70 of
118
2C:39-9. Manufacture, transport, disposition and defacement of..., NJ ST 2C:39-9

f. (1) Any person who manufactures, causes to be manufactured, transports, ships, sells, or disposes of any bullet, which is primarily designed for use in a handgun, and which is comprised of a bullet whose core or jacket, if the jacket is thicker than .025 of an inch, is made of tungsten carbide, or hard bronze, or other material which is harder than a rating of 72 or greater on the Rockwell B. Hardness Scale, and is therefore capable of breaching or penetrating body armor and which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel, is guilty of a crime of the fourth degree.

(2) Nothing in this subsection shall be construed to prevent a licensed collector of ammunition as defined in paragraph (2) of subsection f. of N.J.S.2C:39-3 from transporting the bullets defined in paragraph (1) of this subsection from (a) any licensed retail or wholesale firearms dealer's place of business to the collector's dwelling, premises, or other land owned or possessed by him, or (b) to or from the collector's dwelling, premises or other land owned or possessed by him to any gun show for the purposes of display, sale, trade, or transfer between collectors, or (c) to or from the collector's dwelling, premises or other land owned or possessed by him to any rifle or pistol club organized in accordance with the rules prescribed by the National Board for the Promotion of Rifle Practice; provided that the club has filed a copy of its charter with the superintendent of the State Police and annually submits a list of its members to the superintendent, and provided further that the ammunition being transported shall be carried not loaded in any firearm and contained in a closed and fastened case, gun box, or locked in the trunk of the automobile in which it is being transported, and the course of travel shall include only such deviations as are reasonably necessary under the circumstances.

g. Assault firearms. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of an assault firearm without being registered or licensed to do so pursuant to N.J.S.2C:58-1 et seq. is guilty of a crime of the third degree.

h. Large capacity ammunition magazines. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of a large capacity ammunition magazine which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel is guilty of a crime of the fourth degree.

i. Transporting firearms into this State for an unlawful sale or transfer. Any person who knowingly transports, ships or otherwise brings into this State any firearm for the purpose of unlawfully selling, transferring, giving, assigning or otherwise disposing of that firearm to another individual is guilty of a crime of the second degree. Any motor vehicle used by a person to transport, ship, or otherwise bring a firearm into this State for unlawful sale or transfer shall be subject to forfeiture in accordance with the provisions of N.J.S.2C:64-1 et seq.; provided however, this forfeiture provision shall not apply to innocent owners, nor shall it affect the rights of a holder of a valid lien.

The temporary transfer of a firearm shall not constitute a violation of this subsectionif [1] that firearm is transferred:

(1) while hunting or target shooting in accordance with the provisions of section 1 of P.L.1992, c. 74 (C.2C:58-3.1);

(2) for shooting competitions sponsored by a licensed dealer, law enforcement agency, legally recognized military organization, or a rifle or pistol club which has filed a copy of its charter with the superintendent in accordance with the provisions of section 1 of P.L.1992, c. 74 (C.2C:58-3.1); or

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

000065

Case 3:17-cv-01017-BEN-JLB   Document 132-9   Filed 12/01/22   PageID.17785   Page 71 of
118
2C:39-9. Manufacture, transport, disposition and defacement of..., NJ ST 2C:39-9

(3) for participation in a training course conducted by a certified instructor in accordance with the provisions of section 1 of P.L.1997, c. 375 (C.2C:58-3.2).

The transfer of any firearm that uses air or carbon dioxide to expel a projectile; or the transfer of an antique firearm shall not constitute a violation of this subsection.

**Credits**

L.1978, c. 95, § 2C:39-9, eff. Sept. 1, 1979. Amended by L.1979, c. 179, § 7, eff. Sept. 1, 1979; L.1980, c. 108, § 1, eff. Sept. 11, 1980; L.1981, c. 480, § 2, eff. Jan. 12, 1982; L.1983, c. 58, § 2, eff. Feb. 7, 1983; L.1987, c. 228, § 3, eff. July 30, 1987; L.1990, c. 32, § 3, eff. May 30, 1990; L.1999, c. 233, § 3, eff. Jan. 1, 2000; L.2007, c. 298, § 1, eff. April 1, 2008; L.2013, c. 111, § 1, eff. Nov. 1, 2013.

Footnotes
1       So in original.
N. J. S. A. 2C:39-9, NJ ST 2C:39-9
Current with 2017 laws and resolutions through L.2017, c. 323, 325-332, 334-372, 379-380 and J.R. No. 24

---

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

000066

# EXHIBIT 19

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedNegative Treatment Reconsidered by New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 2nd Cir.(Conn.), Oct. 19, 2015

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

McKinney's Consolidated Laws of New York Annotated
   Penal Law (Refs & Annos)
      Chapter 40. Of the Consolidated Laws (Refs & Annos)
         Part Three. Specific Offenses
            Title P. Offenses Against Public Safety
               Article 265. Firearms and Other Dangerous Weapons (Refs & Annos)

McKinney's Penal Law § 265.00

§ 265.00 Definitions

Effective: July 5, 2013
Currentness

As used in this article and in article four hundred, the following terms shall mean and include:

1. "Machine-gun" means a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

2. "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

3. "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm.

4. "Switchblade knife" means any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

5. "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

000068

5-a. "Pilum ballistic knife" means any knife which has a blade which can be projected from the handle by hand pressure applied to a button, lever, spring or other device in the handle of the knife.

5-b. "Metal knuckle knife" means a weapon that, when closed, cannot function as a set of plastic knuckles or metal knuckles, nor as a knife and when open, can function as both a set of plastic knuckles or metal knuckles as well as a knife.

5-c. "Automatic knife" includes a stiletto, a switchblade knife, a gravity knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife.

6. "Dispose of" means to dispose of, give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

7. "Deface" means to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

8. "Gunsmith" means any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any firearm, large capacity ammunition feeding device or machine-gun.

9. "Dealer in firearms" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any assault weapon, large capacity ammunition feeding device, pistol or revolver.

10. "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

11. "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

12. "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

13. "Cane Sword" means a cane or swagger stick having concealed within it a blade that may be used as a sword or stilletto.

000069

14. [See also subd. 14 below] "Chuka stick" means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks.

14. [See also subd. 14 above] "Antique firearm" means:

Any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade.

15. "Loaded firearm" means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.

15-a. "Electronic dart gun" means any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile.

15-b. "Kung Fu star" means a disc-like object with sharpened points on the circumference thereof and is designed for use primarily as a weapon to be thrown.

15-c. "Electronic stun gun" means any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person.

16. "Certified not suitable to possess a self-defense spray device, a rifle or shotgun" means that the director or physician in charge of any hospital or institution for mental illness, public or private, has certified to the superintendent of state police or to any organized police department of a county, city, town or village of this state, that a person who has been judicially adjudicated incompetent, or who has been confined to such institution for mental illness pursuant to judicial authority, is not suitable to possess a self-defense spray device, as defined in section 265.20 of this article, or a rifle or shotgun.

17. "Serious offense" means (a) any of the following offenses defined in the former penal law as in force and effect immediately prior to September first, nineteen hundred sixty-seven: illegally using, carrying or possessing a pistol or other dangerous weapon; making or possessing burglar's instruments; buying or receiving stolen property; unlawful entry of a building; aiding escape from prison; that kind of disorderly conduct defined in subdivisions six and eight of section seven hundred twenty-two of such former penal law; violations of sections four hundred eighty-three, four hundred eighty-three-b, four hundred eighty-four-h and article one hundred six of such former penal law; that kind of criminal sexual act or rape which was designated as a misdemeanor; violation of section seventeen hundred forty-seven-d and seventeen hundred forty-seven-e of such former penal law; any violation of any provision of article thirty-three of the public health law relating to narcotic drugs which was defined as a misdemeanor by section seventeen hundred fifty-one-a of such former penal law, and any violation of any provision of article thirty-three-A of the public health law relating to depressant and stimulant drugs which was defined as a misdemeanor by section seventeen hundred forty-seven-b of such former penal law.

000070

(b) [As amended by L.1999, c. 635, § 11. See, also, par. (b) below.] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the fourth degree; stalking in the third degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

(b) [As amended by L.1999, c. 635, § 15. See, also, par. (b) above.] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the third degree; stalking in the fourth degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

18. "Armor piercing ammunition" means any ammunition capable of being used in pistols or revolvers containing a projectile or projectile core, or a projectile or projectile core for use in such ammunition, that is constructed entirely (excluding the presence of traces of other substances) from one or a combination of any of the following: tungsten alloys, steel, iron, brass, bronze, beryllium copper, or uranium.

19. "Duly authorized instructor" means (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a not-for-profit corporation duly organized under the laws of this state; or (c) by a person duly qualified and designated by the department of environmental conservation under paragraph d of subdivision six of section 11-0713 of the environmental conservation law as its agent in the giving of instruction and the making of certifications of qualification in responsible hunting practices.

20. "Disguised gun" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive and is designed and intended to appear to be something other than a gun.

21. "Semiautomatic" means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.

22. "Assault weapon" means

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

(i) a folding or telescoping stock;

000071

(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;

(iii) a thumbhole stock;

(iv) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(v) a bayonet mount;

(vi) a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

(vii) a grenade launcher; or

(b) a semiautomatic shotgun that has at least one of the following characteristics:

(i) a folding or telescoping stock;

(ii) a thumbhole stock;

(iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(iv) a fixed magazine capacity in excess of seven rounds;

(v) an ability to accept a detachable magazine; or

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

(i) a folding or telescoping stock;

(ii) a thumbhole stock;

(iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

(iv) capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

(v) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

(vi) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

(vii) a manufactured weight of fifty ounces or more when the pistol is unloaded; or

(viii) a semiautomatic version of an automatic rifle, shotgun or firearm;

(d) a revolving cylinder shotgun;

(e) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in subparagraph (v) of paragraph (e) of subdivision twenty-two of section 265.00 of this chapter as added by chapter one hundred eighty-nine of the laws of two thousand and otherwise lawfully possessed pursuant to such chapter of the laws of two thousand prior to September fourteenth, nineteen hundred ninety-four;

(f) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in paragraph (a), (b) or (c) of this subdivision, possessed prior to the date of enactment of the chapter of the laws of two thousand thirteen which added this paragraph;

(g) provided, however, that such term does not include:

(i) any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in 18 U.S.C. 921(a)(16);

(ii) a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

(iii) a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine; or

(iv) a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to 18 U.S.C. 922 as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon;

(v) any weapon validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter. Such weapons shall be subject to the provisions of paragraph (h) of this subdivision;

(vi) any firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof that is validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter;

000073

(h) Any weapon defined in paragraph (e) or (f) of this subdivision and any large capacity ammunition feeding device that was legally possessed by an individual prior to the enactment of the chapter of the laws of two thousand thirteen which added this paragraph, may only be sold to, exchanged with or disposed of to a purchaser authorized to possess such weapons or to an individual or entity outside of the state provided that any such transfer to an individual or entity outside of the state must be reported to the entity wherein the weapon is registered within seventy-two hours of such transfer. An individual who transfers any such weapon or large capacity ammunition device to an individual inside New York state or without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor unless such large capacity ammunition feeding device, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, is transferred within one year of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph.

23. "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, that (a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition, or (b) [Suspended and not effective, pursuant to L.2013, c. 57, pt. FF, § 4, eff. March 29, 2013, deemed eff. Jan. 15, 2013.] contains more than seven rounds of ammunition, or (c) [Suspended and not effective, pursuant to L.2013, c. 57, pt. FF, § 4, eff. March 29, 2013, deemed eff. Jan. 15, 2013.] is obtained after the effective date of the chapter of the laws of two thousand thirteen which amended this subdivision and has a capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a feeding device that is a curio or relic. A feeding device that is a curio or relic is defined as a device that (i) was manufactured at least fifty years prior to the current date, (ii) is only capable of being used exclusively in a firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof, (iii) is possessed by an individual who is not prohibited by state or federal law from possessing a firearm and (iv) is registered with the division of state police pursuant to subdivision sixteen-a of section 400.00 of this chapter, except such feeding devices transferred into the state may be registered at any time, provided they are registered within thirty days of their transfer into the state. Notwithstanding paragraph (h) of subdivision twenty-two of this section, such feeding devices may be transferred provided that such transfer shall be subject to the provisions of section 400.03 of this chapter including the check required to be conducted pursuant to such section.

24. "Seller of ammunition" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling or keeping ammunition.

25. "Qualified retired New York or federal law enforcement officer" means an individual who is a retired police officer as police officer is defined in subdivision thirty-four of section 1.20 of the criminal procedure law, a retired peace officer as peace officer is defined in section 2.10 of the criminal procedure law or a retired federal law enforcement officer as federal law enforcement officer is defined in section 2.15 of the criminal procedure law, who: (a) separated from service in good standing from a public agency located in New York state in which such person served as either a police officer, peace officer or federal law enforcement officer; and (b) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest, pursuant to their official duties, under the criminal procedure law; and (c) (i) before such separation, served as either a police officer, peace officer or federal law enforcement officer for five years or more and at the time of separation, is such an officer; or (ii) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency at or before the time of separation; and (d)(i) has not been found by a qualified medical professional employed by such agency to be unqualified for reasons relating to mental health; or (ii) has not entered into an agreement with such agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified

for reasons relating to mental health; and (e) is not otherwise prohibited by New York or federal law from possessing any firearm.

