ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
KEVIN J. KELLY
Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3479
 Fax:  (415) 703-1234
 E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Rob Bonta,
in his official capacity as Attorney General
of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIRGINIA DUNCAN et al.,**  Plaintiffs,  v.  **ROB BONTA, in his official capacity as Attorney General of the State of California,**  Defendant. | 3:17-cv-01017-BEN-JLB  **DEFENDANT'S BRIEF IN RESPONSE TO THE COURT'S ORDER ENTERED ON FEBRUARY 7, 2023**  Courtroom:   5A  Judge:           Hon. Roger T. Benitez  Action Filed:  May 17, 2017 |

# INTRODUCTION

California Penal Code section 32310 ("Section 32310") fully comports with the Second Amendment at both stages of the text-and-history standard adopted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Even if Plaintiffs can demonstrate that Section 32310 burdens conduct covered by the "plain text" of the Second Amendment (and they cannot), California's restrictions on large-capacity magazines ("LCMs") are consistent with the Nation's historical tradition of weapons regulation.[1] On February 7, 2023, the Court ordered the Attorney General to file a brief identifying "the best historical regulation that is a proper analogue and relevantly similar to a statewide prohibition on possession of an ammunition device or a limit on an amount of ammunition," to be filed with the previously ordered briefing. Dkt. 140. All of the analogues relied upon by the Attorney General demonstrate a robust tradition of firearm regulation that supports the constitutionality of Section 32310. *See* Def.'s Br. at 15–25.

Among the analogues the Attorney General has identified, New York's 1784 gunpowder storage law [12][2] is one among the laws that are particularly analogous to "a limit on an amount of ammunition" that may be kept in a firearm magazine, Dkt. 140.[3] In addition to gunpowder storage laws, historical restrictions on the carrying of certain concealable weapons—such as New Jersey's 1686 law [6]

---

[1] The Attorney General incorporates by reference his Brief in Response to the Court's Order Entered on December 15, 2022 ("Def.'s Br.") (Dkt. 142), including the arguments that Plaintiffs have not shown that the challenged law burdens conduct covered by the plain text of the Second Amendment. Def.'s Br. at 4–11.

[2] Numbers in brackets refer to the numbers assigned to the laws listed on Defendants' surveys of historical analogues. Dkt. 139-1; Dkt. 139-2.

[3] This law is similar to other gunpowder storage restrictions enacted throughout American history, including a 1783 Massachusetts law prohibiting possession of a loaded firearm in Boston [11], an 1821 Maine law prohibiting possession of gunpowder in the state [27], and several laws governing the possession of gunpowder in certain cities enacted in the 19th century [30, 55, 67, 153]. These laws are also relevantly similar to Section 32310. Def.'s Br. at 23–24.

1

restricting the carrying of pocket pistols, skeins, and dirks—and prohibitions on the possession of trap guns are also relevantly similar to Section 32310's "statewide prohibition on possession of an ammunition device," Dkt. 140.  A ban on the possession of LCMs imposes a comparable burden, and is comparably justified, as historical laws restricting "certain types of weapons, such as Bowie knives, blunt weapons, slungshots, and trap guns because they were dangerous weapons commonly used for criminal behavior and not for self-defense." *Or. Firearms Fed'n, Inc. v. Brown*, __ F. Supp. 3d __, No. 2:22-cv-01815-IM, 2022 WL 17454829, at *13 (D. Or. Dec. 6, 2022).  These dangerous weapons laws have been discussed extensively in the Attorney General's other briefing, *see* Def.'s Br. at 19–25, and will not be discussed further in this brief, Dkt. 140.

## ARGUMENT

### I. *BRUEN* REQUIRES A HOLISTIC AND CONTEXTUALIZED ANALYSIS OF THE RELEVANT HISTORY, RATHER THAN A SINGLE "DEAD RINGER"

In assessing the constitutionality of a modern firearm regulation—especially in a case implicating "unprecedented societal concerns or dramatic technological changes," *Bruen*, 142 S. Ct. at 2132, as here, Def.'s Br. at 12–15—the historical analysis cannot be limited to the assessment of a single past law.  The Supreme Court instructed that the government need not identify "a dead ringer" or "a historical *twin*" in the historical record.  *Bruen*, 142 S. Ct. at 2133.  The *Bruen* standard is not an "abstract game of spot-the-analogy-across-the-ages." *United States v. Kelly*, No. 3:22-cr-00037, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022).  Instead, it requires "an evaluation of the challenged law in light of the broader attitudes and assumptions demonstrated by th[e] historical prohibitions" to determine whether the challenged law is one that *could have existed* consistent with the understanding of the Second or Fourteenth Amendments at the time of ratification.  *Id.* at *5 n.7.  Even an "imperfect match" can provide useful insight into the broader historical traditions that may justify a modern firearm regulation.

*United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037, at *24 (S.D.N.Y. Jan. 26, 2023).

*Bruen* made clear that the Second Amendment is not a "regulatory straightjacket," 142 S. Ct. at 2133, confining permissible government regulations to only those laws that had been enacted when the Second and Fourteenth Amendments were ratified. To the contrary, governments are free to adopt a "'variety' of gun regulations," *id.* at 2162 (Kavanaugh, J., concurring) (citation omitted), and "experiment[] with reasonable firearms regulations" to address threats to public safety, *McDonald v. City of Chicago,* 561 U.S. 742, 785 (2010) (plurality opinion). Requiring the government to spot a "near perfect match between a modern-day regulation[] and historical regulations would likely render *Bruen*'s analogical historical reasoning exactly th[e] 'regulatory straight jacket'" that the Second Amendment is not. *United States v. Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *5 (S.D. Cal. Dec. 6, 2022) (Curiel, J.). Those considerations inform how to assess the historical analogues identified by the Attorney General and illuminate why the inquiry cannot be limited to a single historical law.