**Credits**

(L.1965, c. 1030. Amended L.1967, c. 791, § 46; L.1969, c. 123, § 1; L.1972, c. 588, § 1; L.1972, c. 605, § 1; L.1974, c. 179, § 1; L.1974, c. 462, § 1; L.1974, c. 986, §§ 1, 2; L.1974, c. 1041, § 1; L.1976, c. 217, § 1; L.1982, c. 492, § 1; L.1985, c. 61, § 1; L.1986, c. 328, § 2; L.1986, c. 646, § 1; L.1988, c. 264, § 1; L.1990, c. 264, § 1; L.1995, c. 219, § 2; L.1996, c. 354, § 2; L.1997, c. 446, § 2, eff. Aug. 25, 1997; L.1998, c. 378, § 1, eff. Nov. 1, 1998; L.1999, c. 210, § 1, eff. Nov. 1, 1999; L.1999, c. 635, §§ 11, 15, eff. Dec. 1, 1999; L.2000, c. 189, §§ 8 to 10, eff. Nov. 1, 2000; L.2003, c. 264, § 33, eff. Nov. 1, 2003; L.2007, c. 510, § 3, eff. Feb. 11, 2008; L.2008, c. 257, § 3, eff. Nov. 1, 2008; L.2010, c. 232, §§ 2, 3, eff. July 30, 2010; L.2013, c. 1, § 37, eff. Jan. 15, 2013; L.2013, c. 1, § 38; L.2013, c. 1, § 39, eff. March 16, 2013; L.2013, c. 98, § 1, eff. July 5, 2013.)

**Editors' Notes**

## VALIDITY

<For validity of this section, see New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 990 F.Supp.2d 349, 351 (W.D.N.Y. Dec. 31, 2013) and N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242 (2d Cir. 2015), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016)>

## PRACTICE COMMENTARIES

*by William C. Donnino*

### History

### Second Amendment

### Definitions

### Firearm and loaded firearm

### Antique firearm

### Assault weapon

### Automatic knife

### Billy

### Chuka stick

### Electronic dart gun

### Electronic stun gun

### Gravity knife

### Kung Fu star

**000075**

Large capacity ammunition feeding device

Penal Law § 265.00(22)(h)

Penal Law § 265.02(8)

Penal Law § 265.10

Penal Law § 265.11

Penal Law § 265.36 and § 265.37

Machine-gun

Metal knuckles

Metal knuckle knife

Pilum ballistic knife

Rifle or shotgun

History

In 1963, as a result of years of study and the recommendations of the Joint Legislative Committee on Firearms and Ammunition, the provisions of the former Penal Law dealing with weapons were revised. L.1963, c. 136; former Penal Law §§ 1896-1904. That revision placed in one section the definitions of most of the substantive crimes [*see* former Penal Law § 1897, "Possession of weapons and dangerous instruments and appliances"].

In 1967, the current Penal Law took effect and carried forward, almost verbatim, the weapon provisions of the former Penal Law, placing the major provisions primarily in Penal Law former § 265.05. In 1974, the then-existing Penal Law § 265.05 was restructured by dividing the various crimes defined in that one section into five sections, currently Penal Law § 265.01 through Penal Law § 265.05, in a degree structure which was generally in accord with the structure of other Penal Law statutes. L.1974, c. 1041.

There were a substantial number of amendments thereafter, most of which added new crimes, and that history is set forth in the comments to the applicable amendment.

Second Amendment

The Second Amendment to the Federal Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." Thereafter, the Supreme Court applied the Second Amendment to the states. *McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010).

000076

In *Heller*'s view, "the inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose." *Heller*, 554 U.S. at 628.

Thus, the protected weapons are those which were in "common use" at the time of the amendment for lawful purposes, such as self-defense and defense of one's home. *Id.* at 624-27. That reference to weapons in "common use" at the time of the amendment was not intended to necessarily exclude from the amendment's protection weapons presently in common use for lawful purposes, given the Court's holding that the amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. *See Caetano v. Massachusetts*, 577 U.S. ___, 136 S.Ct. 1027, 194 L.Ed.2d 99 (2016).

The amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short barreled shotguns" [*Id.* at 625], machineguns [*Id.* at 624] and a M-16 rifle. *Id.* at 627. Nor does the amendment support "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

With respect to regulatory laws, the Court expressly declined to provide an "exhaustive" list of "lawful regulatory measures," but the Court did explain that the Second Amendment does not interdict "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* 626-27 and n.26; *McDonald v. City of Chicago*, 561 U.S. at 786, *supra* (emphasizing the *Heller* limitations of the Second Amendment with respect the ability to carry any weapon in any manner for whatever purpose and with respect to regulatory measures).

Then, in *Caetano v. Massachusetts*, 577 U.S. ___, *supra,* the Court, in a per curiam opinion, rejected the three reasons that the Massachusetts court had given for upholding a state ban on the possession of stun guns and remanded the case for further consideration. The Supreme Court began by reiterating that *Heller* held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." Thus, the state court's first reason, that stun guns "were not in common use at the time of the Second Amendment's enactment" was inconsistent with that holding. Next, the state court had reasoned that stun guns meet the historical exception of prohibiting the carrying of dangerous and "unusual" weapons; but when the state equated "unusual" with the stun gun not in common use at the time of the amendment's enactment, the Supreme Court found that it did no more than reiterate its first erroneous reason. As for its third reason, that stun guns are not readily adaptable to use in the military, the Supreme Court stated that "*Heller* rejected the proposition 'that only those weapons useful in warfare are protected.' "

New York has a statute which parallels the Second Amendment. Civil Rights Law § 4 states: "A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed."

To date, that statute has not been interpreted to negate any of New York's statutory restrictions on the possession of firearms. *See Moore v. Gallup*, 267 A.D. 64, 45 N.Y.S.2d 63 (3d Dept. 1943), *affirmed without opinion* 293 N.Y. 846, 59 N.E.2d 439 (1944), *but remittitur amended* 294 N.Y. 699, 60 N.E.2d 847 (1945) to state that the Court had held that the New York statutes relating to a license to carry a concealed pistol were not repugnant to the provisions of the Fourteenth Amendment.

Since *Heller*, New York has continued to uphold its statutory scheme which prohibits the possession of a firearm without an appropriate license. In *People v. Hughes*, 22 N.Y.3d 44, 978 N.Y.S.2d 97, 1 N.E.3d 298 (2013), the Court of Appeals held that a conviction of "criminal possession of a weapon in the second degree"

000077

and "criminal possession of a weapon in the third degree," predicated on the defendant's having been previously convicted of a crime, did not violate the Second Amendment. *See also Schulz v. State of N. Y. Exec.*, 134 A.D.3d 52, 53, 19 N.Y.S.3d 92 (3d Dept. 2015), *appeal dismissed upon the ground that no substantial constitutional question is directly involved* 26 N.Y.3d 1139, 27 N.Y.S.3d 502, 47 N.E.3d 782 (2016); *People v. Perkins,* 62 A.D.3d 1160, 1161, 880 N.Y.S.2d 209 (3d Dept. 2009) ("Unlike the statute at issue in *Heller*, Penal Law article 265 does not effect a complete ban on handguns and is, therefore, not a 'severe restriction' improperly infringing upon defendant's Second Amendment rights. Moreover, in our view, New York's licensing requirement remains an acceptable means of regulating the possession of firearms ... and will not contravene *Heller* so long as it is not enforced in an arbitrary and capricious manner"); *People v. Ferguson*, 21 Misc.3d 1120(A), 873 N.Y.S.2d 513 (Criminal Court, Queens County, 2008) ("... *Heller*, is distinguishable from the case at bar for several reasons. Firstly, at the time of his arrest, defendant was not in his home, but was in an airport. Secondly, the requirement that handguns be licensed in the State of New York is not tantamount to a total ban and, therefore, is not a 'severe restriction' as was the case in *Heller*. Lastly, the Court identified certain presumptively lawful regulatory measures which would survive a constitutional challenge including the carrying of firearms in 'sensitive places.' Licensing is an acceptable regulatory measure and an airport falls within the scope of a 'sensitive place.' ").

In an extensive opinion, including a detailed recitation of the history of New York's regulation of firearms, the Second Circuit Court of Appeals held that the Second Amendment was not violated by New York's statutory requirement that a person who wants to "have and carry concealed [a hand gun], without regard to employment or place of possession" must show that "proper cause" exists for the issuance of a license to do so [Penal Law § 400.00(2)(f)]. *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012).

### Definitions

The definitions in Penal Law § 265.00 describe the various types of weapons which are regulated by this article, as well as certain terms utilized in the article regulating the licensing of firearms [Penal Law article 400]. Some of those definitions are discussed here; others are discussed in the sections dealing with the crimes in which they are used. The principal weapon regulated by this article is a firearm and thus it is discussed first, with the remaining terms thereafter in alphabetical order.

### Firearm and Loaded Firearm

By definition, a "firearm" is limited to: a pistol, revolver, the so-called "sawed-off" shotgun or rifle, and an "assault weapon" [Penal Law § 265.00(3)]. The vast array of other types of rifles and shotguns are not included within that definition and thus are not a subject of the statutes which utilize the term "firearm" to define a crime. A "rifle" and a "shotgun" are separately-defined terms [Penal Law § 265.00(11) & (12)] and there are statutes which define crimes which pertain separately and solely to them.

The statutory definition of "firearm" does not require that the firearm be loaded. A separate term and definition are provided for a "loaded firearm" [Penal Law § 265.00(15)]. In addition to the common understanding that a firearm is loaded when it contains ammunition, by the statutory definition, a firearm is loaded when there is simultaneous possession of the firearm and ammunition, irrespective of whether the ammunition is in the firearm.

The statutory definition of "firearm" also does not specify that the firearm need be operable. By contrast, the definition of "loaded firearm" does require ammunition "which may be used to discharge" the firearm [Penal Law § 265.00(15)], and the definition of a "machine gun," does require that the weapon, "loaded or unloaded," be one "from which a number of shots or bullets may be rapidly or automatically discharged from

a magazine with one continuous pull of the trigger...." *Compare* Penal Law § 10.00(12), defining a "deadly weapon" to mean a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged...."; *People v. Shaffer*, 66 N.Y.2d 663, 495 N.Y.S.2d 965, 486 N.E.2d 823 (1985) (the "People failed to establish that the gun ... was a 'deadly weapon' ... that is, both operable and loaded with live ammunition").

However, inherent to the common understanding of what constitutes a firearm and key to its danger is its operability. Hence, to establish that the weapon in issue is a "firearm" the courts have required proof of its operability, that is, that it is capable of discharging ammunition. *See People v. Longshore*, 86 N.Y.2d 851, 852, 633 N.Y.S.2d 475, 657 N.E.2d 496 (1995) ("Although the statute is silent on the point, it is now accepted that to establish criminal possession of a handgun the People must prove that the weapon is operable," and *Longshore* applied that same requirement of operability to a rifle or shotgun).

A firearm that is found in a disassembled condition but is operable when assembled is an operable firearm without any further proof that the defendant was personally capable of rendering the disassembled firearm operable. *People v. Lugo*, 161 A.D.2d 122, 554 N.Y.S.2d 849 (1st Dept. 1990). *See also People v. Cavines*, 70 N.Y.2d 882, 883, 524 N.Y.S.2d 178, 518 N.E.2d 1170 (1987) ("... the fact that the gun malfunctioned [during the commission of a crime], standing alone, does not defeat the overwhelming inference that immediately prior to the pulling of the trigger, the gun was capable of discharging the ammunition, particularly in view of the uncontradicted evidence that when subsequently test-fired, the gun and the bullets were found to be operable").

In addition to the firearm being operable, the ammunition of a loaded firearm must be "live," that is, capable of being discharged by the firearm. Penal Law § 265.00(15). *See People v. Johnson,* 56 A.D.3d 1191, 867 N.Y.S.2d 319 (4th Dept. 2008); *People v. Daniels*, 77 A.D.2d 745, 430 N.Y.S.2d 881 (3d Dept. 1980); *People v. Thomas*, 70 A.D.2d 570, 417 N.Y.S.2d 66 (1st Dept. 1979).

A "firearm" that is not operable may be the subject of a charge of attempted criminal possession of a weapon. *People v. Saunders*, 85 N.Y.2d 339, 624 N.Y.S.2d 568, 648 N.E.2d 1331 (1995).

Neither "pistol" nor "revolver" is defined by statute. They both, however, refer to a handgun. *See* Random House Webster's Unabridged Dictionary (1999) definition of "handgun" ("any firearm that can be held and fired with one hand; a revolver or a pistol"); definition of "pistol" ("a short firearm intended to be held and fired with one hand") and definition of "revolver" ("a handgun having a revolving chambered cylinder for holding a number of cartridges, which may be discharged in succession without reloading").

"Sawed-off" shotgun or rifle was first defined solely as a firearm of a "size which may be concealed upon the person." That inherently imprecise definition proved inadequate. *See People v. Cortez*, 110 Misc.2d 652, 442 N.Y.S.2d 873 (Supreme Court, N.Y. County, 1981). The definition was amended in 1982 [c. 492] and that definition appeared to require that the shotgun or rifle have a barrel "and" an overall length of the specified measurement in order to be classified as a sawed-off shotgun or rifle, and that a weapon made from a shotgun or rifle would be so classified only if its overall length was less than that specified in the definition. *People v. Santiago*, 133 Misc.2d 161, 506 N.Y.S.2d 136 (Supreme Court, N.Y. County, 1986) was of the view that the Legislature intended that a shotgun or rifle, or a weapon made from either of them, should be classified as a "sawed-off" weapon depending upon the length of the barrel "or" overall length, and recommended clarifying legislation. *See also People v. Crivillaro*, 142 Misc.2d 527, 538 N.Y.S.2d 152 (Supreme Court, Bronx County, 1989). In 1988, the Legislature amended the definition to specify that a shotgun or rifle may be deemed a sawed-off weapon if the barrel length alone is less than the specified number of inches (18 for a shotgun, 16 for a rifle), and that any weapon made from a shotgun or rifle may be deemed a sawed-off weapon if the overall length is less than 26 inches [Penal Law § 265.00(3)(b), (c), and (d)]. L.1988, c. 264.