## II. PROHIBITIONS ON THE POSSESSION OF GUNPOWDER ARE RELEVANTLY SIMILAR TO CALIFORNIA'S MAGAZINE-CAPACITY LIMIT

Section 32310 is relevantly similar to restrictions that were understood to be consistent with the Second Amendment when it was ratified in 1791, including New York's 1784 gunpowder storage restrictions [12].[4] In 1784, the New York Legislature enacted a prohibition on any "persons whatsoever" from "keep[ing] any quantity of gun powder exceeding twenty-eight pounds weight, in any one place" in New York City, except for a designated "public magazine," and that any gunpowder lawfully possessed "shall be separated [sic] into four stone jugs or tine

---

[4] In identifying this law, the Attorney General does not suggest that the other laws relied upon, or that could have been identified with additional time, are not equally analogous and relevantly similar to Section 32310.

1  [sic] canisters, which shall not contain more than seven pounds each." 1784 Laws
2  of N.Y. 627, ch. 28 [12]. This law, when viewed in the context of other similar
3  laws, *see, e.g.*, *supra* n.3, and the relevant history, reflects a "broad tradition" of
4  regulation with which Section 32310 is consistent. *Bruen*, 142 S. Ct. at 2156.

5      The New York law imposed a burden comparable to Section 32310 on the
6  right to armed self-defense by limiting (but not eliminating) the amount of
7  firepower that could be exerted for self-defense, even inside the home; gunpowder
8  was essential to operate founding-era firearms, much as ammunition is necessary to
9  operate a firearm today. And just as the New York law required an individual to
10 split any lawfully possessed quantity of gunpowder among separate containers,
11 each holding no more than seven pounds of gunpowder, Section 32310 requires an
12 individual to store ammunition in separate magazines capable of holding ten or
13 fewer rounds. Notably, the New York law limited the amount of gunpowder that
14 could be kept in private "magazines," which at the founding were storehouses used
15 for storing gunpowder. Baron Decl. (Dkt. 118-2) ¶ 24. New York's gunpowder
16 storage limit imposed a comparably minimal burden on armed self-defense as
17 Section 32310. *See Duncan v. Bonta*, 19 F.4th 1087, 1104 (9th Cir. 2021) (en
18 banc) ("California's ban on large-capacity magazines imposes only a minimal
19 burden on the exercise of the Second Amendment right."), *cert. granted, judgment
20 vacated*, 142 S. Ct. 2895 (2022), *vacated and remanded*, 49 F.4th 1228 (9th Cir.
21 2022).[5]

22     It should be noted that New York's law actually imposed a greater burden than
23 Section 32310 because it took significantly more time to reload founding-era
24 muskets, *see* Roth Decl. (Dkt. 118-8) ¶ 16, than it takes to load a fresh magazine
25 into a semiautomatic firearm, *see Duncan*, 19 F.4th at 1104. And while the New
26 York law effectively imposed an overall cap on the number of shots that could be

---

[5] While the en banc decision in *Duncan* was vacated, the analysis is cited for its persuasive value.

fired in self-defense—as an individual would not be able to continue firing without gunpowder, even if he or she had remaining musket balls—Section 32310 does not limit the total amount of ammunition or the number of compliant magazines that may be kept for self-defense. *See id.*

The burdens imposed by both laws are also comparably justified by public safety interests. Section 32310 aims to reduce the use of LCMs in mass shootings, because when used in these mass-casualty incidents, more people are killed and injured. *See, e.g.*, Allen Suppl. Decl. (Dkt. 118-1) ¶¶ 29–31; *see also Duncan*, 14 F.4th at 1109–11. New York's gunpowder storage law, as with similar laws, were also aimed to prevent significant harm to the public. *See* Cornell Decl. (Dkt. 118-4) ¶¶ 41–45. Both laws also looked to prevent *unintended* injury to innocent bystanders. *See Kolbe v. Hogan*, 849 F.3d 114, 127 (2017) (en banc) ("[W]hen inadequately trained civilians fire weapons equipped with [LCMs], they tend to fire more rounds than necessary and thus endanger more bystanders."), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2127.[6] The power to regulate the keeping of gunpowder has been recognized as "a branch of the police power, which unquestionably remains, and out to remain, with the States." *Brown v. Maryland*, 25 U.S. 419, 443 (1827), *abrogation on other grounds recognized by Okl. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 180–81 (1995). Consistent with that power, California has limited the number of rounds that may be kept in a magazine, without imposing a limit that would severely burden the right to armed self-defense.

## CONCLUSION

For these reasons, and those discussed in the Attorney General's other briefs, Section 32310 comports with the Second Amendment.

---

[6] Though the en banc decision in *Kolbe* was abrogated, its analysis is cited for its persuasive value.

| | | |
|---|---|---|
| 1 | Dated: February 10, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | MARK R. BECKINGTON<br>Supervising Deputy Attorney General |
| 4 | | KEVIN J. KELLY<br>Deputy Attorney General |
| 5 | | |
| 6 | | *s/ John D. Echeverria* |
| 7 | | |
| 8 | | JOHN D. ECHEVERRIA<br>Deputy Attorney General |
| 9 | | *Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California* |