000079

An "assault weapon," which is separately defined in Penal Law § 265.00(22), was added to the definition of "firearm" in 2000 [c. 189]. By amending the definition of "firearm" to include an "assault weapon," the "assault weapon" became the subject of such crimes as: "criminal possession of a weapon" in the fourth degree [Penal Law § 265.01(1), (3)], third degree [Penal Law § 265.02(1), (3), (5)], and second degree [Penal Law § 265.03]; "criminal sale of a firearm" in the second degree [Penal Law § 265.12] and first degree [Penal Law § 265.13]; "criminal sale of a firearm" with the aid of a minor [Penal Law § 265.14] and to a minor [Penal Law § 265.16]; and a couple of crimes defined in Penal Law § 265.10(3) and (6).

In addition to including an "assault weapon" in the definitions of crimes that use the term "firearm," the legislation added some crimes which specifically name an "assault weapon." The first of the amended crimes was "criminal possession of a weapon in the third degree," a felony. It was amended to include a subdivision to prohibit the possession of an assault weapon [Penal Law § 265.02(7)], irrespective of whether it is loaded and irrespective of where the possession takes place. The second of the amended crimes was "manufacture, transport, disposition and defacement of weapons ..." [Penal Law § 265.10]. It was amended to forbid anyone to manufacture, transport, or dispose of any "assault weapon" [Penal Law § 265.10(1), (2) and (3) (first sentence)].

An "antique firearm," which is separately defined in Penal Law § 265.00(14), is expressly excluded from the definition of "firearm."

### Antique Firearm

As noted in the discussion of the definition of "firearm," an "antique firearm" is expressly excluded from the definition of "firearm" [Penal Law § 265.00(3)]. *See also* Penal Law § 265.00(22)(g)(i) exempting "antique firearm," as defined by Federal law, from the definition of "assault rifle." As a result of the exclusion of "antique firearm," as defined by the instant statute, from the definition of "firearm," any proscription related to an "antique firearm" requires a specific reference to that term. *See, e.g.* Penal Law § 265.01(4), making it a crime to possess an "antique firearm."

The term "antique firearm" is separately defined by New York law to mean any "unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade" [Penal Law § 265.00(14)]. It is critical to note that the definition requires that the defined weapon be "unloaded" in order for it to qualify as an "antique firearm"; a weapon which met the structural definition of an "antique firearm" but was loaded would constitute a "firearm" and be subject to the laws applicable thereto. *See People v. Wedgewood*, 106 A.D.2d 674, 483 N.Y.S.2d 440 (2d Dept. 1984)*; People v. Mott*, 112 Misc.2d 833; 447 N.Y.S.2d 632 (Supreme Court, N.Y. County, 1982).

In adding the definition of "antique firearm" in 1974 [c. 986] and excluding it from the definition of "firearm," the Legislature intended that "hobbyists would be permitted to collect ... trade, buy and sell these antique firearms without being subject to the requirements of licensing." *People v. Mott*, 112 Misc.2d at 835, *supra*, quoting the Legislative Memorandum. In 2011, however, the Legislature changed its mind by amending the crime of "criminal possession of a firearm in the fourth degree" [Penal Law § 265.01(4)] to include as a crime, the possession of an "antique firearm." [L.2011 c. 357]. The Legislative Memorandum to the companion bill (Assembly 8456) stated that "[m]odern muzzle loading rifles are essentially a modern single shot rifle. They look and operate very much like a sporting rifle and allow accurate shots at distances up to 200 yards ... [and] can be reloaded in seconds...." There is authority to issue a license to have, possess, collect and carry "antique pistols," as that term is separately defined in Penal Law § 400.00(2)(g).

000080

### Assault Weapon

An "assault weapon" was added to the definition of "firearm" in 2000 [Penal Law § 265.00(3)] and at the same time, was separately defined [Penal Law § 265.00(22)]. L.2000, c. 189. In 2013, the NY SAFE Act amended and significantly revised the definition.

A principal difference between the former and present definition is that the former definition required the requisite firearm to have two military style features or characteristics, while the current definition requires only one. Thus, as the Governor explained: "Under the stricter definitions, semi-automatic pistols [see subdivision 22(c) and (f)] and rifles [see subdivision 22(a) and (f)] with detachable magazines and one military style feature will be considered assault weapons. Semi-automatic shotguns [see subdivision 22(b) and (f)] with one military style feature will also be considered assault weapons." Governor's Press Release, "Governor Cuomo Signs NY Safe Act in Rochester," January 16, 2013. Also included as an assault weapon is a "revolving cylinder shotgun" [subdivision 22(d)].

The definition contains eight paragraphs (a) to (h), several of which define different types of weapon which can be classified as an assault weapon; they are:

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the listed characteristics;

(b) a semiautomatic shotgun that has at least one of the listed characteristics;

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the listed characteristics;

(d) a revolving cylinder shotgun;

(e) semiautomatic rifle, shotgun or pistol defined in the former Penal Law § 265.00(22)(e)(v) of the L.2000, c. 189 which had been lawfully possessed, pursuant to laws of 2000, c. 189, prior to September fourteenth, nineteen hundred ninety-four.

The term "semiautomatic" is separately defined in subdivision 21 of the instant section which in lay terms includes any repeating rifle, shotgun or pistol which, although requiring a separate pull of the trigger to fire each round, has the capacity of being fired to extract the spent shell and automatically load a cartridge.

There is a grandfathering provision, paragraphs (f) and (g), exempting certain weapons from the definition.

Assault weapons defined in subdivision (22)(e) or (f), possessed before January 16, 2013, had to be registered by April 15, 2014 [Penal Law § 400.00(16-a)]; except a weapon defined in subdivision (22)(g)(vi) "transferred into the state may be registered at any time, provided such weapons are registered within thirty days of their transfer into the state." Once having registered, the registrant must "recertify" every five years thereafter or suffer revocation of the registration [Penal Law § 400.00(16-a)].

Owners of a grandfathered assault weapon or large capacity ammunition feeding device may only transfer same to a purchaser authorized to possess same or to an individual or entity outside of the state [subdivision 22(h)]. Governor's Press Release, supra. An individual who transfers a grandfathered weapon or large capacity ammunition device to an individual inside New York State or without complying with the other provisions of

the statute [subdivision 22(h)], shall, except for a large capacity ammunition device transferred within one year of the effective date of the NY SAFE Act, be guilty of a class A misdemeanor [subdivision 22(h)].

### Automatic knife

In 2007, legislation was passed to support and promote the establishment of a "cutlery and knife museum" in the Hudson Valley. L.2007, c. 510. As a result, the museum and its employees would need an exemption from the crime of possession of certain knives. Thus, the term "automatic knife" was created and defined to include a "stiletto, a switchblade knife, a gravity knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife" [Penal Law § 265.00(5-c)], and an exemption from criminal liability was provided for the possession or ownership of automatic knives by a cutlery and knife museum, established pursuant to Education Law § 216-c, or by any employee of the museum when acting in furtherance of the business of the museum [Penal Law § 265.20(d)].

### Billy

There is no statutory definition of "billy." However, in *People v. Ocasio*, 28 N.Y.3d 178, 43 N.Y.S.3d 228, 65 N.E.3d 1263 (2016), the Court described a "billy" as "a cylindrical or rounded, rigid, club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes." The Court further explained that it matters not whether the "billy" is comprised of wood, metal, or other synthetic material, or that the billy is collapsible or extendible.

### Chuka stick

The "chuka stick" definition [Penal Law § 265.00(14)] was added by L.1974, c. 179. In urging the Governor to approve the legislation, the sponsor of the bill wrote: "The chuka stick is an instrument that may be purchased or easily assembled from two pieces of wood and a piece of thong, cord or chain. With a minimum amount of practice, this instrument may be effectively used as a garrote, bludgeon, thrusting or striking device. The chuka stick is designed primarily as a weapon and has no purpose other than to maim or, in some instances, kill." Letter of Assemblyman Richard C. Ross to the Counsel to the Governor, Governor's Bill Jacket for the L.1974, c. 179.

### Electronic dart gun

The "electronic dart gun" definition [Penal Law § 265.00(15-a)] was added in 1976. L.1976, c. 217. In urging the Governor to approve the legislation, the sponsor of the bill wrote: "There are a number of these devices being manufactured, the most popular of which is called a 'Taser Public Defender.' It is designed to look like a flashlight which can shoot two barbed darts a distance of 15 to 18 feet and deliver a 50,000 volt jolt of electricity effective through an inch of clothing. While the effect of the charge is to stun, knock out or paralyze a person and is temporary, it causes great pain and may well be lethal to a person in poor health." Letter of Senator John D. Caemmerer to the Counsel to the Governor, Governor's Bill Jacket for the L.1976, c. 217.

### Electronic stun gun

In 1990, the Legislature added the definition of an "electronic stun gun" [Penal Law § 265.00(15-c)]. L.1990, c. 264. That definition is like the definition of an "electronic dart gun." Penal Law § 265.00(15-a). A principal difference is that the "electronic dart gun" requires that the electrical shock be passed by means of a dart

or projectile. The Governor, who recommended the legislation, indicated that the "availability and use" of a weapon "which passes a high voltage electrical shock to a person by means of direct contact or without resort to a projectile" poses the same threat as an electronic dart gun. 1990 Governor's Approval Memorandum 31. Accordingly, for both weapons, possession per se is a crime. Penal Law §§ 265.01(1); 265.02(1).

There is a difference of judicial opinion on whether, in a prosecution for possession of an "electronic stun gun," the People are required to prove that the defendant knew it was an "electronic stun gun." *Compare People v. Small*, 157 Misc.2d 673, 598 N.Y.S.2d 431 (Supreme Court, New York County, 1993)(knowledge required) *with People v. Voltaire*, 18 Misc.3d 408, 413 n.1, 852 N.Y.S.2d 649 (Criminal Court, Kings County, 2007) (disagreeing with *Small* in a case in which the court decided that the defendant need not know that the knife possessed was a gravity knife) *and People v. Parrilla*, 27 N.Y.3d 400, 33 N.Y.S.3d 842, 53 N.E.3d 719 (2016) (in a prosecution for possession of a "gravity knife," the People must prove that the defendant possessed a "knife," but not that he or she knew that it met the definition of a "gravity knife").

### Gravity knife

The definition of "gravity knife" [Penal Law § 265.00(5)] requires that the knife's blade lock in place automatically; thus, a "butterfly knife," which requires manual locking is not a gravity knife. *People v. Zuniga*, 303 A.D.2d 773, 759 N.Y.S.2d 86 (2d Dept. 2003). A local accusatory instrument which charges a defendant with possession of a gravity knife is jurisdictionally defective when it includes only a "conclusory statement that an object recovered from a defendant is a gravity knife," without any explanation of how the object meets the statutory definition. *People v. Dreyden*, 15 N.Y.3d 100, 104, 905 N.Y.S.2d 542, 931 N.E.2d 526, 528 (2010).

In a prosecution for possession of a "gravity knife," the People must prove that the defendant possessed a "knife," but not that he or she knew that it met the definition of a "gravity knife." *People v. Parrilla*, 27 N.Y.3d 400, 33 N.Y.S.3d 842, 53 N.E.3d 719 (2016). The Appellate Divisions have held that the People are required to prove that the "gravity knife" is operable [*People v. Smith*, 309 A.D.2d 608, 765 N.Y.S.2d 777 (1st Dept. 2003); *People v. Perez*, 123 A.D.2d 721, 506 N.Y.S.2d 961 (2d Dept. 1986)].

### Kung Fu star

In 1982, the possession of a "Kung Fu star" [Penal Law § 265.00(15-b)] with intent to use it unlawfully against another was made a crime. L.1982, c. 840. In 1985, the manufacturing and transporting of a Kung Fu star was made a crime [Penal Law § 265.10]. L.1985, c. 61. In 1988, in recognition that Kung Fu stars may not be manufactured and, in the words of the Legislative Memorandum, that they "serve no legitimate purpose other than as a weapon," the statute was again amended to make the per se possession of a Kung Fu star a crime [Penal Law § 265.01(2)]. L.1988, c. 220.

### Large capacity ammunition feeding device

The concept of a "large capacity ammunition feeding device" [Penal Law § 265.00(23)] (hereinafter "large feeding device") was introduced in 2000 [c. 189] and significantly amended in 2013 by the NY SAFE Act. [L.2013, c. 1, as amended by L.2013, c. 57]. Prior to the amendment, the definition excluded a large feeding device manufactured after September 30, 1994. That limitation was repealed; thus, those large feeding devices are included in the revised definition of a "large feeding device." According to the Legislative Memorandum, the reason for doing so was "because it was impossible to tell the difference between magazines manufactured before or after [September 30, 1994]."

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**000083**

Under the revised definition, a large feeding device is one that "(a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a large feeding device that is a curio or relic."

The two alternate definitions initially enacted as subdivisions (b) and (c) were in a convoluted way repealed. The import of those alternate subdivisions was to have the definition of a device ultimately limited to one that had a capacity of seven rounds. But, after enactment, it was noted that the smallest manufactured device normally had a capacity of ten rounds. Kaplan and Hakim, "New York Governor Favors Easing Newly Passed Gun Law," New York Times, March 20, 2013 (http://www.nytimes.com/2013/03/21/nyregion/cuomo-seeks-to-ease-a-newly-passed-gun-restriction.html). Thus, before subdivisions (b) and (c) took effect, the NY SAFE Act was itself amended to declare that "the effective date of the amendments adding paragraphs (b) and (c) to such subdivision shall be suspended and not effective." L.2013, c. 57 § 4. There is no provision lifting the "suspension" and making the amendments effective on a future date. As a result, that unique Penal Law language of "suspended and not effective" would appear to have the practical effect of repealing each of those subdivisions and was probably utilized for whatever perceived advantage there was in being able to say the provisions were suspended, rather than repealed. The repeal of subdivision (c) did not, however, appear to affect the "provided, however" language recited above which existed in the law prior to the addition of subdivision (c) and had chronologically followed the repealed language of subdivision (c).

The crimes for which the definition of a large feeding device is utilized include Penal Law § 265.00(22)(h), § 265.10, § 265.11, § 265.02(8), § 265.36, and § 265.37. The import of those statutes is as follows:

### Penal Law § 265.00(22)(h)

A large feeding device that was legally possessed prior to the enactment date of the NY SAFE Act, January 15, 2013, may be transferred to a person authorized to possess same or to an individual or entity outside of New York, provided that such a transfer must be reported, within 72 hours, to the entity with whom the weapon is registered. A person who transfers a device to an individual inside New York state or without otherwise complying with the law's transfer requirements is guilty of a class A misdemeanor, unless the device, the possession of which is made illegal by the NY SAFE Act, was transferred before January 15, 2014 [Penal Law § 265.00(22)(h)].

### Penal Law § 265.02(8)

Prior to, and after, the NY SAFE Act, a provision of the statute defining "criminal possession of a weapon in the third degree," makes it a class D felony when a "person possesses a large capacity ammunition feeding device" [Penal Law § 265.02(8)]. The NY SAFE ACT, however, amended that subdivision to specify that "[f]or purposes of this subdivision," a large feeding device shall "not" include either of the following two feeding devices:

[i] a feeding device lawfully possessed by such person before January 15, 2013 (the effective date of chapter one of the laws of 2013 "which amended this subdivision"), "that has a capacity of, or that can be readily restored or converted to accept more than seven but less than eleven rounds of ammunition." Parenthetically, this exclusion from liability for this felony became covered by the generic definition of a large feeding device when that definition was amended to specify that a large feeding device is one that "has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." [L.2013, c. 57 § 4; Penal Law § 265.00(23)].

000084

[ii] a feeding device "that was manufactured before September [13, 1994], that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." The exclusion from liability for this felony is in recognition that prior to the NY SAFE Act, it was lawful to possess a feeding device manufactured before September 13, 1994. Notably, however, this exclusion from liability for this felony does not also require that the possessor lawfully possessed the feeding device prior to the effective date of the NY SAFE Act.

### Penal Law § 265.10

As part of the 2000 laws [c. 189], Penal Law § 265.10 ("manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances") was amended (1) to forbid the to manufacture, transport, or dispose of a "large capacity ammunition feeding device" [Penal Law § 265.10(1), (2) and (3) (first sentence)]; (2) to add a prohibition for the buying, receiving or disposing of a "large capacity ammunition feeding device" which has been defaced for a criminal purpose, which parallels the existing prohibition as it relates to a firearm [Penal Law § 265.10(3) (second sentence)]; and (3) to add a prohibition for "wilfully" defacing a "large capacity ammunition feeding device," which parallels the existing prohibition for wilfully defacing a firearm [Penal Law § 265.10(6)].

### Penal Law § 265.11

Also, as part of the 2000 laws [c. 189], Penal Law § 265.11 ("criminal sale of a firearm in the third degree") was amended to prohibit a person who is "not authorized" to possess a "firearm" from "unlawfully" selling or otherwise disposing of any firearm or "large capacity ammunition feeding device." By contrast, one of the amendments to the crime of "manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances" made it a crime to "dispose of" [defined in Penal Law § 265.00(6)] a "large capacity ammunition feeding device" [Penal Law § 265.10(3) (sentence one)], without also requiring that the actor not be authorized to possess a firearm. Thus, unless exempted by Penal Law § 265.20, a person who "disposes of" such device (and does so, for example, by a sale of the device) commits a crime, irrespective of whether that person is authorized or not authorized to possess a "firearm."

### Penal Law § 265.36 and § 265.37

The NY SAFE Act added two non-felony offenses, apparently intending to include liability for a feeding device subject to the exceptions to the felony, though arguably not completely fulfilling that intent.

The first added offense was "unlawful possession of a large capacity ammunition feeding device" [Penal Law § 265.36], a class A misdemeanor. The statute makes it "unlawful for a person to knowingly possess a large capacity ammunition feeding device manufactured before September [13, 1994] and if such person lawfully possessed such large capacity feeding device before [January 15, 2013], that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition." Penal Law § 265.36.

A safeguard for those who once lawfully possessed such feeding device is a provision excluding from liability for this crime a person "who has a reasonable belief that such device ... may lawfully be possessed," and who, within 30 days of being notified by law enforcement or a licensing official that possession is unlawful, "surrenders or lawfully disposes of" the feeding device. Once so notified, there exists a reasonable, rebuttable presumption that the possessor knows that the feeding device cannot be lawfully possessed.

The second added offense was "unlawful possession of certain ammunition feeding devices" [Penal Law § 265.37]. This statute makes it "unlawful for a person to knowingly possess an ammunition feeding device where

000085

such device contains more than seven rounds of ammunition." L.2013, c. 57. *But see New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015) ("New York's seven-round load limit does not survive intermediate scrutiny in the absence of requisite record evidence and a substantial relationship between the statutory provision and important state safety interests"; accordingly, that provision is unconstitutional). However, there is an exemption from liability for Penal Law sections 265.01, 265.02, 265.03, 265.04, 265.05, 265.10, 265.11, 265.12, 265.13, 265.15 and 270.05 for the "possession and use" at certain specified "indoor or outdoor" firing ranges of a "magazine, belt, feed strip or similar device" that contains more than seven rounds of ammunition, albeit in a feeding device that does not have the capacity of more than ten rounds of ammunition [Penal Law § 265.20(7-f)].

Instead of placing the sentencing provisions applicable to this offense in the Penal Law articles dealing with sentences, the NY SAFE Act, unfortunately, as too many other statutes have done, further complicated the sentencing laws by setting forth the governing sentences for this offense in the statute defining the crime. If the large feeding device is "possessed within the home of the possessor," a first offense is a violation, "subject to" a fine of $250; "each subsequent offense" is a class B misdemeanor, "subject to" a fine of $250 and a term of imprisonment "up to three months." If the large feeding device is not possessed within the home of the possessor, a first offense is a class B misdemeanor, "subject to" a fine of $250 and a term of imprisonment "up to six months"; "each subsequent offense" is a class A misdemeanor. For the class A misdemeanor, no sentence is specified, and thus the normal sentence options will apply. For the specified sentences, it appears that the amount of the fine is the stated amount, there being no language indicating that the fine is "up to" the stated amount; on the other hand, the jail sentences utilize the "up to" language, making them discretionary within that range, which may therefore be from one day up to the stated period. What is mysterious about this type of specified sentences, which are placed outside the sentencing statutes, is whether they exclude any other option in the sentencing statutes which would normally be included in the stated classification.

### Machine-gun

A "machine-gun" is not included in the definition of a "firearm." Unlike the definition of a firearm, rifle or shotgun, the requirement of operability of a machine-gun appears subsumed in its definition, which requires that it be a weapon, "loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger...." [Penal Law § 265.00(1)]. *See People v. Woods*, 202 Misc. 562, 564, 114 N.Y.S.2d 611, 613 (N.Y. Magis. Ct. 1952) (purported machine gun was missing two parts and was thus not capable of firing more than one shot at a time and was therefore not a "machine gun").

To an extent, the definition is expanded in the definition of the crime of "criminal possession of a weapon in the third degree" which prohibits the possession of a machine-gun or any other weapon "simulating a machine-gun and which is adaptable for such use." Penal Law § 265.02(2). *See People v. Excell*, 254 A.D.2d 369, 680 N.Y.S.2d 259 (2d Dept. 1998) (the court rejected the claim that because a "Uzi cannot be easily converted into a machine gun," it was thus not adaptable for such use because there was no such statutory qualification).

### Metal knuckles

There is no statutory definition of "metal knuckles." However, in *People v. Aragon*, 28 N.Y.3d 125, 42 N.Y.S.3d 646, 65 N.E.3d 675 (2016), the Court described "metal knuckles" as a "metal object with multiple holes, through which an individual places his or her fingers so that a metal bar rests atop the individual's knuckles. That object is used as a weapon to cause increased pain when the person wearing it hits someone with a fist."

### Metal knuckle knife

In 1995, the Legislature added to the list of defined weapons the "metal knuckle knife" [Penal Law § 265.00(5-b)], and then added that weapon to the list of items which constitute a deadly weapon [Penal Law § 10.00(12)], to the list of items the possession or manufacture of which is per se a crime [Penal Law §§ 265.01(1), 265.10(1)], and to the list of items whose presence in an automobile or in a stolen vehicle may give rise to a presumption of possession of that weapon by everyone in the automobile or stolen vehicle [Penal Law § 265.15]. L.1995, c. 219. A "metal knuckle knife" can function as both a set of metal knuckles (possession of which is also a per se crime) and a knife. In the words of the Legislative Memorandum, the "possession and manufacture of weapons such as the metal knuckle knife serve only one purpose, ... to maim or take human life. Police searches of shops in the City of New York have discovered this particular weapon. ... In order to protect society, these weapons must be included within the definition of 'deadly weapons' found in the Penal Law."

In 2008, the definition of "deadly weapon" in Penal Law § 10.00(12) and the instant definition of "metal knuckle knife" were each amended to include "plastic knuckles" because the Legislature determined that "plastic knuckles have just as much impact as the brass knuckles and are just as deadly." Legislative Memorandum. L.2008, c. 257. Also, a number of statutes which prohibit the possession, manufacture and transportation of various deadly weapons were amended to include a prohibition on the possession of "plastic knuckles" [Penal Law §§ 265.01(1); 265.10(1) and (2)].

### Pilum ballistic knife

The "pilum ballistic knife" definition [Penal Law § 265.00(5-a)] was added in 1986. L.1986, c. 328. One advertisement for the knife described it as approximately nine-and-one-half inches long, with a four-and-a-half inch blade. When a button inside the knife handle is pushed, a powerful spring inside the handle can eject the blade, propelling it to a distance of up to 30 feet with considerable force.

### Rifle or shotgun

A sawed-off rifle or shotgun, that is, one with a barrel or overall length less than that prescribed in the statute defining a "firearm" [Penal Law § 265.00(3)], and a rifle or shotgun which qualifies as an "assault weapon" are, for the purposes of this article, a "firearm" and therefore subject to the prohibitions related thereto.

Otherwise, a rifle and a shotgun, as those terms are defined [Penal Law § 265.00(11) and (12)], are not included in the definition of "firearm," and any prohibition related to either requires the specific use of the term "rifle" or "shotgun." *See, e.g.* Penal Law § 265.01(4). In addition to meeting the terms of the definition, a rifle or shotgun must also be operable, that is, capable of discharging ammunition. *People v. Longshore*, 86 N.Y.2d 851, 633 N.Y.S.2d 475, 657 N.E.2d 496 (1995).

Notes of Decisions (132)

McKinney's Penal Law § 265.00, NY PENAL § 265.00
Current through L.2018, chapter 1.

---

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or PreemptedHeld Unconstitutional by New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, W.D.N.Y., Dec. 31, 2013

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

McKinney's Consolidated Laws of New York Annotated

  Penal Law (Refs & Annos)

    Chapter 40. Of the Consolidated Laws (Refs & Annos)

      Part Three. Specific Offenses

        Title P. Offenses Against Public Safety

          Article 265. Firearms and Other Dangerous Weapons (Refs & Annos)

McKinney's Penal Law § 265.36

§ 265.36 Unlawful possession of a large capacity ammunition feeding device

Effective: March 16, 2013
Currentness

It shall be unlawful for a person to knowingly possess a large capacity ammunition feeding device manufactured before September thirteenth, nineteen hundred ninety-four, and if such person lawfully possessed such large capacity feeding device before the effective date of the chapter of the laws of two thousand thirteen which added this section, that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition.

An individual who has a reasonable belief that such device is of such a character that it may lawfully be possessed and who surrenders or lawfully disposes of such device within thirty days of being notified by law enforcement or county licensing officials that such possession is unlawful shall not be guilty of this offense. It shall be a rebuttable presumption that such person knows that such large capacity ammunition feeding device may not be lawfully possessed if he or she has been contacted by law enforcement or county licensing officials and informed that such device may not be lawfully possessed.

Unlawful possession of a large capacity ammunition feeding device is a class A misdemeanor.

**Credits**
(Added L.2013, c. 1, § 46-a, eff. March 16, 2013.)

**Editors' Notes**

### VALIDITY

<For validity of this section, see New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 990 F.Supp.2d 349, 351 (W.D.N.Y. Dec. 31, 2013) and N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242 (2d Cir. 2015), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016)>

### PRACTICE COMMENTARIES

*by William C. Donnino*

000088

*See* Practice Commentary to Penal Law § 265.00 with respect to the definition of "large capacity ammunition feeding device."

Notes of Decisions (2)

McKinney's Penal Law § 265.36, NY PENAL § 265.36
Current through L.2018, chapter 1.

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

000089

# EXHIBIT 20

## 13 V.S.A. § 4021

Current through the end of the 2021 (Adj. Sess.), including legislative updates through October 31, 2022

*Vermont Statutes Annotated  >  Title 13 Crimes and Criminal Procedure (Pts. 1 — 5)  >  Part 1. Crimes (Chs. 1 — 87)  >  Chapter 85. Weapons (Subchs. 1 — 2)  >  Subchapter 1. Generally (§§ 4001 — 4023)*

## § 4021. Large capacity ammunition feeding devices

**(a)**  A person shall not manufacture, possess, transfer, offer for sale, purchase, or receive or import into this State a large capacity ammunition feeding device. As used in this subsection, "import" does not include the transportation back into this State of a large capacity ammunition feeding device by the same person who transported the device out of State if the person possessed the device on or before the effective date of this section.

**(b)**  A person who violates this section shall be imprisoned for not more than one year or fined not more than $500.00, or both.

**(c)**

**(1)**  The prohibition on possession of large capacity ammunition feeding devices established by subsection (a) of this section shall not apply to a large capacity ammunition feeding device lawfully possessed on or before the effective date of this section.

**(2)**  The prohibition on possession, transfer, sale, and purchase of large capacity ammunition feeding devices established by subsection (a) of this section shall not apply to a large capacity ammunition feeding device lawfully possessed by a licensed dealer as defined in subdivision 4019(a)(4) of this title prior to April 11, 2018 and transferred by the dealer on or before October 1, 2018.

**(d)**

**(1)**  This section shall not apply to any large capacity ammunition feeding device:

**(A)**  manufactured for, transferred to, or possessed by the United States or a department or agency of the United States, or by any state or by a department, agency, or political subdivision of a state;

**(B)**  transferred to or possessed by a federal law enforcement officer or a law enforcement officer certified as a law enforcement officer by the Vermont Criminal Justice Council pursuant to *20 V.S.A. § 2358*, for legitimate law enforcement purposes, whether the officer is on or off duty;

**(C)**  transferred to a licensee under Title I of the Atomic Energy Act of 1954 for purposes of establishing and maintaining an on-site physical protection system and security organization required by federal law, or possessed by an employee or

13 V.S.A. § 4021

contractor of such a licensee on-site for these purposes, or off-site for purposes of licensee-authorized training or transportation of nuclear materials;

**(D)**  possessed by an individual who is retired from service with a law enforcement agency after having been transferred to the individual by the agency upon his or her retirement, provided that the individual is not otherwise prohibited from receiving ammunition;

**(E)**  manufactured, imported, transferred, or possessed by a manufacturer or importer licensed under 18 U.S.C. chapter 44:

    **(i)**  for the purposes of testing or experimentation authorized by the U.S. Attorney General, or for product development;

    **(ii)**  for repair and return to the person from whom it was received; or

    **(iii)**  for transfer in foreign or domestic commerce for delivery and possession outside the State of Vermont; or

**(F)**  transported by a resident of another state into this State for the exclusive purpose of use in an organized shooting competition sponsored by an entity registered with the Secretary of State if the device is lawfully possessed under the laws of another state.

**(2)**  This section shall not apply to a licensed dealer as defined in subdivision 4019(a)(4) of this title for the sole purpose of transferring or selling a large capacity ammunition feeding device to a person to whom this section does not apply under subdivision (1) of this subsection (d).

**(e)**

**(1)**  As used in this section, "large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept:

**(A)**  more than 10 rounds of ammunition for a long gun; or

**(B)**  more than 15 rounds of ammunition for a hand gun.

**(2)**  The term "large capacity ammunition feeding device" shall not include:

**(A)**  an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition;

**(B)**  a large capacity ammunition feeding device that is manufactured or sold solely for use by a lever action or bolt action long gun or by an antique firearm as defined in subdivisions 4017(d)(2)(A) and (B) of this title; or

**(C)**  a large capacity ammunition feeding device that is manufactured or sold solely for use with a firearm that is determined to be a curio or relic by the Bureau of Alcohol, Tobacco, Firearms and Explosives. As used in this subdivision, "curio or relic" means a firearm that is of special interest to collectors by reason of some quality other than its association with firearms intended for sporting use or as offensive or defensive weapons.

13 V.S.A. § 4021

## History

Added *2017, No. 94* (Adj. Sess.), § 8, eff. April 11, 2018; amended *2017, No. 94* (Adj. Sess.), § 11, eff. July 1, 2019; *2021, No. 87* (Adj. Sess.), § 5, eff. July 1, 2022.

Annotations

**History**

**Revision note**

**—2020.**

In subdiv. (d)(1)(B), substituted "Vermont Criminal Justice Council" for "Vermont Criminal Justice Training Council" in accordance with *2019, No. 166* (Adj. Sess.), § 2(b).

**—2018.**

In subdiv. (c)(2), substituted "April 11, 2018" for "the effective date of this act".

**Amendments**

**—2021 (Adj. Sess.).**

Subsec. (a): Substituted "does not include" for "shall not include."

Subdiv. (d)(1)(F): Added.

**—2017 (Adj. Sess.).**

Subdiv. (d)(1)(F): Repealed.

**ANNOTATIONS**

**Constitutionality.**

Large-capacity magazine ban satisfies the reasonable-regulation test used in connection with Article 16 of the Vermont Constitution because the statute has a valid purpose of reducing the lethality of mass shootings, the legislature was within its authority in concluding that the regulation promotes this purpose, and the statute leaves ample means for Vermonters to exercise their right to bear arms in self-defense. *State v. Misch, 2021 VT 10, 214 Vt. 309, 256 A.3d 519, 2021 Vt. LEXIS 17 (2021)*.

## Research References & Practice Aids

**Hierarchy Notes:**

000093

13 V.S.A. § 4021

*13 V.S.A. Pt. 1, Ch. 85*

Vermont Statutes Annotated
Copyright © 2022 All rights reserved.

**End of Document**

# EXHIBIT 21

## *11 Del. C. § 1469*

This document is current through 83 Del. Laws, c. 517.

*Delaware Code Annotated  >  Title 11 Crimes and Criminal Procedure (Pts. I — VII)  >  Part I Delaware Criminal Code (Chs. 1 — 15)  >  Chapter 5 Specific Offenses (Subchs. I — VII)  >  Subchapter VII Offenses Against Public  Health, Order and Decency (Subpts. A — F)  >  Subpart E Offenses Involving Deadly Weapons and Dangerous Instruments (§§ 1441 — 1469A)*

## Notice

⚑ This section has more than one version with varying effective dates.

## § 1469. Large-capacity magazines prohibited; class E felony; class B misdemeanor; or civil violation [Effective until Jan. 1, 2024].

**(a)**  Except as otherwise provided in subsections (c) through (e) of this section, it is unlawful for a person to manufacture, sell, offer for sale, purchase, receive, transfer, or possess a large-capacity magazine.

**(b)**

   **(1)**  A violation of this section which is a first offense which only involves possession of a large capacity magazine is a civil penalty of $100.

   **(2)**  A second violation of this section which only involves possession of a large capacity magazine is a class B misdemeanor.

   **(3)**  All other violations of this section, including a subsequent offense involving only possession of a large capacity magazine are a class E felony.

   **(4)**  A large-capacity magazine is subject to forfeiture for a violation of this section.

   **(5)**  The Superior Court has exclusive jurisdiction over violations under subsections (b)(2) and (b)(3) of this section.

**(c)**  This section does not apply to any of the following:

   **(1)**  Personnel of the United States government or a unit of that government who are acting within the scope of official business.

   **(2)**  Members of the armed forces of the United States or of the National Guard who are acting within the scope of official business.

   **(3)**  A law-enforcement officer.

   **(4)**  A qualified retired law-enforcement officer.

11 Del. C. § 1469

**(5)**  An individual who holds a valid concealed carry permit issued by the Superior Court under § 1441 of this title.

**(6)**  A licensed firearms dealer that sells a large-capacity magazine to another licensed firearms dealer or to an individual exempt under paragraphs (c)(1) through (5) of this section.

**(7)**  A large-capacity magazine that a person has rendered permanently inoperable or has permanently modified to accept 17 rounds of ammunition or less.

**(d)**

**(1)**  The Secretary of the Department of Safety and Homeland Security ("Secretary") shall establish and administer a compensation program for residents of this State to allow a resident in possession of a large-capacity magazine on August 29, 2022, to relinquish the large-capacity magazine to the Department of Safety and Homeland Security ("Department") or a participating local law-enforcement agency in exchange for a monetary payment established under this subsection.

**(2)**  The Secretary shall adopt rules to implement the compensation program, including the following:

**a.**  That the compensation program be implemented between June 30, 2022, and June 30, 2023, at locations throughout this State. The Department shall coordinate with local law-enforcement agencies in implementing the program.

**b.**  That the compensation program allows a resident to relinquish a large-capacity magazine to the Department, or a local law-enforcement agency participating in the program, in exchange for a compensation in the amount of the market rate for each large-capacity magazine.

**c.**  That establishes the method for providing the monetary payment and reimbursing a participating law-enforcement agency for payments made to residents under the compensation program.

**d.**  That the compensation program is subject to the availability of funds appropriated for this specific purpose by the General Assembly. This subsection does not create a right or entitlement in a resident to receive a monetary payment under the compensation program.

**(3)**  The Secretary shall submit a report to the General Assembly by December 29, 2023, providing the results of the compensation program, including the number of large-capacity magazines relinquished to law-enforcement agencies, by county, and the total amount expended under the program.

**(e)**  This section does not apply to any of the following:

**(1)**  A person who manufactures a large-capacity magazine, if the person manufactures the large-capacity magazine with the intent to sell the large-capacity magazine, or offer the large-capacity magazine for sale, to a person outside of this State.

11 Del. C. § 1469

**(2)** A person who ships or transports a large-capacity magazine for a person under paragraph (e)(1) of this section.

## History

*83 Del. Laws, c. 331*, § 1; *83 Del. Laws, c. 348*, § 1.

Annotations

## Notes

**Revisor's note.**

Section 2 of *83 Del. Laws, c. 331*, provided: "The sum of $45,000 is appropriated from the General Fund in Fiscal Year 2023 for the purpose of providing compensation for the purchase of large-capacity magazines by the Department of Safety and Homeland Security under Section 1 of this act."

Section 3 of *83 Del. Laws, c. 331*, provided: "If any provision of this act or the application of this act to any person or circumstance is held invalid, the provisions of this act are severable if the invalidity does not affect the other provisions or applications of the act which can be given effect without the invalid provision or application."

Section 4 of *83 Del. Laws, c. 331*, provided: "This act is to be known as the "Delaware Large-Capacity Magazine Prohibition Act of 2022.""

Section 5 of *83 Del. Laws, c. 331*, provided: "This act takes effect 60 days after its enactment into law." The act was signed by the Governor on June 30, 2022, and became effective Aug. 29, 2022.

Section 6 of *83 Del. Laws, c. 331*, provided: "Section *§ 1466(d) of Title 11*, as contained in Section 1 of this act, expires on January 1, 2024."

Section 2 of *83 Del. Laws, c. 348*, provided: "If Senate Substitute No. 1 for Senate Bill No. 6 of the 151st General Assembly ("Senate Substitute No. 1 for Senate Bill No. 6) is enacted into law, section 1 of this act takes effect on the day Senate Substitute No. 1 for Senate Bill No. 6 takes effect." Senate Substitute No. 1 for Senate Bill 6, signed into law as *83 Del. Laws, c. 331*, took effect on Aug. 29, 2002.

**Effect of amendments.**

83 Del. Laws, c. 348, effective Aug. 29, 2022, substituted "through (e)" for "and (d)" in (a); and added (e).

11 Del. C. § 1469

Delaware Code Annotated
Copyright © 2022 All rights reserved.

---

**End of Document**

000099

# EXHIBIT 22



## PREAMBLE

   Whereas the People of the State of Oregon have seen a sharp increase in gun sales, gun violence, and raised fear in Oregonians of armed intimidation, it is imperative to enhance public health and safety in all communities; and

   Whereas the gun violence in Oregon and the United States, resulting in horrific deaths and devastating injuries due to mass shootings,  homicides and suicides is unacceptable at any level, and the availability of firearms, including semiautomatic assault rifles and pistols with accompanying large-capacity ammunition magazines, pose a grave and immediate risk to the health, safety and well-being of the citizens of this State, particularly our youth; and

   Whereas Oregon currently has no permit requirements for purchasing a semiautomatic assault firearm or any other type of weapon and studies have shown that permits-to-purchase reduce firearm-related injuries and death and studies further have shown that firearm ownership or <span style="color:#00529B">access to firearms triples the risk of suicide and doubles the risk of homicide when compared to someone who does not have access,</span> this measure will require that anyone purchasing a firearm must first complete a safety training course, successfully pass a full background check and, only then, will an individual be granted a permit-to-purchase a firearm, so that firearms are kept out of dangerous hands; and

   Whereas large-capacity magazines are often associated with semiautomatic assault rifles, and can also be used with many semiautomatic firearms including shotguns and pistols, and estimates suggest that nearly 40% of crime guns used in serious violent crimes, including attacks on law enforcement officers, are equipped with large-capacity magazines; and

   Whereas firearms equipped with large-capacity magazines increase casualties by allowing a shooter to continue firing for longer periods of time before reloading, thus explaining their use in all 10 of the deadliest mass shootings  since 2009, and in mass shooting events from 2009 to 2018 where the use of large-capacity magazines caused twice as many deaths and 14 times as many injuries, including the 2015 shooting at Umpqua Community College in Roseburg, Oregon in which 10 people were killed and 7 more were injured; and

   Whereas restrictions on high-capacity magazines during the 10-year federal ban from 1994-2004 and the ban in over nine (9) states and the District of Columbia have been found to reduce the number of fatalities and injuries in shooting incidents, this measure will enhance the safety of residents, particularly children, of this state by prohibiting the manufacture, sale, or transfer of large-capacity ammunition magazines and regulate the use of such magazines that are currently owned;

  Now, therefore:

### Be It Enacted by the People of the State of Oregon

**SECTION 1.** Sections 2 to 11 of this 2022 Act are added to and made a part of ORS 166.210 to 166.490.

  **SECTION 2.** The People of the State of Oregon find and declare that regulation of sale, purchase and otherwise transferring of all firearms and restriction of the manufacture, import, sale, purchase, transfer, use and possession of ammunition magazines to those that hold no more than 10 rounds will promote the public health and safety of the residents of this state and this Act shall be known as the Reduction of Gun Violence Act.

### DEFINTIONS

  **SECTION 3.**  Definitions. As used in sections 3 to 10 of this 2022 Act:

  (1) "Criminal background check"  has the same meaning given to this term in ORS 166.432(1)(a) to (e).

  (2) "Department" means the Department of State Police.

  (3) "Gun dealer" means a person engaged in the business, as defined in 18 U.S.C. 921, of selling, leasing or otherwise transferring a firearm, whether the person is a retail dealer, pawnbroker or otherwise.

  (4) "Permit" or "permit-to-purchase" mean an authorization issued to a person to purchase or acquire a firearm, provided all other requirements at the time of purchase or acquisition are met.

  (5) "Permit Agent" means a county sheriff or police chief with jurisdiction over the residence of the person making an application for a permit-to-purchase, or their designees.

  (6) "Transfer" has the meaning given that term in ORS 166.435(1)(a).

  (7) "Transferor" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C.  923

PAGE - 1    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

and who intends to deliver a firearm to a transferee.

## PERMIT-TO-PURCHASE PROCESS

**SECTION 4.**

**(1)(a) A person may apply for a permit-to-purchase a firearm or firearms under this section to the police chief or county sheriff with jurisdiction over the residence of the person making the application, or their designees, hereinafter referred to as "permit agent".**

**(b) A person is qualified to be issued a permit-to-purchase under this section if the person:**

**(A) Is not prohibited from purchasing or acquiring  a firearm under state or federal law, including but not limited to successfully completing a criminal background check as described under paragraph (e) of this subsection;**

**(B) Is not the subject of an order described in ORS 166.525 to 166.543;**

**(C) Does not present reasonable grounds for a permit agent to conclude that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence;**

**(D) Provides proof of completion of a firearm safety course as defined in subsection (8) of this section; and**

**(E) Pays the fee described in paragraph (b) of subsection (3) of this section.**

**(c) An application for a permit under this section must state the applicant's legal name, current address and telephone number, date and place of birth, physical description, and any additional information determined necessary by department rules. The application must be signed by the applicant in front of the permit agent.**

**(d) The permit agent shall verify the applicant's identity with a government-issued form of identification bearing a photograph of the applicant.**

**(e) The applicant must submit to fingerprinting and photographing by the permit agent. The permit agent shall fingerprint and photograph the applicant and shall conduct any investigation necessary to determine whether the applicant meets the qualifications described in paragraph (b) of this section. The permit agent shall request the department to conduct a criminal background check, including but not limited to a fingerprint identification, through the Federal Bureau of Investigation. The Federal Bureau of Investigation shall return the fingerprint cards used to conduct the criminal background check and may not keep any record of the fingerprints. Upon completion of the criminal background check and determination of whether the permit applicant is qualified or disqualified from purchasing or otherwise acquiring a firearm the department shall report the results, including the outcome of the fingerprint-based criminal background check, to the permit agent.**

**(2)(a) If during the background check, the department determines that:**

**(A) A purchaser is prohibited from possessing a firearm under ORS 166.250 (1)(c), the department shall report the attempted application for a permit, the purchaser's name and any other personally identifiable information to all federal, state and local law enforcement agencies and district attorneys that have jurisdiction over the location or locations where the attempted application for a permit was made and where the permit applicant resides;**

**(B) Based on the judgment of conviction, the permit applicant is prohibited from possessing a firearm as a condition of probation or that the permit applicant is currently on post-prison supervision or parole, the department shall report the attempted application for a permit to the permit applicant's supervising officer and  the  district  attorney  of  the  county in which  the  conviction occurred.**

**(C)  The permit applicant is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted application for a permit to the court that issued the order.**

**(D) The permit applicant is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted application for a permit to the board.**

**(b) Reports required by paragraphs (A) to (D) of subsection (2)(a) shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.**

**(c) On or before January 31 of each year, beginning in 2024, the department shall annually publish a report indicating for each county the number of applications made to any permit agent, the number of permits-to-purchase issued and the number of permits-to-purchase denied and the reasons for denial. The department may, by rule, include any additional**

PAGE - 2      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

**000102**

information that it determines would be helpful to ensuring the permit-to-purchase process is being administered in a consistent and equitable manner.

(3)(a) Within 30 days of receiving an application for a permit under this section, if the permit agent has verified the applicant's identity and determined that the applicant has met each of the qualifications described in paragraph (1)(b) of this section, the permit agent shall issue the permit-to-purchase.

(b) The permit agent may charge a reasonable fee reflecting the actual cost of the process but shall not exceed $65, including the cost of fingerprinting, photographing and obtaining a criminal background check.

(4)(a) The department shall develop:

(A) A standardized application form for a permit under this section; and

(B) A form in quadruplicate for use by permit agents in issuing permits under this section.

(b) The issuing permit agent shall maintain a copy of each permit issued under this section.

(c) The person named in a permit shall:

(A) Maintain a copy of the permit as long as the permit is valid.

(B) Present a copy of the permit to the gun dealer or transferor of a firearm when required under ORS 166.412, 166.435, 166.436 or 166.438.

(5)(a) The permit agent shall report the issuance of a permit under this section to the department, and shall provide to the department a copy of the permit and any information necessary for the department to maintain an electronic searchable database of all permits issued under this section. A permit agent revoking a permit shall report the revocation to the department at the time that notice of the revocation has been sent to the permit holder.

(b) The department shall maintain the electronic database described in paragraph (a) of this subsection by ensuring that new permits are added to the database, renewed permits are assigned a new expiration date, and expired or revoked permits are marked expired or revoked but retained in the database.

(6)(a) A permit-to-purchase issued under this section does not create any right of the permit holder to receive a firearm.

(b) A permit-to-purchase issued under this section is not a limit on the number of firearms the permit holder may purchase or acquire during the time period when the permit is valid.

(7)(a) A permit-to-purchase issued under this section is valid for five years from the date of issuance, unless revoked.

(b) A person may renew an unexpired permit issued under this section by repeating the procedures set forth in subsection (1) of this section, except:

(A) A full finger print set does not need to be taken again if the original set has been retained by the permit agent or is otherwise available;  and

(B) The training course does not need to be completed, provided the course previously taken fully complies with each of the requirements set forth in subsection 8 of this section.

(c)The permit agent may charge a reasonable fee for renewal of the permit, reflecting the actual cost of the process but shall not exceed $50, including the cost of obtaining a criminal background check and photographing.

(8) As used in this section, "proof of completion of a firearm safety course" means the following:

(a) Proof of completion of any firearms training course or class available to the general public that is offered by law enforcement, a community college, or a private or public institution or organization or firearms training school utilizing instructors certified by a law enforcement agency, and that includes the components set forth in paragraph (c) of this subsection; or

(b) Proof of completion of any law enforcement firearms training course or class that is offered for security guards, investigators, reserve law enforcement officers, or any other law enforcement officers, and that includes the components set forth in paragraph (c) of this subsection;

(c) A firearms training course or class required for issuance of a permit-to-purchase must include:

(A) Review of federal and state laws in place at the time of the class and other safe practices related to ownership, purchase, transfer, use and transportation of firearms;

(B) Review of federal and state safe storage laws in place at the time of the class and other safe practices related to safe storage, including reporting lost and stolen guns;

PAGE - 3      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

(C) Prevention of abuse or misuse of firearms, including the impact of homicide and suicide on families, communities and the country as a whole; and

(D) In-person demonstration of the applicant's ability to lock, load, unload, fire and store a firearm before an instructor certified by a law enforcement agency. This requirement may be met separately from the other course requirements in subpargraphs (A), (B) and (C) of paragraph (c), which may be completed in an on-line course, provided the on-line course has been conducted by a trainer certified by law enforcement.

(d) Proof of successful completion of a training course in order to meet the requirements for a concealed handgun license issued under ORS 166.291 and 166.292 may be submitted for a permit as a substitute for the requirements in paragraph (c) of this subsection, provided the completed course included each of the components set forth in paragraph (c) of this subsection.

(9) The department may adopt rules to carry out the provisions of this section.

## PERMIT-TO-PURCHASE DUE PROCESS APPEAL

**SECTION 5.** (1)  If the application for the permit-to-purchase is denied, the permit agent shall set forth in writing the reasons for the denial. The denial shall be placed in the mail to the applicant by certified mail, restricted delivery, within 30 days after the application was made. If no decision is issued within 30 days, the person may seek review under the procedures in subsection (5) of this section.

(2) Notwithstanding subsections (1) to (3) of section 4 of this 2022 Act, and subject to review as provided in subsection (5) of this section, a permit agent may deny a permit-to-purchase if the permit agent has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence.

(3)(a) Any act or condition that would prevent the issuance of a permit-to-purchase is cause for revoking a permit-to-purchase.

(b) A permit agent may revoke a permit by serving upon the permittee a notice of revocation. The notice must contain the grounds for the revocation and must be served either personally or by certified mail, restricted delivery. The notice and return of service shall be included in the file of the permit holder. The revocation is effective upon the permit holder's receipt of the notice.

(4) Any peace officer or corrections officer may seize a permit-to-purchase and return it to the issuing permit agent if the permit is held by a person who has been arrested or cited for a crime that can or would otherwise disqualify the person from being issued a permit. The issuing permit agent shall hold the permit for 30 days. If the person is not charged with a crime within the 30 days, the permit agent shall return the permit unless the permit agent revokes the permit as provided in subsection (3) of this section.

(5) A person denied a permit-to-purchase or whose permit is revoked or not renewed may petition the circuit court in the petitioner's county of residence to review the denial, nonrenewal or revocation. The petition must be filed within 30 days after the receipt of the notice of denial or revocation.

(6) The judgment affirming or overturning the permit agent's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a permit-to-purchase and, if the petitioner was denied a permit, whether the permit agent has reasonable grounds for denial under subsection (2) of this section. Whenever the petitioner has been previously sentenced for a crime under ORS 161.610 (Enhanced penalty for use of firearm during commission of felony) or for a crime of violence for which the person could have received a sentence of more than 10 years, the court shall grant relief only if the court finds that relief should be granted in the interest of justice.

(7) Notwithstanding the provisions of ORS 9.320 (Necessity for employment of attorney), a party that is not a natural person, the state or any city, county, district or other political subdivision or public corporation in this state, without appearance by attorney, may appear as a party to an action under this section.

(8) Petitions filed under this section shall be heard and disposed of within 15 judicial days of filing or as soon as practicable thereafter.

(9) Filing fees for actions shall be as for any civil action filed in the court. If the petitioner prevails, the amount of the filing fee shall be paid by the respondent to the petitioner and may be incorporated into the court order.

(10) Initial appeals of petitions shall be heard de novo.

**(11)** Any party to a judgment under this section may appeal to the Court of Appeals in the same manner as for any other civil action.

**(12)** If the governmental entity files an appeal under this section and does not prevail, it shall be ordered to pay the attorney fees for the prevailing party.

**REQUIRES PERMITS FOR LICENSED DEALER SALES**

<u>**SECTION 6.**</u> ORS 166.412 is amended to read:

(1) As used in this section:

(a) "Antique firearm" has the meaning given that term in 18 U.S.C. 921;

(b) "Department" means the Department of State Police;

(c) "Firearm" has the meaning given that term in ORS 166.210, except that it does not include an antique firearm;

(d) "Firearms transaction record" means the firearms transaction record required by 18 U.S.C. 921 to 929;

(e) "Firearms transaction thumbprint form" means a form provided by the department under subsection (11) of this section;

(f) "Gun dealer" means a person engaged in the business, as defined in 18 U.S.C. 921, of selling, leasing or otherwise transferring a firearm, whether the person is a retail dealer, pawnbroker or otherwise; and

(g) "Purchaser" means a person who buys, leases or otherwise receives a firearm from a gun dealer.

(2) Except as provided in subsection[s (3)(c) and] (12) of this section, a gun dealer shall comply with the following before a firearm is delivered to a purchaser:

(a) The purchaser shall present to the gun dealer current identification meeting the requirements of subsection (4) of this section **and a valid permit issued under section 4 of this 2022 Act**.

(b) The gun dealer shall complete the firearms transaction record and obtain the signature of the purchaser on the record.

(c) The gun dealer shall obtain the thumbprints of the purchaser on the firearms transaction thumbprint form and attach the form to the gun dealer's copy of the firearms transaction record to be filed with that copy.

(d) The gun dealer shall, [request] by telephone **or computer, verify that the purchaser has a valid permit-to-purchase a firearm issued under section 4 of this 2022 Act and request** that the department conduct a criminal history record check on the purchaser and shall provide the following information to the department:

(A) The federal firearms license number of the gun dealer;

(B) The business name of the gun dealer;

(C) The place of transfer;

(D) The name of the person making the transfer;

(E) The make, model, caliber and manufacturer's number of the firearm being transferred;

(F) The name and date of birth of the purchaser;

(G) The Social Security number of the purchaser if the purchaser voluntarily provides this number to the gun dealer; and

(H) The type, issuer and identification number of the identification presented by the purchaser.

(e) The gun dealer shall receive a unique approval number for the transfer from the department and record the approval number on the firearms transaction record and on the firearms transaction thumbprint form.

(f) The gun dealer may destroy the firearms transaction thumbprint form five years after the completion of the firearms transaction thumbprint form.

(3)(a) Upon receipt of a request of the gun dealer for a criminal history record check, the department shall immediately, during the gun dealer's telephone call or by return call:

(A) Determine, from criminal records and other information available to it, whether the purchaser is disqualified under ORS 166.470 from completing the purchase; and

(B) Notify the gun dealer when a purchaser is disqualified from completing the transfer or provide the gun dealer with a unique approval number indicating that the purchaser is qualified to complete the transfer.

(b) If the department is unable to determine if the purchaser is qualified or disqualified from completing the transfer within 30 minutes, the department shall notify the gun dealer and provide the gun dealer with an estimate of the time when the

department will provide the requested information.

(c) **The dealer may not transfer the firearm unless the dealer receives a unique approval number from the department and, within 48 hours of completing the transfer, the dealer shall notify the state that the transfer to the permit holder was completed**. [If the department fails to provide a unique approval number to a gun dealer or to notify the gun dealer that the purchaser is disqualified under paragraph (a) of this subsection before the close of the gun dealer's next business day following the request by the gun dealer for a criminal history record check, the gun dealer may deliver the firearm to the purchaser.]

(4)(a) Identification required of the purchaser under subsection (2) of this section shall include one piece of current identification bearing a photograph and the date of birth of the purchaser that:

(A) Is issued under the authority of the United States Government, a state, a political subdivision of a state, a foreign government, a political subdivision of a foreign government, an international governmental organization or an international quasi-governmental organization; and

(B) Is intended to be used for identification of an individual or is commonly accepted for the purpose of identification of an individual.

(b) If the identification presented by the purchaser under paragraph (a) of this subsection does not include the current address of the purchaser, the purchaser shall present a second piece of current identification that contains the current address of the purchaser. The Superintendent of

State Police may specify by rule the type of identification that may be presented under this paragraph.

(c) The department may require that the gun dealer verify the identification of the purchaser if that identity is in question by sending the thumbprints of the purchaser to the department.

(5) The department shall establish a telephone number that shall be operational seven days a week between the hours of 8 a.m. and 10 p.m. for the purpose of responding to inquiries from gun dealers for a criminal history record check under this section.

(6) No public employee, official or agency shall be held criminally or civilly liable for performing the investigations required by this section provided the employee, official or agency acts in good faith and without malice.

(7)(a) The department may retain a record of the information obtained during a request for a criminal history record check for no more than five years, **except for the information provided to the dealer under subsection (2)(d) of this section, sufficient to reflect each firearm purchased by a permit holder, which must be attached to the electronic record of the permit stored by the department.  The department may develop a system for removal of the information in subsection (2)(d)(E) of this section, upon proof of sale or transfer of the firearm to another permit holder and for recording of the information to reflect the transfer of ownership to the permit of the new owner**.

(b) The record of the information obtained during a request for a criminal history record check by a gun dealer is exempt from disclosure under public records law.

(c) If the department determines that a purchaser is prohibited from possessing a firearm under ORS 166.250 (1)(c), the department shall report the attempted transfer, the purchaser's name and any other personally identifiable information to all federal, state and local law enforcement agencies and district attorneys that have jurisdiction over the location or locations where the attempted transfer was made and where the purchaser resides.

(d) If the department determines that, based on the judgment of conviction, the purchaser is prohibited from possessing a firearm as a condition of probation or that the purchaser is currently on post-prison supervision or parole, the department shall report the attempted transfer to the purchaser's supervising officer and the district attorney of the county in which the conviction occurred.

(e) If the department determines that the purchaser is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted transfer to the court that issued the order.

(f) If the department determines that the purchaser is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted transfer to the board.

(g) Reports required by paragraphs (c) to (f) of this subsection shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.

(h) On or before January 31 of each year, a law enforcement agency or a prosecuting attorney's office that received a report pursuant to paragraph (c) of this subsection during the previous calendar year shall inform the department of any action that was taken concerning the report and the outcome of the action.

PAGE - 6      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

(i) The department shall annually publish a written report, based on any information received under paragraph (h) of this subsection, detailing the following information for the previous year:

(A) The number of purchasers whom the department determined were prohibited from possessing a firearm under ORS 166.250 (1)(c), arranged by category of prohibition;

(B) The number of reports made pursuant to paragraph (c) of this subsection;

(C) The number of investigations arising from the reports made pursuant to paragraph (c) of this subsection, the number of investigations concluded and the number of investigations referred for prosecution, all arranged by category of prohibition; and

(D) The number of criminal charges arising from the reports made pursuant to paragraph (c) of this subsection and the disposition of the charges, both arranged by category of prohibition.

(8) A law enforcement agency may inspect the records of a gun dealer relating to transfers of firearms with the consent of a gun dealer in the course of a reasonable inquiry during a criminal investigation or under the authority of a properly authorized subpoena or search warrant.

(9) When a firearm is delivered, it shall be unloaded.

(10) In accordance with applicable provisions of ORS chapter 183, the Superintendent of State Police may adopt rules necessary for:

(a) The design of the firearms transaction thumbprint form;

(b) The maintenance of a procedure to correct errors in the criminal records of the department;

(c) The provision of a security system to identify gun dealers that request a criminal history record check under subsection (2) of this section; and

(d) The creation and maintenance of a database of the business hours of gun dealers.

(11) The department shall publish the firearms transaction thumbprint form and shall furnish the form to gun dealers on application at cost.

(12) This section does not apply to transactions between persons licensed as dealers under 18 U.S.C 923.

(13)(a) If requested by a transferor who is not a gun dealer, a gun dealer may request a criminal background check pursuant to ORS 166.435 or 166.438 and may charge a reasonable fee for providing the service.

(b) A gun dealer that requests a criminal background check under this subsection is immune from civil liability for any use of the firearm by the recipient or transferee, provided that the gun dealer requests the criminal background check as described in this section **and also provided that the dealer verifies that the recipient has a valid permit-to-purchase the firearm and the dealer has received a unique approval number from the department indicating successful completion of the background check**.

**(14) Knowingly selling or delivering a firearm to a purchaser or transferee who does not have a valid permit-to-purchase a firearm in violation of subsection 2(d) of this section, or prior to receiving a unique approval number from the department based on the criminal background check in violation of subsection 3(c) of this section, is a Class A misdemeanor.**

## REQUIRES PERMITS FOR PRIVATE TRANSFERS

**SECTION 7.** ORS 166.435 is amended to read:

(1) As used in this section:

(a) "Transfer" means the delivery of a firearm from a transferor to a transferee, including, but not limited to, the sale, gift, loan or lease of the firearm. "Transfer" does not include the temporary provision of a firearm to a transferee if the transferor has no reason to believe the transferee is

prohibited from possessing a firearm or intends to use the firearm in the commission of a crime, and the provision occurs:

(A) At a shooting range, shooting gallery or other area designed for the purpose of target shooting, for use during target practice, a firearms safety or training course or class or a similar lawful activity;

(B) For the purpose of hunting, trapping or target shooting, during the time in which the transferee is engaged in activities related to hunting, trapping or target shooting;

(C) Under circumstances in which the transferee and the firearm are in the presence of the transferor;

(D) To a transferee who is in the business of repairing firearms, for the time during which the firearm is being repaired;

PAGE - 7     New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

000107

(E) To a transferee who is in the business of making or repairing custom accessories for firearms, for the time during which the accessories are being made or repaired; or

(F) For the purpose of preventing imminent death or serious physical injury, and the provision lasts only as long as is necessary to prevent the death or serious physical injury.

(b) "Transferee" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C. 923 and who intends to receive a firearm from a transferor.

(c) "Transferor" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C. 923 and who intends to deliver a firearm to a transferee.

(2) Except as provided in ORS 166.436 and 166.438 and subsection (4) of this section, a transferor may not transfer a firearm to a transferee unless the transfer is completed through a gun dealer as described in subsection (3) of this section.

(3)(a) A transferor may transfer a firearm to a transferee only as provided in this section. Except as provided in paragraph (b) of this subsection, prior to the transfer both the transferor and the transferee must appear in person before a gun dealer, with the firearm **and a valid permit-to-purchase issued to the transferee under section 4 of this 2022 Act**, and request that the gun dealer perform a criminal background check on the transferee.

(b) If the transferor and the transferee reside over 40 miles from each other, the transferor may ship or deliver the firearm to a gun dealer located near the transferee or a gun dealer designated by the transferee, and the transferor need not appear before the gun dealer in person.

(c) A gun dealer who agrees to complete a transfer of a firearm under this section shall request a criminal history record check on the transferee as described in ORS 166.412 and shall comply with all requirements of federal law.

(d) If, upon completion of a criminal background check, the gun dealer:

(A) Receives a unique approval number from the Department of State Police indicating that the transferee is qualified to complete the transfer, the gun dealer shall notify the transferor, enter the firearm into the gun dealer's inventory and transfer the firearm to the transferee.

(B) Receives notification that the transferee is prohibited by state or federal law from possessing or receiving the  firearm **or that the department is unable to determine if the transferee is qualified or disqualified from completing the transfer**, the gun dealer shall notify the transferor and neither the transferor nor the gun dealer shall transfer the firearm to the transferee. If the transferor shipped or delivered the firearm to the gun dealer pursuant to paragraph (b) of this subsection, the gun dealer shall comply with federal law when returning the firearm to the transferor.

(e) A gun dealer may charge a reasonable fee for facilitating a firearm transfer pursuant to this section.

(4) The requirements of subsections (2) and (3) of this section do not apply to:

(a) The transfer of a firearm by or to a law enforcement agency, or by or to a law enforcement officer, private security professional or member of the Armed Forces of the United States, while that person is acting within the scope of official duties.

(b) The transfer of a firearm as part of a firearm turn-in or buyback event, in which a law enforcement agency receives or purchases firearms from members of the public.

(c) The transfer of a firearm to:

(A) A transferor's spouse or domestic partner;

(B) A transferor's parent or stepparent;

(C) A transferor's child or stepchild;

(D) A transferor's sibling;

(E) A transferor's grandparent;

(F) A transferor's grandchild;

(G) A transferor's aunt or uncle;

(H) A transferor's first cousin;

(I) A transferor's niece or nephew; or

(J) The spouse or domestic partner of a person specified in subparagraphs (B) to (I) of this paragraph.

(d) The transfer of a firearm that occurs because of the death of the firearm owner, provided that:

(A) The transfer is conducted or facilitated by a personal representative, as defined in ORS 111.005, or a trustee of a trust created in a will; and

PAGE - 8      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

**000108**

(B) The transferee is related to the deceased firearm owner in a manner specified in paragraph (c) of this subsection.

(5)(a) A transferor who fails to comply with the requirements of this section commits a Class A misdemeanor.

(b) Notwithstanding paragraph (a) of this subsection, a transferor who fails to comply with the requirements of this section commits a Class B felony if the transferor has a previous conviction under this section at the time of the offense.

**REQUIRES PERMITS FOR ALL TRANSFERS AT GUN SHOWS**

 . **SECTION 8.** ORS 166.436 is amended to read:

(1) The Department of State Police shall make the  telephone  number  established  under ORS 166.412 (5) available for requests  for  criminal  background  checks  under  this  section from  persons who are not gun dealers and who are transferring firearms at gun shows.

(2) Prior to transferring a firearm at a gun show, a transferor  who  is  not a gun dealer [may request] **shall** by telephone **verify that the transferee has a valid permit-to-purchase a firearm under section 4 of this 2022 Act and request** that the department conduct a criminal background check on the recipient upon providing the following information to the department:

(a) The name , address and telephone number of the transferor;

(b) The make , model, caliber and manufacturer's number of the firearm being transferred;

(c) The name, date of birth , race, sex and address of the recipient ;

(d) The Social Security number of the recipient if the recipient voluntarily provides that number ;

(e) The address of the place where the transfer is occurring; and

(f) The type, issuer and identification number of a current piece of

identification bearing a recent photograph of the recipient presented by the recipient. The identification presented by the recipient must meet the requirements of ORS 166.412 (4)( a).

(3)(a) Upon receipt of a request for a criminal  background  check  under  this section,  the  department shall immediately, during the telephone call or by return call:

(A) Determine from criminal records and other information available to it whether the recipient is disqualified under ORS 166.470 from completing the transfer or is otherwise prohibited by state or federal law from possessing a firearm; and

(B) Notify the transferor when a recipient is disqualified from completing the transfer or provide the  transferor  with  a unique  approval  number  indicating  that  the recipient  is  qualified  to complete the transfer.  The   unique approval number is a  permit valid  for 24 hours for the requested transfer.  If the firearm is not  transferred from the  transferor  to the recipient  within 24  hours  after receipt of the unique approval number, a new request must be made by the transferor.

(b) If the  department  is unable to determine   whether  the recipient  is qualified  for or disqualified from completing the  transfer  within  30 minutes of receiving the request , the department shall  notify the  transferor  and provide the transferor  with an estimate of  the  time  when  the department will provide  the  requested  information.

**(c) The  transferor may not transfer the firearm unless the transferor receives a unique approval number from the department and, within 48 hours of the completed transfer, the transferor shall notify the state that the transfer to the permit holder was completed.**

(4) A public employee or public agency incurs no criminal or civil liability for performing the criminal background checks required by this section, provided the employee or agency acts in good faith and without malice.

(5)(a) The department may retain a record of the information obtained during a request for a criminal background check under this section for the period of time provided in ORS 166.412 (7), **as amended by this 2022 Act**.

(b) The record of the information obtained during a request for a criminal background check under this section is exempt from disclosure under public records law.

(c) If the department determines that a recipient is prohibited from possessing a firearm under ORS 166.250 (l)(c), the department shall report the attempted transfer, the recipient's name and any other personally identifiable  information  to all federal, state and  local law enforcement agencies and district attorneys  that  have  jurisdiction  over  the location  or locations where  the  attempted  transfer was made and where the recipient resides.

PAGE - 9      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

**000109**

(d) If the department determines that, based on the judgment of conviction, the recipient is prohibited from possessing a firearm as a condition of probation or that the recipient is currently on post-prison supervision or parole, the department shall report the attempted transfer to the recipient's supervising officer and the district attorney of the county in which the conviction occurred.

(e) If the department determines that the recipient is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted transfer to the court that issued the order.

(f) If the department determines that the recipient is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted transfer to the board.

(g) Reports required by paragraphs (c) to (f) of this subsection shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.

(h) On or before January 31 of each year, a law enforcement agency or a prosecuting attorney's office that received a report pursuant to paragraph (c) of this subsection during the previous calendar year shall inform the department of any action that was taken concerning the report and the outcome of the action.

(i) The department shall annually publish a written report, based on any information received under paragraph (h) of this subsection, detailing the following information for the previous year:

(A) The number of recipients whom the department determined were prohibited from possessing a firearm under ORS 166.250 (1)(c), arranged by category of prohibition;

(B) The number of reports made pursuant to paragraph (c) of this subsection;

(C) The number of investigations arising from the reports made pursuant to paragraph (c) of this subsection, the number of investigations concluded and the number of investigations referred for prosecution, all arranged by category of prohibition; and

(D) The number of criminal charges arising from the reports made pursuant to paragraph (c) of this subsection and the disposition of the charges, both arranged by category of prohibition.

(6) The recipient of the firearm must be present when the transferor requests a criminal back-ground check under this section.

(7)(a) Except as otherwise provided in paragraph (b) of this subsection, a transferor who receives notification under this section that the recipient is qualified to complete the transfer of a firearm, has the recipient fill out the form required by ORS 166.438 (1)(a) and retains the form as required by ORS 166.438 (2) is immune from civil liability for any use of the firearm from the time of the transfer unless the transferor knows, or reasonably should know, that the recipient is likely to commit an unlawful act involving the firearm.

(b) The immunity provided by paragraph (a) of this subsection does not apply:

(A) If the transferor knows, or reasonably should know, that the recipient of the firearm intends to deliver the firearm to a third person who the transferor knows, or reasonably should know, may not lawfully possess the firearm; or

(B) In any product liability civil action under ORS 30.900 to 30.920.

## REQUIRES PERMITS FOR ALL TRANSFERS AT GUN SHOWS (2015 Amendment)

**SECTION 9.** ORS 166.438 is amended to read:

(1) A transferor who is not a gun dealer may not transfer a firearm at a gun show unless the transferor:

 **(a)(A) Verifies with the department that the recipient has a valid permit-to-purchase  issued under section 4 of this 2022 Act;**

([A]**B**) Requests a criminal background check under ORS 166.436 prior to completing the transfer;

([B]**C**) Receives a unique approval number from the department indicating that the recipient is qualified to complete the transfer; and

([C]**D**) Has the recipient complete the form described in ORS 166.441; or

(b) Completes the transfer through a gun dealer.

(2) The transferor shall retain the completed form referred to in subsection (1) of this section for at least five years and shall make the completed form available to law enforcement agencies for the purpose of criminal investigations.

(3) A person who organizes a gun show shall post in a prominent place at the gun show a notice explaining the requirements of subsections (1) and (2) of this section. The person shall provide the form required by subsection (1) of this section to any person transferring a firearm at the gun show.

(4) Subsection (1) of this section does not apply if the transferee is licensed as a dealer under 18 U.S.C. 923.

(5)(a) Failure to comply with the requirements of subsection (1), (2) or (3) of this section is a Class A misdemeanor.

(b) Notwithstanding paragraph (a) of this subsection, failure to comply with the requirements of subsection (1), (2) or (3) of this section is a Class C felony if the person has two or more previous convictions under this section **at the time of the offense.**

(6) It is an affirmative defense to a charge of violating subsection (1) or (3) of this section that the person did not know, or reasonably could not know, that more than 25 firearms were at the site and available for transfer.

SECTION 10. **The amendments to ORS 166.412, 166.435, 166.436 and 166.438 by sections 3 to 9 of this 2022 Act apply to firearm transfers conducted on or after the effective date of this 2022 Act.**

### PROHIBITIONS/EXCEPTIONS TO LARGE-CAPACITY MAGAZINES

SECTION 11. **(1) As used in this section:**

**(a) "Armed Forces of the United States" has the meaning given that term in ORS 348.282.**

**(b) "Detachable magazine" means an ammunition feeding device that can be loaded or unloaded while detached from a firearm and readily inserted in a firearm;**

**(c) "Fixed magazine" means an ammunition feeding device contained in or permanently attached to a firearm in such a manner that the device cannot be removed without disassembly of the firearm action;**

**(d) "Large-capacity magazine" means a fixed or detachable magazine, belt, drum, feed strip, helical feeding device, or similar device, including any such device joined or coupled with another in any manner, or a kit with such parts, that has an overall capacity of, or that can be readily restored, changed, or converted to accept, more than 10 rounds of ammunition and allows a shooter to keep firing without having to pause to reload, but does not include any of the following:**

**(A) An ammunition feeding device that has been permanently altered so that it is not capable, now or in the future, of accepting more than 10 rounds of ammunition;**

**(B) An attached tubular device designed to accept, and capable of operating only with 0.22 caliber rimfire ammunition; or**

**(C) A tubular ammunition feeding device that is contained in a lever-action firearm.**

**(e) "Loaded" has the meaning given that term in ORS 166.360;**

**(f) "Person" means any natural person, corporation, partnership, fire or association.**

**(2) Notwithstanding ORS 166.250 to 166.470, and except as expressly provided in subsections (3) to (5) of this section, a person commits the crime of unlawful manufacture, importation, possession, use, purchase, sale or otherwise transferring of large-capacity magazines if the person manufactures, imports, possesses, uses, purchases, sells or otherwise transfers any large-capacity magazine in Oregon on or after the effective date of this 2022 Act.**

**(3) Subsection (2) of the section does not apply during the first 180 days following the effective date of this 2022 Act, with respect to:**

**(a) A licensed gun dealer that within 180 days of the effective date of this 2022 Act:**

**(A) Transfers or sells the large-capacity magazines in the gun dealer's inventory to a non-resident gun dealer or other transferee outside of this state;**

**(B) Purchases or acquires temporary custody from an owner of any large-capacity magazine for permanent removal from this state within the 180 days of the effective date of this 2022 Act;**

**(C) Permanently alters any large-capacity magazine in the gun dealer's inventory or custody so that it is not capable, upon alteration or in the future, of accepting more than 10 rounds of ammunition or permanently alter the magazine so it is no longer a; or**

**(D) Permanently disposes of the large-capacity magazines in the gun dealer's custody or inventory.**

**(b) A firearms manufacturer, properly licensed under federal, state and local law, that is a party to a contract, in existence and binding on the effective date of this 2022 Act, with an entity outside of this state, for the manufacture of large-capacity magazines, provided that:**

**(A) All manufacturing is completed no later than 180 days after the effective date of this 2022 Act; and**

**(B) The entity outside of Oregon receiving the large-capacity magazines is made aware in writing on or before the delivery of the ammunition devices of the restrictions pertaining to large-capacity magazines in this state as set forth in this 2022 Act.**

**(4) Subsection (2) of the section does not apply at any time to:**

PAGE - 11      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

000111

(a) A firearms manufacturer properly licensed under federal, state and local law that manufactures large-capacity magazines, provided:

(A) The manufacturing is for exclusive sale or transfer to the Armed Forces of the United States or a law enforcement agency and solely for authorized use by that entity related to the official duties of the entity; and

(B) Any large-capacity magazine, permitted to be manufactured under paragraph (a)(A) of this subsection after the effective date of this 2022 Act, shall include a permanent stamp or marking indicating that the large-capacity magazine was manufactured or assembled after the effective date of this 2022 Act. The stamp or marking must be legibly and conspicuously engraved or cast upon the outer surface of the large-capacity magazine. The department may promulgate such rules as may be necessary for the implementation of this section, including but not limited to rules requiring such large-capacity magazine be stamped with  information indicating the limitation for use only by military and law enforcement or such other identification to distinguish clearly large-capacity magazines manufactured after the effective date of this 2022 Act.  Except as provided in paragraph (3)(b) of this section, no large-capacity magazines without such stamp may be manufactured in this state after the effective date of this Act.

(b) A licensed gun dealer that sells or otherwise transfers large-capacity magazines to the Armed Forces of the United States or a law enforcement agency solely for authorized use by that entity, provided the large-capacity magazines have been engraved as provided in paragraph (a)(B) of this subsection.

(c) Any government officer, agent or employee, member of the Armed Forces of the United States or peace officer, as that term is defined in ORS 133.005, that is authorized to acquire, possess or use a large-capacity magazine provided that any acquisition, possession or use is related directly to activities within the scope of that person's official duties.

(5) As of the effective date of this 2022 Act, it shall be an affirmative defense, as provided in ORS 166.055, to the unlawful possession, use and transfer of a large-capacity magazine in this state by any person, provided that:

(a) The large-capacity magazine was owned by the person before the effective date of this 2022 Act and maintained in the person's control or possession; or

(b) The possession of a large-capacity magazine was obtained by a person who, on or after the effective date of this section, acquired possession of the large-capacity magazine by operation of law upon the death of a former owner who was in legal possession of the large-capacity magazine; and

(c) In addition to either (a) or (b) of this subsection the owner has not maintained the large-capacity magazine in a manner other than:

(A) On property owned or immediately controlled by the registered owner;

(B) On the premises of a gun dealer or gunsmith licensed under 18 U.S.C. 923 for the purpose of lawful service or repair;

(C) While engaging in the legal use of the large-capacity magazine, at a public or private shooting range or shooting gallery or for recreational activities such as hunting, to the extent permitted under state law; or

(D) While participating in firearms competition or exhibition, display or educational project about firearms sponsored, conducted by, approved or under the auspices of a law enforcement agency or a national or state-recognized entity that fosters proficiency in firearms use or promotes firearms education; and

(E) While transporting any large-capacity magazines in a vehicle to one of the locations authorized in paragraphs (c)(A) to (D) of this subsection, the large-capacity magazine is not inserted into the firearm and is locked in a separate container.

(d) The person has permanently and voluntarily relinquished the large-capacity magazine to law enforcement or to a buyback or turn-in program approved by law enforcement, prior to commencement of prosecution by arrest, citation or a formal charge.

(6) Unlawful manufacture, importation, possession, use, purchase, sale or otherwise transferring of a large-capacity magazine is a class A misdemeanor.


**SECTION 12.** If any provision of this 2022 Act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of this Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable. The people hereby declare that they would have adopted this Chapter, notwithstanding the unconstitutionality, invalidity and ineffectiveness of any one of its articles, sections, subsections, sentences or clauses.


**SECTION 13.**  The provisions of this 2022 Act apply to all actions taken on or after the effective date of this 2022 Act, unless expressly stated otherwise herein. This 2022 Act may be known and cited as the Reduction of Gun Violence Act.

RECEIVED
MAY 4, 2021 9:20am
Elections Division

# CERTIFICATE OF SERVICE
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Duncan, et al. v. Becerra*
Case No.: 17-cv-1017-BEN-JLB

IT IS HEREBY CERTIFIED THAT:

 I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

 I have caused service of the following documents, described as:

## REQUEST FOR JUDICIAL NOTICE IN SUPPORT
## OF PLAINTIFFS' SUPPLEMENTAL BRIEF

on the following parties by electronically filing the foregoing on December 1, 2022, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rob Bonta
Attorney General of California
Mark R. Beckington
Supervising Deputy Attorney General
Kevin J. Kelly
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
kevin.kelly@doj.ca.gov

 I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2022, at Long Beach, CA.

Laura Palmerin

17cv1017